# EXHIBIT B
# PART 2

# NOTICE OF OCCURRENCE

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **12** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

## POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL (with Insureds Retained Limit)

| | | | |
|---|---|---|---|
| Named Insured | | | Endorsement Number |
| **McKesson Corporation** | | | **13** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)

**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., **EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

1.  To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2.  To any "loss", cost or expense arising out of any:

    a.  Directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    b.  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1.  Is both unexpected and unintended from the standpoint of the "insured";

2.  Commenced abruptly and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3.  Is caused:

    a.  Solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, flood, earthquake, sprinkler leakage, or discharge from a heating, ventilating or air conditioning system or collision or upset of a motor vehicle, mobile equipment or an aircraft;

    b.  Or arises out of "your product" included in the "products-completed operations hazard"; or

c. By any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

(1) Is at or from any:

(a) Premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

(b) Premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

And

(2) Is known by any "insured" within **20** days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

(3) Is reported to us within **80** days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. Loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. Any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind.  Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not.  Waste means any substance that:

a. Is left over, or no longer in use, or discarded;

b. Is to be reclaimed or recycled, or reconditioned; or

c. Has been removed, treated, stored or disposed of as part of any environmental remediation effort.

It is further agreed that solely with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" due to any exclusion or exclusions contained therein, the "insured's" "retained limit" in the Limits of Insurance section of the Declarations is amended to **$5,000,000**.

All other terms and conditions of the policy remain unchanged.

Authorized Representative

## PROFESSIONAL SERVICES LIABILITY EXCLUSION -  EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **14** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)

**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of the policy remain unchanged.

Authorized Agent

XS-21580 (01/07)

# TIE IN OF LIMITS ENDORSEMENT

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **15** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance is amended to include the following additional Condition:

If this insurance and the insurance provided by the policy(ies) listed in the schedule below apply to the same claim, "suit" or "occurrence", the maximum combined limits of insurance available under this policy and the scheduled policy(ies) below for such claim, "suit" or "occurrence" will not exceed:

$       Each Occurrence

$       General Aggregate

$       Products-Completed Operations Aggregate

These limits are the most that will be paid under this policy and the policies listed in the schedule below, combined, for all claims, damages, "losses" or "suits", regardless of any aggregate, per "occurrence", per incident, or per accident limit, or any other limit of liability or limit of insurance in this policy or the scheduled policy.

### SCHEDULE

| Country of Issuance | Insurer | Policy Number |
|---|---|---|
| | | |

Any "loss" paid under the scheduled policy shall reduce by such amount the applicable limit of insurance under this policy.

Nothing in this provision shall serve to increase any applicable limit of insurance of this policy or the scheduled policy.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **16** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)

**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# WAR EXCLUSION

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **17** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)

**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Exclusion W. of SECTION V. EXCLUSIONS is deleted in its entirety and replaced by the following:

**W.  War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

All other terms and conditions of the policy remain unchanged.

Authorized Agent

## DISCLOSURE PURSUANT TO TERRORISM RISK
## INSURANCE ACT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **18** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**


### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: **$36,000**.


---
Authorized Agent


Includes copyrighted material of Insurance Services office, Inc., with its permission

TRIA11b (1/08)

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **19** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)

**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.   The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C.  In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

1.  The Limits of Insurance of the Declarations is amended to include:

"Certified act of terrorism retained limit" $

2.  "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance.  "Certified act of terrorism" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

3.  Solely with respect to this endorsement, Section III., Defense Provisions and Supplement Payments is amended as follows:

a.  With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out of a "certified act of terrorism".  However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b. We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit". Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit". We may make such investigation as we require and effect settlement of any "suit" so defended.

c. We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

## CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **20** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 - 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY
EXCESS LIABILITY POLICY
EXCESS LIABILITY CATASTROPHE POLICY**

**A.** The **Cancellation** Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**(8)** A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

**(9)** Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

**(10)** A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund, if any, will be computed on a pro rata basis. However, the refund may be less than pro rata if we made a loan to you for the purpose of payment of premiums for this policy. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

Authorized Representative

## NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES

| | |
|---|---|
| Named Insured<br>**McKesson Corporation** | Endorsement Number<br>**21** |

| Policy Symbol<br>**XOO** | Policy Number<br>**G2704766A** | Policy Period<br>**07/01/2013 – 07/01/2014** | Effective Date of Endorsement<br>**07/01/2013** |
|---|---|---|---|

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**A.** If we cancel the Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

**B.** We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

**C.** The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

**D.** We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

**E.** We may arrange with your representative to send such notice in the event of any such cancellation.

**F.** You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

**G.** This endorsement does not apply in the event that you cancel the Policy.

### SCHEDULE

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
| **Medassets** | | **13727 Noel Road, Suite 1400**<br>**Dallas, TX 75240** |
| **Port Authority of New York & New Jersey**<br>**Newark Liberty International Airport**<br>**c/o EBIX BPO** | | **P.O. Box 881639**<br>**San Diego, CA 92168-1639** |

ALL-32688 (01/11)                                    Page 1 of 2

Name of Certificate Holder                    E-Mail Address          Physical Address

All other terms and conditions of the Policy remain unchanged.

                                                                    Authorized Representative

## AMENDMENT OF WHO IS AN INSURED

Named Insured
**McKesson Corporation**

Endorsement Number
**22**

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section II WHO IS AN INSURED  Paragraph B. is hereby amended to add the following:

7. Any person or organization you become obligated to include as an additional "insured" under the policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" arising out of your operations or premises owned by or rented to you.

However, the insurance provided by this endorsement will not be broader than the coverage provided by this policy.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# ANNUAL PERIOD EXTENSION - NATURAL DISASTER OR OTHER CATASTROPHE

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **23** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)

**ACE Property and Casualty Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

In the event of a natural disaster or other catastrophe that prevents all written, telephonic and electronic communication between us and the Named Insured at the expiration of the "policy period", the "policy period" will automatically be extended until the earlier of the two following times:

1. thirty (30) calendar days from the original expiration date of such "policy period"; or
2. fourteen (14) calendar days after written, telephonic or electronic communication between us and the Named Insured is once again possible.

The additional premium for such extension will be calculated on a pro-rata basis.  Such extension will be cancelled automatically retroactive to its inception if the additional premium or proof of payment thereof is not received by us within thirty (30) calendar days following the earlier of 1. or 2. above.

Nothing in this endorsement will operate to increase or reinstate the Limits of Liability as stated in the Declarations.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# Automobile Liability Limitation Endorsement

| | | | |
|---|---|---|---|
| Named Insured | | | Endorsement Number |
| **McKesson Corporation** | | | **24** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Automobile Liability

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement.  Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy #MWTB21542 and Old Republic Insurance Company of Canada Policy #CTB21542 subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy # MWTB21542 and Old Republic Insurance Company of Canada Policy # CTB21542.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# CANCELLATION AMENDATORY ENDORSEMENT

| | |
|---|---|
| Named Insured<br>**McKesson Corporation** | Endorsement Number<br>**25** |

| Policy Symbol<br>**XOO** | Policy Number<br>**G2704766A** | Policy Period<br>**07/01/2013 – 07/01/2014** | Effective Date of Endorsement<br>**07/01/2013** |
|---|---|---|---|

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

Parts 1., 2., 5. and 6. of Condition D of Section VI CONDITIONS are deleted and replaced by the following:

1.  This policy may be cancelled by you by mailing to us written notice stating when such cancellation shall be effective.

2.  This policy may be cancelled by us by mailing to you at your last known address, written notice stating when, not less than one hundred twenty (120) days thereafter, ten (10) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective.  The mailing of notice shall be sufficient proof of notice.  The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".  Under no circumstance will our notice of cancellation to you be less than the minimum required by State law or regulation.

5.  If this policy is cancelled, the final premium will be calculated pro rata based upon the time this policy was in force.  Final premium will not be less than the pro rata share of the Annual Premium as shown in the Declarations.

6.  Premium adjustment may be made at the time cancellation becomes effective.  Our check or the check of our representative mailed to you shall be sufficient proof of any refund or premium due you.

# CLINICAL TRIAL EXCLUSION ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **26** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial". However, this exclusion does not apply to late phase trial services, otherwise referred to as Phase IV, and provided by McKesson Specialty Canada.

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# AMENDMENT OF DEFINITION J. – INSURED CONTRACT

| | |
|---|---|
| Named Insured<br>**McKesson Corporation** | Endorsement Number<br>**27** |

| Policy Symbol<br>**XOO** | Policy Number<br>**G2704766A** | Policy Period<br>**07/01/2013 – 07/01/2014** | Effective Date of Endorsement<br>**07/01/2013** |
|---|---|---|---|

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII.  DEFINITIONS are amended as follows:

Definition J. is deleted and replaced by the following:

"Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

2. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# PERSONAL INJURY DEFINITION AMENDED TO INCLUDE DISCRIMINATION

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **28** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII, DEFINITIONS, Part R. "Personal and advertising injury" is deleted and replaced with the following:

R. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5. Oral or written publication, in any manner, of material that violates a person's right of privacy;
6. Discrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only is such discrimination or humiliation is:
   a. Not intentionally committed by the "insured,"
   b. Not committed by, at the direction of, or with the knowledge of you and/or any of your executive officers or directors,
   c. Not directly or indirectly related to the employment of the person or persons by you, and
   d. Not in violation of any provision(s) of the Americans with Disabilities Act (including but not limited to any amendments or revisions thereto and any rules or regulation promulgated thereunder) or any similar common or statutory law,
7. The use another's advertising idea in your "advertisement," or
8. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

All other terms and conditions of the policy remain unchanged.

Authorized Representative

# FOREIGN LIABILITY FOLLOW FORM LIMITATION ENDORSMENT – EXCEPTION FOR PRODUCTS

| | |
|---|---|
| Named Insured<br>**McKesson Corporation** | Endorsement Number<br>**29** |

| Policy Symbol<br>**XOO** | Policy Number<br>**G2704766A** | Policy Period<br>**07/01/2013 – 07/01/2014** | Effective Date of Endorsement<br>**07/01/2013** |
|---|---|---|---|

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
**COMMERCIAL UMBRELLA LIABILITY POLICY**

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the scheduled "underlying insurance"

1. This exclusion shall not apply; and

2. Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of such "underlying insurance," subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, and this policy will be no broader than the coverage provided by "underlying insurance."

Notwithstanding the above provisions, with respect to claims or "suits" alleging "bodily injury," "property damage" or "personal and advertising injury" that (a) occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada, and (b) arises out of "your product", this insurance will apply subject to subject to a "retained limit" which is a self-insured retention as follows:

$5,000,000 each "occurrence" ("loss" and defense expenses erode SIR)

$5,000,000 annual aggregate ("loss" and defense expenses erode SIR)

$500,000 "Trailing Retention"

The following definition is added to the policy:

"Trailing retention" means the amount shown above, which is the amount of "loss" in excess of the reduced or exhausted limit of the "underlying insurance" you will pay in the settlement of any claim or "suit" to which this policy applies. Our policy does not apply until you have paid the "trailing retention".

For the purposes of this endorsement, the definition of "loss" is amended to provide that "loss" also includes defense expenses and supplementary payments.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# Government Immunity Endorsement

| | | | |
|---|---|---|---|
| Named Insured | | | Endorsement Number |
| **McKesson Corporation** | | | **30** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

We shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority of New York and New Jersey (Port Authority), raise any defense involving in any way the jurisdiction of the Tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# HEALTH CARE SERVICES EXCLUSION

| | |
|---|---|
| Named Insured<br>**McKesson Corporation** | Endorsement Number<br>**31** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Solely with respect to Interlakes Oncology, PC, and those entities identified in the Schedule on Endorsement 42 (WHO IS AN INSURED ENDORSEMENT) of this policy Section V, DEFINITIONS, is amended by the addition of the following exclusion:

**Health care Services**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" sustained by a "patient" and arising out of the providing of or failing to provide "health care services" by the "insured".

For purposes of this endorsement, the following definitions are added to the policy;

"Health care services" means medical, surgical, dental, diagnostic or nursing services; diagnosis or treatment of any sickness, disease, condition or injury; dispensing or administering of drugs, medicines, vaccines medical, surgical or dental supplies, devices or appliances; advisory services or counseling for mental health, substance abuse or addiction; physiotherapy, chiropractic or chiropody; optometry or optical services, including the prescribing, preparation or fitting of ophthalmic lenses or similar products; providing hearing aid services, including the prescribing, preparation or fitting of hearing aids.

"Patient" means a person under the care of or receiving "health care services" from any "insured" or any other person or organization operating on behalf of any "insured".

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# INSUREDS IN MEDIA AND INTERNET TYPE BUSINESSES EXCLUSION

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **32** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion M. of Section **V. EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

M. **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1. Advertising, broadcasting, publishing or telecasting;
2. Designing or determining content of web-sites for others; or
3. An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VII - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# KNOWLEDGE OF OCCURRENCE

| | |
|---|---|
| Named Insured<br>**McKesson Corporation** | Endorsement Number<br>**33** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Senior Director of Risk Management or General Counsel shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# MANUFACTURE OF DRUGS EXCLUSION

Named Insured
**McKesson Corporation**

Endorsement Number
**34**

Policy Symbol
**XOO**

Policy Number
**G2704766A**

Policy Period
**07/01/2013 – 07/01/2014**

Effective Date of Endorsement
**07/01/2013**

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section V. EXCLUSIONS is amended to include the following additional exclusion.

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the Insured".

For the purposes of this exclusion, the term manufacture shall not include packaging or labeling of drugs.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

# NAMED INSURED ENDORSEMENT

| | |
|---|---|
| Named Insured **McKesson Corporation** | Endorsement Number **35** |

| Policy Symbol **XOO** | Policy Number **G2704766A** | Policy Period **07/01/2013 – 07/01/2014** | Effective Date of Endorsement **07/01/2013** |
|---|---|---|---|

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### EXCESS LIABILITY CATASTROPHE POLICY

### EXCESS LIABILITY POLICY

### COMMERCIAL UMBRELLA LIABILITY POLICY

It is hereby understood and agreed that the following persons and organizations are added to the Declarations as Named Insureds:

**McKesson Corporation**
10101 Woodloch Forest LLC
A.L.I. Technologies (Deutschland) GmbH
AccessMed Holdings, LLC
AccessMed, LLC
AOR Holding Company of Indiana, LLC
AOR Management Company of Arizona, LLC
AOR Management Company of Indiana, LLC
AOR Management Company of Missouri, LLC
AOR Management Company of Oklahoma, LLC
AOR Management Company of Pennsylvania LLC
AOR Management Company of Virginia LLC
AOR of Indiana Management Partnership
AOR of Texas Management, LLC
AOR Real Estate, LLC
AOR Synthetic Real Estate LLC
AORT Holding Company, Inc.
Ascalon International LLC
Ashville CC, LLC (in process of being sold)
**Beldere Corporation**
Bluestar Group
Cancer Treatment Associates of Northeast Missouri, Ltd.
Care Records Ltd.
CCCN NW Building,JV
**CGSF Funding Corproration**
**City Properties, S.A.**
Colorado Cancer Centers, LLC
Conscia Enterprise Systems
**Crocker Plaza Company**
Cypress Medical Products LLC

Authorized Agent

**D & K Healthcare Resources LLC**
Delta Clinical Research LLC
East Indy CC, LLC
FAR-SUR
**Foremost de Venezuela, S.A. (Forvensa)**
**Foremost Iran Corporation**
**Foremost Shir, Inc.**
**Foremost Tehran, Inc.**
**Golden State Corporate Services LLC**
**Golden State Insurance Company Ltd.**
Greenville Radiation Care, Inc.
HBOC Medical Ltd.
**Health Mart Systems, Inc.**
**Health Nexus LLC**
HF Land Company
Innovent Oncology, LLC
**Intercal, Inc.**
Iowa Pharmaceutical Services, LLC
IQ Systems Services
KCCC JV, LLC
KCCC/SMMC Cancer Center, LLC
**KWS & P/SFA, Inc.**
Liquidlogic Limited
McKesson (Shanghai) Trading Co. Ltd.
McKesson Automation Canada Corporation
**McKesson Automation Inc.**
**McKesson Automation Systems Inc.**
McKesson Canada Corporation
**McKesson Capital Funding Corporation**
**McKesson Capital LLC**
McKesson Central Fill LLC
McKesson China Holdings S.a.r.l.
**McKesson Corporation**
McKesson Financial Holdings
McKesson Financial Holdings II
McKesson Funding Company of Canada
**McKesson Health Solutions Holdings LLC**
McKesson Health Solutions LLC
McKesson Health Solutions Puerto Rico Inc.
McKesson High Volume Solutions Inc.
McKesson Information Solutions Canada Company
McKesson Information Solutions Capital S.a.r.l.
McKesson Information Solutions Finance S.a.r.l.
McKesson Information Solutions France SAS
McKesson Information Solutions Holdings France S.a.r.l.
McKesson Information Solutions Holdings S.a.r.l.
McKesson Information Solutions Netherlands B.V.
McKesson Information Solutions Sweden AB
McKesson Information Solutions Topholdings S.a.r.l.
McKesson Information Solutions UK Limited
**McKesson International Bermuda IP2A Limited**
McKesson International Bermuda IP2B Limited
McKesson International Bermuda IP3A Limited
McKesson International Bermuda IP3B Limited
McKesson International Bermuda IP4A Limited

Authorized Agent

McKesson International Bermuda IP4B Unlimited
**McKesson International Bermuda IP5A Limited**
McKesson International Bermuda IP5B Unlimited
McKesson International Bermuda Opco 1A Limited
McKesson International Bermuda Opco 1B Unlimited
McKesson International Bermuda Opco3A Limited
McKesson International Bermuda Opco3B Unlimited
McKesson International Bermuda Opco4A Limited
McKesson International Bermuda Opco4B Limited
McKesson International Capital S.a.r.l.
McKesson International Finance S.a.r.l.
McKesson International Holdings
McKesson International Holdings II S.a.r.l.
McKesson International Holdings III S.a.r.l.
McKesson International Holdings IV S.a.r.l.
McKesson International Holdings S.a.r.l.
McKesson International Holdings SRL
McKesson International Holdings V S.a.r.l.
McKesson International Holdings VII S.a.r.l.
McKesson International Malaysia SND.BHD
McKesson International S.a.r.l.
McKesson International SRL
McKesson International Sweden I AB
McKesson International Sweden II AB
McKesson International Sweden III AB
McKesson International Topholdings S.a.r.l.
McKesson Intrernational Holdings LLC
McKesson Ireland
McKesson Israel Ltd.
McKesson Medical Imaging Company
**McKesson Medical-Surgical Holdings Inc.**
McKesson Medical-Surgial Inc.
McKesson Medical-Surgical International
McKesson Medical-Surgical MediMart Inc.
**McKesson Medical-Surgical Minnesota Inc.**
McKesson Medical-Surgical Minnesota Supply Inc.
McKesson Nederland B.V.
**McKesson Pharmaceutical Holdings LLC**
**McKesson Pharmacy Optimization LLC**
McKesson Pharmacy Systems Canada ULC
**McKesson Pharmacy Systems LLC**
**McKesson Plasma and Biologics LLC**
**McKesson Property Company, Inc.**
**McKesson Specialty Arizona Inc.**
McKesson Specialty Care Distribution Corporation
McKesson Specialty Care Distribution Joint Venture LP
McKesson Specialty Care Distribution Joint Venture LP
**McKesson Specialty Distribution LLC**
McKesson Specialty Health Pharmaceutical & Biotech Solutions, LP (formerly named US Oncology Integrated Solutions, LP)
**McKesson Specialty Holdings LLC**
McKesson Specialty Prescription (BC) Services Corporation
McKesson Specialty Prescription Services Corporation
**McKesson Technologies Inc.**
**McKesson Transportation Systems, Inc.**

Authorized Agent

McKesson UK Holdings Limited
**McQueary Bros. Drug Company, LLC**
Med Fusion, LLC
Medcon Systems (1993)
Medcon UK Limited
Medical & Vaccine Products, Inc.
Metropolitian Integrated Cancer Center, LLC
MH/USON Radiation Management Company, LLC
MHD-USO General, LLC
MHD-USO Management Company, LP
Moore Medical LLC
MSA Products LLC
Nadro S. de R.L. de C.V.
Nadro S.A. de C.V.
National Oncology Alliance, Inc.
NDCHealth Corporation
NDCHealth Pharmacy Systems and Services, Inc.
Nebraska Pharmaceutical Services, LLC
New Mexico Pharmaceutical Services, LLC
Nexcura, LLC
North Carolina Pharmaceutical Services, LLC
Northstar Healthcare
Northstar Healthcare Holdings
Northstar Healthcare Singapore Pte. Ltd.
**Northstar Rx LLC**
Oncology Holdings II, Inc.
**Oncology Holdings, Inc.**
Oncology Portal, LLC
Oncology RX Care Advantage, LP
Oncology Therapeutics Network Corporation
Oncology Today, LP
Onmark, Inc.
Oregon Cancer Centers Ltd
OTN Generics, Inc.
OTN Participant, Inc.
peerVue, Inc.
Perigon Ltd.
Per-Se Technologies Canada, Inc.
Physician Reliance Maryland, L.P.
Physician Reliance Maryland, LLC (formerly named The Carroll County Cancer Center, Ltd. Left on previous chart by mistake)
Physician Reliance Network, LLC
Physician Reliance, LLC
Portico Systems of Delaware, Inc.
Presbyterian Cancer Center-Dallas, LLC
PST Services, Inc.
**Purchasing Alliance for Clinical Therapeutics, LLC**
RFCC Asset, LLC
RFCC Support, LLC
RMCC Cancer Center, LLC
S.K.U., Inc.
**San Bruno Mountain, Ltd.**
SelectPlus Oncology, LLC
SIVEM Pharmaceutical ULC
Southeast Texas Cancer Centers, LP

Authorized Agent

St. Louis Pharmaceutical Services LLC
Sterling Medical Services, LLC
Strategic Health Alliance II, Inc.
**Strategic Health Alliance Management Corp.**
System C Healthcare plc
Texas Pharmaceutical Services, LLC
TOPS Pharmacy Services, Inc.
Tyler Radiation Equipment Leasing, LLC
Unity Oncology, LLC
US Oncology Clinical Development, LLC
US Oncology Corporate, Inc.
**US Oncology Holdings, Inc.**
US Oncology Lab Services, LLC
US Oncology Pharmaceutical Services, LLC
US Oncology Reimbursement Solutions, LLC
US Oncology Research, LLC
US Oncology Specialty, LP
US Oncology, Inc.
**Visitation Associates**
WFCC Radiation Management Company, LLC
Zee Medical Canada Corporation
**Zee Medical, Inc.**
3071406 Nova Scotia Company
Clinique Sante Corporation
McKesson Canada Support Services Corporation
McKesson Health Management Services ULC
McKesson Specialty Prescription Services (Atlantic) Corporation
Pharmessor Group Corporation

Authorized Agent

# NEWLY ACQUIRED ENTITY ENDORSEMENT (INLCUDING JOINT VENTURE)

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **36** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)

**ACE Property and Casualty Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

Paragraph B. 5. of **SECTION II WHO IS AN INSURED** is deleted and replaced by the following:

5.  Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a "insured", subject to the following:

   a.  If at the time of acquisition, inception of control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $1,000,000,000 and (b)  the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of control or formation, with no additional premium charge, provided that you notify us within 120 days of such acquisition, inception of control or formation.

   b.  If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you exceeds $1,000,000,000 or (b)  the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 120th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier.

   c.  For any organization covered by paragraph b. above, coverage will expire on the 120th day after you acquire, take control of or form the organization, or the end of the "policy period," whichever is earlier, unless, within the 120 day period, you request us to include such organization as an "insured", and we agree to do so.

   d.  We may, at our option, make an additional premium charge for any organization that you acquire, take control of or form during the "policy period," when that organization is not automatically covered in 5 .a. above.

   e.  Coverage does not apply to any liability arising out of an "occurrence" taking place before you acquire, take control of or form any organization covered by this endorsement.

Paragraph B. 6. of **SECTION II WHO IS AN INSURED** is deleted and replaced by the following:

Any person or organization to which the Named Insured is obligated by virtue of a written contract to name such person or organization as an additional "insured", but only with respect to operations performed by or obligations required of the Named Insured to or for the additional "insured" under the terms of such written contract. A person or organization qualifying as an additional "insured" under this endorsement is an additional "insured" only for "occurrences" that first take place after the execution of the written contract.

**SECTION II, WHO IS AN INSURED** is amended to include the following:
In the event of any "occurrence" caused by or arising out of any Joint Venture, Co-Venture, Joint Lease, Joint Operating Agreement, Partnership or Limited Liability Company (Joint Venture) in which the "insured" has an ownership interest, the Limits of Insurance under our policy shall be limited to the total liability coverage afforded the "insured" by this policy.

It is further agreed that the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture and our liability shall be excess of the sum of

1.  The limits of the applicable "retained limit", and
2.  The limits of any "other insurance".

All other terms and conditions of this policy remain unchanged.




Authorized Representative

# Non-Contributory Endorsement for Additional Insureds

| | | | |
|---|---|---|---|
| Named Insured | | | Endorsement Number |
| **McKesson Corporation** | | | **37** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

For any person or organization qualifying as an "insured" under Section II WHO IS AN INSURED, Paragraph B.7. (as added by endorsement to this policy) the following is added to
**Section VI. CONDITIONS Paragraph J. Other Insurance**

If "other insurance" is available to an "insured" we cover under any of the endorsements listed or described above (the "Additional Insured") for a "loss" we cover under this policy, this insurance will apply to such "loss" on a primary basis and we will not seek contribution from the "other insurance" available to the Additional Insured. Your "retained limit" still applies to such "loss" and any payments you receive from "other insurance" will not erode your "retained limit".

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# RETAINED LIMIT ENDORSEMENT
## (No Underlying Insurance)

| | |
|---|---|
| Named Insured<br>**McKesson Corporation** | Endorsement Number<br>**38** |

| Policy Symbol<br>**XOO** | Policy Number<br>**G2704766A** | Policy Period<br>**07/01/2013 – 07/01/2014** | Effective Date of Endorsement<br>**07/01/2013** |
|---|---|---|---|

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1. The preamble in the policy is deleted and replaced with the following:

   Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

   Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

   Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VII. DEFINITIONS**.

   We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2. Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

   A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

      1. When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
      2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy.  Any such payment we make will reduce the Limits of Insurance.  Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

3.  Paragraph E. of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

    E.  If the applicable "retained limits" listed on the Schedule of Retained Limits have been:
        1.   Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

        2.   Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4.  Exclusions A., I. and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5.  Conditions A., C., and I. and Paragraph 3. only of Condition N. of **Section VI. CONDITIONS** are deleted and replaced with the following:

    A.  **Appeals**

        In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

    C.  **Bankruptcy**

        Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy.  This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

    I.  **Maintenance of "Underlying Insurance"** is deleted.

    N.  **Transfer of Rights of Recovery Against Others to Us**

        3.  If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6.  Definitions P., and V. of **Section VII. DEFINITIONS** are deleted and replaced with the following:

    P.  "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

    V.  "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit | | Defense Treatment |
|---|---|---|---|
| General Liability | $5,000,000 | Each Occurrence | Within limits & within |
| | $7,500,000 | General Aggregate | SIR |
| Products Liability | $5,000,000 | Each Occurrence | Within limits & within |
| | $5,000,000 | Aggregate | SIR |
| Auto Liability | $5,000,000 | Each Occurrence | Outside Limits |
| | | | & SIR |
| US Oncology | | | Within limits & within |
| General Liability | $5,000,000 | Each Occurrence | SIR |
| | $5,000,000 | Personal and | |
| | | Advertising Injury | |
| | $5,000,000 | General Aggregate | |

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# TRAILING RETENTION ENDORSEMENT
## (NO UNDERLYING INSURANCE)

| | |
|---|---|
| Named Insured | Endorsement Number |
| **McKesson Corporation** | **39** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G2704766A** | **07/01/2013 – 07/01/2014** | **07/01/2013** |

Issued By (Name of Insurance Company)
**ACE Property and Casualty Insurance Company**

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
This endorsement modifies insurance provided under the following:
### COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

| | | |
|---|---|---|
| Trailing Retention: | $ 500,000 | Each Occurrence |
| Aggregate Trailing Retention: | $ Not Applicable | |

**Section IV. LIMITS OF INSURANCE** is amended as follows:

With respect to the application of part E. of Section IV., LIMITS OF INSURANCE, that relates to the reduction or exhaustion of the aggregate limits of liability under any "retained limit" by reason of "loss" paid thereunder, this policy is amended as follows:

A.  If the aggregate limits of liability under any "retained limit" are reduced or exhausted solely by reason of "loss" paid thereunder arising out of "bodily injury," "personal and advertising injury," or "property damage" which takes place during our "policy period," then this policy shall:

   1.  In the event of reduction, pay the excess of the reduced underlying limit; but only in excess of the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

   2.  In the event of exhaustion continue in force, but only for any excess above the amount of the "trailing retention" and subject to the "aggregate trailing retention" as stated in the Schedule above.

**Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Part A is amended to read as follows:

1.  With respect to any "occurrence" covered by the "retained limit" listed in the schedule of "retained limit" or any "other insurance" to which this policy applies, whether the aggregate limit of said "retained limit" or "other insurance" is exhausted or not, we shall not be called upon to assume charge of the investigation, settlement or defense of any "suit" brought against the "insured," but we shall have the right and be given the opportunity to be associated in the defense and trial of any "suits" relative to any "occurrence" which, in our opinion, may create liability on the part of us under the terms of the policy.

2.  With respect to any "occurrence" not covered by the "retained limit" or any "other insurance" but covered by the terms and conditions of this policy, we shall defend such "suit" against the "insured" seeking damages on account of "bodily injury," "personal and advertising injury," or "property damage" and we may make such investigation and effect settlement of any "suit" so defended. Provided, however, we shall have no obligation to defend until the "insured" losses have exceeded the "trailing retention" amount set out in the Schedule above.

   Furthermore, we shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

**Section VII. DEFINITIONS**, is amended as follows:

The following Definitions are added:

"Trailing retention" means the amount shown in the Schedule above, which is the amount in excess of the reduced or exhausted limit of "retained limit" you will pay in the settlement of any claim or "suit" to which this policy applies.  Our policy does not apply until you have paid the "trailing retention". Defense and supplementary payments shall reduce the amount shown above.

"Aggregate trailing retention" means the amount shown in the Schedule above which is the most you will pay for the sum of all "trailing retention" amounts.

For the purposes of this endorsement, the definition of "loss" is amended to provide that "loss" also includes defense expenses and supplementary payments.


All other terms and conditions of this policy remain unchanged.


Authorized Representative

# WHO IS AN INSURED – AFFILIATED PHYSICIAN PRACTICES ENDORSEMENT

| | | |
|---|---|---|
| Named Insured<br>**McKesson Corporation** | | Endorsement Number<br>**40** |
| Policy Symbol<br>**XOO** | Policy Number<br>**G2704766A**   Policy Period<br>**07/01/2013 – 07/01/2014** | Effective Date of Endorsement<br>**07/01/2013** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Section **II**, **WHO IS AN INSURED**, is amended by the addition of the following:

    **1.** The entities listed in the schedule below shall be considered "insureds", but solely to the extent that:

        a. such entity is under your management;

        b. such entity has entered into a written Comprehensive Strategic Agreement (hereinafter "CSA") with you, which is in effect during the policy period and executed prior to any "occurrence" taking place; and

        c. any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

    Such entity's status as an "insured" ends when its CSA with you is cancelled, terminated or expires.

    **2.** Any entity, other than those entities listed in the schedule below, that has entered into a written CSA with you shall be considered an "insured", but solely to the extent that:

        a. such entity is under your management;

        b. such entity's CSA with you is in effect during the policy period and executed prior to an "occurrence" taking place; and

        c. any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

    Such entity's status as an "insured" ends when its CSA with you is canceled, terminated or expires.

**B.** All such entities and written CSAs must be reported in writing to us within fifteen (15) days after the expiration of this policy.  However, any inadvertent or unintentional failure to report such entities or CSAs within fifteen days shall not, in and of itself, preclude coverage for such entities as "insured" under this policy.

**C.** Section **VII**, **DEFINITIONS**, Subsection I, "Insured", is deleted and replace with the following:

    I.   "Insured" means the Named Insured shown in the Declarations or added by endorsement and any individual or organization qualifying as such under Section II – Who is an Insured.

### SCHEDULE

Alliance Hematology Oncology P.A.

Allison, Curtis, Kingsley, Meoz, Michael, Sanchez & Prof. Corp.

Arizona Oncology Associates, P.C.

Arkansas Oncology Associates, PA

Asheville Hematology & Oncology Associates PA

Cancer Care & Hematology Specialists of Chicagoland, PC

Cancer Care Centers of South Texas, PA

Cancer Centers of Florida, PA

Cancer Centers of North Carolina, PC

Cancer Centers of North Carolina-Asheville, PC

Comprehensive Cancer Care

Fairfax-Northern Virginia Hematology-Oncology, P.C.

Flavio Kruter, M.D., P.A.

Florida Cancer Affiliates, PL

Florida Institute of Research, Medical & Surgical, PA

Hematology Oncology Associates of Illinois

Interlakes Oncology Hematology P.C.

Kansas City Cancer Center, LLC

Mahoning Valley Hematology-Oncology Associates, Inc.

Maryland Oncology Hematology, PA

Minnesota Oncology Hematology, PA

Missouri Cancer Associates, LLC

Murrell, Westgate & Bryer, Inc.

New York Oncology Hematology, PC

Northwest Cancer Specialists, PC

Ocala Oncology Center, P.L.

Oncology & Hematology Associates, Inc.

Oncology and Hematology Associates of Southwest Virginia, Inc. (Blue Ridge Cancer Care)

Oncology Associates of Oregon, PC (Willamette Valley Cancer Center)

Oncology Hematology Radiation Care, LLC (Advanced Medical Specialties)

Regional Cancer Care, PA

Rocky Mountain Cancer Centers, a Professional LLP

South Florida Oncology & Hematology Consultants

St. Louis Urological Surgeons, Inc.

Texas Oncology, P.A.

The Hope Center for Cancer Care

Virginia Cancer Specialists, PC

Virginia Cancer Specialists

Wilshire Oncology Medical Group, Inc.


All other terms and conditions of the policy remain unchanged.



Authorized Representative

# EXHIBIT F



**ace group**

# Declarations
# ACE Umbrella Plus<sup>sm</sup>
# Commercial Umbrella Liability Policy

| Policy Symbol: XOO | Previous Policy Symbol: XOO |
|---|---|
| Policy Number: G27420618 | Previous Policy Number: G2704766A |

### COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW

ACE Property and Casualty Insurance Company

436 Walnut Street

Philadelphia, PA 19106

| Named Insured and Address | Producer Name and Address |
|---|---|
| McKesson Corporation<br>One Post St, 34th Floor<br>San Francisco, CA 94104 | Marsh Risk & Insurance Services<br>345 California Street, Suite 1300<br>San Francisco, CA 94104<br><br>PRODUCER CODE  355110 |

| Policy Period:   From 07/01/2014        to 07/01/2015 | 12:01 A.M Standard Time at the Address of the Named Insured as stated herein |
|---|---|

### Limits of Insurance

| | |
|---|---|
| $ 25,000,000 | Each Occurrence |
| $ 25,000,000 | General Aggregate |
| $ 25,000,000 | Products Completed-Operations Aggregate  $ 25,000        Self-Insured Retention |

### Annual Premium

| $ 798,500 | Premium | $ 40,000 | Terrorism Premium included in Annual Premium |
|---|---|---|---|
| $ 798,500 | Premium, including all Surcharges and Assessments | | |

### Policy Period Premium

| $ 798,500 | Premium | $ 40,000 | Terrorism Premium included in Annual Premium |
|---|---|---|---|
| $ 798,500 | Premium, including all Surcharges and Assessments | | |

### Schedule of Underlying Insurance
Refer to the attached Schedule of Underlying Insurance, which forms a part of this Policy's Declarations.

### Endorsements and Forms
Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.



# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G27420618** | **07/01/2014 to 07/01/2015** |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| | XS-9U57b (08/09) | Schedule of Underlying Insurance |
| | XS-20835 (08/06) | Commercial Umbrella Liability Policy |
| | ALL-20887 (10/06) | ACE Producer Compensation Practices & Policies |
| | XS-28500a (08/13) | ACE Group Specialty Claims Loss Notification Form |
| | IL P 001 (01/04) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| | XS-22552 (06/07) | Catastrophe Management Policyholder Notice |
| 1 | CC-1k11h (03/14) | Signatures |
| 2 | XS-20755 (08/06) | Non-Concurrency Endorsement (Recognizes Non-Concurrency) |
| 3 | XS-21580 (01/07) | Professional Services Liability Exclusion - Exception for Resulting Bodily Injury and Property Damage |
| 4 | XS-32994 (01/12) | Defense Inside the Limits Endorsement - Follow Form |
| 5 | XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| 6 | XS 30063 (07/10) | Coverage Territory Definition Amendment |
| 7 | XS-26426 (02/09) | Employee Benefit Plan Limitation (Claims Made) |
| 8 | XS-23634 (01/2008) | Fellow Employee Exclusion Deleted |
| 9 | XS-23637 (01/2008) | Foreign Liability Limitation |
| 10 | XS-28727a (01/11) | Foreign Loss Indemnity Endorsement |
| 11 | XS-26428 (02/09) | Incidental Medical Malpractice Endorsement |
| 12 | ALL-32688 (01/11) | Notice to Others Endorsement  - Specific Parties |
| 13 | XS-20780a (08/09) | Pollution Exclusion - Combination Exception Time Element and Named Peril (with Insureds Retained Limit) |
| 14 | XS-23501 (04/08) | Unintentional Failure to Disclose |
| 15 | XS-34018 (01/12) | Unsolicited Communications Exclusion Amendment to Include FACTA |
| 16 | XS-25254 (02/09) | War Exclusion |
| 17 | XS-35571 (11/13) | Conditional Exclusion of Terrorism (Relating to Disposition of Federal Terrorism Insurance Act) - United States |
| 18 | XS-35558 (05/13) | Difference in Conditions / Difference in Limits Endorsement |



**ace group**

# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G27420618** | **07/01/2014 to 07/01/2015** |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 19 | TRIA11b (01/08) | Disclosure Pursuant to Terrorism Risk Insurance Act |
| 20 | XS-23669 (01/2008) | Cap on Losses From Certified Acts of Terrorism |
| 21 | XS-1V12b (08/11) | California Changes - Cancellation and Nonrenewal |
| 22 | MS-30913 (06/14) | Designated Person of Organization Exclusion |
| 23 | XS-20753 (08/06) | Knowledge of Occurrence |
| 24 | XS-20756 (08/06) | Notice of Occurrence |
| 25 | MS-11231 (06/12) | Amendment of Who is an Insured |
| 26 | MS-10110 (05/12) | Annual Period Extension – Natural Disaster or Other Catastrophe |
| 27 | MS-10106 (05/12) | Automobile Liability Limitation Endorsement |
| 28 | MS-22418 (06/13) | Cancellation Amendatory Endorsement |
| 29 | MS-10108 (05/12) | Clinical Trial Exclusion Endorsement |
| 30 | MS-11232 (06/12) | Amendment of Definition J. – Insured Contract |
| 31 | MS-12122 (07/12) | Personal Injury Definition Amended to Include Discimination |
| 32 | MS-12125 (07/12) | Foreign Liability Follow Form Limitation Endorsement – Exception for Products |
| 33 | MS-10102 (05/12) | Government Immunity Endorsement |
| 34 | MS-10100 (05/12) | Health Care Services Exclusion |
| 35 | MS-11233 (06/12) | Insureds in Media and Internet Type Businesses Exclusion |
| 36 | MS-12121 (07/12) | Manufacture of Drugs Exclusion |
| 37 | MS-24763 (10/13) | Who is an Insured Amendatory Endorsement |
| 38 | MS-10107 (05/12) | Non-Contributory Endorsement for Additional Insureds |
| 39 | MS-10104 (05/12) | Retained Limit Endorsement (No Underlying Insurance) |
| 40 | MS-10103 (05/12) | Who is an Insured – Affiliated Physician Practices Endorsement |
| 41 | MS-31305 (07/14) | Tie in of Limits Endorsement |
| 42 | XS-26429b (02/11) | Industrial Aid Aircraft Endorsement |
| 43 | XS-23632 (01/08) | Employee Benefit Plan Follow Form Endorsement (Occurrence) |

**Schedule of Underlying Insurance**



**ace group**

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| **McKesson Corporation** | **XOO G27420618** | **07/01/2014 to 07/01/2015** |

---

**General Liability (New York)**                                    Limits of Insurance

Company: Old Replubic Insurance Company

| | |
|---|---|
| Each Occurrence | $ 5,000,000 |
| Aggregate | $ 5,000,000 |

Policy Number:  MWZY 301928

Policy Period:  07/01/2014 to 07/01/2015

---

**General Liability (Canada)**                                    Limits of Insurance

Company: Old Replubic Insurance Company of Canada

| | |
|---|---|
| Each Occurrence | $ 5,000,000 |
| Aggregate | $ 5,000,000 |
| PI Occurrence | $ 5,000,000 |
| Non-Owned Auto | $ 2,000,000 |

Policy Number:  CZY301928

Policy Period:  07/01/2014 to 07/01/2015

---

**Employers Liability**                                    Limits of Insurance

Company: Old Republic Insurance Company

Bodily Injury by Accident

  $ 5,000,000 Each Accident

Policy Number:  MWC30192500 & MWXS301927

Bodily Injury By Disease

  $ 5,000,000 Each Policy

  $ 5,000,000 Each Employee

Policy Period:  07/01/2014 to 07/01/2015

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

**Employers Liability (US Oncology)**                          Limits of Insurance

Company: Old Republic Insurance Company                     Bodily Injury by Accident

                                                                    $ 1,000,000 Each Accident

Policy Number:  Various - Per schedule on File              Bodily Injury By Disease

                                                                    $ 1,000,000 Each Policy

                                                                    $ 1,000,000 Each Employee

Policy Period:  07/01/2014 to 07/01/2015

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

---

**Automobile Liability (US Oncology)**                        Limits of Insurance

Company: ACE Property & Casualty Company                    Bodily Injury and Property Damage

                                                                  Combined Single Limit

Policy Number:  CAL H08703929 001                              $ 1,000,000 Each Accident

Policy Period:  07/01/2014 to 07/01/2015

---

**Foreign DIC General Liability**                             Limits of Insurance

Company: Insurance Company of the State of PA     Each Occurrence          $ 1,000,000

                                                  General Aggregate        $ 2,000,000

Policy Number:  WS2000858                         PCO Aggregate            $ 2,000,000

Policy Period:  07/01/2014 to 07/01/2015          Master Policy Aggregate  $ 4,000,000

---

**Foreign DIC Employee Benefits Liability**     Limits of Insurance

Company:                                          $ 1,000,000 Each Occurrence

Insurance Company of the State of PA              $ 1,000,000 Aggregate

Policy Number:  WS2000858

Policy Period:  07/01/2014 to 07/01/2015

**Foreign DIC Automobile Liability**                Limits of Insurance

Company: Insurance Company of the State of PA        Bodily Injury and Property Damage

Combined Single Limit

Policy Number:  WS2000859                            $ 1,000,000 Each Occurrence

Policy Period:  07/01/2014 to 07/01/2015

---

**Foreign DIC – Employers Liability**               Limits of Insurance

Company: Insurance Company of the State of PA        Bodily Injury by Accident

$ 1,000,000 Each Accident

Policy Number:  WS20000860                           Bodily Injury By Disease

$ 1,000,000 Each Policy

$ 1,000,000 Each Employee

Policy Period:  07/01/2014 to 07/01/2015

---

**UK Employers Liability**                          Limits of Insurance

Company: Chartis Insurance Company

GBP 1,000,000 Each Occurrence

Policy Number:  ELB005063

Policy Period:  07/01/2014 to 07/01/2015



**ACE Umbrella Plus**<sup>SM</sup>
**Commercial Umbrella Liability Policy**

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

## I.   INSURING AGREEMENT

A.   We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

1.   This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

a.   The "bodily injury" or "property damage" is caused by an "occurrence";

b.   The "bodily injury" or "property damage" occurs during the "policy period"; and

c.   Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

2.   This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

B.   "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

C.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

1.   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2.   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3.   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

D.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II.  WHO IS AN INSURED

A.  The following are "insureds":

1.  The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2.  Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an "insured".  Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

c.  A limited liability company, you are an "insured".  Your members are also "insureds", but only with respect to the conduct of your business.  Your managers are "insureds", but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an "insured".  Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors.  Your stockholders are also "insureds", but only with respect to their liability as stockholders.

e.  A trust, you are an "insured".  Your trustees are also "insureds", but only with respect to their duties as trustees.

B.  Each of the following is also an "insured":

1.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are "insureds" for:

a.  "Bodily injury" or "personal and advertising injury":

(1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(2)  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

(3)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

(4)  Arising out of his or her providing or failing to provide professional health care services.

b.  "Property damage" to property:

(1)  Owned, occupied or used by you,

(2)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3. Any person or organization having proper temporary custody of your property if you die, but only:

   a. With respect to liability arising out of the maintenance or use of that property; and

   b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

5. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

   b. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

   c. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

   d. We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6. Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## III. DEFENSE AND SUPPLEMENTARY PAYMENTS

A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

1. When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

3. When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B. We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C. We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D. If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4. The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6. All costs taxed against the "insured" in the "suit".

7. Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8. Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E. Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made or "suits" brought; or

3. Persons or organizations making claims or bringing "suits".

B. The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1. Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2. Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D. Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E. If the applicable limits of "underlying insurance" have been:

1. Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V.  EXCLUSIONS

This insurance does not apply to:

### A.  Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1. A watercraft while ashore on premises you own or rent; or

2. A watercraft you do not own that is:

    a. Less than 26 feet long; and

    b. Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### B.  Asbestos

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

### C.  Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1. That the "insured" would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

    a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### D.  Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

E.  **Damage to Property**

"Property damage" to:

1.  Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3.  Property loaned to you;

4.  Personal property in the care, custody or control of the "insured";

5.  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6.  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

F.  **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

G.  **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.  **Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

I.  **Employer's Liability**

"Bodily injury" to:

1.  An "employee" of the "insured" arising out of and in the course of:

    a.  Employment by the "insured"; or

    b.  Performing duties related to the conduct of the "insured's" business; or

2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1.  Whether the "insured" may be liable as an employer or in any other capacity; and

    2.   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

    1.   To liability assumed by the "insured" under an "insured contract".

    2.   To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

**J.**  **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

    1.   Refusal to employ;

    2.   Termination of employment;

    3.   Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies, acts or omissions; or

    4.   Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

**K.**  **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**L.**  **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**M.**  **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

    1.   Advertising, broadcasting, publishing or telecasting;

    2.   Designing or determining content of web-sites for others; or

    3.   An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VII - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**N.**  **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

    1.   Causing or contributing to the intoxication of any person;

    2.   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O. **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1. The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2. Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3. Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P. **Nuclear**

1. To any injury or damage:

   a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To any injury or damage resulting form the "hazardous properties" of "nuclear material", if:

   a. The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

   a. "Hazardous properties" include radioactive, toxic or explosive properties;

   b. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

   c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

   d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

e.  "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f.  "Nuclear facility" means:

(1)  Any "nuclear reactor";

(2)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g.  "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h.  Injury or damage includes all forms of radioactive contamination of property.

**Q.  Other "Personal and Advertising Injury"**

1.  "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2.  "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3.  "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4.  "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5.  "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages:

a. That the "insured" would have in the absence of the contract or agreement; or

b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6.  "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

   b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (1) Any "insured"; or

      (2) Any person or organization for whom you may be legally responsible;

   d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

   e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

   f. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

   g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

   However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

      1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

      2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

3. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6. Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

   a. The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   b. The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7. Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

   a. The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   b. The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

   However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S. **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T.  **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U.  **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V.  **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication.  This exclusion also applies to communications which are made or allegedly made in violation of the:

    1.  Telephone Consumer Protection Act (TCPA) including any

        Amendment of or addition to such law; or

    2.  The CAN-SPAM Act of 2003, including any amendment of

        Or addition to such law; or

    3.  Any statute, ordinance or regulation, other than the TCPA

        Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W.  **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

## VI.  CONDITIONS

A.  **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B.  **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us.  If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

4. No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

## G. Inspection and Audit

1. We will be permitted, but not obligated to inspect the "insured's" property and operations. Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

2. We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

## H. Legal Action Against Us

1. No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

2. You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

## I. Maintenance of "Underlying Insurance"

During the "policy period", you agree:

1. To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

2. That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

3. That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

4. That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

5. That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

## J. Other Insurance

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to be excess of this policy.

## K. Premium

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium. It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

## L. Separation of "Insureds"

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

2.   Separately to each "insured" against whom claim is made or "suit" is brought.

M.  **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N.  **Transfer of Rights of Recovery Against Others to Us**

1.   If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The "insured" must do nothing after "loss" to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2.   Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment.  The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3.   If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O.  **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy.  The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

## VII. DEFINITIONS

A.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.   Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.   Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B.  "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment".

C.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D.  **"**Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E.  "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker".  "Employee" does not include a "temporary worker" or independent contractor.

F.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

I. "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured.

J. "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

K. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker".

L. "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M. "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. Power cranes, shovels, loaders, diggers or drills; or

    b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a. Equipment designed primarily for:

        i. Snow removal;

        ii. Road maintenance, but not construction or resurfacing; or

        iii. Street cleaning;

    b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O. "Occurrence" means:

1. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2. With respect to "personal and advertising injury", a covered offense.  All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy.  "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q. "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  The use of another's advertising idea in your "advertisement"; or

7.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S.  "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T.  "Products-completed operations hazard":

1.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

a.  Products that are still in your physical possession; or

b.  Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

i.  When all of the work called for in your contract has been completed.

ii.  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

iii.  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2.  Does not include "bodily injury" or "property damage" arising out of:

a.  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

b.  The existence of tools, uninstalled equipment or abandoned or unused materials.

U.  "Property damage" means:

1.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V.  "Retained limit" means either of the following:

1.  The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2.  The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W.  "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

1.  An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

X.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.  "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.  "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA. "Your product":

1.  Means:

    a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)  You;

        (2)  Others trading under your name; or

        (3)  A person or organization whose business or assets you have acquired; and

    b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

2.  Includes:

    a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b.  The providing of or failure to provide warnings or instructions.

3.  Does not include vending machines or other property rented to or located for the use of others but not sold.

BB. "Your work":

1.  Means:

    a.  Work or operations performed by you or on your behalf; and

    b.  Materials, parts or equipment furnished in connection with such work or operations.

2.  Includes:

    a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    b.  The providing of or failure to provide warnings or instructions.



**ACE Producer Compensation
Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our  website  at http://www.aceproducercompensation.com or by calling the  following toll-free  telephone number: 1-866-512-2862.

ALL-20887 (10/06)



## ACE GROUP SPECIALTY CLAIMS LOSS NOTIFICATION FORM

**Today's Date:**

**FORWARD BY FAX, MAIL OR E-MAILTO:**

ACE Excess
P.O. Box 5103
Scranton, PA 18505-0510
Fax No.:  (866)635-5687

ACEClaimsFirstNotice@acegroup.com

## Notice of:  (check all that apply)

☐ **First-Party Claim**          ☐ **Potential Claim**

☐ **Third-Party Claim**          ☐ **Litigation Initiated**

☐ **Other_____**

## Insured's Name & Contact Information

**Company Name:**   McKesson Corporation                    **Point of Contact:**   _____

**Address:**   One Post St, 34th Floor
San Francisco, CA 94104

**Phone Number:**   _____

## Broker/Agent's Name & Contact Information

**Company Name:**   Marsh Risk & Insurance Services          **Point of Contact:**   Linda Miner

**Address:**   345 California Street, Suite 1300
San Francisco, CA 94104

**Phone Number:**   _____

## Policy Information

**Policy Number:**   XOO G27420618                          **Policy Period:**   07/01/2014 to 07/01/2015

**Limits of Liability:**   $25,000,000   **per**   $25,000,000   **agg**   **Self-Insured Retention/Deductible:**   $25,000

## Loss Information

**Date of Incident/Claim:**   _____   **Location:**   _____

**Claimant Name/Address:**   _____

**Description of Loss:**   _____

_____

_____

_____

Please list all attached or enclosed documentation:   ☐  (check if none provided)

_____

_____

_____

Name of Person Completing This Form:   _____          Signature:   _____

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//<u>www.treas.gov/ofac</u>.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

## COMMERCIAL UMBRELLA LIABILITY

**INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE**

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully.

When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.
- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

# 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.
- Please be prepared to provide the following information:
  - Caller's name, title and contact telephone number
  - Name of Insured
  - Policy Number
  - A description of the incident
  - Any witnesses
  - Property, Product or Vehicle Information
  - Incident Location
  - Contact Person
  - Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty Insurance Company or one of its insurance company affiliates.*

XS-22552  (06/2007)

## SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **1** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

# NON-CONCURRENCY ENDORSEMENT
# (RECOGNIZES NON-CONCURRENCY)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **2** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Whereas, the policy (ies) listed in the schedule of "underlying insurance" are non-concurrent with the "policy period" hereunder;

In the event of reduction or exhaustion of the aggregate limit(s) of the policy (ies) by reason of "occurrences" prior to the inception of this policy, it is agreed that such insurance as is afforded by this policy shall:

(1)   in the event of reduction apply in excess of the reduced underlying limit; or

(2)   in the event of exhaustion continue in force as "underlying insurance".

Anything in this endorsement to the contrary notwithstanding this policy applies only to "occurrences" happening during the "policy period".

"Policy period" means the period stated in the Declarations of this policy.

All other terms and conditions remain unchanged.

_____
Authorized Agent

**PROFESSIONAL SERVICES LIABILITY EXCLUSION - EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE**

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **3** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

XS-21580 (01/07)

# DEFENSE INSIDE THE LIMITS ENDORSEMENT - FOLLOW FORM

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **4** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Paragraph D. of Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS** is deleted and replaced by the following:

D.   If we assume the defense of any "suit" against the "insured", we will pay the following items as listed below:

1.   All expenses we incur.

2.   Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy.  We do not have to furnish these bonds.

3.   The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance.  We do not have to furnish these bonds.

4.   The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5.   All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6.   All costs taxed against the "insured" in the "suit".

7.   Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay.   If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8.   Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance", then such expenses will reduce the corresponding applicable Limits of Insurance of this policy.  However, if expenses incurred to defend any "suit" do not reduce the applicable limits of "underlying insurance", then we will pay such expenses in addition to the applicable Limit of Insurance of this policy.

Section **IV.**, **LIMITS OF INSURANCE** is amended by the addition of the following:

If defense expenses are included within the "underlying insurance" or within any "other insurance", then references to damages in this Section are amended to include Defense and Supplementary Payments for the sole purpose of determining erosion of limits of insurance.

Section **VII.**, **DEFINITIONS**, Subsection **M.**, is deleted in its entirety and replaced with the following:

**M.** "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay because of damages as a result of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.   If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance",  then "loss" also includes Defense and Supplementary Payments, which will erode the limits of this insurance.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **5** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

> $250,000 Annual Limit

Catastrophe Management Coverage

A. Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

B. A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

C. There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

D. Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

E. Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

F. For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage". "Catastrophe management

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1.  expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2.  expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3.  medical expenses; funeral expenses; expenses for psychological counseling;  travel expenses; temporary living expenses or other necessary response costs and approved by us,  incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured".  A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

Authorized Agent

## COVERAGE TERRITORY DEFINITION AMENDMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **6** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section VII.**, **DEFINITIONS**, Item D. "Coverage territory" is deleted and replaced with the following:

D.   "Coverage territory" means anywhere in the world.

All other terms and conditions of this policy remain unchanged.

_____
                                   Authorized Representative

## EMPLOYEE BENEFIT PLAN LIMITATION
## [CLAIMS MADE]

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **7** | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

1.  Underlying Insurance

    Company:                  Illinois Union Insurance Company

    Policy Number:            MLP G2182102005

    Expiration Date:          07/01/2015

    Retroactive Date:         07/01/2006

    Limits of Insurance:

    Each Employee            $5,000,000

    Aggregate:               $5,000,000


    Company:                  Insurance Company of the State of Pennsylvania

    Policy Number:            WS20000860

    Expiration Date:          07/01/2015

    Retroactive Date:         None

    Limits of Insurance:

    Each Employee            $1,000,000

    Aggregate:               $1,000,000

2.  Our Retroactive Date:      07/01/2006

XS-26426 (02/09)                                                          Page 1 of 3

3.  Coverage

    Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

    "Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

    a.  Counseling "employees" on your "employee benefit programs";

    b.  Interpreting your "employee benefit programs";

    c.  Handling records for your "employee benefit programs";

    d.  Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

    e.  Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

    f.  Collection of contributions and application of contributions as provided in your "employee benefit programs";

    g.  Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

    h.  Processing of claims for your "employee benefit programs".

    "Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4.  Claims Made Provision

    To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

    a.  Retroactive Date

        If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

        i.   The date such claim is first made against you is during OUR policy period, and

        ii.  The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

    b.  Extended Reporting Period

        If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in  like manner, subject to all of the following:

        i.   Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

        ii.  The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

        iii. The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c.  Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance"  above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

i.   The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

ii.  Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii. If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d.  Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.


All other terms and conditions of this policy remain unchanged.


_____
Authorized Agent

## FELLOW EMPLOYEE EXCLUSION DELETED

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1)   To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## FOREIGN LIABILITY LIMITATION

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **9** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the "scheduled underlying insurance:"

1) This exclusion shall not apply; and

2) Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance," subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# FOREIGN LOSS INDEMNITY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **10** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**THIS ENDORSEMENT APPLIES ONLY WHEN A "FOREIGN OCCURRENCE", ARISING OUT OF A "FOREIGN BUSINESS OPERATION" AND CAUSING "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY", TAKES PLACE IN A COUNTRY WHERE WE ARE NOT "LICENSED".**

The policy is amended to add the following:

## FIRST NAMED INSURED INDEMNITY COVERAGE

**I.   INSURING AGREEMENT**

This endorsement applies only when a "foreign occurrence", arising out of a "foreign business operation" and causing "bodily injury", "property damage" or "personal and advertising injury", takes place in a country where we are not "licensed".

In that case, rather than directly pay on behalf of and defend your "foreign business operation", we will indemnify the "First Named Insured", in excess of the "retained limit", for "loss" and defense and supplementary payments in accordance with this endorsement. This endorsement provides the only coverage under the policy for "bodily injury", "property damage" or "personal and advertising injury" arising out of a "foreign occurrence".

The terms, conditions and limitations in sub-section A.1., A.2., B., C. and D. of Section **I. INSURING AGREEMENT** in the policy will apply to our duty to indemnify the "First Named Insured".

**II.   WHO IS AN INSURED**

Section **II. WHO IS AN INSURED**, is amended to provide that a "foreign business operation" is not an "insured" on whose behalf we have a direct duty to pay settlements or judgments or a direct duty to defend under this policy.

**III.   DEFENSE AND SUPPLEMENTARY PAYMENTS - ASSIGNMENT OF RIGHTS**

When this endorsement applies, rather than directly defend your "foreign business operation", we will indemnify the "First Named Insured" for defense costs incurred in defending a "suit" brought against a "foreign business operation", provided that (a) the "foreign business operation" gives the "First Named Insured" the right to control

the investigation, defense and settlement of the "suit" and (b) the "First Named Insured" assigns this right to us. We will associate with the "First Named Insured" to conduct such investigation, defense and settlement as provided in Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, except that we will indemnify the "First Named Insured" rather than directly defend and pay supplementary payments.

## IV. LIMITS OF INSURANCE

A. The insurance provided by this endorsement is subject to the applicable aggregate and each occurrence limits of liability stated in the Declarations, and any "losses" for which we pay indemnity will erode and be counted against such limits.

B. Subject to the applicable aggregate and each occurrence limits of liability stated in the declarations, our limit of liability for "loss" will be the amount which the "First Named Insured":

1. Has indemnified a "foreign business operation", or

2. Represents to us that it is obligated to indemnify the "foreign business operation".

However, if this policy provides for a percentage allocation of liability with respect to the insured's or the "foreign business operation's" interest in a joint venture, limited liability company or partnership, the allocation set forth in such provision will apply.

The terms, conditions and limitations set forth in Section **IV. LIMITS OF INSURANCE** in the policy will apply to our duty to indemnify the "First Named Insured".

## V. CONDITIONS

When this endorsement applies, the following conditions apply in addition to the conditions and limitations provided elsewhere in the policy.

**A. Claims Made/Reported Coverage (if applicable)**

Any requirements in the policy that a claim be first made during the policy period or any discovery or extended reporting period will also apply to all claims made against a "foreign business operation" for which the "First Named Insured" seeks indemnification.

**B. Additional Notice Duties of the "First Named Insured"**

With respect to a "foreign occurrence" which may result in a claim for damages under this endorsement, the "First Named Insured" assumes the duty to notify us, and must notify us in accordance with the standards described in Condition **F. Duties in the Event of "Occurrence", Claim or "Suit"** in the policy.

**C. Proof of Insurance**

This policy may not be offered as proof of insurance unless permitted by local applicable law.

**D. Truthfulness and Accuracy of Material Information**

When this endorsement applies, the "First Named Insured":

1. Is responsible for the truthfulness and accuracy of any material information provided to us with respect to a "foreign business operation", "foreign occurrence", claim, "suit" or "loss"; and

2. Will not, at any time, intentionally conceal or misrepresent a material fact concerning this policy, including the risk to be insured, a "foreign business operation", a "loss", claim or "suit" or a "foreign occurrence".

## VI.  DEFINITIONS

When this endorsement applies, Definition M. "Loss" in the policy is deleted and replaced with the following:

M. "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "foreign business operation" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", for which the "foreign business operation" makes a claim for reimbursement from the "First Named Insured", after making proper deduction for all recoveries and salvages.

The following definitions are added to the policy and apply to the coverage provided by this endorsement:

"First Named Insured" means the first Named Insured shown in the Declarations.

"Foreign business operation" means a subsidiary of the "First Named Insured" and any other organization under its control or active management at the inception date of the policy or added by endorsement, and having its principal place of business, statutory domicile, residence, or business operation subject to liability for otherwise covered "bodily injury", "property damage" or "personal and advertising injury" located in a country where we are not "licensed".

"Foreign occurrence" means an "occurrence" arising from the premises, operations or products of a "foreign business operation" taking place in or causing "bodily injury", "property damage" or "personal and advertising injury" in a country where we are not "licensed". Country includes any political jurisdiction that independently regulates the licensing of insurance companies.

"Licensed" means expressly approved in accordance with law by the applicable regulatory body to conduct the business of insurance in a country as a regulated, authorized insurer. "Licensed" is synonymous with admitted and authorized.  It does not include being recorded as an eligible foreign or alien non-admitted insurer.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **11** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **II. WHO IS AN INSURED,** Section B.1.a.(4) is deleted and replaced by the following:

(4) arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees" Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence".

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a. medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or
b. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## NOTICE TO OTHERS ENDORSEMENT  - SPECIFIC PARTIES

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **12** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**A.** If we cancel the Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

**B.** We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

**C.** The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

**D.** We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

**E.** We may arrange with your representative to send such notice in the event of any such cancellation.

**F.** You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

**G.** This endorsement does not apply in the event that you cancel the Policy.

### SCHEDULE

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
| **Medassets** | | **13727 Noel Road, Suite 1400 Dallas, TX 75240** |
| **Port Authority of New York & New Jersey Newark Liberty International Airport c/o EBIX BPO** | | **P.O. Box 881639 San Diego, CA92168-1639** |

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Representative

## POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL (with Insureds Retained Limit)

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **13** | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement | |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** | |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., **EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

1. To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2. To any "loss", cost or expense arising out of any:

   a. Directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. Is both unexpected and unintended from the standpoint of the "insured";

2. Commenced abruptly and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3. Is caused:

   a. Solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, flood, earthquake, sprinkler leakage, or discharge from a heating, ventilating or air conditioning system or collision or upset of a motor vehicle, mobile equipment or an aircraft;

   b. Or arises out of "your product" included in the "products-completed operations hazard"; or

c. By any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (1) Is at or from any:

      (a) Premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

      (b) Premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

         And

   (2) Is known by any "insured" within **twenty (20)** days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

   (3) Is reported to us within **eighty (80)** days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. Loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. Any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind. Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not. Waste means any substance that:

   a. Is left over, or no longer in use, or discarded;

   b. Is to be reclaimed or recycled, or reconditioned; or

   c. Has been removed, treated, stored or disposed of as part of any environmental remediation effort.

It is further agreed that solely with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" due to any exclusion or exclusions contained therein, the "insured's" "retained limit" in the Limits of Insurance section of the Declarations is amended to **$5,000,000**.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

## UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **14** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies all insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## UNSOLICITED COMMUNICATIONS EXCLUSION AMENDMENT TO INCLUDE FACTA

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **15** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS**, Item **V. Unsolicited Communications** is deleted and replaced with the following:

**V.  Recording and Distribution of Material or Information in Violation of Law**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone that violates or is alleged to violate:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4. Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# WAR EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **16** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Exclusion W. of SECTION V. EXCLUSIONS is deleted in its entirety and replaced by the following:

**W.  War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

All other terms and conditions of the policy remain unchanged.

_____

Authorized Agent

## CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM INSURANCE ACT) - UNITED STATES

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **17** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

A.  Applicability of the Provisions of this Endorsement

    1.  The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

        a.  The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this policy; or

        b.  A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

            (1)  Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

            (2)  Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

            (3)  Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

    2.  If the provisions of this endorsement become applicable, such provisions:

        a.  Supersede any terrorism endorsement already endorsed to this policy that addresses certified acts of terrorism and/or other acts of terrorism within the  United States, or outside of the United States in the case of an air carrier or vessel (as described the federal law) or the premises of a United States mission; and only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

        b.  Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy that addresses certified acts of terrorism and/or other acts of terrorism, will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any coverage in this policy or "underlying insurance" to which this endorsement is applicable, and includes but is not limited to bodily injury, property damage, personal and advertising injury or environmental damage as may be defined in any applicable coverage in this policy or "underlying insurance".

C. The following exclusion is added:

EXCLUSION OF TERRORISM

This insurance does not apply to "any injury or damage" directly or indirectly caused by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

a.   Physical injury that involves a substantial risk of death; or

b.   Protracted and obvious physical disfigurement; or

c.   Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this policy.

In the event of any incident of "terrorism" that is not subject to this exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this policy.


All other terms and conditions of the policy remain unchanged.

.

_____

Authorized Representative

# DIFFERENCE IN CONDITIONS  DIFFERENCE IN LIMITS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **18** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### ACE UMBRELLA PLUS$^{SM}$ COMMERCIAL UMBRELLA LIABILITY POLICY

If this policy provides greater coverage, limits or conditions than any of the policies listed in the Schedule of Other Policies below (each such scheduled policy referred to as an Other Policy), then this policy will provide coverage for loss to the extent of the difference in the coverages, limits or conditions between this policy and the Other Policy, subject to the terms, limitations and conditions of this policy.

This policy provides such coverage on an excess basis for and only to the extent of any such difference in terms, limits and conditions. In no event will the coverage afforded under this policy, in combination with any one or more of such Other Policies, exceed the applicable Limit of Insurance of this policy. The most we will pay if this policy has higher limits than any Other Policy is the difference between the applicable Limit of Insurance of this policy and the limit of insurance for any such Other Policies.

Schedule of Other Policies:

| Country of Issuance | Insurer | Policy Number |
|---|---|---|
| Canada | ACE INA Insurance | XBC324006 |

All other terms and conditions of this policy remain unchanged.

Authorized Representative

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **19** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: **$40,000**.

_____

Authorized Agent

Includes copyrighted material of Insurance Services office, Inc., with its permission

TRIA11b (1/08)

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **20** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   1. The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C. In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

   1. The Limits of Insurance of the Declarations is amended to include:

      "Certified act of terrorism retained limit" <u>$5,000,000</u>

   2. "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance.  "Certified act of terrorism" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

   3. Solely with respect to this endorsement, Section III., Defense Provisions and Supplement Payments is amended as follows:

      a. With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out a "certified act of terrorism".  However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b.  We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit".  Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit".  We may make such investigation as we require and effect settlement of any "suit" so defended.

c.  We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **21** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY
EXCESS LIABILITY POLICY
EXCESS LIABILITY CATASTROPHE POLICY**

**A.** The **Cancellation** Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **All Policies In Effect For 60 Days Or Less**

   If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

   **a.** 10 days before the effective date of cancellation if we cancel for:

   **(1)** Nonpayment of premium; or

   **(2)** Discovery of fraud by:

      **(a)** Any insured or his or her representative in obtaining this insurance; or

      **(b)** You or your representative in pursuing a claim under this policy.

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. **All Policies In Effect For More Than 60 Days**

   **a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

   **(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

   **(2)** Discovery of fraud or material misrepresentation by:

      **(a)** Any insured or his or her representative in obtaining this insurance; or

      **(b)** You or your representative in pursuing a claim under this policy.

   **(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

   **(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

   **(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

   **(6)** A determination by the Commissioner of Insurance that the:

    **(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    **(b)** Continuation of the policy coverage would:

        **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

        **(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**(8)** A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

**(9)** Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

**(10)** A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund, if any, will be computed on a pro rata basis. However, the refund may be less than pro rata if we made a loan to you for the purpose of payment of premiums for this policy. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

    We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

_____
                                     Authorized Representative

## DESIGNATED PERSON OR ORGANIZATION EXCLUSION

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **22** | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of the premises, operations, products or activities of any person or organization shown in the following Schedule:

<u>SCHEDULE</u>

Celesio AG and its subisidiaries

However, this exclusion will not apply to liability of the Named Insured for "bodily injury", "property damage" or "personal and advertising injury" to the extent such liability is imposed vicariously on the Named Insured, solely based on its status of having an ownership interest in the Designated Organization, and provided further that coverage is asserted by or on behalf of the Named Insured and not by or on behalf of the Designated Organization.

With respect to any coverage provided by virtue of this exception to the exclusion in this endorsement, this insurance will apply excess of and will not contribute with any "other insurance", whether primary, excess, contingent or on any other basis. The definition of "other insurance" is amended to include any insurance available to the Designated Organization.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

# KNOWLEDGE OF OCCURRENCE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **23** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Vice President of Risk Management or General Counsel shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# NOTICE OF OCCURRENCE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **24** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

XS-20756 (08/06)                                                                 Page 1 of 1

## AMENDMENT OF WHO IS AN INSURED

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **25** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II WHO IS AN INSURED  Paragraph B. is hereby amended to add the following:

7. Any person or organization you become obligated to include as an additional "insured" under the policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" arising out of your operations or premises owned by or rented to you.

However, the insurance provided by this endorsement will not be broader than the coverage provided by this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## ANNUAL PERIOD EXTENSION - NATURAL DISASTER OR OTHER CATASTROPHE

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **26** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

In the event of a natural disaster or other catastrophe that prevents all written, telephonic and electronic communication between us and the Named Insured at the expiration of the "policy period", the "policy period" will automatically be extended until the earlier of the two following times:

1. thirty (30) calendar days from the original expiration date of such "policy period"; or
2. fourteen (14) calendar days after written, telephonic or electronic communication between us and the Named Insured is once again possible.

The additional premium for such extension will be calculated on a pro-rata basis. Such extension will be cancelled automatically retroactive to its inception if the additional premium or proof of payment thereof is not received by us within thirty (30) calendar days following the earlier of 1. or 2. above.

Nothing in this endorsement will operate to increase or reinstate the Limits of Liability as stated in the Declarations.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## AUTOMOBILE LIABILITY LIMITATION ENDORSEMENT

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **27** | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Automobile Liability

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement.  Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy #MWTB301926 and Old Republic Insurance Company of Canada Policy #CTB301926 subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy # MWTB301926 and Old Republic Insurance Company of Canada Policy # CTB301926.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## CANCELLATION AMENDATORY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **28** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Parts 1., 2., 5. and 6. of Condition D of Section VI CONDITIONS are deleted and replaced by the following:

1. This policy may be cancelled by you by mailing to us written notice stating when such cancellation shall be effective.

2. This policy may be cancelled by us by mailing to you at your last known address, written notice stating when, not less than one hundred twenty (120) days thereafter, ten (10) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period". Under no circumstance will our notice of cancellation to you be less than the minimum required by State law or regulation.

5. If this policy is cancelled, the final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Annual Premium as shown in the Declarations.

6. Premium adjustment may be made at the time cancellation becomes effective. Our check or the check of our representative mailed to you shall be sufficient proof of any refund or premium due you.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# CLINICAL TRIAL EXCLUSION ENDORSEMENT

| Named Insured | | | Endorsement Number | |
|---|---|---|---|---|
| **McKesson Corporation** | | | **29** | |
| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | | |
| **ACE Property and Casualty Insurance Company** | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial". However, this exclusion does not apply to late phase trial services, otherwise referred to as Phase IV, and provided by McKesson Specialty Canada.

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## AMENDMENT OF DEFINITION J. – INSURED CONTRACT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **30** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII.  DEFINITIONS are amended as follows:

Definition J. is deleted and replaced by the following:

"Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a.  preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

2.  under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## PERSONAL INJURY DEFINITION AMENDED
## TO INCLUDE DISCRIMINATION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **31** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII, DEFINITIONS, Part R. "Personal and advertising injury" is deleted and replaced with the following:

R.  "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1.  False arrest, detention or imprisonment;
2.  Malicious prosecution;
3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5.  Oral or written publication, in any manner, of material that violates a person's right of privacy;
6.  Discrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only is such discrimination or humiliation is:
    a.  Not intentionally committed by the "insured,"
    b.  Not committed by, at the direction of, or with the knowledge of you and/or any of your executive officers or directors,
    c.  Not directly or indirectly related to the employment of the person or persons by you, and
    d.  Not in violation of any provision(s) of the Americans with Disabilities Act (including but not limited to any amendments or revisions thereto and any rules or regulation promulgated thereunder) or any similar common or statutory law,
7.  The use another's advertising idea in your "advertisement," or
8.  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

## FOREIGN LIABILITY FOLLOW FORM LIMITATION
## ENDORSMENT – EXCEPTION FOR PRODUCTS

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **32** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Section V. EXCLUSIONS** is amended to include the following:

Foreign Liability

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the scheduled "underlying insurance"

   1. This exclusion shall not apply; and
   2. Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of such "underlying insurance," subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, and this policy will be no broader than the coverage provided by "underlying insurance."

Notwithstanding the above provisions, with respect to claims or "suits" alleging "bodily injury," "property damage" or "personal and advertising injury" that (a) occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada, and (b) arises out of "your product", this insurance will apply subject to subject to a "retained limit" which is a self-insured retention as follows:

　　　　$5,000,000 each "occurrence" ("loss" and defense expenses erode SIR)

　　　　$5,000,000 annual aggregate ("loss" and defense expenses erode SIR)

All other terms and conditions of this policy remain unchanged.

_____
　　　　　　　　　　　　　　Authorized Representative

## GOVERNMENT IMMUNITY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **33** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

We shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority of New York and New Jersey (Port Authority), raise any defense involving in any way the jurisdiction of the Tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## HEALTH CARE SERVICES EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **34** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Solely with respect to Interlakes Oncology, PC, and those entities identified in the Schedule on Endorsement 40 (WHO IS AN INSURED ENDORSEMENT Afficated Physician Practices) of this policy Section V, DEFINITIONS, is amended by the addition of the following exclusion:

**Health care Services**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" sustained by a "patient" and arising out of the providing of or failing to provide "health care services" by the "insured".

For purposes of this endorsement, the following definitions are added to the policy;

"Health care services" means medical, surgical, dental, diagnostic or nursing services; diagnosis or treatment of any sickness, disease, condition or injury; dispensing or administering of drugs, medicines, vaccines medical, surgical or dental supplies, devices or appliances; advisory services or counseling for mental health, substance abuse or addiction; physiotherapy, chiropractic or chiropody; optometry or optical services, including the prescribing, preparation or fitting of ophthalmic lenses or similar products; providing hearing aid services, including the prescribing, preparation or fitting of hearing aids.

"Patient" means a person under the care of or receiving "health care services" from any "insured" or any other person or organization operating on behalf of any "insured".

All other terms and conditions of this policy remain unchanged.


_____
Authorized Representative


MS-10100 (05/12)                                                                                   Page 74 of 1

# INSUREDS IN MEDIA AND INTERNET TYPE BUSINESSES EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **35** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion M. of Section **V. EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

**M. "Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1. Advertising, broadcasting, publishing or telecasting;
2. Designing or determining content of web-sites for others; or
3. An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VII - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

MS-11233(06/12)      © 2012      Page 1 of 1

## MANUFACTURE OF DRUGS EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **36** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section V. EXCLUSIONS is amended to include the following additional exclusion.

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the Insured".

For the purposes of this exclusion, the term manufacture shall not include packaging or labeling of drugs.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

MS-12121(07/12)                                                          Page 1of 1

## WHO IS AN INSURED AMENDATORY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **37** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

1. Paragraphs A. 2. and B. 5.,. of Section **II. WHO IS AN INSURED** are deleted and replaced by the following:

   A. 2.   Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management, at the inception date of this policy is an "insured", providing such subsidiary or organization was made known to us prior to or at the inception date of this policy;

   B. 5.   Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as an "insured", subject to the following:
   a. If at the time of acquisition, inception of, control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $1,000,000,000 and (b) the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of, control or formation, with no additional premium charge.

   b. If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you exceeds $1,000,000,000 or (b) the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 120th day after you acquire, take control of, or form the organization, or the end of the "policy period", whichever is earlier.

   c. For any organization covered by paragraph b. above, coverage will expire on the 120th day after you acquire, take control of, or form the organization, or the end of the "policy period", whichever is earlier, unless, within the 120 day period, you request us to include such organization as an "insured", and we agree to do so.

   d. We may, at our option, make an additional premium charge for any organization that you acquire, take control of, or form during the "policy period", when that organization is not automatically covered in 5.a. above.

   e. Coverage does not apply to any liability arising out of an "occurrence" first taking place before you acquire, take control of, or form any organization covered by this endorsement.

    f.    If you are a limited liability company or limited liability partnership that was created subsequent to the inception date of this policy as a result of internal restructuring or realignment, you are an "insured" provided that:

        1.    The newly created limited liability company or limited liability partnership comprises operations which are not materially different from operations which were part of the "insured" prior to the date of such creation; and

        2.    The newly created limited liability company or limited liability partnership continues to operate in a similar fashion as the "insured" prior to the date of such creation.

2.   Section **II. WHO IS AN INSURED** is amended to include the following:

It is agreed that all Joint Ventures, Partnerships, and/or Limited Liability Companies in which an "insured" has an ownership interest are insureds under this policy. The coverage under our policy shall be limited to the "insured's" interest in such joint venture or the amount of insurance such "insured" is contractually obligated to provide. Notwithstanding the foregoing, it is also agreed the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture.

The insurance provided by this endorsement for any joint venture is excess over any valid and collectible insurance that has been purchased in the name of such joint venture. Such "other insurance" shall erode any "retained limit" under this policy.

If upon final adjudication of a claim or suit by a court of law, the "insured" is assessed a greater share of the damages arising out of the joint venture than its percentage interest in the joint venture, our limits of insurance under this policy shall be based upon the actual share of damages assessed.

For the purpose of this endorsement, joint venture means leveraged lease agreement, partnership, joint venture, limited liability company, and any other organization or entity in which the Named Insured shares an interest and/or management control with another party in interest.

Any partnership, co-venture, joint venture, limited liability company or limited liability partnership that is an "insured" by virtue of this endorsement shall not be subject to the last unmarked paragraph of Section II. WHO IS AN INSURED, which reads: *"Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."*

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **38** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

For any person or organization qualifying as an "insured" under Section II WHO IS AN INSURED, Paragraph B.7. (as added by endorsement to this policy) the following is added to
**Section VI. CONDITIONS Paragraph J. Other Insurance**

> If "other insurance" is available to an "insured" we cover under any of the endorsements listed or described above (the "Additional Insured") for a "loss" we cover under this policy, this insurance will apply to such "loss" on a primary basis and we will not seek contribution from the "other insurance" available to the Additional Insured.  Your "retained limit" still applies to such "loss" and any payments you receive from "other insurance" will not erode your "retained limit".

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

MS-10107 (05/12)                                                                 Page 1 of 1

## RETAINED LIMIT ENDORSEMENT
## (NO UNDERLYING INSURANCE)

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **39** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1. The preamble in the policy is deleted and replaced with the following:

   Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

   Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

   Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VII. DEFINITIONS**.

   We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2. Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

   A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

      1. When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
      2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy. Any such payment we make shall reduce the Limits of Insurance. Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

3.   Paragraph E. of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

E.   If the applicable "retained limits" listed on the Schedule of Retained Limits have been:
1.   Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

2.   Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4.   Exclusions A., I. and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5.   Conditions A., C., and I. and Paragraph 3. only of Condition N. of **Section VI. CONDITIONS** are deleted and replaced with the following:

A.   **Appeals**

In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal. If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

C.   **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

I.   **Maintenance of "Underlying Insurance"** is deleted.

N.   **Transfer of Rights of Recovery Against Others to Us**

3.   If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6.   Definitions P., and V. of **Section VII. DEFINITIONS** are deleted and replaced with the following:

P.   "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

V.  "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

### Schedule of Retained Limits

| Coverage(s) | Retained Limit | | Defense Treatment |
|---|---|---|---|
| General  Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $7,500,000 | General Aggregate | |
| Products Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $5,000,000 | Aggregate | |
| Auto Liability | $5,000,000 | Each Occurrence | Outside Limits & SIR |
| Employers Liability | $1,000,000 | Bodily Injury – Each Accident OR Bodily Injury by Disease – Each Employee | Outside Limits & SIR |
| General Liability - US Oncology | $5,000,000 $5,000,000 $5,000,000 | Each Occurrence Personal and Advertising Injury General Aggregate | Outside limits & within SIR |

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## WHO IS AN INSURED – AFFILIATED PHYSICIAN PRACTICES ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | Endorsement Number<br>**40** |
|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G27420618** | Policy Period<br>**07/01/2014 to 07/01/2015** | Effective Date of Endorsement<br>**07/01/2014** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

A.  Section **II**, **WHO IS AN INSURED**, is amended by the addition of the following:

   1.  The entities listed in the schedule below shall be considered "insureds", but solely to the extent that:

      a.  such entity is under your management;
      b.  such entity has entered into a written Comprehensive Strategic Agreement (hereinafter "CSA") with you, which is in effect during the policy period and executed prior to any "occurrence" taking place; and
      c.  any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

      Such entity's status as an "insured" ends when its CSA with you is cancelled, terminated or expires.

   2.  Any entity, other than those entities listed in the schedule below, that has entered into a written CSA with you shall be considered an "insured", but solely to the extent that:

      a.  such entity is under your management;
      b.  such entity's CSA with you is in effect during the policy period and executed prior to an "occurrence" taking place; and
      c.  any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

      Such entity's status as an "insured" ends when its CSA with you is canceled, terminated or expires.

B.  All such entities and written CSAs must be reported in writing to us within fifteen (15) days after the expiration of this policy.  However, any inadvertent or unintentional failure to report such entities or CSAs within fifteen days shall not, in and of itself, preclude coverage for such entities as "insured" under this policy.

**C.** Section **VII**, **DEFINITIONS**, Subsection I, "Insured", is deleted and replace with the following:

  I.   "Insured" means the Named Insured shown in the Declarations or added by endorsement and any individual or organization qualifying as such under Section II – Who is an Insured.

| Entity |
| --- |
| Allison, Curtis, Kingsley, Meoz, Michael & Sanchez, PC (Comprehensive Cancer Centers of Nevada) |
| Arizona Oncology Associates, P.C. |
| Arkansas Oncology Associates, PA** |
| Arthritis Consultants of Tidewater, Inc. |
| Asheville Hematology & Oncology Associates PA** |
| Cancer Care Network South Texas |
| Cancer Centers of Florida, PA** |
| Cancer Centers of North Carolina, PC |
| Cancer Centers of North Carolina-Asheville, PC** |
| Comprehensive Cancer Care |
| Flavio Kruter MD, PA** |
| Florida Cancer Affiliates, PL** |
| Florida Institute of Research, Medicine & Surgery, PA** |
| Hematology Oncology Associates of Illinois, LLC** |
| Hematology Oncology Associates, Inc.  (MO) |
| Hematology Oncology Associates, Inc. (Medford, OR) |
| Illinois Cancer Specialists (Cancer Care & Hematology Specialists of Chicagoland PC) |
| Interlakes Oncology Hematology P.C. |
| Kansas City Cancer Center, LLC** |
| Mahoning Valley Hematology-Oncology Associates, Inc. (The Hope Center for Cancer Care) |
| Maryland Oncology Hematology, PA |
| Minnesota Oncology Hematology, PA |
| Missouri Cancer Associates, LLP |
| Murrell, Westgate & Bryer, Inc. |
| New York Oncology Hematology, PC |
| Northwest Cancer Specialists, PC (Compass Oncology) |
| Ocala Oncology Center, PL |
| Oncology & Hematology Associates, Inc.** |
| Oncology and Hematology Associates of South Carolina, LLC** |
| Oncology and Hematology Associates of Southwest Virginia, Inc. (Blue Ridge Cancer Care) |

| |
|---|
| Oncology and Radiation Associates, PA |
| Oncology Associates of Oregon, PC (Willamette Valley Cancer Center) |
| Oncology Hematology Radiation Care, LLC (Advanced Medical Specialties) |
| Oncology Pharmacy Services, Inc. (Texas Oncology) |
| Regional Cancer Care, PA |
| Rocky Mountain Cancer Center, LLP |
| Shenandoah Oncology PC |
| South Florida Oncology & Hematology Consultants |
| St. Louis Urological Surgeons, Inc. (ARCH Cancer Care) |
| Texas Oncology, P.A. |
| Venango Oncology Hematology Associates, PC |
| Virginia Cancer Specialists, PC (Fairfax-Northern Virginia Hematology-Oncology, PC) |
| Virginia Oncology Associates, PC |
| Wilshire Oncology Medical Group |

* Denotes Inactive entities or those in the process of dissolution


All other terms and conditions of the policy remain unchanged.


_____
Authorized Representative

## TIE IN OF LIMITS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **41** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance is amended to include the following additional Condition:

If this insurance and the insurance provided by the policy(ies) listed in the schedule below apply to the same claim, "suit" or "occurrence", the maximum combined limits of insurance available under this policy and the scheduled policy(ies) below for such claim, "suit" or "occurrence" will not exceed:

$ 25,000,000 Each Occurrence

$ 25,000,000 General Aggregate

$ 25,000,000 Products-Completed Operations Aggregate

These limits are the most that will be paid under this policy and the policies listed in the schedule below, combined, for all claims, damages, "losses" or "suits", regardless of any aggregate, per "occurrence", per incident, or per accident limit, or any other limit of liability or limit of insurance in this policy or the scheduled policy.

### SCHEDULE

| Country of Issuance | Insurer | Policy Number |
|---|---|---|
| Canada | ACE INA Insurance | XBC324006 |

Any "loss" paid under the scheduled policy shall reduce by such amount the applicable limit of insurance under this policy.  Any claims, damages, "losses" or "suits" seeking coverage under any policy scheduled above may not be brought under this policy.  Any claims, damages, "losses" or "suits" seeking coverage under this policy may not be brought under any policy scheduled above.

Nothing in this provision shall serve to increase any applicable limit of insurance of this policy or the scheduled policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

**INDUSTRIAL AID AIRCRAFT ENDORSEMENT**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| ............McKesson Corporation | | | 42 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XOO | G27420618 | 07/01/2014 **to** 07/01/2015 | 07/01/2014 |
| Issued By (Name of Insurance Company) | | | |
| ACE Property and Casualty Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.   LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$500,000,000 Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned by or rented or loaned to any "insured".  Use includes operation and "loading and unloading").

II.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any "suit" against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

III.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV.   Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance".

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses".

V.   For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.  Aircraft
This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured". Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI.  For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1.  attorney's fees and all other investigation, loss adjustment and litigation expenses;
2.  premiums on bonds to release attachments;
3.  premiums on appeal bonds required by law to appeal any claim or "suit";
4.  costs taxed against the "insured" in any claim or "suit";
5.  pre-judgment interest awarded against the "insured"; and
6.  interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used predominantly for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# EMPLOYEE BENEFIT PLAN FOLLOW FORM ENDORSEMENT [OCCURRENCE]

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **McKesson Corporation** | | | **43** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27420618** | **07/01/2014 to 07/01/2015** | **07/01/2014** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of liability shown therein, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "administration" of any "employee benefit program(s)".

"Administration" includes but is not limited to performing any of the following functions for an "employee benefit program":

1.  Counseling "employees" on your "employee benefit programs";

2.  Interpreting your "employee benefit programs";

3.  Handling records for your "employee benefit programs";

4.  Effecting enrollment, termination or cancellation of employees under your "employee benefit programs";

5.  Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs";

6.  Collection of contributions and application of contributions as provided in your "employee benefit programs";

7.  Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee benefit programs"; or

8.  Processing of claims for your "employee benefit programs".

"Employee benefit program(s)" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

_____
Authorized Agent

XS-23632 (01/2008)

# EXHIBIT G



**Declarations**
**ACE Umbrella Plus<sup>sm</sup>**
**Commercial Umbrella Liability Policy**

| Policy Symbol:  XOO | Previous Policy Symbol:  XOO |
|---|---|
| Policy Number:  G27610390 001 | Previous Policy Number:  G27420618 |

COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW
**ACE Property and Casualty Insurance Company**
436 Walnut Street
Philadelphia, Pennsylvania 19106

| Named Insured and Address | Producer Name and Address |
|---|---|
| McKesson Corporation<br>One Post Street, 34th Floor<br>San Francisco, California 94104 | MARSH RISK & INSURANCE SERVICES<br>345 CALIFORNIA STREET<br>SAN FRANCISCO, California 94104<br><br>PRODUCER CODE  355110 |

| Policy Period:   From  07/01/2015  to  07/01/2016 | 12:01 A.M Standard Time at the Address of the Named Insured as stated herein |
|---|---|

### Limits of Insurance

$ 25,000,000  Each Occurrence

$ 25,000,000  General Aggregate

$ 0  Products Completed-Operations Aggregate          $ N/A  Self-Insured Retention

### Annual Premium

$ 798,550 Premium                              $ 38,026 Terrorism Premium included in Annual Premium

$ 0  [State Surcharge]

$ 798,550  Premium, including all Surcharges and Assessments

### Policy Period Premium

$ 798,550 Premium                              $ 38,026 Terrorism Premium included in Annual Premium

$ 0  [State Surcharge]

$ 798,550 Premium, including all Surcharges and Assessments

### Schedule of Underlying Insurance

Refer to the attached Schedule of Underlying Insurance, which forms a part of this Policy's Declarations.

### Endorsements and Forms

Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.



# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | XOO G27610390 001 | 07/01/2015  to 07/01/2016 |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| | XS-22695a (08/09) | Declarations ACE Umbrella Plus Commercial Umbrella Liability Policy |
| | XS-9U57b (08/09) | Schedule of Underlying Insurance |
| | XS-8w89a (08/09) | Schedule of Underlying Insurance (Continued) |
| | XS-20835 (08/06) | Commercial Umbrella Liability Policy |
| | ALL-20887 (10/06) | ACE Producer Compensation Practices and Policies |
| | XS-28500a (08/13) | ACE Group Specialty Claims Loss Notification Form |
| | IL P 001 (01/04) | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| | XS-22552 (06/07) | Catastrophe Management Notice |
| 001 | CC-1K11h (03/14) | Signatures |
| 002 | XS-43907 (12/14) | Access, Collection And Disclosure Of Information And Electronic Data Exclusion – Limited Bodily Injury And Redefined Property Damage Exceptions With Retained Limit |
| 003 | XS-1V12c (11/14) | California Changes - Cancellation And Nonrenewal |
| 004 | XS-23669b (01/15) | Cap on Losses From Certified Acts of Terrorism |
| 005 | XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| 006 | XS-30063 (07/10) | Coverage Territory Definition Amendment |
| 007 | XS-32994 (01/12) | Defense Inside The Limits Endorsement – Follow Form |
| 008 | TRIA 11c (01/15) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 009 | XS-23632 (01/08) | Employee Benefit Plan Follow Form Endorsement [Occurrence] |
| 010 | XS-26426 (02/09) | Employee Benefit Plan Limitation [Claims Made] |
| 011 | XS-23634 (01/08) | Fellow Employee Exclusion Deleted |
| 012 | XS-28727a (01/11) | Foreign Loss Indemnity Endorsement |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 013 | XS-26428 (02/09) | Incidental Medical Malpractice Endorsement |
| 014 | XS-26429b (02/11) | Industrial Aid Aircraft Endorsement |
| 015 | XS-20756 (08/06) | Notice of Occurrence |
| 016 | ALL-32688 (01/11) | Notice To Others Endorsement - Specific Parties |
| 017 | XS-20780a (08/09) | Pollution Exclusion - Combination Exception Time Element and Named Peril (with Insureds Retained Limit) |
| 018 | XS-21580 (01/07) | Professional Services Liability Exclusion – Exception for Resulting Bodily Injury and Property Damage |
| 019 | XS-32667 (01/11) | Trade or Economic Sanctions Amendatory Endorsement |
| 020 | XS-23501 (04/08) | Unintentional Failure to Disclose |
| 021 | XS-34018 (01/12) | Unsolicited Communications Exclusion Amendment to Include FACTA |
| 022 | MS-10100 (05/12) | Health Care Services Exclusion |
| 023 | MS-10102 (05/12) | Government Immunity Endorsement |
| 024 | MS-10103 (05/12) | Who is an Insured - Affiliated Physician Practices Endorsement |
| 025 | MS-10104 (05/12) | Retained Limit Endorsement (No Underlying Insurance) |
| 026 | MS-10106 (05/12) | Automobile Liability Limitation Endorsement |
| 027 | MS-10107 (05/12) | Non-Contributory Endorsement for Additional Insureds |
| 028 | MS-10108 (05/12) | Clinical Trial Exclusion Endorsement |
| 029 | MS-10110 (05/12) | Annual Period Extension - Natural Disaster or Other Catastrophe |
| 030 | MS-11231 (01/10) | Amendment of Who is an Insured |
| 031 | MS-12121 (07/12) | Manufacture of Drugs Exclusion |
| 032 | MS-12122 (07/12) | Personal Injury Definition Amended to Include Discrimination |
| 033 | MS-22418 (06/13) | Cancellation Amendatory Endorsement |
| 034 | MS-24763 (10/13) | Who is an Insured Amendatory Endorsement |
| 035 | MS-30913 (06/14) | Designated Person of Organization Exclusion |
| 036 | MS-31305 (07/14) | Tie in of Limits Endorsement |
| 037 | MS-40196 (06/15) | Foreign Liability Follow Form Limitation Endorsement - Exception for Products |
| 038 | XS-20753 (08/06) | Knowledge of Occurrence |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 039 | XS-25254 (02/09) | War Exclusion |
| 040 | XS-35558 (05/13) | Difference in Conditions/Difference in Limits Endorsement |
| 041 | XS-35562 (05/13) | Amendment of Definition J. - Insured Contract |

**Schedule of Underlying Insurance**


ace group

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | XOO G27610390 001 | 07/01/2015 **to** 07/01/2016 |

---

**Foreign DIC General Liability**                           Limits of Insurance

Company                                              General Aggregate          $ 2,000,000
                                                     (other than Products
                                                     Completed Operations)

The Insurance Company of the State of Pennsylvania   Products - Completed       $ 2,000,000
                                                     Operations Aggregate

Policy Number  WS20001262                            Master Policy              $ 4,000,000
                                                     Aggregate

Policy Period  07/01/2015 to 07/01/2016              Each Occurrence            $ 1,000,000

---

**Foreign DIC Automobile Liability**                        Limits of Insurance

Company                                              Bodily Injury and Property Damage

The Insurance Company Of the State of Pennsylvania   Combined Single Limit

Policy Number  WS20001263                                $ 1,000,000 Each Accident

Policy Period  07/01/2015 to 07/01/2016

---

**Foreign DIC Employers Liability**                         Limits of Insurance

Company                                              Bodily Injury by Accident
The Insurance Company of the State of Pennsylvania

                                                         $ 1,000,000 Each Accident

Policy Number  WS20001264                            Bodily Injury By Disease

                                                         $ 1,000,000 Each Policy

                                                         $ 1,000,000 Each Employee

Policy Period  07/01/2015 to 07/01/2016

---



**Schedule of Underlying Insurance (Continued)**

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | XOO G27610390 001 | 07/01/2015 **to** 07/01/2016 |

| | | |
|---|---|---|
| Coverage: | **Foreign DIC Employee Benefits Liability** | Limits of Insurance |
| Company: | The Insurance Company of the State of Pennsylvania | $ <u>1,000,000</u> Each Wrongful Act or Series of Related Wrongful Acts |
| Policy Number: | WS20001262 | $ <u>1,000,000</u> Annual Aggregate |
| Policy Period: | 07/01/2015 to 07/01/2016 | |

| | | |
|---|---|---|
| Coverage: | **UK Employers Liability** | Limits of Insurance |
| Company: | Chartis Insurance Company | £ <u>10,000,000</u> Each Occurrence |
| Policy Number: | ELB005063 | |
| Policy Period: | 07/01/2015 to 07/01/2016 | |

| | | |
|---|---|---|
| Coverage: | **Auto Liability (US Oncology)** | Limits of Insurance |
| Company: | On File With Company | $ <u>1,000,000</u> Combined Single Limit |
| Policy Number: | H08703929 | |
| Policy Period: | 07/01/2015 to 07/01/2016 | |

| | | |
|---|---|---|
| Coverage: | **Employers Liability** | Limits of Insurance |
| Company: | Old Republic | Bodily Injury by Accident |
| Policy Number: | MWC30458200 and MWZY304585 | $ <u>5,000,000</u> Each Accident |
| Policy Period: | 07/01/2015 to 07/01/2016 | Bodily Injury By Disease |
| | | $ <u>5,000,000</u> Each Policy |
| | | $ <u>5,000,000</u> Each Employee |

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

| | | |
|---|---|---|
| Coverage: | **Employers Liability (US Oncology)** | Limits of Insurance |
| Company: | Old Republic | Bodily Injury by Accident |
| Policy Number: | MWC30458600 | $ 1,000,000 Each Accident |
| Policy Period: | 07/01/2015 to 07/01/2016 | Bodily Injury By Disease |
| | | $ 1,000,000 Each Policy |
| | | $ 1,000,000 Each Employee |

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.



**ACE Umbrella Plus℠**
**Commercial Umbrella Liability Policy**

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

**I.   INSURING AGREEMENT**

A.   We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

1.   This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

a.   The "bodily injury" or "property damage" is caused by an "occurrence";

b.   The "bodily injury" or "property damage" occurs during the "policy period"; and

c.   Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

2.   This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

B.   "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

C.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

1.   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2.   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3.   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

D. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II.  WHO IS AN INSURED

A. The following are "insured's":

1. The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2. Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3. If you are designated in the Declarations as:

a. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

c. A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

e. A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are "insureds" for:

a. "Bodily injury" or "personal and advertising injury":

(1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(2) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

(3) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

(4) Arising out of his or her providing or failing to provide professional health care services.

b. "Property damage" to property:

(1) Owned, occupied or used by you,

(2) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3. Any person or organization having proper temporary custody of your property if you die, but only:

   a. With respect to liability arising out of the maintenance or use of that property; and

   b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

5. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

   b. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

   c. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

   d. We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6. Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## III.   DEFENSE AND SUPPLEMENTARY PAYMENTS

A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

   1. When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

   2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

   3. When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B. We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C. We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D. If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

   1. All expenses we incur.

   2. Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4. The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6. All costs taxed against the "insured" in the "suit".

7. Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8. Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E. Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV.   LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made or "suits" brought; or

3. Persons or organizations making claims or bringing "suits".

B. The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1. Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2. Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D. Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E. If the applicable limits of "underlying insurance" have been:

1. Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V.    EXCLUSIONS

This insurance does not apply to:

A.  **Aircraft or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1.  A watercraft while ashore on premises you own or rent; or

2.  A watercraft you do not own that is:

    a.  Less than 26 feet long; and

    b.  Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

B.  **Asbestos**

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

C.  **Contractual Liability**

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.  That the "insured" would have in the absence of the contract or agreement; or

2.  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

    a.  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    b.  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

D.  **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1.  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

E.   **Damage to Property**

"Property damage" to:

1.   Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3.   Property loaned to you;

4.   Personal property in the care, custody or control of the "insured";

5.   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6.   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

F.   **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

G.   **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.   **Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

I.   **Employer's Liability**

"Bodily injury" to:

1.   An "employee" of the "insured" arising out of and in the course of:

   a.   Employment by the "insured"; or

   b.   Performing duties related to the conduct of the "insured's" business; or

2.   The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1.   Whether the "insured" may be liable as an employer or in any other capacity; and

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

1.  To liability assumed by the "insured" under an "insured contract".

2.  To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

J.  **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.  Refusal to employ;

2.  Termination of employment;

3.  Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies, acts or omissions; or

4.  Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

K.  **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

L.  **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

M.  **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1.  Advertising, broadcasting, publishing or telecasting;

2.  Designing or determining content of web-sites for others; or

3.  An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VII - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

N.  **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1.  Causing or contributing to the intoxication of any person;

2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O.  **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1.   The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2.   Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3.   Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P.  **Nuclear**

1.   To any injury or damage:

a.   With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

b.   Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.   To any injury or damage resulting from the "hazardous properties" of "nuclear material", if:

a.   The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

b.   The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

c.   The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

a.   "Hazardous properties" include radioactive, toxic or explosive properties;

b.   "Nuclear material" means "source material", "special nuclear material" or "by-product material";

c.   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

d.   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

e. "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f. "Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. Injury or damage includes all forms of radioactive contamination of property.

Q. **Other "Personal and Advertising Injury"**

1. "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2. "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3. "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4. "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5. "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages:

   a. That the "insured" would have in the absence of the contract or agreement; or

   b. Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

      i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      ii. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6. "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

   b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (1) Any "insured"; or

      (2) Any person or organization for whom you may be legally responsible;

   d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

   e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

   f. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

   g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

3. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6. Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

   a. The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   b. The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7. Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

   a. The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   b. The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S. **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T. **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U. **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V. **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. This exclusion also applies to communications which are made or allegedly made in violation of the:

    1.   Telephone Consumer Protection Act (TCPA) including any

        Amendment of or addition to such law; or

    2.   The CAN-SPAM Act of 2003, including any amendment of

        Or addition to such law; or

    3.   Any statute, ordinance or regulation, other than the TCPA

        Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

## VI. CONDITIONS

A. **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal. If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B. **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us. If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

  4.  No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

G.  **Inspection and Audit**

  1.  We will be permitted, but not obligated to inspect the "insured's" property and operations. Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

  2.  We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

H.  **Legal Action Against Us**

  1.  No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

  2.  You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

I.  **Maintenance of "Underlying Insurance"**

During the "policy period", you agree:

  1.  To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

  2.  That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

  3.  That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

  4.  That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

  5.  That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

J.  **Other Insurance**

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to be excess of this policy.

K.  **Premium**

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium. It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

L.  **Separation of "Insureds"**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

  1.  As if each Named Insured were the only Named Insured; and

    2.   Separately to each "insured" against whom claim is made or "suit" is brought.

M.  **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N.  **Transfer of Rights of Recovery Against Others to Us**

1.   If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2.   Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3.   If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O.  **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy. The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

**VII.  DEFINITIONS**

A.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.   Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.   Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B.  "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

C.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D.  "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E.  "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or independent contractor.

F.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

I. "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured.

J. "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

K. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

L. "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M. "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. Power cranes, shovels, loaders, diggers or drills; or

    b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a. Equipment designed primarily for:

        i. Snow removal;

        ii. Road maintenance, but not construction or resurfacing; or

        iii. Street cleaning;

    b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O. "Occurrence" means:

1. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2. With respect to "personal and advertising injury", a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q. "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T. "Products-completed operations hazard":

1. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   a. Products that are still in your physical possession; or

   b. Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      i. When all of the work called for in your contract has been completed.

      ii. When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      iii. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. Does not include "bodily injury" or "property damage" arising out of:

   a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

   b. The existence of tools, uninstalled equipment or abandoned or unused materials.

U. "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V. "Retained limit" means either of the following:

1. The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2. The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

X.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.  "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.  "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA. "Your product":

   1.  Means:

      a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (1)  You;

         (2)  Others trading under your name; or

         (3)  A person or organization whose business or assets you have acquired; and

      b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   2.  Includes:

      a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      b.  The providing of or failure to provide warnings or instructions.

   3.  Does not include vending machines or other property rented to or located for the use of others but not sold.

BB. "Your work":

   1.  Means:

      a.  Work or operations performed by you or on your behalf; and

      b.  Materials, parts or equipment furnished in connection with such work or operations.

   2.  Includes:

      a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      b.  The providing of or failure to provide warnings or instructions.



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

 **ACE GROUP SPECIALTY CLAIMS LOSS NOTIFICATION FORM**

**FORWARD BY FAX, MAIL OR E-MAIL TO:**

ACE Excess
P.O. Box 5103
Scranton, PA 18505-0510
Fax No.:  (866)635-5687

ACEClaimsFirstNotice@acegroup.com

**Today's Date:**

## Notice of:  (check all that apply)

☐ **First-Party Claim**          ☐ **Potential Claim**

☐ **Third-Party Claim**          ☐ **Litigation Initiated**

☐ **Other** _____

## Insured's Name & Contact Information

**Company Name:** McKesson Corporation          **Point of Contact:** _____

**Address:** One Post Street, 34th Floor
San Francisco, California 94104

**Phone Number:** _____

## Broker/Agent's Name & Contact Information

**Company Name:** MARSH RISK & INSURANCE SERVICES          **Point of Contact:** _____

**Address:** 345 CALIFORNIA STREET
SAN FRANCISCO, California 94104

**Phone Number:** _____

## Policy Information

**Policy Number:** XOO G27610390 001          **Policy Period:** 07/01/2015  -  07/01/2016

**Limits of Liability:** $ 25,000,000  **per** $ 25,000,000  **agg** **Self-Insured Retention/Deductible:** $ 25,000

## Loss Information

**Date of Incident/Claim:** _____          **Location:** _____

**Claimant Name/Address:** _____

**Description of Loss:** _____
_____
_____
_____

Please list all attached or enclosed documentation:  ☐ (check if none provided)

_____
_____
_____

Name of Person Completing This Form: _____          Signature: _____

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

COMMERCIAL UMBRELLA LIABILITY

**INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE**

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully.

When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.

- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

# 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.

- Please be prepared to provide the following information:
  - Caller's name, title and contact telephone number
  - Name of Insured
  - Policy Number
  - A description of the incident
  - Any witnesses
  - Property, Product or Vehicle Information
  - Incident Location
  - Contact Person
  - Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty insurance Company or one of its insurance company affiliates.*

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 001 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) | | | |
|---|---|---|---|
| ACE Property and Casualty Insurance Company | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

CC-1K11h (03/14)

## ACCESS, COLLECTION AND DISCLOSURE OF INFORMATION AND ELECTRONIC DATA EXCLUSION – LIMITED BODILY INJURY AND REDEFINED PROPERTY DAMAGE EXCEPTIONS WITH RETAINED LIMIT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 002 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

I. The following exclusion is added to the policy:

This insurance does not apply to any injury, damage, cost, "loss", liability or legal obligation arising out of or in any way related to:

    a. Any access to, collection of, release of or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health or medical information or any other type of nonpublic information; or

    b. The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

However, this exclusion does not apply to damages because of "bodily injury" or "property damage".

II. The following definition is added to the policy and applies to this endorsement:

"Electronic data" means any information, facts or programs stored as or on, created or used on, or transmitted to or from any computer software or system, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media that are used with electronically controlled equipment or other electronic backup facilities, and data transmission or storage provided by means of the Internet.

III. When coverage is provided by virtue of the exception to the exclusion in this endorsement, the following provisions will apply:

    A. The definition of "property damage" is deleted and replaced by the following:

    "Property damage" means physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. "Electronic data" is not tangible property.

    B. The definition of "retained limit" is deleted and replaced by the following:

"Retained limit" means a Self-Insured Retention in the amount of $5,000,000, applicable to each "occurrence". The "retained limit" may be eroded by "loss" only and not defense expenses or supplementary payments.

IV. Notwithstanding anything in this endorsement or elsewhere in this policy, the limited coverage for "bodily injury" and "property damage" provided by virtue of the exceptions in this exclusion does not apply to and no coverage is provided for any notification costs, credit monitoring expenses, forensic expenses or any other similar expenses unless such expenses qualify as covered "catastrophe management expenses" under a **Catastrophe Management Coverage Endorsement** attached to this policy and then subject to all of the terms and limitations of that coverage.

All other terms and conditions of the policy remain unchanged.

_____

Authorized Representative

## CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured McKesson Corporation | | | Endorsement Number 003 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015 to 07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS AND UMBRELLA LIABILITY POLICY
### COMMERCIAL UMBRELLA LIABILITY POLICY
### EXCESS LIABILITY CATASTROPHE POLICY
### EXCESS LIABILITY POLICY

**A.** The **Cancellation** Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason**.**

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

    (a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    (b) Continuation of the policy coverage would:

        (i) Place us in violation of California law or the laws of the state where we are domiciled; or

        (ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

(8) A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

(9) Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

(10) A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

    **(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund, if any, will be computed on a pro rata basis. However, the refund may be less than pro rata if we made a loan to you for the purpose of payment of premiums for this policy. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured<br>McKesson Corporation | | | | Endorsement Number<br>004 |
|---|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL UMBRELLA LIABILITY POLICY
### COMMERCIAL EXCESS AND UMBRELLA LIABILITY POLICY

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   1. The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this policy.

C. In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

   1. The Limits of Insurance of the Declarations is amended to include:

      "Certified act of terrorism retained limit" $ 5,000,000

   2. "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance. "Certified act of terrorism" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

   3. Solely with respect to this endorsement, Section III., Defense and Supplement Payments is amended as follows:

      a. With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume

charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out of a "certified act of terrorism".  However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b.   We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit".  Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit".  We may make such investigation as we require and effect settlement of any "suit" so defended.

c.   We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.


All other terms and conditions of this policy remain unchanged.


_____
                                     Authorized Representative

## CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 005 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### This endorsement modifies all insurance provided under the following:
### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

> $250,000 Annual Limit

Catastrophe Management Coverage

**A.** Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

**B.** A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

**C.** There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

**D.** Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

**E.** Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

**F.** For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage". "Catastrophe management

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1.  expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2.  expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3.  medical expenses; funeral expenses; expenses for psychological counseling; travel expenses; temporary living expenses or other necessary response costs and approved by us, incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured". A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## COVERAGE TERRITORY DEFINITION AMENDMENT

| Named Insured McKesson Corporation | | | Endorsement Number 006 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

**Section VII.**, **DEFINITIONS**, Item D. "Coverage territory" is deleted and replaced with the following:

D.  "Coverage territory" means anywhere in the world.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## DEFENSE INSIDE THE LIMITS ENDORSEMENT – FOLLOW FORM

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>007 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Paragraph D. of Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS** is deleted and replaced by the following**:**

D.   If we assume the defense of any "suit" against the "insured", we will pay the following items as listed below:

1.   All expenses we incur.

2.   Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy.  We do not have to furnish these bonds.

3.   The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance.  We do not have to furnish these bonds.

4.   The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5.   All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6.   All costs taxed against the "insured" in the "suit".

7.   Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8.   Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance", then such expenses will reduce the corresponding applicable Limits of Insurance of this policy.  However, if expenses incurred to defend any "suit" do not reduce the applicable limits of "underlying insurance", then we will pay such expenses in addition to the applicable Limit of Insurance of this policy.

Section **IV.**, **LIMITS OF INSURANCE** is amended by the addition of the following:

If defense expenses are included within the "underlying insurance" or within any "other insurance", then references to damages in this Section are amended to include Defense and Supplementary Payments for the sole purpose of determining erosion of limits of insurance.

Section **VII.**, **DEFINITIONS**, Subsection **M.**, is deleted in its entirety and replaced with the following:

**M.** "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay because of damages as a result of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.  If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance",  then "loss" also includes Defense and Supplementary Payments, which will erode the limits of this insurance.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured McKesson Corporation | | | | Endorsement Number 008 |
|---|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: $ 38,026_____.

_____
Authorized Representative

# EMPLOYEE BENEFIT PLAN FOLLOW FORM ENDORSEMENT
## [OCCURRENCE]

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 009 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of liability shown therein, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "administration" of any "employee benefit program(s)".

"Administration" includes but is not limited to performing any of the following functions for an "employee benefit program":

1.  Counseling "employees" on your "employee benefit programs";

2.  Interpreting your "employee benefit programs";

3.  Handling records for your "employee benefit programs";

4.  Effecting enrollment, termination or cancellation of employees under your "employee benefit programs";

5.  Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs";

6.  Collection of contributions and application of contributions as provided in your "employee benefit programs";

7.  Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee benefit programs"; or

8.  Processing of claims for your "employee benefit programs".

"Employee benefit program(s)" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

_____
Authorized Agent

XS-23632 (01/2008)

# EMPLOYEE BENEFIT PLAN LIMITATION
## [CLAIMS MADE]

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>010 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

### SCHEDULE

1. Underlying Insurance

   Company:                    Illinois Union Insurance Company

   Policy Number:          MLP G21821020 006

   Expiration Date:        07/01/2016

   Retroactive Date:      07/01/2006

   Limits of Insurance:

   Each Employee        $ 5,000,000

   Aggregate:               $ 5,000,000

   Company:                    Insurance Company of the State of Pennsylvania

   Policy Number:          On File With Company

   Expiration Date:        07/01/2016

   Retroactive Date:      None

   Limits of Insurance:

   Each Employee        $ 1,000,000

   Aggregate:               $ 1,000,000

2. Our Retroactive Date:      07/01/2006

3. Coverage

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

"Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

a.  Counseling "employees" on your "employee benefit programs";

b.  Interpreting your "employee benefit programs";

c.  Handling records for your "employee benefit programs";

d.  Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e.  Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f.  Collection of contributions and application of contributions as provided in your "employee benefit programs";

g.  Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h.  Processing of claims for your "employee benefit programs".

"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4.  Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a.  Retroactive Date

If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

i.   The date such claim is first made against you is during OUR policy period, and

ii.  The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b.  Extended Reporting Period

If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in  like manner, subject to all of the following:

i.   Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

ii.  The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

iii. The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c.  Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance"  above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

    i.   The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

    ii.   Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

    iii.   If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d.   Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

All other terms and conditions of this policy remain unchanged.

_____
                             Authorized Agent

## FELLOW EMPLOYEE EXCLUSION DELETED

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>011 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1)   To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-23634 (01/2008)

## FOREIGN LOSS INDEMNITY ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 012 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**THIS ENDORSEMENT APPLIES ONLY WHEN A "FOREIGN OCCURRENCE", ARISING OUT OF A "FOREIGN BUSINESS OPERATION" AND CAUSING "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY", TAKES PLACE IN A COUNTRY WHERE WE ARE NOT "LICENSED".**

The policy is amended to add the following:

### FIRST NAMED INSURED INDEMNITY COVERAGE

#### I.   INSURING AGREEMENT

This endorsement applies only when a "foreign occurrence", arising out of a "foreign business operation" and causing "bodily injury", "property damage" or "personal and advertising injury", takes place in a country where we are not "licensed".

In that case, rather than directly pay on behalf of and defend your "foreign business operation", we will indemnify the "First Named Insured", in excess of the "retained limit", for "loss" and defense and supplementary payments in accordance with this endorsement. This endorsement provides the only coverage under the policy for "bodily injury", "property damage" or "personal and advertising injury" arising out of a "foreign occurrence".

The terms, conditions and limitations in sub-section A.1., A.2., B., C. and D. of Section **I. INSURING AGREEMENT** in the policy will apply to our duty to indemnify the "First Named Insured".

#### II.   WHO IS AN INSURED

Section **II. WHO IS AN INSURED**, is amended to provide that a "foreign business operation" is not an "insured" on whose behalf we have a direct duty to pay settlements or judgments or a direct duty to defend under this policy.

#### III.   DEFENSE AND SUPPLEMENTARY PAYMENTS - ASSIGNMENT OF RIGHTS

When this endorsement applies, rather than directly defend your "foreign business operation", we will indemnify the "First Named Insured" for defense costs incurred in defending a "suit" brought against a "foreign business operation", provided that (a) the "foreign business operation" gives the "First Named Insured" the right to control the investigation, defense and settlement of the "suit" and (b) the "First Named Insured" assigns this right to us.  We will associate with the "First Named Insured" to conduct such investigation, defense and settlement as provided in Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, except that we will indemnify the "First Named Insured" rather than directly defend and pay supplementary payments.

## IV.  LIMITS OF INSURANCE

A.  The insurance provided by this endorsement is subject to the applicable aggregate and each occurrence limits of liability stated in the Declarations, and any "losses" for which we pay indemnity will erode and be counted against such limits.

B.  Subject to the applicable aggregate and each occurrence limits of liability stated in the declarations, our limit of liability for "loss" will be the amount which the "First Named Insured":

1.  Has indemnified a "foreign business operation", or

2.  Represents to us that it is obligated to indemnify the "foreign business operation".

However, if this policy provides for a percentage allocation of liability with respect to the insured's or the "foreign business operation's" interest in a joint venture, limited liability company or partnership, the allocation set forth in such provision will apply.

The terms, conditions and limitations set forth in Section **IV. LIMITS OF INSURANCE** in the policy will apply to our duty to indemnify the "First Named Insured".

## V.  CONDITIONS

When this endorsement applies, the following conditions apply in addition to the conditions and limitations provided elsewhere in the policy.

### A.  Claims Made/Reported Coverage (if applicable)

Any requirements in the policy that a claim be first made during the policy period or any discovery or extended reporting period will also apply to all claims made against a "foreign business operation" for which the "First Named Insured" seeks indemnification.

### B.  Additional Notice Duties of the "First Named Insured"

With respect to a "foreign occurrence" which may result in a claim for damages under this endorsement, the "First Named Insured" assumes the duty to notify us, and must notify us in accordance with the standards described in Condition **F. Duties in the Event of "Occurrence", Claim or "Suit"** in the policy.

### C.  Proof of Insurance

This policy may not be offered as proof of insurance unless permitted by local applicable law.

### D.  Truthfulness and Accuracy of Material Information

When this endorsement applies, the "First Named Insured":

1.  Is responsible for the truthfulness and accuracy of any material information provided to us with respect to a "foreign business operation", "foreign occurrence", claim, "suit" or "loss"; and

2.  Will not, at any time, intentionally conceal or misrepresent a material fact concerning this policy, including the risk to be insured, a "foreign business operation", a "loss", claim or "suit" or a "foreign occurrence".

© 2011

## VI.  DEFINITIONS

When this endorsement applies, Definition M. "Loss" in the policy is deleted and replaced with the following:

M.  "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "foreign business operation" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", for which the "foreign business operation" makes a claim for reimbursement from the "First Named Insured", after making proper deduction for all recoveries and salvages.

The following definitions are added to the policy and apply to the coverage provided by this endorsement:

"First Named Insured" means the first Named Insured shown in the Declarations.

"Foreign business operation" means a subsidiary of the "First Named Insured" and any other organization under its control or active management at the inception date of the policy or added by endorsement, and having its principal place of business, statutory domicile, residence, or business operation subject to liability for otherwise covered "bodily injury", "property damage" or "personal and advertising injury" located in a country where we are not "licensed".

"Foreign occurrence" means an "occurrence" arising from the premises, operations or products of a "foreign business operation" taking place in or causing "bodily injury", "property damage" or "personal and advertising injury" in a country where we are not "licensed". Country includes any political jurisdiction that independently regulates the licensing of insurance companies.

"Licensed" means expressly approved in accordance with law by the applicable regulatory body to conduct the business of insurance in a country as a regulated, authorized insurer. "Licensed" is synonymous with admitted and authorized.  It does not include being recorded as an eligible foreign or alien non-admitted insurer.


All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 013 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Section **II. WHO IS AN INSURED,** Section B.1.a.(4) is deleted and replaced by the following:

(4) arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees" Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence".

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

    a.  medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or
    b.  the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## INDUSTRIAL AID AIRCRAFT ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>014 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.   LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$ 500,000,000 Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or rented or loaned to any "insured". Use includes operation and "loading and unloading").

II.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any "suit" against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

III.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV.   Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance".

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses".

V.   For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.   Aircraft
This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI. For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1. attorney's fees and all other investigation, loss adjustment and litigation expenses;
2. premiums on bonds to release attachments;
3. premiums on appeal bonds required by law to appeal any claim or "suit";
4. costs taxed against the "insured" in any claim or "suit";
5. pre-judgment interest awarded against the "insured"; and
6. interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used predominantly for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

_____
                                                Authorized Representative

## NOTICE OF OCCURRENCE

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>015 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-20756 (08/06)

Page 1 of 1

## NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES

| Named Insured McKesson Corporation | | | Endorsement Number 016 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**A.** If we cancel the Policy prior to its expiration date by notice to you or the first Named Insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

**B.** We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

**C.** The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

**D.** We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

**E.** We may arrange with your representative to send such notice in the event of any such cancellation.

**F.** You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

**G.** This endorsement does not apply in the event that you cancel the Policy.

### SCHEDULE

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
| Medassets | | 13727 Noel Road, Suite 1400 Dallas, TX 75240 |
| Port Authority of New York & New Jersey Newark Liberty International Airport c/o EBIX BPO | | P.O. Box 881639 San Diego, CA 92168-1635 |

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL (With Insured's Retained Limit)

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 017 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., **EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

1.  To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2.  To any "loss", cost or expense arising out of any:

    a.  Directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    b.  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1.  Is both unexpected and unintended from the standpoint of the "insured";

2.  Commenced abruptly and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3.  Is caused:

    a.  Solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, flood, earthquake, sprinkler leakage, or discharge from a heating, ventilating or air conditioning system or collision or upset of a motor vehicle, mobile equipment or an aircraft;

    b.  Or arises out of "your product" included in the "products-completed operations hazard"; or

    c.  By any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

        (1)  Is at or from any:

(a) Premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

(b) Premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

And

(2)     Is known by any "insured" within twenty (20) days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

(3)     Is reported to us within eighty (80) days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. Loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. Any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind. Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not.  Waste means any substance that:

   a. Is left over, or no longer in use, or discarded;

   b. Is to be reclaimed or recycled, or reconditioned; or

   c. Has been removed, treated, stored or disposed of as part of any environmental remediation effort.

It is further agreed that solely with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" due to any exclusion or exclusions contained therein, the "insured's" "retained limit" in the Limits of Insurance section of the Declarations is amended to $ 5,000,000.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

## PROFESSIONAL SERVICES LIABILITY EXCLUSION -  EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 018 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-21580 (0107)

## TRADE OR ECONOMIC SANCTIONS AMENDATORY ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>019 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Item T. of Section **V. Exclusions** is hereby deleted and replaced by the following:

**T.   Trade or Economic Sanctions**

To the extent that United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured McKesson Corporation | | | Endorsement Number 020 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## UNSOLICITED COMMUNICATIONS EXCLUSION AMENDMENT TO INCLUDE FACTA

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 021 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS**, Item **V. Unsolicited Communications** is deleted and replaced with the following:

**V.  Recording and Distribution of Material or Information in Violation of Law**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone that violates or is alleged to violate:

1.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3.  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4.  Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## HEALTH CARE SERVICES EXCLUSION

| Named Insured McKesson Corporation | | | Endorsement Number 022 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Solely with respect to Interlakes Oncology, PC, and those entities identified in the Schedule on Endorsement 42 (WHO IS AN INSURED ENDORSEMENT) of this policy Section V, DEFINITIONS, is amended by the addition of the following exclusion:

**Health care Services**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" sustained by a "patient" and arising out of the providing of or failing to provide "health care services" by the "insured".

For purposes of this endorsement, the following definitions are added to the policy;

"Health care services" means medical, surgical, dental, diagnostic or nursing services; diagnosis or treatment of any sickness, disease, condition or injury; dispensing or administering of drugs, medicines, vaccines medical, surgical or dental supplies, devices or appliances; advisory services or counseling for mental health, substance abuse or addiction; physiotherapy, chiropractic or chiropody; optometry or optical services, including the prescribing, preparation or fitting of ophthalmic lenses or similar products; providing hearing aid services, including the prescribing, preparation or fitting of hearing aids.

"Patient" means a person under the care of or receiving "health care services" from any "insured" or any other person or organization operating on behalf of any "insured".

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## GOVERNMENT IMMUNITY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 023 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015 to 07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

We shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority of New York and New Jersey (Port Authority), raise any defense involving in any way the jurisdiction of the Tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

## WHO IS AN INSURED - AFFILIATED PHYSICIAN PRACTICES ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 024 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Section **II**, **WHO IS AN INSURED**, is amended by the addition of the following:

**1.** The entities listed in the schedule below shall be considered "insureds", but solely to the extent that:

a. such entity is under your management;

b. such entity has entered into a written Comprehensive Strategic Agreement (hereinafter "CSA") with you, which is in effect during the policy period and executed prior to any "occurrence" taking place; and

c. any liability covered under this policy is not also covered under any other valid and collectable insurance available to such entity.

Such entity's status as an "insured" ends when its CSA with you is cancelled, terminated or expires.

**2.** Any entity, other than those entities listed in the schedule below, that has entered into a written CSA with you shall be considered an "insured", but solely to the extent that:

a. such entity is under your management;

b. such entity's CSA with you is in effect during the policy period and executed prior to an "occurrence" taking place; and

c. any liability covered under this policy is not also covered under any other valid and collectable insurance available to such entity.

Such entity's status as an "insured" ends when its CSA with you is canceled, terminated or expires.

**B.** All such entities and written CSAs must be reported in writing to us within fifteen (15) days after the expiration of this policy.  However, any inadvertent or unintentional failure to report such entities or CSAs within fifteen days shall not, in and of itself, preclude coverage for such entities as "insured" under this policy.

**C.** Section **VII**, **DEFINITIONS**, Subsection I, "Insured", is deleted and replace with the following:

I. "Insured" means the Named Insured shown in the Declarations or added by endorsement and any individual or organization qualifying as such under Section II – Who is an Insured .

**SCHEDULE**

Advanced Medical Specialties dba: Arch Cancer Care
Arizona Oncology Associates; PC
Arkansas Oncology Associates, PA
Blue Ridge Cancer Care
Cancer Care & Hematology Specialists of Chicagoland, PC
Cancer Care Centers of South Texas, PA
Cancer Centers of North Carolina, PC
Cancer Centers of North Carolina-Ashville, PC
Cancer Centers of the Carolinas
Comprehensive Cancer Care
Comprehensive Cancer Care of Nevada
Fairfax-Northern Virginia Hematology-Oncology, PC
Florida Cancer Institute- New HopePA
Florida Institute of Research, Medicine and Surgery, PA Formerly Cancer Centers of Florida
Hematology Oncology Associates of Illinois
Maryland Oncology Hematology PA
Minnesota Oncology Hematology PA
Missouri Cancer Associates
New York Oncology Hematology PC
Northwest Cancer Specialists PC
Ocala Oncology Center PI
Oncology Associates of Oregon PC
Regional Cancer Care PA
Rocky Mountain Cancer Centers LLP
South Florida Oncology and Hematology Consultants
St. Louis Urological Surgeons, Inc.
Texas Oncology PA
The HopeCenter for Cancer Care
Venango Oncology Hematology
Virginia Oncology Associates
Wilshire Oncology Medical Group, Inc.


All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

## RETAINED LIMIT ENDORSEMENT (NO UNDERLYING INSURANCE)

| Named Insured McKesson Corporation | | | Endorsement Number 025 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1.  The preamble in the policy is deleted and replaced with the following:

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VII. DEFINITIONS**.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2.  Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

1.  When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy.  Any such payment we make shall reduce the Limits of Insurance. Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

3.  Paragraph E. of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

E.  If the applicable "retained limits" listed on the Schedule of Retained Limits have been:

1.   Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

2.  Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4.  Exclusions A., I. and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5.  Conditions A., C., and I. and Paragraph 3. only of Condition N. of **Section VI. CONDITIONS** are deleted and replaced with the following:

A.  **Appeals**

In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

C.  **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy.  This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

I.  **Maintenance of "Underlying Insurance"** is deleted.

N.  **Transfer of Rights of Recovery Against Others to Us**

3.  If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6.  Definitions P., and V. of **Section VII. DEFINITIONS** are deleted and replaced with the following:

P.  "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

V.  "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit | | Defense Treatment |
|---|---|---|---|
| General  Liability | $5,000,000 | Each Occurrence | Within    limits    & within SIR |
| | $7,500,000 | General Aggregate | |
| Products Liability | $5,000,000 | Each Occurrence | Within    limits    & within SIR |
| | $5,000,000 | Aggregate | |
| Auto Liability | $5,000,000 | Each Occurrence | Outside  Limits  & SIR |
| Employers Liability | $1,000,000 | Bodily  Injury – Each Accident OR Bodily Injury by Disease – Each Employee | Outside  Limits  & SIR |
| General Liability - US Oncology | $5,000,000 $5,000,000 $5,000,000 | Each Occurrence Personal and Advertising Injury General Aggregate | Outside  limits  & within SIR |

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA,  President

Authorized Representative

## AUTOMOBILE LIABILITY LIMITATION ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>026 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Automobile Liability

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement. Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy #MWTB21542 and Old Republic Insurance Company of Canada Policy #CTB21542 subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy. In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy # MWTB21542 and Old Republic Insurance Company of Canada Policy # CTB21542.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured McKesson Corporation | | | Endorsement Number 027 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

For any person or organization qualifying as an "insured" under Section II WHO IS AN INSURED, Paragraph B.7. (as added by endorsement to this policy) the following is added to **Section VI. CONDITIONS Paragraph J. Other Insurance**

> If "other insurance" is available to an "insured" we cover under any of the endorsements listed or described above (the "Additional Insured") for a "loss" we cover under this policy, this insurance will apply to such "loss" on a primary basis and we will not seek contribution from the "other insurance" available to the Additional Insured.  Your "retained limit" still applies to such "loss" and  any payments you receive from "other insurance" will not erode your "retained limit".

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

# CLINICAL TRIAL EXCLUSION ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>028 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial".  However, this exclusion does not apply to late phase trial services, otherwise referred to as Phase IV, and provided by McKesson Specialty Canada.

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

MS-10108 (05/12)                    © 2012                    Page 1 of 1

## ANNUAL PERIOD EXTENSION - NATURAL DISATER OR OTHER CATASTROPHE

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 029 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015 to 07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

In the event of a natural disaster or other catastrophe that prevents all written, telephonic and electronic communication between us and the Named Insured at the expiration of the "policy period", the "policy period" will automatically be extended until the earlier of the two following times:

I.   thirty (30) calendar days from the original expiration date of such "policy period"; or

J.   fourteen (14) calendar days after written, telephonic or electronic communication between us and the Named Insured is once again possible.

The additional premium for such extension will be calculated on a pro-rata basis.  Such extension will be cancelled automatically retroactive to its inception if the additional premium or proof of payment thereof is not received by us within thirty (30) calendar days following the earlier of 1. or 2. above.

Nothing in this endorsement will operate to increase or reinstate the Limits of Liability as stated in the Declarations.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

## AMENDMENT OF WHO IS AN INSURED

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>030 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015 to 07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II WHO IS AN INSURED  Paragraph B. is hereby amended to add the following:

7. Any person or organization you become obligated to include as an additional "insured" under the policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" arising out of your operations or premises owned by or rented to you.

However, the insurance provided by this endorsement will not be broader than the coverage provided by this policy.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

# MANUFACTURE OF DRUGS EXCLUSION

| Named Insured | | Endorsement Number |
|---|---|---|
| McKesson Corporation | | 031 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015 to 07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

The following exclusion is added to the policy:.

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of "your product" if the product is any prescription or over the counter drug.

However, this exclusion will not apply if the bodily injury", "property damage" or "personal and advertising injury" is alleged to arise out of the packaging or labeling of such drugs.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

## PERSONAL INJURY DEFINITION AMENDED TO INCLUDE DISCRIMINATION

| Named Insured McKesson Corporation | | | Endorsement Number 032 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Definition **R.** in Section **VII. DEFINITIONS**. "Personal and Advertising Injury" is amended to add the following covered "Personal and Advertising Injury" offense:

8.  Discrimination or humiliation on the basis of age, disability, ethnic origin, marital status, physical or mental hardship, race, religious affiliation, sex or sexual orientation, but only if the discrimination or humiliation is not:

    a)  Committed by or at the direction of, or with knowledge or with the consent of you or any of your "executive officers" or directors; or

    b)  Excluded in Exclusion **J. Employment Practices**.

However, this insurance does not apply to any liability, "loss", cost or expense for renovations, alterations or construction related to your property, including buildings and fixtures and access thereto, or the acquisition of equipment or devices, in order to make accommodations required by the Americans with Disabilities Act or any amendments thereto, or any similar federal, state or local law. This exclusion does not apply to the payment of covered "loss" in the form of monetary damages to a claimant.

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA,  President
_____
Authorized Representative

MS-12122 (07/12)                    © 2012                    Page 1 of 1

## CANCELLATION AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 033 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Parts 1., 2., 5. and 6. of Condition D of Section VI CONDITIONS are deleted and replaced by the following:

1. This policy may be cancelled by you by mailing to us written notice stating when such cancellation shall be effective.

2. This policy may be cancelled by us by mailing to you at your last known address, written notice stating when, not less than one hundred twenty (120) days thereafter, ten (10) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective.  The mailing of notice shall be sufficient proof of notice.  The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".  Under no circumstance will our notice of cancellation to you be less than the minimum required by State law or regulation.

5. If this policy is cancelled, the final premium will be calculated pro rata based upon the time this policy was in force.  Final premium will not be less than the pro rata share of the Annual Premium as shown in the Declarations.

6. Premium adjustment may be made at the time cancellation becomes effective.  Our check or the check of our representative mailed to you shall be sufficient proof of any refund or premium due you.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

_____
Authorized Representative

## WHO IS AN INSURED AMENDATORY ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 034 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 001 | Policy Period 07/01/2015  to  07/01/2016 | Effective Date of Endorsement 07/01/2015 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

1. Paragraphs A. 2. and B. 5.,. of Section **II. WHO IS AN INSURED** are deleted and replaced by the following:

   A. 2.   Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management, at the inception date of this policy is an "insured", providing such subsidiary or organization was made known to us prior to or at the inception date of this policy;

   B. 5.   Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as an "insured", subject to the following:

   A.   If at the time of acquisition, inception of, control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $1,000,000,000 and (b) the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of, control or formation, with no additional premium charge.

   B.   If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you exceeds $1,000,000,000 or (b) the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 120th day after you acquire, take control of, or form the organization, or the end of the "policy period", whichever is earlier.

   C.   For any organization covered by paragraph b. above, coverage will expire on the 120th day after you acquire, take control of, or form the organization, or the end of the "policy period", whichever is earlier, unless, within the 120 day period, you request us to include such organization as an "insured", and we agree to do so.

   D.   We may, at our option, make an additional premium charge for any organization that you acquire, take control of, or form during the "policy period", when that organization is not automatically covered in 5.a. above.

   E.   Coverage does not apply to any liability arising out of an "occurrence" first taking place before you acquire, take control of, or form any organization covered by this endorsement.

   F.   If you are a limited liability company or limited liability partnership that was created subsequent to the inception date of this policy as a result of internal restructuring or realignment, you are an "insured" provided that:

      1.   The newly created limited liability company or limited liability partnership comprises operations which are not materially different from operations which were part of the

"insured" prior to the date of such creation; and

2. The newly created limited liability company or limited liability partnership continues to operate in a similar fashion as the "insured" prior to the date of such creation.

VII. Section **II. WHO IS AN INSURED** is amended to include the following:

It is agreed that all Joint Ventures, Partnerships, and/or Limited Liability Companies in which an "insured" has an ownership interest are insureds under this policy.  The coverage under our policy shall be limited to the "insured's" interest in such joint venture or the amount of insurance such "insured" is contractually obligated to provide. Notwithstanding the foregoing, it is also agreed the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture.

The insurance provided by this endorsement for any joint venture is excess over any valid and collectible insurance that has been purchased in the name of such joint venture.  Such "other insurance" shall erode any "retained limit" under this policy.

If upon final adjudication of a claim or suit by a court of law, the "insured" is assessed a greater share of the damages arising out of the joint venture than its percentage interest in the joint venture, our limits of insurance under this policy shall be based upon the actual share of damages assessed.

For the purpose of this endorsement, joint venture means leveraged lease agreement, partnership, joint venture, limited liability company, and any other organization or entity in which the Named Insured shares an interest and/or management control with another party in interest.

Any partnership, co-venture, joint venture, limited liability company or limited liability partnership that is an "insured: by virtue of this endorsement shall not be subject to the last unmarked paragraph of Section II. WHO IS AN INSURED, which reads: "*Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.*"

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA, President

Authorized Representative

## DESIGNATED PERSON OR ORGANIZATION EXCLUSION

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>035 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of the premises, operations, products or activities of any person or organization shown in the following Schedule:

<u>SCHEDULE</u>

Celesio AG and its subisidiaries

However, this exclusion will not apply to liability of the Named Insured for "bodily injury", "property damage" or "personal and advertising injury" to the extent such liability is imposed vicariously on the Named Insured, solely based on its status of having an ownership interest in the Designated Organization, and provided further that coverage is asserted by or on behalf of the Named Insured and not by or on behalf of the Designated Organization.

With respect to any coverage provided by virtue of this exception to the exclusion in this endorsement, this insurance will apply excess of and will not contribute with any "other insurance", whether primary, excess, contingent or on any other basis. The definition of "other insurance" is amended to include any insurance available to the Designated Organization.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## TIE IN OF LIMITS ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>036 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance is amended to include the following additional Condition:

If this insurance and the insurance provided by the policy(ies) listed in the schedule below apply to the same claim, "suit" or "occurrence", the maximum combined limits of insurance available under this policy and the scheduled policy(ies) below for such claim, "suit" or "occurrence" will not exceed:

$ 25,000,000  Each Occurrence

$ 25,000,000  General Aggregate

$ 25,000,000  Products-Completed Operations Aggregate

These limits are the most that will be paid under this policy and the policies listed in the schedule below, combined, for all claims, damages, "losses" or "suits", regardless of any aggregate, per "occurrence", per incident, or per accident limit, or any other limit of liability or limit of insurance in this policy or the scheduled policy.

### SCHEDULE

| Country of Issuance | Insurer | Policy Number |
|---|---|---|
| Canada | ACE INA Insurance | XBC324006 |
| | | |

Any "loss" paid under the scheduled policy shall reduce by such amount the applicable limit of insurance under this policy.  Any claims, damages, "losses" or "suits" seeking coverage under any policy scheduled above may not be brought under this policy.  Any claims, damages, "losses" or "suits" seeking coverage under this policy may not be brought under any policy scheduled above.

Nothing in this provision shall serve to increase any applicable limit of insurance of this policy or the scheduled policy.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# FOREIGN LIABILITY FOLLOW FORM LIMITATION ENDORSEMENT - EXCEPTION FOR PRODUCTS

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>037 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:


This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the scheduled "underlying insurance":

A.  This exclusion shall not apply; and

B.  Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of such "underlying insurance," subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, and this policy will be no broader than the coverage provided by "underlying insurance"

Notwithstanding the above provisions, with respect to claims or "suits" alleging "bodily injury," "property damage" or "personal and advertising injury" that (a) occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada, (b) arises out of "your product", and (c) is not covered by "underlying insurance" this insurance will apply subject to a "retained limit" which is a self-insured retention as follows:

$5,000,000 each "occurrence" ("loss and defense expenses erode SIR)

$5,000,000 annual aggregate ("loss and defense expenses erode SIR)


All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## KNOWLEDGE OF OCCURRENCE

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>038 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 001 | Policy Period<br>07/01/2015  to  07/01/2016 | Effective Date of Endorsement<br>07/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

_____
Authorized Representative

## WAR EXCLUSION

| Named Insured | | Endorsement Number |
|---|---|---|
| McKesson Corporation | | 039 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion W. of SECTION V. EXCLUSIONS is deleted in its entirety and replaced by the following:

**W.  War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA,  President
_____
Authorized Representative

XS-25254 (02/09)                               © 2009                                    Page 1 of 1

## DIFFERENCE IN CONDITIONS/DIFFERENCE IN LIMITS ENDORSEMENTS

| Named Insured | | Endorsement Number |
|---|---|---|
| McKesson Corporation | | 040 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

If this policy provides greater coverage, limits or conditions than any of the policies listed in the Schedule of Other Policies below (each such scheduled policy referred to as an Other Policy), then this policy will provide coverage for loss to the extent of the difference in the coverages, limits or conditions between this policy and the Other Policy, subject to the terms, limitations and conditions of this policy.

This policy provides such coverage on an excess basis for and only to the extent of any such difference in terms, limits and conditions. In no event will the coverage afforded under this policy, in combination with any one or more of such Other Policies, exceed the applicable Limit of Insurance of this policy. The most we will pay if this policy has higher limits than any Other Policy is the difference between the applicable Limit of Insurance of this policy and the limit of insurance for any such Other Policies.

Schedule of Other Policies:

| Country of Issuance | Insurer | Policy Number |
|---|---|---|
| Canada | ACE INA Insurance | XBC324006 |

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

## AMENDMENT OF DEFINITION J. INSURED CONTRACT

| Named Insured | | Endorsement Number |
|---|---|---|
| McKesson Corporation | | 041 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 001 | 07/01/2015  to  07/01/2016 | 07/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

"Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a.  preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

2.  under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

# MANUFACTURE OF DRUGS EXCLUSION

| Named Insured **McKesson Corporation** | | | Endorsement Number **051** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 001** | Policy Period **07/01/2015 to 07/01/2016** | Effective Date of Endorsement **07/01/2015** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section V. EXCLUSIONS is amended to include the following additional exclusion.

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the Insured".

For the purposes of this exclusion, the term manufacture shall not include packaging or labeling of drugs.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

_____
Authorized Representative

# AMENDATORY ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**042** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G27610390 001** | Policy Period<br>**07/01/2015 to 07/01/2016** | Effective Date of Endorsement<br>**12/11/2015** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

The following policy will be added to the schedule of underlying effective 12/11/2015:

- Insured:          Admenta UK Plc and Subsidiary Companies
- Policy Number:   20520643
- Policy Period:    01/01/2015 to 06/30/2016

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

CC-1E15T2 (10/07)

# AMENDATORY ENDORSEMENT

| Named Insured **McKesson Corporation** | | | Endorsement Number **043** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 001** | Policy Period **07/01/2015 to 07/01/2016** | Effective Date of Endorsement **07/01/2015** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

The Limits of Insurance shown on Declarations Page is amended to read as follows:

**Limits of Insurance**

$ 25,000,000 Each Occurrence

$ 25,000,000 General Aggregate

**$ 25,000,000** Products Completed/Operations Aggregate        $ 25,000 Self-Insured Retention

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

CC-1E15T2 (10/07)

# AMENDATORY ENDORSEMENT

| Named Insured **McKesson Corporation** | | | Endorsement Number **044** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 001** | Policy Period **07/01/2015 to 07/01/2016** | Effective Date of Endorsement **07/01/2015** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Endorsement number 024 Who Is An Insured – Affiliated Physician Practices Endorsement is hereby deleted in its entirety and replaced with Endorsement number 045.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

CC-1E15T2 (10/07)

# WHO IS AN INSURED – AFFILIATED PHYSICIAN PRACTICES ENDORSEMENT

| Named Insured **McKesson Corporation** | | | Endorsement Number **045** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 001** | Policy Period **07/01/2015 to 07/01/2016** | Effective Date of Endorsement **07/01/2015** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Section **II**, **WHO IS AN INSURED**, is amended by the addition of the following:

   **1.**   The entities listed in the schedule below shall be considered "insureds", but solely to the extent that:

   a.   such entity is under your management;

   b.   such entity has entered into a written Comprehensive Strategic Agreement (hereinafter "CSA") with you, which is in effect during the policy period and executed prior to any "occurrence" taking place; and

   c.   any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

   Such entity's status as an "insured" ends when its CSA with you is cancelled, terminated or expires.

   **2.**   Any entity, other than those entities listed in the schedule below, that has entered into a written CSA with you shall be considered an "insured", but solely to the extent that:

   a.   such entity is under your management;

   b.   such entity's CSA with you is in effect during the policy period and executed prior to an "occurrence" taking place; and

   c.   any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

   Such entity's status as an "insured" ends when its CSA with you is canceled, terminated or expires.

**B.**   All such entities and written CSAs must be reported in writing to us within fifteen (15) days after the expiration of this policy.  However, any inadvertent or unintentional failure to report such entities or CSAs within fifteen days shall not, in and of itself, preclude coverage for such entities as "insured" under this policy.

C. Section **VII**, **DEFINITIONS**, Subsection I, "Insured", is deleted and replace with the following:

I.      "Insured" means the Named Insured shown in the Declarations or added by endorsement and any individual or organization qualifying as such under Section II – Who is an Insured.

| Entity |
| --- |
| Allison, Curtis, Kingsley, Meoz, Michael & Sanchez, PC (Comprehensive Cancer Centers of Nevada) |
| Arizona Oncology Associates, P.C. |
| Arkansas Oncology Associates, PA** |
| Arthritis Consultants of Tidewater, Inc. |
| Asheville Hematology & Oncology Associates PA** |
| Cancer Care Network South Texas |
| Cancer Centers of Florida, PA** |
| Cancer Centers of North Carolina, PC |
| Cancer Centers of North Carolina-Asheville, PC** |
| Comprehensive Cancer Care |
| Flavio Kruter MD, PA** |
| Florida Cancer Affiliates, PL** |
| Florida Institute of Research, Medicine & Surgery, PA** |
| Hematology Oncology Associates of Illinois, LLC** |
| Hematology Oncology Associates, Inc.  (MO) |
| Hematology Oncology Associates, Inc. (Medford, OR) |
| Illinois Cancer Specialists (Cancer Care & Hematology Specialists of Chicagoland PC) |
| Interlakes Oncology Hematology P.C. |
| Kansas City Cancer Center, LLC** |
| Mahoning Valley Hematology-Oncology Associates, Inc. (The Hope Center for Cancer Care) |
| Maryland Oncology Hematology, PA |
| Minnesota Oncology Hematology, PA |
| Missouri Cancer Associates, LLP |
| Murrell, Westgate & Bryer, Inc. |
| New York Oncology Hematology, PC |
| Northwest Cancer Specialists, PC (Compass Oncology) |
| Ocala Oncology Center, PL |
| Oncology & Hematology Associates, Inc.** |
| Oncology and Hematology Associates of South Carolina, LLC** |
| Oncology and Hematology Associates of Southwest Virginia, Inc. (Blue Ridge Cancer Care) |
| Oncology and Radiation Associates, PA |
| Oncology Associates of Oregon, PC (Willamette Valley Cancer Center) |
| Oncology Hematology Radiation Care, LLC (Advanced Medical Specialties) |
| Oncology Pharmacy Services, Inc. (Texas Oncology) |
| Regional Cancer Care, PA |
| Rocky Mountain Cancer Center, LLP |
| Shenandoah Oncology PC |

| South Florida Oncology & Hematology Consultants |
| St. Louis Urological Surgeons, Inc. (ARCH Cancer Care) |
| Texas Oncology, P.A. |
| Venango Oncology Hematology Associates, PC |
| Virginia Cancer Specialists, PC (Fairfax-Northern Virginia Hematology-Oncology, PC) |
| Virginia Oncology Associates, PC |
| Wilshire Oncology Medical Group |

* Denotes Inactive entities or those in the process of dissolution

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

# AMENDATORY ENDORSEMENT

| Named Insured **McKesson Corporation** | | | Endorsement Number **046** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 001** | Policy Period **07/01/2015 to 07/01/2016** | Effective Date of Endorsement **07/01/2015** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Endorsement number 026 Automobile Liability Limitation Endorsement is hereby deleted in its entirety and replaced with Endorsement number 047.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

CC-1E15T2 (10/07)

# AUTOMOBILE LIABILITY LIMITATION ENDORSEMENT

| Named Insured **McKesson** | | | Endorsement Number **047** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 001** | Policy Period **07/01/2015 to 0701/2016** | Effective Date of Endorsement **07/01/2015** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Automobile Liability

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement.  Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy #MWTB 304583 and Old Republic Insurance Company of Canada Policy #CTB 304583 subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy # MWTB 304583 and Old Republic Insurance Company of Canada Policy # CTB 304583.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

_____
Authorized Representative

# AMENDATORY ENDORSEMENT

| Named Insured **McKesson Corporation** | | | Endorsement Number **048** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 001** | Policy Period **07/01/2015 to 07/01/2016** | Effective Date of Endorsement **07/01/2015** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Endorsement number 038 Knowledge of Occurrence is hereby deleted in its entirety and replaced with Endorsement number 049.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

————————————————————
Authorized Representative

CC-1E15T2 (10/07)

# KNOWLEDGE OF OCCURRENCE

| Named Insured | Endorsement Number |
|---|---|
| **McKesson Corporation** | **049** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **XOO** | **G27610390 001** | **07/01/2015  to  07/01/2016** | **0701/2015** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE Property and Casualty Insurance Company** |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Vice President of Risk Management or General Counsel shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

# AMENDATORY ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**050** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G27610390 001** | Policy Period<br>**07/01/2015 to 07/01/2016** | Effective Date of Endorsement<br>**07/01/2015** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Endorsement number 031 Manufacture of Drugs Exclusion is hereby deleted in its entirety and replaced with Endorsement number 051.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

CC-1E15T2 (10/07)

# EXHIBIT H



# Declarations
# ACE Umbrella Plus℠
# Commercial Umbrella Liability Policy

| Policy Symbol:  XOO | Previous Policy Symbol:  XOO |
|---|---|
| Policy Number:  G27610390 002 | Previous Policy Number:  G27610390 001 |

COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW
ACE Property and Casualty Insurance Company
436 Walnut Street
Philadelphia, Pennsylvania 19106

| Named Insured and Address | Producer Name and Address |
|---|---|
| McKesson Corporation<br>One Post Street, 34th Floor<br>San Francisco, California 94104 | MARSH RISK & INSURANCE SERVICES<br>345 CALIFORNIA STREET<br>SAN FRANCISCO, California 94104<br><br>PRODUCER CODE  355110 |

| Policy Period:   From  07/01/2016  to  07/01/2017 | 12:01 A.M Standard Time at the Address of the Named Insured as stated herein |
|---|---|

## Limits of Insurance

$ 25,000,000  Each Occurrence

$ 25,000,000  General Aggregate

$ 25,000,000  Products Completed-Operations Aggregate     $ 25,000  Self-Insured Retention

## Annual Premium

$ 640,000  Premium                                    $ 30,476  Terrorism Premium included in Annual Premium

$ 0  State Surcharge

$ 640,000  Premium, including all Surcharges and Assessments

## Policy Period Premium

$ 640,000  Premium                                    $ 30,476  Terrorism Premium included in Annual Premium

$ 0  State Surcharge

$ 640,000  Premium, including all Surcharges and Assessments

## Schedule of Underlying Insurance

Refer to the attached Schedule of Underlying Insurance, which forms a part of this Policy's Declarations.

## Endorsements and Forms

Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.


ace group

# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | XOO G27610390 002 | 07/01/2016 to 07/01/2017 |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| | XS-22695b (01/15) | Declarations ACE Umbrella Plus Commercial Umbrella Liability Policy |
| | XS-9U57c (01/15) | Schedule of Underlying Insurance |
| | XS-20835 (08/06) | Commercial Umbrella Liability Policy |
| | ALL-20887a (03/16) | Chubb Producer Compensation Practices & Policies |
| | XS-28500a (08/13) | ACE Group Specialty Claims Loss Notification Form |
| | IL P 001 (01/04) | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| | XS-22552 (06/07) | Catastrophe Management Notice |
| 001 | CC-1K11h (03/14) | Signatures |
| 002 | XS-43907 (12/14) | Access, Collection And Disclosure Of Information And Electronic Data Exclusion – Limited Bodily Injury And Redefined Property Damage Exceptions With Retained Limit |
| 003 | XS-35562 (05/13) | Amendment Of Definition J. – Insured Contract |
| 004 | XS-1V12c (11/14) | California Changes - Cancellation And Nonrenewal |
| 005 | XS-23669b (01/15) | Cap on Losses From Certified Acts of Terrorism |
| 006 | XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| 007 | XS-30063 (07/10) | Coverage Territory Definition Amendment |
| 008 | XS-32994 (01/12) | Defense Inside The Limits Endorsement – Follow Form |
| 009 | XS-35558 (05/13) | Difference In Conditions / Difference In Limits Endorsement |
| 010 | TRIA 11d (03/16) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 011 | XS-23632 (01/08) | Employee Benefit Plan Follow Form Endorsement [Occurrence] |
| 012 | XS-26426 (02/09) | Employee Benefit Plan Limitation [Claims Made] |
| 013 | XS-23634 (01/08) | Fellow Employee Exclusion Deleted |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 014 | XS-28727a (01/11) | Foreign Loss Indemnity Endorsement |
| 015 | XS-26428 (02/09) | Incidental Medical Malpractice Endorsement |
| 016 | XS-26429b (02/11) | Industrial Aid Aircraft Endorsement |
| 017 | XS-20755 (08/06) | Non-Concurrency Endorsement (Recognizes Non-Concurrency) |
| 018 | XS-20756 (08/06) | Notice of Occurrence |
| 019 | ALL-32688 (01/11) | Notice To Others Endorsement - Specific Parties |
| 020 | XS-20780a (08/09) | Pollution Exclusion - Combination Exception Time Element and Named Peril (with Insureds Retained Limit) |
| 021 | XS-21580 (01/07) | Professional Services Liability Exclusion – Exception for Resulting Bodily Injury and Property Damage |
| 022 | XS-33307a (04/15) | Tie In Of Limits Endorsement |
| 023 | XS-32667 (01/11) | Trade or Economic Sanctions Amendatory Endorsement |
| 024 | XS-23501 (04/08) | Unintentional Failure to Disclose |
| 025 | XS-34018 (01/12) | Unsolicited Communications Exclusion Amendment to Include FACTA |
| 026 | XS-25254 (02/09) | War Exclusion Amendment |
| 027 | MS-11231 (01/10) | Amendment of Who is an Insured |
| 028 | MS-10110 (05/12) | Annual Period Extension - Natural Disaster or Other Catastrophe |
| 029 | MS-10106 (05/12) | Automobile Liability Limitation Endorsement |
| 030 | MS-22418 (06/13) | Cancellation Amendatory Endorsement |
| 031 | MS-10108 (05/12) | Clinical Trial Exclusion Endorsement |
| 032 | MS-50579 (06/16) | Designated Entity Exclusion with Exceptions for Auto and Employers Liability |
| 033 | MS-40196 (06/15) | Foreign Liability Follow Form Limitation Endorsement - Exception for Products |
| 034 | MS-10102 (05/12) | Government Immunity Endorsement |
| 035 | MS-10100 (05/12) | Health Care Services Exclusion |
| 036 | MS-50580 (06/16) | Knowledge Of Occurrence by Vice President of Risk Management or General Counsel Endorsement |
| 037 | MS-50578 (06/16) | Manufacture of Drugs Exclusion |
| 038 | MS-10107 (05/12) | Non-Contributory Endorsement for Additional Insureds |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 039 | MS-12122 (07/12) | Personal Injury Definition Amended to Include Discrimination |
| 040 | MS-10104 (05/12) | Retained Limit Endorsement (No Underlying Insurance) |
| 041 | MS-10103 (05/12) | Who is an Insured - Affiliated Physician Practices Endorsement |
| 042 | MS-24763 (10/13) | Who is an Insured Amendatory Endorsement |



# Schedule of Underlying Insurance

| Named Insured | Policy Number | Policy Period |
|---|---|---|
| McKesson Corporation | XOO G27610390 002 | 07/01/2016  to  07/01/2017 |

**UNDERLYING POLICY TYPE:**  Foreign DIC General Liability

Policy Number: On file with Company

Policy Period:  07/01/2016  to  07/01/2017

Carrier:  The Insurance Company of the State of Pennsylvania

Policy Defense Treatment:  Outside the Limit

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | Each Occurrence |
| $2,000,000 | General Aggregate (other than Products Completed Operations) |
| $2,000,000 | Products/Completed Ops Aggregate |
| $4,000,000 | Master Policy Aggregate |

**UNDERLYING POLICY TYPE:**  Foreign DIC Employee Benefits Liability

Policy Number: On file with Company

Policy Period:  07/01/2016  to  07/01/2017

Carrier:  The Insurance Company of the State of Pennsylvania

Policy Defense Treatment:  Outside the Limit

Deductible Defense Treatment:  Inside the Deductible

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | Each Wrongful Ace or series of related Wrongful acts |
| $1,000,000 | Annual Aggregate |

**UNDERLYING POLICY TYPE:** Foreign DIC Auto Liability

Policy Number: On file with Company          Policy Defense Treatment:          Outside the Limit

Policy Period: 07/01/2016  to  07/01/2017

Carrier:          Insurance Company Of the State of Pennsylvania

| LIMIT AMOUNT | LIMIT TYPE |
| --- | --- |
| $1,000,000 | Each Accident |

---

**UNDERLYING POLICY TYPE:** Foreign DIC Employers Liability

Policy Number: On file with Company          Policy Defense Treatment:          Outside the Limit

Policy Period: 07/01/2016  to  07/01/2017

Carrier:          Insurance Company Of the State of Pennsylvania

| LIMIT AMOUNT | LIMIT TYPE |
| --- | --- |
| $1,000,000 | BI by Accident - Per Accident Limit |
| $1,000,000 | BI by Disease - Policy Limit |
| $1,000,000 | BI by Disease - Each Employee Limit |

---

**UNDERLYING POLICY TYPE:** UK Employers Liability

Policy Number: On file with Company          Policy Defense Treatment:          Outside the Limit

Policy Period: 07/01/2016  to  07/01/2017

Carrier:          AIG Europe Limited

| LIMIT AMOUNT | LIMIT TYPE |
| --- | --- |
| £10,000,000 | Each Occurrence |

---

**UNDERLYING POLICY TYPE:** Auto Liability (US Oncology)

Policy Number: On file with Company          Policy Defense Treatment:     Outside the Limit

Policy Period:  07/01/2016  to  07/01/2017

Carrier:        ACE Property & Casualty
                Company

LIMIT AMOUNT                                 LIMIT TYPE

$1,000,000                                   Combined Single Limit

**UNDERLYING POLICY TYPE:** Employers Liability

Policy Number: On file with Company          Policy Defense Treatment:     Outside the Limit

Policy Period:  07/01/2016  to  07/01/2017

Carrier:        Old Republic

LIMIT AMOUNT                                 LIMIT TYPE

$5,000,000                                   BI by Accident - Per Accident Limit
$5,000,000                                   BI by Disease - Policy Limit
$5,000,000                                   BI by Disease - Each Employee Limit

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

**UNDERLYING POLICY TYPE:** Employers Liability (US Oncology)

Policy Number: On file with Company          Policy Defense Treatment:     Outside the Limit

Policy Period:  07/01/2016  to  07/01/2017

Carrier:        Old Republic

LIMIT AMOUNT                                 LIMIT TYPE

$1,000,000                                   BI by Accident - Per Accident Limit
$1,000,000                                   BI by Disease - Policy Limit
$1,000,000                                   BI by Disease - Each Employee Limit

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above

schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

---

**UNDERLYING POLICY TYPE:**  UK Employers Liability (Admenta)

Policy Number: On file with Company          Policy Defense Treatment:       Outside the Limit

Policy Period:  07/01/2016   to   07/01/2017

Carrier:          Admenta UK Plc and Subsidiary
                  Companies

LIMIT AMOUNT                                 LIMIT TYPE

£25,000,000                                  Each Occurrence

---

**UNDERLYING POLICY TYPE:**  Ireland Employers Liability (UDG)

Policy Number: On file with Company          Policy Defense Treatment:       Outside the Limit

Policy Period:  01/04/2016   to   01/04/2017

Carrier:          Zurich Insurance Plc

LIMIT AMOUNT                                 LIMIT TYPE

€13,000,000                                  Each Occurrence

---

**UNDERLYING POLICY TYPE:**  Ireland Employers Liability (Celesio)

Policy Number: On file with Company          Policy Defense Treatment:       Outside the Limit

Policy Period:  01/01/2016   to   01/01/2017

Carrier:          Zurich Insurance Plc

LIMIT AMOUNT                                 LIMIT TYPE

€13,000,000                                  Each Occurrence

---



**ACE Umbrella Plus**<sup>SM</sup>
**Commercial Umbrella Liability Policy**

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

**I.   INSURING AGREEMENT**

A.   We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

1.   This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

a.   The "bodily injury" or "property damage" is caused by an "occurrence";

b.   The "bodily injury" or "property damage" occurs during the "policy period"; and

c.   Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

2.   This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

B.   "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

C.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

1.   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2.   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3.   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

D. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II. WHO IS AN INSURED

A. The following are "insured's":

1. The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2. Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3. If you are designated in the Declarations as:

   a. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

   c. A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

   e. A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are "insureds" for:

   a. "Bodily injury" or "personal and advertising injury":

      (1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (2) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

      (3) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

      (4) Arising out of his or her providing or failing to provide professional health care services.

   b. "Property damage" to property:

      (1) Owned, occupied or used by you,

      (2) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3. Any person or organization having proper temporary custody of your property if you die, but only:

    a. With respect to liability arising out of the maintenance or use of that property; and

    b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

5. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization. However:

    a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

    b. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

    c. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

    d. We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6. Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## III.   DEFENSE AND SUPPLEMENTARY PAYMENTS

A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

    1. When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

    2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

    3. When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B. We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C. We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D. If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

    1. All expenses we incur.

    2. Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4.  The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5.  All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6.  All costs taxed against the "insured" in the "suit".

7.  Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8.  Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E.  Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV.  LIMITS OF INSURANCE

A.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made or "suits" brought; or

3.  Persons or organizations making claims or bringing "suits".

B.  The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1.  Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2.  Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C.  The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D.  Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E.  If the applicable limits of "underlying insurance" have been:

1.  Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2.  Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V.   EXCLUSIONS

This insurance does not apply to:

### A.   Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1.   A watercraft while ashore on premises you own or rent; or

2.   A watercraft you do not own that is:

     a.   Less than 26 feet long; and

     b.   Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### B.   Asbestos

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

### C.   Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.   That the "insured" would have in the absence of the contract or agreement; or

2.   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

     a.   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

     b.   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### D.   Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1.   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

E.  **Damage to Property**

"Property damage" to:

1.  Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3.  Property loaned to you;

4.  Personal property in the care, custody or control of the "insured";

5.  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6.  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

F.  **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

G.  **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.  **Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

I.  **Employer's Liability**

"Bodily injury" to:

1.  An "employee" of the "insured" arising out of and in the course of:

    a.  Employment by the "insured"; or

    b.  Performing duties related to the conduct of the "insured's" business; or

2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1.  Whether the "insured" may be liable as an employer or in any other capacity; and

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

1.  To liability assumed by the "insured" under an "insured contract".

2.  To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

J.  **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.  Refusal to employ;

2.  Termination of employment;

3.  Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies, acts or omissions; or

4.  Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

K.  **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

L.  **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

M.  **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1.  Advertising, broadcasting, publishing or telecasting;

2.  Designing or determining content of web-sites for others; or

3.  An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VII - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

N.  **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1.  Causing or contributing to the intoxication of any person;

2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O.  **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1.  The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2.  Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3.  Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P.  **Nuclear**

1.  To any injury or damage:

    a.  With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

    b.  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  To any injury or damage resulting from the "hazardous properties" of "nuclear material", if:

    a.  The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

    b.  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

    c.  The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

    a.  "Hazardous properties" include radioactive, toxic or explosive properties;

    b.  "Nuclear material" means "source material", "special nuclear material" or "by-product material";

    c.  "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

    d.  "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

e.   "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f.   "Nuclear facility" means:

   (1)   Any "nuclear reactor";

   (2)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (3)   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

   (4)   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g.   "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h.   Injury or damage includes all forms of radioactive contamination of property.

**Q.  Other "Personal and Advertising Injury"**

1.   "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2.   "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3.   "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4.   "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5.   "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages:

   a.   That the "insured" would have in the absence of the contract or agreement; or

   b.   Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

      i.   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      ii.   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6.   "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

   b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (1) Any "insured"; or

      (2) Any person or organization for whom you may be legally responsible;

   d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

   e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

   f. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

   g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

   1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

   2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

3. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6. Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

   a. The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   b. The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7. Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

   a. The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   b. The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S. **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T. **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U. **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V. **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. This exclusion also applies to communications which are made or allegedly made in violation of the:

1.   Telephone Consumer Protection Act (TCPA) including any

     Amendment of or addition to such law; or

2.   The CAN-SPAM Act of 2003, including any amendment of

     Or addition to such law; or

3.   Any statute, ordinance or regulation, other than the TCPA

     Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

## VI.   CONDITIONS

A. **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal. If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B. **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us. If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1.  You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2.  We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3.  The "policy period" will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.  The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1.  You must see it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

    a.  How, when and where the "occurrence" took place;

    b.  The names and addresses of any injured persons and witnesses; and

    c.  The nature and location of any injury or damage arising out of the "occurrence".

2.  If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

    a.  Immediately record the specifics of the claim or "suit" and the date received; and

    b.  Notify us in writing as soon as practicable.

3.  You and any other involved "insured" must:

    a.  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    b.  Authorize us to obtain records and other information;

    c.  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

   4.  No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

G. **Inspection and Audit**

   1.  We will be permitted, but not obligated to inspect the "insured's" property and operations. Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

   2.  We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

H. **Legal Action Against Us**

   1.  No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

   2.  You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

I. **Maintenance of "Underlying Insurance"**

During the "policy period", you agree:

   1.  To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

   2.  That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

   3.  That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

   4.  That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

   5.  That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

J. **Other Insurance**

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to be excess of this policy.

K. **Premium**

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium. It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

L. **Separation of "Insureds"**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

   1.  As if each Named Insured were the only Named Insured; and

2. Separately to each "insured" against whom claim is made or "suit" is brought.

M. **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N. **Transfer of Rights of Recovery Against Others to Us**

1. If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2. Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3. If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O. **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy. The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

**VII. DEFINITIONS**

A. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B. "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D. "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E. "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or independent contractor.

F. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

I.  "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured.

J.  "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

K.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

L.  "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M.  "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. Power cranes, shovels, loaders, diggers or drills; or

    b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a. Equipment designed primarily for:

        i. Snow removal;

        ii. Road maintenance, but not construction or resurfacing; or

        iii. Street cleaning;

    b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O. "Occurrence" means:

1. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2. With respect to "personal and advertising injury", a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q. "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T. "Products-completed operations hazard":

1. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   a. Products that are still in your physical possession; or

   b. Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      i. When all of the work called for in your contract has been completed.

      ii. When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      iii. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. Does not include "bodily injury" or "property damage" arising out of:

   a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

   b. The existence of tools, uninstalled equipment or abandoned or unused materials.

U. "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V. "Retained limit" means either of the following:

1. The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2. The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

X.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.  "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.  "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA. "Your product":

    1.  Means:

        a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (1)  You;

            (2)  Others trading under your name; or

            (3)  A person or organization whose business or assets you have acquired; and

        b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    2.  Includes:

        a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        b.  The providing of or failure to provide warnings or instructions.

    3.  Does not include vending machines or other property rented to or located for the use of others but not sold.

BB. "Your work":

    1.  Means:

        a.  Work or operations performed by you or on your behalf; and

        b.  Materials, parts or equipment furnished in connection with such work or operations.

    2.  Includes:

        a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        b.  The providing of or failure to provide warnings or instructions.



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.



**ACE GROUP SPECIALTY
CLAIMS LOSS NOTIFICATION
FORM**

**FORWARD BY FAX, MAIL OR E-MAILTO:**

ACE Excess
P.O. Box 5103
Scranton, PA 18505-0510
Fax No.:  (866)635-5687

ACEClaimsFirstNotice@acegroup.com

**Today's Date:**

**Notice of:**  (check all that apply)

☐ **First-Party Claim**          ☐ **Potential Claim**

☐ **Third-Party Claim**          ☐ **Litigation Initiated**

☐ **Other** _____

## Insured's Name & Contact Information

**Company Name:**  McKesson Corporation          **Point of Contact:** _____

**Address:**      One Post Street, 34th Floor
             San Francisco, California 94104

**Phone Number:** _____

## Broker/Agent's Name & Contact Information

**Company Name:**  MARSH RISK & INSURANCE SERVICES          **Point of Contact:** _____

**Address:**      345 CALIFORNIA STREET
             SAN FRANCISCO, California 94104

**Phone Number:** _____

## Policy Information

**Policy Number:**  XOO G27610390 002          **Policy Period:**  07/01/2016  -  07/01/2017

**Limits of Liability:** $ 25,000,000  **per** $ 25,000,000  **agg** **Self-Insured Retention/Deductible:**  $ 25,000

## Loss Information

**Date of Incident/Claim:** _____  **Location:** _____

**Claimant Name/Address:** _____

**Description of Loss:** _____
_____
_____
_____

Please list all attached or enclosed documentation:  ☐ (check if none provided)

_____
_____
_____

Name of Person Completing This Form: _____  Signature: _____

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

**COMMERCIAL UMBRELLA LIABILITY**

**INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE**

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from ACE Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully.

When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.

- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

# 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.

- Please be prepared to provide the following information:
  - Caller's name, title and contact telephone number
  - Name of Insured
  - Policy Number
  - A description of the incident
  - Any witnesses
  - Property, Product or Vehicle Information
  - Incident Location
  - Contact Person
  - Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. ACE Excess Casualty is one of the U.S.-based business groups of ACE USA. Insurance policies are issued by ACE Property and Casualty insurance Company or one of its insurance company affiliates.*

# SIGNATURES

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 001 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

CC-1K11h (03/14)                                                                 Page 1 of 1

## ACCESS, COLLECTION AND DISCLOSURE OF INFORMATION AND ELECTRONIC DATA EXCLUSION – LIMITED BODILY INJURY AND REDEFINED PROPERTY DAMAGE EXCEPTIONS WITH RETAINED LIMIT

| Named Insured McKesson Corporation | | | Endorsement Number 002 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 002 | Policy Period 07/01/2016  to  07/01/2017 | Effective Date of Endorsement 07/01/2016 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

I. The following exclusion is added to the policy:

This insurance does not apply to any injury, damage, cost, "loss", liability or legal obligation arising out of or in any way related to:

    a.  Any access to, collection of, release of or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health or medical information or any other type of nonpublic information; or

    b.  The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

However, this exclusion does not apply to damages because of "bodily injury" or "property damage".

II. The following definition is added to the policy and applies to this endorsement:

"Electronic data" means any information, facts or programs stored as or on, created or used on, or transmitted to or from any computer software or system, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media that are used with electronically controlled equipment or other electronic backup facilities, and data transmission or storage provided by means of the Internet.

III. When coverage is provided by virtue of the exception to the exclusion in this endorsement, the following provisions will apply:

    A.  The definition of "property damage" is deleted and replaced by the following:

    "Property damage" means physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. "Electronic data" is not tangible property.

    B.  The definition of "retained limit" is deleted and replaced by the following:

"Retained limit" means a Self-Insured Retention in the amount of $5,000,000 , applicable to each "occurrence". The "retained limit" may be eroded by "loss" only and not defense expenses or supplementary payments.

IV. Notwithstanding anything in this endorsement or elsewhere in this policy, the limited coverage for "bodily injury" and "property damage" provided by virtue of the exceptions in this exclusion does not apply to and no coverage is provided for any notification costs, credit monitoring expenses, forensic expenses or any other similar expenses unless such expenses qualify as covered "catastrophe management expenses" under a **Catastrophe Management Coverage Endorsement** attached to this policy and then subject to all of the terms and limitations of that coverage.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

## AMENDMENT OF DEFINITION J. – INSURED CONTRACT

| Named Insured McKesson Corporation | | | Endorsement Number 003 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 002 | Policy Period 07/01/2016  to  07/01/2017 | Effective Date of Endorsement 07/01/2016 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### ACE UMBRELLA PLUS℠ COMMERCIAL UMBRELLA LIABILITY POLICY

Section **VII.  DEFINITIONS** is amended as follows:

**Definition J.** is deleted and replaced by the following:

"Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a.  preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

2.  under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 004 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS AND UMBRELLA LIABILITY POLICY
### COMMERCIAL UMBRELLA LIABILITY POLICY
### EXCESS LIABILITY CATASTROPHE POLICY
### EXCESS LIABILITY POLICY

**A.** The **Cancellation** Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

    (a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    (b) Continuation of the policy coverage would:

        (i) Place us in violation of California law or the laws of the state where we are domiciled; or

        (ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

(8) A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

(9) Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

(10) A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund, if any, will be computed on a pro rata basis. However, the refund may be less than pro rata if we made a loan to you for the purpose of payment of premiums for this policy. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured<br>McKesson Corporation | | | | Endorsement Number<br>005 |
|---|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY
### COMMERCIAL EXCESS AND UMBRELLA LIABILITY POLICY

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this policy.

C. In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

1. The Limits of Insurance of the Declarations is amended to include:

"Certified act of terrorism retained limit" $ 5,000,000

2. "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance. "Certified act of terrorism" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

3. Solely with respect to this endorsement, Section III., Defense and Supplement Payments is amended as follows:

a. With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume

charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out of a "certified act of terrorism".  However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b.   We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit".  Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit".  We may make such investigation as we require and effect settlement of any "suit" so defended.

c.   We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 006 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 002 | Policy Period 07/01/2016  to  07/01/2017 | Effective Date of Endorsement 07/01/2016 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies all insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

$250,000 Annual Limit

Catastrophe Management Coverage

**A.** Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

**B.** A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

**C.** There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

**D.** Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

**E.** Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

**F.** For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage". "Catastrophe management

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1. expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2. expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3. medical expenses; funeral expenses; expenses for psychological counseling; travel expenses; temporary living expenses or other necessary response costs and approved by us, incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured". A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

## COVERAGE TERRITORY DEFINITION AMENDMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>007 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

**Section VII.**, **DEFINITIONS**, Item D. "Coverage territory" is deleted and replaced with the following:

D.  "Coverage territory" means anywhere in the world.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## DEFENSE INSIDE THE LIMITS ENDORSEMENT – FOLLOW FORM

| Named Insured<br>McKesson Corporation | | Endorsement Number<br>008 |
|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Paragraph D. of Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS** is deleted and replaced by the following**:**

    D.  If we assume the defense of any "suit" against the "insured", we will pay the following items as listed below:

        1.  All expenses we incur.

        2.  Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy.  We do not have to furnish these bonds.

        3.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance.  We do not have to furnish these bonds.

        4.  The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

        5.  All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

        6.  All costs taxed against the "insured" in the "suit".

        7.  Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

        8.  Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance", then such expenses will reduce the corresponding applicable Limits of Insurance of this policy.  However, if expenses incurred to defend any "suit" do not reduce the applicable limits of "underlying insurance", then we will pay such expenses in addition to the applicable Limit of Insurance of this policy.

Section **IV.**, **LIMITS OF INSURANCE** is amended by the addition of the following:

If defense expenses are included within the "underlying insurance" or within any "other insurance", then references to damages in this Section are amended to include Defense and Supplementary Payments for the sole purpose of determining erosion of limits of insurance.

Section **VII.**, **DEFINITIONS**, Subsection **M.**, is deleted in its entirety and replaced with the following:

**M.** "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay because of damages as a result of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages. If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance", then "loss" also includes Defense and Supplementary Payments, which will erode the limits of this insurance.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

© 2012

## DIFFERENCE IN CONDITIONS / DIFFERENCE IN LIMITS ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>009 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### ACE UMBRELLA PLUS℠ COMMERCIAL UMBRELLA LIABILITY POLICY

If this policy provides greater coverage, limits or conditions than any of the policies listed in the Schedule of Other Policies below (each such scheduled policy referred to as an Other Policy), then this policy will provide coverage for loss to the extent of the difference in the coverages, limits or conditions between this policy and the Other Policy, subject to the terms, limitations and conditions of this policy.

This policy provides such coverage on an excess basis for and only to the extent of any such difference in terms, limits and conditions. In no event will the coverage afforded under this policy, in combination with any one or more of such Other Policies, exceed the applicable Limit of Insurance of this policy. The most we will pay if this policy has higher limits than any Other Policy is the difference between the applicable Limit of Insurance of this policy and the limit of insurance for any such Other Policies.

Schedule of Other Policies:

| **Country of Issuance** | **Insurer** | **Policy Number** |
|---|---|---|
| Canada | ACE INA Insurance | XBC324006 |

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured<br>McKesson Corporation | | Endorsement Number<br>010 |
|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

COVERAGE OF "ACTS OF TERRORISM" AS DEFINED BY THE REAUTHORIZATION ACT WILL BE PROVIDED FOR THE PERIOD FROM THE EFFECTIVE DATE OF YOUR NEW OR RENEWAL POLICY THROUGH THE EARLIER OF THE POLICY EXPIRATION DATE OR DECEMBER 31, 2020. EFFECTIVE DECEMBER 31, 2020 THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT EXPIRES.

Terrorism Risk Insurance Act premium: $ 30,476                            .

_____
Authorized Representative

## EMPLOYEE BENEFIT PLAN FOLLOW FORM ENDORSEMENT
## [OCCURRENCE]

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 011 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of liability shown therein, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "administration" of any "employee benefit program(s)".

"Administration" includes but is not limited to performing any of the following functions for an "employee benefit program":

1.  Counseling "employees" on your "employee benefit programs";

2.  Interpreting your "employee benefit programs";

3.  Handling records for your "employee benefit programs";

4.  Effecting enrollment, termination or cancellation of employees under your "employee benefit programs";

5.  Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs";

6.  Collection of contributions and application of contributions as provided in your "employee benefit programs";

7.  Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee benefit programs"; or

8.  Processing of claims for your "employee benefit programs".

"Employee benefit program(s)" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

_____
Authorized Agent

XS-23632 (01/2008)

## EMPLOYEE BENEFIT PLAN LIMITATION
## [CLAIMS MADE]

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>012 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

**SCHEDULE**

1.  Underlying Insurance

> Company:              Illinois Union Insurance Company
>
> Policy Number:       On file with Company
>
> Expiration Date:      07/01/2017
>
> Retroactive Date:     07/01/2006
>
> Limits of Insurance:
>
> Each Employee       $ 5,000,000
>
> Aggregate:            $ 5,000,000

2.  Our Retroactive Date:       07/01/2006

3.  Coverage

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

"Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

a.  Counseling "employees" on your "employee benefit programs";

b.  Interpreting your "employee benefit programs";

c.  Handling records for your "employee benefit programs";

d. Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e. Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f. Collection of contributions and application of contributions as provided in your "employee benefit programs";

g. Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h. Processing of claims for your "employee benefit programs".


"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4. Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a. Retroactive Date

If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

i. The date such claim is first made against you is during OUR policy period, and

ii. The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b. Extended Reporting Period

If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in  like manner, subject to all of the following:

i. Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

ii. The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

iii. The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c. Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance"  above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

i. The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

ii. Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii. If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

   d.   Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

       Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

All other terms and conditions of this policy remain unchanged.

_____
                        Authorized Agent

**FELLOW EMPLOYEE EXCLUSION DELETED**

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>013 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**


Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1)   To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

_____
                                                                Authorized Agent

XS-23634 (01/2008)

## FOREIGN LOSS INDEMNITY ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>014 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**THIS ENDORSEMENT APPLIES ONLY WHEN A "FOREIGN OCCURRENCE", ARISING OUT OF A "FOREIGN BUSINESS OPERATION" AND CAUSING "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY", TAKES PLACE IN A COUNTRY WHERE WE ARE NOT "LICENSED".**

The policy is amended to add the following:

## FIRST NAMED INSURED INDEMNITY COVERAGE

### I.  INSURING AGREEMENT

This endorsement applies only when a "foreign occurrence", arising out of a "foreign business operation" and causing "bodily injury", "property damage" or "personal and advertising injury", takes place in a country where we are not "licensed".

In that case, rather than directly pay on behalf of and defend your "foreign business operation", we will indemnify the "First Named Insured", in excess of the "retained limit", for "loss" and defense and supplementary payments in accordance with this endorsement. This endorsement provides the only coverage under the policy for "bodily injury", "property damage" or "personal and advertising injury" arising out of a "foreign occurrence".

The terms, conditions and limitations in sub-section A.1., A.2., B., C. and D. of Section **I. INSURING AGREEMENT** in the policy will apply to our duty to indemnify the "First Named Insured".

### II.  WHO IS AN INSURED

Section **II. WHO IS AN INSURED**, is amended to provide that a "foreign business operation" is not an "insured" on whose behalf we have a direct duty to pay settlements or judgments or a direct duty to defend under this policy.

### III.  DEFENSE AND SUPPLEMENTARY PAYMENTS - ASSIGNMENT OF RIGHTS

When this endorsement applies, rather than directly defend your "foreign business operation", we will indemnify the "First Named Insured" for defense costs incurred in defending a "suit" brought against a "foreign business operation", provided that (a) the "foreign business operation" gives the "First Named Insured" the right to control the investigation, defense and settlement of the "suit" and (b) the "First Named Insured" assigns this right to us.  We will associate with the "First Named Insured" to conduct such investigation, defense and settlement as provided in Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, except that we will indemnify the "First Named Insured" rather than directly defend and pay supplementary payments.

XS-28727a (01/11) © 2011 Page 1 of 3

## IV.  LIMITS OF INSURANCE

A.  The insurance provided by this endorsement is subject to the applicable aggregate and each occurrence limits of liability stated in the Declarations, and any "losses" for which we pay indemnity will erode and be counted against such limits.

B.  Subject to the applicable aggregate and each occurrence limits of liability stated in the declarations, our limit of liability for "loss" will be the amount which the "First Named Insured":

1.  Has indemnified a "foreign business operation", or

2.  Represents to us that it is obligated to indemnify the "foreign business operation".

However, if this policy provides for a percentage allocation of liability with respect to the insured's or the "foreign business operation's" interest in a joint venture, limited liability company or partnership, the allocation set forth in such provision will apply.

The terms, conditions and limitations set forth in Section **IV. LIMITS OF INSURANCE** in the policy will apply to our duty to indemnify the "First Named Insured".

## V.  CONDITIONS

When this endorsement applies, the following conditions apply in addition to the conditions and limitations provided elsewhere in the policy.

### A.  Claims Made/Reported Coverage (if applicable)

Any requirements in the policy that a claim be first made during the policy period or any discovery or extended reporting period will also apply to all claims made against a "foreign business operation" for which the "First Named Insured" seeks indemnification.

### B.  Additional Notice Duties of the "First Named Insured"

With respect to a "foreign occurrence" which may result in a claim for damages under this endorsement, the "First Named Insured" assumes the duty to notify us, and must notify us in accordance with the standards described in Condition **F. Duties in the Event of "Occurrence", Claim or "Suit"** in the policy.

### C.  Proof of Insurance

This policy may not be offered as proof of insurance unless permitted by local applicable law.

### D.  Truthfulness and Accuracy of Material Information

When this endorsement applies, the "First Named Insured":

1.  Is responsible for the truthfulness and accuracy of any material information provided to us with respect to a "foreign business operation", "foreign occurrence", claim, "suit" or "loss"; and

2.  Will not, at any time, intentionally conceal or misrepresent a material fact concerning this policy, including the risk to be insured, a "foreign business operation", a "loss", claim or "suit" or a "foreign occurrence".

## VI. DEFINITIONS

When this endorsement applies, Definition M. "Loss" in the policy is deleted and replaced with the following:

M. "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "foreign business operation" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", for which the "foreign business operation" makes a claim for reimbursement from the "First Named Insured", after making proper deduction for all recoveries and salvages.

The following definitions are added to the policy and apply to the coverage provided by this endorsement:

"First Named Insured" means the first Named Insured shown in the Declarations.

"Foreign business operation" means a subsidiary of the "First Named Insured" and any other organization under its control or active management at the inception date of the policy or added by endorsement, and having its principal place of business, statutory domicile, residence, or business operation subject to liability for otherwise covered "bodily injury", "property damage" or "personal and advertising injury" located in a country where we are not "licensed".

"Foreign occurrence" means an "occurrence" arising from the premises, operations or products of a "foreign business operation" taking place in or causing "bodily injury", "property damage" or "personal and advertising injury" in a country where we are not "licensed". Country includes any political jurisdiction that independently regulates the licensing of insurance companies.

"Licensed" means expressly approved in accordance with law by the applicable regulatory body to conduct the business of insurance in a country as a regulated, authorized insurer. "Licensed" is synonymous with admitted and authorized.  It does not include being recorded as an eligible foreign or alien non-admitted insurer.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>015 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **II. WHO IS AN INSURED,** Section B.1.a.(4) is deleted and replaced by the following:

(4) arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees" Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence".

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a. medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or
b. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## INDUSTRIAL AID AIRCRAFT ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>016 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.   LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$ 500,000,000 Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or rented or loaned to any "insured". Use includes operation and "loading and unloading").

II.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any "suit" against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

III.   For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV.   Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance".

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses".

V.   For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.   Aircraft
This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI. For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1. attorney's fees and all other investigation, loss adjustment and litigation expenses;
2. premiums on bonds to release attachments;
3. premiums on appeal bonds required by law to appeal any claim or "suit";
4. costs taxed against the "insured" in any claim or "suit";
5. pre-judgment interest awarded against the "insured"; and
6. interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used predominantly for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

_____
                                    Authorized Representative

## NON-CONCURRENCY ENDORSEMENT
### (Recognizes Non-Concurrency)

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 017 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Whereas, the policy (ies) listed in the schedule of "underlying insurance" are non-concurrent with the "policy period" hereunder;

In the event of reduction or exhaustion of the aggregate limit(s) of the policy (ies) by reason of "occurrences" prior to the inception of this policy, it is agreed that such insurance as is afforded by this policy shall:

    (1)    in the event of reduction apply in excess of the reduced underlying limit; or

    (2)    in the event of exhaustion continue in force as "underlying insurance".

Anything in this endorsement to the contrary notwithstanding this policy applies only to "occurrences" happening during the "policy period".

"Policy period" means the period stated in the Declarations of this policy.

All other terms and conditions remain unchanged.

_____
Authorized Agent

# NOTICE OF OCCURRENCE

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 018 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES

| Named Insured McKesson Corporation | | | | Endorsement Number 019 |
|---|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 002 | Policy Period 07/01/2016 to 07/01/2017 | | Effective Date of Endorsement 07/01/2016 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**A.** If we cancel the Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

**B.** We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

**C.** The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

**D.** We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

**E.** We may arrange with your representative to send such notice in the event of any such cancellation.

**F.** You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

**G.** This endorsement does not apply in the event that you cancel the Policy.

### SCHEDULE

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
| Medassets | TBD | 13727 Noel Road, Suite 1400 Dallas, TX 75240 |
| Port Authority of New York & New Jersey Newark Liberty International Airport c/o EBIX BPO | TBD | P.O. Box 881639 San Diego, CA 92168-1635 |

All other terms and conditions of the Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL (With Insured's Retained Limit)

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 020 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., **EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

1. To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2. To any "loss", cost or expense arising out of any:

   a. Directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. Is both unexpected and unintended from the standpoint of the "insured";

2. Commenced abruptly and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3. Is caused:

   a. Solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, flood, earthquake, sprinkler leakage, or discharge from a heating, ventilating or air conditioning system or collision or upset of a motor vehicle, mobile equipment or an aircraft;

   b. Or arises out of "your product" included in the "products-completed operations hazard"; or

   c. By any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

      (1) Is at or from any:

(a) Premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

(b) Premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

And

(2) Is known by any "insured" within <u>20</u> days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

(3) Is reported to us within <u>80</u> days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. Loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. Any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind.  Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not.  Waste means any substance that:

a. Is left over, or no longer in use, or discarded;

b. Is to be reclaimed or recycled, or reconditioned; or

c. Has been removed, treated, stored or disposed of as part of any environmental remediation effort.

It is further agreed that solely with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" due to any exclusion or exclusions contained therein, the "insured's" "retained limit" in the Limits of Insurance section of the Declarations is amended to $ <u>5,000,000</u> .

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

**PROFESSIONAL SERVICES LIABILITY EXCLUSION -  EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE**

| Named Insured McKesson Corporation | | | Endorsement Number 021 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 002 | Policy Period 07/01/2016  to  07/01/2017 | Effective Date of Endorsement 07/01/2016 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-21580 (0107)

# TIE IN OF LIMITS ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>022 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance is amended to include the following additional Condition:

If this insurance and the insurance provided by the policy(ies) listed in the schedule below apply to the same claim, "suit" or "occurrence", the maximum combined limits of insurance available under this policy and the scheduled policy(ies) below for such claim, "suit" or "occurrence" will not exceed:

$ 25,000,000      Each Occurrence

$ 25,000,000      General Aggregate

$ 25,000,000      Products-Completed Operations Aggregate

These limits are the most that will be paid under this policy and the policies listed in the schedule below, combined, for all claims, damages, "losses" or "suits", regardless of any aggregate, per "occurrence", per incident, or per accident limit, or any other limit of liability or limit of insurance in this policy or the scheduled policy.

### SCHEDULE

| Country of Issuance | Insurer | Policy Number |
|---|---|---|
| Canada | ACE INA Insurance | XBC324006 |

Any "loss" paid under the scheduled policy shall reduce by such amount the applicable limit of insurance under this policy.  Any claims, damages, "losses" or "suits" seeking coverage under any policy scheduled above may not be brought under this policy.  Any claims, damages, "losses" or "suits" seeking coverage under this policy may not be brought under any policy scheduled above.

Nothing in this provision shall serve to increase any applicable limit of insurance of this policy or the scheduled policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## TRADE OR ECONOMIC SANCTIONS AMENDATORY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 023 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Item T. of Section **V. Exclusions** is hereby deleted and replaced by the following:

**T.   Trade or Economic Sanctions**

To the extent that United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 024 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## UNSOLICITED COMMUNICATIONS EXCLUSION AMENDMENT TO INCLUDE FACTA

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>025 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016  to  07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS**, Item **V. Unsolicited Communications** is deleted and replaced with the following:

### V.  Recording and Distribution of Material or Information in Violation of Law

"Bodily injury," "property damage" or "personal and advertising injury" arising out of any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone that violates or is alleged to violate:

1.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3.  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4.  Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# WAR EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 026 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion W. of SECTION V. EXCLUSIONS is deleted in its entirety and replaced by the following:

**W.  War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

XS-25254 (02/09)                                                                                           Page 1 of 1

## AMENDMENT OF WHO IS AN INSURED

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| McKesson Corporation | | | | 027 |

| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
|---|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II WHO IS AN INSURED Paragraph B. is hereby amended to add the following:

7. Any person or organization you become obligated to include as an additional "insured" under the policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" arising out of your operations or premises owned by or rented to you.

However, the insurance provided by this endorsement will not be broader than the coverage provided by this policy.

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA,  President

Authorized Representative

## ANNUAL PERIOD EXTENSION - NATURAL DISASTER OR OTHER CATASTROPHE

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 028 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

In the event of a natural disaster or other catastrophe that prevents all written, telephonic and electronic communication between us and the Named Insured at the expiration of the "policy period", the "policy period" will automatically be extended until the earlier of the two following times:

1.      thirty (30) calendar days from the original expiration date of such "policy period"; or
2.      fourteen (14) calendar days after written, telephonic or electronic communication between us and the Named Insured is once again possible.

The additional premium for such extension will be calculated on a pro-rata basis.  Such extension will be cancelled automatically retroactive to its inception if the additional premium or proof of payment thereof is not received by us within thirty (30) calendar days following the earlier of 1. or 2. above.

Nothing in this endorsement will operate to increase or reinstate the Limits of Liability as stated in the Declarations.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
**Authorized Representative**

**AUTOMOBILE LIABILITY LIMITATION ENDORSEMENT**

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 029 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Automobile Liability

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement.  Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy # tbd and Old Republic Insurance Company of Canada Policy # tbd subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy # tbd and Old Republic Insurance Company of Canada Policy # tbd.

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA,  President

Authorized Representative

## CANCELLATION AMENDATORY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 030 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016 to 07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Parts 1., 2., 5. and 6. of Condition D of Section VI CONDITIONS are deleted and replaced by the following:

1.      This policy may be cancelled by you by mailing to us written notice stating when such cancellation shall be effective.

2.      This policy may be cancelled by us by mailing to you at your last known address, written notice stating when, not less than one hundred twenty (120) days thereafter, ten (10) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period". Under no circumstance will our notice of cancellation to you be less than the minimum required by State law or regulation.

5.      If this policy is cancelled, the final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Annual Premium as shown in the Declarations.

6.      Premium adjustment may be made at the time cancellation becomes effective. Our check or the check of our representative mailed to you shall be sufficient proof of any refund or premium due you.

All other terms and conditions of this Policy remain unchanged.

_JOHN J. LUPICA, President_

**Authorized Representative**

## CLINICAL TRIAD EXCLUSION ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 031 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016 to 07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial".  However, this exclusion does not apply to late phase trial services, otherwise referred to as Phase IV, and provided by McKesson Specialty Canada.

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## DESIGNATED ENTITTY EXCLUSION WITH EXCEPTIONS FOR AUTO AND EMPLOYERS LIABILITY

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 032 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016 to 07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

Section **V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

**Designated Entity**

Any "bodily injury", "property damage" or "personal and advertising injury" arising out of the premises, operations, products or activities of any person or organization shown in the Schedule below.  However, this exclusion shall not apply to "auto" liability or employers liability.

<u>SCHEDULE</u>

Celesio AG and its subsidiaries

All other terms and conditions of this Policy remain unchanged.

_JOHN J. LUPICA, President_

**Authorized Representative**

## FOREIGN LIABILITY FOLLOW FORM LIMITATION ENDORSEMENT - EXCEPTION FOR PRODUCTS

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 033 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the scheduled "underlying insurance":

1. This exclusion shall not apply; and

2. Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of such "underlying insurance," subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, and this policy will be no broader than the coverage provided by "underlying insurance"

Notwithstanding the above provisions, with respect to claims or "suits" alleging "bodily injury," "property damage" or "personal and advertising injury" that (a) occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada, (b) arises out of "your product", and (c) is not covered by "underlying insurance" this insurance will apply subject to a "retained limit" which is a self-insured retention as follows:

> $5,000,000 each "occurrence" ("loss" and defense expenses erode SIR)

> $5,000,000 annual aggregate ("loss" and defense expenses erode SIR)

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

**Authorized Representative**

## GOVERNMENT IMMUNITY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 034 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016 to 07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

We shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority of New York and New Jersey (Port Authority), raise any defense involving in any way the jurisdiction of the Tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

**Authorized Representative**

## HEALTH CARE SERVICES EXCLUSION

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>035 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016 to 07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Solely with respect to Interlakes Oncology, PC, and those entities identified in the Schedule on Endorsement 40 (WHO IS AN INSURED ENDORSEMENT Afficated Physician Practices) of this policy Section V, DEFINITIONS, is amended by the addition of the following exclusion:

**Health care Services**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" sustained by a "patient" and arising out of the providing of or failing to provide "health care services" by the "insured".

For purposes of this endorsement, the following definitions are added to the policy;

"Health care services" means medical, surgical, dental, diagnostic or nursing services; diagnosis or treatment of any sickness, disease, condition or injury; dispensing or administering of drugs, medicines, vaccines medical, surgical or dental supplies, devices or appliances; advisory services or counseling for mental health, substance abuse or addiction; physiotherapy, chiropractic or chiropody; optometry or optical services, including the prescribing, preparation or fitting of ophthalmic lenses or similar products; providing hearing aid services, including the prescribing, preparation or fitting of hearing aids.

"Patient" means a person under the care of or receiving "health care services" from any "insured" or any other person or organization operating on behalf of any "insured".

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

MS- 10100 (05/12)                                   © 2012                                   Page 1 of 1

## KNOWLEDGE OF OCCURRENCE BY VICE PRESIDENT OF RISK MANAGEMENT OR GENERAL COUNSEL ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 036 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Vice President of Risk Management or General Counsel shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## MANUFACTURE OF DRUGS EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 037 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

Section **V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

**Manufacture of Drugs**

Any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the "Insured".

For the purposes of this exclusion, the term manufacture shall not include packaging or labeling (including private label products).

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA,  President

Authorized Representative

**MS- 50578 (06/16)** © 2016 Page 1 of 1

**NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS**

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 038 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

For any person or organization qualifying as an "insured" under Section II WHO IS AN INSURED, Paragraph B.7. (as added by endorsement to this policy) the following is added to
Section VI. CONDITIONS Paragraph J. Other Insurance

If "other insurance" is available to an "insured" we cover under any of the endorsements listed or described above (the "Additional Insured") for a "loss" we cover under this policy, this insurance will apply to such "loss" on a primary basis and we will not seek contribution from the "other insurance" available to the Additional Insured. Your "retained limit" still applies to such "loss" and any payments you receive from "other insurance" will not erode your "retained limit".

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

## PERONAL INJURY DEFINITION AMENDED TO INCLUDE DISCRIMINATION

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 039 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016 to 07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII, DEFINITIONS, Part R. "Personal and advertising injury" is deleted and replaced with the following:

R. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5. Oral or written publication, in any manner, of material that violates a person's right of privacy;
6. Discrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only is such discrimination or humiliation is:
   a. Not intentionally committed by the "insured,"
   b. Not committed by, at the direction of, or with the knowledge of you and/or any of your executive officers or directors,
   c. Not directly or indirectly related to the employment of the person or persons by you, and
   d. Not in violation of any provision(s) of the Americans with Disabilities Act (including but not limited to any amendments or revisions thereto and any rules or regulation promulgated thereunder) or any similar common or statutory law,
7. The use another's advertising idea in your "advertisement," or
8. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

MS- 12122 (07/12)                    © 2012                    Page 1 of 1

## RETAINED LIMIT ENDORSEMENT (NO UNDERLYING INSURANCE)

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 040 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1.  The preamble in the policy is deleted and replaced with the following:

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section VII. DEFINITIONS**.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2.  Paragraph A., of **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS,** is deleted and replaced with the following:

A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

1.  When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy.  Any such payment we make shall reduce the Limits of Insurance. Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

3. Paragraph E. of **Section IV. LIMITS OF INSURANCE**. is deleted and replaced with the following:

E.  If the applicable "retained limits" listed on the Schedule of Retained Limits have been:

1.   Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

2.  Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4.  Exclusions A., I. and N. of **Section V. EXCLUSIONS** are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5.  Conditions A., C., and I. and Paragraph 3. only of Condition N. of **Section VI. CONDITIONS** are deleted and replaced with the following:

A.  **Appeals**

In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal.  If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in **Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS**.

C.  **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy.  This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

I.  **Maintenance of "Underlying Insurance"** is deleted.

N.  **Transfer of Rights of Recovery Against Others to Us**

3.  If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6.  Definitions P., and V. of **Section VII. DEFINITIONS** are deleted and replaced with the following:

P.  "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

V.  "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of **Section VII. DEFINITIONS** ("Underlying insurance") is deleted.

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit | | Defense Treatment |
|---|---|---|---|
| General Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $7,500,000 | General Aggregate | |
| Products Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $5,000,000 | Aggregate | |
| Auto Liability | $5,000,000 | Each Occurrence | Outside Limits & SIR |
| Employers Liability | $1,000,000 | Bodily Injury – Each Accident OR Bodily Injury by Disease – Each Employee | Outside Limits & SIR |
| General Liability - US Oncology | $5,000,000 $5,000,000 $5,000,000 | Each Occurrence Personal and Advertising Injury General Aggregate | Outside limits & within SIR |
| Foreign Auto Liability – Celesio | $2,000,000 | Each Occurrence | Outside Limits & SIR |
| Ireland Employers Liability – McKesson | €13,000,000 | Each Occurrence | Outside Limits & SIR |

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## WHO IS AN INSURED - AFFILIATED PHYSICIAN PRACTICES ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 041 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016 to 07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Section **II**, **WHO IS AN INSURED**, is amended by the addition of the following:

1. The entities listed in the schedule below shall be considered "insureds", but solely to the extent that:

    a.  such entity is under your management;

    b.  such entity has entered into a written Comprehensive Strategic Agreement (hereinafter "CSA") with you, which is in effect during the policy period and executed prior to any "occurrence" taking place; and

    c.  any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

Such entity's status as an "insured" ends when its CSA with you is cancelled, terminated or expires.

2. Any entity, other than those entities listed in the schedule below, that has entered into a written CSA with you shall be considered an "insured", but solely to the extent that:

    a. such entity is under your management;

    b. such entity's CSA with you is in effect during the policy period and executed prior to an "occurrence" taking place; and

    c. any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

Such entity's status as an "insured" ends when its CSA with you is canceled, terminated or expires.

**B.** All such entities and written CSAs must be reported in writing to us within fifteen (15) days after the expiration of this policy. However, any inadvertent or unintentional failure to report such entities or CSAs within fifteen days shall not, in and of itself, preclude coverage for such entities as "insured" under this policy.

**C.** Section **VII**, **DEFINITIONS**, Subsection I, "Insured", is deleted and replace with the following:

I.  "Insured" means the Named Insured shown in the Declarations or added by endorsement and any individual or organization qualifying as such under Section II – Who is an Insured.

### SCHEDULE OF ENTITIES

| Entity |
|---|

Arthritis Associates of Southern California

Allison, Curtis, Kingsley, Meoz, Michael & Sanchez, PC (Comprehensive Cancer Centers of Nevada)

Arizona Oncology Associates, P.C.

Arkansas Oncology Associates, PA

Arthritis Consultants of Tidewater, Inc.

Asheville Hematology & Oncology Associates PA

Cancer Care Network South Texas

Cancer Centers of Florida, PA

Cancer Centers of North Carolina, PC

Cancer Centers of North Carolina-Asheville, PC

Cancer Centers of Virginia, LLC

Comprehensive Cancer Care

Flavio Kruter MD, PA

Florida Cancer Affiliates, PL

Florida Institute of Research, Medicine & Surgery, PA

Hematology Oncology Associates of Illinois, LLC

Hematology Oncology Associates, Inc.  (MO)

Hematology Oncology Associates, Inc. (Medford, OR)

Illinois Cancer Specialists (Cancer Care & Hematology Specialists of Chicagoland PC)

Interlakes Oncology Hematology P.C.

Kansas City Cancer Center, LLC

Mahoning Valley Hematology-Oncology Associates, Inc. (The Hope Center for Cancer Care)

Maryland Oncology Hematology, PA

Midwest Oncology Group, PLLC

Minnesota Oncology Hematology, PA

Missouri Cancer Associates, LLP

Murrell, Westgate & Bryer, Inc.

New York Oncology Hematology, PC

Northwest Cancer Specialists, PC (Compass Oncology)

Ocala Oncology Center, PL

Oncology & Hematology Associates, Inc.

Oncology and Hematology Associates of South Carolina, LLC

Oncology and Hematology Associates of Southwest Virginia, Inc. (Blue Ridge Cancer Care)

Oncology and Radiation Associates, PA

Oncology Associates of Oregon, PC (Willamette Valley Cancer Center)

Oncology Hematology Radiation Care, LLC (Advanced Medical Specialties)

Oncology Pharmacy Services, Inc. (Texas Oncology)

Regional Cancer Care, PA

Rocky Mountain Cancer Center, LLP

Shenandoah Oncology PC



| |
|---|
| South Florida Oncology & Hematology Consultants |
| St. Louis Urological Surgeons, Inc. (ARCH Cancer Care) |
| Texas Oncology, P.A. |
| Venango Oncology Hematology Associates, PC |
| Virginia Cancer Specialists, PC (Fairfax-Northern Virginia Hematology-Oncology, PC) |
| Virginia Oncology Associates, PC |
| Wilshire Oncology Medical Group |

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

**Authorized Representative**

## WHO IS AN INSURED AMENDATORY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 042 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 002 | 07/01/2016 to 07/01/2017 | 07/01/2016 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

1. Paragraphs A. 2. and B. 5.,. of Section **II. WHO IS AN INSURED** are deleted and replaced by the following:

A. 2. Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management, at the inception date of this policy is an "insured", providing such subsidiary or organization was made known to us prior to or at the inception date of this policy;

B. 5. Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as an "insured", subject to the following:

a. If at the time of acquisition, inception of, control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $1,000,000,000 and (b) the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of, control or formation, with no additional premium charge.

b. If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you exceeds $1,000,000,000 or (b) the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 120th day after you acquire, take control of, or form the organization, or the end of the "policy period", whichever is earlier.

c. For any organization covered by paragraph b. above, coverage will expire on the 120th day after you acquire, take control of, or form the organization, or the end of the "policy period", whichever is earlier, unless, within the 120 day period, you request us to include such organization as an "insured", and we agree to do so.

d. We may, at our option, make an additional premium charge for any organization that you acquire, take control of, or form during the "policy period", when that organization is not automatically covered in 5.a. above.

e. Coverage does not apply to any liability arising out of an "occurrence" first taking place before you acquire, take control of, or form any organization covered by this endorsement.

f. If you are a limited liability company or limited liability partnership that was created subsequent to the inception date of this policy as a result of internal restructuring or realignment, you are an "insured" provided that:



1. The newly created limited liability company or limited liability partnership comprises operations which are not materially different from operations which were part of the "insured" prior to the date of such creation; and
2. The newly created limited liability company or limited liability partnership continues to operate in a similar fashion as the "insured" prior to the date of such creation.

2.   Section **II.  WHO IS AN INSURED** is amended to include the following:

It is agreed that all Joint Ventures, Partnerships, and/or Limited Liability Companies in which an "insured" has an ownership interest are insureds under this policy.  The coverage under our policy shall be limited to the "insured's" interest in such joint venture or the amount of insurance such "insured" is contractually obligated to provide. Notwithstanding the foregoing, it is also agreed the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture.

The insurance provided by this endorsement for any joint venture is excess over any valid and collectible insurance that has been purchased in the name of such joint venture.  Such "other insurance" shall erode any "retained limit" under this policy.

If upon final adjudication of a claim or suit by a court of law, the "insured" is assessed a greater share of the damages arising out of the joint venture than its percentage interest in the joint venture, our limits of insurance under this policy shall be based upon the actual share of damages assessed.

For the purpose of this endorsement, joint venture means leveraged lease agreement, partnership, joint venture, limited liability company, and any other organization or entity in which the Named Insured shares an interest and/or management control with another party in interest.

Any partnership, co-venture, joint venture, limited liability company or limited liability partnership that is an "insured" by virtue of this endorsement shall not be subject to the last unmarked paragraph of Section II. WHO IS AN INSURED, which reads: *"Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."*

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA, President

**Authorized Representative**

# AMENDATORY ENDORSEMENT

| Named Insured **McKesson Corporation** | | | Endorsement Number **043** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 002** | Policy Period **07/01/2016 to 07/01/2017** | Effective Date of Endorsement **07/01/2016** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Endorsement number 012 – Employee Benefit Plan Limitation (Claims Made) is hereby deleted in its entirety and replaced with Endorsement number 044.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

CC-1E15T2 (10/07)

## EMPLOYEE BENEFIT PLAN LIMITATION
## [CLAIMS MADE]

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 044 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| XOO | G27610390 002 | 07/01/2016  to  07/01/2017 | 07/01/2016 |
| Issued By (Name of Insurance Company) | | | |
| ACE Property and Casualty Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

1.   Underlying Insurance

      Company:               Illinois Union Insurance Company

      Policy Number:       MLP G21821020 007

      Expiration Date:      07/01/2017

      Retroactive Date:     07/01/2006

      Limits of Insurance:

      Each Employee      $ 5,000,000

      Aggregate:         $ 5,000,000

2.   Our Retroactive Date:      07/01/2006

3.   Coverage

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

"Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

a.   Counseling "employees" on your "employee benefit programs";

b.   Interpreting your "employee benefit programs";

c.   Handling records for your "employee benefit programs";

d. Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e. Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f. Collection of contributions and application of contributions as provided in your "employee benefit programs";

g. Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h. Processing of claims for your "employee benefit programs".

"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4. Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a. Retroactive Date

If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

i. The date such claim is first made against you is during OUR policy period, and

ii. The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b. Extended Reporting Period

If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in  like manner, subject to all of the following:

i. Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

ii. The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

iii. The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c. Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance"  above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

i. The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

ii. Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii. If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d.   Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

# AMENDATORY ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**045** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G27610390 002** | Policy Period<br>**07/01/2016 to 07/01/2017** | Effective Date of Endorsement<br>**07/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Endorsement number 029 – Automobile Liability Limitation Endorsement is hereby deleted in its entirety and replaced with Endorsement number 046.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

CC-1E15T2 (10/07)

## AUTOMOBILE LIABILITY LIMITATION ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>046 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016 to 07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Automobile Liability

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement.  Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy # MWTB307965 and Old Republic Insurance Company of Canada Policy # CTB307965 subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy # MWTB307965and Old Republic Insurance Company of Canada Policy # CTB307965.

All other terms and conditions of this policy remain unchanged.

_JOHN J. LUPICA, President_

_____

Authorized Representative

# AMENDATORY ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**047** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G27610390 002** | Policy Period<br>**07/01/2016 to 07/01/2017** | Effective Date of Endorsement<br>**07/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Endorsement number 031 – Clinical Trials Exclusion Endorsement is hereby deleted in its entirety and replaced with Endorsement number 048.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

CC-1E15T2 (10/07)

# CLINICAL TRIAL EXCLUSION ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>048 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016 to 07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial".  However, this exclusion does not apply to late phase trial services, otherwise referred to as Phase IV, and provided by McKesson Specialty Canada.

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

_____
Authorized Representative

# AMENDATORY ENDORSEMENT

| Named Insured **McKesson Corporation** | | | Endorsement Number **049** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 002** | Policy Period **07/01/2016 to 07/01/2017** | Effective Date of Endorsement **07/01/2016** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Endorsement number 035 – Health Care Services Exclusion is hereby deleted in its entirety and replaced with Endorsement number 050.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

CC-1E15T2 (10/07)

# HEALTH CARE SERVICES EXCLUSION

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>050 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 002 | Policy Period<br>07/01/2016 to 07/01/2017 | Effective Date of Endorsement<br>07/01/2016 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

Solely with respect to those entities identified in the Schedule on Endorsement 41 (WHO IS AN INSURED ENDORSEMENT Afficated Physician Practices) of this policy Section V, EXCLUSIONS, is amended by the addition of the following exclusion:

**Health care Services**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" sustained by a "patient" and arising out of the providing of or failing to provide "health care services" by the "insured".

For purposes of this endorsement, the following definitions are added to the policy;

"Health care services" means medical, surgical, dental, diagnostic or nursing services; diagnosis or treatment of any sickness, disease, condition or injury; dispensing or administering of drugs, medicines, vaccines medical, surgical or dental supplies, devices or appliances; advisory services or counseling for mental health, substance abuse or addiction; physiotherapy, chiropractic or chiropody; optometry or optical services, including the prescribing, preparation or fitting of ophthalmic lenses or similar products; providing hearing aid services, including the prescribing, preparation or fitting of hearing aids.

"Patient" means a person under the care of or receiving "health care services" from any "insured" or any other person or organization operating on behalf of any "insured".

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

_____
Authorized Representative

# AMENDATORY ENDORSEMENT

| Named Insured<br>**McKesson Corporation** | | | Endorsement Number<br>**051** |
|---|---|---|---|
| Policy Symbol<br>**XOO** | Policy Number<br>**G27610390 002** | Policy Period<br>**07/01/2016 to 07/01/2017** | Effective Date of Endorsement<br>**07/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Endorsement number 041 – Who Is An Insured – Affiliated Physician Practices Endorsement is hereby deleted in its entirety and replaced with Endorsement number 052.

All other terms and conditions of this policy remain unchanged.

_____
JOHN J. LUPICA, President
_____
Authorized Representative

CC-1E15T2 (10/07)

## WHO IS AN INSURED – AFFILIATED PHYSICIAN PRACTICES ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 052 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 002 | Policy Period 07/01/2016 to 07/01/2017 | Effective Date of Endorsement 07/01/2016 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Section **II**, **WHO IS AN INSURED**, is amended by the addition of the following:

    **1.** The entities listed in the schedule below shall be considered "insureds", but solely to the extent that:

        a.   such entity is under your management;

        b.   such entity has entered into a written Comprehensive Strategic Agreement (hereinafter "CSA") with you, which is in effect during the policy period and executed prior to any "occurrence" taking place; and

        c.   any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

Such entity's status as an "insured" ends when its CSA with you is cancelled, terminated or expires.

    **2.** Any entity, other than those entities listed in the schedule below, that has entered into a written CSA with you shall be considered an "insured", but solely to the extent that:

        a. such entity is under your management;

        b. such entity's CSA with you is in effect during the policy period and executed prior to an "occurrence" taking place; and

        c. any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

Such entity's status as an "insured" ends when its CSA with you is canceled, terminated or expires.

**B.** All such entities and written CSAs must be reported in writing to us within fifteen (15) days after the expiration of this policy.  However, any inadvertent or unintentional failure to report such entities or CSAs within fifteen days shall not, in and of itself, preclude coverage for such entities as "insured" under this policy.

**C.** Section **VII**, **DEFINITIONS**, Subsection I, "Insured", is deleted and replace with the following:

    I.   "Insured" means the Named Insured shown in the Declarations or added by endorsement and any individual or organization qualifying as such under Section II – Who is an Insured.

 © 2012

**SCHEDULE OF ENTITIES**

| Entity |
|---|
| Arthritis Associates of Southern California |
| Arthritis Consultants of Tidewater, Inc. |
| Allison, Curtis, Kingsley, Meoz, Michael & Sanchez, PC (Comprehensive Cancer Centers of Nevada) |
| Arizona Oncology Associates, P.C. |
| Cancer Centers of Virginia, LLC |
| Hematology Oncology Associates, Inc. (Medford, OR) |
| Illinois Cancer Specialists (Cancer Care & Hematology Specialists of Chicagoland PC) |
| Mahoning Valley Hematology-Oncology Associates, Inc. (The Hope Center for Cancer Care) |
| Maryland Oncology Hematology, PA |
| Midwest Oncology Group, PLLC |
| Minnesota Oncology Hematology, PA |
| Missouri Cancer Associates, LLP |
| New York Oncology Hematology, PC |
| Northwest Cancer Specialists, PC (Compass Oncology) |
| Ocala Oncology Center, PL |
| Oncology and Hematology Associates of Southwest Virginia, Inc. (Blue Ridge Cancer Care) |
| Oncology and Radiation Associates, PA |
| Oncology Associates of Oregon, PC (Willamette Valley Cancer Center) |
| Oncology Pharmacy Services, Inc. (Texas Oncology) |
| Regional Cancer Care, PA |
| Rocky Mountain Cancer Center, LLP |
| Shenandoah Oncology PC |
| South Florida Oncology & Hematology Consultants |
| Texas Oncology, P.A. |
| Venango Oncology Hematology Associates, PC |
| Virginia Cancer Specialists, PC (Fairfax-Northern Virginia Hematology-Oncology, PC) |
| Virginia Oncology Associates, PC |

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

_____
Authorized Representative

# AMENDATORY ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 053 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 002 | Policy Period 07/01/2016 to 07/01/2017 | Effective Date of Endorsement 07/01/2016 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Endorsement number 003 – Amendment of Definition J. – Insured Contract is hereby deleted in its entirety and replaced with Endorsement number 054.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

CC-1E15T2 (10/07)

## AMENDMENT OF DEFINITION J. – INSURED CONTRACT

| Named Insured **McKesson Corporation** | | | Endorsement Number **054** |
|---|---|---|---|
| Policy Symbol **XOO** | Policy Number **G27610390 002** | Policy Period **07/01/2016 to 07/01/2017** | Effective Date of Endorsement **07/01/2016** |
| Issued By (Name of Insurance Company) **ACE Property and Casualty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**ACE UMBRELLA PLUS<sup>SM</sup> COMMERCIAL UMBRELLA LIABILITY POLICY**

Section **VII.  DEFINITIONS** is amended as follows:

**Definition J.** is deleted and replaced by the following:

"Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

2. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 1. above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative



# Revised - Schedule of Underlying Insurance

| Named Insured | Policy Number | Policy Period |
|---|---|---|
| McKesson Corporation | XOO G27610390 002 | 07/01/2016 to 07/01/2017 |

**UNDERLYING POLICY TYPE:** Foreign DIC General Liability

Policy Number: One file with Company      Policy Defense Treatment:      Outside of the Limit

Policy Period: 07/01/2016 to 07/01/2017

Carrier: The Insurance Company of the State of Pennsylvania

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $ 1,000,000 | Each Occurrence |
| $ 2,000,000 | General Aggregate (other than Products Completed Operations) |
| $ 2,000,000 | Products/Completed Ops Aggregate |
| $ 4,000,000 | Master Policy Aggregate |
| $ 1,000,000 | Personal & Advertising Injury Limit |

**UNDERLYING POLICY TYPE:** Foreign DIC Employee Benefits Liability

Policy Number: One file with Company      Policy Defense Treatment:      Outside of the Limit

Policy Period: 07/01/2016 to 07/01/2017

Carrier: The Insurance Company of the State of Pennsylvania

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $ 1,000,000 | Each Wrongful Act or series of related Wrongful Acts |
| $ 1,000,000 | Annual Aggregate |

**UNDERLYING POLICY TYPE:**  Foreign DIC Auto Liability

| | | | |
|---|---|---|---|
| Policy Number: | One file with Company | Policy Defense Treatment: | Outside of the Limit |
| Policy Period: | 07/01/2016 to 07/01/2017 | | |
| Carrier: | The Insurance Company of the State of Pennsylvania | | |

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $ 1,000,000 | Each Accident |

---

**UNDERLYING POLICY TYPE:**  Foreign DIC Auto Liability

| | | | |
|---|---|---|---|
| Policy Number: | One file with Company | Policy Defense Treatment: | Outside of the Limit |
| Policy Period: | 07/01/2016 to 07/01/2017 | | |
| Carrier: | The Insurance Company of the State of Pennsylvania | | |

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $ 1,000,000 | BI by Accident - Per Accident Limit |
| $ 1,000,000 | BI by Disease - Policy Limit |
| $ 1,000,000 | BI by Disease - Each Employee Limit |

---

**UNDERLYING POLICY TYPE:**  UK Employers Liability

| | | | |
|---|---|---|---|
| Policy Number: | One file with Company | Policy Defense Treatment: | Outside of the Limit |
| Policy Period: | 07/01/2016 to 07/01/2017 | | |
| Carrier: | AIG Europe Limited | | |

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| £ 10,000,000 | Each Occurrence |

---

**UNDERLYING POLICY TYPE:**  Auto Liability (US Oncology)

Policy Number: One file with Company          Policy Defense Treatment:          Outside of the Limit

Policy Period:   07/01/2016 to 07/01/2017

Carrier:          ACE Property & Casualty Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $ 1,000,000 | Each Accident |

Comment:       2 policies

---

**UNDERLYING POLICY TYPE:**   Employers Liability

Policy Number: On File with Company          Policy Defense Treatment:          Outside the Limit

Policy Period:   07/01/2016 to 07/01/2017

Carrier:          Old Republic Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $ 5,000,000 | BI by Accident - Per Accident Limit |
| $ 5,000,000 | BI by Disease - Policy Limit |
| $ 5,000,000 | BI by Disease - Each Employee Limit |

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

Comment:       2 policies

---

**UNDERLYING POLICY TYPE:**   Employers Liability (US Oncology)

Policy Number: On File with Company          Policy Defense Treatment:       Outside the Limit

Policy Period:   07/01/2016 to 07/01/2017

Carrier:        Old Republic Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $ 1,000,000 | BI by Accident - Per Accident Limit |
| $ 1,000,000 | BI by Disease - Policy Limit |
| $ 1,000,000 | BI by Disease - Each Employee Limit |

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

Comment:       22 policies

---

**UNDERLYING POLICY TYPE:**   UK Employers Liability (Admenta)

Policy Number: One file with Company          Policy Defense Treatment:       Outside of the Limit

Policy Period:   07/01/2016 to 07/01/2017

Carrier:        Admenta UK Plc and Subsidiary Companies

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| £ 25,000,000 | Each Occurrence |

---

**UNDERLYING POLICY TYPE:**  Ireland Employers Liability (UDG)

Policy Number: One file with Company                Policy Defense Treatment:        Outside of the Limit

Policy Period:   01/04/2016 to 01/04/2017

Carrier:          Zurich Insurance Plc

LIMIT AMOUNT                                        LIMIT TYPE

€ 13,000,000                                        Each Occurrence

---

**UNDERLYING POLICY TYPE:**  Ireland Employers Liability (Celesio)

Policy Number: One file with Company                Policy Defense Treatment:        Outside of the Limit

Policy Period:   01/01/2016 to 01/01/2017

Carrier:          Zurich Insurance Plc

LIMIT AMOUNT                                        LIMIT TYPE

€ 15,000,000                                        Each Occurrence

---

# EXHIBIT I



**Declarations**
**ACE Umbrella Plus℠**
**Commercial Umbrella Liability Policy**

| | |
|---|---|
| Policy Symbol:  XOO | Previous Policy Symbol:  XOO |
| Policy Number:  G27610390 003 | Previous Policy Number:  G27610390 002 |

COVERAGE IS PROVIDED IN THE COMPANY SHOWN BELOW

ACE Property and Casualty Insurance Company
436 Walnut Street
Philadelphia, Pennsylvania 19106

| Named Insured and Address | Producer Name and Address |
|---|---|
| McKesson Corporation<br>One Post Street, 34th Floor<br>San Francisco, California 94104 | MARSH RISK & INSURANCE SERVICES<br>345 CALIFORNIA STREET<br>SAN FRANCISCO, California 94104<br><br>PRODUCER CODE  355110 |

| | |
|---|---|
| Policy Period:    From  07/01/2017  to  07/01/2018 | 12:01 A.M Standard Time at the Address of the Named Insured as stated herein |

**Limits of Insurance**

$ 25,000,000  Each Occurrence

$ 25,000,000  General Aggregate

$ 25,000,000  Products Completed-Operations Aggregate    $ 25,000  Self-Insured Retention

**Annual Premium**

$ 668,200  Premium                              $ 31,819  Terrorism Premium included in Annual Premium

$ 0  State Surcharge

$ 668,200  Premium, including all Surcharges and Assessments

**Policy Period Premium**

$ 668,200  Premium                              $ 31,819  Terrorism Premium included in Annual Premium

$ 0  State Surcharge

$ 668,200  Premium, including all Surcharges and Assessments

**Schedule of Underlying Insurance**

Refer to the attached Schedule of Underlying Insurance, which forms a part of this Policy's Declarations.

**Endorsements and Forms**

Refer to the attached Schedule of Endorsements for the forms and endorsements forming this policy at inception.

# Schedule of Forms and Endorsements

| NAMED INSURED | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| McKesson Corporation | XOO G27610390 003 | 07/01/2017  to 07/01/2018 |

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| | XS-22695b (01/15) | Declarations ACE Umbrella Plus Commercial Umbrella Liability Policy |
| | XS-9U57c (01/15) | Schedule of Underlying Insurance |
| | XS-20835 (08/06) | Commercial Umbrella Liability Policy |
| | ALL-20887a (03/16) | Chubb Producer Compensation Practices & Policies |
| | XS-28500a (08/13) | CHUBB Specialty Claims Loss Notification Form |
| | IL P 001 (01/04) | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| | XS-22552 (06/07) | Catastrophe Management Notice |
| 001 | CC-1K11h (03/14) | Signatures |
| 002 | XS-43907 (12/14) | Access, Collection And Disclosure Of Information And Electronic Data Exclusion – Limited Bodily Injury And Redefined Property Damage Exceptions With Retained Limit |
| 003 | XS-35562a (11/16) | Amendment Of Definition J. – Insured Contract |
| 004 | XS-1V12c (11/14) | California Changes - Cancellation And Nonrenewal |
| 005 | XS-23669b (01/15) | Cap on Losses From Certified Acts of Terrorism |
| 006 | XS-22088 (04/07) | Catastrophe Management Coverage Endorsement |
| 007 | XS-30063 (07/10) | Coverage Territory Definition Amendment |
| 008 | XS-32994 (01/12) | Defense Inside The Limits Endorsement – Follow Form |
| 009 | XS-35558 (05/13) | Difference In Conditions / Difference In Limits Endorsement |
| 010 | TRIA 11d (03/16) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 011 | XS-23632 (01/08) | Employee Benefit Plan Follow Form Endorsement [Occurrence] |
| 012 | XS-26426 (02/09) | Employee Benefit Plan Limitation [Claims Made] |
| 013 | XS-23634 (01/08) | Fellow Employee Exclusion Deleted |

©Chubb. 2016. All rights reserved.

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 014 | XS-28727a (01/11) | Foreign Loss Indemnity Endorsement |
| 015 | XS-26428 (02/09) | Incidental Medical Malpractice Endorsement |
| 016 | XS-26429b (02/11) | Industrial Aid Aircraft Endorsement |
| 017 | XS-20755 (08/06) | Non-Concurrency Endorsement (Recognizes Non-Concurrency) |
| 018 | XS-20756 (08/06) | Notice of Occurrence |
| 019 | ALL-32688 (01/11) | Notice To Others Endorsement - Specific Parties |
| 020 | XS-20780a (08/09) | Pollution Exclusion - Combination Exception Time Element and Named Peril (with Insured's Retained Limit) |
| 021 | XS-21580 (01/07) | Professional Services Liability Exclusion – Exception for Resulting Bodily Injury and Property Damage |
| 022 | XS-33307a (04/15) | Tie In Of Limits Endorsement |
| 023 | XS-32667 (01/11) | Trade or Economic Sanctions Amendatory Endorsement |
| 024 | XS-23501 (04/08) | Unintentional Failure to Disclose |
| 025 | XS-34018 (01/12) | Unsolicited Communications Exclusion Amendment to Include FACTA |
| 026 | XS-25254 (02/09) | War Exclusion Amendment |
| 027 | MS-11231 (06/12) | Amendment of Who is an Insured |
| 028 | MS-10110 (05/12) | Annual Period Extension - Natural Disaster or Other Catastrophe |
| 029 | MS-10106 (05/12) | Automobile Liability Limitation Endorsement |
| 030 | MS-22418 (06/13) | Cancellation Amendatory Endorsement |
| 031 | MS-10108 (05/12) | Clinical Trial Exclusion Endorsement |
| 032 | MS-50579 (06/16) | Designated Entity Exclusion with Exceptions for Auto and Employers Liability |
| 033 | MS-40196 (06/15) | Foreign Liability Follow Form Limitation Endorsement - Exception for Products |
| 034 | MS-10102 (05/12) | Government Immunity Endorsement |
| 035 | MS-10100 (05/12) | Health Care Services Exclusion |
| 036 | MS-50580 (06/16) | Knowledge Of Occurrence by Vice President of Risk Management or General Counsel Endorsement |
| 037 | MS-50578 (06/16) | Manufacture of Drugs Exclusion |
| 038 | MS-10107 (05/12) | Non-Contributory Endorsement for Additional Insureds |

 ©Chubb. 2016. All rights reserved.

| Endorsement Number | Form Number - Edition Date | Title |
|---|---|---|
| 039 | MS-207103 (06/17) | Opioids and Narcotics Exclusion |
| 040 | MS-12122 (07/12) | Personal Injury Definition Amended to Include Discrimination |
| 041 | MS-10104 (05/12) | Retained Limit Endorsement (No Underlying Insurance) |
| 042 | MS-10103 (05/12) | Who is an Insured - Affiliated Physician Practices Endorsement |
| 043 | MS-24763 (10/13) | Who is an Insured Amendatory Endorsement |

©Chubb. 2016. All rights reserved.



# Schedule of Underlying Insurance

| Named Insured | Policy Number | Policy Period |
|---|---|---|
| McKesson Corporation | XOO G27610390 003 | 07/01/2017  to  07/01/2018 |

**UNDERLYING POLICY TYPE:**  Foreign DIC General Liability

Policy Number: On file with Company          Policy Defense Treatment:          Outside the Limit

Policy Period:  07/01/2017  to  07/01/2018

Carrier:          The Insurance Company of the State of Pennsylvania

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | Each Occurrence |
| $2,000,000 | General Aggregate (other than Products Completed Operations) |
| $2,000,000 | Products/Completed Ops Aggregate |
| $4,000,000 | Master Policy Aggregate |
| $1,000,000 | Personal & Advertising Injury |

**UNDERLYING POLICY TYPE:**  Foreign DIC Employee Benefits Liability

Policy Number: On file with Company          Policy Defense Treatment:          Outside the Limit

Policy Period:  07/01/2017  to  07/01/2018

Carrier:          The Insurance Company of the State of Pennsylvania

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | Each Wrongful Act or series of related Wrongful acts |
| $1,000,000 | Annual Aggregate |

**UNDERLYING POLICY TYPE:**  Foreign DIC Auto Liability

Policy Number: On file with Company          Policy Defense Treatment:      Outside the Limit
Policy Period:  07/01/2017   to   07/01/2018
Carrier:          The Insurance Company of the State of Pennsylvania

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | Each Accident |

**UNDERLYING POLICY TYPE:**  Foreign DIC Employers Liability

Policy Number: On file with Company          Policy Defense Treatment:      Outside the Limit
Policy Period:  07/01/2017   to   07/01/2018
Carrier:          The Insurance Company of the State of Pennsylvania

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | BI by Accident - Per Accident Limit |
| $1,000,000 | BI by Disease - Policy Limit |
| $1,000,000 | BI by Disease - Each Employee Limit |

**UNDERLYING POLICY TYPE:**  UK Employers Liability

Policy Number: On file with Company          Policy Defense Treatment:      Outside the Limit
Policy Period:  07/01/2017   to   07/01/2018
Carrier:          AIG Europe Limited

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| £10,000,000 | Each Occurrence |

**UNDERLYING POLICY TYPE:**  Auto Liability (US Oncology)

Policy Number: On file with Company          Policy Defense Treatment:          Outside the Limit

Policy Period:  07/01/2017  to  07/01/2018

Carrier:          ACE Property & Casualty Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $1,000,000 | Each Accident |

Comments:  2 policies

---

**UNDERLYING POLICY TYPE:**  Employers Liability

Policy Number: On file with Company          Policy Defense Treatment:          Outside the Limit

Policy Period:  07/01/2017  to  07/01/2018

Carrier:          Old Republic Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
|---|---|
| $5,000,000 | BI by Accident - Per Accident Limit |
| $5,000,000 | BI by Disease - Policy Limit |
| $5,000,000 | BI by Disease - Each Employee Limit |

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

Comments:  2 policies

---

**UNDERLYING POLICY TYPE:**  Employers Liability (US Oncology)

Policy Number: On file with Company          Policy Defense Treatment:      Outside the Limit

Policy Period:  07/01/2017  to  07/01/2018

Carrier:          Old Republic Insurance Company

| LIMIT AMOUNT | LIMIT TYPE |
| --- | --- |
| $1,000,000 | BI by Accident - Per Accident Limit |
| $1,000,000 | BI by Disease - Policy Limit |
| $1,000,000 | BI by Disease - Each Employee Limit |

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

Comments:  22 policies

---

**UNDERLYING POLICY TYPE:**  UK Employers Liability (Admenta)

Policy Number: On file with Company          Policy Defense Treatment:      Outside the Limit

Policy Period:  07/01/2017  to  07/01/2018

Carrier:          Admenta UK Plc and Subsidiary Companies

| LIMIT AMOUNT | LIMIT TYPE |
| --- | --- |
| £25,000,000 | Each Occurrence |

---

**UNDERLYING POLICY TYPE:**  Ireland Employers Liability (UDG)

Policy Number: On file with Company          Policy Defense Treatment:      Inside the Limit

Policy Period:  01/04/2017  to  01/04/2018

Carrier:          Zurich Insurance Plc

| LIMIT AMOUNT | LIMIT TYPE |
| --- | --- |
| €13,000,000 | Each Occurrence |

**UNDERLYING POLICY TYPE:**  Ireland Employers Liability (Celesio)

Policy Number: On file with Company          Policy Defense Treatment:        Inside the Limit

Policy Period:  01/01/2017   to   01/01/2018

Carrier:          Zurich Insurance Plc

LIMIT AMOUNT                                  LIMIT TYPE

€15,000,000                                   Each Occurrence

          ©Chubb. 2016. All rights reserved.



**ACE Umbrella Plus℠**
**Commercial Umbrella Liability Policy**

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the schedule of "underlying insurance" attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

**I.   INSURING AGREEMENT**

A.   We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

1.   This insurance applies to "bodily injury" and "property damage" that takes place in the "coverage territory", but only if:

a.   The "bodily injury" or "property damage" is caused by an "occurrence";

b.   The "bodily injury" or "property damage" occurs during the "policy period"; and

c.   Prior to the "policy period", no "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

2.   This insurance applies to "personal and advertising injury" that arises out of your business, but only if the offense causing the "personal and advertising injury" takes place in the "coverage territory" and during the "policy period".

B.   "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

C.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph A. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

1.   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2.   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3.   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

D. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The amount we will pay for damages is limited as described in Section IV - Limits of Insurance.

## II. WHO IS AN INSURED

A. The following are "insured's":

1. The Named Insured named in Item 1 of the Declarations of this policy is an "insured".

2. Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured", providing such subsidiary or organization is included as an insured in the "underlying insurance", and was made known to us prior to or at the inception date of this policy;

3. If you are designated in the Declarations as:

   a. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

   c. A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

   e. A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are "insureds" for:

   a. "Bodily injury" or "personal and advertising injury":

      (1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (2) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

      (3) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a.(1) or (2) above; or

      (4) Arising out of his or her providing or failing to provide professional health care services.

   b. "Property damage" to property:

      (1) Owned, occupied or used by you,

      (2) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3. Any person or organization having proper temporary custody of your property if you die, but only:

   a. With respect to liability arising out of the maintenance or use of that property; and

   b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

5. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "underlying insurance" and there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

   b. This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

   c. This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

   d. We reserve the right to charge an additional premium if such organization qualifies as an "insured."

6. Any person or organization, if insured under "underlying insurance", provided that coverage provided by this policy for any such insured will be no broader than coverage provided by "underlying insurance".

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### III.  DEFENSE AND SUPPLEMENTARY PAYMENTS

A. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

   1. When damages sought would be covered by "underlying insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; or

   2. When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance"; or

   3. When damages sought for "bodily injury", "property damage" or "personal and advertising injury" are not covered by "underlying insurance" or any "other insurance", or any applicable self-insured retention has been exhausted by the payment of "loss" covered by this policy.

B. We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

C. We will have the right but not the duty to associate in the investigation of any claim and the defense of any "suit" which may, in our opinion, result in damages to which this insurance applies.

D. If we assume the defense of any "suit" against the "insured", we will pay in addition to the applicable Limit of Insurance:

   1. All expenses we incur.

   2. Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4.  The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5.  All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6.  All costs taxed against the "insured" in the "suit".

7.  Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8.  Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E.  Our right and duty to defend ends when the applicable Limit of Insurance of this policy has been exhausted by the payment of "loss".

## IV.   LIMITS OF INSURANCE

A.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made or "suits" brought; or

3.  Persons or organizations making claims or bringing "suits".

B.  The General Aggregate Limit shown in the Declarations is the most we will pay for all damages, except:

1.  Damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2.  Damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto".

C.  The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

D.  Subject to Paragraphs B and C above, the Each Occurrence Limit shown in the Declarations is the most we will pay for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

E.  If the applicable limits of "underlying insurance" have been:

1.  Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "underlying insurance".

2.  Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as "underlying insurance".

F.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## V.   EXCLUSIONS

This insurance does not apply to:

### A.   Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any "insured". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

1.   A watercraft while ashore on premises you own or rent; or

2.   A watercraft you do not own that is:

    a.   Less than 26 feet long; and

    b.   Not being used to carry persons or property for a charge.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

### B.   Asbestos

Any "loss", demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

### C.   Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.   That the "insured" would have in the absence of the contract or agreement; or

2.   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage", provided:

    a.   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    b.   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### D.   Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1.   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

E.  **Damage to Property**

"Property damage" to:

1.  Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3.  Property loaned to you;

4.  Personal property in the care, custody or control of the "insured";

5.  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6.  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1, 3 and 4 of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days.

Paragraph 2 of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

F.  **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

G.  **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.  **Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

I.  **Employer's Liability**

"Bodily injury" to:

1.  An "employee" of the "insured" arising out of and in the course of:

    a.  Employment by the "insured"; or

    b.  Performing duties related to the conduct of the "insured's" business; or

2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1.  Whether the "insured" may be liable as an employer or in any other capacity; and

2.   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

1.   To liability assumed by the "insured" under an "insured contract".

2.   To the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance".

J.   **Employment Practices**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.   Refusal to employ;

2.   Termination of employment;

3.   Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, failure to promote, retaliation, violation of civil rights, invasion of privacy, discrimination or other acts or omissions arising out of employment related practices, or other employment related practices, policies, acts or omissions; or

4.   Any consequential liability, damages, "loss", cost or expense as a result of 1, 2 or 3 above.

This exclusion applies whether or not the "insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of such injury or damages.

K.   **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

L.   **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

M.   **"Insureds" in Media and Internet-Type Businesses**

"Personal and advertising injury" committed by an "insured" whose business is:

1.   Advertising, broadcasting, publishing or telecasting;

2.   Designing or determining content of web-sites for others; or

3.   An Internet search, access, content or service provider.

However, this exclusion does not apply to Section VII - Definitions, R. "Personal and advertising injury", Paragraphs 1, 2 and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

N.   **Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1.   Causing or contributing to the intoxication of any person;

2.   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance."

O. **Miscellaneous Laws**

Any "loss", demand, claim, or "suit" under:

1. The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2. Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3. Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

P. **Nuclear**

1. To any injury or damage:

   a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To any injury or damage resulting from the "hazardous properties" of "nuclear material", if:

   a. The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility".

As used in this exclusion:

   a. "Hazardous properties" include radioactive, toxic or explosive properties;

   b. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

   c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

   d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

e. "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f. "Nuclear facility" means:

    (1)   Any "nuclear reactor";

    (2)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

    (3)   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

    (4)   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. Injury or damage includes all forms of radioactive contamination of property.

Q. **Other "Personal and Advertising Injury"**

1. "Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

2. "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3. "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period".

4. "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured".

5. "Personal and advertising injury" for which the "insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages:

    a.   That the "insured" would have in the absence of the contract or agreement; or

    b.   Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" offense takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of ""personal and advertising injury", provided:

        i.   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        ii.   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

6. "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

7. "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

8. "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

R. **Pollution**

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

   b. At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (1) Any "insured"; or

      (2) Any person or organization for whom you may be legally responsible;

   d. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

   e. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

   f. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon a covered "auto";

   g. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   h. After the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

   However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by "underlying insurance":

   1. Paragraph 1.a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

   2. Paragraph 1.a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured.

3.  Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

4.  Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5.  Paragraph 1.d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

6.  Paragraph 1.f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

    a.  The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    b.  The "bodily injury", "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

7.  Paragraphs 1.g. and 1.h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a "covered auto" if:

    a.  The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    b.  The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2.  Any loss, cost or expense arising out of any:

    a.  Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    b.  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

S.  **Recall of Products, Work or Impaired Property**

"Bodily injury", "property damage" or "personal and advertising injury" or any other "loss", cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  "Your product";

2.  "Your work"; or

3.  "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

T. **Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

U. **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

V. **Unsolicited Communications**

"Bodily injury", "property damage" or "personal and advertising injury" arising out any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. This exclusion also applies to communications which are made or allegedly made in violation of the:

1. Telephone Consumer Protection Act (TCPA) including any

   Amendment of or addition to such law; or

2. The CAN-SPAM Act of 2003, including any amendment of

   Or addition to such law; or

3. Any statute, ordinance or regulation, other than the TCPA

   Or CAN-SPAM Act of 2003, which prohibits or limits the sending, transmitting, communicating or distribution of material or information.

W. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, civil commotion, rebellion or revolution.

**VI.    CONDITIONS**

A. **Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "underlying insurance" or "other insurance", we may elect to appeal. If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section III - Defense And Supplementary Payments.

B. **Assignment of Your Rights and Duties**

Your rights and duties under this policy may not be transferred, except by an endorsement to this policy issued by us. If you die or are legally declared bankrupt, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties, but only with respect to that property.

C. **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "underlying insurance", but will apply as if the limits of such "underlying insurance" are fully available and collectible and we will not assume any obligation under "underlying insurance".

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3. The "policy period" will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E. **Changes**

This policy may be changed only by a written endorsement to this policy issued by us.

F. **Duties in the Event of "Occurrence", Claim or "Suit"**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

  4.  No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

G.  **Inspection and Audit**

  1.  We will be permitted, but not obligated to inspect the "insured's" property and operations. Neither our right to make inspections nor the making thereof nor any report thereon will constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe.

  2.  We may examine and audit the "insured's" books and records during the "policy period" and any extensions thereof within three (3) years after the termination date of this policy.

H.  **Legal Action Against Us**

  1.  No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured".

  2.  You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured".

I.  **Maintenance of "Underlying Insurance"**

During the "policy period", you agree:

  1.  To keep "underlying insurance" and renewals or replacements thereof in full force and effect.

  2.  That the limits of "underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

  3.  That the terms and conditions of "underlying insurance" will not materially change during the "policy period".

  4.  That any renewal or replacement of "underlying insurance" will not be more restrictive in coverage.

  5.  That "underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "underlying insurance".

Failure to maintain the "underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "underlying insurance" were maintained as required by this policy.

J.  **Other Insurance**

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to be excess of this policy.

K.  **Premium**

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium. It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

L.  **Separation of "Insureds"**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

  1.  As if each Named Insured were the only Named Insured; and

2. Separately to each "insured" against whom claim is made or "suit" is brought.

M. **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N. **Transfer of Rights of Recovery Against Others to Us**

1. If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2. Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3. If you and the insurer of "underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

O. **When "Loss" is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer has paid or is obligated to pay the full amount of the "retained limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy. The first Named Insured will promptly reimburse us for any amount within the "retained limit" paid by us.

**VII.  DEFINITIONS**

A. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

B. "Auto" means a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.

D. "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E. "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or independent contractor.

F. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "your product" or "your work"; or

2. Your fulfilling the terms of the contract or agreement.

I.   "Insured" means a person or organization meeting the qualifications set forth in Section II - Who Is An Insured.

J.   "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

K.   "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

L.   "Loading or unloading" means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. While it is in or on an aircraft, watercraft or "auto"; or

3. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

M.   "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages.

N.   "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. Power cranes, shovels, loaders, diggers or drills; or

    b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a. Equipment designed primarily for:

        i. Snow removal;

        ii. Road maintenance, but not construction or resurfacing; or

        iii. Street cleaning;

    b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O. "Occurrence" means:

1. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence", regardless of the frequency or repetition thereof, or the number of claimants.

2. With respect to "personal and advertising injury", a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include "underlying insurance", the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q. "Policy period" means the time between the inception date of this policy shown in the Declaration and the expiration date shown or earlier termination date of this policy.

R. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  The use of another's advertising idea in your "advertisement"; or

7.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

S.  "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. As used in this definition, waste includes materials to be recycled, reconditioned or reclaimed.

T.  "Products-completed operations hazard":

1.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    a.  Products that are still in your physical possession; or

    b.  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        i.   When all of the work called for in your contract has been completed.

        ii.  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        iii. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2.  Does not include "bodily injury" or "property damage" arising out of:

    a.  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

    b.  The existence of tools, uninstalled equipment or abandoned or unused materials.

U.  "Property damage" means:

1.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

V.  "Retained limit" means either of the following:

1.  The total applicable limits of "underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2.  The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "underlying insurance" or "other insurance".

W.  "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

1.  An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

X.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Y.  "Underlying insurance" means the policy or policies of insurance listed in the Schedule of "Underlying Insurance" attached to and forming a part of this policy.

Z.  "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA. "Your product":

    1.  Means:

        a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (1)  You;

            (2)  Others trading under your name; or

            (3)  A person or organization whose business or assets you have acquired; and

        b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    2.  Includes:

        a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        b.  The providing of or failure to provide warnings or instructions.

    3.  Does not include vending machines or other property rented to or located for the use of others but not sold.

BB. "Your work":

    1.  Means:

        a.  Work or operations performed by you or on your behalf; and

        b.  Materials, parts or equipment furnished in connection with such work or operations.

    2.  Includes:

        a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        b.  The providing of or failure to provide warnings or instructions.



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.chubbproducercompensation.com  or by calling the following toll-free telephone number: 1-866-512-2862.

# CHUBB

**CHUBB SPECIALTY CLAIMS LOSS NOTIFICATION FORM**

> **FORWARD BY FAX, MAIL OR E-MAILTO:**
>
> Chubb Excess
> P.O. Box 5103
> Scranton, PA 18505-0510
> Fax No.: (866)635-5687
>
> ACEClaimsFirstNotice@chubb.com

**Today's Date:**

## Notice of:  (check all that apply)

☐ **First-Party Claim**          ☐ **Potential Claim**

☐ **Third-Party Claim**          ☐ **Litigation Initiated**

☐ **Other** _____

## Insured's Name & Contact Information

**Company Name:** McKesson Corporation          **Point of Contact:** _____

**Address:**     One Post Street, 34th Floor
                 San Francisco, California 94104

**Phone Number:** _____

## Broker/Agent's Name & Contact Information

**Company Name:** MARSH RISK & INSURANCE SERVICES          **Point of Contact:** _____

**Address:**     345 CALIFORNIA STREET
                 SAN FRANCISCO, California 94104

**Phone Number:** _____

## Policy Information

**Policy Number:** XOO G27610390 003          **Policy Period:** 07/01/2017 - 07/01/2018

**Limits of Liability:** $ 25,000,000   per $ 25,000,000   agg   **Self-Insured Retention/Deductible:** $ 25,000

## Loss Information

**Date of Incident/Claim:** _____     **Location:** _____

**Claimant Name/Address:** _____

**Description of Loss:** _____
_____
_____
_____

Please list all attached or enclosed documentation:   ☐ (check if none provided)

_____
_____
_____

Name of Person Completing This Form: _____   Signature: _____

©Chubb. 2016. All rights reserved.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

**COMMERCIAL UMBRELLA LIABILITY**

**INFORMATION FOR POLICYHOLDERS TO HELP YOU IN THE EVENT OF A CLAIM FOR CATASTROPHE MANAGEMENT COVERAGE**

A CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT is attached to your commercial umbrella liability policy from Chubb Excess Casualty.

This informational notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the Catastrophe Management Coverage endorsement.*

Please read your policy, and the endorsements attached to your policy, carefully.

When this endorsement is attached to your policy:

- Insurance is provided for covered catastrophe management costs arising out of a "catastrophe management event" as defined in the endorsement.

- In order to activate your catastrophe management coverage (make a claim), you must call the following toll free number:

# 1-877-366-3747

- If you attempt to report directly to a firm that provides catastrophe management services on our behalf, you will be re-directed to the toll free number shown above.

- Please be prepared to provide the following information:
  - o Caller's name, title and contact telephone number
  - o Name of Insured
  - o Policy Number
  - o A description of the incident
  - o Any witnesses
  - o Property, Product or Vehicle Information
  - o Incident Location
  - o Contact Person
  - o Number and nature of bodily injuries (including any fatalities and the number of people injured)
  - o Current status of the situation

*The coverage description in this notice is a summary only. It is not part of the policy and does not amend or alter your policy. Please see your policy for actual terms and conditions. Chubb Excess Casualty is one of the U.S.-based business groups of Chubb. Insurance policies are issued by ACE Property and Casualty insurance Company or one of its insurance company affiliates.*

XS-22552   (06/2007)                                                                 Page 1 of 1

# SIGNATURES

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 001 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

Chubb. Insured.℠

## ACCESS, COLLECTION AND DISCLOSURE OF INFORMATION AND ELECTRONIC DATA EXCLUSION – LIMITED BODILY INJURY AND REDEFINED PROPERTY DAMAGE EXCEPTIONS WITH RETAINED LIMIT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 002 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

I. The following exclusion is added to the policy:

This insurance does not apply to any injury, damage, cost, "loss", liability or legal obligation arising out of or in any way related to:

a. Any access to, collection of, release of or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health or medical information or any other type of nonpublic information; or

b. The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

However, this exclusion does not apply to damages because of "bodily injury" or "property damage".

II. The following definition is added to the policy and applies to this endorsement:

"Electronic data" means any information, facts or programs stored as or on, created or used on, or transmitted to or from any computer software or system, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media that are used with electronically controlled equipment or other electronic backup facilities, and data transmission or storage provided by means of the Internet.

III. When coverage is provided by virtue of the exception to the exclusion in this endorsement, the following provisions will apply:

A. The definition of "property damage" is deleted and replaced by the following:

"Property damage" means physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. "Electronic data" is not tangible property.

B. The definition of "retained limit" is deleted and replaced by the following:

©Chubb. 2016. All rights reserved.

"Retained limit" means a Self-Insured Retention in the amount of $5,000,000 , applicable to each "occurrence". The "retained limit" may be eroded by "loss" only and not defense expenses or supplementary payments.

IV. Notwithstanding anything in this endorsement or elsewhere in this policy, the limited coverage for "bodily injury" and "property damage" provided by virtue of the exceptions in this exclusion does not apply to and no coverage is provided for any notification costs, credit monitoring expenses, forensic expenses or any other similar expenses unless such expenses qualify as covered "catastrophe management expenses" under a **Catastrophe Management Coverage Endorsement** attached to this policy and then subject to all of the terms and limitations of that coverage.

All other terms and conditions of the policy remain unchanged.

_____

Authorized Representative

©Chubb. 2016. All rights reserved.

## AMENDMENT OF DEFINITION J. – INSURED CONTRACT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>003 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 003 | Policy Period<br>07/01/2017  to  07/01/2018 | Effective Date of Endorsement<br>07/01/2017 |
| Issued By (Name of Insurance Company)<br>**ACE Property and Casualty Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**
**This endorsement modifies insurance provided under the following: ACE**

### UMBRELLA PLUS<sup>SM</sup> COMMERCIAL UMBRELLA LIABILITY POLICY

Section **VII.  DEFINITIONS** is amended as follows:

**Definition J.** is deleted and replaced by the following:

"Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a. preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

2. under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 1. above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured McKesson Corporation | | | Endorsement Number 004 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL EXCESS AND UMBRELLA LIABILITY POLICY**
**COMMERCIAL UMBRELLA LIABILITY POLICY**
**EXCESS LIABILITY CATASTROPHE POLICY**
**EXCESS LIABILITY POLICY**

**A.** The **Cancellation** Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

   **(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

   **(6)** A determination by the Commissioner of Insurance that the:

      **(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

      **(b)** Continuation of the policy coverage would:

         **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

         **(ii)** Threaten our solvency.

   **(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

   **(8)** A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

   **(9)** Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

  **(10)** A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

 **b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund, if any, will be computed on a pro rata basis. However, the refund may be less than pro rata if we made a loan to you for the purpose of payment of premiums for this policy. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following is added and supersedes any provisions to the contrary:

  **NONRENEWAL**

 **1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

All other terms and conditions of this policy remain unchanged.

_____

                Authorized Representative

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured | | Endorsement Number |
|---|---|---|
| McKesson Corporation | | 005 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL UMBRELLA LIABILITY POLICY
### COMMERCIAL EXCESS AND UMBRELLA LIABILITY POLICY

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   1. The act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this policy.

C. In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any "other insurance" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limits of insurance, the following applies:

   1. The Limits of Insurance of the Declarations is amended to include:

      "Certified act of terrorism retained limit" $ 5,000,000

   2. "Certified act of terrorism retained limit" means the amount stated above, which is the amount of losses that you will pay in the settlement of any claim or "suit" arising directly or indirectly out a "certified act of terrorism", which is covered by this policy but not covered by the "underlying insurance" or any "other insurance" providing coverage to the "insured" due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance. "Certified act of terrorism" does not include any costs of investigation, settlement or defense and such costs shall not erode the "certified act of terrorism retained limit".

   3. Solely with respect to this endorsement, Section III., Defense and Supplement Payments is amended as follows:

      a. With respect to any "certified act of terrorism" to which this policy applies and no "underlying insurance" or "other insurance" applies due to any exclusion or exclusions contained therein or because of the exhaustion of the aggregate limit of insurance, we shall not be called upon to assume

charge of the investigation, settlement or defense of such "suit" against the "insured" seeking damages on account of "bodily injury", "property damage", "personal or advertising injury", or injury or damage to the environment arising directly or indirectly out of a "certified act of terrorism". However, we shall have the right and be given the opportunity to be associated in the defense and trial of any such "suit" relative to any "certified act of terrorism" which in our opinion may create liability on our part under the terms of this policy.

b.   We shall have no obligation to defend the "insured" in such "suit" until the "insured's" losses, which exclude any costs of investigation, settlement or defense have exceeded the "certified act of terrorism retained limit".   Once such losses have exceeded the "certified act of terrorism retained limit", we will assume charge of the settlement or defense of any such "suit".   We may make such investigation as we require and effect settlement of any "suit" so defended.

c.   We shall not be obligated to defend any "suit" after the applicable limits of this policy have been exhausted.


All other terms and conditions of this policy remain unchanged.


---

Authorized Representative

## CATASTROPHE MANAGEMENT COVERAGE ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>006 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 003 | Policy Period<br>07/01/2017  to  07/01/2018 | Effective Date of Endorsement<br>07/01/2017 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
#### This endorsement modifies all insurance provided under the following:
#### COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Catastrophe Management Cost Limit of Insurance

$250,000 Annual Limit

Catastrophe Management Coverage

**A.** Subject to the terms and conditions of this endorsement, we will pay "catastrophe management costs" to third parties at the request of and on behalf of the "insured," arising from a "catastrophe management event" first commencing during the "policy period," up to the amount of the "catastrophe management costs" Limit of Insurance shown in the Declarations.

**B.** A "catastrophe management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "catastrophe management event" and will end when we determine that any one of the necessary elements listed in the definition of a "catastrophe management event" no longer exists or when the "catastrophe management cost" Limit of Insurance shown in the Declarations has been exhausted, whichever occurs first.

**C.** There will be no "retained limit" applicable to "catastrophe management costs", except as it applies to a determination of whether the definition of "catastrophe management event" applies.

**D.** Payment of "catastrophe management costs" will not be applied to or erode the aggregate limits of the policy.

**E.** Any payment of "catastrophe management costs" that we make under the coverage provided by this endorsement will not (1) be a determination of any other rights or obligations under this policy, (2) create any duty to defend any "suit" under any other part of this policy, or (3) operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of "occurrence", claim or "suit.")

**F.** For purposes of this endorsement, the following definitions are added to the policy:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Catastrophe management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury", "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "catastrophe management services" due to "adverse media coverage". "Catastrophe management

event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Catastrophe management firm" means any firm that is approved by us and hired by you or us to perform "catastrophe management services" in connection with a "catastrophe management event."

"Catastrophe management services" means those services performed by a "catastrophe management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Catastrophe management costs" means the following reasonable and necessary expenses incurred during a "catastrophe management event" and directly caused by the "catastrophe management event," but only to the extent that the insured or a third party arranges for such services resulting in these expenses and the expenses are pre-approved by us:

1.  expenses incurred by a "catastrophe management firm" in the performance of "catastrophe management services" for the "insured";

2.  expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "catastrophe management firm" incurred at the direction of a "catastrophe management firm"; expenses to secure the scene of a "catastrophe management event;"

3.  medical expenses; funeral expenses; expenses for psychological counseling; travel expenses; temporary living expenses or other necessary response costs and approved by us, incurred by or advanced to third parties directly harmed by the "catastrophe management event."

"Catastrophe management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured". A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## COVERAGE TERRITORY DEFINITION AMENDMENT

| Named Insured McKesson Corporation | | | Endorsement Number 007 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

**Section VII.**, **DEFINITIONS**, Item D. "Coverage territory" is deleted and replaced with the following:

D.  "Coverage territory" means anywhere in the world.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

©Chubb. 2016. All rights reserved.

## DEFENSE INSIDE THE LIMITS ENDORSEMENT – FOLLOW FORM

| Named Insured McKesson Corporation | | | | Endorsement Number 008 |
|---|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Paragraph D. of Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS** is deleted and replaced by the following**:**

D. If we assume the defense of any "suit" against the "insured", we will pay the following items as listed below:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds because of an "occurrence" that may result in "bodily injury" or "property damage" covered by this policy.  We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance.  We do not have to furnish these bonds.

4. The cost of appeal bonds required by law to appeal any suit we defend but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish such bond.

5. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation of any claim or the defense of any "suit" covered under this policy, including actual loss of earnings because of time off from work.

6. All costs taxed against the "insured" in the "suit".

7. Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

8. Post-judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance", then such expenses will reduce the corresponding applicable Limits of Insurance of this policy.  However, if expenses incurred to defend any "suit" do not reduce the applicable limits of "underlying insurance", then we will pay such expenses in addition to the applicable Limit of Insurance of this policy.

Section **IV.**, **LIMITS OF INSURANCE** is amended by the addition of the following:

If defense expenses are included within the "underlying insurance" or within any "other insurance", then references to damages in this Section are amended to include Defense and Supplementary Payments for the sole purpose of determining erosion of limits of insurance.

Section **VII.**, **DEFINITIONS**, Subsection **M.**, is deleted in its entirety and replaced with the following:

 ©Chubb. 2016. All rights reserved.

**M.** "Loss" means those sums paid in the settlement a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay because of damages as a result of "bodily injury", "property damage", or "personal and advertising injury", after making proper deduction for all recoveries and salvages. If expenses incurred to defend any "suit" reduce the applicable limits of "underlying insurance", then "loss" also includes Defense and Supplementary Payments, which will erode the limits of this insurance.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

©Chubb. 2016. All rights reserved.

## DIFFERENCE IN CONDITIONS / DIFFERENCE IN LIMITS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 009 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017 to 07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### ACE UMBRELLA PLUS℠ COMMERCIAL UMBRELLA LIABILITY POLICY

If this policy provides greater coverage, limits or conditions than any of the policies listed in the Schedule of Other Policies below (each such scheduled policy referred to as an Other Policy), then this policy will provide coverage for loss to the extent of the difference in the coverages, limits or conditions between this policy and the Other Policy, subject to the terms, limitations and conditions of this policy.

This policy provides such coverage on an excess basis for and only to the extent of any such difference in terms, limits and conditions. In no event will the coverage afforded under this policy, in combination with any one or more of such Other Policies, exceed the applicable Limit of Insurance of this policy. The most we will pay if this policy has higher limits than any Other Policy is the difference between the applicable Limit of Insurance of this policy and the limit of insurance for any such Other Policies.

Schedule of Other Policies:

| Country of Issuance | Insurer | Policy Number |
|---|---|---|
| Canada | ACE INA Insurance | On File with Company |

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured McKesson Corporation | | | Endorsement Number 010 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

COVERAGE OF "ACTS OF TERRORISM" AS DEFINED BY THE REAUTHORIZATION ACT WILL BE PROVIDED FOR THE PERIOD FROM THE EFFECTIVE DATE OF YOUR NEW OR RENEWAL POLICY THROUGH THE EARLIER OF THE POLICY EXPIRATION DATE OR DECEMBER 31, 2020. EFFECTIVE DECEMBER 31, 2020 THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT EXPIRES.

Terrorism Risk Insurance Act premium: $ 31,819_____.

_____
Authorized Representative

## EMPLOYEE BENEFIT PLAN FOLLOW FORM ENDORSEMENT
## [OCCURRENCE]

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 011 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of liability shown therein, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "administration" of any "employee benefit program(s)".

"Administration" includes but is not limited to performing any of the following functions for an "employee benefit program":

1.  Counseling "employees" on your "employee benefit programs";

2.  Interpreting your "employee benefit programs";

3.  Handling records for your "employee benefit programs";

4.  Effecting enrollment, termination or cancellation of employees under your "employee benefit programs";

5.  Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs";

6.  Collection of contributions and application of contributions as provided in your "employee benefit programs";

7.  Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee benefit programs"; or

8.  Processing of claims for your "employee benefit programs".

"Employee benefit program(s)" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

_____
Authorized Agent

XS-23632 (01/2008)

## EMPLOYEE BENEFIT PLAN LIMITATION
## [CLAIMS MADE]

| Named Insured McKesson Corporation | | | Endorsement Number 012 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

1.   Underlying Insurance

    Company:           **Illinois Union Insurance Company**

    Policy Number:     **On file with Company**

    Expiration Date:     07/01/2018

    Retroactive Date:    07/01/2006

    Limits of Insurance:

    Each Employee     $ 5,000,000

    Aggregate:      $ 5,000,000

2.   Our Retroactive Date:    07/01/2006

3.   Coverage

Except insofar as coverage is available to you in the "underlying insurance" and for the full limits of insurance shown above, this insurance does not apply to liability arising out of any actual or alleged negligent act, error, omission, misstatement, misleading statement, neglect or breach of duty in the "Administration" of any "Employee benefit programs".

"Administration" included but is not limited to performing any of the following functions for an "employee benefit program":

a.   Counseling "employees" on your "employee benefit programs";

b.   Interpreting your "employee benefit programs";

c.   Handling records for your "employee benefit programs";

d. Effecting enrollment, termination or cancellation of "employees" under your "employee benefit programs";

e. Calculation of benefits, periods of service, and compensation credits for your "employee benefit programs".

f. Collection of contributions and application of contributions as provided in your "employee benefit programs";

g. Preparation of reports required by government agencies, or "employee" communication materials concerning your "employee" benefit programs"; or

h. Processing of claims for your "employee benefit programs".

"Employee benefit programs" include but are not limited to group life insurance, group accident or health insurance, pension plans, stock subscription plans, travel, vacation or saving plans, profit sharing plans, social security benefits, unemployment insurance, workers' compensation and disability benefits insurance, and any other similar benefit program.

4. Claims Made Provision

To the extent that coverage is available to you in the "underlying insurance", it is agreed as follows:

a. Retroactive Date

If the "underlying insurance" above applies on the basis of claims first made against you during the period of that policy, then this policy shall apply to those claims on the same basis and in like manner, provided:

i. The date such claim is first made against you is during OUR policy period, and

ii. The injury, loss, or damage occurs on or after OUR Retroactive Date shown in the Schedule, and prior to the termination of this policy.

b. Extended Reporting Period

If the "underlying insurance" provides coverage under an Extended Reporting Period for a claim, then our policy will apply to that claim on the same basis and in  like manner, subject to all of the following:

i. Coverage we afford will only be excess of coverage afforded under an Extended Reporting Period provided by the "underlying insurance", and

ii. The injury or damage must occur on or after our Retroactive Date and prior to the termination of this policy, and

iii. The Extended Reporting Period will not reinstate or increase the Limits of Insurance of this policy or extend our "policy period".

c. Aggregate Limits

If the applicable Limits of Insurance shown in the "underlying insurance"  above apply on an aggregate limit basis, and if the aggregate limit has been reduced or exhausted by payment for claims expense, then our policy shall apply in excess of such reduced or exhausted aggregate limit provided that:

i. The claim must first be made against you during our "policy period" or during an Extended Reporting Period provided by this policy, and

ii. Claims or claims expense must be for injury or damage which occurs on or after our Retroactive Date and prior to the termination of this policy, and

iii. If such applicable Limits of Insurance have been reduced or exhausted by payments for claims or claims expense other than those specified in c.1) and c.2) above, then our policy shall apply as if such payments had not been made.

d.  Item F. Duties in the Event of "Occurrence", Claim or "Suit" of Section **VI. CONDITIONS** of this policy is amended to add paragraph 5. as follows:

Notice of an "occurrence" is not notice of a claim for coverage as provided by this endorsement.

All other terms and conditions of this policy remain unchanged.

_____<br>Authorized Agent

## FELLOW EMPLOYEE EXCLUSION DELETED

| Named Insured McKesson Corporation | | | Endorsement Number 013 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II, WHO IS AN INSURED, Section B.1.a.1 is deleted and amended as follows;  B.1.a.2. is deleted in its entirety:

(1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) while in the course of his or her employment or performing duties related to the conduct of your business

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-23634 (01/2008)

## FOREIGN LOSS INDEMNITY ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>014 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 003 | Policy Period<br>07/01/2017  to  07/01/2018 | Effective Date of Endorsement<br>07/01/2017 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**THIS ENDORSEMENT APPLIES ONLY WHEN A "FOREIGN OCCURRENCE", ARISING OUT OF A "FOREIGN BUSINESS OPERATION" AND CAUSING "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY", TAKES PLACE IN A COUNTRY WHERE WE ARE NOT "LICENSED".**

The policy is amended to add the following:

### FIRST NAMED INSURED INDEMNITY COVERAGE

#### I.   INSURING AGREEMENT

This endorsement applies only when a "foreign occurrence", arising out of a "foreign business operation" and causing "bodily injury", "property damage" or "personal and advertising injury", takes place in a country where we are not "licensed".

In that case, rather than directly pay on behalf of and defend your "foreign business operation", we will indemnify the "First Named Insured", in excess of the "retained limit", for "loss" and defense and supplementary payments in accordance with this endorsement. This endorsement provides the only coverage under the policy for "bodily injury", "property damage" or "personal and advertising injury" arising out of a "foreign occurrence".

The terms, conditions and limitations in sub-section A.1., A.2., B., C. and D. of Section **I. INSURING AGREEMENT** in the policy will apply to our duty to indemnify the "First Named Insured".

#### II.   WHO IS AN INSURED

Section **II. WHO IS AN INSURED**, is amended to provide that a "foreign business operation" is not an "insured" on whose behalf we have a direct duty to pay settlements or judgments or a direct duty to defend under this policy.

#### III.   DEFENSE AND SUPPLEMENTARY PAYMENTS - ASSIGNMENT OF RIGHTS

When this endorsement applies, rather than directly defend your "foreign business operation", we will indemnify the "First Named Insured" for defense costs incurred in defending a "suit" brought against a "foreign business operation", provided that (a) the "foreign business operation" gives the "First Named Insured" the right to control the investigation, defense and settlement of the "suit" and (b) the "First Named Insured" assigns this right to us.  We will associate with the "First Named Insured" to conduct such investigation, defense and settlement as provided in Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, except that we will indemnify the "First Named Insured" rather than directly defend and pay supplementary payments.

XS-28727a (01/11)                    ©Chubb. 2016. All rights reserved.                    Page 1 of 3

## IV.  LIMITS OF INSURANCE

A.  The insurance provided by this endorsement is subject to the applicable aggregate and each occurrence limits of liability stated in the Declarations, and any "losses" for which we pay indemnity will erode and be counted against such limits.

B.  Subject to the applicable aggregate and each occurrence limits of liability stated in the declarations, our limit of liability for "loss" will be the amount which the "First Named Insured":

1.  Has indemnified a "foreign business operation", or

2.  Represents to us that it is obligated to indemnify the "foreign business operation".

However, if this policy provides for a percentage allocation of liability with respect to the insured's or the "foreign business operation's" interest in a joint venture, limited liability company or partnership, the allocation set forth in such provision will apply.

The terms, conditions and limitations set forth in Section **IV. LIMITS OF INSURANCE** in the policy will apply to our duty to indemnify the "First Named Insured".

## V.  CONDITIONS

When this endorsement applies, the following conditions apply in addition to the conditions and limitations provided elsewhere in the policy.

### A.  Claims Made/Reported Coverage (if applicable)

Any requirements in the policy that a claim be first made during the policy period or any discovery or extended reporting period will also apply to all claims made against a "foreign business operation" for which the "First Named Insured" seeks indemnification.

### B.  Additional Notice Duties of the "First Named Insured"

With respect to a "foreign occurrence" which may result in a claim for damages under this endorsement, the "First Named Insured" assumes the duty to notify us, and must notify us in accordance with the standards described in Condition **F. Duties in the Event of "Occurrence", Claim or "Suit"** in the policy.

### C.  Proof of Insurance

This policy may not be offered as proof of insurance unless permitted by local applicable law.

### D.  Truthfulness and Accuracy of Material Information

When this endorsement applies, the "First Named Insured":

1.  Is responsible for the truthfulness and accuracy of any material information provided to us with respect to a "foreign business operation", "foreign occurrence", claim, "suit" or "loss"; and

2.  Will not, at any time, intentionally conceal or misrepresent a material fact concerning this policy, including the risk to be insured, a "foreign business operation", a "loss", claim or "suit" or a "foreign occurrence".

XS-28727a (01/11)                    ©Chubb. 2016. All rights reserved.

## VI.  DEFINITIONS

When this endorsement applies, Definition M. "Loss" in the policy is deleted and replaced with the following:

M.  "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "foreign business operation" is legally liable to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", for which the "foreign business operation" makes a claim for reimbursement from the "First Named Insured", after making proper deduction for all recoveries and salvages.

The following definitions are added to the policy and apply to the coverage provided by this endorsement:

"First Named Insured" means the first Named Insured shown in the Declarations.

"Foreign business operation" means a subsidiary of the "First Named Insured" and any other organization under its control or active management at the inception date of the policy or added by endorsement, and having its principal place of business, statutory domicile, residence, or business operation subject to liability for otherwise covered "bodily injury", "property damage" or "personal and advertising injury" located in a country where we are not "licensed".

"Foreign occurrence" means an "occurrence" arising from the premises, operations or products of a "foreign business operation" taking place in or causing "bodily injury", "property damage" or "personal and advertising injury" in a country where we are not "licensed". Country includes any political jurisdiction that independently regulates the licensing of insurance companies.

"Licensed" means expressly approved in accordance with law by the applicable regulatory body to conduct the business of insurance in a country as a regulated, authorized insurer. "Licensed" is synonymous with admitted and authorized.  It does not include being recorded as an eligible foreign or alien non-admitted insurer.


All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

 ©Chubb. 2016. All rights reserved.

## INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 015 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **II. WHO IS AN INSURED,** Section B.1.a.(4) is deleted and replaced by the following:

(4) arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees" Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence".

The following definition is added:

"Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a. medical, surgical dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or
b. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## INDUSTRIAL AID AIRCRAFT ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 016 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

I.   LIMITS OF INSURANCE of the DECLARATIONS is amended to include the following additional Self-Insured Retention:

$ 500,000,000 Industrial Aid Aircraft Self-Insured Retention/Each Occurrence.  (As respects claims and "suits" seeking damages for "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned by or rented or loaned to any "insured". Use includes operation and "loading and unloading").

II.  For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety, and replaced by the following:

We will have no duty to defend any "suit" against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

III. For the purpose of this endorsement only, Section **III. DEFENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph D. is deleted in its entirety.

IV. Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The Industrial Aid Aircraft Self-Insured Retention applies whether or not there is any available Scheduled "underlying insurance" or "other insurance".

The Industrial Aid Aircraft Self-Insured Retention will not be reduced by "defense expenses".

V.  For the purpose of this endorsement only and solely with respect to any and all references to aircraft, Section **V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.  Aircraft
This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance use, or entrustment to others of any "industrial aid aircraft" owned or operated by or rented or loaned to any "insured".  Use includes operation and "loading and unloading".

It is understood that any and all references to watercraft in Section **V. EXCLUSIONS**, Paragraph A. remains unchanged, unless amended by separate endorsement.

VI. For the purpose of this endorsement only, Section **VII. DEFINITIONS** is amended to include the following addition definitions:

"Defense expenses" means any payment allocated to a specific "loss", claim or "suit" for its investigation, settlement or defense, including but not limited to:

1. attorney's fees and all other investigation, loss adjustment and litigation expenses;
2. premiums on bonds to release attachments;
3. premiums on appeal bonds required by law to appeal any claim or "suit";
4. costs taxed against the "insured" in any claim or "suit";
5. pre-judgment interest awarded against the "insured"; and
6. interest that accrues after entry of judgment

"Industrial aid aircraft" means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used predominantly for business travel of "employees" and their non fee paying passenger guests.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## NON-CONCURRENCY ENDORSEMENT
### (Recognizes Non-Concurrency)

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 017 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Whereas, the policy (ies) listed in the schedule of "underlying insurance" are non-concurrent with the "policy period" hereunder;

In the event of reduction or exhaustion of the aggregate limit(s) of the policy (ies) by reason of "occurrences" prior to the inception of this policy, it is agreed that such insurance as is afforded by this policy shall:

   (1)   in the event of reduction apply in excess of the reduced underlying limit; or

   (2)   in the event of exhaustion continue in force as "underlying insurance".

Anything in this endorsement to the contrary notwithstanding this policy applies only to "occurrences" happening during the "policy period".

"Policy period" means the period stated in the Declarations of this policy.

All other terms and conditions remain unchanged.

_____
Authorized Agent

## NOTICE OF OCCURRENCE

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 018 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Your failure to provide notice of an "occurrence" or claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such "occurrence" or claim to us within a reasonable time once you become aware of such error.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-20756 (08/06)                                                                                          Page 1 of 1

## NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 019 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**A.** If we cancel the Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

**B.** We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

**C.** The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

**D.** We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

**E.** We may arrange with your representative to send such notice in the event of any such cancellation.

**F.** You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

**G.** This endorsement does not apply in the event that you cancel the Policy.

### SCHEDULE

| Name of Certificate Holder | E-Mail Address | Physical Address |
|---|---|---|
| Medassets | | 13727 Noel Road, Suite 1400 Dallas, TX 75240 |
| Port Authority of New York & New Jersey Newark Liberty International Airport c/o EBIX BPO | | P.O. Box 881639 San Diego, CA 92168-1635 |

All other terms and conditions of the Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

## POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL (With Insured's Retained Limit)

| Named Insured McKesson Corporation | | | Endorsement Number 020 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion R. of Section V., **EXCLUSIONS**, is deleted and replaced by the following:

This insurance does not apply:

1. To any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to pollution, however caused.

2. To any "loss", cost or expense arising out of any:

    a. Directive, request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by pollution if the discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. Is both unexpected and unintended from the standpoint of the "insured";

2. Commenced abruptly and can be clearly identified as having commenced entirely at a specific time on a specific date during the "policy period"; and

3. Is caused:

    a. Solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, flood, earthquake, sprinkler leakage, or discharge from a heating, ventilating or air conditioning system or collision or upset of a motor vehicle, mobile equipment or an aircraft;

    b. Or arises out of "your product" included in the "products-completed operations hazard"; or

    c. By any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

        (1) Is at or from any:

©Chubb. 2016. All rights reserved.

(a) Premises, site or location which is owned by or occupied by, or rented or loaned to, any "insured"; or

(b) Premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor;

And

(2) Is known by any "insured" within <u>20</u> days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

(3) Is reported to us within <u>80</u> days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants".

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the pollution, this policy shall not apply to:

1. Loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the "insured", and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. Any injury, damage, expense, cost, "loss", liability or legal obligation arising out of or in any way related to actual or alleged pollution or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any "insured" or by others for the storage, disposal, processing or treatment of waste of any kind.  Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not.  Waste means any substance that:

a. Is left over, or no longer in use, or discarded;

b. Is to be reclaimed or recycled, or reconditioned; or

c. Has been removed, treated, stored or disposed of as part of any environmental remediation effort.

It is further agreed that solely with respect to any "occurrence" resulting in "bodily injury" or "property damage" caused by pollution which is covered by this policy but not covered by the "underlying insurance" due to any exclusion or exclusions contained therein, the "insured's" "retained limit" in the Limits of Insurance section of the Declarations is amended to $ <u>5,000,000</u> .

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

 ©Chubb. 2016. All rights reserved.

## PROFESSIONAL SERVICES LIABILITY EXCLUSION -  EXCEPTION FOR RESULTING BODILY INJURY AND PROPERTY DAMAGE

| Named Insured McKesson Corporation | | | Endorsement Number 021 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any liability arising out of the providing or failing to provide any services of a professional nature. However, this exclusion does not apply to "bodily injury" or "property damage" which occurs as a result of such services of a professional nature.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

XS-21580 (0107)

# TIE IN OF LIMITS ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 022 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance is amended to include the following additional Condition:

If this insurance and the insurance provided by the policy(ies) listed in the schedule below apply to the same claim, "suit" or "occurrence", the maximum combined limits of insurance available under this policy and the scheduled policy(ies) below for such claim, "suit" or "occurrence" will not exceed:

$ 25,000,000_____ Each Occurrence

$ 25,000,000_____ General Aggregate

$ 25,000,000_____ Products-Completed Operations Aggregate

These limits are the most that will be paid under this policy and the policies listed in the schedule below, combined, for all claims, damages, "losses" or "suits", regardless of any aggregate, per "occurrence", per incident, or per accident limit, or any other limit of liability or limit of insurance in this policy or the scheduled policy.

### SCHEDULE

| Country of Issuance | Insurer | Policy Number |
|---|---|---|
| Canada | ACE INA Insurance | On File with Company |

Any "loss" paid under the scheduled policy shall reduce by such amount the applicable limit of insurance under this policy.  Any claims, damages, "losses" or "suits" seeking coverage under any policy scheduled above may not be brought under this policy.  Any claims, damages, "losses" or "suits" seeking coverage under this policy may not be brought under any policy scheduled above.

Nothing in this provision shall serve to increase any applicable limit of insurance of this policy or the scheduled policy.

All other terms and conditions of this policy remain unchanged.

_____
                                             Authorized Representative

 ©Chubb. 2016. All rights reserved.

## TRADE OR ECONOMIC SANCTIONS AMENDATORY ENDORSEMENT

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>023 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 003 | Policy Period<br>07/01/2017  to  07/01/2018 | Effective Date of Endorsement<br>07/01/2017 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Item T. of Section **V. Exclusions** is hereby deleted and replaced by the following:

**T.   Trade or Economic Sanctions**

To the extent that United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Representative

  ©Chubb. 2016. All rights reserved.

## UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>024 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 003 | Policy Period<br>07/01/2017  to  07/01/2018 | Effective Date of Endorsement<br>07/01/2017 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Agent

## UNSOLICITED COMMUNICATIONS EXCLUSION AMENDMENT TO INCLUDE FACTA

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>025 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 003 | Policy Period<br>07/01/2017  to  07/01/2018 | Effective Date of Endorsement<br>07/01/2017 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS**, Item **V. Unsolicited Communications** is deleted and replaced with the following:

**V.  Recording and Distribution of Material or Information in Violation of Law**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone that violates or is alleged to violate:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4. Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# WAR EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 026 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017 to 07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Exclusion W. of SECTION V. EXCLUSIONS is deleted in its entirety and replaced by the following:

**W.  War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

## AMENDMENT OF WHO IS AN INSURED

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| McKesson Corporation | | | | 027 |

| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
|---|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Section II WHO IS AN INSURED Paragraph B. is hereby amended to add the following:

7. Any person or organization you become obligated to include as an additional "insured" under the policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" arising out of your operations or premises owned by or rented to you.

However, the insurance provided by this endorsement will not be broader than the coverage provided by this policy.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
**Authorized Representative**

## ANNUAL PERIOD EXTENSION - NATURAL DISASTER OR OTHER CATASTROPHE

| Named Insured McKesson Corporation | | | Endorsement Number 028 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

In the event of a natural disaster or other catastrophe that prevents all written, telephonic and electronic communication between us and the Named Insured at the expiration of the "policy period", the "policy period" will automatically be extended until the earlier of the two following times:

1.      thirty (30) calendar days from the original expiration date of such "policy period"; or
2.      fourteen (14) calendar days after written, telephonic or electronic communication between us and the Named Insured is once again possible.

The additional premium for such extension will be calculated on a pro-rata basis.  Such extension will be cancelled automatically retroactive to its inception if the additional premium or proof of payment thereof is not received by us within thirty (30) calendar days following the earlier of 1. or 2. above.

Nothing in this endorsement will operate to increase or reinstate the Limits of Liability as stated in the Declarations.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

**Authorized Representative**

MS- 10110 (05/12)                               © 2012                               Page 1 of 1

AUTOMOBILE LIABILITY LIMITATION ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 029 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**Automobile Liability**

Coverage for "bodily injury" or "property damage" associated with automobiles is listed in the "Scheduled of Retained Limits," on the Retained Limit Amendatory Endorsement.  Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of Old Republic Insurance Company, Policy # tbd and Old Republic Insurance Company of Canada Policy # tbd subject to the "policy period," limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  In no event will the coverage provided by this policy be broader than the coverage provided by Old Republic Insurance Company, Policy # tbd and Old Republic Insurance Company of Canada Policy # tbd.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
**Authorized Representative**

## CANCELLATION AMENDATORY ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 030 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017 to 07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Parts 1., 2., 5. and 6. of Condition D of Section VI CONDITIONS are deleted and replaced by the following:

1.  This policy may be cancelled by you by mailing to us written notice stating when such cancellation shall be effective.

2.  This policy may be cancelled by us by mailing to you at your last known address, written notice stating when, not less than one hundred twenty (120) days thereafter, ten (10) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period". Under no circumstance will our notice of cancellation to you be less than the minimum required by State law or regulation.

5.  If this policy is cancelled, the final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Annual Premium as shown in the Declarations.

6.  Premium adjustment may be made at the time cancellation becomes effective. Our check or the check of our representative mailed to you shall be sufficient proof of any refund or premium due you.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
**Authorized Representative**

## CLINICAL TRIAD EXCLUSION ENDORSEMENT

| Named Insured McKesson Corporation | | Endorsement Number 031 |
|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017 to 07/01/2018 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | |

Effective Date of Endorsement: 07/01/2017

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of a "clinical trial".  However, this exclusion does not apply to late phase trial services, otherwise referred to as Phase IV, and provided by McKesson Specialty Canada.

"Clinical trial" means a clinical study or research study that utilizes human subjects, and that is conducted for the purpose of testing or experimenting with a device, drug, technique, treatment, intervention, procedure, method, or diagnosis.

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA,  President

**Authorized Representative**

## DESIGNATED ENTITTY EXCLUSION WITH EXCEPTIONS FOR AUTO AND EMPLOYERS LIABILITY

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 032 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017 to 07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

This insurance does not apply to:

Designated Entity

Any "bodily injury", "property damage" or "personal and advertising injury" arising out of the premises, operations, products or activities of any person or organization shown in the Schedule below.  However, this exclusion shall not apply to "auto" liability or employers liability.

### SCHEDULE

Celesio AG and its subsidiaries

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

MS- 50579 (06/16)                                © 2016                                Page 1 of 1

# FOREIGN LIABILITY FOLLOW FORM LIMITATION ENDORSEMENT - EXCEPTION FOR PRODUCTS

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 033 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017 to 07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The following exclusion is added to the policy:

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by a policy listed in the scheduled "underlying insurance":

1. This exclusion shall not apply; and

2. Coverage under this policy for such "bodily injury," "property damage," or "personal and advertising injury" will follow the terms, definitions, conditions and exclusions of such "underlying insurance," subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, and this policy will be no broader than the coverage provided by "underlying insurance"

Notwithstanding the above provisions, with respect to claims or "suits" alleging "bodily injury," "property damage" or "personal and advertising injury" that (a) occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada, (b) arises out of "your product", and (c) is not covered by "underlying insurance" this insurance will apply subject to a "retained limit" which is a self-insured retention as follows:

$5,000,000 each "occurrence" ("loss" and defense expenses erode SIR)

$5,000,000 annual aggregate ("loss" and defense expenses erode SIR)

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
**Authorized Representative**

## GOVERNMENT IMMUNITY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 034 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017 to 07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

We shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority of New York and New Jersey (Port Authority), raise any defense involving in any way the jurisdiction of the Tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

**Authorized Representative**

MS- 10102 (05/12)                    © 2012                    Page 1 of 1

## HEALTH CARE SERVICES EXCLUSION

| Named Insured McKesson Corporation | | | Endorsement Number 035 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017 to 07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

Solely with respect to Interlakes Oncology, PC, and those entities identified in the Schedule on Endorsement 40 (WHO IS AN INSURED ENDORSEMENT Afficated Physician Practices) of this policy Section V, DEFINITIONS, is amended by the addition of the following exclusion:

Health care Services

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" sustained by a "patient" and arising out of the providing of or failing to provide "health care services" by the "insured".

For purposes of this endorsement, the following definitions are added to the policy;

"Health care services" means medical, surgical, dental, diagnostic or nursing services; diagnosis or treatment of any sickness, disease, condition or injury; dispensing or administering of drugs, medicines, vaccines medical, surgical or dental supplies, devices or appliances; advisory services or counseling for mental health, substance abuse or addiction; physiotherapy, chiropractic or chiropody; optometry or optical services, including the prescribing, preparation or fitting of ophthalmic lenses or similar products; providing hearing aid services, including the prescribing, preparation or fitting of hearing aids.

"Patient" means a person under the care of or receiving "health care services" from any "insured" or any other person or organization operating on behalf of any "insured".

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

**Authorized Representative**

## KNOWLEDGE OF OCCURRENCE BY VICE PRESIDENT OF RISK MANAGEMENT OR GENERAL COUNSEL ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 036 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to any loss reporting requirements under this policy, it is understood and agreed that knowledge of an "occurrence" or claim by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Vice President of Risk Management or General Counsel shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA,  President
**Authorized Representative**

## MANUFACTURE OF DRUGS EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 037 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017 to 07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

This insurance does not apply to:

Manufacture of Drugs

Any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the "Insured".

For the purposes of this exclusion, the term manufacture shall not include packaging or labeling (including private label products).

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>038 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 003 | Policy Period<br>07/01/2017 to 07/01/2018 | Effective Date of Endorsement<br>07/01/2017 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

For any person or organization qualifying as an "insured" under Section II WHO IS AN INSURED, Paragraph B.7. (as added by endorsement to this policy) the following is added to
Section VI. CONDITIONS Paragraph J. Other Insurance

If "other insurance" is available to an "insured" we cover under any of the endorsements listed or described above (the "Additional Insured") for a "loss" we cover under this policy, this insurance will apply to such "loss" on a primary basis and we will not seek contribution from the "other insurance" available to the Additional Insured. Your "retained limit" still applies to such "loss" and any payments you receive from "other insurance" will not erode your "retained limit".

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
**Authorized Representative**

## OPIOIDS AND NARCOTICS EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| McKesson Corporation | | | 039 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL UMBRELLA LIABILITY POLICY**

The policy is amended as follows:

Section **V. EXCLUSIONS** is amended to add the following:

This insurance does not apply to:

**OPIOIDS AND NARCOTICS**

Injury, damage, cost, "loss", liability or legal obligation arising out of or in any way related to:

1.  the actual or alleged abuse, misuse, illicit use, overuse, unlawful distribution, diversion of and/or addiction to any:

    a.  opioid or narcotic drug, narcotic medication or narcotic substance of any type, nature, or kind, including but not limited to codeine, fentanyl, hydrocodone, oxycontin, hydromorphone, medperidine, methadone, oxycodone, or naloxone; or

    b.  controlled substance under the Controlled Substance Act or under any similar federal, state, local, or foreign act, statute, regulation, ordinance, requirement, or law;

2.  Failure or inadequacy of any control required to prevent or report suspicious behavior relating to the abuse, misuse, illicit use, overuse, diversion of and/or addiction to any substance referenced in 1.a. or 1.b. above, including but not limited to any control required by federal, state, local or foreign act, statute, regulation, ordinance, requirement or law; or

3.  Failure to warn or inadequacy of any warning related to the addictive properties of any substance referenced in 1.a. or 1.b. above.

All other terms and conditions of the policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

PERONAL INJURY DEFINITION AMENDED TO INCLUDE DISCRIMINATION

| Named Insured McKesson Corporation | | | Endorsement Number 040 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017 to 07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section VII, DEFINITIONS, Part R. "Personal and advertising injury" is deleted and replaced with the following:

R.    "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1.    False arrest, detention or imprisonment;
2.    Malicious prosecution;
3.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5.    Oral or written publication, in any manner, of material that violates a person's right of privacy;
6.    Discrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only is such discrimination or humiliation is:
   a.    Not intentionally committed by the "insured,"
   b.    Not committed by, at the direction of, or with the knowledge of you and/or any of your executive officers or directors,
   c.    Not directly or indirectly related to the employment of the person or persons by you, and
   d.    Not in violation of any provision(s) of the Americans with Disabilities Act (including but not limited to any amendments or revisions thereto and any rules or regulation promulgated thereunder) or any similar common or statutory law,
7.    The use another's advertising idea in your "advertisement," or
8.    Infringing upon another's copyright, trade dress or slogan in your "advertisement."

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## RETAINED LIMIT ENDORSEMENT (NO UNDERLYING INSURANCE)

| Named Insured<br>McKesson Corporation | | | Endorsement Number<br>041 |
|---|---|---|---|
| Policy Symbol<br>XOO | Policy Number<br>G27610390 003 | Policy Period<br>07/01/2017  to  07/01/2018 | Effective Date of Endorsement<br>07/01/2017 |
| Issued By (Name of Insurance Company)<br>ACE Property and Casualty Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to those coverages listed in the Schedule of Retained Limits in this endorsement only, the following shall apply:

1.  The preamble in the policy is deleted and replaced with the following:

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VII. DEFINITIONS.

We, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of Retained Limits attached to this policy, and in return for the payment of premium and subject to its terms, conditions, and limits of insurance of this policy, agree with you as follows:

2.  Paragraph A., of Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS, is deleted and replaced with the following:

A.  We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", even if groundless, false or fraudulent, to which this insurance applies:

1.  When the applicable limits listed on the Schedule of Retained Limits, have been exhausted by payment of "loss"; or
2.  When damages sought would be covered under any "other insurance" but are not covered by that insurance because of the exhaustion of the applicable limits of "other insurance" by the payment of "loss" covered under such "other insurance".

The defense and supplemental payment expenses will be included within the "retained limit" and within the applicable Limits of Insurance of this policy.  Any such payment we make shall reduce the Limits of Insurance. Provided, however, that if the "retained limit" is specifically designated in the Schedule of Retained Limits as not including defense and/or supplemental payment expenses, then solely with respect to coverage afforded by this policy that is subject to such "retained limit", such defense and/or supplemental payment expenses shall be in addition to the applicable Limits of Insurance of this policy and any such payment we make shall not reduce the Limit of Insurance of this policy.

3. Paragraph E. of Section IV. LIMITS OF INSURANCE. is deleted and replaced with the following:

    E. If the applicable "retained limits" listed on the Schedule of Retained Limits have been:

1. Reduced by the payments of "loss" covered by this policy then this policy will be excess of the remaining underlying "retained limits"; or

      2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as primary insurance, subject to the terms, conditions and limitations of the policy.

4. Exclusions A., I. and N. of Section V. EXCLUSIONS are deleted, unless replaced or amended by separate endorsement excluding or limiting coverage for Aircraft or watercraft (Exclusion A.), Employer's Liability (Exclusion I.), or Liquor Liability (Exclusion N.).

5. Conditions A., C., and I. and Paragraph 3. only of Condition N. of Section VI. CONDITIONS are deleted and replaced with the following:

    A. Appeals

In the event you elect not to appeal a judgment in excess of the "retained limits" or "other insurance", we may elect to appeal. If we elect to appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment that does not exceed the applicable Limits of Insurance shown in the Declarations related to such an appeal, subject to the limitations set forth in Section III. DEFENSE AND SUPPLEMENTARY PAYMENTS.

    C. Bankruptcy

Your bankruptcy, insolvency, refusal or inability to pay will not relieve us of our obligations under this policy. This policy will not drop down or replace the "retained limits", but will apply as if the "retained limits" are fully available and collectible and we will not assume any obligation under "retained limits".

    I. Maintenance of "Underlying Insurance" is deleted.

    N. Transfer of Rights of Recovery Against Others to Us

      3. If you waive any right of recovery against a specific person or organization for damages as required under an "insured contract", we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract".

6. Definitions P., and V. of Section VII. DEFINITIONS are deleted and replaced with the following:

    P. "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

    V. "Retained limit" means the total applicable self-insured limits listed in the Schedule of Retained Limits in this endorsement below. The "retained limits" will apply whether or not there is any available "other insurance". If there is "other insurance" applicable to a "loss", amounts received through such "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit".

7. Definition Y. of Section VII. DEFINITIONS ("Underlying insurance") is deleted.

Schedule of Retained Limits

| Coverage(s) | Retained Limit | | Defense Treatment |
|---|---|---|---|
| General Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $7,500,000 | General Aggregate | |
| Products Liability | $5,000,000 | Each Occurrence | Within limits & within SIR |
| | $5,000,000 | Aggregate | |
| Auto Liability | $5,000,000 | Each Occurrence | Outside Limits & SIR |
| Employers Liability | $1,000,000 | Bodily Injury – Each Accident OR Bodily Injury by Disease – Each Employee | Outside Limits & SIR |
| General Liability - US Oncology | $5,000,000 $5,000,000 $5,000,000 | Each Occurrence Personal and Advertising Injury General Aggregate | Outside limits & within SIR |
| Foreign Auto Liability – Celesio | $2,000,000 | Each Occurrence | Outside Limits & SIR |
| Ireland Employers Liability – McKesson | €13,000,000 | Each Occurrence | Outside Limits & SIR |

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

**Authorized Representative**

MS- 10104 (05/12)                    © 2012                    Page 3 of 3

## WHO IS AN INSURED - AFFILIATED PHYSICIAN PRACTICES ENDORSEMENT

| Named Insured McKesson Corporation | | | Endorsement Number 042 |
|---|---|---|---|
| Policy Symbol XOO | Policy Number G27610390 003 | Policy Period 07/01/2017  to  07/01/2018 | Effective Date of Endorsement 07/01/2017 |
| Issued By (Name of Insurance Company) ACE Property and Casualty Insurance Company | | | |

.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Section **II**, **WHO IS AN INSURED**, is amended by the addition of the following:

    **1.** The entities listed in the schedule below shall be considered "insureds", but solely to the extent that:

        a.  such entity is under your management;

        b.  such entity has entered into a written Comprehensive Strategic Agreement (hereinafter "CSA") with you, which is in effect during the policy period and executed prior to any "occurrence" taking place; and

        c.  any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

Such entity's status as an "insured" ends when its CSA with you is cancelled, terminated or expires.

    **2.** Any entity, other than those entities listed in the schedule below, that has entered into a written CSA with you shall be considered an "insured", but solely to the extent that:

        a. such entity is under your management;

        b. such entity's CSA with you is in effect during the policy period and executed prior to an "occurrence" taking place; and

        c. any liability covered under this policy is not also covered under any other valid and collectible insurance available to such entity.

Such entity's status as an "insured" ends when its CSA with you is canceled, terminated or expires.

**B.** All such entities and written CSAs must be reported in writing to us within fifteen (15) days after the expiration of this policy.  However, any inadvertent or unintentional failure to report such entities or CSAs within fifteen days shall not, in and of itself, preclude coverage for such entities as "insured" under this policy.

**C.** Section **VII**, **DEFINITIONS**, Subsection I, "Insured", is deleted and replace with the following:

    I.     "Insured" means the Named Insured shown in the Declarations or added by endorsement and any individual or organization qualifying as such under Section II – Who is an Insured.

## SCHEDULE OF ENTITIES

| Physician Practices |
| --- |
| Allison, Curtis, Kingsley, Meoz, Michael & Sanchez, PC (Comprehensive Cancer Centers of Nevada) |
| Arizona Oncology Associates, P.C. |
| Arthritis Associates of Southern California |
| Arthritis Consultants of Tidewater, Inc. |
| Asheville Hematology & Oncology Associates PA |
| Cancer Care Centers of Brevard, Inc. |
| Cancer Care Network South Texas |
| Cancer Centers of Florida, PA |
| Cancer Centers of North Carolina-Asheville, PC |
| Cancer Centers of Virginia, LLC |
| Flavio Kruter MD, PA |
| Florida Cancer Affiliates, PL |
| Hematology Oncology Associates, Inc.  (MO) |
| Hematology Oncology Associates, Inc. (Medford, OR) |
| Illinois Cancer Specialists (Cancer Care & Hematology Specialists of Chicagoland PC) |
| Kansas City Cancer Center, LLC |
| Mahoning Valley Hematology-Oncology Associates, Inc. (The Hope Center for Cancer Care) |
| Maryland Oncology Hematology, PA |
| Medical Oncology Hematology Consultants, PA |
| Midwest Oncology Group, PLLC |
| Minnesota Oncology Hematology, PA |
| Missouri Cancer Associates, LLP |
| Murrell, Westgate & Bryer, Inc. |
| New York Oncology Hematology, PC |
| Northwest Cancer Specialists, PC (Compass Oncology) |
| Ocala Oncology Center, PL |
| Oncology & Hematology Associates, Inc. |
| Oncology and Hematology Associates of South Carolina, LLC |
| Oncology and Hematology Associates of Southwest Virginia, Inc. (Blue Ridge Cancer Care) |
| Oncology and Radiation Associates, PA |
| Oncology Associates of Oregon, PC (Willamette Valley Cancer Center) |
| Oncology Hematology Care, Inc |
| Oncology Pharmacy Services, Inc. (Texas Oncology) |
| Radiotherapy Clinics of Georgia, LLC |

| |
|---|
| Regional Cancer Care, PA |
| Rocky Mountain Cancer Center, LLP |
| Shenandoah Oncology PC |
| South Florida Oncology & Hematology Consultants |
| Southern Cancer Center |
| St. Louis Urological Surgeons, Inc. (ARCH Cancer Care) |
| Texas Oncology, P.A. |
| Vantage Radiation Oncology Associates, LLC |
| Venango Oncology Hematology Associates, PC |
| Virginia Cancer Specialists, PC (Fairfax-Northern Virginia Hematology-Oncology, PC) |
| Virginia Oncology Associates, PC |
| Woodlands Medical Specialists, PA |

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

## WHO IS AN INSURED AMENDATORY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| McKesson Corporation | 043 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XOO | G27610390 003 | 07/01/2017  to  07/01/2018 | 07/01/2017 |

| Issued By (Name of Insurance Company) |
|---|
| ACE Property and Casualty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

The policy is amended as follows:

1.  Paragraphs A. 2. and B. 5.,. of Section II. WHO IS AN INSURED are deleted and replaced by the following:

A. 2.   Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management, at the inception date of this policy is an "insured", providing such subsidiary or organization was made known to us prior to or at the inception date of this policy;

B. 5.   Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as an "insured", subject to the following:

a.  If at the time of acquisition, inception of, control or formation, (a) the annual gross revenues of the organization newly acquired, controlled or formed by you do not exceed $1,000,000,000 and (b) the operations of any organization newly acquired, controlled or formed by you are not materially different from your operations prior to such acquisition, formation or merger, then coverage under this endorsement shall apply automatically from the date of acquisition, inception of, control or formation, with no additional premium charge.

b.  If, at the time of acquisition, inception of control or formation (a) the annual gross revenues of the organization newly acquired, controlled or formed by you exceeds $1,000,000,000 or (b) the operations of any organization newly acquired, controlled or formed by you are materially different from your operations prior to such acquisition, formation or merger, then coverage under this policy applies only until the 120th day after you acquire, take control of, or form the organization, or the end of the "policy period", whichever is earlier.

c.  For any organization covered by paragraph b. above, coverage will expire on the 120th day after you acquire, take control of, or form the organization, or the end of the "policy period", whichever is earlier, unless, within the 120 day period, you request us to include such organization as an "insured", and we agree to do so.

d.  We may, at our option, make an additional premium charge for any organization that you acquire, take control of, or form during the "policy period", when that organization is not automatically covered in 5.a. above.

e.  Coverage does not apply to any liability arising out of an "occurrence" first taking place before you acquire, take control of, or form any organization covered by this endorsement.

f.  If you are a limited liability company or limited liability partnership that was created subsequent to the inception date of this policy as a result of internal restructuring or realignment, you are an "insured" provided that:



    1.  The newly created limited liability company or limited liability partnership comprises operations which are not materially different from operations which were part of the "insured" prior to the date of such creation; and

    2.  The newly created limited liability company or limited liability partnership continues to operate in a similar fashion as the "insured" prior to the date of such creation.

2.  Section II.  WHO IS AN INSURED is amended to include the following:

It is agreed that all Joint Ventures, Partnerships, and/or Limited Liability Companies in which an "insured" has an ownership interest are insureds under this policy.  The coverage under our policy shall be limited to the "insured's" interest in such joint venture or the amount of insurance such "insured" is contractually obligated to provide.  Notwithstanding the foregoing, it is also agreed the "retained limit" shall not be reduced by the percentage of the "insured" interest in said Joint Venture.

The insurance provided by this endorsement for any joint venture is excess over any valid and collectible insurance that has been purchased in the name of such joint venture.  Such "other insurance" shall erode any "retained limit" under this policy.

If upon final adjudication of a claim or suit by a court of law, the "insured" is assessed a greater share of the damages arising out of the joint venture than its percentage interest in the joint venture, our limits of insurance under this policy shall be based upon the actual share of damages assessed.

For the purpose of this endorsement, joint venture means leveraged lease agreement, partnership, joint venture, limited liability company, and any other organization or entity in which the Named Insured shares an interest and/or management control with another party in interest.

Any partnership, co-venture, joint venture, limited liability company or limited liability partnership that is an "insured" by virtue of this endorsement shall not be subject to the last unmarked paragraph of Section II. WHO IS AN INSURED, which reads: "*Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.*"

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

**Authorized Representative**

© 2013