NATHAN E. SHAFROTH (Bar No. 232505)
COVINGTON & BURLING LLP
Salesforce Tower, 415 Mission Street
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
nshafroth@cov.com

ANNA ENGH (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, D.C.  20001
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
aengh@cov.com

DAVID LUTTINGER (*pro hac vice forthcoming*)
CLÉA P.M. LIQUARD (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
The New York Times Building, 620 Eighth Avenue
New York, New York 10018
Telephone: + 1 (212) 841-1000
Facsimile: + 1 (212) 841-1010
dluttinger@cov.com; cliquard@cov.com

*Attorneys for Defendant Insured McKesson Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MCKESSON CORPORATION; | Civil Case No.: 8:20-cv-02268<br><br>(Removal from the Superior Court of California for the County of Orange—Central Justice Center, Case No. 30-2020-01168115-CU-IC-CXC)<br><br>**DEFENDANT MCKESSON CORPORATION'S NOTICE OF** |

and

AIU INSURANCE COMPANY; ARCH
REINSURANCE LIMITED; ARGO RE
LIMITED; ASPEN INSURANCE UK
LIMITED; CANOPIUS UNDERWRITING
BERMUDA LIMITED; ENDURANCE
SPECIALTY INSURANCE LIMITED;
GOLDEN STATE INSURANCE
COMPANY LIMITED; GREAT LAKES
INSURANCE COMPANY SE;
IRONSHORE SPECIALTY INSURANCE
COMPANY; LEXINGTON INSURANCE
COMPANY; LIBERTY SPECIAL
MARKETS AGENCY; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509B0WCN1500017; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509BOWCN1600451; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509BOWCN1700408; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. 509/DL554610; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509BOWCN1600450; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON, SUBSCRIBING TO POLICY
NO. B0509BOWCN1700419; MARKEL
AMERICAN INSURANCE COMPANY;
MUNICH REINSURANCE AMERICA,
INC.; NATIONAL FIRE & MARINE
INSURANCE COMPANY; NATIONAL
UNION FIRE INSURANCE COMPANY;

**MOTION AND MOTION TO
TRANSFER VENUE**

[Hearing date to be determined upon the
assignment of a judge or magistrate to
this action]

Date: To Be Determined
Time: To Be Determined
Before: To Be Determined
Courtroom: To Be Determined

NORTH AMERICAN CAPACITY
INSURANCE COMPANY; SWISS RE
INTERNATIONAL SE; XL INSURANCE
AMERICA, INC.; AND DOES 1-50,

Defendants.

# TABLE OF CONTENTS

I.   BACKGROUND ........................................................................................... 3

    A.   McKesson, a Corporation Previously Headquartered in
         Northern California, Is Named as a Defendant in Opioid
         Litigation. ............................................................................... 3

    B.   McKesson Seeks Coverage Under ACE's Insurance Policies............. 4

    C.   AIG Insurers Bring a Declaratory Action Against McKesson in
         the Northern District of California. ...................................................... 4

    D.   ACE Subsequently Files a Substantially Identical Action
         Against McKesson in Orange County Superior Court........................ 5

II.  ARGUMENT.............................................................................................. 6

    A.   The Court Should Transfer this Action to the Northern District
         Under 28 U.S.C. § 1404(a) and Need Not Decide Any Remand
         Motion First. ......................................................................................... 7

    B.   This Action Could Have Been Brought in the Northern District
         of California in the First Instance........................................................ 8

    C.   Transfer Would Serve the Interest of Justice. ...................................... 9

         1.   The pendency of the First Filed Action weighs heavily in
              favor of transfer........................................................................ 10

         2.   The Northern District of California, where ACE's
              policies were issued, has more significant contacts with
              the causes of action and parties than this district.................... 13

         3.   ACE's choice of forum is not entitled to deference. .............. 15

III. CONCLUSION............................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
503 F.2d 384 (9th Cir. 1974) ................................................................. 14, 16

*AXIS Reins. Co. v. Northrop Grumman Corp.*,
2018 WL 3326670 (C.D. Cal. Mar. 27, 2018).........................................*passim*

*United States ex rel. Beck v. Hexcel Corp.*,
2005 WL 8173629 (S.D. Cal. Apr. 18, 2005) ............................................. 16

*Burns v. Gerber Prods. Co.*,
922 F. Supp. 2d 1168 (E.D. Wash. 2013).................................................. 17

*Carrera v. First Am. Home Buyers Prot. Co.*,
2012 WL 13012698 (C.D. Cal. Jan. 24, 2012)....................................... 12, 18

*Commodity Futures Trading Comm'n v. Savage*,
611 F.2d 270 (9th Cir. 1979) .................................................................... 12

*Cont'l Grain Co. v. The Barge FBL-585*,
364 U.S. 19 (1960).................................................................................. 18

*Core Litig. Tr. by & through Kravitz v. Apollo Glob. Mgmt., LLC*,
2017 WL 3045919 (C.D. Cal. Apr. 5, 2017) ............................................. 12

*DIRECTV, Inc. v. EQ Stuff, Inc.*,
207 F. Supp. 2d 1077 (C.D. Cal. 2002) .................................................... 17

*Efg Bank Ag, Cayman Branch V. Transamerica Life Ins. Co.*,
2017 WL 2926022 (C.D. Cal. July 6, 2017)............................................... 17

*Gerson v. Logan River Acad.*,
2020 WL 473134 (C.D. Cal. Jan. 29, 2020) .............................................. 19

*Hatch v. Reliance Ins. Co.*,
758 F.2d 409 (9th Cir. 1985) .................................................................... 13

*Hawkins v. Gerber Prods. Co.*,
924 F. Supp. 2d 1208 (S.D. Cal. 2013)........................................... 13, 15, 17

*Herman v. W. Union Co.*,
  2017 WL 5643145 (C.D. Cal. Mar. 30, 2017)............................................... 16

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ..................................................... 14, 18

*Liberty Ins. Underwriters, Inc. v. O & S Holdings*,
  LLC, 2018 WL 4027014 (C.D. Cal. Aug. 15, 2018)..................................... 19

*Madani v. Shell Oil Co.*,
  2008 WL 268986 (N.D. Cal. Jan. 30, 2008)............................................ 14

*Metz v. U.S. Life Ins. Co. in the City of N.Y.*,
  674 F. Supp. 2d 1141 (C.D. Cal. 2009) ........................................... 13, 20

*In re Nat'l Prescription Opiate Litig.*,
  290 F. Supp. 3d 1375, 1378-79 (J.P.M.L. 2017) ...................................... 8

*Pfeiffer v. Himax Techs., Inc.*,
  530 F. Supp. 2d 1121 (C.D. Cal. 2008) ........................................... 20, 21

*Pub. Emps' Ret. Sys. of Miss. v. Stanley*,
  605 F. Supp. 2d 1073 (C.D. Cal. 2009) ............................................... 12

*Schott v. Ivy Asset Mgmt. Corp.*,
  2010 WL 4117467 (N.D. Cal. Oct. 19, 2010) ...................................... 15, 16

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007)................................................................. 12

*Szegedy v. Keystone Food Prods., Inc.*,
  2009 WL 2767683 (C.D. Cal. Aug. 26, 2009) .......................................... 17

*Teknekron Software Sys, Inc v. Cornell Univ.*,
  1993 WL 215024 (N.D. Cal. June 14, 1993)............................................ 18

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)................................................................. 12

**Statutes**

28 U.S.C. § 1404(a) ..................................................... 6, 7, 12, 18

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on the next available hearing date on the motion calendar of the judge or magistrate who is assigned to this action, or as soon thereafter as counsel may be heard by the above-titled court, located at the United States District Court for the Central District of California, located at 411 West 4th Street, Santa Ana, CA, 92701, Defendant McKesson Corporation will and hereby does move the Court for an Order transferring this action to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a). The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Nathan E. Shafroth, the pleadings and papers on file herein, and any evidence and argument presented to the Court in the event there is a hearing.

Defendant McKesson Corporation respectfully requests an Order transferring this case to the United States District Court for the Northern District of California.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to 28 U.S.C. § 1404(a), Defendant McKesson Corporation ("McKesson") respectfully moves the Court for an Order transferring this action to the United States District Court for the Northern District of California.  The interest of justice warrants the immediate transfer of this action to the Northern District of California, which is the appropriate forum to decide the merits of this action and of any motion to remand that Plaintiff ACE Property and Casualty Insurance Company ("ACE") may file.

Crucially, this coverage dispute implicates virtually identical issues of fact and law, and the same parties, as those involved in an earlier-filed declaratory action brought by AIU Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA (together, "AIG") against McKesson that is currently pending in the Northern District of California (the "First Filed Action").  Like AIG before it, ACE seeks declaratory relief regarding the scope of defense and indemnity insurance coverage for opioid-related litigation, including a bellwether case currently pending in the Northern District of California.  And as ACE itself alleges in paragraph 12 of its Complaint, the insurance policies that are the subject of its declaratory relief action were issued to McKesson in San Francisco.  Accordingly, transferring this case so that it may be consolidated with the First Filed Action would promote judicial economy, avoid inconsistent rulings, and conserve the parties' resources.

By contrast, none of the parties reside in the Central District of California, which has no connection to ACE's claims.  ACE's choice of forum is entitled to no deference, and any interest it might allege in litigating in this district is easily outweighed by the "determinative" importance of judicial efficiency in the transfer analysis.  *AXIS Reins. Co. v. Northrop Grumman Corp.*, 2018 WL 3326670, at *5 (C.D. Cal. Mar. 27, 2018).  This Court should not reward ACE's transparent forum-shopping by allowing this lawsuit to proceed here, separately and in parallel with

First Filed Action.  This case could and should have originally been brought in the Northern District of California; for the interest of justice, it should be transferred there now.

## I.      BACKGROUND

### A.      McKesson, a Corporation Previously Headquartered in Northern California, Is Named as a Defendant in Opioid Litigation.

McKesson is a wholesale distributor of pharmaceuticals and medical supplies that is organized under the laws of Delaware and currently headquartered in Irving, Texas.  Prior to relocating its corporate headquarters to Texas on April 1, 2019, and in each year that ACE issued policies to it, McKesson had its principal place of business in San Francisco, California.

Beginning in 2016, McKesson was named as a defendant in numerous lawsuits filed by states, municipalities, Indian tribes, private hospitals, individuals and other plaintiffs alleging that McKesson and other defendants had facilitated the improper diversion of prescription opioids.  On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed MDL No. 2804 in the Northern District of Ohio to coordinate the resolution of hundreds of opioid-related actions then pending in federal court.  *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378-79 (J.P.M.L. 2017).

In February 2020, the JPML remanded two cases from the MDL in the Northern District of Ohio to other federal district courts to permit multiple bellwether trials to be conducted in parallel.  *See* JPML Dkt. No. 7033.  One of these cases was *City and County of San Francisco v. Purdue Pharma L.P., et al.*, No. 3:18-cv-07591-CRB (N.D. Cal.), which was assigned to Judge Charles Breyer in the Northern District of California.  McKesson is a defendant in the pending *City of San Francisco* litigation.

**B.     McKesson Seeks Coverage Under ACE's Insurance Policies.**

McKesson has sought coverage from ACE for defense and indemnity costs incurred by McKesson in connection with the nationwide opioid litigation under policies issued by ACE from 2009 until 2017.  Each of those policies was issued to McKesson when it was headquartered in San Francisco, and was brokered by the San Francisco office of Marsh Risk & Insurance Services.  Compl. ¶¶ 12, 19 & Ex. A – I (ACE policies listing San Francisco address for Marsh Risk & Insurance Services).

McKesson has also notified other insurers of their obligations to provide coverage for defense and indemnity costs under insurance policies covering some or all of the periods at issue in opioid litigation pending nationwide.

**C.     AIG Insurers Bring a Declaratory Action Against McKesson in the Northern District of California.**

On October 23, 2020, AIG brought the First Filed Action in the Northern District of California, seeking a declaration that it was not obligated to defend or indemnify McKesson in opioid litigation under umbrella liability insurance policies issued between 1999 and 2009.  *See* AIG Compl. (Attached as **Exhibit 1** to the Declaration of Nathan E. Shafroth ("Shafroth Decl.")).  Specifically, AIG alleges that no coverage is owed under the AIG policies because:  McKesson allegedly failed to demonstrate that it had exhausted the self-insured retention(s); the underlying opioid cases purportedly allege non-accidental conduct that does not stem from an "occurrence" under California law; plaintiffs in the opioid litigation purportedly do not seek recovery for damages arising out of "Bodily Injury"; McKesson allegedly cannot show that the underlying plaintiffs' asserted damages were caused by bodily injuries during the covered policy periods; and McKesson allegedly had knowledge of the bodily injuries prior to each policy period, or otherwise expected or intended the bodily injury to occur.  *Id*. ¶ 48.

On November 6, 2020, McKesson filed an Answer and counterclaims against AIG in the First Filed Action, and a third party complaint against ACE. ACE was served with the third party complaint on November 11, 2020 and entered an appearance in the First Filed Action in the Northern District of California on November 25, 2020.

### D. ACE Subsequently Files a Substantially Identical Action Against McKesson in Orange County Superior Court.

On November 2, 2020, ten days after AIG filed the First Filed Action, ACE brought the instant action against McKesson in the Superior Court for the State of California, County of Orange, seeking substantially the same declaratory relief as AIG seeks in the First Filed Action—that McKesson is not entitled to coverage for defense and indemnity for opioid litigation under the ACE umbrella policies.

In a sham attempt to defeat diversity jurisdiction and manufacture a lawsuit with the appearance of being "comprehensive," ACE also named 21 other purported insurers of McKesson as defendants, including the two AIG insurers, and purported to seek a declaration of the rights and obligations of the other purported insurers to provide coverage for opioid litigation under policies that were allegedly issued to McKesson.

That gambit fails, however, because ACE fraudulently joined insurance companies and/or managing general agents that did *not* issue relevant insurance policies to McKesson. Moreover, nearly all of the insurers named by ACE that in fact issued relevant coverage to McKesson issued policies with clauses mandating arbitration in London, UK. Indeed, in a footnote to its complaint, ACE implicitly acknowledged the meritless basis of joining these other purported insurers by *inviting* them to request voluntary dismissal of the action against them. *See* Compl. ¶ 16 n. 1. It is not surprising that within three weeks of filings its lawsuit, ACE had already filed Requests for Dismissal of *13* of the insurer defendants. *See* Dkt. No.

1-5 at pp. 9-60.  Others of the few remaining insurer parties are likely to also request dismissal.

As grounds for its requested relief against McKesson, ACE leveled allegations that were virtually identical to those presented in the complaint AIG filed in the First Filed Action.  *Compare* Compl. ¶ 9 *with* Shafroth Decl., Ex. 1 ¶ 48.  And although ACE makes a cursory allegation of McKesson's connection to Orange County, *see* Compl. ¶ 12, ACE does not dispute that the policies underlying its claims were delivered to McKesson in San Francisco, where McKesson was headquartered when the policies were issued.  *Id*. ¶ 12.  Nor does ACE allege that any other party has any particular connection to Orange County or this district.

On December 2, 2020, McKesson removed this action to this Court.

## II.   ARGUMENT

The interest of justice weighs decisively in favor of immediately transferring this action to the Northern District of California, where any remand motion that ACE might file can be decided, and where the case should then proceed.  This action involves nearly identical claims, factual allegations, and requested relief as the First Filed Action that is currently pending in the Northern District of California. Consequently, transfer of this action would allow both lawsuits to be consolidated, would promote judicial economy, conserve the parties' and courts' resources, and prevent inconsistent judgments.  Transfer is further warranted because the Northern District has far more extensive contacts with the causes of action and the parties in this case, a fact that ACE itself appears to concede by failing to identify any relevant connection between its claims and this district.  Finally, because none of the parties reside in this district, the operative facts of this action did not occur in this district, and this district has no unique interest in this coverage dispute or the underlying opioid litigation, ACE's choice of forum is not entitled to deference.

**A.      The Court Should Transfer this Action to the Northern District Under 28 U.S.C. § 1404(a) and Need Not Decide Any Remand Motion First.**

Section 1404(a) of Title 28 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under Section 1404(a), "transfer is available 'upon a lesser showing of inconvenience' than that required for a [f]orum non conveniens dismissal." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (citation omitted).   Courts thus have broad discretion to order transfer "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."   *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted).

Exercising this discretion, a district court may properly rule on a transfer motion without deciding the merits of subject matter jurisdiction.   *Pub. Emps' Ret. Sys. of Miss. v. Stanley,* 605 F. Supp. 2d 1073, 1075 (C.D. Cal. 2009) (noting that "jurisdiction and removal under the related-to provisions need not be addressed before transfer").   This is because "[a] decision to transfer for inconvenient forum is not a decision on the merits and therefore does not require a finding of jurisdiction." *Id*. (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp*., 549 U.S. 422, 431 (2007)).   Accordingly, courts routinely grant motions to transfer while deferring consideration of a pending remand motion to permit the transferee court to rule on the merits of jurisdiction.   *Core Litig. Tr. by & through Kravitz v. Apollo Glob. Mgmt., LLC*, 2017 WL 3045919, at *3 (C.D. Cal. Apr. 5, 2017) (transferring action to another federal district court and deferring ruling on motion to remand); *Carrera v. First Am. Home Buyers Prot. Co.*, 2012 WL 13012698, at *6 (C.D. Cal. Jan. 24, 2012) (same); *Stanley*, 605 F. Supp. 2d at 1075 (same).

In deciding whether to grant a motion to transfer, courts take a two-step approach.  *Metz v. U.S. Life Ins. Co. in the City of N.Y.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).  First, the moving party "must establish that the matter 'might have been brought' in the district to which transfer is sought."  *Id.*  Second, courts will consider whether transfer would serve "the convenience of the parties"; "the convenience of the witnesses"; and "the interest of justice."  *Id.*; *accord Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

Both requirements for transfer are easily satisfied.  There is no legitimate dispute that this action could have been brought in the Northern District of California in the first instance.  The interest of justice, which is of overriding importance here, requires this case to be transferred so that it can be formally related to and coordinated with the First Filed Action.

**B.**     **This Action Could Have Been Brought in the Northern District of California in the First Instance.**

ACE could have filed this declaratory action in the Northern District of California because McKesson still maintains a presence in and around San Francisco, where it was headquartered for many years up until 2019.  *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1213 (S.D. Cal. 2013) (holding that "venue is proper for corporations in any district in which a court has personal jurisdiction over that corporation").  Furthermore, ACE and the other defendant insurers issued insurance policies to McKesson at the company's then-headquarters in San Francisco, within the Northern District of California.  *AXIS Reins. Co.*, 2018 WL 3326670, at *4 (venue was proper in the Central District of California, because plaintiff insurer's claim for declaratory relief "concern[ed] [the insurer's] 2006 policy, which was issued . . . while [the insured's] principal place of business was located in the Central District of California").  Accordingly, the first requirement for transfer is satisfied.

### C.     Transfer Would Serve the Interest of Justice.

"The question of which forum will better serve the interest of justice is of *predominant* importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." *Madani v. Shell Oil Co.*, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) (emphasis added); *AXIS Reins. Co.*, 2018 WL 3326670, at *4 ("The interest of justice factor may be determinative even if the convenience of the parties and witnesses might call for a different result.").

Critical here, "the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974).  In addition, courts consider a number of factors in determining whether the interest of justice will be served by transfer, including "the contacts relating to the plaintiff's cause of action in the chosen forum"; "the respective parties' contacts with the forum"; and the "the plaintiff's choice of forum," among others.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).[1]  Each of these factors favors transfer in this case.

_____

[1] Specifically, courts consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones*, 211 F.3d at 498-99.  In addition, courts consider "the presence of a forum selection clause" and "the relevant public policy of the forum state" in the transfer analysis.  *Id*.  Because the parties do not dispute that California law controls in this coverage dispute, or that venue is proper in California, this Court should look to the other factors in deciding whether transfer would serve the interest of justice.

DEFENDANT MCKESSON CORPORATION'S NOTICE OF MOTION
AND MOTION TO TRANSFER VENUE / Case No: 8:20-cv-02268

### 1. The pendency of the First Filed Action weighs heavily in favor of transfer.

"The presence of related litigation in another venue weighs heavily in favor of transfer." *Schott v. Ivy Asset Mgmt. Corp.*, 2010 WL 4117467, at *5 (N.D. Cal. Oct. 19, 2010); *accord Hawkins*, 924 F. Supp. 2d at 1208. Indeed, "the judicial economy factor 'is the *most important* factor of all'" to the interest of justice, because "district courts have a strong interest in consolidating cases and avoiding multiplicity of litigation resulting from a single transaction or event." *AXIS Reins. Co.*, 2018 WL 3326670, at *5 (emphasis added). Here, the interest of justice compels transfer so that this case can be consolidated with the First Filed Action, which will promote judicial efficiency, avoid inconsistent rulings, and conserve the parties' resources.

Significantly, ACE's factual allegations, legal claims, and requested relief against McKesson are all but indistinguishable from those brought by AIG in the First Filed Action. In both cases, umbrella insurers seek a declaration that they "ha[ve] no duty to defend or indemnify McKesson in any of the Opioid Lawsuits" under occurrence-based umbrella liability policies that cover damages arising out of bodily injuries sustained over the policy period. Compl. ¶ 10; *see also* Shafroth Decl., Ex. 1 ¶ 9. Both ACE and AIG contend that the underlying opioid cases allege non-accidental conduct that did not stem from an "occurrence" under California law; that plaintiffs in the opioid litigation do not seek recovery for damages arising out of "bodily injury"; that McKesson allegedly cannot show that the underlying plaintiffs' damages were caused by bodily injuries during the relevant policy periods; and that McKesson allegedly knew, expected, or intended the bodily injury to occur. *Compare* Compl. ¶¶ 9, 22-25, *with* Shafroth Decl., Ex. 1  ¶¶ 45-48. And both ACE and AIG's overlapping claims rest on "the same general nucleus of factual allegations." *Schott*, 2010 WL 4117467, at *5. For instance, each complaint cites

the same publicly available DEA and DOJ documents to allege that McKesson was warned (and thus purportedly knew) of the risks associated with selling prescription opioids to online pharmacies in 2006. *Compare* Compl. ¶¶ 30-31, *with* Shafroth Decl., Ex. 1 ¶¶ 21-22. Because "the factual allegations asserted in [these two] actions are identical and there is significant overlap between the causes of action alleged, the feasibility of consolidation . . . weighs in favor of the cases being brought in the same district." *Herman v. W. Union Co.*, 2017 WL 5643145, at *2 (C.D. Cal. Mar. 30, 2017).

Moreover, the fact that both lawsuits are at a similarly early stage of litigation means that consolidation in the Northern District of California would yield greater efficiencies in terms of the judicial and party resources conserved. *Id.* (consolidation of related cases was sufficiently feasible to warrant transfer where three actions were filed within one month period, involving the same causes of action based on similar factual allegations). Even if there is any doubt as to whether the two cases will ultimately be consolidated, the *possibility* that this action could be consolidated with the First Filed Action counsels in favor of transfer. *See A. J. Indus., Inc.*, 503 F.2d at 389.

Similarly, transfer would promote judicial economy by "allow[ing] for significant coordination of discovery and other litigation activity" to "reduce costs, in time and money, for the parties, witnesses, and the court." *Schott*, 2010 WL 4117467, at *6 (existence of similar class action pending in Southern District of New York weighed heavily in favor of transfer, despite the "great inconvenience" that plaintiff would endure). Due to the "extensive common legal and factual issues" in this lawsuit and the First Filed Action, "presentation of the overlapping claims to one judge will . . . result in judicial economy in furtherance of the interests of justice." *United States ex rel. Beck v. Hexcel Corp.*, 2005 WL 8173629, at *4 (S.D. Cal. Apr. 18, 2005). For instance, both this lawsuit and the First Filed Action dispute

whether the underlying plaintiffs in opioid lawsuits seek damages because of bodily injury that occurred during the relevant policy periods. The questions of law and fact common to the two lawsuits easily outweigh whatever minor differences—if any—there may between AIG and ACE's legal theories, or the parties named in the cases. *See Szegedy v. Keystone Food Prods., Inc.*, 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009) ("interests of judicial economy weigh[ed] strongly in favor of transfer" to permit court to rule on motion to dismiss claims "involv[ing] some different legal theories compared to the instant action" but "similar, if not identical, facts and issues").

In the same vein, transfer would avoid burdening McKesson and AIG, both of which are defendants in ACE's lawsuit, with the costs of simultaneously litigating substantively identical actions in two separate forums. Where, as here, a related case is currently proceeding in the transferee forum, "the Court cannot simply weigh the benefits and costs of [one forum] versus [another];" rather, it must decide "whether this suit should be consolidated" in the transferee forum, or "whether it should proceed simultaneously . . . and separately" in this district. *Hawkins*, 924 F. Supp. 2d at 1213. Because the First Filed Action will proceed regardless of whether this case is transferred, denying this motion could substantially increase, if not double the costs of litigation for both McKesson and AIG by subjecting them to duplicative litigation in two forums. *See Burns v. Gerber Prods. Co.*, 922 F. Supp. 2d 1168, 1172–73 (E.D. Wash. 2013). Conversely, transfer to the Northern District of California would conserve party resources without unduly "shift[ing] the costs of litigation" to ACE or other insurers, as none of them appear to maintain any substantial presence in the Central District of California. *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1084 (C.D. Cal. 2002).

Finally, "trying both actions in the same district before the same judge will better serve justice by limiting the possibility of inconsistent rulings." *Efg Bank Ag,*

DEFENDANT MCKESSON CORPORATION'S NOTICE OF MOTION
AND MOTION TO TRANSFER VENUE / Case No: 8:20-cv-02268

*Cayman Branch V. Transamerica Life Ins. Co.*, 2017 WL 2926022, at *4 (C.D. Cal. July 6, 2017).  The need to consolidate these cases is particularly acute given that ACE has also sought a declaration construing the scope of coverage for opioid litigation under policies that *AIG* issued to McKesson, Compl. ¶ 54, creating the possibility that two federal courts will issue dueling interpretations of the same exact contracts.  Transferring this case to the Northern District of California will prevent conflicting rulings on discovery and dispositive motions regarding the nearly identical factual allegations and causes of action shared by the two coverage actions. "Transfer is appropriate based on these facts alone."  *Carrera*, 2012 WL 13012698, at *5-6 (judicial economy weighed "heavily" in favor of transfer where there was "substantial overlap" in the factual and legal issues presented in two putative class actions, the "gravamen" of which were that "unfair business practices deprived [their] customers of the benefits of their home warranty contracts").  To permit both coverage actions to proceed simultaneously and in parallel in both the Northern and Central Districts of California would "lead[] to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960).

> **2.  The Northern District of California, where ACE's policies were issued, has more significant contacts with the causes of action and parties than this district.**

"[T]he contacts relating to the plaintiff's cause of action in the chosen forum" and "the respective parties' contacts with the forum" both favor transfer to the Northern District of California.  *Jones*, 211 F.3d at 498.

First, the Northern District of California is the "center of gravity" for ACE's causes of action.  *Teknekron Software Sys, Inc v. Cornell Univ.*, 1993 WL 215024, at *7 (N.D. Cal. June 14, 1993).  As ACE does not deny, *all* of the insurance policies under which ACE seeks a coverage determination were issued to McKesson at its

then-headquarters in San Francisco, by insurance brokers operating out of San Francisco. *See* Compl. ¶ 12; *supra* Part I.B. Because "the disputed factual and legal issues in this suit, as alleged in the Complaint, primarily concern the scope of coverage under the Polic[ies]," which were "negotiated and delivered" in the Northern District of California, "the parties' contacts with [the Northern District] are thus more significant in relation to this suit than contacts with [this district]." *Liberty Ins. Underwriters, Inc. v. O & S Holdings*, LLC, 2018 WL 4027014, at *2 (C.D. Cal. Aug. 15, 2018) (transfer to Florida federal district court was warranted in coverage action where policy was executed in Florida, even though underlying action was filed in California); *see also AXIS Reins. Co.*, 2018 WL 3326670, at *7 (fact that "[the insured's] insurance policies were issued in California while [its] principal place of business was in California" weighed against transfer to venue outside of California).

Second, by contrast, neither ACE nor any of the other insurers that remain party to this suit, including AIG, is incorporated in or has its principal place of business in California, much less this district. Compl. ¶¶ 14-16. And although ACE and the other insurers sell insurance throughout the state of California, *id.* ¶¶ 11, 15-16, ACE does not identify any particular contacts with Orange County or the Central District of California that would warrant denying the transfer motion. ACE's generalized allegation that McKesson has "significant operations" in Orange County, Compl. ¶ 2, is based on nothing other than the self-evident fact that McKesson "derives economic benefit from activities in California," and should be assigned little weight. *Gerson v. Logan River Acad.*, 2020 WL 473134, at *3 (C.D. Cal. Jan. 29, 2020) (plaintiff's generalized allegation that Utah-based private academy "advertises in California through the internet, brochures, pamphlets and other printed materials about its facility," and "derives economic benefit from activities in California" showed only a "limited" connection with California).

### 3.   ACE's choice of forum is not entitled to deference.

While a plaintiff's chosen forum is usually entitled to some weight, "[d]eference to the plaintiff's choice of venue is [] diminished if the moving party establishes," among other things, that (i) "the operative facts have not occurred within the forum;" (ii) "the forum has no particular interest in the parties or subject matter;" (iii) "the forum is not the primary residence of either the plaintiff or defendant;" or (iv) "the subject matter of the litigation is not substantially connected to the forum." *Metz*, 674 F. Supp. 2d at 1146.  Each of these factors weighs against ACE's chosen forum, and in favor of transfer to the Northern District of California.

First, "the operative facts of this action did not *primarily* occur in [this] district." *Pfeiffer v. Himax Techs., Inc.*, 530 F. Supp. 2d 1121, 1124 (C.D. Cal. 2008) (emphasis added).  Given that the crux of this dispute concerns the interpretation of insurance policies that were issued in San Francisco, Compl. ¶ 12, the operative facts giving rise to this action occurred in the Northern District of California, and not this district.  *See AXIS Reins. Co.*, 2018 WL 3326670, at *4 (finding that "a substantial part of the events giving rise to AXIS's claims occurred in this district," because "AXIS's allegation that Northrop's insurance policies were improperly eroded concerns AXIS's 2006 policy, which was issued in California").

Second, and relatedly, the subject matter of this litigation is not substantially connected to this district.  While ACE vaguely suggests that some of the "allegedly unlawful conduct for which [McKesson] seeks insurance coverage allegedly occurred in Orange County," Compl. ¶ 21, ACE fails to identify any particular or compelling factual connection to this district and fails to explain why *this* district is the proper venue when McKesson "ha[s] significant operations *throughout the state of California . . . ." Id*. ¶ 2 (emphasis added).  Importantly, McKesson is not a defendant in *any* underlying opioid litigation in Orange County.  By contrast, and as ACE is aware, McKesson is a defendant in *City and County of San Francisco v.*

*Purdue Pharma et al.*, No. 3:18-CV-07591-CRB (N.D. Cal.), which is currently being litigated in the Northern District of California.  Nor does ACE explain how any ties McKesson has to Orange County would be sufficient to outweigh the connection between this case and San Francisco, where McKesson was previously headquartered and where the disputed insurance policies were issued.

Third, as ACE does not dispute, none of the parties reside in the Central District of California.  Compl. ¶¶ 15-16.  By contrast, McKesson's headquarters were located in the Northern District of California during the period when the policies were negotiated, executed, and delivered.

Fourth, ACE identifies no interest that this district has in this litigation. Although this district may have a general interest in the resolution of the underlying opioid litigation for which McKesson seeks coverage, that interest is not unique to the Central District of California because McKesson's pharmaceutical distributions did not "primarily" occur here.  *Pfeiffer*, 530 F. Supp. 2d at 1124 ("Although the district certainly has an interest in enforcement of the securities law, the operative facts of this action did not primarily occur in the district.").

Far from bearing any connection to the causes of action or the parties in this lawsuit, ACE's choice of forum instead reflects a transparent attempt to avoid litigating in the Northern District of California, where the First Filed Action was brought, and deserves no deference.  Moreover, to the extent that ACE can allege any interest in litigating in this district, it cannot outweigh the "determinative" significance of the interest of justice, of which judicial economy "is the most important factor of all . . . ."  *AXIS Reins. Co.*, 2018 WL 3326670, at *4-5.  Here, the preservation of judicial economy and the broader interest of justice require transfer so that this case can be consolidated with the First Filed Action in the Northern District of California.

## III.  CONCLUSION

For these reasons, McKesson respectfully requests that this action be transferred to the United States District Court for the Northern District of California.

Dated:  December 2, 2020      **COVINGTON & BURLING, LLP**

By: */s/ Nathan E. Shafroth*
Nathan E. Shafroth
COVINGTON & BURLING LLP
Salesforce Tower, 415 Mission Street
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
nshafroth@cov.com

Anna Engh (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, D.C.  20001
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
aengh@cov.com

David Luttinger (*pro hac vice forthcoming*)
Cléa P.M. Liquard (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
The New York Times Building, 620 Eighth Avenue
New York, New York 10018
Telephone: + 1 (212) 841-1000
Facsimile: + 1 (212) 841-1010
dluttinger@cov.com; cliquard@cov.com

*Attorneys for Defendant Insured McKesson Corporation*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2020, I electronically filed the foregoing Notice of Motion and Motion to Transfer Venue with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record at their e-mail addresses on file with the Court.


By: */s/ Nathan E. Shafroth*_____
Nathan E. Shafroth

---

DEFENDANT MCKESSON CORPORATION'S NOTICE OF MOTION
AND MOTION TO TRANSFER VENUE / Case No: 8:20-cv-02268