# EXHIBIT 1

1  GIBSON, DUNN & CRUTCHER LLP
   RICHARD J. DOREN, SBN 124666
2    rdoren@gibsondunn.com
   MATTHEW A. HOFFMAN, SBN 227351
3    mhoffman@gibsondunn.com
   333 South Grand Avenue
4  Los Angeles, CA 90071-3197
   Telephone:  213.229.7000
5  Facsimile: 213.229.7520

6  WILLKIE FARR & GALLAGHER LLP
   MITCHELL J. AUSLANDER (*pro hac vice* forthcoming)
7    mauslander@willkie.com
   CHRISTOPHER J. ST. JEANOS (*pro hac vice* forthcoming)
8    cstjeanos@willkie.com
   787 Seventh Avenue
9  New York, NY 10019
   Telephone:  212.728.8000
10 Facsimile:  212.728.8100

11 *Attorneys for Plaintiffs AIU Insurance Company*
   *and National Union Fire Insurance Company of*
12 *Pittsburgh, PA*

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15
   AIU INSURANCE COMPANY and          Case No. _____
16 NATIONAL UNION FIRE INSURANCE
   COMPANY OF PITTSBURGH, PA,         **COMPLAINT FOR DECLARATORY**
17                                    **JUDGMENT; DEMAND FOR JURY**
                  Plaintiffs,         **TRIAL**
18
                  v.
19
   MCKESSON CORPORATION f/k/a
20 MCKESSON HBOC, INC.

21                Defendant.

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY JUDGMENT

1.      By this Complaint for Declaratory Judgment ("Complaint"), Plaintiffs AIU Insurance Company ("AIU") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union" and, with AIU, "AIG") seek a declaration that they are not obligated to defend or indemnify Defendant McKesson Corporation f/k/a McKesson HBOC, Inc. ("McKesson") against lawsuits that seek to hold McKesson liable for its role in the opioids epidemic (the "Opioids Lawsuits") under insurance policies issued by AIG to McKesson.

2.      McKesson is a wholesale pharmaceutical distributor formerly headquartered in San Francisco, California.  AIG issued commercial umbrella liability insurance policies to McKesson effective from July 1, 1999 to July 1, 2009 (collectively, the "Policies," which are attached hereto as Exhibit 1).

3.      This coverage dispute results from McKesson's alleged misconduct in the distribution of opioids, which has subjected McKesson to Drug Enforcement Administration ("DEA") and Department of Justice ("DOJ") investigations, fines, and settlements and thousands of Opioids Lawsuits brought by cities, states, counties, municipalities, putative classes, and individuals.  Many, but not all, of the Opioids Lawsuits have been consolidated in a multi-district litigation styled *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio 2017) (the "MDL").

4.      Public sources reveal that McKesson has settled certain Opioids Lawsuits for tens of millions of dollars.  It also has been publicly reported that McKesson is negotiating a large settlement of Opioids Lawsuits which, if finalized, could result in a multi-billion dollar payment by McKesson but not resolve all opioids-related litigation.

5.      McKesson purportedly provided notice of the Opioids Lawsuits to primary, excess, and umbrella carriers that issued it policies from 1996 through 2018, including AIG.

6.      Despite AIG's requests, McKesson has not demonstrated that it has satisfied the self-insured retentions or limits underlying the Policies.  Nor has McKesson provided information AIG has repeatedly requested to enable it to assess completely coverage for the Opioids Lawsuits.

7.      Nevertheless, McKesson has demanded that AIG pay its fees and the costs of defending the Opioids Lawsuits and indemnify McKesson for the settlements it has agreed to pay or may reach in the future.

8.     AIG has denied McKesson's claims for coverage for several reasons, including, but not limited to: (1) the Policies have not been triggered because McKesson has not established that it exhausted or satisfied the self-insured retentions or limits underlying the Policies, which is a condition to coverage; (2) notwithstanding repeated requests, McKesson failed to provide AIG with sufficient information about the Opioids Lawsuits for AIG to evaluate fully coverage therefor; (3) the Opioids Lawsuits do not stem from an accident, and therefore, under California law, there was no Occurrence; (4) the plaintiffs in the Opioids Lawsuits do not seek recovery for damages because of bodily injury; (5) McKesson cannot show that plaintiffs' damages in the Opioids Lawsuits were caused by bodily injuries that occurred during the respective policy periods; (6) McKesson had knowledge of bodily injury prior to the policy periods; and (7) McKesson expected or intended bodily injury to occur.

9.     Accordingly, AIG seeks a declaration that it has no duty to defend or indemnify McKesson in any of the Opioids Lawsuits.

10.    There is presently an actual, ripe, and justiciable controversy regarding coverage under the Policies.  If a declaratory judgment is not granted, AIG may suffer real and immediate harm.

## THE PARTIES

11.    Plaintiff AIU is a New York corporation with its principal place of business in New York, New York.  AIU is an insurance company licensed by the State of California to sell insurance policies in California.  AIU sold insurance policies to McKesson or its predecessor that covered risks in California and elsewhere.

12.    Plaintiff National Union is a Pennsylvania corporation with its principal place of business in New York, New York.  National Union is an insurance company licensed by the State of California to sell insurance policies in California.  National Union sold insurance policies to McKesson or its predecessor that covered risks in California and elsewhere.

13.    On information and belief, Defendant McKesson is a Delaware corporation with its principal place of business in Las Colinas, Texas.

**JURISDICTION AND VENUE**

14.    This Court has personal jurisdiction over McKesson pursuant to California Code of Civil Procedure § 410.10 because McKesson maintains offices, does business, has committed acts or omissions, and/or has caused effects in California with respect to one or more causes of action arising from these acts, omissions, and/or effects.  The Policies were delivered to McKesson at its then principal place of business in California.

15.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy of the object of the litigation, the amount McKesson has demanded under the Policies, is more than $75,000.

16.    Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim, including the entering into and delivery of the Policies, took place in this District, and McKesson resides in this District.

**FACTUAL ALLEGATIONS**

17.    McKesson is one of the nation's largest wholesale distributors of prescription opioids. Even as the devastating impact of the opioids epidemic became apparent, McKesson is alleged to have distributed opioids in quantities that demonstrated to McKesson that diversion was certain to occur.  McKesson also allegedly developed and maintained diversion prevention policies that were purposefully ineffective.

18.    McKesson's alleged misconduct in the distribution of opioids has subjected McKesson to DEA and DOJ investigations, fines, and settlements.  In addition, since 2016, more than 3,000 state and local governments in the United States have filed lawsuits against McKesson.

19.    The Opioids Lawsuits seek to hold McKesson liable for intentionally disregarding its obligations imposed by applicable law and settlements with the government to prevent and report diversion of opioids.

The DEA Investigations

20.    In 2005, the DEA Office of Diversion Control launched its "Distributor Initiative," an effort to remind drug wholesalers of their legal responsibilities given the severity of the country's prescription drug diversion problem.

21.     In 2005 and 2006, DEA officials met with and warned McKesson about excessive sales of its products to pharmacies filling illegal online prescriptions.  In addition, in 2006 and 2007, as part of its efforts to combat this problem, the DEA sent three separate letters reminding McKesson of its obligations to ensure pharmacies and dispensers receiving their products were aboveboard and to report and refrain from shipping suspicious orders.

22.     According to the DEA and DOJ, McKesson flouted these warnings and continued to distribute opioids without regard for its obligations to monitor, report, and refrain from shipping suspicious orders.  The DOJ alleged that, from 2005-2007, McKesson violated the Controlled Substances Act  ("CSA") by failing "to report to DEA suspicious sales of controlled substance pharmaceuticals it made to pharmacies that filled orders from illegal 'internet pharmacies' that sell drugs online to customers who do not have a legal prescription" and "fail[ing] to report suspicious orders of controlled substances that it received from other pharmacies and clinics even though the orders were unusually large."

23.     In 2008, McKesson reached a settlement with the DEA and DOJ arising from, among other issues, McKesson's claimed failure to report suspicious orders to the DEA.  McKesson agreed to "maintain a compliance program designed to detect and prevent diversion of controlled substances as required under the CSA and applicable DEA regulations" and to "pay civil penalties … in the amount of $13,250,000.00 in settlement of claims or potential claims made by the United States of America."

24.     In 2014, the DEA and DOJ informed McKesson that they were once again investigating McKesson's alleged failure to monitor, report, and/or refrain from shipping suspicious orders.  The ensuing three-year investigation ultimately encompassed twelve McKesson distribution centers in eleven states.  In 2017, McKesson reached a settlement with the DOJ and DEA to resolve all claims revealed by the investigation (the "2017 Settlement").  McKesson admitted that, "at various times [from January 1, 2009 through January 6, 2017], it did not identify or report to DEA certain orders placed by certain pharmacies which should have been detected by McKesson as suspicious based on the guidance contained in the DEA letters about requirements set forth in [the CSA]."  McKesson agreed to pay a $150 million civil penalty, "suspend sales of controlled

COMPLAINT FOR DECLARATORY JUDGMENT

Gibson, Dunn & Crutcher LLP

substances from distribution centers in Colorado, Ohio, Michigan, and Florida for multiple years," and adhere to "new and enhanced compliance obligations [imposed] on McKesson's distribution systems."

25.     Upon information and belief, McKesson implemented a new program to detect and prevent diversion of controlled substances as required under the CSA and applicable DEA regulations in response to or in connection with the 2017 Settlement.

The West Virginia Action

26.     On January 21, 2016, the State of West Virginia filed an amended complaint against McKesson in an action styled *West Virginia v. McKesson Corp.*, Civ. No. 16-C-1 (Cir. Ct. W. Va. 2016) (the "West Virginia Action").

27.     The amended complaint in the West Virginia Action contained a myriad of allegations regarding misconduct by McKesson, including claims that McKesson shipped vast quantities of opioids into West Virginia including the shipment of over 5.6 million doses of Hydrocodone and Oxycodone to a community with an adult population of around 21,000.  Plaintiffs in the West Virginia Action alleged that West Virginia "expended substantial amounts of money annually that it would not have otherwise expended on numerous services through various agencies, including, but not limited to:  increased law enforcement, prosecutors and prosecutions, courts and court personnel, public defender services, corrections and correctional facilities, probation and parole, public welfare and service agencies, healthcare and medical services and drug abuse education."

28.     The West Virginia plaintiffs sought various forms of relief, including a permanent injunction against McKesson enjoining it from further violations of state and federal laws regarding controlled substances, damages, including punitive damages, and attorney's fees and costs.

29.     McKesson notified AIG of the West Virginia Action on February 8, 2016 (the "Initial Notice Letter").  The Initial Notice Letter referenced three National Union policies in effect from July 1, 2006 to July 1, 2009 (the "2006-2009 Policies") but did not identify any earlier policies.

30.     On March 24, 2016, AIG sent McKesson its coverage position letter.  The letter asked McKesson to identify any other policies under which it asserted a right to coverage.  McKesson did not respond to AIG's inquiry.

COMPLAINT FOR DECLARATORY JUDGMENT

Gibson, Dunn &
Crutcher LLP

31.     On March 25, 2016, McKesson demanded that AIG consent to and fund a settlement of the West Virginia Action.  In response, AIG advised McKesson that it lacked sufficient information to consent to McKesson's request because of McKesson's failure to furnish important information it was required to provide under the terms of the 2006-2009 Policies and McKesson's failure to respond adequately to information requests from AIG contained in prior correspondence.

32.     On May 2, 2019, McKesson settled the West Virginia Action for $37 million.

The MDL

33.     Thousands of the Opioids Lawsuits brought by cities, states, counties, and municipalities against manufacturers, distributors, and retailers of opioids, filed beginning in 2016, have been consolidated for pre-trial proceedings in an MDL in the Northern District of Ohio.

34.     Among those cases are *County of Summit, Ohio et al. v. Purdue Pharma et al.*, No. 18-op-45090 (N.D. Ohio 2018) (the "Summit County Action") and *County of Cuyahoga, Ohio et al. v. Purdue Pharma et al.*, No. 17-op-45004 (N.D. Ohio 2017) (the "Cuyahoga County Action").  The Summit County and Cuyahoga County Actions were designated as "Track One" bellwether lawsuits in the MDL and were scheduled for trial in October 2019.

35.     The Track One complaints, like many others, accused McKesson of misconduct, including, but not limited to, refusing to identify, investigate, prevent, and report suspicious orders of opioids, deliberately failing to abide by the CSA and other applicable laws even after agreeing to do so in its settlement with the DEA, failing to conduct due diligence of its customers, fraudulently increasing quotas that governed the manufacture and distribution of opioids, and ignoring clear evidence of diversion.

36.     The complaints sought abatement, injunctive relief, equitable relief such as disgorgement or restitution, damages, including punitive damages, and attorney's fees.

37.     McKesson provided AIG with notice of the Track One complaints and thousands of additional Opioids Lawsuits under the 2006-2009 Policies.  On October 19, 2018, AIG sent McKesson an updated coverage position letter.  The letter reserved AIG's rights to deny coverage on a number of grounds under the 2006-2009 Policies.  Once again, AIG inquired if McKesson sought coverage under any other policies, and once again McKesson did not identify any such policies.

38.     On August 6, 2019, McKesson asserted for the first time that it was seeking coverage not only under the 2006-2009 Policies, but under all umbrella policies issued by AIG from 1999-2009, including the 1999-2001 AIU policies and the 2001-2006 National Union policies.

39.     On October 21, 2019, at the start of the Track One trial, McKesson, along with two other distributors, settled the Summit County and Cuyahoga County Actions for a total of $215 million.

40.     McKesson requested that AIG consent to its settlement of the Summit County and Cuyahoga County Actions.  AIG informed McKesson that it did not have sufficient information to consent because McKesson had not supplied AIG with sufficient information to evaluate the settlement and failed to respond adequately to AIG's requests for information.

Potential Global Settlement

41.     According to press reports, McKesson and other distributors have attempted to negotiate a settlement of the Opioids Lawsuits which, if finalized, would require McKesson to pay billions of dollars.

42.     McKesson requested that AIG consent to a non-final global settlement with certain cities, states, counties, and municipalities.  AIG informed McKesson that it did not have sufficient information to consent, including which Opioids Lawsuits currently pending against McKesson would be resolved as part of a "global" settlement.

43.     McKesson has not responded adequately to AIG's repeated requests for information, including, but not limited to, requests in letters and emails dated March 24, 2016, June 13, 2018, October 19, 2018, November 7, 2018, February 22, 2019, March 27, 2019, May 28, 2019, July 12, 2019, September 6, 2019, September 9, 2019, November 7, 2019, April 24, 2020, August 27, 2020, and September 23, 2020, thereby violating the terms of the Policies and impeding AIG's ability to assess the Opioids Lawsuits and coverage therefor.

The AIU and National Union Policies

44.     On information and belief, McKesson appears to seek coverage under the 1999-2000 and 2000-2001 AIU policies (Policy Nos. 3463988 and 7401021, respectively) and the 2001-2002, 2002-2003, 2003-2004, 2004-2005, 2005-2006, 2006-2007, 2007-2008, and 2008-2009 National

Union policies (Policy Nos. 8713546, 2131289, 2860255, 2978146, 4484776, 4485490, 9835034, 5443284, respectively).

45.     Subject to their other terms and conditions, the Policies generally afford coverage for damages because of Bodily Injury caused by an Occurrence, for amounts in excess of the Retained Limit.

46.     The Policies do not afford coverage for Bodily Injury of which the insured had knowledge prior to the applicable policy period.

47.     Bodily Injury that was "expected or intended from the standpoint of the Insured" is excluded under the Policies.

48.     Coverage is precluded under the Policies because, among other reasons:

- McKesson has failed to demonstrate that it has exhausted the self-insured retentions and limits of its underlying policies, which is a condition to coverage;

- McKesson has failed to provide AIG with sufficient information to allow AIG to evaluate fully McKesson's request for coverage for its defense costs, the West Virginia Action, and the Opioids Lawsuits, in violation of the terms of the Policies;

- The Opioids Lawsuits allege non-accidental conduct and, therefore, do not stem from an Occurrence under California law;

- The plaintiffs in the Opioids Lawsuits do not seek recovery for damages because of Bodily Injury;

- McKesson cannot show that plaintiffs' damages in the Opioids Lawsuits were caused by Bodily Injuries that occurred during the respective policy periods;

- McKesson had knowledge of Bodily Injury prior to each applicable policy period; and

- McKesson expected or intended Bodily Injury to occur.

## COUNT I:

### For A Declaration That AIU And National Union Are Not Obligated To Defend McKesson Under The Policies

49.     AIG reasserts and incorporates herein each of the allegations set forth in paragraphs 1-48 above.

Gibson, Dunn & Crutcher LLP

50.     McKesson has asserted that it is entitled to a defense of the West Virginia and Opioids Lawsuits under the Policies.  AIG disputes any such right to a defense.  This dispute constitutes an actual, ripe, and justiciable controversy between the parties.

51.     AIG seeks a declaration that under the terms, conditions, and exclusions of the Policies, as well as applicable law, AIG has no duty to defend McKesson with regard to the West Virginia Action or Opioids Lawsuits.

52.     On Count I of the Complaint, AIG is entitled to a judgment declaring that the Policies do not obligate AIU or National Union to defend McKesson.

## COUNT II:

### For A Declaration That AIU And National Union Are Not

### Obligated To Indemnify McKesson Under The Policies

53.     AIG reasserts and incorporates herein each of the allegations set forth in paragraphs 1-52 above.

54.     McKesson has asserted that it is entitled to indemnity in connection with the West Virginia Action and Opioids Lawsuits under the Policies.  AIG disputes any such right to indemnity.  This dispute constitutes an actual, ripe and justiciable controversy between the parties.

55.     AIG seeks a declaration that under the terms, conditions, and exclusions of the Policies, as well as applicable law, McKesson is not entitled to indemnity for the West Virginia Action or the Opioids Lawsuits.

56.     On Count II of the Complaint, AIG is entitled to a judgment declaring that the Policies do not obligate AIU or National Union to indemnify McKesson.

## PRAYER FOR RELIEF

WHEREFORE, AIG respectfully prays judgment against Defendant McKesson as follows:

(1)     Declaring that the Policies do not obligate AIU or National Union to defend McKesson in the Opioids Lawsuits;

(2)     Declaring that the Policies do not obligate AIU or National Union to indemnify McKesson for liability or settlements in the West Virginia and Opioids Lawsuits; and

Gibson, Dunn & Crutcher LLP

COMPLAINT FOR DECLARATORY JUDGMENT

1    (4)    Granting to AIU and National Union such other and further relief as this Court may

2    deem to be just and appropriate under the circumstances.

3    **JURY DEMAND**

4    Plaintiffs demand a trial by jury on all triable issues.

5

6    Dated: October 23, 2020

/s/ *Richard J. Doren*

7    Richard J. Doren
     Matthew A. Hoffman

8    GIBSON, DUNN & CRUTCHER LLP
     333 South Grand Avenue

9    Los Angeles, CA 90071
     Tel:  (213) 229-7038

10   Fax: (213) 229-6038

11   Mitchell J. Auslander (*pro hac vice* forthcoming)
     Christopher J. St. Jeanos (*pro hac vice*

12   forthcoming)
     WILLKIE FARR & GALLAGHER LLP

13   787 Seventh Avenue
     New York, NY 10019

14   Tel:  (212) 728-8000
     Fax:  (212) 728-8100

15

16   *Attorneys for Plaintiffs AIU Insurance Company
     and National Union Fire Insurance Company of*

17   *Pittsburgh, PA*

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

COMPLAINT FOR DECLARATORY JUDGMENT

# EXHIBIT 1

**Date:** 07/16/99                                      **Policy Number:** 346-39-88

**Underwriter Name:**        JAMES F. SPIEGEL

**Underwriter Region:**       NEW YORK

**Underwriter Branch:**       NEW YORK

**Underwriter Telephone:**    (212) 770-7000   **EXT:** 2689

COPY

EPS TRACKING-ID:   0034639883799410

FormMaker Software, Inc. *Archive Copy*

# COMMERCIAL UMBRELLA DECLARATIONS

## AIU Insurance Company
**70 Pine Street**
**New York, NY 10270**
**212-770-7000**

**POLICY NUMBER:** BE    346-39-88.           **RENEWAL OF:** BE      NEW

**PRODUCER NAME:** MARSH & MCLENNAN GLOBAL BROKIN

**ADDRESS:**      1166 AVE OF AMERICAS
                  41ST. FLR.
                  NEW YORK            NY   10036

**ITEM 1.**     **NAMED INSURED:** MCKESSON CORPORATION (DELAWARE

            **ADDRESS:**       1 POST ST STE 3275
                          SAN FRANCISCO        CA 94104-0000

**ITEM 2.**     **POLICY PERIOD: FROM:** July 01, 1999        **TO:** July 01, 2000        AT 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.**     **LIMITS OF INSURANCE:**

            The Limits of Insurance, subject to all the terms of this policy, are:

| | | |
|---|---|---|
| A. | $20,000,000 | Each Occurrence |
| B. | $20,000,000 | General Aggregate (in accordance with Section III, Limits of Insurance) |
| C. | $20,000,000 | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D. | | Self Insured Retention |

**ITEM 4.**     **PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE/ PER | ADVANCE PREMIUM | MINIMUM PREMIUM |
|---|---|---|---|
| N/A | FLAT | $250,000 | $250,000 |

**ITEM 5.**     **ENDORSEMENTS ATTACHED:**   <u>SEE ATTACHED SCHEDULE</u>

**COUNTERSIGNED** _ _ _ _ _ _ _           **BY** _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                   **DATE**                         **AUTHORIZED REPRESENTATIVE**

60555 (6/94)

*Archive Copy*

# AIU Insurance Company

# Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word "**Insured**" means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## Insuring Agreements

### I. Coverage

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the **Insured,** then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

### II. Defense

**A.** We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

    **1.** The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

    **2.** Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured.**

**B.** When we assume the defense of any claim or suit:

    **1.** We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

    **2.** We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured:**

        **a.** premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

        **b.** premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish any such bond;

        **c.** all costs taxed against the **Insured** in any claim or **suit** we defend;

60556 (6/94)      *Archive Copy*      **(1)**

    **d.**   pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

    **e.**   all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

    **f.**   the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance

**C.**   In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## III.  Limits of Insurance

**A.**   The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

   **1.**   **Insureds;**

   **2.**   Claims made or **suits** brought; or

   **3.**   Persons or organizations making claims or bringing **suits**.

**B.**   The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

   **1.**   Damages included in the **Products-Completed Operations Hazard;** and

   **2.**   Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.**   The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

**D.**   Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence.**

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

   **1.**   In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

   **2.**   In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for pupuses of determining the Limits of Insurance.

**E.**     Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

**1.**     The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

**2.**     The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured;**

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

**IV.     Definitions**

**A.**     **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

**1.**     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**2.**     Oral or written publication of material that violates a person's right of privacy;

**3.**      Misappropriation of advertising ideas or style of doing business; or

**4.**      Infringement of copyright, title or slogan.

**B.**     **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But **auto** does not include **mobile equipment.**

**C.**     **Bodily Injury** means bodily injury, sickness, disability or disease.  **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

**D.**     **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

**1.**     It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

**2.**     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**1.**     The repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

**2.**     Your fulfilling the terms of the contract or agreement.

**E.**     **Insured** means each of the following, to the extent set forth:

**1.**     The **Named Insured**, meaning:

**a.**     any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

**b.**     any organization newly acquired, controlled or formed by you during the policy period but only:

*Archive Copy*                    **(3)**

1)  as respects **Occurrences** taking place after you acquire, take control or form such organization;

2)  if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

3)  if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2.  If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3.  If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

4.  Any person or organization, other than the **Named Insured,** included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5.  Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6.  Any person, other than one of your employees, or organization while acting as your real estate manager.

7.  Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

a.  liability arising out of operations conducted by you or on your behalf; or

b.  facilities owned or used by you.

8.  Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

F.  **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G.  **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  Vehicles maintained for use solely on or next to premises you own or rent;

*Archive Copy*          (4)

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos:**

   a. equipment designed primarily for:

      1) snow removal;

      2) road maintenance, but not construction or resurfacing; or

      3) street cleaning;

   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**H. Occurrence** means:

1. As respects **Bodily Injury** or **Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured.** All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence;**

2. As respects **Personal Injury,** an offense arising out of your business that results in **Personal Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3. As respects **Advertising Injury,** an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

**I. Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

*Archive Copy* (5)

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

**J. 1. Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

    **a.** products that are still in your physical possession; or

    **b.** work that has not yet been completed or abandoned.

**2. Your Work** will be deemed completed at the earliest of the following times:

    **a.** When all of the work called for in your contract has been completed.

    **b.** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **c.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**3.** This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

    **a.** the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    **b.** the existence of tools, uninstalled equipment or abandoned or unused materials.

**K. Property Damage** means:

    **1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **2.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

**L. Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

    **1.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    **2.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**M. Your Product** means:

    **1.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **a.** you;

        **b.** others trading under your name; or

        **c.** a person or organization whose business or assets you have acquired; and

*Archive Copy*    (6)

2.      Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product;** and

2.      The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**N.     Your Work** means:

1.      Work or operations performed by you or on your behalf; and

2.      Materials, parts or equipment furnished in connection with such work or operations.

**O.     Your Work** includes:

1.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work;** and

2.      The providing of or failure to provide warnings or instructions.

## V.     Exclusions

This insurance does not apply to:

**A.**     Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

**B.**     Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

**C.**     Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

**D.**     **Property Damage** to :

1.      Property you own, rent, occupy or use;

2.      Personal property in the care, custody or control of the **Insured**.

**E.**     **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.      A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work;** or

2.      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**F.**     **Property Damage** to **Your Product** arising out of it or any part of it.

**G.**     **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    1.    **Your Product;**

    2.    **Your Work;** or

    3.    **Impaired Property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.    Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

    1.    This exclusion shall not apply; and

    2.    The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.    **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    1.    This exclusion shall not apply; and

    2.    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.    **Personal Injury** or **Advertising Injury:**

    1.    Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

    2.    Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    3.    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

    4.    For which the **Insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.    **Advertising Injury** arising out of:

    1.    Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    2.    The failure of goods, products or services to conform with advertised quality or performance;

    3.    The wrong description of the price of goods, products or services; or

    4.    An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

60556 (6/94)                    *Archive Copy*                    (8)

**M.**  **1.**  **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

**2.**  Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

**3.**  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion M. shall not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

**a.**  Heat, smoke or fumes from a hostile fire;

**b.**  The upset, overturn or collision of a motor vehicle; or

**c.**  The **Products-Completed Operations Hazard;**

if insurance for such **Bodily Injury, Property Damage** or **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such **Bodily Injury, Property Damage** or **Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

As used in this exclusion:

**a.**  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

**b.**  A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**N.**  **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**O.**  **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**.

However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

**P.**  **1.**  **Bodily Injury, Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

**2.**  Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

**3.**  Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

*Archive Copy*

**Q.**    **Bodily Injury** or **Personal Injury** to:

  **1.**    A person arising out of any:

    **a.**    Refusal to employ that person;

    **b.**    Termination of that person's employment; or

    **c.**    Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **2.**    The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

  This exclusion applies:

  **1.**    Whether the **Insured** may be liable as an employer or in any other capacity; and

  **2.**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**R.**    **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of or by reason of:

  **1.**    The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

  **2.**    Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

  **3.**    Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

**S.**    **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

  **1.**    Causing or contributing to the intoxication of any person;

  **2.**    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

  **3.**    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

  However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

  **1.**    This exclusion shall not apply; and

  **2.**    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

**T.**    **Bodily Injury** or **Property Damage:**

  **1. a.**    with respect to which the **Insured** is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

*Archive Copy*    **(10)**

1. **b.** resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

   **a.** the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

   **b.** the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

   **c.** the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3. As used in this exclusion:

   **a.** "hazardous properties" includes radioactive, toxic or explosive properties;

   **b.** "nuclear material" means source material, special nuclear material or by-product material;

   **c.** "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

   **d.** "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   **e.** "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   **f.** "nuclear facility" means:

   **1)** any nuclear reactor;

   **2)** any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

   **3)** any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   **4)** any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   **g)** "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h)    **Property Damage** includes all forms of radioactive contamination of property.

VI.  **Conditions**

A.    Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal.  If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

B.    Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

C.    Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

D.    Cancellation

1.    You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.    We may cancel this policy.  If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason , we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.    The policy period will end on the day and hour stated in the cancellation notice.

4.    If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5.    If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6.    Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you.  Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.    The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.    Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**E.**   Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy.  This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.**   Duties In The Event Of An **Occurrence,** Claim Or **Suit**

    **1.**   You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy.  To the extent possible, notice should include:

        **a.**   how, when and where the **Occurrence** took place;

        **b.**   the names and addresses of any injured persons and witnesses; and

        **c.**   the nature and location of any injury or damage arising out of the **Occurrence.**

    **2.**   If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

    **3.**   You and any other involved **Insured** must:

        **a.**   immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit;**

        **b.**   authorize us to obtain records and other information;

        **c.**   cooperate with us in the investigation, settlement or defense of the claim or **suit;** and

        **d.**   assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

    **4.**   No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G.**   Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time.  Our inspections are not safety inspections.  They relate only to the insurability of your premises and operations and the premiums to be charged.  We may give you reports on the conditions we find.  We may also recommend changes.  While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public.  We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

**H.**   Legal Actions Against Us

There will be no right of action against us under this insurance unless:

    **1.**   You have complied with all the terms of this policy; and

    **2.**   The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

**I.**   Maintenance of Underlying Insurance

During the period of this policy, you agree:

    **1.**   To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

*Archive Copy*

**2.** That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

**3.** That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

**4.** That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**J.** Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K.** Premium

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**L.** Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**M.** Separation of **Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

**1.** As if each **Named Insured** were the only **Named Insured**; and

**2.** Separately to each **Insured** against whom claim is made or **Suit** brought.

**N.** Subrogation

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

Any recoveries shall be applied as follows:

**1.** Any interests, including the **Insured**, that have paid an amount in excess of our payment under this policy will be reimbursed first;

*Archive Copy* (14)

**2.** We then will be reimbursed up to the amount we have paid; and

**3.** Lastly, any interests, including the **Insured,** over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the **Insured**, in the ratio of their respective recoveries as finally settled.

**O.** Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P.** When Loss Is Payable

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured.**

**In Witness Whereof**, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

SECRETARY                                    PRESIDENT

**AMERICAN INTERNATIONAL GROUP, INC.**
**70 PINE STREET**
**NEW YORK, N.Y. 10970**

**THOMAS R. TIZZIO**
**SENIOR VICE CHAIRMAN**

June 8, 1998

To Our Insureds:

I am writing to call your attention to a situation that has the potential to cause unprecedented dislocation to businesses in the United States and throughout the world. As many of you know, thousands, perhaps millions, of computers and devices with embedded microchips record only the last two digits of a year. As a result, they may not be able to recognize that January 1, 2000 (or subsequent dates) comes *after* December 31, 1999. As soon as dates in the Year 2000 become relevant to the operation of products or business transactions - a process that has already begun-computers and microchips containing the "millennium bug" may produce erroneous calculations or cease to function, causing problems that can range from the merely inconvenient to the potentially disastrous. Inventory and accounting systems will be affected; so will credit-card validation, electronic data interchange, automated banking reports, pension benefit payments, drug distribution systems for pharmacies and hospitals, and mechanical systems operating everything from office building environmental controls and elevator banks to telephone switches and oil refineries. The cost of fixing the problem in the United States alone has been estimated at more than $600 billion.

Whether the dislocation resulting from this "bug" will be crippling or merely extraordinarily expensive, we at AIG believe that any business that uses or is affected by computers -- in other words, every business in the country -- must respond immediately, proactively, and aggressively. Most Year 2000 problems *can* be averted, given sufficient foresight, resources, and will. Companies will be judged -- and, in some cases, will succeed or fail -- depending on how they address these issues.

At AIG, we have identified those of our systems that are subject to Year 2000 risk, and we are well on the way to ensuring that all of our systems will be Year 2000-compliant in time to prevent any significant disruption or dislocation in our business or in the services we provide to our insureds. We are also communicating with the third-party brokers, agents, and administrators with whom we deal to alert them to these issues and encourage them to take similar actions. Every process to address Year 2000 should include backup and contingency plans to ensure that any incidents that do occur have minimal impact on operations.

The principal purpose of this letter is to encourage you, in the strongest possible terms, to do what is necessary to ensure that you have the same degree of comfort about the operation of your business in the face of potential Year 2000 problems as we have about ours. The Year 2000 bug is, first and foremost, a business and technical problem that must be addressed on that basis. It cannot be too strongly emphasized that a company's most important response to the Year 2000 problem is to take all feasible steps to eliminate the problem on a *technical* basis--or, to the extent the problem cannot be eliminated, to minimize its impact. Resources must be assembled and managed; the board of directors should take an active and ongoing role in ensuring that management has identified, addressed, and resolved problems on a timely basis.

Y2K Letter
Y00001

*Archive Copy*

What, then, should your organization do?  There is obviously no single general solution to a problem that will have as many different manifestations as there are addressees of this letter, but a few common sense guideposts may be helpful:

- If you have not yet evaluated your Year 2000 exposure, do it now.  Assemble whatever resources are needed to get a handle on the scope of the problem at your organization *now*, so that remedial efforts can be started without further delay.  Most public companies will already have started this process in response to SEC disclosure requirements, but *everyone* should take a good, hard look at their compliance efforts to ensure that nothing has been overlooked.

- Set priorities.  What is critical and what merely important?  What can be fixed and what should be junked?

- Be practical.  Many "Year 2000 questionnaires" seem designed as much to transfer potential blame as to solve the problem.  If there is a truly crucial third party -- your payroll services vendor, for example, or the sole supplier of an indispensable raw material -- don't just send a questionnaire.  Instead, give serious consideration to direct testing and evaluation of the vendor or supplier's systems.  If there is a crippling Year 2000 problem, a later breach of warranty claim against the supplier's trustee in bankruptcy will not provide you a great deal of comfort.

- Test, test, and then test some more.  Expect and plan for the unexpected.

As I said at the outset of this letter, the potential for dislocation from Year 2000 problems is unprecedented.  But so is the level of knowledge concerning the problem and the technical ability to solve it.  I urge all of our insureds to address their Year 2000 issues promptly and aggressively.


Senior Vice Chairman
Thomas R. Tizzio

Y2KLetter
Y00001

**Archive Copy**

## SCHEDULE OF UNDERLYING INSURANCE

NAMED INSURED: **MCKESSON CORPORATION (DELAWARE**

POLICY NUMBER: **346-39-88**

ENDORSEMENT NO.:

EFFECTIVE DATE
OF ENDORSEMENT: **07/01/1999**

BY: **A I U INSURANCE COMPANY**

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | | LIMITS |
|---|---|---|---|
| COMMERCIAL GENERAL LIABILITY | **HARTFORD** **TBA** | | |
| | | $5,000,000 | EACH OCCURRENCE |
| | **July 01, 1999** **July 01, 2000** | $5,000,000 | PRODUCTS-COMPLETED OPERATIONS AGGREGATE |
| | | $5,000,000 | GENERAL AGGREGATE |
| | | | PERSONAL INJURY LIABILITY |
| | | X | PER LOCATION |
| | | | PER PROJECT |

| AUTOMOBILE LIABILITY | BODILY INJURY LIABILITY | |
|---|---|---|
| | | EACH PERSON |
| | | EACH OCCURRENCE |
| | PROPERTY DAMAGE LIABILITY | |
| | | EACH OCCURRENCE |
| | | OR |
| | | COMBINED SINGLE LIMIT FOR EACH OCCURRENCE |

| EMPLOYERS' LIABILITY | |
|---|---|
| | EACH ACCIDENT FOR BODILY INJURY BY ACCIDENT. |
| | EACH EMPLOYEE FOR BODILY INJURY BY DISEASE |
| | POLICY LIMIT FOR BODILY INJURY BY DISEASE |

| MISCELLANEOUS LIABILITY | |
|---|---|
| | EACH OCCURRENCE |
| | AGGREGATE |

AUTHORIZED REPRESENTATIVE

*Archive Copy*

57833 (6/93)

# NOTICE OF PREMIUM DUE

This premium is due and payable to the company 15 days from the date of this bill or 30 days from inception of the contract, whichever is later. Additional installments are due and payable on the indicated due date. If the payment is not received within the time stipulated this policy will be cancelled.

AIG A Member Company of
American International Companies

**FOR INSURANCE IN FAVOR OF :**

MCKESSON CORPORATION (DELAWARE
1 POST ST STE 3275
SAN FRANCISCO          CA   94104-0000

**ISSUING COMPANY:**

A I U   INSURANCE COMPANY

**PRODUCER :**

MARSH & MCLENNAN GLOBAL BROKIN
1166 AVE OF AMERICAS
NEW YORK              NY   10036

| PRODUCER NUMBER : | BILLING DATE : |
|---|---|
| 08211 | 07/02/99 |

| POLICY NUMBER | POLICY PERIOD | | COMM. RATE | PREMIUM DUE |
|---|---|---|---|---|
| BE    346-39-88 | FROM<br>07/01/99 | TO<br>07/01/00 | 0.00000 | $250,000 |
| **PAYMENT SCHEDULE:** | | | | |

PREPAID

| INSTALLMENT DATE | DUE & PAYABLE DATE | AMOUNT DUE |
|---|---|---|
| 07/01/99 | 07/31/99 | $250,000 |



**REMIT TO :**

AMERICAN INTERNATIONAL COMPANIES
P. O. BOX 10642
NEWARK, N.J. 07193-0642

*Archive Copy*

TOTAL PREMIUM:   $250,000

# COMMERCIAL UMBRELLA DECLARATIONS

## AIU Insurance Company

70 Pine Street
New York, NY 10270
212-770-7000

Policy Number:    BE 740-10-21        Renewal Of:  BE 346-30-88

Producer Name:    MARSH GLOBAL BROKING, INC.
Address:    1166 AVENUE OF THE AMERICAS
    NEW YORK, NEW YORK 10036

Item 1:    Named Insured:    **McKesson HBOC, Inc.**
    Address:    **One Post Street**
    **San Francisco, CA 94104-8300**

Item 2:    Policy Period:    From:    **JULY 01, 2000**    To:    **JULY 1, 2001**    AT
12:01 A.M. Standard Time At The Address Of The Named Insured Shown Above.

Item 3.    Limits Of Insurance:

The Limits Of Insurance, Subject To All The Terms Of This Policy, Are:

    A.    $20,000,000 Each Occurrence

    B.    $40,000,000 General Aggregate (in accordance with Section III, Limits Of Insurance)

    C.    $40,000,000 Products-Completed Operations Aggregate (in accordance with Section III Limits Of Insurance)

    D.    $ 0    Self Insured Retention

Item 4.    Premium Computation

| Estimated Exposure | Rate/ Per/ | Advance Premium | Minimum Premium |
|---|---|---|---|
| N/A | FLAT | $268,500 | $268,500 |

Item 5.    Endorsements Attached:    SEE ATTACHED SCHEDULE OF ENDORSEMENTS

Countersigned by:    _____    BY: _____
    Date        Authorized Representative

60558 (06/94)

**ISSUED TO:    MCKESSON HBOC, INC.**        **POLICY NO.: BE 740 10 21**

## SCHEDULE OF ENDORSEMENTS

SCHEDULE OF UNDERLYING INSURANCE

# 1.  NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT

# 2.  LOT OR BATCH

# 3.  DEFENSE INSIDE LIMIT ENDORSEMENT

# 4.  AMENDMENT OF CONDITIONS WHO IS AN INSURED

# 5.  ADDITIONAL INSURED – VOLUNTEER WORKERS

# 6.  FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT

# 7  NAMED INSURED ENDORSEMENT

# 8.  MEDICAL PROFESSIONAL LIABILITY EXCLUSION

# 9.  CALIFORNIA AMENDATORY

#10.  FOLLOW FORM DRUGGISTS LIABILITY

#11.  PROFESSIONAL LIABILITY EXCLUSION

#12.  AMENDED NOTICE OF CANCELLATION

ISSUED TO:  MCKESSON HBOC, INC.          POLICY NO.: BE 740 10 21

# SCHEDULE OF UNDERLYING INSURANCE

**TYPE OF COVERAGE**

**INSURER
POLICY NO.
POLICY DATE**

**LIMITS OF LIABILITY**

General Liability

Golden State Ins. Co. (Captive)
T/B/A
July 01, 2000 to July 1, 2001

$1,000,000   General Aggregate
$1,000,000   Each Occurrence
$1,000,000   Pers/Adv Injury Limit
$1,000,000   Prods/Comp Ops Agg
Deductible:  $200,000

Excess Liability

Golden State Ins. (Captive)
T/B/A
July 01,2000 to July 1, 2001

$4,000,000   Each Occurrence
$4,000,000   General Aggregate
Excess of $1,000,000 General Liability

Foreign Automobile
& General Liability

Vigilant Insurance (Chubb)
T/B/A
10/1 99- 00 & Renewal

General Liability
$2,000,000  . . . 0
$1,000,000 Pe . /Adv Inju. y Limit
$1,000,000 PD .o Rented/Occupied
Premises
$1,000,000 Prods-Comp Ops Agg
Automobile Liability
$1,000,000 BI & PD Limit

*(This policy is excess of local underlying policies where required.)*

U.S. Automobile
Liability

Old Republic Ins. Co.
T/B/A
7/01/00 - 01

$1,000,000 CSL

Canadian Automobile
Liability

Old Republic Ins. Co
T/B/A
7/1/00 – 01

$1,000,000 CSL

*(Please note that the U.S. & Canadian Automobile Liability programs are self-insured for $1,000,000 excess of primary $1,000,000. Umbrella attaches at $5,000,000.)*

Employer's Liability:

Old Republic Ins. Co.
T/B/A
7/1/00 – 01

$5,000,000 Each Accident
$5,000,000 Policy Limit
$5,000,000 Each Employee

**ISSUED TO:** MCKESSON HBOC, INC. **POLICY NO.: BE 740 10 21**

## SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF COVERAGE | INSURER POLICY NO. POLICY DATE | LIMITS OF LIABILITY |
|---|---|---|
| General Liability | Golden State Ins. Co. (Captive) T/B/A July 01, 2000 to July 1, 2001 | $1,000,000 General Aggregate<br>$1,000,000 Each Occurrence<br>$1,000,000 Pers/Adv Injury Limit<br>$1,000,000 Prods/Comp Ops Agg<br>Deductible: $200,000 |
| Excess Liability | Golden State Ins. (Captive) T/B/A July 01, 2000 to July 1, 2001 | $4,000,000 Each Occurrence<br>$4,000,000 General Aggregate<br>Excess of $1,000,000 General Liability |
| Foreign Automobile & General Liability | Vigilant Insurance (Chubb) T/B/A 10/1/99- 00 & Renewal | General Liability<br>$2,000,000 CSL<br>$1,000,000 Per./Adv Injury Limit<br>$1,000,000 PD to Rented/Occupied Premises<br>$1,000,000 Prods-Comp Ops Agg<br>Automobile Liability<br>$1,000,000 BI & PD Limit |

*(This policy is excess of local underlying policies where required.)*

| | | |
|---|---|---|
| U.S. Automobile Liability | Old Republic Ins. Co. T/B/A 7/01/00 - 01 | $1,000,000 CSL |
| Canadian Automobile Liability | Old Republic Ins. Co T/B/A 7/1/00 – 01 | $1,000,000 CSL |

*(Please note that the U.S. & Canadian Automobile Liability programs are self-insured for $4,000,000 excess of primary $1,000,000. Umbrella attaches at $5,000,000.)*

| | | |
|---|---|---|
| Employer's Liability: | Old Republic Ins. Co. T/B/A 7/1/00 – 01 | $5,000,000 Each Accident<br>$5,000,000 Policy Limit<br>$5,000,000 Each Employee |

Case 3:20-dc-00030-HEH Document 77-9 Filed 02/07/20 Page 9 Page 0 #:1094

ENDORSEMENT # 1

This endorsement, effective          JULY 01, 2010          forms a part of

Policy No.:    BE 740 10 21          issued to      MCKESSON HBOC, INC.

By:    AIU INSURANCE COMPANY

## NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT
### (Defense Expenses Inside S.I.R., Version 2)

Exclusion M of this policy is hereby deleted in its entirety and replaced by the following:

This insurance does not apply to:

1. Bodily Injury, Property Damage or Personal Injury arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2. Any loss, cost or expense arising out of any governmental direction or request that we, the Insured or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3. Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

However, this exclusion does not apply to Bodily Injury, Property Damage or Personal Injury arising out of:

1. Any discharge, dispersal, seepage, migration, release or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot and civil commotion, flood, earthquake, collision, or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage;

2. The Products - Completed Operations Hazard; or

3. Any discharge, dispersal, seepage, migration, release or escape of pollutants that meets all of the following conditions:

a.  It was accidental and neither expected nor intended by the **Named Insured.** This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury, Property Damage** or **Personal Injury** could occur; and

b.  It was demonstrable as having commenced on a specific date during the term of this policy; and

c.  Its commencement became known to the **Named Insured** within twenty (20) calendar days and was further reported to the Risk Management Department within a reasonable time frame; and

d.  Its commencement was reported in writing to us within eighty (80) calendar days of becoming known to the Risk Management Department; and

e.  Reasonable effort was expended by the **Named Insured** to terminate the situation as soon as conditions permitted.

However, nothing contained in this provision **3.** shall operate to provide any coverage with respect to:

a.  Any site or location principally used by the **Insured,** or by others or the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

b.  Any fines or penalties;

c.  Any clean up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion **c.** shall not serve to deny coverage for third party clean up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority;

d.  Acid rain;

e.  Clean up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said pollutants; or

f.  Water pollution caused by oil or its derivatives.

It is further agreed that solely as respects any coverage granted by this endorsement:

1.  The Self Insured Retention in Item **3. D.** of the Declarations is amended to $5,000,000.

2.  The Self Insured Retention shall include "Defense Expenses."

    "Defense Expenses" means a payment allocated to a specific loss, claim or suit for its investigation, settlement or defense, including but not limited to:

    a.  attorneys' fees and all other investigation, loss adjustment and litigation expenses; premiums on bonds to release attachments;

    b.  premiums on appeal bonds required by law to appeal any claim or suit;

d. costs taxed against the Insured in any claim or suit;

e. pre-judgment interest awarded against the Insured;

f. interest that accrues after entry of judgment;

3. In Section II, Defense, provision A. 2. is hereby deleted in its entirety; and

4. We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

It is further agreed that in the event of a disagreement as to the interpretation of this endorsement, the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item 1 of the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

## ENDORSEMENT # 2

This endorsement, effective      JULY 01, 2000      forms a part of

Policy No.: BE 740 10 21      Issued to    MCKESSON HBOC INC.

By:    AIU INSURANCE COMPANY

# LOT OR BATCH PROVISION

It is agreed that as respects the Products - Completed Operations Hazard, all Bodily Injury or Property Damage arising out of one lot or batch of products prepared or acquired by you shall be considered one Occurrence. Such Occurrence shall be subject to the Each Occurrence Limit of this policy shown in Item 3. of the Declarations and shall be deemed to occur when the Bodily Injury or Property Damage occurs for the first claim of that lot or batch.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

60562 (08 94)

# LOT OR BATCH PROVISION

It is agreed that as respects the **Products - Completed Operations Hazard**, all **Bodily Injury** or **Property Damage** arising out of one lot or batch of products prepared or acquired by you shall be considered one **Occurrence**. Such **Occurrence** shall be subject to the **Each Occurrence** Limit of this policy shown in Item 3. of the Declarations and shall be deemed to occur when the **Bodily Injury** or **Property Damage** occurs for the first claim of that lot or batch.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**

60362 (08 94)

ENDORSEMENT # 2

This endorsement, effective      JULY 01, 2000      forms a part of

Policy No.:   GL 740 10 21      Issued to:      MCKESSON HBOC INC.

By:    AIU INSURANCE COMPANY

## LOT OR BATCH PROVISION

It is agreed that as respects the Products - Completed Operations Hazard, all Bodily Injury or Property Damage arising out of one lot or batch of products prepared or acquired by you shall be considered one Occurrence. Such Occurrence shall be subject to the Each Occurrence Limit of this policy shown in Item 3. of the Declarations and shall be deemed to occur when the Bodily Injury or Property Damage occurs for the first claim of that lot or batch.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

60862 (08/94)

ENDORSEMENT # 2

This endorsement, effective     JULY 01, 2000     forms a part of

Policy No.:   BE 740 10 21      issued to    MCKESSON HBOC, INC.

By:   AIU INSURANCE COMPANY

## LOT OR BATCH PROVISION

It is agreed that as respects the Products - Completed Operations Hazard, all Bodily Injury or Property Damage arising out of one lot or batch of products prepared or acquired by you shall be considered one Occurrence. Such Occurrence shall be subject to the Each Occurrence Limit of this policy shown in Item 3. of the Declarations and shall be deemed to occur when the Bodily Injury or Property Damage occurs for the first claim of that lot or batch.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

60862 (08/94)

ENDORSEMENT # 3?

This endorsement effective       JULY 01 2009              forms a part of

Policy No.   BE 740 16 ?              Issued to    MCKESSON / BDG   NC

By:      . . . INSURANCE COMPANY

## DEFENSE IN LIMIT ENDORSEMENT

In Section II, Defense, the last paragraph in provision B is hereby deleted in its entirety and replaced with the following:

All expenses we incur in the defense of any suit or claim are included within our insurance.

Provision C of Section II, Defense, is hereby deleted in its entirety and replaced by the following:

C.      In all claims . . . cases except A above we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any Occurrence which, in our opinion, may create a liability on our part under the terms of this policy. If we exercise such right, any expenses we incur in the defense of any suit or claim are included within our Limits of Insurance.

All other terms and conditions of this policy shall remain unchanged.

_____

Authorized Representative

BE 516 (05-94)

ENDORSEMENT # :

This endorsement, effective    JULY 01, 2000     forms a part of

Policy No.:   BE 740 10 21        Issued to    MCKESSON HBOC, INC.

By:    AIU INSURANCE COMPANY

## AMENDMENT OF CONDITIONS ... HO IS AN INSURED

It is agreed that Section II, Who is an Insured, Item 3 is delet: d in its entirety and replaced by the following:

3.   a.   any organization you newly acquire or form, other than a partnership or joint
       venture, which is a legally incorporated entity of which you own a financial interest
       more than 50% of the voting stock, will qualify as a named insured.

       Coverage under this provision is afforded until the end of the "policy period" if the
       newly acquired entity or newly-formed organization meets all of the following criteria.
       Coverage under this provision is afforded only until the end of the 180th day after you
       acquire or form the organization or the end of the "policy period", whichever is earlier,
       if all of the following criteria are not met."

       (1)   The annual sales of such organization for the preceding year has not
           exceeded $ 00,000,000.

       (:)   The estimated net sales of such organization for the next twelve months do not
           exceed $100,000,000.

       (3)   the property and operations of such organizations are similar to those that are
           currently included for coverage under this policy; and

       (4)   the goods or products manufactured, sold, handled or distributed in the past,
           at present and in the future are similar to those currently included for coverage
           under this policy.

   b.   Any other organization coming under the named insured's control and of which it
       assumes active management, which is added to this policy by endorsement will
       be a named insured.

   c.   The provisions of a. and b. above do not apply to "bodily injury" or "property
       damage" that occurred before you acquired or formed or assumed active
       management of the organization.

d.    The provisions of a. and b. above do not apply to "personal injury" or "advertising injury" arising out of an "offense" committed before you acquired or formed or assumed active management of the organization.

All other terms and conditions of this policy remain unchanged.

_Authorized Representative_

ENDORSEMENT # 5

This endorsement, effective          JULY 01, 2000              forms a part of

                                                        issued to      MCKE~S~ ... ~ DOC ~ ~.
Policy No.:   8 2 740 10 21

By:        AIU INSURANCE COMPANY

# ADDITIONAL INSURED - VOLUNTEER WORKERS

Who is an insured (Section II) is amended to include as an Insured any person(s ) who are volunteer
worker(s) for you, but only while acting at the direction of, and within the scope of their duties for you.
However, no volunteer worker(s) are insured for:

1.    "Bodily Injury" or "Personal Injury"

      A)    To you, to your partners or members (if you are a partnership or joint venture), to your
            other volunteer worker(s), or to your "employees" arising out of and in the course of their
            duties for you;

      B)    To the spouse, child, parent, brother or sister of your volunteer worker(s) or your
            "employees" as a consequence of paragraph 1a. above;

      C)    For which there is any obligation to share damages because of the injury described in
            paragraph 1.a above; or

      D)    arising out of his or her providing or failing to provide professional health care services.

2.    "Property Damage" to property:

      A)    Owned, occupied, or used by;

      B)    Rented to, in the care, custody or control of, or over which physical control is being
            exercised for any purpose by you, and of your volunteer worker(s), your "employees" or, if
            you are a partnership or joint venture, any partner or member.

All other terms and conditions of this policy remain unchanged.

                                                            _____
                                                            Authorized Representative

## ENDORSEMENT # 6

This endorsement, effective JULY 01, 2000  forms a part of

Policy No.: BE 740 10 21   Issued to MCKESSON HBOC, INC.

By: AIU INSURANCE COMPANY

# FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT

This insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury that occurs outside of the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such damages is provided by a policy listed in the Schedule of Underlying Insurance:

1. This exclusion shall not apply; and

2. Except with respect to Limits of liability, retention's, deductibles, cancellation/non- renewal, duty to defend and premium, this insurance shall follow the terms, conditions, and exclusions of the policy (ies) listed in the Schedule of Underlying Insurance; and

3. The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance; and

All other terms and conditions of this policy remain  ge

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT # 7

This endorsement, effective     JULY 01, 2000       forms a part of

Policy No.:   BE 740 10 21       Issued to     MCKESSON HBOC, INC.

By:     AIU INSURANCE COMPANY

## NAMED INSURED ENDORSEMENT

It is agreed that Declarations Page Item 1., Named Insured will read as follows:

### Domestic/Foreign Corporations and their Subsidiaries

Beldere Corporation
Macfor International Finance Company
S.KU., Inc. (50%)*
MCK Acquisition Corp.
California Golden State Finance Company
McKesson Automated Healthcare, Inc.
CGSF Funding Corporation
McKesson Automated Prescription Systems, Inc.
City Properties, SA. (20%)*
APS Canada Inc.
Corporation of America*
A.PS International Ltd.
Crocker Plaza Company
SI/Baker, Inc. (50%)
Foremost de Venezuela, SA. (39.69%)*
McKesson BioServices Corporation
Foremost Iran Corporation*
Pharmaceutical Support Services, Inc.
Foremost Shir, Inc.*
McKesson Canada Inc.
Foremost Tehran, Inc.*
Media Health and Pharmaceutical Services Inc. (99.997%)
GM Holdings, Inc.
McKesson General Medical Corp.
Good Neighbor Pharmacy Ltd.*
F.D.Titus and Son Inc.
Media Health and Pharmaceutical Services Limited
General Medical Manufacturing Company
169912 Canada Inc.
Randolph Medical Inc.
1258741 Ontario Inc.

Rancare, Inc.
McKesson (Cayman Islands) Inc.
Randolph Home Health Care Inc.
NADRO, SA. de C.V. (22.67%)
Golden State Company, Ltd.*
McKesson Development Corp.
Golden State Insurance Company Limited
McKesson Finance Company of Canada
Golden State Milk Products Company*
Media Health and Pharmaceutical Services Inc. (.03%)
Goodman Manufacturing Company*
McKesson MedManagement, L.L.C.
HBO & Company
McKesson Property Company, Inc.
Access Population Care Management Systems of Texas, Inc
DC Land Company
DCAZ Land Company
Holisticare, L.L.C.
Foremost Homes Hawaii, Ltd.
HBO & Company (VI), Inc.
HF Land Company
First Data Health Systems (Ireland) Ltd.
McKesson Red Line HealthCare Corporation
HBOC Medical Ltd.
MediNet, Inc.
Health Enhancement International, Inc.
Red Line Medical Supply, Inc.
HBO & Company Canada Ltd.
The Buying Council of American Health Care Facilities, Inc
HBO & Company (UK) Limited.
Data-Med Computer Services Limited*
XVIII B Medi Mart, Inc.
HBO & Company (ST&SW), Ltd.
McKesson Trading Company*
HBOC Ventures, Inc.
McKesson Transportation Systems, Inc.
Hawk Medical Supply, Inc.
McKesson Water Products Company
Hawkeye Medical Supply, Inc.
Compania General de Aguas SA. de C.V. (51.18%)
Maine Surgical Supply Co.
Hygeia Bottled Water, Inc.***
Health Mart Systems, Inc.
MWPC Acquisition Corp.
Healthcare Delivery Systems, Inc.
Polar Water Company
Intercal, Inc. (15%)*
Ramona Bottling, Inc.
J. Knipper and Company, Inc.

Mohawk Liqueur Corporation[****]
KWS & P, Inc.
N.V. Medicopharma (10%)[**]
KWS & P / SFA, Inc.
Clinicians Database, L.L.C.

# Domestic/Foreign Corporations and their Subsidiaries

Patriot Acquisition Corp.
Penn-Chem Corporation[*]
Southeast Merger Corp.
Sunbelt Beverage Corporation (17%)
Very Important Products, Inc.[*]
West Wholesale Drug Co.
Zee Medical Canada, Inc.
Zee Medical Inc.
Road Seven. Inc.
Combined Enterprises Corporation
CookCo. Inc.
CPG Industries, Inc.
Maryland First Aid Co., Inc.
R-jet, Incorporated
South Pacific Medical Inc.

Inactive[*]
In bankruptcy[**]
In process of liquidation and dissolution in the State of Texas[***]
In process of dissolution[****]

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT # 8

This endorsement, effective      JULY 01, 2000          forms a part of

Policy No.:    BE 747 10 21              issued to     MCKESSON HBOC , INC.

by         AIU INSURANCE COMPANY

## MEDICAL PROFESSIONAL LIABILITY EXCLUSION

This insurance does not apply to Bodily Injury, Property Damage or Personal Injury arising out of the rendering of or failure to render, during the policy period, the following professional services:

(A)    Medical, surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith;

(B)    Furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

(C)    Handling of or performing postmortem examinations on human bodies; or

(D)    Service by any person as a member of a formal accreditation or similar professional board or committee of the Named Insured, or as a person charged with the duty of executing directives of any such board or committee.

It is also agreed that any Bodily Injury sustained by any patient or other person while seeking or being administered professional services shall not be covered under this policy except when such Bodily Injury occurs as a direct result of one or more of the following perils and then only if said perils occur on the Insured's premises:

1.    Fire or lightning;
2.    Windstorm or hail;
3.    Explosion;
4.    Riot, strike or civil commotion;
5.    Hazards involving any aircraft or vehicle;
6.    Sonic shock waves;
7.    Smoke;
8.    Vandalism or malicious mischief;
9.    Sprinkler leakage;
10.    Elevator malfunction;
11.    Earthquake or flood;
12.    Structural collapse of building; or
13.    Ownership, maintenance or use of premises and all operations necessary or incidental thereto.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

## ENDORSEMENT # 9

This endorsement, effective     JULY 01, 2000     forms a part of

Policy No.:   BE 743 10 24       Issued to     MCKESSON HBOC, INC.

By:     AIU INSURANCE COMPANY

## COMMERCIAL UMBRELLA
## CALIFORNIA AMENDATORY ENDORSEMENT

In Section VI, Conditions, Condition D, Cancellation, is hereby deleted in its entirety and replaced by the following:

D.    Cancellation/Nonrenewal/Increase In Premium, Reduction In Limits Or Change In Conditions Of Coverage

### Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to stating when the cancellation is to take effect.

2. New policies in effect for sixty (60) days or less.

   We may cancel this policy. If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

3. New policies in effect for more than sixty (60) days and any renewal policy.

   We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

   a. Non-payment of premium, including payment due on a prior policy issued by us and due during the current policy term covering the same risks;

   b. A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

   c. Discovery of fraud or material misrepresentation by either of the following:

      1. You or other Insureds or your representative in obtaining the insurance; or

      2. You or your representative in pursuing a claim under the policy;

d. Discovery of willful or grossly negligent acts, or omissions, or of any violations of statutes, laws or regulations establishing safety standards, by you or other insureds or a representative of same, which materially increase any of the risks insured against;

e. Failure by you or other insureds or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us or a particular rate or rating plan if the failure materially increases any of the risks insured against;

f. A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

g. A determination by the commissioner that a continuation of the policy coverage could place us in violation of the laws of this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

h. A change by you or other insureds or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy;

i. A material change in limits, type or scope of coverage or exclusions in one or more of the underlying policies;

j. Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse; or

k. A reduction in financial rating or grade of one or more insurers insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

4. The policy period will end on the day and hour stated in the cancellation notice.

5. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations

6. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

7. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made

or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8. The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

... of this policy's provisions that conflict with a law that controls the cancellation of the ... this policy is changed by this statement to comply with that law.

...

... to renew this policy or if we intend to condition renewal upon reduction ... elimination or coverages, increase in deductibles, increase of more than 25 ... in the rate upon which the premium is based or upon requirements relating to underlying policy or policies, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of non-renewal at least sixty (60) days but no more than one hundred twenty (120) days prior to the end of the policy period. The notice shall contain the reason or reasons for nonrenewal of the policy.

## Increase in Premium, Reduction in Limits Or Change In Conditions Of Coverage

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1. Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2. Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3. A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4. A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or materially changed risk, unless the added, increased, or changed risk is included in the policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in the policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms and conditions of this policy remain unchanged.

_____

*Authorized Representative*

# ENDORSEMENT # 10

This endorsement, effective     JULY 01, 2000     forms a part of

Policy No.:   BE 740 10 21     issued to     MCKESSON HBOC , INC.

By:     AIU INSURANCE COMPANY

# *FOLLOW-FORM ENDORSEMENT*

This insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of:

## DRUGGIST LIABILITY.

However, if insurance for such Bodily Injury, Property Damage, Personal Injury or Advertising Injury is provided by a policy listed in the schedule of underlying insurance:

1. this exclusion shall not apply; and

the insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the schedule of underlying insurance.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

## ENDORSEMENT # 11

This endorsement, effective     JULY 01, 2000     forms a part of

Policy No.:    BE 740 10 81      Issued to    MCKESSON HBOC , INC.

By:     AIU INSURANCE CO. NY

## Professional Liability Exclusion

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the the insured or any person for whom the **Insured** is legally responsible.

This insurance does not apply to Employees in the performance of in-house duties, or resultant Bodily Injury, Property Damage, Personal Injury, or Advertising Injury.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

## ENDORSEMENT # 12

This endorsement, effective     JULY 01, 2000     orms a part of

Policy No.:   DE 740 10 21     Issued to     McKESSON HBOC, INC

By:     AIU INSURANCE COMPANY

## *AMENDMENT OF CANCELLATION NOTICE*

Numbe of days notice 120

Paragraph 2. of the Condition D. Cancellation , is hereby deleted in its entirety and replaced by the following:

2. For any statutory permitted reason other than non-payment of premium, the number of days require for notice of cancellation, as provided in the cancellation condition or as amended by an applicable state cancellation endorsement, it is increased to the number of days shown in the schedule above.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**

AIU INSURANCE COMPANY
70 PINE STREET
NEW YORK  NY  10270

# NOTICE OF POLICY CONDITIONAL RENEWAL

Named Insured & Mailing Address

MCKESSON CORPORATION HBOC
ONE POST STREET
SAN FRANCISCO  CA  94104-8300

Producer  08211

MARSH GLOBAL BROKING INC

1166 AVE OF AMERICAS 40TH FLR
NEW YORK NY 10036

Policy No.:  BE 740 10 21
Type of Policy:  UMBRELLA LIABILITY OCCURRENCE
Date of Expiration:  07/01/2001 ; 12:01 A.M. Local Time at the mailing address of the Named Insured.

This notice is to advise that we are agreeable to renewing this policy subject to the
following:  CHANGES IN TERMS, CONDITIONS AND PRICING INCREASE GREATER THAN 15%.

Named Insured

MCKESSON CORPORATION HBOC
ONE POST STREET
SAN FRANCISCO  CA  94104-8300

Date Mailed:
24th day of April, 2001

_K. Gregnoli_
Authorized Company Representative

CAGR2HNONE APP
01242001S
Page 1 of 1

ODERS 0 00.11a
FORM# CR97CA51995

Copy for Home Office

# ENDORSEMENT # 13

This endorsement, effect.      JULY 01, 2000            forms a part of

Policy No.:   BE 740 10 21          Issued to      .ICKESSON HBOC , INC.

By:      AIU INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that Endorsement # 04 is deleted in its entirety and replaced with the following:

## AMENDMENT OF CONDITIONS - WHO IS AN INSURED

In consideration of the premium paid, it is understood and agreed that Section IV, Definitions, Definition 1, B. is deleted in its entirety and replaced with the following:

3.   a.   Any organization you newly acquire or form, other than a partnership or joint venture, which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock will qualify as a Named Insured.

Coverage under this provision is afforded until the end of the "policy period" if the newly formed organization meets all of the following criteria. Coverage under this provision is afforded only until the end of the 180th day after you acquire or form the organization or the end of the "policy period", whichever is earlier, if all of the following criteria are not met.

(1)   The annual sales of such organization for the preceding year has not exceeded $100,000,000.

(2)   The estimated net sales of such organization for the next 12 months, do not exceed $100,000,000.

(3)   The property and operations of such organizations are similar to those that are currently included for coverage under this policy, and

(4)   The goods or products manufactured, sold, handled or distributed in the past, at present and in the future are similar to this policy by endorsement will also be Named Insured.

b.   Any other organization coming under the Named Insured's control and of which it assumes active management, which is added to this policy by endorsement, will also be a Named Insured.

c.   The provisions of a. and b. above, do not apply to Bodily Injury or Property Damage that occurred before you acquired or formed or assumed active management of the organization.

Page 1 of 2

d.    The provisions of a. and b. above, do not apply to **Personal Injury** or **Advertising Injury** arising out of an offense committed before you acquired or formed or assumed active management of the organization.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

## ENDORSEMENT # 14

This endorsement, effective      JULY 01, 2000      forms a part of

Policy No.:    BE 740 10 21      Issued to    MCKESSON HBOC, INC.

By:      AIU INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that Endorsement # 05 is deleted in its entirety and replaced with the following:

## ADDITIONAL INSUREDS - VOLUNTEER WORKERS

Who is an Insured (Section IV, E), is amended to include as an Insured any person(s) who are volunteer worker(s) for you, but only while acting at the direction of, and within the scope of their duties for you. However, no volunteer worker(s) are Insured for:

1.    Bodily Injury or Personal Injury

   A)    To you, to your partners or members (if you are a partnership or joint venture), to your other volunteer worker(s); or to your "employees" arising out of and in the course of their duties for you;

   B)    To the spouse, child, parent, brother or sister of your volunteer worker(s) or your "employees" as a consequence of paragraph 1.a. above;

   C)    For which there is any obligation to share damages because of the injury described in paragraph 1.a. above; or

   D)    Arising out of his or her providing or failing to provide professional health care services.

2.    Property Damage to property;

   A)    Owned, occupied, or used by:

   B)    Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, and your volunteer worker(s), your "employees" of, if you are a partnership or joint venture, any partner or member.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

## ENDORSEMENT # 15

This endorsement, effective     JULY 01, 2000     forms a part of

Policy No.:    BE 740 10 21     Issued to    MCKESSON HBOC , INC.

By     AIU INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that Endorsement # 08 is deleted in its entirety and replaced with the following:

## MEDICAL PROFESSIONALS LIABILITY EXCLUSION ENDORSEMENT

This insurance doe not apply to Bodily Injury, Property Damage or Personal Injury arising out of the rendering of or failure to render, during the policy period the following professional services:

(A)    Medical, surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith;

(B)    Furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

(C)    Handling of or performing postmortem examinations on human bodies; or

(D)    Service by any person as a member of a formal accreditation or similar professional board or committee of the Named Insured, or as a person charged with the duty of executing directives of any such board or committee.

It is also agreed that any Bodily Injury sustained by any patient or other person while seeking or being administered professional services, shall not be covered under this policy except when such Bodily Injury occurs as a direct result of one or more of the following perils and then only if said perils occur on the Insured's premises:

1.    Fire or lightning;

2.    Windstorm or hail;

3.    Explosion;

4.    Riot, strike or civil commotion;

5.    Hazards involving any aircraft or vehicle;

6.    Sonic shock waves;

7.    Smoke;

Page 1 of 2

8.    Vandalism or malicious mischief;

9.    Sprinkler leakage;

10.   Elevator Malfunction;

11.   Earthquake or flood;

12.   Structural collapse of building; or

13.   Ownership, maintenance or use of premises and all operations necessary or incidental thereto.

Section A. and B. do not apply if such coverage is provided by a policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

Case 2:20-10-BK0400-Cat Document 9-17 filed 07/29/20 ttl Page 68 of 611 Page ID 68/3

## ENDORSEMENT # 16

This endorsement, effective     JULY 01, 2000     forms a part of

Policy No.:   BE 740 10 21     Issued to    MCKESSON HBOC , INC.

By:    AIU INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that Endorsement # 11 is deleted in its entirety and replaced with the following:

## PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

This exclusion does not apply to Employees in the performance of in-house duties, or resultant **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury.**

All other terms and conditions of this policy remain unchanged.

Authorized Representative

## ENDORSEMENT # 17

This endorsement, effective     JULY 01, 2000     forms a part of

Policy No.:    BE 740 10 21     Issued to     MCKESSON HBOC , INC.

By:     AIU INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that any previous Schedule of Underlying Endorsements are deleted in there entirely and replaced with the following:

## SCHEDULE OF UNDERLYING INSURANCE ENDORSEMENT

| Type of Coverage | Insured<br>Policy Number<br>Policy Period | Limits of Liability |
|---|---|---|
| General Liability<br>(US & Canada) | Golden State<br>064-1-80101-2000<br>7/1/00 - 7/1/01 | $1,000,000 General Annual Aggregate (Other than Products/Completed Operations)<br>$1,000,000 Products/Completed Operations Aggregate<br>$1,000,000 Personal/Advertising Injury Limit<br>$1,000,000 Each Occurrence<br>$1,000,000 Fire Damage Limit |
| Excess Liability<br>(US & Canada) | Golden State<br>064-1-90101-2000<br>7/1/00 - 7/1/01 | $4,000,000 Each Accident<br>$4,000,000 Aggregate |
| Automobile Liability<br>(US & Canada) | Old Republic<br>MWTB 17971<br>CTB 17971 (Canada)<br>7/1/00 - 7/1/01 | $1,000,000 BI, PD or Combined Single Limit |
| Employer's Liability<br>(All States except NV & CT) | Old Republic<br>MWC 107 766 00<br>7/1/00 - 7/1/01 | $5,000,000 BI by Accident - Each Accident<br>$5,000,000 BI by Disease - Policy Limit<br>$5,000,000 BI by Disease - Each Employee |
| Employer's Liability (NV & CT Qualified Self-Insurer) | Old Republic<br>MWXS 563<br>7/1/00 - 7/1/01 | $2,000,000 Total Limit |
| Master Foreign Employer's Liability | Insurance Co. of the State of PA, (AIU)<br>83-61107<br>10/1/99 - 10/1/00<br>10/1/00 - 10/1/01 | $1,000,000 Total Limit |

Access Health (UK) Ltd.
Access Population Care Management
  Systems of Texas, Inc.
First Data Health Systems (Ireland), Ltd.
HBO & Company Canada Ltd.
  HBO & Company (UK) Limited
  Data-Med Computer Services Limited*
  HBO & Company (ST&SW), Ltd.
HBO & Company (VI), Inc.
HBOC Medical Ltd.
IMNET France S.A.R.L.
McKessonHBOC Holdings (France) S.A.R.L.
  McKessonHBOC (France) SA
McKessonHBOC Holdings (Netherlands) B.V.
  Systems Integration, Application and
    Consultancy B.V.
  VPI Gezondheidszorg B.V.
Hawk Medical Supply, Inc.
  Hawkeye Medical Supply, Inc.
  Maine Surgical Supply Co.
Health Mart Systems, Inc.
Healthcare Delivery Systems, Inc.
Penn-Chem Corporation*
Prospective Health, Inc.
Sunbelt Beverage Corporation (17%)
West Wholesale Drug Co.
Zee Medical Canada, Inc.
Zee Medical, Inc.
  Bead Seven, Inc.
  Brukar Enterprises, Inc.
  Combined Enterprises Corporation
  CookCo, Inc.
  CPG Industries, Inc.
  Marland First Aid Co., Inc.
  Riel, Inc.
  R-jet, Incorporated
  Roth Medical Services, Inc.
  South Pacific Medical, Inc.
  Zeepro, Inc.

\* Inactive
\*\* In bankruptcy

NADRO, S.A. de C.V. (22.87%)
McKesson Development Corp.
McKesson Finance Company of Canada
  Medis Health and Pharmaceutical Services Inc. (.003%)
McKesson Property Company, Inc.
  DC Land Company
  DCAZ Land Company
  Foremost Homes Hawaii, Ltd.
  HF Land Company
McKesson Red Line HealthCare Corporation
  MediNet, Inc.
  Red Line Medical Supply, Inc.
  The Buying Council of America Health
    Care Facilities, Inc.
  XVIII B Medi Mart, Inc.
McKesson Trading Company
McKesson Transportation Systems, Inc.
McKessonHBOC Capital Corporation
MedManagement Holdings, Inc.
  McKesson MedManagement, L.L.C.
  Purchasing Alliance for Clinical Therapeutics, LLC
N.V. Medicopharma (10%)\*\*

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

| Master Foreign Automobile And General Liability | Insurance Co. of the State of PA. (AIU) 80-0204672 10/1/99 - 10/1/00 10/1/00 - 10/1/01 | $2,000,000 Aggregate (Except for Products) $1,000,000 Aggregate for Products $1,000,000 Per Occurrence |

## McKesson MedManagement

Medical Professional Liability

| Employed Pharmacist and Other Employee Limits | St. Paul Fire & Marine Ins. Co. 572MA2158 10/29/99 - 10/29/00 and Renewal | $1,000,000 Each Person $3,000,000 Annual Total Limit |

|  | Organization Limits | $25,000,000 Each Person $25,000,000 Annual Total Limit |

|  | Self-Insured Retentions | $200,000 Each Injured Person $400,000 Annual Total Limit |

| Access Health | Federal Insurance Co. (CHUBB) 3537-4570 2/1/98 - 2/1/01 | $2,000,000 General Annual Aggregate (Other than Products/Completed Operations) $2,000,000 Products/Completed Operations Aggregate $1,000,000 Personal/Advertising Injury Limit $1,000,000 Each Occurrence Limit |

| Access Health Umbrella | Federal Insurance Co. (CHUBB) 7975-49-88 2/1/98 - 2/1/01 | $24,000,000 xs CHUBB Primary Layer |

All other terms and conditions of this policy remain unchanged.

Authorized Representative

ENDORSEMENT # 18

This endorsement, effective          JULY 01, 2000               forms a part of

Policy No.:      BE 740 10 21          Issued to      MCKESSON HBOC , INC.

By:        AIU INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that Endorsement # 7 is deleted in its entirety and replaced with the following:

## NAMED INSURED ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that ' . of the Declarations Page, Named Insured is amended to include the following:

### Domestic/Foreign Corporations and their Subsidiaries

Beldere Corporation*
  S.K.U., Inc. (50%)**
California Golden State Finance Company
  CGSF Fun ling Corporation
City Properties, S.A. (20%)*
Corporation of America*
Crocker Plaza Company
Foremost de Venezuela, S.A. (39.69%)*
Foremost Iran Corporation*
Foremost Shir, Inc.*
Foremost Tehran, Inc.*
GM Holdings, Inc.
  McKesson General Medical Corp.
    F.D. Titus and Son Inc.
    General Medical Manufacturing Company
    Randolph Medical Inc.
      Rancare, Inc.
      Randolph Home Care Inc.
Golden State Company, Ltd.*
Golden State Insurance Company Limited
Golden State Milk Products Company*
Goodman Manufacturing Company*
HBO & Company
  Access Health NZ Limited
  Access Health Puerto Rico, Inc.

Intercal, Inc. (15%)*
Imagine Health, Inc.
  Abaton.com, Inc.
J. Knipper and Company, Inc.
KWS & P, Inc.
KWS & P / SFA, Inc.
  Clinicians Database, ' L.C.
Macfor International Finance Company
MCK Acquisition Corp.
McKesson Automated Healthcare, Inc.
McKesson Automated Prescription Systems, Inc.
  APS Canada Inc.
  APS International Ltd.
  SI/Baker, Inc. (50%)
McKesson BioSe ices Corporation
  Pharmaceu... . support Services, Inc.
McKesson Canada Inc.
  Medis Health and Pharmaceutical Services Inc. (99.997%)
    Good Neighbour Pharmacy Ltd.*
    Medis Health and Pharmaceutical Services Alberta Limited
    Medis Health and Pharmaceutical Services Limited
    1258741 Ontario, Inc.
McKesson (Cayman Islands) Inc.

# POLICY COVER PAGE

**Date Printed:**  11/04/01          **Policy/Quote Number:**  8713546
**Time Printed:**  000001

| | |
|---|---|
| **Underwriter Name:** | colette phillips |
| **Issuing Office Division:** | |
| **Issuing Office Branch:** | 0001 |
| **Issuing Office Region:** | |
| **Operator Name:** | BUTLER          ,JULIE |
| **Operator Telephone:** | 212-458-1924 |
| **Policy Effective Date:** | July 1, 2001 |
| **Transaction Type:** | REN |
| **Set Copy Name:** | |
| **Set Copy Mailing Instructions:** | |

```
EPS TRACKING-ID:   0000590570000000000
JOB-ID:
```

*Archive Copy*

(Ed. 4-99)

**FORMS SCHEDULE**

**Named Insured:**     MCKESSON HBOC, INC.

**Policy Number:**     BE     8713546
**Effective 12:01 AM:**   July 1, 2001

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | COMM UMB DEC NAT UNION OF PA | 57696 | (06/93) |
| | COMM UMB POL FORM | 57697 | (06/93) |
| | OHIO NOTICE UNINSURED/UNDERINSURED MOTORIST COV. | 77974 | (04/01) |
| 1 | SCHEDULE OF UNDERLYING | MNSCPT | (07/01) |
| 2 | NAMED INSURED ENDORSEMENT | MNSCPT | (07/01) |
| 3 | AMENDMENT OF CONDITIONS | MNSCPT | (07/01) |
| 4 | ADDITIONAL INSUREDS VOLUNTEER WORKERS | MNSCPT | (07/01) |
| 5 | MEDICAL PROFESSIONALS LIABILITY EXCL | MNSCPT | (07/01) |
| 6 | PROFESSIONAL LIABILITY EXCLUSION | MNSCPT | (07/01) |
| 7 | NAMED PERIL & TIME ELEMENT POLLUTION | MNSCPT | (07/01) |
| 8 | FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT | MNSCPT | (07/01) |
| 9 | DRUGGIST LIABILITY | MNSCPT | (07/01) |
| 10 | AMENDMENT OF CANCELLATION NOTICE | MNSCPT | (07/01) |
| 11 | CALIF AMENDATORY | 62429 | (04/95) |
| 12 | RETAINED LIMIT AMENDMENT | 66123 | (09/96) |
| 13 | LOT OR BATCH PROVISION | 60862 | (08/94) |
| 14 | DEFENSE IN LIMIT | 60416 | (05/94) |
| 15 | FLORIDA UNINSURED MOTORISTS COV | 62411 | (04/95) |
| 16 | INDIANA UNINSURED MOTORISTS COVERAGE | 76670 | (09/00) |
| 17 | LA UNINSURED/UNDERINSURED MOTORIST BODILY INJURY C | 62596 | (06/98) |
| 18 | NH UNINSURED MOTORISTS COV | 62413 | (04/95) |
| 19 | CRISIS RESPONSE AND EXCESS CASUALTY CRISIS FUND | 74641 | (12/99) |
| 20 | VT UNINSURED MOTORISTS COVERAGE | 59264 | (05/94) |

*Archive Copy*

**AIG**     **COMMERCIAL UMBRELLA DECLARATIONS**

# NATIONAL UNION FIRE INSURANCE COMPANY
# OF PITTSBURGH, PA.

A CAPITAL STOCK COMPANY

ADMINISTRATIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270-0150

**POLICY NUMBER:**  BE   8713546                         **RENEWAL OF:**  7401021

**PRODUCER NAME:**  MARSH GLOBAL BROKING, INC.

**ADDRESS:**        1166 AVE OF AMERICAS, 40TH FLR.
                    NEW YORK, NY 10036

**ITEM 1.**  **NAMED INSURED:**  MCKESSON HBOC, INC.

         **ADDRESS:**        ONE POST STREET
                            SAN FRANCISCO, CA 94104-8300

**ITEM 2.**  **POLICY PERIOD:  FROM:** July 1, 2001          **TO:** July 1, 2002
         AT 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.**  **LIMITS OF INSURANCE:**

         The Limits of Insurance, subject to all the terms of this policy, are:

|     |               |                                                                              |
|-----|---------------|------------------------------------------------------------------------------|
| A.  | $20,000,000   | Each Occurrence                                                              |
| B.  | $40,000,000   | General Aggregate (in accordance with Section III, Limits of Insurance)      |
| C.  | $40,000,000   | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D.  | $0            | Self Insured Retention                                                       |

**ITEM 4.**  **PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE / PER | ADVANCE PREMIUM | MINIMUM PREMIUM |
|--------------------|------------|-----------------|-----------------|
| N/A                | FLAT       | $335,000.00     | $335,000.00     |

**ITEM 5.**     **ENDORSEMENTS ATTACHED:**     **SEE ATTACHED SCHEDULE**

**COUNTERSIGNED** _____     **BY** _____

57696 (6/93)                              *Archive Copy*  DATE       **AUTHORIZED REPRESENTATIVE**
AH0016

# Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word **"Insured"** means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## Insuring Agreements

**I.     Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the **Insured,** then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

**II.     Defense**

**A.**     We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

**1.**     The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

**2.**     Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured.**

**B.**     When we assume the defense of any claim or suit:

**1.**     We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

**2.**     We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured:**

**a.**     premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

**b.**     premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish any such bond;

**c.**     all costs taxed against the **Insured** in any claim or **suit** we defend;

    **d.**    pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

    **e.**    all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

    **f.**    the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

**C.**    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured.** We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

**III.**    **Limits of Insurance**

**A.**    The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    **1.**    **Insureds;**

    **2.**    Claims made or **suits** brought; or

    **3.**    Persons or organizations making claims or bringing **suits**.

**B.**    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

    **1.**    Damages included in the **Products-Completed Operations Hazard;** and

    **2.**    Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.**    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

**D.**    Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence.**

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

    **1.**    In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

    **2.**    In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

*Archive Copy*    (2)

**E.**   Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

**1.**   The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

**2.**   The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured;**

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

## IV.   Definitions

**A.**   **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

**1.**   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**2.**   Oral or written publication of material that violates a person's right of privacy;

**3.**    Misappropriation of advertising ideas or style of doing business; or

**4.**    Infringement of copyright, title or slogan.

**B.**   **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But **auto** does not include **mobile equipment.**

**C.**   **Bodily Injury** means bodily injury, sickness, disability or disease.  **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

**D.**   **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

**1.**   It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

**2.**   You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**1.**   The repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

**2.**   Your fulfilling the terms of the contract or agreement.

**E.**   **Insured** means each of the following, to the extent set forth:

**1.**   The **Named Insured,** meaning:

**a.**   any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

**b.**   any organization newly acquired, controlled or formed by you during the policy period but only:

57697 (6/93)
AH0034

***Archive Copy***                    (3)

1)     as respects **Occurrences** taking place after you acquire, take control or form such organization;

2)     if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

3)     if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2.     If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3.     If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

4.     Any person or organization, other than the **Named Insured,** included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5.     Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6.     Any person, other than one of your employees, or organization while acting as your real estate manager.

7.     Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

a.     liability arising out of operations conducted by you or on your behalf; or

b.     facilities owned or used by you.

8.     Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your be half and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

F.    **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G.    **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.     Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.     Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

   a. equipment designed primarily for:

      1) snow removal;

      2) road maintenance, but not construction or resurfacing; or

      3) street cleaning;

   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

H. **Occurrence** means:

1. As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence**;

2. As respects **Personal Injury**, an offense arising out of your business that results in **Personal Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3. As respects **Advertising Injury**, an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

I. **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

J. 1. **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

   **a.** products that are still in your physical possession; or

   **b.** work that has not yet been completed or abandoned.

2. **Your Work** will be deemed completed at the earliest of the following times:

   **a.** When all of the work called for in your contract has been completed.

   **b.** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   **c.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

   **a.** the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

   **b.** the existence of tools, uninstalled equipment or abandoned or unused materials.

K. **Property Damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

L. **Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged.  **Suit** includes:

1. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

M. **Your Product** means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **a.** you;

   **b.** others trading under your name; or

   **c.** a person or organization whose business or assets you have acquired; and

2. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**N.** **Your Work** means:

1. Work or operations performed by you or on your behalf; and

2. Materials, parts or equipment furnished in connection with such work or operations.

**O.** **Your Work** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2. The providing of or failure to provide warnings or instructions.

**V.    Exclusions**

This insurance does not apply to:

**A.** Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

**B.** Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

**C.** Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

**D.** **Property Damage** to:

1. Property you own, rent, occupy or use;

2. Personal property in the care, custody or control of the **Insured**.

**E.** **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**F.** **Property Damage** to **Your Product** arising out of it or any part of it.

**G.** **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

57697 (6/93)
AH0034

**Archive Copy**                (7)

H.  Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    **1.**    **Your Product;**

    **2.**    **Your Work;** or

    **3.**    **Impaired Property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.  Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

    **1.**    This exclusion shall not apply; and

    **2.**    The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.  **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    **1.**    This exclusion shall not apply; and

    **2.**    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.  **Personal Injury** or **Advertising Injury:**

    **1.**    Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

    **2.**    Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    **3.**    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

    **4.**    For which the **Insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.  **Advertising Injury** arising out of:

    **1.**    Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    **2.**    The failure of goods, products or services to conform with advertised quality or performance;

    **3.**    The wrong description of the price of goods, products or services; or

    **4.**    An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

**M.**  **1.**   **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

**2.**   Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

**3.**   Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion M. shall not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

**a.**   Heat, smoke or fumes from a hostile fire;

**b.**   The upset, overturn or collision of a motor vehicle; or

**c.**   The **Products-Completed Operations Hazard;**

if insurance for such **Bodily Injury, Property Damage** or **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such **Bodily Injury, Property Damage** or **Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

As used in this exclusion:

**a.**   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. "Waste material" includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

**b.**   A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**N.**   **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condit ion incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**O.**   **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**.

However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

**P.**  **1.**   **Bodily Injury, Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

**2.**   Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

**3.**   Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

**Q.**   **Bodily Injury** or **Personal Injury** to:

**1.**   A person arising out of any:

**a.**   Refusal to employ that person;

**b.**   Termination of that person's employment; or

**c.**   Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**2.**   The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

**1.**   Whether the **Insured** may be liable as an employer or in any other capacity; and

**2.**   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**R.**   **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of or by reason of:

**1.**   The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

**2.**   Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

**3.**   Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

**S.**   **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

**1.**   Causing or contributing to the intoxication of any person;

**2.**   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**3.**   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

**1.**   This exclusion shall not apply; and

**2.**   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

**T.**   **Bodily Injury** or **Property Damage:**

**1.**   **a.**   with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

1. **b.** resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

   **a.** the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

   **b.** the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

   **c.** the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3. As used in this exclusion:

   **a.** "hazardous properties" includes radioactive, toxic or explosive properties;

   **b.** "nuclear material" means source material, special nuclear material or by-product material;

   **c.** "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

   **d.** "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   **e.** "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   **f.** "nuclear facility" means:

      **1)** any nuclear reactor;

      **2)** any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

      **3)** any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

      **4)** any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   **g)** "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h) **Property Damage** includes all forms of radioactive contamination of property.

**VI.** **Conditions**

**A.** Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

**B.** Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

**C.** Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

**D.** Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7. The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**E.     Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy.  This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.     Duties In The Event Of An Occurrence, Claim Or Suit**

**1.**     You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy.  To the extent possible, notice should include:

   **a.**     how, when and where the **Occurrence** took place;

   **b.**     the names and addresses of any injured persons and witnesses; and

   **c.**     the nature and location of any injury or damage arising out of the **Occurrence.**

**2.**     If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

**3.**     You and any other involved **Insured** must:

   **a.**     immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit;**

   **b.**     authorize us to obtain records and other information;

   **c.**     cooperate with us in the investigation, settlement or defense of the claim or **suit;** and

   **d.**     assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

**4.**     No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G.     Inspection**

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

**H.     Legal Actions Against Us**

There will be no right of action against us under this insurance unless:

**1.**     You have complied with all the terms of this policy; and

**2.**     The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

**I.     Maintenance of Underlying Insurance**

During the period of this policy, you agree:

**1.**     To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

**Archive Copy**                    (13)

2. That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

4. That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**J.** Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K.** Premium

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**L.** Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**M.** Separation of **Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1. As if each **Named Insured** were the only **Named Insured**; and

2. Separately to each **Insured** against whom claim is made or **Suit** brought.

**N.** Subrogation

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

Any recoveries shall be applied as follows:

1. Any interests, including the **Insured,** that have paid an amount in excess of our payment under this policy will be reimbursed first;

2. We then will be reimbursed up to the amount we have paid; and

3. Lastly, any interests, including the **Insured,** over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the **Insured**, in the ratio of their respective recoveries as finally settled.

**O.** Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P.** When Loss Is Payable

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured.**

**In Witness Whereof**, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

SECRETARY                                   PRESIDENT

| MCKESSON HBOC, INC. | BE 8713546 |
|---|---|
| **Named Insured (list all subsidiaries to be covered on Page 2 of this form and attach signatory authorization)** | **Policy Number** |

## OHIO NOTICE
## UNINSURED/UNDERINSURED MOTORISTS COVERAGE

Ohio Insurance Code § 3937.18 provides that no policy shall be delivered or issued unless both Uninsured and Underinsured Motor Coverage are offered to persons insured under the policy, up to the policy liability limits, for loss due to bodily injury or death suffered by such insureds from an uninsured or underinsured motorist.

Uninsured Motorist Coverage provides protection against loss from bodily injury, sickness, or disease, including death, suffered by an insured under the policy, who is legally entitled to recover damages from owners or operators of uninsured motor vehicles, because of such bodily injury, sickness, or disease, including death.

Underinsured Motorist Coverage provides protection against loss that an insured is legally entitled to recover from bodily injury, sickness, disease, or death, suffered by an insured where the total amount available for payment to the insured under all liability bonds and insurance policies covering persons liable to the insured are less then the limits for the Insured's uninsured motorist coverage.

If you do not purchase Collision coverage, you may purchase Uninsured Motor Vehicle Coverage which provides protection against loss from damage to, or the destruction of, any vehicle specifically identified in the policy, to an insured under the policy who is legally entitled to recover from the owner or operator of an uninsured motor vehicle, for the damage or destruction of such vehicle.

In accordance with Ohio Insurance Code § 3937.18 the undersigned Named Insured (for each insured in the policy):

**Mark Applicable item(s) with an [X]**

[ x ]  Rejects Uninsured/ Underinsured Motorist Coverages in their entirety.

[   ]  Rejects Uninsured/ Underinsured Motorist Property Damage Coverage.

[   ]  Selects the following UM/UIM Bodily Injury limits which are lower than the Bodily Injury limits of this policy, but are not less than the $1 million combined single limit.

Combined Single Limit.

The premium for this coverage is calculated as follows: (a) $200 per **Auto** per million of coverage for the first $10 million of UM/UIM liability limits excess of primary, plus (b) $50 per **Auto** per million of coverage for the UM/UIM liability limits in excess of $10 million excess of primary.

[   ]  Selects limits for Uninsured/Underinsured motorist Coverage equal to the policy's Bodily Injury Liability limits.

The premium for this coverage is calculated as follows: a) $200 per **Auto** per million of coverage for the first $10 million of UM/UIM liability limits excess of primary, plus (b) $50 per **Auto** per million of coverage for the UM/UIM liability limits in excess of $10 million excess of primary.

For the purpose of calculating the premium for this coverage, **Auto** shall include any of the following types of motor vehicles registered or principally garaged in Ohio:

Private Passenger Motor Vehicles
Light Trucks/Vans
Medium Trucks
Heavy Trucks
Extra Heavy Trucks
Tractors
Buses

This offer for Uninsured and Underinsured Motorist coverage is being made to the various entities which are affiliated with, owned by, or under common control with the Named Insured listed above as set forth on the attached list of such entities, which list shall be incorporated into this form as if fully set out herein.

If we do not receive a response from you to this offer, we shall, in accordance with Ohio Insurance Code § 3937.18 provide Uninsured and Underinsured Motorist Coverage in an amount equal to the policy limits chosen by you.

The various limits of coverage available, and the premiums for those limits have been explained to me, and I have chosen the option indicated on this form. I understand and agree that the limits chosen or the coverage rejected will apply to this policy and all future renewals, reinstatements or replacements of this policy unless a written request for a change is received and approved by the Company. Additionally, I am authorized to make the selections set forth in this form on behalf of the entities listed above by virtue of the written authorization which is attached to this form and is incorporated in it by this reference.

_____
Authorized Signature of Named Insured

July 1, 2001
_____
Effective Date of Policy

_____
Name and Title

_____
Date Signed

This Offer of Coverage will be incorporated into and made part of the policy.
All other terms, conditions, and exclusions remain unchanged.

77974 (04/01)
AH0772

**Archive Copy**

2

**ENDORSEMENT NO.** 1

**This endorsement, effective 12:01 AM:**  July 1, 2001

**Forms a part of policy no.:**  BE    8713546

**Issued to:**  MCKESSON HBOC, INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF COVERAGE | INSURER POLICY DATE | LIMITS OF LIABILITY |
|---|---|---|
| General Liability | Self-Insured Retention | $5,000,000 Retained Amount |
| Foreign Automobile & General Liability | Ins Co. State of PA 10/1/00 - 01 & Renewal | $1,000,000 Per Occurrence $2,000,000 General Aggregate $1,000,000 Products Aggregate |
| Pharmacy/Druggists' Liability (McKesson MedManagement) | St. Paul Fire & Marine 10/29/00 - 01 & Renewal | $1,000,000 Each Person $3,000,000 Annual Total Limit |
| U.S. Automobile Liability | Old Republic Ins. Co. 7/01/01 - 02 | $1,000,000 CSL |
| Canadian Automobile Liability | Old Republic Ins. Co 7/1/01 - 02 | $1,000,000 CSL |
| Employer's Liability: All Other States | Old Republic Ins. Co. 7/1/01 - 02 | $5,000,000 Each Accident $5,000,000 Policy Limit $5,000,000 Each Employee |
| Employers Liability NV & CT | Old Republic 7/1/01 - 02 | $2,0000,000 Total Limit |
| Foreign Employers Liability | Ins Co. State of PA 10/1/00 - 01 & Renewal | $1,000,000 Total Limit |

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative or countersignature (where required by law)**

**ENDORSEMENT NO.** 2

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE   8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**NAMED INSURED ENDORSEMENT**

**DOMESTIC/FOREIGN CORPORATIONS AND THEIR SUBSIDIARIES**

Abaton.com, Inc.
Beldere Corporation
      S.K.U., Inc. (50%)
California Golden State Finance Company
      CGSF Funding Corporation
City Properties, S.A. (20%)
Crocker Plaza Company
Foremost de Venezuela, S.A. (39.69%)
Foremost Iran Corporation
Foremost Shir, Inc.
Foremost Tehran, Inc.
GM Holdings, Inc.
     McKesson General Medical Corp.
          F.D. Titus & Son, Inc.
          General Medical Manufacturing Company
Golden State Insurance Company Limited
Goodman Manufacturing Company
HBO & Company
     Access Health NZ Limited
     Access Health Puerto Rico, Inc.
     HBO & Company Canada Ltd.
     HBO & Company (VI), Inc.
     HBOC Medical Ltd.
     iMcKesson Holding Company
        iMcKesson LLC
           Access Health UK Ltd.
           Access Population Care Management Systems of Texas, Inc.
    McKesson HBOC (Holdings) Limit
       McKessonHBOC International S.A.R.L.
         McKesson HBOC Finance S.A.R.L.
           McKesson HBOC Holdings S.A.R.L.
             HBO & Company (UK) Limited
               Data-Med Computer Services, Ltd.
               HBO & Company (ST & SW) Ltd.

**Page 1 of 3**

*Archive Copy*

**ENDORSEMENT No.** 2 **(Continued)**

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE 8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

iMcKesson Canada Inc.
McKesson HBOC (Ireland) Limited
McKesson HBOC Holdings (Netherlands) B.V)
Systems Integration, Application & Consultancy B.V.
VPI Gezondheidszorg B.V.
McKessonHBOC Holdings (France) S.A.R.L.
McKessonHBOC France S.A.
Hawk Medical Supply, Inc.
Hawkeye Medical Supply, Inc.
Maine Surgical Supply Co.
HealthMart Systems, Inc.
Healthcare Delivery Systems, Inc.
Intercal, Inc. (15%)
J. Knipper and Company, Inc.
KWS & P, Inc.
KWS & P/SFA, Inc.
Clinicians Database, L.L.C.
MCK Acquisition Corp.
McKesson Automated Healthcare, Inc.
McKesson Automated Prescription Systems, Inc.
APS Canada, Inc.
APS International Ltd.
SI/Baker, Inc. (50%)
McKesson BioServices Corporation
Pharmaceutical Support Services, Inc.
McKesson Canada, Inc.
Medis Health and Pharmaceutical Services Inc.
Good Neighbour Pharmacy Ltd.
McKesson Canada Health Care Partners Ltd.
Medis Health and Pharmaceutical Services Alberta Limited
Medis Health and Pharmaceutical Services Limited
1258741 Ontario Inc.
McKesson (Cayman Islands) Inc.
NADRO, S.A. de C.V. (22.67%)
McKesson Development Corp.
McKesson Finance Company of Canada
Medis Health and Pharmaceutical Services Inc.
Good Neighbour Pharmacy Ltd.
McKesson Canada Health Care Partners Ltd.
Medis Health and Pharmaceutical Services Alberta Limited
Medis Health and Pharmaceutical Services Limited
128741 Ontario Inc.

**Page 2 of 3**

*Archive Copy*

**ENDORSEMENT No.** 2 **(Continued)**

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE 8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**McKesson Property Company, Inc.**
   **DC Land Company**
   **DCAZ Land Company**
   **Foremost Homes Hawaii, Ltd.**
   **HF Land Company**
**McKesson Red Line HealthCare Corporation**
   **Medinet, Inc.**
   **Red Line Medical Supply, Inc.**
   **TBC Products, Inc.**
   **XVIII B Medi Mart, Inc.**
**McKesson Trading Company**
**McKesson Transportation Systems, Inc.**
**McKessonHBOC Asia-Pacific Pty Limited**
   **McKessonHBOC Asia Pacific Limited**
**McKessonHBOC Capital Corporation**
**McKessonHBOC Services, Inc.**
**MedManagement Holdings, Inc.**
   **McKesson MedManagement LLC**
   **Purchasing Alliance for Clinical Therapeutics, LLC**
**N.V. Medicopharma (10%)**
**Penn-Chem Corporation**
**Prospective Health, Inc.**
      **iMcKesson LLC**
         **Access Health UK Ltd.**
         **Access Population Care Management Systems of Texas, Inc.**
**Sunbelt Beverage Corporation (17%)**
**Zee Medical Canada, Inc.**
**Zee Medical, Inc.**
   **Boad Seven, Inc.**
   **Brunkar Enterprises, Inc.**
   **Combined Enterprises Corporation**
   **CPG Industries, Inc.**
   **First Aid Service, Inc.**
   **JACS, Inc.**
   **Maryland First Aid Co., Inc.**
   **Norvern Enterprises, Inc.**
   **Radunnco, Inc.**
   **R-jet Incorporated**
   **Roth Medical Services, Inc.**
   **Zeepro, Inc.**

**Page 3 of 3**

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.**3

**This endorsement, effective 12:01 AM:**  July 1, 2001

**Forms a part of policy no.:**  BE    8713546

**Issued to:**  MCKESSON HBOC, INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**AMENDMENT OF CONDITIONS - WHO IS AN INSURED**

In consideration of the premium paid, it is  understood and agreed that Section IV. Definitions,  Definition 1. B. is deleted in its entirety and replaced with the following:

3.      a.      Any organization you newly acquire or form, other than a partnership or joint venture, which is a legally incorporated  entity of which  you own a financial  interest of more than  50% of the voting stock will qualify as a  **Named Insured**.

Coverage under this  provision is afforded  until the end  of the "policy  period" if the  newly formed organization  meets all  of the  following  criteria.  Coverage under  this provision  is afforded only until the end of the 180 [th] day after you acquire or form the organization or the end of the "policy period", whichever is earlier, if all of the following criteria are not met.

(1)     The annual  sales  of such organization  for  the  preceding year  has  not  exceeded $100,000,000.

(2)     The estimated net sales of such organization for the next 12  months, do not exceed $100,000,000.

(3)     The property  and  operations of such  organizations  are  similar to those  that  are currently included for coverage under this policy, and

(4)     The goods  or products  manufactured, sold,  handled or  distributed  in  the past,  at present and  in  the future  are  similar to  this  policy  by endorsement  will  also  be **Named Insured**.

b.      Any other organization coming under the    **Named Insured's** control and of  which it assumes active management,  which is added  to this  policy by  endorsement, will also  be a    **Named Insured**.

c.      The provisions of  a. and b.  above, do not  apply to    **Bodily Injury** or  **Property Damage** that occurred before you acquired or formed or assumed active management of the organization.

d.      The provisions of a.  and b.  above,  do not  apply to    **Personal Injury**  or  **Advertising Injury** arising out  of  an  **offense** committed  before  you  acquired  or formed  or  assumed  active management of the organization.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.4**

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## ADDITIONAL INSUREDS - VOLUNTEER WORKERS

Who is an **Insured** (Section IV. E), is amended to include as an **Insured** any person(s) who are volunteer worker(s) for you, but only while acting at the direction of, and within the scope of their duties for you. However, no volunteer worker(s) are **Insured** for:

1.   **Bodily Injury** or **Personal Injury**

   A)   To you, to your partners or members (if you are a partnership or joint venture), to your other volunteer worker(s), or to your "employees" arising out of and in the course of their duties for you,

   B)   To the spouse, child, parent, brother or sister of your volunteer worker(s) or your "employees" as a consequence of paragraph 1.a. above:

   C)   For which there is any obligation to share damages because of the injury described in paragraph 1.a. above, or

   D)   Arising out of his or her providing or failing to provide professional health care services.

2.   **Property Damage** to property,

   A)   Owned, occupied, or used by:

   B)   Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, and your volunteer worker(s), your "employees" of, if you are a partnership or joint venture, any partner or member.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.5**


**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**MEDICAL PROFESSIONALS LIABILITY EXCLUSION ENDORSEMENT**


This insurance doe not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of the
rendering of or failure to render, during the policy period the following professional services:

(A)    Medical, surgical, dental or nursing treatment including the furnishing of food or beverages
       in connection therewith,

(B)    Furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances,

(C)    Handling of or performing postmortem examinations on human bodies, or

(D)    Service by any person as a member of a formal accreditation or similar professional board or
       committee of the **Named Insured**, or as a person charged with the duty of executing
       directives of any such board or committee.

It is also  agreed that  any  **Bodily  Injury** sustained  by any  patient or  other person  while seeking  or being
administered professional services,  shall not be  covered under this  policy except when  such   **Bodily Injury**
occurs as a  direct result of  one or  more of the  following perils  and then  only if said  perils occur  on the
**Insured's** premises:

1.    Fire or lightning,
2.    Windstorm or hail,
3.    Explosion,
4.    Riot, strike or civil commotion,
5.    Hazards involving any aircraft or vehicle,
6.    Sonic shock waves,
7.    Smoke,
8.    Vandalism or malicious mischief,
9.    Sprinkler leakage,
10.   Elevator Malfunction,
11.   Earthquake or flood,
12.   Structural collapse of building, or
13.   Ownership, maintenance or use of premises and all operations necessary or incidental
      thereto.

Section A. and B. do not apply if such coverage is provided by a policy  listed in the Schedule of Underlying
Insurance.

All other terms and conditions of this policy remain unchanged.



All other terms, conditions and exclusions of the policy remain unchanged.


*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.**6

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE     8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT

This insurance  does  not  apply  to   **Bodily Injury,  Property  Damage, Personal  Injury**  or **Advertising  Injury** arising out of  any act, error,  omission, malpractice or  mistake of a  professional nature  committed by the **Insured** or any person for whom the  **Insured** is legally responsible.

This exclusion  does  not  apply  to Employees  in  the performance  of  In-house duties,  or resultant     **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury**.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.7**

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE 8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT**
**(Defense Expenses Inside S.I.R., Version 2)**

Exclusion M of this policy is hereby deleted in its entirety and replaced by the following:

This insurance does not apply to:

1.   **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world,

2.   Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants, or

3.   Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

However, this exclusion does not apply to **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of:

1.   Any discharge, dispersal, seepage, migration, release or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot and civil commotion, flood, earthquake, collision, or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage,

2.   The **Products - Completed Operations Hazard**, or

3.   Any discharge, dispersal, seepage, migration, release or escape of pollutants that meets all of the following conditions:

*Archive Copy*

**ENDORSEMENT No. 7** **(Continued)**

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

    **a.**   It was accidental and neither expected nor intended by the **Named Insured**. This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury**, **Property Damage** or **Personal Injury** could occur, and

    **b.**   It was demonstrable as having commenced on a specific date during the term of this policy, and

    **c.**   Its commencement became known to the **Named Insured** within twenty (20) calendar days and was further reported to the Risk Management Department within a reasonable time frame, and

    **d.**   Its commencement was reported in writing to us within eighty (80) calendar days of becoming known to the Risk Management Department, and

    **e.**   Reasonable effort was expended by the **Named Insured** to terminate the situation as soon as conditions permitted.

However, nothing contained in this provision **3.** shall operate to provide any coverage with respect to:

    **a.**   Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material,

    **b.**   Any fines or penalties,

    **c.**   Any clean up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion **c.** shall not serve to deny coverage for third party clean up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority,

    **d.**   Acid rain,

    **e.**   Clean up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said pollutants, or

*Archive Copy*

**ENDORSEMENT No. 7**     **(Continued)**

**This endorsement, effective 12:01 AM:**   July 1, 2001

**Forms a part of policy no.:**  BE    8713546

**Issued to:**  MCKESSON HBOC, INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

      **f.**     Water pollution caused by oil or its derivatives.

It is further agreed that solely as respects any coverage granted by this endorsement:

**1.**     The Self Insured Retention in Item 3. D. of the Declarations is amended to  **$5,000,000**

**2.**     The Self Insured Retention shall include "Defense Expenses."

      "Defense Expenses" means a payment allocated to a specific loss, claim or   **suit** for its investigation, settlement or defense, including but not limited to:

      a. attorneys' fees and all other investigation, loss adjustment  and litigation expenses,

      b. premiums on bonds to release attachments,

      c. premiums on appeal bonds required by law to appeal any claim or   **suit**,

      d. costs taxed against the  **Insured** in any claim or **suit**,

      e. pre-judgment interest awarded against  the  **Insured**,

      f.  interest that accrues after entry of judgment,

**3.**     In Section II, Defense, provision A. 2. is hereby deleted in its entirety, and

**4.**     We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the  **Insured**.  We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any  **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy.  If we exercise such right, we will do so at our own expense.

It is further agreed that in the event of a disagreement as to the interpretation of this endorsement, the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator.  If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator.  The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of

*Archive Copy*

**ENDORSEMENT No. 7** **(Continued)**

**This endorsement, effective 12:01 AM:**  July 1, 2001

**Forms a part of policy no.:**  BE    8713546

**Issued to:**  MCKESSON HBOC, INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

the parties hereto and may refer to, but are not limited to, relevant legal principles.  The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators.  The award will be issued within thirty (30) days of the close of the hearings.  Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item 1 of the Declarations.   The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

***Archive Copy***

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.**8

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT**

This insurance  does not  apply to   **Bodily  Injury, Property  Damage, Personal  Injury**  or **Advertising Injury** that occurs  outside of the  United States of  America, its  territories and possessions,  Puerto Rico and Canada.

However, if insurance for such  **damages** is provided by a policy listed in  the Schedule of Underlying Insurance:

1. This exclusion shall not apply, and

2. Except  with respect  to limits  of liability,  retentions,  deductibles, cancellation/non-renewal,  duty  to  defend  and  premium, this   insurance  shall  follow  the  terms, conditions, and  exclusions of  the  policy(ies) listed  in  the Schedule  of  Underlying Insurance, and

3. The  insurance  provided  by  our  policy   will  not  be  broader  than  the  insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 9

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**FOLLOW-FORM ENDORSEMENT**

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of:

DRUGGISTS' LIABILITY

However, if insurance for such **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** is provided by a policy listed in the schedule of underlying insurance:

     **1.**        this exclusion shall not apply, and

     **2.**        the insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the schedule of underlying insurance.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 10

**This endorsement, effective 12:01 AM:**  July 1, 2001

**Forms a part of policy no.:**  BE    8713546

**Issued to:**  MCKESSON HBOC, INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**AMENDMENT OF CANCELLATION NOTICE**

**Number of days notice:  120**

Paragraph 2. of the Condition D, Cancellation , is hereby deleted in its entirety and replaced by the following:

   2.  For any statutory permitted reason other than non-payment, of premium, the number of
       days require for notice of cancellation, as provided in the cancellation condition or as
       amended by an applicable state cancellation endorsement, it is increased to the number
       of days shown in the schedule above.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**







ENDORSEMENT No. 11

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE 8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**COMMERCIAL UMBRELLA**

**CALIFORNIA AMENDATORY ENDORSEMENT**

In Section VI, Conditions, Condition D, Cancellation, is hereby deleted in its entirety and replaced by the following:

**D.** Cancellation/Nonrenewal/Increase In Premium, Reduction In Limits Or Change In Conditions Of Coverage

Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. New policies in effect for sixty (60) days or less.

We may cancel this policy. If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

3. New policies in effect for more than sixty (60) days and any renewal policy.

We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

a. Non-payment of premium, including payment due on a prior policy issued by us and due during the current policy term covering the same risks;

b. A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

c. Discovery of fraud or material misrepresentation by either of the following:

1. You or other **Insureds** or your representative in obtaining the insurance; or

2. You or your representative in pursuing a claim under the policy.

d. Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or other **Insureds** or a representative of same, which materially increase any of the risks insured against;

e. Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of

62429 (4/95)
AH0291
***Archive Copy***
Page 1 of 3

Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan if the failure materially increases any of the risks insured against;

f.    A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

g.    A determination by the commissioner that a continuation of the policy coverage could place us in violation of the laws of this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

h.    A change by you or other **Insureds** or a representative of same in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy;

i.    A material change in limits, type or scope of coverage or exclusions in one or more of the underlying policies;

j.    Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse; or

k.    A reduction in financial rating or grade of one or more insurers insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less then ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

4.    The policy period will end on the day and hour stated in the cancellation notice.

5.    If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

6.    If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

7.    Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.    The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

9.    Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

<u>Nonrenewal</u>

If we decide not to renew this policy or if we intend to condition renewal upon reduction of limits, elimination of coverages, increase in deductibles, increase of more than 25 percent in the rate upon which the premium is based or upon requirements relating to the underlying policy or policies, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of nonrenewal at least sixty (60) days but no more than one hundred twenty (120) days prior to the end of the policy period. The notice shall contain the reason or reasons for nonrenewal of the policy.

<u>Increase in Premium, Reduction In Limits Or Change In Conditions Of Coverage</u>

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1.    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2.    Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3.    A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4.    A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in the policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 12

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE 8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### RETAINED LIMIT AMENDMENT ENDORSEMENT

1. In Section III, Limits of Insurance, Paragraph E., Retained Limit, is deleted in its entirety and replaced by the following:

   E. Retained Limit

   We will be liable only for that portion of damages in excess of the Limits stated in the Schedule of Retained Limits attached to this policy and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations. The Retained Limits shown in the attached Schedule shall apply whether or not the **Insured** maintains applicable underlying insurance.

   Coverage is limited to apply only in excess of the Retained Limits shown in the attached Schedule and only for those coverages for which a Retained Limit is shown; these Retained Limits shall not include "Defense Expenses".

2. Section II, Defense, is hereby deleted in its entirety and replaced by the following:

   II. Defense

   A. We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when the applicable Limits shown in the Schedule of Retained Limits have been exhausted by payment of claims to which this policy applies.

   B. When we assume the defense of any claim or **suit**:

      1. We will defend any **suit** against the **Insured** seeking damages on account of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** even if such **suit** is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

      2. We will pay the following:

         a. premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

         b. premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish any such bond;

         c. all cost taxed against the **Insured** in any claim or **suit** we defend;

         d. pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

e.   all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

f.   the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

C.   In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

3.   Additional Definition

"Defense Expenses" means a payment allocated to a specific loss, claim or **suit** for its investigation, settlement or defense, including but not limited to:

a.   attorneys' fees and all other investigation, loss adjustment and litigation expenses;

b.   premiums on bonds to release attachments;

c.   premiums on appeal bonds required by law to appeal any claim or **suit**;

d.   costs taxed against the **Insured** in any claim or **suit**;

e.   pre-judgment interest awarded against the **Insured**;

f.   interest that accrues after entry of judgment.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

**ENDORSEMENT No.** 13

**This endorsement, effective 12:01 AM:**  July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:**  MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

<u>**LOT OR BATCH PROVISION**</u>

It is agreed that as respects the **Products - Completed Operations Hazard**, all **Bodily Injury** or **Property Damage** arising out of one lot or batch of products prepared or acquired by you shall be considered one **Occurrence**. Such **Occurrence** shall be subject to the Each Occurrence Limit of this policy shown in Item 3. of the Declarations and shall be deemed to occur when the **Bodily Injury** or **Property Damage** occurs for the first claim of that lot or batch.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60862 (08/94)       *Archive Copy*
AH0233

**ENDORSEMENT No.** 14

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## <u>DEFENSE IN LIMIT ENDORSEMENT</u>

In Section II, Defense, the last paragraph in provision B. is hereby deleted in its entirety and replaced by the following:

All expenses we incur in the defense of any **suit** or claim are included within our Limits of Insurance.

Provision C of Section II, Defense, is hereby deleted in its entirety and replaced by the following:

**C.**    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, any expenses we incur in the defense of any **suit** or claim are included within our Limits of Insurance.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**

60416 (5/94)
AH0165

*Archive Copy*

## ENDORSEMENT No. 15

**This endorsement, effective 12:01 AM:**  July 1, 2001

**Forms a part of policy no.:** BE  8713546

**Issued to:**  MCKESSON HBOC, INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### FLORIDA UNINSURED MOTORISTS COVERAGE*

#### OPTIONS FORM

YOU MAY BE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU, OR YOU ARE PURCHASING UNINSURED MOTORIST LIMITS LESS THAN YOUR **BODILY INJURY** LIABILITY LIMITS WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.

Uninsured Motorist coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of **Bodily Injury** or death resulting therefrom. Such benefits may include payments for certain medical expenses, lost wages, and pain and suffering, subject to limitations and conditions contained in the policy. For the purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the **Bodily Injury** limits are less than your damages.

Florida law requires that automobile liability policies include Uninsured Motorist coverage at limits equal to the **Bodily Injury** Liability limits in your policy unless you select a lower limit offered by the Company, or reject Uninsured Motorist entirely.

Please indicate whether you desire to entirely reject Uninsured Motorist coverage, to choose this coverage at limits lower than the **Bodily Injury** Liability limits of your policy or to choose this coverage at the **Bodily Injury** Liability limits of your policy:

☐ a. Uninsured Motorist coverage is hereby rejected.

☐ b. Uninsured Motorist coverage with limits of   which are lower than my **Bodily Injury** Liability limits, has been selected.

☐ c. Uninsured Motorist coverage at my **Bodily Injury** Liability limits has been selected.

Please note that in order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

You understand and agree that selection of one of the above options applies to your liability insurance policy and future renewals or replacements of such policy which are issued at the same **Bodily Injury** Liability limits. If you decide to select another option at some future time, you must let the Company or your agent know in writing.

62411 (4/95)
AH0752                    ***Archive Copy***              Page 1 of 2

\* The term Uninsured Motorist includes Underinsured Motorist when and to the extent provided by the primary policy.

Signed:
(Applicant or **Named Insured**)

Date:

If the **Insured** has chosen to elect Uninsured Motorists coverage, it is agreed that in Section V, Exclusions, Exclusion C, is hereby deleted in its entirety and replaced by the following:

**C.**     Any obligations of the **Insured** under a "No-Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

62411 (4/95)
AH0752

*Archive Copy*

Page 2 of 2

ENDORSEMENT No. 16

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**Commercial Umbrella Liability Policy**

**INDIANA UNINSURED MOTORISTS\*COVERAGE
OPTION FORM**

This policy is amended as follows:

Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Underinsured Motorists Coverage provides insurance for protection against loss for bodily injury, sickness or disease, including death, where the limit of coverage available for payment to the **Insured** under all bodily injury liability bonds and insurance policies covering persons liable to the **Insured** is less than the limit for the Uninsured Motorists Coverage under your policy at the time of the accident.

I.    The undersigned **Named Insured** on behalf of all **Named Insureds** in this policy acknowledges that it has been offered the opportunity to:

     1.    Elect a limit of Uninsured Motorists coverage which is equal to the Limits of Insurance on this policy.

     2.    Elect a limit of Uninsured Motorists coverage which is lower than the Limits of Insurance on this policy.

     3.    Completely reject Uninsured Motorists Coverage on this policy.

II.    On behalf of the **Named Insured** shown in Item 1 of the Declarations and all other **Named Insureds** in this policy, I hereby indicate my choice below. (1, 2 or 3)

In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

     1.    [   ]    Coverage desired at a limit equal to the Limits of Insurance.

     2.    [   ]    Coverage desired at a limit lower than the Limits of Insurance as indicated below:

           LIMIT OPTIONS:   $

     3.    [   ]    Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage**. This rejection shall be binding upon every **Insured** and shall apply to this policy and to all renewal or policy replacements.

\*    The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

_____

Signature of Applicant or **Named Insured**/Date

If the **Named Insured** has chosen to elect Uninsured Motorists coverage, it is agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies. It is further agreed that in Section V. Exclusions, Exclusion C. is hereby deleted in its entirety and replaced by the following:

    C.    Any obligations of the **Insured** under a "No-Fault" law.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

ENDORSEMENT No. 17

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

# State of Louisiana

This form was promulgated pursuant to LRS 22§1406.D.(1)(a)(ii).  This form may not be altered or modified.

## Uninsured/Underinsured Motorist Bodily Injury Coverage Form

**Uninsured/Underinsured Motorists Bodily Injury Coverage,** referred to as **"UMBI"** in this form, is insurance which pays persons insured by your policy who are injured in an accident caused by an owner or operator of an uninsured or underinsured motor vehicle.

By law, your policy will include UMBI Coverage at the same limits as your Bodily Injury Liability Coverage unless you request otherwise. If you wish to reject UMBI Coverage, select lower limits of UMBI Coverage, or select Economic-Only UMBI Coverage, you must complete this form and return it to your insurance agent or insurance company.  (Economic-Only UMBI Coverage may not be available from your insurance company.  In this case, your company will have marked options 3 and 4 below as "Not Available.")

| UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE |
|---|

You may select one of the following UMBI Coverage options (initial only one option):

1. _____
   Initials

   **I select UMBI Coverage** which will compensate me for my economic and non-economic losses with the same limits as my Bodily Injury Liability Coverage.

   **Economic losses** are those which can be measured in specific monetary terms including, but not limited to, medical costs, funeral expenses, lost wages, and out of pocket expenses.

   **Non-economic losses** are losses other than economic losses and include, but are not limited to, pain, suffering, inconvenience, and mental anguish.

2. _____
   Initials

   **I select UMBI Coverage** which will compensate me for my economic and non-economic losses **with limits lower** than my Bodily Injury Liability Coverage limits:
   $_____ each person        $ _____ each accident

3. _____
   Initials

   **I select Economic-Only UMBI Coverage** which will compensate me only for my economic losses with the same limits as my Bodily Injury Liability Coverage.

4. _____
   Initials

   **I select Economic-Only UMBI Coverage** which will compensate me only for my economic losses **with limits lower** than my Bodily Injury Liability Coverage limits:
   $_____ each person        $ _____ each accident

5. _____
   Initials

   **I do not want UMBI Coverage.** I understand that **I will not be compensated through UMBI coverage** for losses arising from an accident caused by an uninsured/underinsured motorist.

## SIGNATURE

**The choice I made by my initials on this form will apply to all persons insured under my policy. My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.**

_____
Named Insured or Legal Representative (Please Print)

_____
Policy Number

_____
Signature of a Named Insured or Legal Representative

_____
Date

_____
Company Name

_____
**Authorized Representative
or Countersignature (in States Where Applicable)**

**ENDORSEMENT No.** 18

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE     8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### NEW HAMPSHIRE UNINSURED MOTORISTS COVERAGE*

### OPTION FORM

I.    In keeping with the provisions of the laws of my state, I have been offered the opportunity to:

    1.    Elect a limit of coverage which is equal to the Limits of Insurance on this policy.

    2.    Completely reject Uninsured Motorists coverage on this policy.

II.    I hereby indicate my choice below.

    In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

    1.  ☐  Coverage desired at a limit equal to the Limits of Insurance.

    2.  ☐  Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage.** This rejection shall be binding upon every **Insured** and shall apply to this policy and to all renewal or policy replacements.

*    The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

_____

Signature of Applicant or **Named Insured**

_____

Date

It is agreed that if the **Insured** has chosen to elect Uninsured Motorists coverage, in Section V, Exclusions, Exclusion C is hereby deleted in its entirety and replaced by the following:

C.      Any  obligations  of  the  **Insured**  under  a  "No-Fault"  law.

It is further agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 19

**This endorsement, effective 12:01 AM:** July 1, 2001

**Forms a part of policy no.:** BE    8713546

**Issued to:** MCKESSON HBOC, INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

Commercial Umbrella Policy

CrisisResponse<sup>SM</sup> and Excess Casualty CrisisFund<sup>SM</sup>

**(Advancement of CrisisResponse Costs during a Crisis Management Event and Crisis Communications Management Insurance)**

---

## Additional Declarations

**Item 1. CrisisResponse Sublimit of Insurance:** $250,000     **Each Crisis Management Event And Aggregate**

**Item 2. Crisis Management Limit of Insurance:** $50,000     **Each Crisis Management Event And Aggregate**

**Item 3. Premium:**     $0

---

This policy is amended to provide for Advancement of **CrisisResponse Costs** during a **Crisis Management Event** and Crisis Communications Management Insurance pursuant to the terms, definitions, conditions and exclusions set forth below:

| I.    **INSURING AGREEMENTS-CrisisResponse and Excess Casualty CrisisFund** |
|---|

The following insuring agreements section is added to this policy for the purpose of the coverage provided by this endorsement:

A.    **Advancement of CrisisResponse Costs during a Crisis Management Event**

We will advance on behalf of the **Named Insured CrisisResponse Costs** that may be associated with damages covered by this policy arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **CrisisResponse Sublimit of Insurance**.

We will advance **CrisisResponse Costs** that may be associated with damages covered by this policy directly to third parties.

B.    **Crisis Communications Management Insurance**

We will pay on behalf of the **Named Insured Crisis Management Loss** arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **Crisis Management Limit of Insurance**.

*Archive Copy* © 1999 American International Group, Inc.

C.  A **Crisis Management Event** shall first commence at the time during the Policy Period when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and shall end at the earliest of the time when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

D.  There shall be no Retained Limit applicable to **CrisisResponse Costs** or **Crisis Management Loss**. We shall pay such **CrisisResponse Costs** or **Crisis Management Loss** from first dollar, subject to the other terms and conditions of this endorsement.

## II.   LIMITS OF INSURANCE

The following provisions are added to Section III. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A.  The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **CrisisResponse Sublimit of Insurance** shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B.  The **Crisis Management Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **Crisis Management Limit of Insurance** shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C.  We will have no obligation to advance **CrisisResponse Costs** or to pay **Crisis Management Loss** from the earliest of the time when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

## III.   DEFINITIONS

The following definitions are added to Section IV. Definitions for the purpose of the coverage provided by this endorsement:

A.  **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has reasonably been associated with or may be associated with:

   1.  damages covered by this policy that are in excess of the Retained Limit applicable to such damages; and

   2.  significant adverse regional or national media coverage.

   **Crisis Management Event** shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B.  **Crisis Management Firm** means any public relations firm or crisis management firm approved by us that is hired by the **Named Insured** to perform **Crisis Management Services** in connection with a **Crisis Management Event**. Attached to and forming a part of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the **Named Insured** without further approval by us.

*Archive Copy* © 1999 American International Group, Inc.                              Page 2 of 5

C. **Crisis Management Limit of Insurance** means the Crisis Management Limit of Insurance shown in Item 2 of the Additional Declarations of this endorsement.

D. **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

   1. Amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

   2. Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

E. **Crisis Management Service** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

F. **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

   1. Medical expenses;

   2. Funeral expenses;

   3. Psychological counseling;

   4. Travel expenses;

   5. Temporary living expenses;

   6. Expenses to secure the scene of a **Crisis Management Event**; and

   7. Any other expenses pre-approved by the Company.

   **CrisisResponse Costs** will not include defense costs or **Crisis Management Loss**.

G. **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 1 of the Additional Declarations of this endorsement.

H. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person designated as such and scheduled by written endorsement.

## IV. EXCLUSIONS

The following exclusions are added to Section V. Exclusions for the purpose of the coverage provided by this endorsement:

This insurance shall not apply to any **CrisisResponse Costs** or **Crisis Management Loss** in connection with a **Crisis Management Event**:

*Archive Copy* 1999 American International Group, Inc.

A. arising out of, based upon or attributable to the acts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B. arising out of, based upon or attributable to any pending or prior crisis, claim, or **Suit** as of the inception date of this policy;

C. arising directly or indirectly out of:

    1. any actual or alleged failure, malfunction or inadequacy of:

        a. any of the following, whether belonging to any **Named Insured** or to others:

            (1) computer hardware, including microprocessors;

            (2) computer application software;

            (3) computer operating systems and related software;

            (4) computer networks;

            (5) microprocessors (computer chips) not part of any computer system; or

            (6) any other computerized or electronic equipment or components; or

        b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph C1a of this exclusion

        due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

    2. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or on behalf of the **Insured** to determine, rectify or test for any potential or actual problems described in Paragraph C1 of this exclusion.

---

## V. CONDITIONS

The following conditions are added to Section VI. Conditions for the purpose of the coverage provided by this endorsement:

A. You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

    1. how, when and where the **Crisis Management Event** is taking or took place;

    2. the names and addresses of any injured persons and any witnesses; and

    3. the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

AIG Excess Casualty Claim Department
70 Pine Street
New York, NY  10270

B.  There shall be no requirement that you obtain prior written approval from us before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by you to perform the **Crisis Management Services** has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.  Any payments for **Crisis Management Loss** or  advancement of **CrisisResponse Costs** that we make under this endorsement:

    1.  shall not be deemed to be a determination of the **Insured's** liability with respect to any claim or **Suit** that results from a  **Crisis Management Event**; and

    2.  shall not create any duty to defend any **Suit** or to investigate any claim arising from a **Crisis Management Event**, nor any coverage obligations under this policy.

D.  If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the **Named Insured** by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement.  This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.  In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Management Event**  has occurred, the **Named Insured** may, at its own cost, retain the services of an approved **Crisis Management Firm** and/or advance **CrisisResponse Costs**. Provided, however, if the **Named Insured** elects to retain an approved **Crisis Management Firm** or to advance **CrisisReponse Costs**, we shall have no obligation to reimburse under this endorsement the **Named Insured**  for such costs or expenses.  The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative
or countersignature (in states where applicable)**

**AIG** AIG Excess Casualty®

## Excess Casualty CrisisFund®
### (Crisis Communications Management Insurance)

*Approved Crisis Management Firms*
*as of May 1,2002*

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Abernathy MacGregor Group** | | |
| <u>New York Office</u><br>501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Tel. (212) 343-0818<br>Cell (917) 449-9964 |
| | Rhonda Barnat, Managing Director<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Cell (917) 912-6378 |
| <u>Los Angeles Office</u><br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel. (213) 630-6550<br>Cell (213) 489-3443 | *Emergency Only*<br>Tel. (818) 957-5650<br>Cell (917) 940-3476 |
| **Citigate Sard Verbinnen** | | |
| <u>New York Office</u><br>630 Third Avenue<br>New York, NY 1 0017 | George Sard<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br><br><u>Citigate Sard Verbinnen web address:</u><br>www.sardverb.com<br><br>Paul Verbinnen<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br><br><u>Citigate Sard Verbinnen web ad dress:</u><br>www.sardverb.com | *Emergency Only*<br>Contact switchboard @<br>(212) 687-8080 |
| **Hill & Knowlton** | | |
| <u>New York Office</u><br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017 | Richard C. Hyde<br>Tel. (212) 885-0372<br>Cell (917) 816-2208<br>Fax: (212) 885-0570<br><br>Arthur Forster<br>Tel. (212) 885-0442<br>Cell: (908) 337-6853<br>Fax: (212) 885-0570<br>aforster@hillandknowlton.com | *Emergency Only*<br>H&K Crisis Pager<br>(888) 264-5193<br>24 Hours/7 Days |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

### Hill & Knowlton Continued

**Additional United States/Canada Offices:**
> Atlanta; Austin; Calgary; Chicago; Detroit; Ft. Lauderdale; Houston; Irvin e; Los Angeles; Montreal; Ottawa; Portland; Quebec City; Sacramento; San Francisco; San Juan; Seattle; Tampa; Toronto; Vancouver; Washington, D.C.

**International Offices:**
> **Latin America:** Bogota; Buenos Aires; Caracas; Mexico City; Sao Paulo; Santiago; Guatemala
> **Europe, Middle East, Africa:** Amsterdam; Aschaffenburg; Athens; Barcelona; Berlin; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Rome; Stockholm; Tallinn; Warsaw
> **Asia Pacific:** Auckland; Bangkok; Beijing; Canberra; Hong Kong; Kuala Lumpur; Melbourne; Seoul; Shanghai; Singapore; Sydney; Tokyo; Wellington

### Lexicon Communications Corp.

| | | |
|---|---|---|
| <u>Los Angeles Office</u><br>9200 Sunset Blvd.<br>Suite 1203<br>Los Angeles, CA 90069 | Steven B. Fink<br>Tel. (213) 346-1212<br>Cell (626) 253-1519<br>sfink<br><u>Lexicon Comm web address:</u><br>www.crisismanagement.com | **Emergency Only**<br>Contact switchboard @<br>(213) 346-1200, ext. 225 |

### PR21 (A Division of Edelman Worldwide)

| | | |
|---|---|---|
| <u>New York Office</u><br>79 Fifth Avenue, 17th Fl.<br>New York, NY 10003 | Jon Goldberg<br>Tel. (212) 299-8952<br>Fax (212) 462-1026/7 | **Emergency Only**<br>Cell (973) 699-7148<br>Pager (877) 386-8115 |

**Additional United States/Canada Offices:**
> Atlanta; Austin; Chicago; Dallas; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.

**International Offices:**
> **Latin America:** Buenos Aires; Mexico City; Sao Paulo
> **Europe:** Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris
> **Asia Pacific:** Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei

### Robinson Lerer & Montgomery

| | | |
|---|---|---|
| <u>New York Office</u><br>75 Rockefeller Plaza<br>6th Floor<br>New York, NY 10019 | Michael J. Gross<br>Tel. (212) 484-7721<br>Cell (917) 853-0620<br>Fax (212) 484-7411<br>mgross52@aol.com | **Emergency Only**<br>Contact switchboard @<br>(212) 484-6100 |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Sitrick and Company Inc.** | | |
| <u>Los Angeles Office</u><br>2029 Century Park East<br>Suite 1750<br>Los Angeles, CA 90067 | Michael S. Sitrick<br>Tel. (310) 788-2850<br>Cell (310) 788-2855 | ***Emergency Only***<br>(310) 358-1011<br>24 hours/7 days |

Additional United States Offices: New York and Washington, D.C.

ENDORSEMENT No. 20

**This endorsement, effective 12:01 AM:**  July 1, 2001

**Forms a part of policy no.:**  BE     8713546

**Issued to:**  MCKESSON HBOC, INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### COMMERCIAL UMBRELLA

### VERMONT UNINSURED MOTORISTS COVERAGE*

Exclusion C of this policy is hereby deleted in its entirety and replaced by the following:

**C.**     Any obligation of the **Insured** under a "No Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists Coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

### OPTION FORM

**I.**     In keeping with the provisions of the laws of Vermont, I have been offered the opportunity to:

   **1.**     Elect a limit of **Bodily Injury** Uninsured Motorists coverage which is equal to the Limits of Insurance on this policy.

   **2.**     Elect a limit of **Bodily Injury** Uninsured Motorists coverage which is lower than the Limits of Insurance on this policy.

   In both of the above options, the **Property Damage** Uninsured Motorists Limit under this policy shall be $10,000.

**II.**     I hereby indicate my choice below (1 or 2).

   In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal and the **Property Damage** Uninsured Motorists limit on your primary policy must be $10,000. If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

   **1.  (  )** Coverage desired at a **Bodily Injury** limit equal to the Limits of Insurance.

   **2.  (  )** Coverage desired at a **Bodily Injury** limit lower than the Limits of Insurance.

   LIMIT  OPTIONS

   (  )

59264 (05/94)
AH0750

***Archive Copy***               Page 1 of 2

**III.**    Solely as respects the coverage provided by this endorsement, Exclusion D. 1 is deleted.


\*The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.


For any change in coverage or limit, please notify us or your agent in writing.



_____
Signature of Applicant or **Named Insured**



All other terms and conditions of this policy remain unchanged.


_____
**AUTHORIZED REPRESENTATIVE**

59264 (05/94)                    ***Archive Copy***         Page 2 of 2
AH0750

# POLICY COVER PAGE

**Date Printed:** 11/13/02                  **Policy/Quote Number:** 2131289
**Time Printed:** 000001

| | |
|---|---|
| **Underwriter Name:** | JOHN MOHS |
| **Issuing Office Division:** | |
| **Issuing Office Branch:** | 0034 |
| **Issuing Office Region:** | |
| **Operator Name:** | SMITH            ,GRACE |
| **Operator Telephone:** | 212-458-3493 |
| **Policy Effective Date:** | July 1, 2002 |
| **Transaction Type:** | REN |
| **Set Copy Name:** | |
| **Set Copy Mailing Instructions:** | |

EPS TRACKING-ID:   0000684831000002317
JOB-ID:

*Archive Copy*

(Ed. 4-99)

**FORMS SCHEDULE**

**Named Insured:**     MCKESSON CORPORATION

**Policy Number:**     BE     2131289
**Effective 12:01 AM:**  July 1, 2002

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | COMM UMB POL FORM | 57697 | (06/93) |
| 1 | SCHEDULE OF UNDERLYING | MNSCPT | (07/02) |
| 2 | SCHEDULE OF RETAINED LIMITS | MNSCPT | (07/02) |
| 3 | NAMED INSURED | MNSCPT | (07/02) |
| 4 | EMPLOYEE BENEFITS LIABILITY FOLLOW FORM | MNSCPT | (07/02) |
| 5 | NAMED PERIL & TIME ELEMENT POLLUTION | MNSCPT | (07/02) |
| 6 | ADDITIONAL INSURED - VOLUNTEER WORKERS | MNSCPT | (07/02) |
| 7 | NON-CONCURRENCY | MNSCPT | (07/02) |
| 8 | MEDICAL PROFESSIONALS LIABILITY EXCL | MNSCPT | (07/02) |
| 9 | CALIF AMENDATORY | 62429 | (04/95) |
| 10 | CRISIS RESPONSE AND EXCESS CASUALTY CRISIS FUND | 74641 | (12/99) |
| 11 | KNOWLEDGE OF OCCURRENCE | 62224 | (03/95) |
| 12 | NOTICE OF OCCURRENCE | 62223 | (03/95) |
| 13 | UNINTENTIONAL ERRORS AND OMISSIONS | 62222 | (03/95) |
| 14 | DEFENSE IN LIMIT | 60416 | (05/94) |
| 15 | LOT OR BATCH PROVISION | 60862 | (08/94) |
| 16 | RETAINED LIMIT | MNSCPT | (07/02) |
| 17 | FOLLOW-FORM ENDR | 60427 | (05/94) |
| 18 | FLORIDA UNINSURED MOTORIST COVERAGE | MNSCPT | (07/02) |
| 19 | INDIANA UNINSURED MOTORISTS COVERAGE | 76670 | (09/00) |
| 20 | LA UNINSURED/UNDERINSURED MOTORIST BODILY INJURY C | 62596 | (06/98) |
| 21 | NH UNINSURED MOTORISTS COV | 62413 | (04/95) |
| 22 | VT UNINSURED MOTORISTS COVERAGE | 59264 | (05/94) |

*Archive Copy*

# Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word **"Insured"** means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## Insuring Agreements

**I.      Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of  **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the **Insured,** then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

**II.     Defense**

**A.**      We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

**1.**      The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

**2.**      Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the  **Insured.**

**B.**      When we assume the defense of any claim or suit:

**1.**      We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

**2.**      We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured:**

**a.**      premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

**b.**      premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish any such bond;

**c.**      all costs taxed against the **Insured** in any claim or **suit** we defend;

*Archive Copy*                    (1)

    **d.**    pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

    **e.**    all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

    **f.**    the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

**C.**    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

**III.**    **Limits of Insurance**

**A.**    The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    **1.**    **Insureds;**

    **2.**    Claims made or **suits** brought; or

    **3.**    Persons or organizations making claims or bringing **suits**.

**B.**    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

    **1.**    Damages included in the **Products-Completed Operations Hazard;** and

    **2.**    Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.**    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

**D.**    Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence.**

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

    **1.**    In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

    **2.**    In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

*Archive Copy*       (2)

**E.**     Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

**1.**     The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

**2.**     The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured;**

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

**IV.   Definitions**

**A.**     **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

**1.**     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**2.**     Oral or written publication of material that violates a person's right of privacy;

**3.**      Misappropriation of advertising ideas or style of doing business; or

**4.**      Infringement of copyright, title or slogan.

**B.**     **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But **auto** does not include **mobile equipment.**

**C.**     **Bodily Injury** means bodily injury, sickness, disability or disease.  **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

**D.**     **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

**1.**     It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

**2.**     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**1.**     The repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

**2.**     Your fulfilling the terms of the contract or agreement.

**E.**     **Insured** means each of the following, to the extent set forth:

**1.**     The **Named Insured**, meaning:

**a.**     any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

**b.**     any organization newly acquired, controlled or formed by you during the policy period but only:

57697 (6/93)                      ***Archive Copy***                (3)
AH0034

1)   as respects **Occurrences** taking place after you acquire, take control or form such organization;

2)   if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

3)   if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2.   If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3.   If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

4.   Any person or organization, other than the **Named Insured,** included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5.   Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6.   Any person, other than one of your employees, or organization while acting as your real estate manager.

7.   Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

a.   liability arising out of operations conducted by you or on your behalf; or

b.   facilities owned or used by you.

8.   Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your be half and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

F.   **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G.   **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.   Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

   a. equipment designed primarily for:

      1) snow removal;

      2) road maintenance, but not construction or resurfacing; or

      3) street cleaning;

   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

H. **Occurrence** means:

1. As respects **Bodily Injury** or **Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured.** All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence;**

2. As respects **Personal Injury,** an offense arising out of your business that results in **Personal Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3. As respects **Advertising Injury,** an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

I. **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

*Archive Copy* (5)

4.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5.   Oral or written publication of material that violates a person's right of privacy.

**J.**   **1.**   **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

    **a.**   products that are still in your physical possession; or

    **b.**   work that has not yet been completed or abandoned.

  **2.**   **Your Work** will be deemed completed at the earliest of the following times:

    **a.**   When all of the work called for in your contract has been completed.

    **b.**   When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **c.**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **3.**   This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

    **a.**   the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    **b.**   the existence of tools, uninstalled equipment or abandoned or unused materials.

**K.**   **Property Damage** means:

  **1.**   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **2.**   Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

**L.**   **Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged.  **Suit** includes:

  **1.**   An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

  **2.**   Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**M.**   **Your Product** means:

  **1.**   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **a.**   you;

    **b.**   others trading under your name; or

    **c.**   a person or organization whose business or assets you have acquired; and

  **2.**   Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

*Archive Copy*                    (6)

**Your Product** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product;** and

2. The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**N.** **Your Work** means:

1. Work or operations performed by you or on your behalf; and

2. Materials, parts or equipment furnished in connection with such work or operations.

**O.** **Your Work** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work;** and

2. The providing of or failure to provide warnings or instructions.

**V.** **Exclusions**

This insurance does not apply to:

**A.** Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

**B.** Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

**C.** Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

**D.** **Property Damage** to:

1. Property you own, rent, occupy or use;

2. Personal property in the care, custody or control of the **Insured**.

**E.** **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work;** or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**F.** **Property Damage** to **Your Product** arising out of it or any part of it.

**G.** **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   1.   **Your Product;**

   2.   **Your Work;** or

   3.   **Impaired Property**

   if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.   Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

   However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

   1.   This exclusion shall not apply; and

   2.   The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.   **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

   However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

   1.   This exclusion shall not apply; and

   2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.   **Personal Injury** or **Advertising Injury:**

   1.   Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

   2.   Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   3.   Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

   4.   For which the **Insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.   **Advertising Injury** arising out of:

   1.   Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   2.   The failure of goods, products or services to conform with advertised quality or performance;

   3.   The wrong description of the price of goods, products or services; or

   4.   An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

57697 (6/93)                              **Archive Copy**                    (8)
AH0034

**M.**  **1.**  **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

**2.**  Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

**3.**  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion M. shall not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

**a.**  Heat, smoke or fumes from a hostile fire;

**b.**  The upset, overturn or collision of a motor vehicle; or

**c.**  The **Products-Completed Operations Hazard;**

if insurance for such **Bodily Injury, Property Damage** or **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance.  However, the insurance provided by our policy for such **Bodily Injury, Property Damage** or **Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

As used in this exclusion:

**a.**  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. "Waste material" includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

**b.**  A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**N.**  **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**O.**  **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**.

However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

**P.**  **1.**  **Bodily Injury, Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

**2.**  Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

**3.**  Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

*Archive Copy*                    (9)

**Q.**   **Bodily Injury** or **Personal Injury** to:

    **1.**   A person arising out of any:

        **a.**   Refusal to employ that person;

        **b.**   Termination of that person's employment; or

        **c.**   Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **2.**   The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

    **1.**   Whether the **Insured** may be liable as an employer or in any other capacity; and

    **2.**   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**R.**   **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of or by reason of:

    **1.**   The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

    **2.**   Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

    **3.**   Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

**S.**   **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

    **1.**   Causing or contributing to the intoxication of any person;

    **2.**   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **3.**   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    **1.**   This exclusion shall not apply; and

    **2.**   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

**T.**   **Bodily Injury** or **Property Damage:**

    **1.**   **a.**   with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

*Archive Copy*            (10)

1. **b.** resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

    **a.** the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

    **b.** the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

    **c.** the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3. As used in this exclusion:

    **a.** "hazardous properties" includes radioactive, toxic or explosive properties;

    **b.** "nuclear material" means source material, special nuclear material or by-product material;

    **c.** "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

    **d.** "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    **e.** "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

    **f.** "nuclear facility" means:

        **1)** any nuclear reactor;

        **2)** any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

        **3)** any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

        **4)** any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    **g)** "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

       h)    **Property Damage** includes all forms of radioactive contamination of property.

**VI.**   **Conditions**

**A.**   Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

**B.**   Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

**C.**   Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

**D.**   Cancellation

  **1.**   You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

  **2.**   We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

  **3.**   The policy period will end on the day and hour stated in the cancellation notice.

  **4.**   If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

  **5.**   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

  **6.**   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

  **7.**   The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

  **8.**   Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**E.**   Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.**   Duties In The Event Of An **Occurrence,** Claim Or **Suit**

**1.**   You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy. To the extent possible, notice should include:

  **a.**   how, when and where the **Occurrence** took place;

  **b.**   the names and addresses of any injured persons and witnesses; and

  **c.**   the nature and location of any injury or damage arising out of the **Occurrence.**

**2.**   If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

**3.**   You and any other involved **Insured** must:

  **a.**   immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit;**

  **b.**   authorize us to obtain records and other information;

  **c.**   cooperate with us in the investigation, settlement or defense of the claim or **suit;** and

  **d.**   assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

**4.**   No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G.**   Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

**H.**   Legal Actions Against Us

There will be no right of action against us under this insurance unless:

**1.**   You have complied with all the terms of this policy; and

**2.**   The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

**I.**   Maintenance of Underlying Insurance

During the period of this policy, you agree:

**1.**   To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

**2.** That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

**3.** That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

**4.** That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**J.**   Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K.**   Premium

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**L.**   Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**M.**   Separation of **Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

**1.** As if each **Named Insured** were the only **Named Insured**; and

**2.** Separately to each **Insured** against whom claim is made or **Suit** brought.

**N.**   Subrogation

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

Any recoveries shall be applied as follows:

**1.** Any interests, including the **Insured,** that have paid an amount in excess of our payment under this policy will be reimbursed first;

*Archive Copy*       (14)

**2.** We then will be reimbursed up to the amount we have paid; and

**3.** Lastly, any interests, including the **Insured,** over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the **Insured**, in the ratio of their respective recoveries as finally settled.

**O.** Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P.** When Loss Is Payable

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured.**

**In Witness Whereof**, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.


SECRETARY                                          PRESIDENT

*Archive Copy*                    (15)

**ENDORSEMENT NO.** 1

**This endorsement, effective 12:01 AM:**  July 1, 2002

**Forms a part of policy no.:**  BE    2131289

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | INSURER POLICY TERM | LIMITS OF LIABILITY |
|---|---|---|
| Employers Liability (All other States) | Old Republic 7/1/02 - 03 | $5,000,000 BI Each Accident $5,000,000 BI/Disease Policy Aggregate $5,000,000 BI/Disease Each Employee |
| Employers Liability (Nevada & Connecticut | Old Republic 7/1/02 - 03 | $1,900,000 Total Limit excess of $100,000 Self Insured Retention Each Indemnity Only |
| Foreign Automobile & General Liability | Ins Co State of PA 10/1/01 - 02 & Renewal | $1,000,000 Each Occurrence $2,000,000 General Aggregate |
| Foreign Employers Liability | Ins Co. State of PA 10/1/01 - 02 & Renewal | $1,000,000 Total Limit |
| Druggist Liability (McKesson Medication Management) | St. Paul 10/29/01 - 02 & Renewal | $25,000,000 Each Person Limit $25,000,000 Annual Total Limit |

Note:  $250,000 Indemnity only SIR will apply to each claimant upon the erosion of the $25,000,000 Annual total Limit for Pharmacist Druggist Liability

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative or countersignature (where required by law)**

**ENDORSEMENT NO.2**

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE     2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### SCHEDULE OF RETAINED AMOUNTS

| COVERAGE | PERIOD OF RETAINED LIMIT | LIMITS OF LIABILITY |
|---|---|---|
| General Liability | Self-Insured Retention 7/1/02 - 03 | $5,000,000 Each Accident (Defense Included) |
| Automobile Liability | Self-Insured Retention 7/1/02 - 03 | $5,000,000 Each Accident |
| Automobile Liability (Canada) | Self-Insured Retention 7/1/02 - 03 | $5,000,000 Each Accident |

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative or countersignature (where required by law)**

**ENDORSEMENT NO.**3

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE    2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

<u>**NAMED INSURED ENDORSEMENT**</u>

**DOMESTIC/FOREIGN CORPORATIONS AND THEIR SUBSIDIARIES**

Beldere Corporation
   S.K.U., Inc. (50%)
California Golden State Finance Company
   CGSF Funding Corporation
City Properties, S.A. (20%)
Crocker Plaza Company
Foremost de Venezuela, S.A. (39.69%)
Foremost Iran Corporation
Foremost Shir, Inc.
Foremost Tehran, Inc.
Golden State Insurance Company Limited
Goodman Manufacturing Company
HealthMart Systems, Inc.
Intercal, Inc. (15%)
J. Knipper and Company, Inc.
KWS & P, Inc.
KWS & P/SFA, Inc.
   Clinicians Database, L.L.C.
MCK Acquisition Corp.
McKesson Asia-Pacific Pty Limited
   McKesson New Zealand Limited
McKesson Automation, Inc.
McKesson Automation Systems Inc.
   McKesson Automation Canada Inc.
   SI/Baker, Inc. (50%)
McKesson BioServices Corporation
   Pharmaceutical Support Services, Inc.
McKesson Canada, Inc.
   Medis Health and Pharmaceutical Services Inc.
     Good Neighbour Pharmacy Ltd.
     McKesson Canada Health Care Partners Ltd.
     Medis Health and Pharmaceutical Services Alberta Limited
     Medis Health and Pharmaceutical Services Limited

*Archive Copy*

**ENDORSEMENT NO.** (Continued)

    1258741 Ontario Inc.
McKesson Capital Corp.
McKesson (Cayman Islands) Inc.
        NADRO, S.A. de C.V. (22.67%)
McKesson Development Corp.
McKesson Finance Company of Canada
        Medis Health and Pharmaceutical Services Inc.
            Good Neighbour Pharmacy Ltd.
            McKesson Canada Health Care Partners Ltd.
            Medis Health and Pharmaceutical Services Alberta Limited
            Medis Health and Pharmaceutical Services Limited
            128741 Ontario Inc.
McKesson Health Solutions Arizona Inc.

McKesson Trading Company
McKesson Transportation Systems, Inc.
N.V. Medicopharma (10%)
Penn-Chem Corporation
Sunbelt Beverage Corporation (17%)
Zee Medical Canada, Inc.
Zee Medical, Inc.
        CPG Industries, Inc.
        Roth Medical Services, Inc.
McKesson Information Solutions Inc.
        Access Health Puerto Rico, Inc.
        HBO & Company (VI), Inc.
        HBOC Medical Ltd.
        McKesson Health Solutions Canada Inc.
        McKesson Health Solutions Holdings Inc.
            McKesson Health Solutions LLC
                Access Health UK Ltd.
                McKesson Health Solutions Texas Inc.
        McKesson Information Solutions Canada Ltd.
        McKesson Information Solutions Holdings France SARL
            McKesson Information Solutions France SA
        McKesson Information Solutions Holdings Limited
            McKesson HBOC Gibraltar Limited
            McKessonHBOC International S.a.r.l.
            McKesson HBOC Finance S.a.r.l.
                McKesson HBOC Holdings S.a.r.l.
                    McKesson Information Solutions UK Limited
                        Data-Med Computer Services, Ltd.
                        HBO & Company (ST & SW) Ltd.
                    McKesson Information Solutions Ireland Limited
                McKesson HBOC Holdings (Netherlands) B.V
                    VPI Gezondheidszorg B.V.
                McKesson Information Solutions Capital S.a.r.l.
            McKesson Services Inc.
McKesson Medical-Surgical Holdings Inc.
        McKesson Medical-Surgical Inc.

*Archive Copy*

**ENDORSEMENT NO.** (Continued)

McKesson Medical-Surgical FDT Inc.
McKesson Medical Surgical Manufacturing Inc.
McKesson Medical Surgical Iowa Inc.
McKesson Medical-Surgical Iowa Supply Inc.
McKesson Medical-Surgical Maine Inc.
McKesson Medical-Surgical Minnesota, Inc.
McKesson Medical-Surgical MediMart Inc.
McKesson Medical-Surgical MediNet Inc.
McKesson Medical-Surgical Minnesota Supply Inc.
McKesson Medical-Surgical TBC Inc.
McKesson Medication Management Holdings Inc.
McKesson Medication Management LLC
McKesson Medication Management Puerto Rico Inc.
Purchasing Alliance for Clinical Therapeutics, LLC
McKesson Property Company, Inc.
DC Land Company
DCAZ Land Company
Foremost Homes Hawaii, Ltd.
HF Land Company
McKesson Specialty Corporation
McKesson Specialty Pharmaceuticals LLC (99%)


Inactive
In Bankruptcy
Part-owned by more than one McKesson Corporation Entity
1% owned by McKesson Specialty Corporation


All other terms and conditions of this policy remain unchanged.


All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.4**

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE  2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

<u>**EMPLOYEE BENEFITS LIABILITY INSURANCE ENDORSEMENT**</u>
**(WRONGFUL ACTS)**
**(CLAIMS MADE VERSION)**

**PROVIDES CLAIMS MADE COVERAGE - PLEASE READ CAREFULLY**

This insurance shall apply to any  "Wrongful Act" of the  **Insured** or of any other person for whom the **Insured** is legally liable in the "administration" of the  **Insured's** "Employee Benefit Programs" but only in excess of the Employee Benefits Liability Retained Amount(s) as shown in the Schedule of Retained Amounts. However, this insurance shall only apply if claim is first made against the **Insured** during the policy period and is attributable to an  **Occurrence** that takes place on or after the Retroactive Date of _____ and before the end of the policy period.

However, the insurance provided by this policy for Employee Benefits Liability Insurance shall not apply to:

1.  Any dishonest, fraudulent, criminal or malicious act, libel, slander discrimination or humiliation,

2.  **Bodily Injury**, **Property Damage**, **Personal Injury** or **AdvertisingInjury**,

3.  Any claim for failure of performance of contract by an insurer:

4.  Any claim  based on the  **Insured's** failure to comply with any law concerning worker's compensation, unemployment insurance, social security  or disability benefits,

5.  Any claim based upon the failure of any investments, including but not limited to stock, to perform as represented by any  **Insured**,

6.  Advice given by any **Insured** to an employee to participate in any investment plan including but not limited to stock subscription plans,

7.  All sums which the **Insured** shall become legally obligated to pay as loss because of any "Breach of Fiduciary Duty" by the **Insured** or by any person the **Insured** is legally responsible for and arising out of the  **Insured's** activity as a fiduciary of any Plan covered by this endorsement, or

*Archive Copy*

**ENDORSEMENT NO.**  (Continued)

8.     Any claim made against the **Insured** based on or attributable to any failure or omission on the part of the **Insured** to effect and maintain insurance or bonding for Plan property or assets.

For the purposes of this endorsement, the following definitions apply:

1.     "Employee Benefit  Programs" shall mean  Group Life  Insurance, Group Accident  or Health Insurance, Pension Plans,  Profit Sharing Plans, Employee  Stock Subscription Plans, Worker's  Compensation,  Unemployment Insurance,  Social Security and Disability  Benefits and any  other  similar  employee  benefits  instituted  after  the effective  date of  this endorsement  provided  we are notified  within thirty (30)  days after the institution of such benefits.

2.     "Administration" shall mean:

       a.      Giving counsel to employees with respect to Employee Benefit Programs,

       b.      Interpreting Employee Benefit Programs,

       c.      Handling of records in connection with Employee Benefit Programs, or

       d.      Effecting enrollment, termination or cancellation of employees under Employee Benefit Programs,

       provided all such acts are authorized by you.

3.     "Wrongful Acts" shall mean any actual or alleged negligent act, error or omission in the "administration" of the **Insured's** "Employee Benefits Programs".

4.     "Breach of  Fiduciary Duty"  shall mean  the  violation  of any  responsibilities, obligations or duties  imposed upon fiduciaries  by the Employee  Retirement Income Security Act of  1974 or amendments thereto  with respect  to any Plan  covered by this endorsement.

*Archive Copy*

ENDORSEMENT NO.    (Continued)

## OPTIONAL EXTENDED REPORTING PROVISION

We will provide an Extended Reporting Period of  1  year for the Employee Benefits Liability insurance provided by this endorsement only if the policy is either cancelled or not renewed by you or by us for any reason except non-payment of premium. Nonrenewal shall mean the refusal by us to renew the policy on any terms. Nonrenewal shall not mean change in premium, Retained Amounts or any other terms and conditions.

A claim first made in writing during the Extended Reporting period will be deemed to have been made on the last day of the policy period provided that the claim is for damages because of a "Wrongful Act" that occurred before the end of the policy period but not before the Retroactive Date. The Extended Reporting Period will not reinstate or increase the Limits of Insurance or extend the policy period.

You must make a written request for this Extended Reporting Period within thirty (30) days after the expiration date of the policy period and must pay the additional premium, which we will determine, within thirty (30) days after said request. We will then issue an Extended Reporting Period Endorsement for a period of  1  year from the end of the policy period. The Extended Reporting Period will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement cannot be cancelled.

The insurance provided by this Extended Reporting Period will be excess over any other valid and collectible insurance available to the Insured whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the endorsement takes effect.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.5**

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE 2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### ADDITIONAL INSURED - VOLUNTEER WORKERS

"Definition E. of Section IV" is amended to include as an Insured any person(s ) who are volunteer worker(s) for you, but only while acting at the direction of, and within the scope of their duties for you. However, no volunteer worker(s) are insured for:

1.  "Bodily Injury" or "Personal Injury"

    A)  To you, to your partners or members (if you are a partnership or joint venture), to your other volunteer worker(s), or to your "employees" arising out of and in the course of their duties for you,

    B)  To the spouse, child, parent, brother or sister of your volunteer worker(s) or your "employees" as a consequence of paragraph 1a. above,

    C)  For which there is any obligation to share damages because of the injury described in paragraph 1.a above, or

    D)  Arising out of his or her providing or failing to provide professional health care services.

2.  "Property Damage" to property,

    A)  Owned, occupied, or used by,

    B)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, and of your volunteer worker(s), your "employees" or, if you are a partnership or joint venture, any partner or member.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 6


**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE 2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.


<u>**NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT**</u>
**(Defense Expenses Inside S.I.R., Version 2)**


Exclusion M of this policy is hereby deleted in its entirety and replaced by the following:

This insurance does not apply to:

1.   **Bodily Injury, Property Dama ge or Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world,

2.   Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants, or

3.   Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

However, this exclusion does not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

1.   Any discharge, dispersal, seepage, migration, release or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot and civil commotion, flood, earthquake, collision, or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage,

2.   The **Products - Completed Operations Hazard**, or

3.   Any discharge, dispersal, seepage, migration, release or escape of pollutants that meets all of the following conditions:


*Archive Copy*

**ENDORSEMENT NO.**  (Continued)

**a.** It was accidental and neither expected nor intended by the **Named Insured**. This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury, Property Damage or Personal Injury** could occur, and

**b.** It was demonstrable as having commenced on a specific date during the term of this policy, and

**c.** Its commencement became known to the **Named Insured** within twenty (20) calendar days and was further reported to the Risk Management Department within a reasonable time frame, and

**d.** Its commencement was reported in writing to us within eighty (80) calendar days of becoming known to the Risk Management Department, and

**e.** Reasonable effort was expended by the **Named Insured** to terminate the situation as soon as conditions permitted.

However, nothing contained in this provision **3.** shall operate to provide any coverage with respect to:

**a.** Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material,

**b.** Any fines or penalties,

**c.** Any clean up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion **c.** shall not serve to deny coverage for third party clean up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority,

**d.** Acid rain,

**e.** Clean up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said pollutants, or

**f.** Water pollution caused by oil or its derivatives.

It is further agreed that solely as respects any coverage granted by this endorsement:

**1.** The Self Insured Retention in Item 3. D. of the Declarations is amended to $5,000,000,

**2.** The Self Insured Retention shall include "Defense Expenses."

*Archive Copy*

**ENDORSEMENT NO.** (Continued)

"Defense Expenses" means a payment allocated to a specific loss, claim or **suit** for its investigation, settlement or defense, including but not limited to:

    a. attorneys' fees and all other investigation, loss adjustment and litigation expenses,

    b. premiums on bonds to release attachments,

    c. premiums on appeal bonds required by law to appeal any claim or **suit**,

    d. costs taxed against the **Insured** in any claim or **suit**,

    e. pre-judgment interest awarded against the **Insured**,

    f. interest that accrues after entry of judgment,

**3.** In Section II, Defense, provision A. 2. is hereby deleted in its entirety, and

**4.** We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

It is further agreed that in the event of a disagreement as to the interpretation of this endorsement, the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item I of the declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.**7

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE    2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### NON-CONCURRENCY ENDORSEMENT

Whereas the underlying policy (ies) listed in the Schedule of Underlying Insurance, including renewals or replacements thereof, are non-concurrent with the policy period hereunder, and,

In consideration of the premium charged in the event of reduction or exhaustion of the aggregate limit (s) of the underlying policy (ies) listed in the Schedule of Underlying Insurance by reason of losses in respect of accidents or occurrences prior to the inception of this excess policy shall, subject to the terms and conditions of the underlying insurance:

1.        In the event of reduction shall apply in excess of the reduced underlying limit

2.        In the event of exhaustion continue inforce as underlying insurance,

Anything in this endorsement to the contrary notwithstanding this policy applies only to occurrences happening during the policy period

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.8**

**This endorsement, effective 12:01 AM:**  July 1, 2002

**Forms a part of policy no.:**  BE    2131289

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**MEDICAL PROFESSIONALS LIABILITY EXCLUSION**

This insurance does not apply to **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of the rendering of or failure to render, during the policy period, the following professional services:

(A)    Medical, surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith,

(B)    Furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances,

(C)    Handling of or performing postmortem examinations on human bodies, or

(D)    Service by any person as a member of a formal accreditation or similar professional board or committee of the **Named Insured**, or as a person charged with the duty of executing directives of any such board or committee.

It is also agreed that any **Bodily Injury** sustained by any patient or other person while seeking or being administered professional services shall not be covered under this policy except when such **Bodily Injury** occurs as a direct result of one or more of the following perils and then only if said perils occur on the **Insured's** premises:

1.    Fire or lightning,
2.    Windstorm or hail,
3.    Explosion,
4.    Riot, strike or civil commotion,
5.    Hazards involving any aircraft or vehicle,
6.    Sonic shock waves,
7.    Smoke,
8.    Vandalism or malicious mischief,
9.    Sprinkler leakage,
10.    Elevator malfunction,
11.    Earthquake or flood,

Page 1 of 2

*Archive Copy*

**ENDORSEMENT NO.** (Continued)

12. Structural collapse of building, or
13. Ownership, maintenance or use of premises and all operations necessary or incidental thereto.

Section A and B do not apply if such coverage is provided by a policy listed in the Schedule of Underlying Insurance.

All other terms and conditions on this policy remain unchanged.

Page 2 of 2

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

<span> </span>

**Authorized Representative or countersignature (where required by law)**

## ENDORSEMENT No. 9

**This endorsement, effective 12:01 AM:**  July 1, 2002

**Forms a part of policy no.:**  BE    2131289

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### COMMERCIAL UMBRELLA

### <u>CALIFORNIA AMENDATORY ENDORSEMENT</u>

In Section VI, Conditions, Condition D, Cancellation, is hereby deleted in its entirety and replaced by the following:

**D.**    Cancellation/Nonrenewal/Increase In Premium, Reduction In Limits Or Change In Conditions Of Coverage

<u>Cancellation</u>

1.    You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.    New policies in effect for sixty (60) days or less.

   We may cancel this policy. If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancel-lation is to take effect. If we cancel for any other reason, we must mail to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice. Such notice will include the reason or reasons for cancel-lation.

3.    New policies in effect for more than sixty (60) days and any renewal policy.

   We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

   a.    Non-payment of premium, including payment due on a prior policy issued by us and due during the current policy term covering the same risks;

   b.    A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

   c.    Discovery of fraud or material misrepresentation by either of the following:

      1.    You or other **Insureds** or your representative in obtaining the insurance; or

      2.    You or your representative in pursuing a claim under the policy.

   d.    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or other **Insureds** or a representative of same, which materially increase any of the risks insured against;

   e.    Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of

Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan if the failure materially increases any of the risks insured against;

f.   A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

g.   A determination by the commissioner that a continuation of the policy coverage could place us in violation of the laws of this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

h.   A change by you or other **Insureds** or a representative of same in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy;

i.   A material change in limits, type or scope of coverage or exclusions in one or more of the underlying policies;

j.   Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse; or

k.   A reduction in financial rating or grade of one or more insurers insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less then ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

4.   The policy period will end on the day and hour stated in the cancellation notice.

5.   If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

6.   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

7.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.   The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

9.   Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

Nonrenewal

If we decide not to renew this policy or if we intend to condition renewal upon reduction of limits, elimination of coverages, increase in deductibles, increase of more than 25 percent in the rate upon which the premium is based or upon requirements relating to the underlying policy or policies, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of nonrenewal at least sixty (60) days but no more than one hundred twenty (120) days prior to the end of the policy period. The notice shall contain the reason or reasons for nonrenewal of the policy.

Increase in Premium, Reduction In Limits Or Change In Conditions Of Coverage

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1. Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2. Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3. A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4. A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in the policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 10

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE   2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

Commercial Umbrella Policy

CrisisResponse ℠ and Excess Casualty CrisisFund ℠

(Advancement of CrisisResponse Costs during a Crisis Management Event and Crisis Communications Management Insurance)

---

## Additional Declarations

**Item 1.   CrisisResponse Sublimit of Insurance:** $250,000          **Each Crisis Management Event And Aggregate**

**Item 2.   Crisis Management Limit of Insurance:** $50,000          **Each Crisis Management Event And Aggregate**

**Item 3.   Premium:**                         $0

---

This policy is amended to provide for Advancement of **CrisisResponse Costs** during a **Crisis Management Event** and Crisis Communications Management Insurance pursuant to the terms, definitions, conditions and exclusions set forth below:

| I. | INSURING AGREEMENTS-CrisisResponse and Excess Casualty CrisisFund |
|---|---|

The following insuring agreements section is added to this policy for the purpose of the coverage provided by this endorsement:

A.   **Advancement of CrisisResponse Costs during a Crisis Management Event**

We will advance on behalf of the **Named Insured CrisisResponse Costs** that may be associated with damages covered by this policy arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **CrisisResponse Sublimit of Insurance**.

We will advance **CrisisResponse Costs** that may be associated with damages covered by this policy directly to third parties.

B.   **Crisis Communications Management Insurance**

We will pay on behalf of the **Named Insured Crisis Management Loss** arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **Crisis Management Limit of Insurance**.

*Archive Copy* © 1999 American International Group, Inc.                    Page 1 of 5

C.  A **Crisis Management Event** shall first commence at the time during the  Policy Period when  a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and shall end  at the earliest of the time when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

D.  There shall be no Retained Limit applicable to **CrisisResponse Costs** or **Crisis Management Loss**. We shall pay such **CrisisResponse Costs** or **Crisis Management Loss** from first dollar, subject to the other terms and conditions of this endorsement.

## II.  LIMITS OF INSURANCE

The following provisions are added to Section III. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A.  The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the  Policy Period. This **CrisisResponse Sublimit of Insurance**  shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B.  The **Crisis Management Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This  **Crisis Management Limit of Insurance** shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C.  We will have no obligation to advance **CrisisResponse Costs** or to pay **Crisis Management Loss** from the earliest of the time when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

## III.  DEFINITIONS

The following definitions are added to Section IV. Definitions for the purpose of the coverage provided by this endorsement:

A.  **Crisis Management  Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has reasonably been associated with or may be associated with:

   1.  damages covered by this policy that are in excess of the Retained Limit applicable to such damages; and

   2.  significant adverse regional or national media coverage.

   **Crisis Management Event** shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B.  **Crisis Management Firm** means any public relations firm or crisis management firm approved by us that is hired by the **Named Insured** to perform **Crisis Management Services** in connection with a  **Crisis Management Event**. Attached to and forming a part of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the **Named Insured** without further approval by us.

C. **Crisis Management Limit of Insurance** means the Crisis Management Limit of Insurance shown in Item 2 of the Additional Declarations of this endorsement.

D. **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

1. Amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

2. Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

E. **Crisis Management Service** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

F. **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1. Medical expenses;

2. Funeral expenses;

3. Psychological counseling;

4. Travel expenses;

5. Temporary living expenses;

6. Expenses to secure the scene of a **Crisis Management Event**; and

7. Any other expenses pre-approved by the Company.

**CrisisResponse Costs** will not include defense costs or **Crisis Management Loss**.

G. **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 1 of the Additional Declarations of this endorsement.

H. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person designated as such and scheduled by written endorsement.

## IV.  EXCLUSIONS

The following exclusions are added to Section V. Exclusions for the purpose of the coverage provided by this endorsement:

This insurance shall not apply to any **CrisisResponse Costs** or **Crisis Management Loss** in connection with a **Crisis Management Event**:

*Archive Copy* © 1999 American International Group, Inc.                    Page 3 of 5

A.  arising out of, based upon or attributable to the acts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B.  arising out of, based upon or attributable to any pending or prior crisis, claim, or **Suit** as of the inception date of this policy;

C.  arising directly or indirectly out of:

1.  any actual or alleged failure, malfunction or inadequacy of:

a.  any of the following, whether belonging to any **Named Insured** or to others:

(1)  computer hardware, including microprocessors;

(2)  computer application software;

(3)  computer operating systems and related software;

(4)  computer networks;

(5)  microprocessors (computer chips) not part of any computer system; or

(6)  any other computerized or electronic equipment or components; or

b.  any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph C1a of this exclusion

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

2.  any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or on behalf of the **Insured** to determine, rectify or test for any potential or actual problems described in Paragraph C1 of this exclusion.

---

**V.  CONDITIONS**

The following conditions are added to Section VI. Conditions for the purpose of the coverage provided by this endorsement:

A.  You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

1.  how, when and where the **Crisis Management Event** is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

AIG Excess Casualty Claim Department
70 Pine Street
New York, NY  10270

B.  There shall be no requirement that you obtain prior written approval from us before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by you to perform the **Crisis Management Services** has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.  Any payments for **Crisis Management Loss** or  advancement of **CrisisResponse Costs** that we make under this endorsement:

1.  shall not be deemed to be a determination of the **Insured's** liability with respect to any claim or **Suit** that results from a  **Crisis Management Event**; and

2.  shall not create any duty to defend any **Suit** or to investigate any claim arising from a **Crisis Management Event**, nor any coverage obligations under this policy.

D.  If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the **Named Insured** by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement.  This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.  In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Management Event**  has occurred, the **Named Insured** may, at its own cost, retain the services of an approved **Crisis Management Firm** and/or advance **CrisisResponse Costs**. Provided, however, if the **Named Insured** elects to retain an approved **Crisis Management Firm** or to advance **CrisisReponse Costs**, we shall have no obligation to reimburse under this endorsement the **Named Insured**  for such costs or expenses.  The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative
or countersignature (in states where applicable)**

**AIG** AIG Excess Casualty®

### Excess Casualty CrisisFund®
### (Crisis Communications Management Insurance)

*Approved Crisis Management Firms*
*as of May 1,2002*

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Abernathy MacGregor Group** | | |
| New York Office<br>501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Tel. (212) 343-0818<br>Cell (917) 449-9964 |
| | Rhonda Barnat, Managing Director<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Cell (917) 912-6378 |
| Los Angeles Office<br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel. (213) 630-6550<br>Cell (213) 489-3443 | *Emergency Only*<br>Tel. (818) 957-5650<br>Cell (917) 940-3476 |
| **Citigate Sard Verbinnen** | | |
| New York Office<br>630 Third Avenue<br>New York, NY 1 0017 | George Sard<br>Tel. (212) 687-8080<br>Fax (212) 687-8344 | *Emergency Only*<br>Contact switchboard @<br>(212) 687-8080 |
| | Citigate Sard Verbinnen web address:<br>www.sardverb.com | |
| | Paul Verbinnen<br>Tel. (212) 687-8080<br>Fax (212) 687-8344 | |
| | Citigate Sard Verbinnen web ad dress:<br>www.sardverb.com | |
| **Hill & Knowlton** | | |
| New York Office<br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017 | Richard C. Hyde<br>Tel. (212) 885-0372<br>Cell (917) 816-2208<br>Fax: (212) 885-0570 | *Emergency Only*<br>H&K Crisis Pager<br>(888) 264-5193<br>24 Hours/7 Days |
| | Arthur Forster<br>Tel. (212) 885-0442<br>Cell: (908) 337-6853<br>Fax: (212) 885-0570<br>aforster@hillandknowlton.com | |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

### Hill & Knowlton Continued

***Additional United States/Canada Offices:***
*Atlanta; Austin; Calgary; Chicago; Detroit; Ft. Lauderdale; Houston; Irvin e; Los Angeles; Montreal; Ottawa; Portland; Quebec City; Sacramento; San Francisco; San Juan; Seattle; Tampa; Toronto; Vancouver; Washington, D.C.*

***International Offices:***
***Latin America:*** *Bogota; Buenos Aires; Caracas; Mexico City; Sao Paulo; Santiago; Guatemala*
***Europe, Middle East, Africa:*** *Amsterdam; Aschaffenburg; Athens; Barcelona; Berlin; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Rome; Stockholm; Tallinn; Warsaw*
***Asia Pacific:*** *Auckland; Bangkok; Beijing; Canberra; Hong Kong; Kuala Lumpur; Melbourne; Seoul; Shanghai; Singapore; Sydney; Tokyo; Wellington*

### Lexicon Communications Corp.

| | | |
|---|---|---|
| <u>Los Angeles Office</u><br>9200 Sunset Blvd.<br>Suite 1203<br>Los Angeles, CA 90069 | Steven B. Fink<br>Tel. (213) 346-1212<br>Cell (626) 253-1519<br>sfink<br><u>Lexicon Comm web address:</u><br>www.crisismanagement.com | ***Emergency Only***<br>Contact switchboard @<br>(213) 346-1200, ext. 225 |

### PR21 (A Division of Edelman Worldwide)

| | | |
|---|---|---|
| <u>New York Office</u><br>79 Fifth Avenue, 17th Fl.<br>New York, NY 10003 | Jon Goldberg<br>Tel. (212) 299-8952<br>Fax (212) 462-1026/7 | ***Emergency Only***<br>Cell (973) 699-7148<br>Pager (877) 386-8115 |

***Additional United States/Canada Offices:***
*Atlanta; Austin; Chicago; Dallas; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.*

***International Offices:***
***Latin America:*** *Buenos Aires; Mexico City; Sao Paulo*
***Europe:*** *Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris*
***Asia Pacific:*** *Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei*

### Robinson Lerer & Montgomery

| | | |
|---|---|---|
| <u>New York Office</u><br>75 Rockefeller Plaza<br>6th Floor<br>New York, NY 10019 | Michael J. Gross<br>Tel. (212) 484-7721<br>Cell (917) 853-0620<br>Fax (212) 484-7411<br>mgross52@aol.com | ***Emergency Only***<br>Contact switchboard @<br>(212) 484-6100 |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Sitrick and Company Inc.** | | |
| <u>Los Angeles Office</u><br>2029 Century Park East<br>Suite 1750<br>Los Angeles, CA 90067 | Michael S. Sitrick<br>Tel. (310) 788-2850<br>Cell (310) 788-2855 | *Emergency Only*<br>(310) 358-1011<br>24 hours/7 days |

Additional United States Offices:  New York and Washington, D.C.

**ENDORSEMENT No.** 11

This endorsement, effective **12:01 AM:**  July 1, 2002

**Forms a part of policy no.:** BE    2131289

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## KNOWLEDGE OF OCCURRENCE ENDORSEMENT

As respects any loss reporting requirements under this policy, it is understood and agreed that knowledge of an accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours shall have received notice from said agent, servant, employee or any other person.

All other terms, conditions and exclusions remain the same.

**AUTHORIZED REPRESENTATIVE**

*Archive Copy*

**ENDORSEMENT No.** 12


**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE    2131289

**Issued to:** MCKESSON CORPORATION


**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.


### NOTICE OF OCCURRENCE ENDORSEMENT


Your failure to give first report of a claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer.  However, you shall report any such **Occurrence** to us within a reasonable time once you become aware of such error.



All other terms, conditions and exclusions remain the same.


_____

**AUTHORIZED REPRESENTATIVE**


62223 (3/95)
AH0274          *Archive Copy*

**ENDORSEMENT No.** 13

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE     2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.


## <u>UNINTENTIONAL ERRORS OR OMISSIONS ENDORSEMENT</u>


Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy provided such failure or any omission is not intentional.


All other terms and conditions of this policy remain unchanged.


**AUTHORIZED REPRESENTATIVE**

62222 (03/95)
AH0273     *Archive Copy*

**ENDORSEMENT No.** 14

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE    2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## DEFENSE IN LIMIT ENDORSEMENT

In Section II, Defense, the last paragraph in provision B. is hereby deleted in its entirety and replaced by the following:

All expenses we incur in the defense of any **suit** or claim are included within our Limits of Insurance.

Provision C of Section II, Defense, is hereby deleted in its entirety and replaced by the following:

**C.**    In all other instances except A. above, we will not be obligated to assume charge of the investi- gation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, any expenses we incur in the defense of any **suit** or claim are included within our Limits of Insurance.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60416 (5/94)
AH0165              *Archive Copy*

ENDORSEMENT No. 15

This endorsement, effective 12:01 AM:  July 1, 2002

Forms a part of policy no.:  BE      2131289

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

<u>**LOT OR BATCH PROVISION**</u>

It is agreed that as respects the **Products - Completed Operations Hazard**, all **Bodily Injury** or **Property Damage** arising out of one lot or batch of products prepared or acquired by you shall be considered one **Occurrence**. Such **Occurrence** shall be subject to the Each Occurrence Limit of this policy shown in Item 3. of the Declarations and shall be deemed to occur when the **Bodily Injury** or **Property Damage** occurs for the first claim of that lot or batch.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60862 (08/94)
AH0233

*Archive Copy*

ENDORSEMENT NO. 16

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE 2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### RETAINED LIMIT AMENDMENT ENDORSEMENT

1. In Section III., Limits of Insurance Paragraph E., Retained Limit, is deleted in its entirety and replaced by the following:

    E.    Retained Limit

        We will be liable only for that portion of damages in excess of the Limits stated in the Schedule of Retained Limits and Schedule of Underlying Insurance attached to this policy and then up to the amount not exceeding the Each Occurrence Limits as stated in the Declarations. The Retained Limits shown in the attached Schedule shall apply whether or not the Insured maintains applicable underlying insurance.

        Coverage is limited to apply only in excess of the Schedule of Retained Limits and Schedule of Underlying Insurance shown in the attached Schedule and only for those coverages for which a Retained Limit is shown, these Retained limits shall not include "Defense Expenses" except as stated in the Schedule of Retained Limits.

2. Section II., Defense, is hereby deleted in its entirety and replaced by the following:

    II.    Defense

        A.    We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when the applicable Limits shown in the Schedule of Related Limits and Schedule of Underlying have been exhausted by payment of claims to which this policy applies.

        B.    When we assume the defense of any claim or **suit**:

            1.    We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

*Archive Copy*

**ENDORSEMENT NO.** (Continued)

2. We will pay for the following:

    a. premiums on bonds to release attachments for amounts not exceeding our Limits of insurance, but we are not obligated to apply or furnish any such bond,

    b. premiums on appeal bonds required by law to appeal any claim or suit we defend, but we are not obligated to apply for or furnish any such bond,

    c. all costs taxed against the **Insured** in any claim or suit we defend,

    d. pre-judgement interest award against the **Insured** on the part of the judgement we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgement interest unless based on that period of time after the offer,

    e. all interest that accrues after entry of judgement and before we have paid, offered to pay or deposited in court the part of the judgement that is within our applicable Limit of Insurance,

    f. the **Insured's** expenses incurred at our request.

We will not defend any suit or claim after our applicable Limits of Insurance have been exhausted by payment of judgements or settlements.

All expenses we incur in the defense of any suit or claim are in addition to our Limits of Insurance.

C. In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

3. Additional Definition

"Defense Expenses" means a payment allocated to a specific loss, claim or suit for its investigation, settlement or defense, including but not limited to:

    a. attorneys' fees and all other investigation, loss adjustment and litigation expenses,

    b. premiums on bonds to release attachments,

*Archive Copy*

**ENDORSEMENT NO.** (Continued)

      c.      premiums on appeal bonds required by law to appeal any claim or suit,

      d.      costs taxed against the **Insured** in any claim or suit,

      e.      pre-judgement interest awarded against the **Insured**,

      f.      interest that accrues after entry of judgement.

4. Section III., Limits of Insurance B. and D. are hereby deleted in their entirety and replaced by the following:

    B.    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement 1 except:

        1. Damages included in the Products-Completed Operations Hazard, and

        2. Coverages included in the policies listed in the Schedule of Retained

    Limits and Schedule of Underlying Insurance applicable to claims or suits resulting from the ownership, use or maintenance of an automobile.

    D.    Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all Bodily Injury, Property Damage, Personal Injury and Advertising Injury arising out of any one Occurrence.

        If the applicable limits of Insurance of the policies listed in the Schedule of Retained Limits and Schedule of Underlying Insurance or of other Insurance providing coverage to the Insured are reduced or exhausted by payment of one or more claims that would be insured by our policy, we will:

        1. In the event of reduction, pay in excess of the reduced Retained Limits or Underlying Insurance, or

        2. In the event of exhaustion of the Underlying Limits of Insurance, continue in force as Retained Limits or Underlying Insurance.

    The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

5. Section IV Definitions, Paragraph E, Item 1.) b.) 2.) and Item 4.), are hereby deleted in their entirety.

*Archive Copy*

ENDORSEMENT NO.   (Continued)

6.      Section IV Definitions, Paragraph E., Item 5 is hereby replaced by the following:

    5.      Any of your partners, executive officers, directors, stockholders or employees
        but only while acting within their duties.
        However, the coverage granted by this Provision 5. does not apply to the ownership
        maintenance, use, loading or unloading on any autos, aircraft, or watercraft unless
        such coverage is included under the policies listed in the Schedule of Underlying
        Insurance or Schedule of Underlying Retentions and then for no broader coverage
        than is provided under such underlying policies or retentions.

7.      Section IV Definitions, Paragraph E. Item 9. is hereby added to the policy:

    9.      Any person or organization to whom you become obligated to include as an
        additional insured under this policy, as a result of any contract or agreement you
        enter into which requires you to furnish insurance to that person or organization of
        the type provided by this policy, but only with respect to liability arising out of you
        operations or premises owned by or rented to you.   However, the insurance
        provided will not exceed the lesser of:

        1.      The coverage and/or limits of this policy, or

        2.      The coverage and/or limits required by said contract or agreement.

8.      Section V. Exclusions I., J., and S. are hereby deleted in their entirety.

9.      Section VI. Conditions Items I. is hereby deleted in its entirety.

10.     Section VI. Conditions Item P. is hereby deleted in its entirety and replaced by the
        following:

    P.  When Loss is Payable

        Coverage under this policy will not apply unless and until the Insured is obligated to
        pay the Retained Limit.

        When the amount of loss has finally been determined, we will promptly pay on
        behalf of the Insured the amount of loss falling within the terms of this policy.

        You shall promptly reimburse us for any amount within the Self Insured Retention
        paid by us on behalf of an Insured.

All other terms and conditions of this policy remain unchanged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT No. 17

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE    2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of:

DRUGGISTS LIABILITY

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

**1.** This exclusion shall not apply; and

**2.** The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60427 (5/94)
AH0861

*Archive Copy*

**ENDORSEMENT NO.** 18

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE 2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## STATE OF FLORIDA

## UNINSURED MOTORIST COVERAGE NOTICE

Florida law requires excess and umbrella carriers to offer Uninsured Motorist Coverage as part of the application process. Uninsured Motorist coverage provides for payment of certain benefits for damage caused by owners or operators of uninsured motor vehicles because of bodily injury or death resulting therefrom. Such benefits may include payments for certain medical expenses, lost wages and pain and suffering, subject to all the terms, provisions, definitions, exclusion, limitations and conditions contained in the policy. For purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the bodily injury limits are less than your damages. If you choose excess or umbrella Uninsured Motorist coverage, the cost will be $_____ for a policy with $1 Million Uninsured Motorist limits of liability. Consistent with Florida law, if you wish to purchase this coverage, you need to submit a written request to us that is signed and dated. Your selection of this coverage will be effective on either the policy's effective date or the date you sign the written request, whichever is later.

For your convenience, we have prepared and attached a letter that evidences your request for excess or umbrella Uninsured Motorist coverage. If you wish to purchase such Uninsured Motorist coverage, simply sign, date and return this request to the "Request To" address shown. If we do not receive your written, signed and dated request, then excess or umbrella Uninsured Motorist coverage will not be provided.

78729 (08/01)

*Archive Copy*

ENDORSEMENT NO.    (Continued)

### STATE OF FLORIDA

**INSURED'S ACCEPTANCE LETTER FOR UNINSURED MOTORIST COVERAGE**

Return To:                    Company:                    American Home
                                                          175 Water Street
                                                          21st Floor
                                                          New York, New York   10038

                                                          Attention:  JOHN P. MOHS

I, on behalf of the Named Insured, wish to purchase either excess or umbrella Uninsured Motorist coverage with limits of liability of $1 Million and I agree to pay the premium for those limits, which have been explained to me. I understand that the coverage selected will apply to this policy and all future renewals, reinstatements or replacements of this policy unless a written request for a change is received and approved by the company. I further understand that if this or a similar letter requesting such coverage is not signed, dated and received by the company, the coverage will not be effective. I am authorized to make this selection on behalf of the Named Insured and all Insureds entitled to coverage under the policy being purchased.

MCKESSON CORPORATION_____
Named Insured (As Appears on Declarations Page)


_____
Signature of Authorized Representative of Named Insured


_____
Printed Name and Title of Authorized Representative


_____
Date Signed

78728 (08/01)

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*                                   _____
                                                 **Authorized Representative**
                                                 **or countersignature (where required by law)**

**ENDORSEMENT No.** 19

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE 2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**Commercial Umbrella Liability Policy**

## INDIANA UNINSURED MOTORISTS*COVERAGE
## OPTION FORM

This policy is amended as follows:

Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Underinsured Motorists Coverage provides insurance for protection against loss for bodily injury, sickness or disease, including death, where the limit of coverage available for payment to the **Insured** under all bodily injury liability bonds and insurance policies covering persons liable to the **Insured** is less than the limit for the Uninsured Motorists Coverage under your policy at the time of the accident.

I. The undersigned **Named Insured** on behalf of all **Named Insureds** in this policy acknowl-edges that it has been offered the opportunity to:

   1. Elect a limit of Uninsured Motorists coverage which is equal to the Limits of Insurance on this policy.

   2. Elect a limit of Uninsured Motorists coverage which is lower than the Limits of Insurance on this policy.

   3. Completely reject Uninsured Motorists Coverage on this policy.

II. On behalf of the **Named Insured** shown in Item 1 of the Declarations and all other **Named Insureds** in this policy, I hereby indicate my choice below. (1, 2 or 3)

   In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Unin-sured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are avail-able.

   1. [ ] Coverage desired at a limit equal to the Limits of Insurance.

   2. [ ] Coverage desired at a limit lower than the Limits of Insurance as indicated below:

      LIMIT OPTIONS: $

   3. [ ] Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage**. This rejection shall be binding upon every **Insured** and shall apply to this policy and to all renewal or policy replacements.

\* The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

_____

Signature of Applicant or **Named Insured**/Date

If the **Named Insured** has chosen to elect Uninsured Motorists coverage, it is agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies. It is further agreed that in Section V. Exclusions, Exclusion C. is hereby deleted in its entirety and replaced by the following:

C.    Any obligations of the **Insured** under a "No-Fault" law.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

ENDORSEMENT No. 20

**This endorsement, effective 12:01 AM:** July 1, 2002

**Forms a part of policy no.:** BE    2131289

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

# State of Louisiana

This form was promulgated pursuant to LRS 22§1406.D.(1)(a)(ii). This form may not be altered or modified.

## Uninsured/Underinsured Motorist Bodily Injury Coverage Form

**Uninsured/Underinsured Motorists Bodily Injury Coverage,** referred to as **"UMBI"** in this form, is insurance which pays persons insured by your policy who are injured in an accident caused by an owner or operator of an uninsured or underinsured motor vehicle.

By law, your policy will include UMBI Coverage at the same limits as your Bodily Injury Liability Coverage unless you request otherwise. If you wish to reject UMBI Coverage, select lower limits of UMBI Coverage, or select Economic-Only UMBI Coverage, you must complete this form and return it to your insurance agent or insurance company. (Economic-Only UMBI Coverage may not be available from your insurance company. In this case, your company will have marked options 3 and 4 below as "Not Available.")

| UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE |
|---|

You may select one of the following UMBI Coverage options (initial only one option):

1. _____
   Initials

   **I select UMBI Coverage** which will compensate me for my economic and non-economic losses with the same limits as my Bodily Injury Liability Coverage.

   **Economic losses** are those which can be measured in specific monetary terms including, but not limited to, medical costs, funeral expenses, lost wages, and out of pocket expenses.

   **Non-economic losses** are losses other than economic losses and include, but are not limited to, pain, suffering, inconvenience, and mental anguish.

2. _____
   Initials

   **I select UMBI Coverage** which will compensate me for my economic and non-economic losses **with limits lower** than my Bodily Injury Liability Coverage limits:
   $_____ each person      $ _____ each accident

3. _____
   Initials

   **I select Economic-Only UMBI Coverage** which will compensate me only for my economic losses with the same limits as my Bodily Injury Liability Coverage.

4. _____
   Initials

   **I select Economic-Only UMBI Coverage** which will compensate me only for my economic losses **with limits lower** than my Bodily Injury Liability Coverage limits:
   $_____ each person      $ _____ each accident

5. _____
   Initials

   **I do not want UMBI Coverage.** I understand that **I will not be compensated through UMBI coverage** for losses arising from an accident caused by an uninsured/underinsured motorist.

| SIGNATURE |
|---|

**The choice I made by my initials on this form will apply to all persons insured under my policy. My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.**

_____
Named Insured or Legal Representative (Please Print)

_____
Policy Number

_____
Signature of a Named Insured or Legal Representative

_____
Date

_____
Company Name

_____
**Authorized Representative
or Countersignature (in States Where Applicable)**

62596 (6/98)
AH0754

*Archive Copy*

Page 2 of 2

April 17, 1998

**ENDORSEMENT No.** 21

**This endorsement, effective 12:01 AM:**  July 1, 2002

**Forms a part of policy no.:**  BE    2131289

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## NEW HAMPSHIRE UNINSURED MOTORISTS COVERAGE*

### OPTION FORM

I.   In keeping with the provisions of the laws of my state, I have been offered the opportunity to:

   1.   Elect a limit of coverage which is equal to the Limits of Insurance on this policy.

   2.   Completely reject Uninsured Motorists coverage on this policy.

II.   I hereby indicate my choice below.

   In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

   1.  ☐  Coverage desired at a limit equal to the Limits of Insurance.

   2.  ☐  Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage.** This rejection shall be binding upon every **Insured** and shall apply to this policy and to all renewal or policy replacements.

\*   The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

_____

Signature of Applicant or **Named Insured**

_____

Date

It is agreed that if the **Insured** has chosen to elect Uninsured Motorists coverage, in Section V, Exclusions, Exclusion C is hereby deleted in its entirety and replaced by the following:

C.    Any obligations of the **Insured** under a "No-Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

## ENDORSEMENT No. 22

**This endorsement, effective 12:01 AM:**   July 1, 2002

**Forms a part of policy no.:**   BE      2131289

**Issued to:**   MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### COMMERCIAL UMBRELLA

### <u>VERMONT UNINSURED MOTORISTS COVERAGE*</u>

Exclusion C of this policy is hereby deleted in its entirety and replaced by the following:

**C.**      Any obligation of the **Insured** under a "No Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists Coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

### <u>OPTION FORM</u>

**I.**      In keeping with the provisions of the laws of Vermont, I have been offered the opportunity to:

   **1.**      Elect a limit of  **Bodily Injury** Uninsured Motorists coverage which is equal to the Limits of Insurance on this policy.

   **2.**      Elect a limit of **Bodily Injury** Uninsured Motorists coverage which is lower than the Limits of Insurance on this policy.

   In both of the above options, the **Property Damage** Uninsured Motorists Limit under this policy shall be $10,000.

**II.**      I hereby indicate my choice below (1 or 2).

   In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal and the **Property Damage** Uninsured Motorists limit on your primary policy must be $10,000. If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

   **1.  ( )** Coverage desired at a **Bodily Injury** limit equal to the Limits of Insurance.

   **2.  ( )** Coverage desired at a **Bodily Injury** limit lower than the Limits of Insurance.

   LIMIT  OPTIONS

   ( )

*Archive Copy*          Page 1 of 2

**III.**   Solely as respects the coverage provided by this endorsement, Exclusion D. 1 is deleted.

\*The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

_____

Signature of Applicant or **Named Insured**

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**

59264 (05/94)
AH0750

*Archive Copy*

# POLICY COVER PAGE

**Date Printed:** 08/11/03          **Policy/Quote Number:** 2860255
**Time Printed:** 000001

**Underwriter Name:**         JOHN MOHS
**Issuing Office Division:**
**Issuing Office Branch:**        0034
**Issuing Office Region:**
**Operator Name:**           WHIDBEE            ,TANYA
**Operator Telephone:**     212-458-5850
**Policy Effective Date:**     July 1, 2003

**Transaction Type:**          REN

**Set Copy Name:**
**Set Copy Mailing Instructions:**

EPS TRACKING-ID:   0000790641000003223
JOB-ID:

*Archive Copy*

(Ed. 4-99)

**FORMS SCHEDULE**

**Named Insured:** MCKESSON CORPORATION

**Policy Number:** BE 2860255
**Effective 12:01 AM:** July 1, 2003

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | COMM UMB DEC NAT UNION OF PA | 57696 | (06/93) |
| | COMM UMB POL FORM | 57697 | (06/93) |
| | Prem Incl Terrorism Notice | 81249 | (03/03) |
| 1 | SCHEDULE OF UNDERLYING INSURANCE | MNSCPT | (07/03) |
| 2 | SCHEDULE OF RETAINED LIMITS | MNSCPT | (07/03) |
| 3 | NAMED INSURED ENDORSEMENT | MNSCPT | (07/03) |
| 4 | NAMED PERIL AND TIME ELEMENT POLLUTION | MNSCPT | (07/03) |
| 5 | EMPLOYEE BENEFITS LIABILITY INSURANCE ENDORSEMENT | MNSCPT | (07/03) |
| 6 | CRISIS RESPONSE AND EXCESS CASUALTY CRISIS FUND | 74641 | (12/99) |
| 7 | CALIF AMENDATORY | 62429 | (04/95) |
| 8 | KNOWLEDGE OF OCCURRENCE | 62224 | (03/95) |
| 9 | NOTICE OF OCCURRENCE | 62223 | (03/95) |
| 10 | UNINTENTIONAL ERRORS AND OMISSIONS | 62222 | (03/95) |
| 11 | FOREIGN LIABILITY LIMITATION ENDORSEMENT | 81251 | (12/02) |
| 12 | ADDITONAL INSURED - VOLUNTEER WORKERS | MNSCPT | (07/03) |
| 13 | MEDICAL PROFESSIONAL LIABAILITY EXCLUSION | MNSCPT | (07/03) |
| 14 | RETAINED LIMIT AMENDATORY ENDORSEMENT | MNSCPT | (07/03) |
| 15 | NON-CONCURRENCY ENDORSEMENT | 78841 | (02/03) |
| 16 | DEFENSE IN LIMIT | 60416 | (05/94) |
| 17 | FOLLOW-FORM ENDR | 60427 | (05/94) |
| 18 | FLORIDA UNINSURED MOTORISTS COVERAGE | MNSCPT | (07/03) |
| 19 | INDIANA UNINSURED MOTORISTS COVERAGE | 76670 | (09/00) |
| 20 | LA UNINSURED/UNDERINSURED MOTORIST BODILY INJURY C | 62596 | (06/98) |
| 21 | NH UNINSURED MOTORISTS COV | 62413 | (04/95) |
| 22 | VT UNINSURED MOTORISTS COVERAGE | 59264 | (05/94) |

*Archive Copy*

# **AIG** COMMERCIAL UMBRELLA DECLARATIONS

## NATIONAL UNION FIRE INSURANCE COMPANY
## OF PITTSBURGH, PA.

A CAPITAL STOCK COMPANY

ADMINISTRATIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270-0150

**POLICY NUMBER:**  BE  2860255           **RENEWAL OF:**  2131289

**PRODUCER NAME:**  MARSH GLOBAL BROKING, INC.

**ADDRESS:**  1166 AVE OF AMERICAS, 40TH FLR.
NEW YORK, NY 10036

**ITEM 1.  NAMED INSURED:**  MCKESSON CORPORATION

**ADDRESS:**  ONE POST STREET
SAN FRANCISCO, CA 94104-8300

**ITEM 2.  POLICY PERIOD:  FROM:** July 1, 2003           **TO:** July 1, 2004
AT 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.  LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

| | | |
|---|---|---|
| A. | $45,000,000 | Each Occurrence |
| B. | $45,000,000 | General Aggregate (in accordance with Section III, Limits of Insurance) |
| C. | $45,000,000 | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D. | $10,000 | Self Insured Retention |

**ITEM 4.  PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE / PER | ADVANCE PREMIUM | MINIMUM PREMIUM |
|---|---|---|---|
| N/A | FLAT | $890,000 | $890,000.00 |
| | | Plus  $17,800.00 CA Surcharge | |

**ITEM 5.  ENDORSEMENTS ATTACHED:**  <u>SEE ATTACHED SCHEDULE</u>

COUNTERSIGNED _____           BY _____
DATE                                       AUTHORIZED REPRESENTATIVE

57696 (6/93)
AH0016                    *Archive Copy*

# Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word **"Insured"** means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## Insuring Agreements

**I.      Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the **Insured,** then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

**II.      Defense**

**A.**      We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

**1.**      The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

**2.**      Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured.**

**B.**      When we assume the defense of any claim or suit:

**1.**      We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

**2.**      We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured:**

**a.**      premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

**b.**      premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish any such bond;

**c.**      all costs taxed against the **Insured** in any claim or **suit** we defend;

57697 (6/93)
AH0034

*Archive Copy*      (1)

    **d.**   pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

    **e.**   all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

    **f.**   the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

**C.**   In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured.** We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

**III.**  **Limits of Insurance**

**A.**   The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    **1.**   **Insureds;**

    **2.**   Claims made or **suits** brought; or

    **3.**   Persons or organizations making claims or bringing **suits**.

**B.**   The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

    **1.**   Damages included in the **Products-Completed Operations Hazard;** and

    **2.**   Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.**   The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

**D.**   Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence.**

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

    **1.**   In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

    **2.**   In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E.**     Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

**1.**     The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

**2.**     The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured;**

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

## IV.   Definitions

**A.**     **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

**1.**     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**2.**     Oral or written publication of material that violates a person's right of privacy;

**3.**      Misappropriation of advertising ideas or style of doing business; or

**4.**      Infringement of copyright, title or slogan.

**B.**     **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But **auto** does not include **mobile equipment.**

**C.**     **Bodily Injury** means bodily injury, sickness, disability or disease.  **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

**D.**     **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

**1.**     It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

**2.**     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**1.**     The repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

**2.**     Your fulfilling the terms of the contract or agreement.

**E.**     **Insured** means each of the following, to the extent set forth:

**1.**     The **Named Insured,** meaning:

**a.**     any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

**b.**     any organization newly acquired, controlled or formed by you during the policy period but only:

57697 (6/93)          **Archive Copy**          (3)
AH0034

    **1)**   as respects **Occurrences** taking place after you acquire, take control or form such organization;

    **2)**   if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

    **3)**   if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

**2.** If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

**3.** If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

**4.** Any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

**5.** Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

**6.** Any person, other than one of your employees, or organization while acting as your real estate manager.

**7.** Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

    **a.**   liability arising out of operations conducted by you or on your behalf; or

    **b.**   facilities owned or used by you.

**8.** Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your be half and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

**F.** **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**G.** **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.**   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.**   Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

   a. equipment designed primarily for:

      1) snow removal;

      2) road maintenance, but not construction or resurfacing; or

      3) street cleaning;

   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

H. **Occurrence** means:

1. As respects **Bodily Injury** or **Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured.** All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence;**

2. As respects **Personal Injury,** an offense arising out of your business that results in **Personal Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3. As respects **Advertising Injury,** an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

I. **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**4.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**5.** Oral or written publication of material that violates a person's right of privacy.

**J. 1. Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

    **a.** products that are still in your physical possession; or

    **b.** work that has not yet been completed or abandoned.

**2. Your Work** will be deemed completed at the earliest of the following times:

    **a.** When all of the work called for in your contract has been completed.

    **b.** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **c.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**3.** This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

    **a.** the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    **b.** the existence of tools, uninstalled equipment or abandoned or unused materials.

**K. Property Damage** means:

**1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**2.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

**L. Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

**1.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**2.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**M. Your Product** means:

**1.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **a.** you;

    **b.** others trading under your name; or

    **c.** a person or organization whose business or assets you have acquired; and

**2.** Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product;** and

2.   The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

N.   **Your Work** means:

1.   Work or operations performed by you or on your behalf; and

2.   Materials, parts or equipment furnished in connection with such work or operations.

O.   **Your Work** includes:

1.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work;** and

2.   The providing of or failure to provide warnings or instructions.

## V.   Exclusions

This insurance does not apply to:

A.   Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

B.   Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

C.   Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

D.   **Property Damage** to:

1.   Property you own, rent, occupy or use;

2.   Personal property in the care, custody or control of the **Insured**.

E.   **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.   A defect, deficiency, inadequacy or dangerous condition in **Your Product**  or **Your Work;** or

2.   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

F.   **Property Damage** to **Your Product** arising out of it or any part of it.

G.   **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.  Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   1.  **Your Product;**

   2.  **Your Work;** or

   3.  **Impaired Property**

   if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.  Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

   However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

   1.  This exclusion shall not apply; and

   2.  The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.  **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

   However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

   1.  This exclusion shall not apply; and

   2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.  **Personal Injury** or **Advertising Injury:**

   1.  Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

   2.  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   3.  Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

   4.  For which the **Insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.  **Advertising Injury** arising out of:

   1.  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   2.  The failure of goods, products or services to conform with advertised quality or performance;

   3.  The wrong description of the price of goods, products or services; or

   4.  An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

57697 (6/93)
AH0034
*Archive Copy*                    (8)

**M.**   **1.**   **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

**2.**   Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

**3.**   Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion M. shall not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

**a.**   Heat, smoke or fumes from a hostile fire;

**b.**   The upset, overturn or collision of a motor vehicle; or

**c.**   The **Products-Completed Operations Hazard;**

if insurance for such **Bodily Injury, Property Damage** or **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance.  However, the insurance provided by our policy for such **Bodily Injury, Property Damage** or **Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

As used in this exclusion:

**a.**   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. "Waste material" includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

**b.**   A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**N.**   **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**O.**   **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured.**

However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

**P.**   **1.**   **Bodily Injury, Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

**2.**   Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

**3.**   Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

**Q.** **Bodily Injury** or **Personal Injury** to:

    **1.** A person arising out of any:

        **a.** Refusal to employ that person;

        **b.** Termination of that person's employment; or

        **c.** Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **2.** The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

    **1.** Whether the **Insured** may be liable as an employer or in any other capacity; and

    **2.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**R.** **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of or by reason of:

    **1.** The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

    **2.** Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

    **3.** Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

**S.** **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

    **1.** Causing or contributing to the intoxication of any person;

    **2.** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **3.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    **1.** This exclusion shall not apply; and

    **2.** The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

**T.** **Bodily Injury** or **Property Damage:**

    **1.**   **a.** with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

1.   **b.**   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2.   **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

**a.**   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

**b.**   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

**c.**   the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3.   As used in this exclusion:

**a.**   "hazardous properties" includes radioactive, toxic or explosive properties;

**b.**   "nuclear material" means source material, special nuclear material or by-product material;

**c.**   "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

**d.**   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

**e.**   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

**f.**   "nuclear facility" means:

**1)**   any nuclear reactor;

**2)**   any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

**3)**   any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

**4)**   any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**g)**   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h)    **Property Damage** includes all forms of radioactive contamination of property.

**VI.   Conditions**

**A.    Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal.  If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

**B.    Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

**C.    Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

**D.    Cancellation**

1.    You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.    We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.    The policy period will end on the day and hour stated in the cancellation notice.

4.    If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5.    If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6.    Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.    The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.    Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**E.**     Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy.  This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.**     Duties In The Event Of An **Occurrence,** Claim Or **Suit**

**1.**     You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy.  To the extent possible, notice should include:

**a.**     how, when and where the **Occurrence** took place;

**b.**     the names and addresses of any injured persons and witnesses; and

**c.**     the nature and location of any injury or damage arising out of the **Occurrence.**

**2.**     If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

**3.**     You and any other involved **Insured** must:

**a.**     immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit;**

**b.**     authorize us to obtain records and other information;

**c.**     cooperate with us in the investigation, settlement or defense of the claim or **suit;** and

**d.**     assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

**4.**     No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G.**     Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

**H.**     Legal Actions Against Us

There will be no right of action against us under this insurance unless:

**1.**     You have complied with all the terms of this policy; and

**2.**     The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

**I.**     Maintenance of Underlying Insurance

During the period of this policy, you agree:

**1.**     To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

4. That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**J.** Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K.** Premium

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**L.** Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**M.** Separation of **Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1. As if each **Named Insured** were the only **Named Insured**; and

2. Separately to each **Insured** against whom claim is made or **Suit** brought.

**N.** Subrogation

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

Any recoveries shall be applied as follows:

1. Any interests, including the **Insured,** that have paid an amount in excess of our payment under this policy will be reimbursed first;

57697 (6/93)
AH0034

**Archive Copy**                    (14)

2.   We then will be reimbursed up to the amount we have paid; and

3.   Lastly, any interests, including the **Insured,** over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the **Insured**, in the ratio of their respective recoveries as finally settled.

**O.**   Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P.**   When Loss Is Payable

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured.**

**In Witness Whereof**, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

SECRETARY                                          PRESIDENT

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurers direct earned premiums for the year preceeding the Act of Terrorism.

Coverage for Acts of Terrorism for losses is already included in your current policy. The portion of your annual premium that is attributable to coverage for Acts of Terrorism covered by the Act is $8,900.

MCKESSON CORPORATION
Insured Name

BE 2860255
Policy #

0030
Division #

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
Insurance Carrier

WITHOUT EXCLUSION BUT WITH CHARGE
81249 (3/03)
AH0992

*Archive Copy*

**ENDORSEMENT NO.** 1

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE 2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | INSURER POLICY TERM | LIMITS OF LIABILITY |
|---|---|---|
| Employers Liability (All other States) | Old Republic 7/1/03- 04 | $5,000,000 BI Each Accident<br>$5,00,000 BI/Disease Policy Aggregate<br>$5,000,000 BI/Disease Each Employee |
| Employers Liability (Nevada & Connecticut) | Old Republic 7/1/03- 04 | $1,900,000 Total Limit excess of $100,000 Self Insured Retention Each Indemnity Only |
| Foreign Automobile & General Liability | Ins Co State of PA 10/1/02- 03 & Renewal | $1,000,000 Each Occurrence<br>$2,000,000 General Aggregate<br>$2,000,000 Products/Completed Operations Aggregate |
| Foreign Employers Liability | Ins Co. State of PA 10/1/02-03 & Renewal | $1,000,000 Total Limit |
| Medical Professional (Druggist) Liability (McKesson Medication Management) | Lexington Ins. Co. 10/29/02-03 & Renewal | $15,000,000 Medical Incident<br>$15,000,000 Aggregate |
| Excess Medical Professional (Druggist) Liability | Arch Ins. Group 10/29/02-03 & Renewal | $10,000,000 Each Occurrence<br>$10,000,000 Aggregate excess of<br>$15,000,000 Each Medical Incident<br>$15,000,000 Aggregate |

Note: $250,000 Indemnity only SIR will apply to each claimant upon the erosion of the $25,000,000 Annual total Limit for Pharmacist Druggist Liability

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative or countersignature (where required by law)**

**ENDORSEMENT NO.** 2

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE    2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**SCHEDULE OF RETAINED AMOUNTS**

| COVERAGE | PERIOD OF RETAINED LIMIT | LIMITS OF LIABILITY |
|---|---|---|
| General Liability | Self-Insured Retention 7/1/03 - 04 | $5,000,000 Each Accident (Defense Included) |
| Automobile Liability | Self-Insured Retention 7/1/03 - 04 | $5,000,000 Each Accident |
| Automobile Liability (Canada) | Self-Insured Retention 7/1/03 - 04 | $5,000,000 Each Accident |

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO.3

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no.:**  BE      2860255

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>**NAMED INSURED ENDORSEMENT**</u>

**It is hereby understood and agreed that Item 1., NAMED INSURED of the Declarations page is amended to read as follows:**

Beldere Corporation
  S.K.U., Inc. (50%)
California Golden State Finance Company
  CGSF Funding Corporation
City Properties, S.A. (20%)
Crocker Plaza Company
Foremost de Venezuela, S.A. (39.69%)
Foremost Iran Corporation
Foremost Shir, Inc.
Foremost Tehran, Inc.
Golden State Insurance Company Limited
Goodman Manufacturing Company
Health Mart Systems, Inc.
Intercal, Inc. (15%)
KWS & P, Inc.
KWS & P/SFA, Inc.
MCK Acquisition Corp.
McKesson Asia-Pacific Pty Limited
  McKesson New Zealand Limited
McKesson Automation, Inc.
McKesson Automation Systems Inc.
  McKesson Automation Canada Inc.
  SI/Baker, Inc. (50%)
McKesson BioServices Corporation
  Pharmaceutical Support Services, Inc.
McKesson Capital Corp.
McKesson Capital Funding Corp.
McKesson (Cayman Islands) Inc.
  NADRO, S.A. de C.V. (21.68%)
McKesson Development Corp.
McKesson Health Solutions Arizona Inc.
McKesson Information Solutions LLC
  HBO & Company (VI), Inc.

*Archive Copy*

**ENDORSEMENT NO.** 3 (Continued)

HBOC Medical Ltd.
McKesson Health Solutions Holdings LLC
    McKesson Health Solutions LLC
    Access Health UK Ltd.
    McKesson Health Solutions Texas Inc.
    McKesson Health Solutions Puerto Rico Inc.
    McKesson Information Solutions Holdings France S.a.r.l.
        McKesson Information Solutions France SA
    McKesson Information Solutions Holdings Limited
        A.L.I. Holdings LLC
        Medical Imaging SRL
            A.L.I. Technologies (International) LLC
    McKesson International LLC
        McKesson Information Solutions Holdings I SRL
        McKesson Information Solutions SRL
    McKesson Information Solutions III LLC
        McKesson Information Solutions Holdings II SRL
        McKesson Information Solutions II SRL
    McKesson Information Solutions IV LLC
        McKesson Information Solutions Holdings III SRL
        McKesson Information Solutions III SRL
    McKesson Information Solutions (Gibraltar) Limited
    McKesson Information Solutions International S.a.r.l.
        McKesson Information Solutions Finance S.a.r.l.
        McKesson Information Solutions Capital S.a.r.l.
        McKesson Information Solutions Holdings S.a.r.l.
        McKesson Information Solutions Holdings II S.a.r.l.
            McKesson International Nova Scotia ULC
                McKesson Medical Imaging Company
          McKesson Information Solutions Holdings III S.a.r.l.
            McKesson Health Solutions Canada Company
          McKesson Information Solutions Holdings IV S.a.r.l.
            McKesson Information Solutions Canada Company
        A.L.I. Technologies (Europe) B.V.
        A.L.I. Technologies (Deutschland) GmbH
        McKesson Information Solutions Ireland Limited
        McKesson Information Solutions Netherlands B.V.
            McKesson Nederland B.V.
        McKesson Information Solutions UK Limited
            Data-Med Computer Services Ltd.
            HBO & Company (ST & SW), Ltd.
    McKesson Services LLC
        A.L.I. Imaging Systems Corp.
McKesson International Holdings Limited
    McKesson Financial Holdings Limited
    McKesson International Ireland Limited
    McKesson Financial Holdings II Limited
    McKesson (International) (Gibraltar) Limited
        McKesson International Holdings LLC
            McKesson International Holdings SRL

*Archive Copy*

**ENDORSEMENT NO.** 3 (Continued)

McKesson International SRL
McKesson International Finance S.a.r.l.
McKesson International Capital S.a.r.l.
McKesson International Holdings S.a.r.l.
McKesson International Holdings II S.a.r.l.
McKesson Funding Company of Canada
McKesson International Holdings III S.a.r.l.
McKesson Finance Company of Canada
McKesson Canada Corporation
3071046 Nova Scotia Company
McKesson Medical-Surgical Holdings Inc.
McKesson Medical-Surgical Inc.
McKesson Medical-Surgical FDT Inc.
McKesson Medical-Surgical Iowa, Inc.
McKesson Medical-Surgical Iowa Supply Inc.
McKesson Medical-Surgical Maine Inc.
McKesson Medical-Surgical Minnesota Inc.
McKesson Medical-Surgical MediMart Inc.
McKesson Medical-Surgical MediNet Inc.
McKesson Medical-Surgical Minnesota Supply Inc.
McKesson Medical-Surgical TBC Inc.
McKesson Medication Management Holdings Inc.
McKesson Medication Management LLC
McKesson Medication Management Puerto Rico Inc.
Purchasing Alliance for Clinical Therapeutics, LLC
McKesson Property Company, Inc.
DC Land Company
DCAZ Land Company
Foremost Homes Hawaii, Ltd.
HF Lnad Company
McKesson Specialty Corporation
McKesson Specialty Pharmaceuticals LLC (99%)
McKesson Trading Company
McKesson Transportation Systems, Inc.
N.V. Medicopharma (10%)
Penn-Chem Corporation
Strategic Health Alliance Management Corp.
Strategic Health Alliance II, Inc.
Zee Medical Canada, Inc.
Zee Medical, Inc.
CPG Industries, Inc.
Roth Medical Services, Inc.


Inactive
In Bankruptcy
Part-owned by more than one McKesson Corporation Entity
1% owned by McKesson Specialty Corporation


All other terms, conditions and exclusions of the policy remain unchanged.


**Archive Copy**

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.4**

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE      2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>**NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT**</u>

Exclusion M. of this policy is hereby deleted in its entirety and replaced by the following:

This insurance does not apply to:

1.  **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world,

2.  Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants, or

3.  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

However, this exclusion does not apply to **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of:

1.  Any discharge, dispersal, seepage, migration, release or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot and civil commotion, flood, earthquake, collision, or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage,

2.  The **Products - Completed Operations Hazard**, or

3.  Any discharge, dispersal, seepage, migration, release or escape of pollutants that meets all of the following conditions:

*Archive Copy*

**ENDORSEMENT NO. 4** (Continued)

a.  It was accidental and neither expected nor intended by the **Named Insured**. This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury**, **Property Damage** or **Personal Injury** could occur, and

b.  It was demonstrable as having commenced on a specific date during the term of this policy, and

c.  Its commencement became known to the **Named Insured** within twenty (20) calendar days and was further reported to the Risk Management Department within a reasonable time frame, and

d.  Its commencement was reported in writing to us within eighty (80) calendar days of becoming known to the Risk Management Department, and

e.  Reasonable effort was expended by the **Named Insured** to terminate the situation as soon as conditions permitted.

However, nothing contained in this provision **3.** shall operate to provide any coverage with respect to:

a.  Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material,

b.  Any fines or penalties,

c.  Any clean-up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion **c.** shall not serve to deny coverage for third party clean-up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority,

d.  Acid rain,

e.  Clean-up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said pollutants, or

It is further agreed that solely as respects any coverage granted by this endorsement, the following shall apply to any occurrence which is covered by this policy but not covered by the underlying policies listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured due to an exclusion(s) contained therein:

**1.** The Self-Insured Retention in Item 3. D. of the Declarations is amended to $5,000,000,

2.  In Section II, Defense, provision A. 2. is hereby deleted in its entirety, and

*Archive Copy*

ENDORSEMENT NO. 4 (Continued)

3. We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

It is further agreed that in the event of a disagreement as to the interpretation of this endorsement, the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two (2) arbitrators are unable to agree within one (1) month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state mentioned in Item I of the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative or countersignature (where required by law)**

**ENDORSEMENT NO.** 5

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE    2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**EMPLOYEE BENEFITS LIABILITY INSURANCE ENDORSEMENT
(WRONGFUL ACTS)
(CLAIMS MADE VERSION)**

**PROVIDES CLAIMS MADE COVERAGE - PLEASE READ CAREFULLY**

This insurance shall apply to any  "Wrongful Act"of the  **Insured** or of any other person for whom the **Insured** is legally liable in the "administration" of the  **Insured's** "Employee Benefit Programs" but only in excess of the Employee Benefits Liability Retained Amount(s) as shown in the Schedule of Retained Amounts. However, this insurance shall only apply if claim is first made against the **Insured** during the policy period and is attributable to an  **Occurrence** that takes place on or after the Retroactive Date of <u>N/A</u> and before the end of the policy period.

However, the insurance provided by this policy for Employee Benefits Liability Insurance shall not apply to:

    1.    Any dishonest, fraudulent, criminal or malicious act, libel, slander discrimination or humiliation,

    2.    **Bodily Injury**, **Property Damage**, **Personal Injury** or **AdvertisingInjury**,

    3.    Any claim for failure of performance of contract by an insurer:

    4.    Any claim  based on the  **Insured's** failure to comply with any law concerning worker's compensation, unemployment insurance, social security  or disability benefits,

    5.    Any claim based upon the failure of any investments, including but not limited to stock, to perform as represented by any  **Insured**,

    6.    Advice given by any **Insured** to an employee to participate in any investment plan including but not limited to stock subscription plans,

    7.    All sums which the **Insured** shall become legally obligated to pay as loss because of any "Breach of Fiduciary Duty" by the **Insured** or by any person the **Insured** is legally responsible for and arising out of the  **Insured's** activity as a fiduciary of any Plan covered by this endorsement, or

*Archive Copy*

**ENDORSEMENT NO.** 5 (Continued)

8.     Any claim made against the **Insured** based on or attributable to any failure or omission on the part of the **Insured** to effect and maintain insurance or bonding for Plan property or assets.

For the purposes of this endorsement, the following definitions apply:

1.     "Employee Benefit Programs" shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Profit Sharing Plans, Employee Stock Subscription Plans, Worker's Compensation, Unemployment Insurance, Social Security and Disability Benefits and any other similar employee benefits instituted after the effective date of this endorsement provided we are notified within thirty (30) days after the institution of such benefits.

2.     "Administration" shall mean:

    a.    Giving counsel to employees with respect to Employee Benefit Programs,

    b.    Interpreting Employee Benefit Programs,

    c.    Handling of records in connection with Employee Benefit Programs, or

    d.    Effecting enrollment, termination or cancellation of employees under Employee Benefit Programs,

provided all such acts are authorized by you.

3.     "Wrongful Acts" shall mean any actual or alleged negligent act, error or omission in the "administration" of the **Insured's** "Employee Benefits Programs".

4.     "Breach of Fiduciary Duty" shall mean the violation of any responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto with respect to any Plan covered by this endorsement.

*Archive Copy*

ENDORSEMENT NO. 5 (Continued)

### OPTIONAL EXTENDED REPORTING PROVISION

We will provide an Extended Reporting Period of  1  year for the Employee Benefits Liability insurance provided by this endorsement only if the policy is either cancelled or not renewed by you or by us for any reason except non-payment of premium. Nonrenewal shall mean the refusal by us to renew the policy on any terms. Nonrenewal shall not mean change in premium, Retained Amounts or any other terms and conditions.

A claim first made in writing during the Extended Reporting period will be deemed to have been made on the last day of the policy period provided that the claim is for damages because of a "Wrongful Act" that occurred before the end of the policy period but not before the Retroactive Date. The Extended Reporting Period will not reinstate or increase the Limits of Insurance or extend the policy period.

You must make a written request for this Extended Reporting Period within thirty (30) days after the expiration date of the policy period and must pay the additional premium, which we will determine, within thirty (30) days after said request. We will then issue an Extended Reporting Period Endorsement for a period of  1  year from the end of the policy period. The Extended Reporting Period will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement cannot be cancelled.

The insurance provided by this Extended Reporting Period will be excess over any other valid and collectible insurance available to the Insured whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the endorsement takes effect.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____

**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT No. 6

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no.:** BE     2860255

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Commercial Umbrella Policy

CrisisResponse<sup>SM</sup> and Excess Casualty CrisisFund<sup>SM</sup>

**(Advancement of CrisisResponse Costs during a Crisis Management Event and
Crisis Communications Management Insurance)**

---

### Additional Declarations

**Item 1.   CrisisResponse Sublimit of Insurance:**  $250,000          **Each Crisis Management
Event And Aggregate**

**Item 2.   Crisis Management Limit of Insurance:**  $50,000          **Each Crisis Management
Event And Aggregate**

**Item 3.   Premium:**                                    -0-

---

This policy is amended to provide for Advancement of **CrisisResponse Costs** during a **Crisis
Management Event** and Crisis Communications Management Insurance pursuant to the terms,
definitions, conditions and exclusions set forth below:

| **I.     INSURING AGREEMENTS-CrisisResponse and Excess Casualty CrisisFund** |
| --- |

The following insuring  agreements section is added to this policy for the purpose of the coverage
provided by this endorsement:

A.     **Advancement of CrisisResponse Costs during a Crisis Management Event**

We will advance on behalf of the **Named Insured CrisisResponse Costs** that may be
associated with damages covered by this policy arising from a **Crisis Management Event**
first commencing during the Policy Period, up to the amount of the **CrisisResponse
Sublimit of Insurance**.

We will advance **CrisisResponse Costs** that may be associated with damages covered by
this policy directly to third parties.

B.     **Crisis Communications Management Insurance**

We will pay on behalf of the **Named Insured Crisis Management Loss** arising from a
**Crisis Management Event** first commencing during the Policy Period, up to the amount
of the **Crisis Management Limit of Insurance**.

C. A **Crisis Management Event** shall first commence at the time during the Policy Period when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and shall end at the earliest of the time when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

D. There shall be no Retained Limit applicable to **CrisisResponse Costs** or **Crisis Management Loss**. We shall pay such **CrisisResponse Costs** or **Crisis Management Loss** from first dollar, subject to the other terms and conditions of this endorsement.

## II.   LIMITS OF INSURANCE

The following provisions are added to Section III. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A. The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **CrisisResponse Sublimit of Insurance** shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B. The **Crisis Management Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **Crisis Management Limit of Insurance** shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C. We will have no obligation to advance **CrisisResponse Costs** or to pay **Crisis Management Loss** from the earliest of the time when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

## III.   DEFINITIONS

The following definitions are added to Section IV. Definitions for the purpose of the coverage provided by this endorsement:

A. **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has reasonably been associated with or may be associated with:

1. damages covered by this policy that are in excess of the Retained Limit applicable to such damages; and

2. significant adverse regional or national media coverage.

**Crisis Management Event** shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B. **Crisis Management Firm** means any public relations firm or crisis management firm approved by us that is hired by the **Named Insured** to perform **Crisis Management Services** in connection with a **Crisis Management Event**. Attached to and forming a part of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the **Named Insured** without further approval by us.

*Archive Copy* 1999 American International Group, Inc.                    Page 2 of 5

C. **Crisis Management Limit of Insurance** means the Crisis Management Limit of Insurance shown in Item 2 of the Additional Declarations of this endorsement.

D. **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

1. Amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

2. Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

E. **Crisis Management Service** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

F. **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1. Medical expenses;

2. Funeral expenses;

3. Psychological counseling;

4. Travel expenses;

5. Temporary living expenses;

6. Expenses to secure the scene of a **Crisis Management Event**; and

7. Any other expenses pre-approved by the Company.

**CrisisResponse Costs** will not include defense costs or **Crisis Management Loss**.

G. **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 1 of the Additional Declarations of this endorsement.

H. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person designated as such and scheduled by written endorsement.

## IV. EXCLUSIONS

The following exclusions are added to Section V. Exclusions for the purpose of the coverage provided by this endorsement:

This insurance shall not apply to any **CrisisResponse Costs** or **Crisis Management Loss** in connection with a **Crisis Management Event**:

A.   arising out of, based upon or attributable to the acts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B.   arising out of, based upon or attributable to any pending or prior crisis, claim, or **Suit** as of the inception date of this policy;

C.   arising directly or indirectly out of:

    1.   any actual or alleged failure, malfunction or inadequacy of:

        a.   any of the following, whether belonging to any **Named Insured** or to others:

            (1)   computer hardware, including microprocessors;

            (2)   computer application software;

            (3)   computer operating systems and related software;

            (4)   computer networks;

            (5)   microprocessors (computer chips) not part of any computer system; or

            (6)   any other computerized or electronic equipment or components; or

        b.   any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph C1a of this exclusion

        due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

    2.   any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or on behalf of the **Insured** to determine, rectify or test for any potential or actual problems described in Paragraph C1 of this exclusion.

---

## V.   CONDITIONS

The following conditions are added to Section VI. Conditions for the purpose of the coverage provided by this endorsement:

A.   You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

    1.   how, when and where the **Crisis Management Event** is taking or took place;

    2.   the names and addresses of any injured persons and any witnesses; and

    3.   the nature and location of any injury or damage arising out of the **Crisis Management Event**.

*Archive Copy* 1999 American International Group, Inc.

Written notice should be mailed or delivered to:

AIG Excess Casualty Claim Department
70 Pine Street
New York, NY 10270

B.  There shall be no requirement that you obtain prior written approval from us before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by you to perform the **Crisis Management Services** has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.  Any payments for **Crisis Management Loss** or advancement of **CrisisResponse Costs** that we make under this endorsement:

1.  shall not be deemed to be a determination of the **Insured's** liability with respect to any claim or **Suit** that results from a **Crisis Management Event**; and

2.  shall not create any duty to defend any **Suit** or to investigate any claim arising from a **Crisis Management Event**, nor any coverage obligations under this policy.

D.  If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the **Named Insured** by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.  In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Management Event** has occurred, the **Named Insured** may, at its own cost, retain the services of an approved **Crisis Management Firm** and/or advance **CrisisResponse Costs**. Provided, however, if the **Named Insured** elects to retain an approved **Crisis Management Firm** or to advance **CrisisReponse Costs**, we shall have no obligation to reimburse under this endorsement the **Named Insured** for such costs or expenses. The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative
or countersignature (in states where applicable)**

**AIG**  **AIG Excess Casualty**®

**Excess Casualty CrisisFund**®
**(Crisis Communications Management Insurance)**

*Approved Crisis Management Firms*
*as of May 1,2002*

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Abernathy MacGregor Group** | | |
| New York Office<br>501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Tel. (212) 343-0818<br>Cell (917) 449-9964 |
| | Rhonda Barnat, Managing Director<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Cell (917) 912-6378 |
| Los Angeles Office<br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel. (213) 630-6550<br>Cell (213) 489-3443 | *Emergency Only*<br>Tel. (818) 957-5650<br>Cell (917) 940-3476 |
| **Citigate Sard Verbinnen** | | |
| New York Office<br>630 Third Avenue<br>New York, NY 1 0017 | George Sard<br>Tel. (212) 687-8080<br>Fax (212) 687-8344 | *Emergency Only*<br>Contact switchboard @<br>(212) 687-8080 |
| | Citigate Sard Verbinnen web address:<br>www.sardverb.com | |
| | Paul Verbinnen<br>Tel. (212) 687-8080<br>Fax (212) 687-8344 | |
| | Citigate Sard Verbinnen web ad dress:<br>www.sardverb.com | |
| **Hill & Knowlton** | | |
| New York Office<br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017 | Richard C. Hyde<br>Tel. (212) 885-0372<br>Cell (917) 816-2208<br>Fax: (212) 885-0570 | *Emergency Only*<br>H&K Crisis Pager<br>(888) 264-5193<br>24 Hours/7 Days |
| | Arthur Forster<br>Tel. (212) 885-0442<br>Cell: (908) 337-6853<br>Fax: (212) 885-0570<br>aforster@hillandknowlton.com | |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
| --- | --- | --- |

## Hill & Knowlton Continued

***Additional United States/Canada Offices:***
*Atlanta; Austin; Calgary; Chicago; Detroit; Ft. Lauderdale; Houston; Irvin e; Los Angeles; Montreal; Ottawa; Portland; Quebec City; Sacramento; San Francisco; San Juan; Seattle; Tampa; Toronto; Vancouver; Washington, D.C.*

***International Offices:***
***Latin America:*** *Bogota; Buenos Aires; Caracas; Mexico City; Sao Paulo; Santiago; Guatemala*
***Europe, Middle East, Africa:*** *Amsterdam; Aschaffenburg; Athens; Barcelona; Berlin; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Rome; Stockholm; Tallinn; Warsaw*
***Asia Pacific:*** *Auckland; Bangkok; Beijing; Canberra; Hong Kong; Kuala Lumpur; Melbourne; Seoul; Shanghai; Singapore; Sydney; Tokyo; Wellington*

## Lexicon Communications Corp.

| | | |
| --- | --- | --- |
| <u>Los Angeles Office</u><br>9200 Sunset Blvd.<br>Suite 1203<br>Los Angeles, CA 90069 | Steven B. Fink<br>Tel. (213) 346-1212<br>Cell (626) 253-1519<br>sfink<br><u>Lexicon Comm web address:</u><br>www.crisismanagement.com | ***Emergency Only***<br>Contact switchboard @<br>(213) 346-1200, ext. 225 |

## PR21 (A Division of Edelman Worldwide)

| | | |
| --- | --- | --- |
| <u>New York Office</u><br>79 Fifth Avenue, 17th Fl.<br>New York, NY 10003 | Jon Goldberg<br>Tel. (212) 299-8952<br>Fax (212) 462-1026/7 | ***Emergency Only***<br>Cell (973) 699-7148<br>Pager (877) 386-8115 |

***Additional United States/Canada Offices:***
*Atlanta; Austin; Chicago; Dallas; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.*

***International Offices:***
***Latin America:*** *Buenos Aires; Mexico City; Sao Paulo*
***Europe:*** *Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris*
***Asia Pacific:*** *Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei*

## Robinson Lerer & Montgomery

| | | |
| --- | --- | --- |
| <u>New York Office</u><br>75 Rockefeller Plaza<br>6th Floor<br>New York, NY 10019 | Michael J. Gross<br>Tel. (212) 484-7721<br>Cell (917) 853-0620<br>Fax (212) 484-7411<br>mgross52@aol.com | ***Emergency Only***<br>Contact switchboard @<br>(212) 484-6100 |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Sitrick and Company Inc.** | | |
| <u>Los Angeles Office</u><br>2029 Century Park East<br>Suite 1750<br>Los Angeles, CA 90067 | Michael S. Sitrick<br>Tel. (310) 788-2850<br>Cell (310) 788-2855 | ***Emergency Only***<br>(310) 358-1011<br>24 hours/7 days |

Additional United States Offices:  New York and Washington, D.C.

ENDORSEMENT No. 7

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE 2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## COMMERCIAL UMBRELLA

## <u>CALIFORNIA AMENDATORY ENDORSEMENT</u>

In Section VI, Conditions, Condition D, Cancellation, is hereby deleted in its entirety and replaced by the following:

**D.** Cancellation/Nonrenewal/Increase In Premium, Reduction In Limits Or Change In Conditions Of Coverage

<u>Cancellation</u>

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. New policies in effect for sixty (60) days or less.

   We may cancel this policy. If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

3. New policies in effect for more than sixty (60) days and any renewal policy.

   We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

   a. Non-payment of premium, including payment due on a prior policy issued by us and due during the current policy term covering the same risks;

   b. A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

   c. Discovery of fraud or material misrepresentation by either of the following:

      1. You or other **Insureds** or your representative in obtaining the insurance; or

      2. You or your representative in pursuing a claim under the policy.

   d. Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or other **Insureds** or a representative of same, which materially increase any of the risks insured against;

   e. Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of

Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan if the failure materially increases any of the risks insured against;

f.   A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

g.   A determination by the commissioner that a continuation of the policy coverage could place us in violation of the laws of this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

h.   A change by you or other **Insureds** or a representative of same in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy;

i.   A material change in limits, type or scope of coverage or exclusions in one or more of the underlying policies;

j.   Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse; or

k.   A reduction in financial rating or grade of one or more insurers insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less then ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

4.   The policy period will end on the day and hour stated in the cancellation notice.

5.   If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

6.   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

7.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.   The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

9.   Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

<u>Nonrenewal</u>

If we decide not to renew this policy or if we intend to condition renewal upon reduction of limits, elimination of coverages, increase in deductibles, increase of more than 25 percent in the rate upon which the premium is based or upon requirements relating to the underlying policy or policies, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of nonrenewal at least sixty (60) days but no more than one hundred twenty (120) days prior to the end of the policy period. The notice shall contain the reason or reasons for nonrenewal of the policy.

<u>Increase in Premium, Reduction In Limits Or Change In Conditions Of Coverage</u>

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1. Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2. Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3. A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4. A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in the policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

**ENDORSEMENT No. 8**

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no.:**  BE     2860255

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## KNOWLEDGE OF OCCURRENCE ENDORSEMENT

As respects any loss reporting requirements under this policy, it is understood and agreed that knowledge of an accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours shall have received notice from said agent, servant, employee or any other person.

All other terms, conditions and exclusions remain the same.

_____
**AUTHORIZED REPRESENTATIVE**

62224 (3/95)
AH0275          *Archive Copy*

**ENDORSEMENT No.** 9

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no.:**  BE    2860255

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## NOTICE OF OCCURRENCE ENDORSEMENT

Your failure to give first report of a claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer.  However, you shall report any such **Occurrence** to us within a reasonable time once you become aware of such error.

All other terms, conditions and exclusions remain the same.

**AUTHORIZED REPRESENTATIVE**

62223 (3/95)
AH0274

*Archive Copy*

**ENDORSEMENT No.** 10

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no.:**  BE    2860255

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### <u>UNINTENTIONAL ERRORS OR OMISSIONS ENDORSEMENT</u>

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy provided such failure or any omission is not intentional.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

62222 (03/95)
AH0273

*Archive Copy*

ENDORSEMENT No. 11

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no:**  BE     2860255

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Policy Form

### FOREIGN LIABILITY LIMITATION ENDORSEMENT

This policy is amended as follows:

**Section V. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such **Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms, exclusions and conditions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

81251 (12/02)
AH0989

*Archive Copy*

**ENDORSEMENT NO.** 12

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE    2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### <u>ADDITIONAL INSURED - VOLUNTEER WORKERS</u>

"Definition E. of Section IV" is amended to include as an Insured any person(s) who are volunteer worker(s) for you, but only while acting at the direction of, and within he scope of their duties for you.  However, no volunteer worker(s) are insured for:

1. "Bodily Injury" or "Personal Injury"

    (A) To you, to your partners or members (if you are a partnership or joint venture), to your other volunteer worker(s), or to your "employees" arising out of and in the course of their duties for you.

    B) To the spouse, child, parent, brother or sister of your volunteer worker(s) or your "employees" as a consequence of paragraph 1a. above.

    C) For which there is any obligation to share damages because of the injury described in paragraph 1.a. above, or

    D) Arising out of his or her providing or failing to provide professional health care services.

2. "Property Damage" to property.

    A) Owned, occupied, or used by,

    B) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, and of your volunteer worker(s), your "employees" or, if you are a partnership or joint venture, any partner or member.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 13

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE    2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### MEDICAL PROFESSIONAL LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of the rendering of or failure to render, during the policy period, the following professional services:

**(A)** Medical, surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith,

**(B)** Furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances,

**(C)** Handling of or performing  postmortem examinations on human bodies, or

**(D)** Service by any person as member of a formal accreditation or similar professional board or committee of the **Named Insured,** or as person charged with the duty of executing directives of any such board or committee.

It is also agreed that any **Bodily Injury** sustained by any patient or other person while seeking or being administered professional services shall not be covered under this policy except when such **Bodily Injury** occurs as a direct result of one or more of the following perils and then only if said perils occur on the **Insured's** premises:

1. Fire or lightning,
2. Windstorm or hail,
3. Explosion,
4. Riot, strike or civil commotion,
5. Hazards involving any aircraft or vehicle,
6. Sonic shock waves,
7. Smoke,
8. Vandalism or malicious mischief,
9. Sprinkler leakage,
10. Elevator malfunction,
11. Earthquake or flood,
12. Structural collapse of building, or
13. Ownership, maintenance or use of premises and all operations necessary or incidental thereto.

Section A and B do not apply if such coverage is provided by a policy listed in the Schedule of Underlying Insurance.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 14

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE    2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Policy Form

### Retained Limit Amendatory Endorsement

This policy is amended as follows:

1. The Declarations, Item 3.D. Self Insured Retention is deleted in its entirety.

2. Section  III. Limits  of Insurance  Paragraphs B.,  D., and  E.  Retained Limit  are deleted  in  their entireties and replaced by the following:

   B. The   General   Aggregate   Limit   is   the   most   we   will   pay   for   all   damages covered under Insuring Agreement I except:

      1. Damages included in the **Products-Completed Operations Hazard,** and

      2. Coverages included in the policies listed in the Schedule of Underlying Insurance or listed in the Schedule of Retained  Limits applicable to claims or     **Suits** resulting from the ownership, use or maintenance of an **Auto**.

   D. Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all Bodily Injury, Property Damage, Personal Injury and Advertising Injury arising out of any one **Occurrence**.

      If the  applicable  limits  of  Insurance  of  the  policies  listed  in  the  Schedule  of Underlying Insurance  or  coverages  listed  in  the  Schedule  of  Retained  Limits or  of  other  Insurance providing coverage  to the  Insured are  reduced or  exhausted by  payment of  one or  more claims that would be insured by our policy, we will:

      1. In the  event of  reduction, pay in  excess of  the reduced  Underlying Retained Limits  or Underlying Limits of Insurance, or

      2. In the  event of  exhaustion of the  Underlying Limits  of Insurance, continue  in force  as Underlying Insurance.

*Archive Copy*

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

E.     Retained Limit

We will be liable only for that portion of damages in excess of the limits listed in the Schedule of Retained Limits or the limits listed in the Schedule of Underlying Insurance attached to this policy and then up to the amount not exceeding the Each Occurrence Limits as stated in the Declarations. The Retained Limits listed in the attached Schedule of Retained Limits shall apply whether or not the Insured maintains applicable underlying insurance listed in the Schedule of Underlying Insurance.

The Retained Limits listed in the attached Schedule of Retained Limits shall not be reduced or exhausted by **Defense Expenses**.

3.  Section II. Defense is deleted in its entirety and replaced by the following:

II.     Defense

A.     Except with respect to any pollution coverage provided by this policy and its endorsements (specifically the NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT) we shall have the right and duty to defend any claim or **Suit** seeking damages covered by the terms and conditions of this policy when the applicable limits listed in the Schedule of Retained Limits or Schedule of Underlying Insurance have been exhausted by payment of claims to which this policy applies.

B.     When we assume the defense of any claim or **suit**:

1.     We will defend any **Suit** against the **Insured** seeking damages on account of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** even if such **Suit** is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

2.     We will pay for the following:

a.     premiums on bonds to release attachments for amounts not exceeding our Limits of insurance, but we are not obligated to apply or furnish any such bond,

b.     premiums on appeal bonds required by law to appeal any claim or **Suit** we defend, but we are not obligated to apply for or furnish any such bond,

*Archive Copy*

ENDORSEMENT NO. 14 (Continued)

      c.    all costs taxed against the **Insured** in any claim or **Suit** we defend,

      d.    pre-judgement interest award against the **Insured** on the part of the judgement we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgement interest unless based on that period of time after the offer,

      e.    all interest that accrues after entry of judgement and before we have paid, offered to pay or deposited in court the part of the judgement that is within our applicable Limit of Insurance, and

      f.    the **Insured's** expenses incurred at our request.

We will not defend any **Suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgements or settlements.

All expenses we incur in the defense of any **Suit** or claim are in addition to our Limits of Insurance.

C.    With respect to any pollution coverage provided by this policy and its endorsements (specifically the NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT) and in all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **Suit** brought or proceeding instituted against the Insured. We will however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **Suits** or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

4. Additional Definition

**Defense Expenses** mean payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or **Suit,** including but not limited to:

    1.    Attorney's fees and all other investigation, loss adjustment and litigation expenses,

    2.    Premiums on bonds to release attachments,

    3.    Premiums on appeal bonds required by law to appeal any claim or **Suit,**

    4.    Costs taxed against the **Insured** in any claim or **Suit,**

    5.    Pre-judgement interest awarded against the **Insured,** and

*Archive Copy*

**ENDORSEMENT NO.** 14 (Continued)

      6.      Interest that accrues after entry of judgement.

5. Section V. Exclusions I., J. S. are hereby deleted in their entireties.

6. Section IV. Definitions, Paragraph E. is amended by adding Item 9. To the policy:

   9. Any person or organization to whom you become obligated to include as an additional **Insured** under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

a. The limits of this policy, or

b. The limits required by said contract or agreement.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT No.** 15

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no:**  BE     2860255

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Policy Form

### <u>Non-Concurrency Endorsement</u>

This policy is amended as follows:

**Section III.  Limits of Insurance**, Paragraph D. is amended to include the following additional provision:

If any of the policy periods of the policies listed in the Schedule of Underlying Insurance, (including any renewals and replacements thereof) apply nonconcurrently with the Policy Period of this policy, and in the event of reduction or exhaustion of the aggregate limit(s) of the underlying policy(ies) by payment of damages taking place during the policy period of such underlying policy(ies), we will:

1.  In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

2.  In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance;

subject to the definitions, conditions and exclusions of the applicable underlying policy(ies).

Coverage under this policy, however, applies only to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** that takes place during the Policy Period of this policy.

All other terms and conditions of this policy remain unchanged.

_____

**Authorized Representative**

78841 (02/03)
AH1017                     *Archive Copy*

**ENDORSEMENT No.** 16

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE     2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## DEFENSE IN LIMIT ENDORSEMENT

In Section II, Defense, the last paragraph in provision B. is hereby deleted in its entirety and replaced by the following:

All expenses we incur in the defense of any **suit** or claim are included within our Limits of Insurance.

Provision C of Section II, Defense, is hereby deleted in its entirety and replaced by the following:

**C.**     In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, any expenses we incur in the defense of any **suit** or claim are included within our Limits of Insurance.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60416 (5/94)
AH0165

*Archive Copy*

ENDORSEMENT No. 17

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE     2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>**FOLLOW-FORM ENDORSEMENT**</u>

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of:

DRUGGISTS LIABILITY

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

**1.**     This exclusion shall not apply; and

**2.**     The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60427 (5/94)     *Archive Copy*
AH0861

**ENDORSEMENT NO.** 18

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no.:**  BE   2860255

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### STATE OF FLORIDA

### UNINSURED MOTORIST COVERAGE NOTICE

Florida law requires excess and umbrella carriers to offer Uninsured Motorist Coverage as part of the application process. Uninsured Motorist coverage provides for payment of certain benefits for damage caused by owners or operators of uninsured motor vehicles because of bodily injury or death resulting therefrom. Such benefits may include payments for certain medical expenses, lost wages and pain and suffering, subject to all the terms, provisions, definitions, exclusion, limitations and conditions contained in the policy. For purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the bodily injury limits are less than your damages. If you choose excess or umbrella Uninsured Motorist coverage, the cost will be $_____ for a policy with $1 Million Uninsured Motorist limits of liability. Consistent with Florida law, if you wish to purchase this coverage, you need to submit a written request to us that is signed and dated. Your selection of this coverage will be effective on either the policy's effective date or the date you sign the written request, whichever is later.

For your convenience, we have prepared and attached a letter that evidences your request for excess or umbrella Uninsured Motorist coverage. If you wish to purchase such Uninsured Motorist coverage, simply sign, date and return this request to the "Request To" address shown. If we do not receive your written, signed and dated request, then excess or umbrella Uninsured Motorist coverage will not be provided.

78729 (08/01)

*Archive Copy*

**ENDORSEMENT NO.** 18 (Continued)

### STATE OF FLORIDA

**INSURED'S ACCEPTANCE LETTER FOR UNINSURED MOTORIST COVERAGE**

Return To:              Company:              American Home
                                               175 Water Street
                                               21st Floor
                                               New York, New York   10038

                                               Attention: John Mohs

I, on behalf of the Named Insured, wish to purchase either excess or umbrella Uninsured Motorist coverage with limits of liability of $1 Million and I agree to pay the premium for those limits, which have been explained to me. I understand that the coverage selected will apply to this policy and all future renewals, reinstatements or replacements of this policy unless a written request for a change is received and approved by the company. I further understand that if this or a similar letter requesting such coverage is not signed, dated and received by the company, the coverage will not be effective. I am authorized to make this selection on behalf of the Named Insured and all Insureds entitled to coverage under the policy being purchased.

                              McKesson Corporation
                              Named Insured (As Appears on Declarations Page)


                              _____
                              Signature of Authorized Representative of Named Insured


                              _____
                              Printed Name and Title of Authorized Representative


                              _____
                              Date Signed

78728 (08/01)

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*                              _____
                                            **Authorized Representative**
                                            **or countersignature (where required by law)**

**ENDORSEMENT No.** 19

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no.:**  BE      2860255

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy**

**<u>INDIANA UNINSURED MOTORISTS*COVERAGE<br>OPTION FORM</u>**

This policy is amended as follows:

Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Underinsured Motorists Coverage provides insurance for protection against loss for bodily injury, sickness or disease, including death, where the limit of coverage available for payment to the **Insured** under all bodily injury liability bonds and insurance policies covering persons liable to the **Insured** is less than the limit for the Uninsured Motorists Coverage under your policy at the time of the accident.

I.  The undersigned **Named Insured** on behalf of all **Named Insureds** in this policy acknowledges that it has been offered the opportunity to:

    1.  Elect a limit of Uninsured Motorists coverage which is equal to the Limits of Insurance on this policy.

    2.  Elect a limit of Uninsured Motorists coverage which is lower than the Limits of Insurance on this policy.

    3.  Completely reject Uninsured Motorists Coverage on this policy.

II.  On behalf of the **Named Insured** shown in Item 1 of the Declarations and all other **Named Insureds** in this policy, I hereby indicate my choice below. (1, 2 or 3)

In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

    1.  [   ]   Coverage desired at a limit equal to the Limits of Insurance.

    2.  [   ]   Coverage desired at a limit lower than the Limits of Insurance as indicated below:

        LIMIT OPTIONS:  $

    3.  [   ]   Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage**. This rejection shall be binding upon every **Insured** and shall apply to this policy and to all renewal or policy replacements.

\*   The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

_____

Signature of Applicant or **Named Insured**/Date

If the **Named Insured** has chosen to elect Uninsured Motorists coverage, it is agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies. It is further agreed that in Section V. Exclusions, Exclusion C. is hereby deleted in its entirety and replaced by the following:

C.    Any obligations of the **Insured** under a "No-Fault" law.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

**ENDORSEMENT No.** 20

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE    2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

# State of Louisiana

This form was promulgated pursuant to LRS 22§1406.D.(1)(a)(ii).  This form may not be altered or modified.

## Uninsured/Underinsured Motorist Bodily Injury Coverage Form

**Uninsured/Underinsured Motorists Bodily Injury Coverage,** referred to as **"UMBI"** in this form, is insurance which pays persons insured by your policy who are injured in an accident caused by an owner or operator of an uninsured or underinsured motor vehicle.

By law, your policy will include UMBI Coverage at the same limits as your Bodily Injury Liability Coverage unless you request otherwise. If you wish to reject UMBI Coverage, select lower limits of UMBI Coverage, or select Economic-Only UMBI Coverage, you must complete this form and return it to your insurance agent or insurance company.  (Economic-Only UMBI Coverage may not be available from your insurance company.  In this case, your company will have marked options 3 and 4 below as "Not Available.")

| UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE |
|---|

You may select one of the following UMBI Coverage options (initial only one option):

1. _____
   Initials
   **I select UMBI Coverage** which will compensate me for my economic and non-economic losses with the same limits as my Bodily Injury Liability Coverage.

   **Economic losses** are those which can be measured in specific monetary terms including, but not limited to, medical costs, funeral expenses, lost wages, and out of pocket expenses.

   **Non-economic losses** are losses other than economic losses and include, but are not limited to, pain, suffering, inconvenience, and mental anguish.

2. _____
   Initials
   **I select UMBI Coverage** which will compensate me for my economic and non-economic losses **with limits lower** than my Bodily Injury Liability Coverage limits:
   $_____ each person      $ _____ each accident

3. _____
   Initials
   **I select Economic-Only UMBI Coverage** which will compensate me only for my economic losses with the same limits as my Bodily Injury Liability Coverage.

4. _____
   Initials
   **I select Economic-Only UMBI Coverage** which will compensate me only for my economic losses **with limits lower** than my Bodily Injury Liability Coverage limits:
   $_____ each person       $ _____ each accident

5. _____
   Initials
   **I do not want UMBI Coverage.** I understand that **I will not be compensated through UMBI coverage** for losses arising from an accident caused by an uninsured/underinsured motorist.

| SIGNATURE |
|---|

The choice I made by my initials on this form will apply to all persons insured under my policy. My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.

_____
Named Insured or Legal Representative (Please Print)

_____
Policy Number

_____
Signature of a Named Insured or Legal Representative

_____
Date

_____
Company Name

_____
**Authorized Representative
or Countersignature (in States Where Applicable)**

**ENDORSEMENT No.** 21

This endorsement, effective 12:01 AM:  July 1, 2003

Forms a part of policy no.:  BE     2860255

Issued to:  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>**NEW HAMPSHIRE UNINSURED MOTORISTS COVERAGE**</u>*

**OPTION FORM**

I.    In keeping with the provisions of the laws of my state, I have been offered the opportunity to:

    1.    Elect a limit of coverage which is equal to the Limits of Insurance on this policy.

    2.    Completely reject Uninsured Motorists coverage on this policy.

II.    I hereby indicate my choice below.

    In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

    1.  ☐  Coverage desired at a limit equal to the Limits of Insurance.

    2.  ☐  Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage.** This rejection shall be binding upon every **Insured** and shall apply to this policy and to all renewal or policy replacements.

\*    The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.


_____

Signature of Applicant or **Named Insured**


_____

Date

It is agreed that if the **Insured** has chosen to elect Uninsured Motorists coverage, in Section V, Exclusions, Exclusion C is hereby deleted in its entirety and replaced by the following:

C.      Any obligations of the **Insured** under a "No-Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 22

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE 2860255

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### COMMERCIAL UMBRELLA

### <u>VERMONT UNINSURED MOTORISTS COVERAGE*</u>

Exclusion C of this policy is hereby deleted in its entirety and replaced by the following:

**C.** Any obligation of the **Insured** under a "No Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists Coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

### <u>OPTION FORM</u>

**I.** In keeping with the provisions of the laws of Vermont, I have been offered the opportunity to:

   **1.** Elect a limit of **Bodily Injury** Uninsured Motorists coverage which is equal to the Limits of Insurance on this policy.

   **2.** Elect a limit of **Bodily Injury** Uninsured Motorists coverage which is lower than the Limits of Insurance on this policy.

   In both of the above options, the **Property Damage** Uninsured Motorists Limit under this policy shall be $10,000.

**II.** I hereby indicate my choice below (1 or 2).

   In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal and the **Property Damage** Uninsured Motorists limit on your primary policy must be $10,000. If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

   **1. ( )** Coverage desired at a **Bodily Injury** limit equal to the Limits of Insurance.

   **2. ( )** Coverage desired at a **Bodily Injury** limit lower than the Limits of Insurance.

   LIMIT  OPTIONS

   ( )

**III.**    Solely as respects the coverage provided by this endorsement, Exclusion D. 1 is deleted.


*The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.


For any change in coverage or limit, please notify us or your agent in writing.

_____
Signature of Applicant or **Named Insured**

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

# POLICY COVER PAGE

**Date Printed:** 08/12/04                    **Policy/Quote Number:** 2978146
**Time Printed:** 000001

**Underwriter Name:**          DON GIORDANO
**Issuing Office Division:**   0030
**Issuing Office Branch:**     0034
**Issuing Office Region:**
**Operator Name:**            SMITH                ,GRACE
**Operator Telephone:**       212-458-3493
**Policy Effective Date:**    July 1, 2004

**Transaction Type:**         REN

**Set Copy Name:**
**Set Copy Mailing Instructions:**

```
EPS TRACKING-ID:   0000901500000004225
JOB-ID:
```

*Archive Copy*

(Ed. 4-99)

# FORMS SCHEDULE

**Named Insured:**   MCKESSON CORPORATION

**Policy Number:**   BE   2978146
**Effective 12:01 AM:**   July 1, 2004

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
|  | UMB PRIME DEC | 80518 | (09/03) |
|  | UMB PRIME JACKET | 80517 | (09/03) |
|  | PREM INCL TERRORISM NOTICE | 81249 | (03/03) |
| 1 | SCHEDULE OF UNDERLYING INSURANCE | MNSCPT | (08/04) |
| 2 | SCHEDULE OF RETAINED LIMITS | MNSCPT | (08/04) |
| 3 | KNOWLEDGE OF OCCURRENCE ENDORSEMENT | MNSCPT | (08/04) |
| 4 | DUTIES IN THE EVENT OF AN OCCURRENCE | MNSCPT | (08/04) |
| 5 | CLAIMS-MADE COVERAGE ENDORSEMENT | MNSCPT | (08/04) |
| 6 | RETAINED LIMIT AMENDATORY ENDORSEMENT | MNSCPT | (08/04) |
| 7 | AMENDATORY ENDORSEMENT | MNSCPT | (08/04) |
| 8 | MEDICAL PROFESSIONAL LIABILITY EXCLUSION | MNSCPT | (08/04) |
| 9 | NAMED PERIL AND TIME ELEMENT POLLUTION | MNSCPT | (08/04) |
| 10 | AMENDMENT OF CONTRACTUAL LIABILITY EXCLUSION | MNSCPT | (08/04) |
| 11 | ARBITRATION CONDITION ENDORSEMENT | MNSCPT | (08/04) |
| 12 | NAMED INSURED ENDORSEMENT | MNSCPT | (08/04) |
| 13 | ACQUIRED ENTITIES ENDORSEMENT | MNSCPT | (08/04) |
| 14 | CALIFORNIA CANCEL/NONRENEW AMEND ENDT | 81589 | (02/03) |
| 15 | PRIME MISCELLANEOUS CHANGES ENDORSEMENT | 83864 | (02/04) |
| 16 | SIR APPLIC TO SPEC COV AFTER DIMINUTION OF UNDERLY | 81584 | (02/03) |
| 17 | FOR. LIAB. LIMIT.ENDT (W/TOT. TERR.EXCL. APP. TO S | 83078 | (01/04) |
| 18 | EMPLOYEE BENEFITS LIAB LIMIT (CM) | 83073 | (09/03) |
| 19 | NOTICE OF OCCURRENCE | 80454 | (07/02) |
| 20 | DEFENSE WITHIN THE LIMITS OF INSURANCE | 80413 | (07/02) |
| 21 | NON-CONCURRENCY END'T | 81581 | (02/03) |
| 22 | UNINSURED/UNDERINSURED MOTORIST COVERAGE | 82610 | (07/03) |

*Archive Copy*

**AIG** AMERICAN INTERNATIONAL COMPANIES[®]

## Umbrella Prime[SM]
## Commercial Umbrella Liability Policy With CrisisResponse[®]

### DECLARATIONS

The company issuing this policy is indicated by an "X" in the box to the left of the company's name.

| | |
|---|---|
| ☐ AIU Insurance Company | ☐ Granite State Insurance Company |
| ☐ American Home Assurance Company | ☐ Illinois National Insurance Company |
| ☐ American International Pacific Insurance Company | ☐ National Union Fire Insurance Company of Louisiana |
| ☐ American International South Insurance Company | ☒ National Union Fire Insurance Company of Pittsburgh, Pa. |
| ☐ Birmingham Fire Insurance Company of Pennsylvania | ☐ New Hampshire Insurance Company |
| ☐ Commerce & Industry Insurance Company | ☐ The Insurance Company of the State of Pennsylvania |

(each of the above being a capital stock company)

**Executive Offices: 70 Pine Street, New York, NY 10270**
**Telephone No. 212-770-7000**

---

**POLICY NUMBER:** BE 2978146 **RENEWAL OF:** 2860255

**ITEM 1. NAMED INSURED:** MCKESSON CORPORATION

    **MAILING ADDRESS:** ONE POST STREET
    SAN FRANCISCO, CA 94104-8300

**ITEM 2. POLICY PERIOD: FROM:** July 1, 2004 **TO:** July 1, 2005
    **(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)**

**ITEM 3. LIMITS OF INSURANCE**

    The Limits of Insurance, subject to the terms of this policy, are:

    A. $45,000,000     **Each Occurrence**
    B. $45,000,000     **General Aggregate** (in accordance with Section IV. Limits of Insurance)
    C. $45,000,000     **Products-Completed Operations Aggregate** (in accordance with Section IV. Limits of Insurance)
    D. $250,000     **CrisisResponse Sublimit of Insurance**
    E. $50,000     **Excess Casualty CrisisFund Limit of Insurance**

**ITEM 4. SCHEDULED UNDERLYING INSURANCE - See Schedule of Underlying Insurance**

**ITEM 5. SELF-INSURED RETENTION -** $10,000     **Each Occurrence**

**ITEM 6. PREMIUM AND PREMIUM COMPUTATION**

    ESTIMATED TOTAL ANNUAL EXPOSURE     N/A
    RATES PER     FLAT
    MINIMUM PREMIUM     $950,000.00
    ADVANCE PREMIUM     $950,000.00

**ITEM 7. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: SEE ATTACHED SCHEDULE**

**PRODUCER NAME:** MARSH GLOBAL BROKING, INC.
**ADDRESS:** 1166 AVE OF AMERICAS
    FL 40
    NEW YORK, NY 10036-4306

---

**Authorized Representative or**     **Date**
**Countersignature (Where Applicable)**

80518 (09/03)
AH0876     *Archive Copy*     **Issue Date:** 08/12/04

# Umbrella Prime<sup>SM</sup>
## Commercial Umbrella Liability Policy With CrisisResponse<sup>®</sup>

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII. Definitions.

Except for headings, words that appear in bold print have special meaning.  See Section VII. Definitions.

In consideration of the  payment of the premium and in reliance upon the statements in the Declarations, we agree  to provide coverage as follows:

| I.  INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY |
|---|

A.  We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

   The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B.  This policy applies, only if:

   1.  the **Bodily Injury** or **Property Damage** is caused by an  **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

   2.  the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C.  This policy applies to **Bodily Injury**, **Property Damage**, and **Personal Injury and Advertising Injury** only if prior to the **Policy Period**, no **Insured** shown in Paragraph M2 of Section VII, no officer, no manager in your risk management, insurance or legal department and no employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part, or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**.  If such an **Insured**, manager or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**, then any continuation, change or resumption of such **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

D.  **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** will be deemed to have been known to have occurred at the earliest time when any **Insured** shown under Paragraph M2 of Section VII, any manager in your risk management, insurance or legal department or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

   1.  reports all, or any part, of the **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to us or any other insurer;

   2.  receives a written or verbal demand or claim for damages because of the **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**; or

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur or an **Occurrence** has been committed that has caused or may cause **Personal Injury and Advertising Injury**.

E. Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F. If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

---

## II. INSURING AGREEMENT - CRISISRESPONSE ® AND EXCESS CASUALTY CRISISFUND ®

A. **CrisisResponse**

We will advance **CrisisResponse Costs** directly to third parties on behalf of the **Named Insured**, regardless of fault, arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **CrisisResponse Sublimit of Insurance**.

B. **Excess Casualty CrisisFund**

We will pay **Crisis Management Loss** on behalf of the **Named Insured** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Excess Casualty CrisisFund Limit of Insurance**.

C. A **Crisis Management Event** will first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and will end when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

D. There will be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**.

E. Any advancement of **CrisisResponse Costs** or payment of **Crisis Management Loss** that we make under the coverage provided by this Section II will not be a determination of our obligations under this policy, nor create any duty to defend any **Suit** under any other part of this policy.

---

## III. DEFENSE PROVISIONS

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** have been exhausted by payment of **Loss** to which this policy applies; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

*Archive Copy*  © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. investigate, negotiate and settle the **Suit** as we deem expedient; and

2. pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

   a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds required by law to appeal a judgement in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   c. all court costs taxed against the **Insured** in the **Suit**;

   d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

   e. post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

   f. the **Insured's** expenses incurred at our request or with our consent.

D. Except as provided in Paragraph A above, we will have no duty to defend any **Suit** against the **Insured.**   We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

E. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

---

### IV.  LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

   1. **Insureds**;

   2. claims made or **Suits** brought;

   3. persons or organizations making claims or bringing **Suits**; or

   4. coverages provided under this policy.

B. The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under this policy, except for:

   1. damages included within the **Products-Completed Operations Hazard**; and

   2. damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

C. The Products-Completed Operations Aggregate Limit stated in Item 3C of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D. Subject to Paragraphs B and C above, the Each Occurrence Limit stated in Item 3A of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence**.

E. Subject to Paragraphs B and C above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3 of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

F. This policy applies only in excess of the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** whether or not such limits are collectible. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G. If the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

2. in the event of exhaustion, continue in force as underlying insurance.

H. Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance**, then such expenses will reduce the applicable Limits of Insurance of this policy.

I. The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **CrisisResponse Sublimit of Insurance** will be part of, not in addition to, the applicable Limit of Insurance.

J. The **Excess Casualty CrisisFund Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **Excess Casualty CrisisFund Limit of Insurance** will be in addition to the applicable Limit of Insurance.

K. We will have no obligation to advance **CrisisResponse Costs** when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

L. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M. We will not make any payment under this policy unless and until:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** have been exhausted by the payment of **Loss** to which this policy applies; or

2. the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

---

## V. EXCLUSIONS

### A. Aircraft and Watercraft

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that is:

1. less than 26 feet long; and

2. not being used to carry persons or property for a charge.

### B. Asbestos

This insurance does not apply to any liability arising out of:

1. the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2. any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3. any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

### C. Contractual Liability

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. that the **Insured** would have in the absence of a contract or agreement; or

2. assumed in an **Insured Contract**, provided the **Bodily Injury** or **Property Damage** occurs subsequent to the execution and prior to the termination of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

   a. liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

   b. such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D. **Damage to Impaired Property or Property Not Physically Injured**

This insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

E. **Damage to Property**

This insurance does not apply to **Property Damage** to:

1. property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

3. property loaned to you;

4. personal property in the care, custody or control of the **Insured**;

5. that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6. that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2 of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

F. **Damage to Your Product**

This insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

G. **Damage to Your Work**

This insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. **Electronic Chatrooms or Bulletin Boards**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.

Archive Copy © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

I. **Employees and Volunteers**

This insurance does not apply to liability of any employee or volunteer qualifying as an **Insured** under this policy arising out of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**:

1. to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2. to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1 above;

3. for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1 or 2 above; or

4. arising out of his or her providing or failing to provide professional health care services.

J. **Employment Practices**

This insurance does not apply to any liability arising out of:

1. failure to hire any prospective employee or any applicant for employment;

2. dismisal, discharge or termination of any employee;

3. failure to promote or advance any employee; or

4. employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

   a. coercion, harassment, humiliation or discrimination;
   b. demotion, evaluation, reassignment, discipline, or retaliation;
   c. libel, slander, humiliation, defamation, or invasion of privacy; or
   d. violation of civil rights.

This exclusion applies:

1. whether the **Insured** may be liable as an employer or in any other capacity; and

2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

K. **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

M. **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply only if:

1. you are not in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages; and

2. coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance.**

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

N. **Media and Internet Type Businesses**

This insurance does not apply to **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1. advertising, broadcasting, publishing or telecasting;

2. designing or determining content of web-sites for others; or

3. an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1, U2 and U3 of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

O. **"No-Fault," "Uninsured Motorist"** or **"Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P. **Nuclear Liability**

This insurance does not apply to:

1. any liability:

   a. with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

   b. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    c.  resulting from the hazardous properties of nuclear material if:

        i)  the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

        ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

        iii)  the injury or damage arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility.

2.  As used in this exclusion:

    a.  "hazardous properties" includes radioactive, toxic or explosive properties;

    b.  "nuclear material" means source material, special nuclear material or by-product material;

    c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto;

    d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by  any person or organization of a nuclear facility included within the definition of nuclear facility below;

    f.  "nuclear facility" means:

        i)  any nuclear reactor;

        ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

        iii)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

        iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

        includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    g.  "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    h.  **Property Damage** includes all forms of radioactive contamination of property.

Q. **Pollution**

This insurance does not apply to:

1.  Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

any way respond to, or assess the effects of **Pollutants**; or

3.  Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1)  **Products-Completed Operations Hazard**

    Paragraph 1 of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

    a)  discarded, dumped, abandoned, thrown away; or

    b)  transported, handled, stored, treated, disposed of or processed as waste;

    by anyone.

2)  **Hostile Fire**

    Paragraph 1 of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3)  **Equipment to Heat the Building and Contractor/Lessee Operations**

    Paragraph 1 of this exclusion does not apply to:

    a)  **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat the building; or

    b)  **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4)  **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

    Paragraph 1 of this exclusion does not apply to:

    a)  **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

    b)  **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5)  **Fuels, Lubricants, Fluids, etc. - Auto**

*Archive Copy*

© 2001 American International Group, Inc.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Paragraph 1 of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1 of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

R. **Recall of Your Product, Your Work or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product**;

2. **Your Work**; or

3. **Impaired Property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. **Securities**

This insurance does not apply to any liability arising out of:

1. any violation of any securities law or similar law or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

T. **Unauthorized Use of Another's Name or Product**

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

U. **Various Personal Injury and Advertising Injury**

This insurance does not apply to **Personal Injury and Advertising Injury**:

1. caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2. arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3. arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the **Policy Period**;

4. arising out of a criminal act committed by or at the direction of the **Insured**;

5. for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6. arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7. arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or

8. arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

V. **Various Laws**

This insurance does not apply to any obligation of the **Insured** under any of the following:

1. the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2. any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

W. **War**

This insurance does not apply to any liability arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

## VI. CONDITIONS

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B. **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy.  But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D. **Cancellation**

1.  You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy.  If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.  The **Policy Period** will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6 of the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium.  Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.  The first **Named Insured** in Item 1 of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E. **Change In Control**

If during the **Policy Period**:

1.  the first **Named Insured** designated in Item 1 of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2.  any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1 of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction.  There will be no coverage afforded by this policy for **Bodily Injury** or  **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**F. Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

**G. Duties in the Event of an Occurrence, Claim or Suit**

1. You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

    a. how, when and where the **Occurrence** took place;

    b. the names and addresses of any injured persons and any witnesses; and

    c. the nature and location of any injury or damage arising out of the **Occurrence**.

2. If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

    Written notice should be mailed or delivered to:

    > AIG Technical Services, Inc.
    > Excess Casualty Claims Department
    > 175 Water Street
    > New York, NY  10038

3. You and any other involved **Insured** must:

    a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

    b. authorize us to obtain records and other information;

    c. cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

    d. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4. No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**H. Headings**

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

**I. Inspection**

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

**J. Legal Actions Against Us**

No person or organization has a right under this policy:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2. to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

K. **Maintenance of Scheduled Underlying Insurance**

You agree that during the **Policy Period**:

1. you will keep **Scheduled Underlying Insurance** in full force and effect;

2. the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3. the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss** to which this policy applies; and

4. any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L. **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M. **Premium**

The first **Named Insured** designated in Item 1 of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6 of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 6 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we will retain the Minimum Premium as shown in Item 6 of the Declarations for each twelve months of the **Policy Period**.

N. **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1. as if each **Named Insured** were the only **Named Insured**; and

2. separately to each **Insured** against whom claim is made or **Suit** is brought.

O. **Transfer of Rights of Recovery**

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2. Any recoveries will be applied as follows:

   a. any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b. we then will be reimbursed up to the amount we have paid; and

   c. lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3. If, prior to the time of an **Occurrence**, you and the insurer of **Scheduled Underlying Insurance** waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization.

P. **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q. **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

---

| VII. DEFINITIONS |
| --- |

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death or mental anguish resulting from any of these at any time.

D. **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

1. damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. significant adverse regional or national media coverage.

**Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E. **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event**.

F. **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

1. amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

2. amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

G. **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

H. **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1. medical expenses;

2. funeral expenses;

3. psychological counseling;

4. travel expenses;

5. temporary living expenses;

6. expenses to secure the scene of a **Crisis Management Event**; and

7. any other expenses pre-approved by the Company.

**CrisisResponse Costs** does not include defense costs or **Crisis Management Loss**.

I. **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 3D of the Declarations.

J. **Excess Casualty CrisisFund Limit of Insurance** means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K. **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L. **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

*Archive Copy*    © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2. your fulfilling the terms of the contract or agreement.

M. **Insured** means:

1. the **Named Insured**;

2. if you are designated in the declarations as:

   a. an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

   b. a partnership or joint venture, you are an insured. Your members and your partners are also insureds, but only with respect to the conduct of your business;

   c. a limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers;

   d. an organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders;

   e. a trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees;

3. your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4. your volunteer workers only while performing duties related to the conduct of your business;

5. any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6. your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7. any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.

Notwithstanding any of the above:

   a. no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

   b. no person or organization is an **Insured** under this policy who is not an **Insured** under **Scheduled Underlying Insurance**.

N. **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

O. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

P. **Loss** means those sums actually paid as judgments or settlements.

Q. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in Paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in Paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

   a. equipment designed primarily for:

      i) snow removal;

      ii) road maintenance, but not construction or resurfacing; or

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    iii) street cleaning;

  b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

R. **Named Insured** means:

1. any person or organization designated in Item 1 of the Declarations;

2. any organization in which you maintain an interest of more than fifty percent (50%) and which is included as a named insured under **Scheduled Underlying Insurance**, as of the effective date of this policy and to which more specific insurance does not apply, provided that this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3. any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

  a. such organization is included as a named insured under **Scheduled Underlying Insurance**;

  b. this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

  c. you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a, 3b and 3c above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

S. **Occurrence** means:

1. as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2. as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T. **Other Insurance** means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U. **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4. oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5. oral or written publication, in any manner, of material that violates a person's right of privacy;

6. the use of another's advertising idea in your **Advertisement**; or

7. infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

V. **Policy Period** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of termination of this policy.

W. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

X. **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1. products that are still in your physical possession; or

2. work that has not yet been completed or abandoned.  However, **Your Work** will be deemed completed at the earliest of the following times:

   a. when all of the work called for in your contract has been completed;

   b. when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

Y. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2.  loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z.  **Retained Limit** means:

1.  the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2.  the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA. **Scheduled Underlying Insurance** means:

1.  the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2.  automatically any renewal or replacement of any policy in Paragraph 1 above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB. **Self-Insured Retention** means the amount that is shown in Item 5 of the Declarations.

CC. **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged.  **Suit** includes:

1.  an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2.  any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD. **Your Product** means:

1.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a.  you;

    b.  others trading under your name; or

    c.  a person or organization whose business or assets you have acquired; and

2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

Archive Copy
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2.  the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**EE. Your Work** means:

1.  work or operations performed by you or on your behalf; and

2.  materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2.  the providing of or failure to provide warnings or instructions.


**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.


<u>Elizabeth M. Tuck</u>
Secretary

<u>(signature)</u>
President

<u>Thomas R. Tizzio</u>
President

<u>(signature)</u>
President

<u>(signature)</u>
President

<u>Don Stroud</u>
President

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurers direct earned premiums for the year preceeding the Act of Terrorism.

Coverage for Acts of Terrorism for losses is already included in your current policy. The portion of your annual premium that is attributable to coverage for Acts of Terrorism covered by the Act is $9,406.00.

MCKESSON CORPORATION
Insured Name

BE 2978146
Policy #

0030
Division #

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
Insurance Carrier

WITHOUT EXCLUSION BUT WITH CHARGE
81249 (3/03)
AH0992            *Archive Copy*

**ENDORSEMENT NO.** 1

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no.:** BE    2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | CARRIER POLICY PERIOD | LIMITS OF LIABILITY |
|---|---|---|
| Employers Liability (All States Except NV and CT) | Old Republic 7/1/04-05 | $5,000,000 BI by Accident (Each Accident) $5,000,000 BI by Disease Policy Limit $5,000,000 BI by Disease Each Employee Defense is in addition to the limits of liability |
| Employers Liability | Old Republic 7/1/04-05 | $1,900,000 Excess of a $100,000 Retention Indemnity Only Defense is in addition to the limits of liability |
| Master Foreign Employers Liability | Insurance Co. of the State of PA 10/1/03-04 AIU | $1,000,000 This policy provides DIC/DIL coverage over local E.L. policy in UK with $10M limit Defense is in addition to the limits of liability |

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

| | | |
|---|---|---|
| Master Foreign AL/GL | Insurance Co. of the State of PA 10/1/03-04 AIU | $2,000,000 Aggregate (except for products) $2,000,000 Aggregate for Products $1,000,000 Per Occurrence<br><br>Provides DIC/DIL Coverage over local underlying policies. |
| Medical Professional (Druggist Liability) | Lexington 10/29/03-04 | $15,000,000 Each Medical Incident $15,000,000 Aggregate Limit Defense is within the limits of liability |
| Excess Medical Professional (Druggist Liability) | Arch. Specialty Ins. Co. 10/29/03-04 | $10,000,000 Each Occurrence $10,000,000 Aggregate Limit Excess of Lexington Policy. Defense is within the limits of liability: $250K Indemnity Only SIR applies per claimant upon erosion of the $25M Limit. |

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative or countersignature (where required by law)**

**ENDORSEMENT NO.** 2

This endorsement, effective 12:01 AM:  July 1, 2004

Forms a part of policy no.:  BE    2978146

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### SCHEDULE OF RETAINED LIMITS

| COVERAGE | PERIOD OF RETAINED LIMIT | LIMITS OF LIABILITY |
|---|---|---|
| General Liability United States, its Territories and Possessions, and Canada | 7/1/04-05 | $5,000,000 Each Occurrence including Defense Expenses SUBJECT TO $7,500,000 Aggregate, such Aggregate Applicable solely to payment of indemnity and not applicable to the Products-Completed Operations Hazard, Druggists Liability, or any payments for Defense Expenses. <br><br> After exhaustion of the $7,500,000 Aggregate described above, the following self-insured retention shall apply to loss to which the above described Aggregate would apply except for its exhaustion: <br><br> $250,000 Each Occurrence indemnity only |
| Automobile Liability - United States, its territories and possessions, and Canada | 7/1/04-05 | $5,000,000 Each Accident |

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative or countersignature (where required by law)**

**ENDORSEMENT NO.**3

**This endorsement, effective 12:01 AM:**  July 1, 2004

**Forms a part of policy no.:**  BE     2978146

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**KNOWLEDGE OF OCCURRENCE ENDORSEMENT**

This policy is amended as follows:

Notwithstanding any provision(s) in this Policy to the contrary, and solely as respects any loss reporting requirements under this Policy, it is understood that knowledge of an accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Risk Manager or Senior Corporate Counsel has received notice from said agent, servant, employee or any other person.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.4**

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no.:** BE 2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**

**Duties in the Event of an Occurrence, Claim or Suit**

Except with regard to Druggist Liability Coverage provided under this policy, this policy is amended as follows:

**Section VI. CONDITIONS, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit,** subparagraph 1,. Is deleted and replaced by the following:

1. You must see to it that we are notified as soon as practicable after you or your corporate officer receives notice from its agent, servant, employee or any other person, of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extend possible, notice should include:

   a. how, when and where the **Occurrence** took place,

   b. the names and addresses of any injured persons and any witnesses, and

   c. the nature and location of any injury or damage arising out of the **Occurrence.**

However it is understood that the provisions of this endorsement will not supercede **Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** of the policy.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative or countersignature (where required by law)**

**ENDORSEMENT NO.**5

**This endorsement, effective 12:01 AM:**  July 1, 2004

**Forms a part of policy no.:**  BE    2978146

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Claims-Made Coverage Endorsement**

This policy is amended as follows:

**NOTICE: THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.  COVERAGE IS LIMITED TO
LIABILITY FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO  US WHILE THE
COVERAGE IS IN FORCE.  PLEASE REVIEW THE ENDORSEMENT CAREFULLY AND DISCUSS  THIS
COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**
_____

**IT IS  UNDERSTOOD THAT  TO THE  EXTENT ANY  COVERAGE MAY  OTHERWISE BE  PROVIDED
UNDER THIS  POLICY  OR ANY  OF ITS  ENDORSEMENTS, THE  PROVISIONS OF  THIS
ENDORSEMENT WILL SUPERCEDE.**
_____

Solely with respect to the **Insured's**  liability included within the **Druggist  Liability** and/or arising out
of a Wrongful Act in your performance of **Druggist Liability,** this policy is amended as follows:

The **DECLARATIONS, ITEM 2.** is amended to include the following:

    Item 2a.    **RETROACTIVE DATE:** <u>September 14, 1998</u>

    Item 2b.    **CONTINUITY DATE:**   <u>July 1, 2004</u>

**Section I. INSURING AGREEMENT  -  COMMERCIAL UMBRELLA LIABILITY** is  deleted in its entirety
and replaced with the following:

**I.**    **INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY**

A.    We will pay  on behalf  of the  **Insured** those  sums in excess  of the  Retained Limit  that the
    **Insured** becomes legally  obligated to pay  as damages by  reason of liability  imposed by  law
    because of **Bodily Injury, Property Damage** or **Personal  Injury and Advertising Injury** to which
    this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance
    applies assumed by the **Insured** under an **Insured Contract.**

*Archive Copy*

**ENDORSEMENT NO.** 5 (Continued)

The amount we will pay for damages is limited as described in **Section IV. Limits of Insurance**.

B.    This policy applies, only if:

1.   the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere in the world, and the **Bodily Injury** or **Property Damage** occurs on or after the Retroactive Date and prior to the end of the Policy Period,

2.   the **Personal Injury and Advertising Injury** is caused by an **Occurrence** arising out of your business that takes place anywhere on or after the Retroactive Date shown in the Declarations and prior the end of the Policy Period, and

3.   a **Claim** for damages because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** is first made in writing against any **Insured** in accordance with Paragraph C. below during the Policy Period or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

C.    A **Claim** by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

1.   When notice of such **Claim** is received and recorded by any **Insured** in writing and reported to us during the Policy Period or any applicable extended reporting period, or

2.   When we make settlement in accordance with Paragraph A. above.

All **Claims** for damages because of **Bodily Injury** to the same person, including damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**, will be deemed to have been made at the time the first of those **Claims** is made against any **Insured**.

All **Claims** for damages because of **Property Damage** causing **Loss** to the same person or organization will be deemed to have been made at the time the first of those **Claims** is made against the **Insured**.

All **Claims** for damages because of **Personal Injury and Advertising Injury** to the same person or organization as a result of an **Occurrence** will be deemed to have been made at the time the first of those **Claims** is made against any **Insured**.

D.    Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

E.    If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

Coverage under this endorsement applies only to the extent that such coverage is provided by a claims-made policy listed in the Schedule of Underlying Insurance. In no event shall coverage afforded under this endorsement be broader than the Schedule of Underlying Insurance.

*Archive Copy*

This claims-made coverage  shall follow  the terms, definitions,  conditions and  exclusions of such scheduled underlying policy, subject  to the Policy Period, Limits  of Insurance, premium and all other terms, definitions, conditions and exclusions  of this policy.  If any provisions  of such scheduled underlying policy  conflicts with any  provisions of this policy,  the provisions of this policy will prevail.

For the  purpose  of  this endorsement only,  the  SELF  INSURED  RETENTION  in  ITEM  5.  of  the DECLARATIONS, is deleted and replaced by the following provision:

$25,000,000 Each Occurrence  or Wrongful  Act (As respects  all damages  arising out  of Druggist Liability.

**Section VII. Definitions** is amended to include the following additional definitions:

Compounding means the  preparation, mixing, assembling,  packaging,  or  labeling of a  drug, radiopharmaceutical, or device (I)  as the result  of a practitioner's  prescription drug order  or initiative  based  on  the  practitioner/patient/pharmacist  relationship  in  the  course  of professional practice, or  (ii) for the purpose of, or as  an incident  to, research,  teaching or chemical analysis  and  not for  sale  or  dispensing, the  preparation of drugs  or  devices  in anticipation of  prescription drug  orders based  on routine,  regularly  observed prescribing patterns, other practices as are approved as  a part of the practice of pharmacy  by the Board of Pharmacy in the state in which the **Insured** practices.

**Claim** means a demand for money or **Suit.**

**Loss** means those sums actually paid as judgments or settlement

**Druggist Liability** means:

(1) the interpretation, evaluation and dispensing of prescription orders,

(2) participation in drug and  device selection (including, where permitted by state or  federal law, prescribing by  protocol, agreement  or collaborative  practice or  the prescribing  of legally recognized pharmacist-class of drugs or devices),

(3) drug administration including immunization, where permitted by state law by  the **Insured** as a pharmacist,

(4) drug regiment reviews,

(5) medication consulting,  and those acts  or services  necessary to provide  pharmaceutical care,

**(6) Compounding,** selling,  handling  and  distribution  of  drugs,  radiopharmaceuticals, medicine, devices, other  goods or  products and their  container from  any pharmacy  or drug store ( except  labeling by a    manufacturer, repackager, or  distributor of non-prescription drugs and commercially packaged legend drugs and devices),

(7) proper and safe storage of drugs and devices,

*Archive Copy*

**ENDORSEMENT NO.** 5 (Continued)

(8) maintenance of proper records for drugs and devices,

(9) all other services of a professional nature usually and customarily performed by a registered pharmacist or qualified pharmacy intern or pharmacy technician,

(10) services of a nuclear pharmacists and nuclear pharmacy technician.

**Wrongful Act** means any actual or alleged negligent  act, error or omission, misstatement or misleading statement committed by the Named Insured in the performance of professional services.

**Section V. Exclusions** is amended to include the following additional exclusions:

**Prior Knowledge**

This insurance does not apply  to any **Claim** alleging or  arising out of an  **Occurrence** committed on or after the  Retroactive Date shown above,  if any **Insured**  listed  under subparagraphs 2a., 2b., 2c. or  2e. of Paragraph  M. of Section VII., any  executive officer  or director listed  under subparagraph 2d. of Paragraph M. of Section VII. or any  employee authorized by you to give or receive notice  of  an  **Occurrence,** knew as  of  the Continuity Date  shown above  that  such **Occurrence** could result in a **Claim**.

**Continuous or Related Acts**

This insurance does not apply to any **Claim** alleging or arising out the same **Occurrence** or series of continuous, repeated or related  **Occurrences** or alleging the  same or similar facts,  alleged or contained in any **Claim**  which has been reported,  or any **Occurrence**  of which notice has  been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

**Pending or Prior Litigation**

This insurance does not apply to any **Claim** alleging or arising out of any  **Suit** or **Suit**   pending as of  the Continuity Date shown  above, or  alleging or  arising out  of or  relating to  any fact, circumstance, situation or **Occurrence** alleged in such **Claim** or  **Suit**.

**Professional Services**

Any **Claim** arising out of the rendering of or failure to render professional services by the **Insured** or by any person or organization for whose acts or omissions the **Insured** is legally responsible.

**Section VI. Conditions** is amended to include the following additional conditions:

**Automatic Extended Reporting Period**

If we or the **Named Insured** cancel, refuse to renew or replace this policy  (hereinafter "cancel or non-renew"), the  **Named Insured**  will have the  right following the  effective date of  such cancellation or non-renewal to a  period of thirty (30)  days (herein referred to as  the Automatic Extended Reporting Period)  in which to  give written notice  to us  of **Claims** first  made against you during the Automatic Extended  Reporting Period for any **Bodily  Injury**, **Property Damage** or **Personal Injury and  Advertising Injury**  occurring prior to  the end  of  the Policy Period and otherwise covered by this policy.

*Archive Copy*

**ENDORSEMENT NO.** 5 (Continued)

The Automatic Extended Reporting Period will not apply to **Claims** that are covered under any subsequent insurance you purchase or is purchased for your benefit, or that would be covered but for the exhaustion of the Limits of Insurance applicable to such **Claims** or is within any applicable Retained Amount.

The Automatic Extended Reporting Period does not reinstate or increase the Limits of Insurance or extend the Policy Period.

**Optional Extended Reporting Period**

If we or the **Named Insured** will cancel or non-renew this policy, the **Named Insured** will have the right, upon payment of an additional premium of up to two hundred percent (200%) of the full annual premium, to a period of one (1) year following the effective date of such cancellation or non-renewal (herein referred to as the Optional Extended Reporting Period) in which to give written notice to us of **Claims** first made against you during the Optional Extended Reporting Period for any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** occurring prior to the end of the Policy Period and otherwise covered by this policy.

As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

The rights contained in this clause will terminate unless the **Named Insured** provides written notice of such election together with the additional premium due to us within thirty (30) days of the effective date of cancellation or non-renewal. The additional premium for the Optional Extended Reporting Period will be deemed fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable This clause and the rights contained herein will not apply to any cancellation resulting from non-payment of premium. Our offer of renewal terms, conditions, limits of insurance or premiums different from those of the expiring policy will not constitute a non-renewal.

The aggregate limit of insurance for any Extended Reporting Period will be part of, and not in addition to, the Aggregate Limit of Insurance for the **Policy Period**.

An Optional Extended Reporting Period does not reinstate or increase the Limits of Insurance or extend the Policy Period.

If the **Named Insured** exercises its right purchase an Optional Extended Reporting Period, the Automatic Extended Reporting Period will not apply.

**Section VI. Conditions, G. Duties in the Event of an Occurrence, Claim or Suit**, is amended to include the following additional provisions:

1. You must see to it that we are notified as soon as practicable of an **Occurrence** that is reasonably likely to result in a **Claim** or **Suit** under this policy. To the extent possible, notice should include:

   a. how, when and where the **Occurrence** took place,

*Archive Copy*

**ENDORSEMENT NO.** 5 (Continued)

    b.  the names and addresses of any injured persons and any witnesses, and

    c.  the nature and location of any injury or damage arising out of the **Occurrence.**

Any **Claim** which is made in writing against any **Insured** as respects such **Occurrence** shall be deemed to have been first made during this policy period if notice of the **Occurrence** is reported to us within fifteen (15) days of the end of this policy period and the **Claim** or notice of claim for such **Occurrence** is reported to us within three (3) years after the end of this policy period.

2.  If a **Claim** is made or **Suit** is brought against any **Insured** during the **Policy Period,** you must notify us in writing prior to the end of the **Policy Period.**

    Written notice should be mailed or delivered to:

        AIG Technical Services, Inc.
        Excess Casualty Claims Department
        175 Water Street
        New York, NY 10038

3.  You and any other involved **Insured** must:

    a.  immediately send us copies of any demands, notices, summonses or legal papers  received in connection with the **Claim** or **Suit**,

    b.  authorize us to obtain records and other information,

    c.  cooperate with us in the investigation, settlement or defense of the **Claim** or **Suit**, and

    d.  assist us, upon our request,  in the enforcement of any right against any person or organization that may  be liable  to the **Insured** because  of injury  or damage to  which this insurance may also apply.

4.  No **Insured**  will, except  at that **Insured's** own  cost, voluntarily make  a payment,  assume any obligation or incur any expense, other than for first aid, without our consent.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.**6

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no.:** BE   2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy With CrisisResponse** ®

**Retained Limit Amendatory Endorsement**

This policy is amended as follows:

Solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

1.   The **Declarations**, **ITEM 5. SELF INSURED RETENTION** is deleted in its entirety.

2.   **Section IV. LIMITS OF INSURANCE**, Paragraphs B., G., H. and M. are deleted in their entireties and replaced by the following:

   B.   The General Aggregate Limit is the most we will pay for all damages covered under this policy except:

      1.   Damages included within the **Products-Completed Operations Hazard**, and

      2.   Damages because of **Bodily Injury** or **Property Damage** to which this insurance applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto**.

   G.   If the total applicable  Retained Limit(s) listed in  the Schedule of Retained  Limits are reduced or exhausted by payment of Loss to which this policy applies, we will:

      1.  in the event of reduction, pay in excess  of the remaining underlying **Retained Limits**, or

      2.  in  the event of  exhaustion of  the  underlying **Retained Limits**,  continue in force as underlying insurance.

   H.   **Defense Expenses** will be  in addition  to the  applicable Limits  of Insurance  of this policy.  Provided,  however, that  if  the amount  of applicable **Retained Limit**  over which this  policy applies  immediately in excess  is specifically  designated in the Schedule of  Retained  Limits as  including **Defense Expenses**, then  such **Defense Expenses** will reduce the applicable Limits of Insurance of this policy.

***Archive Copy***

**ENDORSEMENT NO.** 6 (Continued)

M.   We will not make any payment under this policy unless and  until the total applicable **Retained Limit(s)**  and any  applicable **Other  Insurance** have  been exhausted  by the payment of **Loss** to which this policy applies.

When the amount  of **Loss** has  been determined by  an agreed settlement  or a  final judgment, we will promptly  pay on behalf  of the **Insured**  the amount of  such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us,  the **Insured** and the claimant  or the claimant's legal representative.

3.   **Section  III. DEFENSE PROVISIONS,** Paragraph A. is deleted  in its entirety and       replaced by  the following:

**III.   DEFENSE PROVISIONS**

A.  We will  have  the right  and  duty  to defend  any **Suit** against  the  **Insured** that seeks damages for **Bodily Injury**,  **Property Damage**  or **Personal  Injury and  Advertising Injury** covered by  this policy, even  if the **Suit** is groundless, false  or fraudulent when  the applicable limits  listed  in  the  Schedule  of Retained  Limits have  been exhausted  by payment of **Loss** to which this policy applies.

If we are prevented by law or statute from assuming the obligations specified  under this provision, we will pay any expenses incurred with our consent.

4.   **Section V. EXCLUSIONS**, Paragraphs I. and M. are deleted in their entireties.

5.   **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** mean payment(s) allocated to  the investigation, settlement or defense  of a specific loss, claim or **Suit,** including but not limited to:

1.   Attorney's fees and all other investigation, loss adjustment and litigation expenses,

2.   Premiums on bonds to release attachments,

3.   Premiums on appeal bonds required by law to appeal any claim or **Suit**,

4.   Costs taxed against the **Insured** in any claim or **Suit**,

5.   Pre-judgment interest awarded against the **Insured**, and

6.   Interest that accrues after entry of judgment.

6.   **Section VII. DEFINITIONS**, Paragraph M.  is amended to include  the following  additional subparagraph:

8.   Any person  or organization to  whom you become  obligated to include as  an additional insured under this policy, as a result  of any contract or agreement you enter  into which requires you to furnish insurance to  that person or organization of the  type provided by this policy,  but only  with respect  to liability  arising out  of your operations, including **Your Work** and  **Your Product**, or  premises owned by  or rented  to you.  However, the

*Archive Copy*

ENDORSEMENT NO. 6 (Continued)

insurance provided will not exceed the lesser of:

    a. The coverages and Limits of Insurance of this policy, or

    b. The coverage and Limits of Insurance required by said contract or agreement.

7.     **Section VII. DEFINITIONS**, the phrase "Notwithstanding any of the above:" and subparagraphs a. and b. thereunder appearing at the end of Paragraph M. are deleted in their entireties and replaced by the following:

    Notwithstanding any of the above provisions 1. through 8. of this Paragraph M. of Section VII., no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company of which the **Named Insured** is or was partner or member and that is not designated as a **Named Insured** in Item 1 of the Declarations.

8.     **Section VII. DEFINITIONS**, Paragraph P. is deleted in its entirety and replaced by the following:

    P.     **Loss** means those sums actually paid as judgments or settlements, provided, however, that if the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then **Loss** shall include such **Defense Expenses**.

9.     **Section VII. DEFINITIONS**, Paragraph R. is deleted in its entirety and replaced by the following:

    R.  **Named Insured** means:

    1. any person or organization designated in Item 1 of the Declarations,

    2. as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization, and

    3. after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

    a. coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization, and

    b. you give us prompt notice after you acquire or form such organization.

*Archive Copy*

**ENDORSEMENT NO.** 6 (Continued)

Subject to the provisions of  Paragraphs 3a. and 3b.  above, a partnership, joint  venture or limited liability  company that  you acquire  or form  during the  **Policy Period**  may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

10.      **Section VII. DEFINITIONS**, Paragraph Z.  is deleted in its entirety and replaced by the following,

**Z. Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

The **Retained Limit(s)** listed in the Schedule  of Retained Limits will apply whether or  not there is any  available **Scheduled  Underlying  Insurance**  or **Other  Insurance**.  If there is **Scheduled Underlying Insurance**  or  **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled  Underlying  Insurance** or  **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

a. If  the  applicable  **Retained  Limit** is  specifically  designated  in the  Schedule  of Retained Limits as including  **Defense Expenses**, then  amounts received through **Scheduled Underlying  Insurance** or  **Other Insurance** providing  coverage  to  the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit**.

b. If  the  applicable  **Retained  Limit**  is not specifically designated  in the Schedule  of Retained Limits as including  **Defense Expenses**, then  amounts received through **Scheduled Underlying  Insurance** or  **Other Insurance** providing  coverage to  the **Insured** for  the  payment of **Defense  Expenses** shall  not reduce  the  **Retained Limit.**

11.      **Section VI. CONDITIONS,** Paragraphs A. and C. are deleted in their entireties and replaced by the following:

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in  excess of the  total applicable **Retained Limit(s)**,  we may elect to  do so.  If  we appeal, we will  be liable for, in addition to the  applicable Limits of Insurance of this  policy, all court costs, expenses incurred and interest on that  amount of any judgment which does  not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of  your underlying insurers will  not relieve us from  the payment of **Loss** covered by this policy.  But under no circumstances will such bankruptcy, insolvency or inability to  pay require  us to  drop  down, replace  or assume  any  obligation within  a **Retained Limit.**

If another endorsement attached to this policy states specifically that the provisions therein supercede any other terms, definitions, conditions, and exclusions of any language in this  policy or

*Archive Copy*

**ENDORSEMENT NO.** 6 (Continued)

its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement.  In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

## Schedule of Retained Limits

Coverage(s)                                                  Retained Limit(s)

See Endorsement # 2

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT NO. 7

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no.:** BE    2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## AMENDATORY ENDORSEMENT

Section V. Exclusions, U.2 is amended as follows:

Arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of the **Insured** with knowledge of its falsity:

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

—————————————————
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 8

**This endorsement, effective 12:01 AM:**  July 1, 2004

**Forms a part of policy no.:**  BE    2978146

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy Form**

**MEDICAL PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Medical Professional Liability**

This insurance does not apply to **Bodily Injury, Property Damage** or **Personal Injury** and **Advertising Injury** arising out of the rendering of or failure to render the following professional services:

**(A)**  Medical, surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith,

**(B)**  Furnishing or dispensing of medical, dental or surgical supplies or appliances,

**(C)**  Handling of or performing  postmortem examinations on human bodies, or

**(D)**  Service by any person as a member of a formal accreditation or similar professional board or committee of the **Named Insured,** or as person charged with the duty of executing directives of any such board or committee.

It is also agreed that any **Bodily Injury** sustained by any patient or other person while seeking or being administered professional services shall not be covered under this policy except when such **Bodily Injury** occurs as a direct result of one or more of the following perils and then only if said perils occur on the **Insured's** premises:

**1.**  Fire or lightning,
**2.**  Windstorm or hail,
**3.**  Explosion,
**4.**  Riot, strike or civil commotion,
**5.**  Hazards involving any aircraft or vehicle,
**6.**  Sonic shock waves,
**7.**  Smoke,

*Archive Copy*

**ENDORSEMENT NO.** 8 (Continued)

**8.** Vandalism or malicious mischief,
**9.** Sprinkler leakage,
**10.** Elevator malfunction,
**11.** Earthquake or flood,
**12.** Structural collapse of building, or
**13.** Ownership, maintenance or use of premises and all operations necessary or incidental thereto.

However, the exclusions set forth in Paragraphs (A) and (B) do not apply if such coverage is provided by **Scheduled Underlying Insurance**.

The exclusion set forth in Paragraph (B) does not apply to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard.**

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO.** 9

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no.:** BE    2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Named Peril and Time Element Pollution
Self-Insured Retention Endorsement
(Products-Completed Operations Hazard Version)**

This policy is amended as follows:

**Section V. EXCLUSIONS**, Paragraph Q. **Pollution** is deleted in its entirety and replaced by the following:

**Pollution**

This insurance does not apply to:

1.    Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time,

2.    Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**, or

3.    Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

However, this exclusion will not apply to **Bodily Injury** or **Property Damage** arising out of:

i.    Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot or civil commotion, flood, automatic sprinkler leakage, collision or upset of an **Auto** or **Mobile Equipment** or aircraft, or

*Archive Copy*

    ii.    Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** and included within the **Products-Completed Operations Hazard** provided that:

        **(a) Your Product** or **Your Work** has not at any time been:

            (1) discarded, dumped, abandoned, thrown away, or

            (2) transported, handled, stored, treated, disposed of or processed as waste,

by anyone, and

        (b) Such **Bodily Injury** or **Property Damage** occurs after possession of **Your Product** or **Your Work** ahs been relinquished to others by you or others trading under your name and such use occurs away from premises owned, rented or controlled by you, or

    iii.    Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** that meets all of the following conditions:

        (a) It was neither expected nor intended by the **Insured**. This condition does not apply to a non-routine incident where such discharge, dispersal, seepage, migration, release or escape of **Pollutants** was a result of an attempt by the **Insured** to mitigate or avoid a discharge, dispersal, seepage, migration, release or escape of **Pollutants** that was itself neither expected nor intended by the **Insured** and where substantial third party **Bodily Injury** or **Property Damage** could have occurred**,**

        (b) It commenced on a demonstrable, specific date during the **Policy Period**,

        (c) Its commencement became known to the **Insured** within (20) calendar days,

        (d) Its commencement was reported in writing to us within (80) calendar days of becoming known to the **Insured** , and

        (e) Reasonable effort was expended by the **Insured** to terminate the discharge, dispersal, seepage, migration, release or escape of **Pollutants** as soon as conditions permitted.

However, nothing contained in this endorsement will operate to provide any coverage with respect to:

    i.    Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material,

*Archive Copy*

**ENDORSEMENT NO.** 9 (Continued)

ii.    Any fines or penalties,

iii.   Any site or location  designated as a  National Priorities List  (Superfund) site by the federal government, or any site or location given a similar  designation under any federal, state or local environmental remediation law,

iv.    Acid rain or acid runoff,

v.     Clean-up, removal, containment, treatment, detoxification or neutralization of **Pollutants** situated on premises which the **Insured** owns, rents or occupies at the time  of the  actual discharge,  dispersal,  seepage, migration,  release or escape of said **Pollutants**, or

For the purpose of this endorsement only, the SELF-INSURED RETENTION in ITEM 5.  of the DECLARATIONS, is amended to include the following additional provision:

**$5,000,000**  Each Occurrence (As respects  all damages  arising out of any  discharge, dispersal,  seepage,  migration,  release  or  escape  of  **Pollutants**  covered  under  this endorsement).  This **Self-Insured Retention** will not be reduced by **Defense Expenses**.

The above **Self-Insured  Retention** applies  whether or  not there  is any  available **Scheduled Underlying Insurance** or **Other  Insurance**.  If there is **Scheduled  Underlying Insurance** or **Other Insurance** applicable to a **Loss**,  amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment  of the **Loss** may be  applied to reduce or  exhaust the above **Self-Insured Retention** if such policies  were purchased by the  **Named Insured** to specifically apply as underlying insurance to this policy.  However,  in no event will amounts received through such **Scheduled  Underlying Insurance** or **Other  Insurance** for the payment of **Defense Expenses** reduce the above **Self-Insured Retention**.

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS** Paragraphs A. and D. are deleted in their entirety and  Paragraph A. is replaced by the following:

We will have no  duty to defend any  **Suit** against the **Insured**.   We will, however,  have the right, but not the duty, to participate in the defense of any **Suit**  and the investigation of any claim to which this endorsement may  apply.  If we exercise this  right, we will do so  at our own expense.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** means a  payment allocated to  defend a specific **Suit**,   including but  not limited to:

1.  Attorneys' fees and all other investigation, loss adjustment and litigation expenses,

2.  Premiums on bonds to release attachments,

3.  Premiums on appeal bonds required by law to appeal any claim or **Suit**,

4.  Court costs taxed against the **Insured** in any **Suit**,

*Archive Copy*

**ENDORSEMENT NO.** 9 (Continued)

5.  Pre-judgment interest awarded against the **Insured**, and

6.  Interest that accrues after entry of judgment.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 10

**This endorsement, effective 12:01 AM:**  July 1, 2004

**Forms a part of policy no.:**  BE    2978146

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**®

**Amendment of Contractual Liability Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS,** Paragraph C. is deleted in its entirety and replaced by the following:

**Contractual Liability**

This insurance does not apply to any liability for which the **Insured** is obligated to pay
damages by reason of the assumption of liability in a contract or agreement.  This exclusion
does not apply to liability for damages.

1.  that the **Insured** would have in the absence of a contract or agreement, or

2.  assumed in an **Insured Contract,** provided **Bodily Injury** or **Property Damage** occurs
    subsequent to the execution of the **Insured Contract.**  Solely for the purposes of liability
    assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation
    expenses incurred by or for a party other than an **Insured** are deemed to be damages
    because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of
    this policy, provided:

    a.  liability to such party for, or for the cost of, that party's defense has also been
        assumed in the same **Insured Contract,** and

    b.  such attorney fees and litigation expenses are for defense of that party against a
        civil or alternative dispute resolution proceeding in which damages to which this
        policy applies are alleged.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.**11

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no.:** BE     2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**

**Arbitration Condition Endorsement**
**(Solely Applicable To Exclusion Q. And Any Endorsements Amending Exclusion Q.)**
**(Domicile State)**

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

**Arbitration**

In the event of a disagreement as to the interpretation of Exclusion Q. of this policy of a disagreement as to the interpretation any endorsements attached to this policy amending Exclusion Q., the disagreement shall be submitted to binding arbitration before a panel of three (2) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of a least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item 1 of the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO.** 12

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no.:** BE    2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## NAMED INSURED ENDORSEMENT

**It is hereby understood and agreed that Item 1., NAMED INSURED of the Declarations page is amended to read as follows:**

Beldere Corporation
       S.K.U., Inc. (50%)
California Golden State Finance Company
       CGSF Funding Corporation
City Properties, S.A. (20%)
Crocker Plaza Company
Foremost de Venezuela, S.A. (39.69%)
Foremost Iran Corporation
Foremost Shir, Inc.
Foremost Tehran, Inc.
Golden State Insurance Company Limited
Goodman Manufacturing Company
Health Mart Systems, Inc.
Intercal, Inc. (15%)
KWS & P, Inc.
KWS & P/SFA, Inc.
MCK Acquisition Corp.
McKesson Asia-Pacific Pty Limited
       McKesson New Zealand Limited
McKesson Automation, Inc.
McKesson Automation Systems Inc.
       McKesson Automation Canada Inc.
       SI/Baker, Inc. (50%)
McKesson BioServices Corporation
       Pharmaceutical Support Services, Inc.
McKesson Capital Corp.
McKesson Capital Funding Corp.
McKesson (Cayman Islands) Inc.
       NADRO, S.A. de C.V. (21.68%)
McKesson Development Corp.
McKesson Health Solutions Arizona Inc.
McKesson Information Solutions LLC
       HBO & Company (VI), Inc.

*Archive Copy*

**ENDORSEMENT NO.** 12 (Continued)

HBOC Medical Ltd.
McKesson Health Solutions Holdings Inc
    McKesson Health Solutions LLC
    Access Health UK Ltd.
    McKesson Health Solutions Texas Inc.
    McKesson Health Solutions Puerto Rico Inc.
    McKesson Information Solutions Holdings France S.a.r.l.
        McKesson Information Solutions France SA
    McKesson Information Solutions Holdings Limited
        A.L.I. Holdings LLC
        Medical Imaging SRL
           A.L.I. Technologies (International) LLC
    McKesson International LLC
        McKesson Information Solutions Holdings I SRL
        McKesson Information Solutions SRL
    McKesson Information Solutions III LLC
        McKesson Information Solutions Holdings II SRL
        McKesson Information Solutions II SRL
    McKesson Information Solutions IV LLC
        McKesson Information Solutions Holdings III SRL
        McKesson Information Solutions III SRL
    McKesson HBOC (Gibraltar) Limited
    McKesson Information Solutions International S.a.r.l.
        McKesson Information Solutions Finance S.a.r.l.
        McKesson Information Solutions Capital S.a.r.l.
        McKesson Information Solutions Holdings S.a.r.l.
        McKesson Information Solutions Holdings II S.a.r.l.
               McKesson International Nova Scotia ULC
                  McKesson Medical Imaging Company
            McKesson Information Solutions Holdings III S.a.r.l.
               McKesson Health Solutions Canada Company
            McKesson Information Solutions Holdings IV S.a.r.l.
               McKesson Information Solutions Canada Company
            A.L.I. Technologies (Europe) B.V.
            A.L.I. Technologies (Deutschland) GmbH
            McKesson Information Solutions Ireland Limited
            McKesson Information Solutions (Netherlands) B.V.
               McKesson HBOC Nederland B.V.
            McKesson Information Solutions UK Limited
               Data-Med Computer Services Ltd.
               HBO & Company (ST & SW), Ltd.
        McKesson Services Inc.
           A.L.I. Imaging Systems Corp.
McKesson International Holdings Limited
    McKesson Financial Holdings Limited
    McKesson International Ireland Limited
    McKesson Financial Holdings II Limited
    McKesson (International) (Gibraltar) Limited
        McKesson International Holdings LLC
            McKesson International Holdings SRL
            McKesson International SRL

*Archive Copy*

**ENDORSEMENT NO.** 12 (Continued)

McKesson International Finance S.a.r.l.
McKesson International Capital S.a.r.l.
McKesson International Holdings S.a.r.l.
    McKesson International Holdings II S.a.r.l.
        McKesson Funding Company of Canada
    McKesson International Holdings III S.a.r.l.
        McKesson Finance Company of Canada
          McKesson Canada Corporation
            3071046 Nova Scotia Company
McKesson Medical-Surgical Holdings Inc.
    McKesson Medical-Surgical Inc.
        McKesson Medical-Surgical FDT Inc.
        McKesson Medical-Surgical Iowa Inc.
    McKesson Medical-Surgical Iowa Supply Inc.
    McKesson Medical-Surgical Maine Inc.
McKesson Medical-Surgical Minnesota Inc.
    McKesson Medical-Surgical MediMart Inc.
    McKesson Medical-Surgical MediNet Inc.
    McKesson Medical-Surgical Minnesota Supply Inc.
    McKesson Medical-Surgical TBC Inc.
McKesson Medication Management Holdings Inc.
    McKesson Medication Management LLC
    McKesson Medication Management Puerto Rico Inc.
    Purchasing Alliance for Clinical Therapeutics, LLC
McKesson Property Company, Inc.
    DC Land Company
    DCAZ Land Company
    Foremost Homes Hawaii, Ltd.
    HF Land Company
McKesson Specialty Corporation
McKesson Specialty Pharmaceuticals LLC (99%)
McKesson Trading Company
McKesson Transportation Systems, Inc.
N.V. Medicopharma (10%)
Penn-Chem Corporation
Zee Medical Canada, Inc.
Zee Medical, Inc.
    CPG Industries, Inc.
    Roth Medical Services, Inc.

 Inactive
 In Bankruptcy
 Part-owned by more than one McKesson Corporation Entity
1% owned by McKesson Specialty Corporation

All other terms, conditions and exclusions of the policy remain unchanged.

**Archive Copy**

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 13

**This endorsement, effective 12:01 AM:**  July 1, 2004

**Forms a part of policy no.:** BE    2978146

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy With CrisisResponse®**

**Acquired Entities Endorsement**

This policy is amended as follows:

1.      It is agreed that newly acquired and actively managed entities are automatically covered as follows:

    a)  Newly acquired or  formed entities with operations that are not materially different from those of the **Insured** prior to such  acquisition, formation or merger and with annual sales not exceeding two  hundred and fifty million  dollars ($250,000,000) are automatically covered.

    b)  Newly  acquired or  formed  entities, regardless  of size,  with  operations prior  to such  acquisition,  formation  or  merger  materially  different  from  those of  the **Insured** will be automatically covered for a period of sixty (60) days from the date of acquisition, formation  or merger, during  which time  the **Insured** shall  provide sufficient underwriting data for us to evaluate the continuation of coverage.

2.      We may  make  an additional  premium  charge  for any  such  additional entities  you acquire, form or take control of during the **Policy Period**.

3.      Any newly acquired or formed entity shall only be afforded coverage under this policy if such  organization  is  included  as  a  named  insured  under **Scheduled  Underlying Insurance**.  Except, however,  this provision 3.  shall not apply  to coverages listed  in the Schedule of Retained Limits attached to this policy.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT No.** 14

This endorsement, effective **12:01 AM:** July 1, 2004

Forms a part of policy no: BE   2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy With CrisisResponse[SM]

### California Cancellation and Nonrenewal Amendatory Endorsement

This policy is amended as follows:

I.   **Section VI. CONDITIONS**, Paragraph D., **Cancellation**, is deleted in its entirety and replaced by the following:

D.   **Cancellation**

1.   You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.   New Policies in Effect for Sixty (60) Days or Less:

We may cancel this policy.  If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice.  Such notice will include the reason or reasons for cancellation.

3.   New Policies in Effect for More Than Sixty (60) Days and Any Renewal Policy:

We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

a.   Nonpayment of premium, including payment due on a prior policy issued by us and due during the **Policy Period** covering the same risks;

b.   A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

c.   Discovery of fraud or material misrepresentation by either of the following:

i.   You or other **Insureds** or your representative in obtaining this policy; or

ii.   You or your representative in pursuing a claim under this policy.

d.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or other **Insureds** or a representative of same, which materially increase any of the risks insured against;

e.   Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan if the failure materially increases any of the risks insured against;

   f.  A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

   g.  A determination by the commissioner that a continuation of this policy's coverage could place us in violation at the laws at this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

   h.  A change by you or other **Insureds** or a representative of same in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the added, increased or changed risk is included in this policy;

   i.  A material change in limits, type or scope of coverage or exclusions in **Scheduled Underlying Insurance**;

   j.  Cancellation or nonrenewal of any **Scheduled Underlying Insurance** where such insurance is not replaced without lapse; or

   k.  A reduction in financial rating or grade of one or more insurers issuing any **Scheduled Underlying Insurance** based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less then ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.  Such notice will include the reason or reasons for cancellation.

4.  The **Policy Period** will end on the day and hour stated in the cancellation notice.

5.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 5 of the Declarations.

6.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 5 of the Declarations.

7.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you.  Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.  The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

**II.  Section VI. CONDITIONS** is amended to include the following provision:

**Nonrenewal**

If we decide not to renew this policy, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of nonrenewal at least sixty (60) days, but no more than one hundred twenty (120) days prior to the end of the **Policy Period**.  The notice shall contain the reason or reasons for nonrenewal of this policy.

**III.  Section VI. CONDITIONS** is amended to include the following provision:

**Increase in Premium, Reduction in Limits or Change in Conditions of Coverage**

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1. Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2. Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3. A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4. A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in this policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in this policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (Where Applicable)

ENDORSEMENT No. 15

This endorsement, effective 12:01 AM:  July 1, 2004

Forms a part of policy no:  BE      2978146

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Miscellaneous Changes  Endorsement

This policy is amended as follows:

**SECTION I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY,** Paragraphs C. and D. are deleted in their entireties and replaced by the following:

C.  1.   This policy applies to **Bodily Injury** or  **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M.. of Section VII, no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part.  If such an **Insured**, or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

2.   **Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D.      **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured**  listed  under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

1.   reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

2.   receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

3.   becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

**SECTION III. DEFENSE**, is amended as follows:

1

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Archive Copy

Paragraph A.1. is deleted and replaced by the following:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

Paragraph C. 2. d. is deleted and replaced by the following:

d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest accruing after we make such offer;

**SECTION IV. LIMITS OF INSURANCE** is amended as follows:

Paragraph F. is deleted and replaced by the following:

F. This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

Paragraph G. is deleted and replaced by the following:

G. If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

2. in the event of exhaustion, continue in force as underlying insurance.

Paragraph M.1. Is deleted and replaced by the following:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss;** or

**SECTION V. EXCLUSIONS**, is amended as follows:

Paragraph I. **Employees and Volunteers** is amended to include the following additional Paragraph:

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of **Bodily Injury or Personal Injury and Advertising Injury** if such coverage is provided by **Scheduled Underlying Insurance.** Coverage under this policy for **Bodily Injury** or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

2

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Paragraph K. **Expected or Intended Injury** is deleted and replaced by the following:

K. **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

Paragraph M. **Liquor Liability** is deleted and replaced by the following:

M. **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

Paragraph P. **Nuclear Liability** is amended as follows:

Subparagraph 1.c. is deleted and replaced by the following

c. **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

i) the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

ii) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

iii) the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

*Archive Copy*

Paragraph **W. War** is deleted and replaced by the following:

**W. War.**

This insurance does not apply to **Loss**, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war; or

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SECTION VI. CONDITIONS** is amended as follows:

Paragraph D. Cancellation, subparagraph 2. is deleted and replaced by the following:

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

Paragraph E. **Change in Control**, the last sentence is deleted and replaced with the following:

Coverage will be afforded by this policy **for Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth 90th day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1 of the Declarations or the end of the **Policy Period**, whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

Paragraph O. **Transfer of Rights of Recovery**, subparagraph 3. is deleted and replaced by the following:

3. If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization

**SECTION VII. DEFINITIONS** is amended as follows:

Paragraph C. **Bodily Injury** is deleted and replaced by the following:

4

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Archive Copy

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

Paragraph M. **Insured**, is amended as follows:

Subparagraph 2b. is deleted and replaced by the following:

b.   a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

The last paragraph is deleted and replaced by the following:

Notwithstanding any of the above:

a.   no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

b.   no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

Paragraph P. **Loss** is deleted and replaced by the following:

P.   **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then Loss shall include such expenses.

Paragraph R. **Named Insured** is deleted and replaced by the following:

R.   **Named Insured** means:

1.   any person or organization designated in Item 1 of the Declarations;

2.   as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%), provided that coverage provided to such organization under this paragraph  does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.   after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

a.   coverage provided to such organization under this paragraph does not apply to any  **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

b.   you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

5

83864 (02/04)
AH1266
© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Archive Copy

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**.  If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured,** under the highest applicable limit of **Scheduled Underlying Insurance**.

Paragraph T. **Other Insurance** is deleted and replaced by the following:

T. **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

6

83864 (02/04)
AH1266
© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Archive Copy

**ENDORSEMENT No.** 16

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no:** BE 2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### <u>Self Insured Retention Applicable To Specified Coverage After Underlying Limits Are Reduced or Exhausted Endorsement</u>

This policy is amended as follows:

This endorsement will apply to the below **Specified Coverage** only:
Druggist Liability, General Liability (Not applicable to the Products-Completed Operation Hazard).

The **Declarations, ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional **Self Insured Retention**:

**Specified Coverage** Self Insured Retention - $250,000          Each Occurrence

**Section III. DEFENSE**, Paragraph A. is deleted and replaced by the following:

We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance**, any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention have been exhausted by payment of **Loss** to which this policy applies; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

**Section IV. LIMITS OF INSURANCE**, Paragraphs F., G. and M. are deleted in their entireties and replaced by the following:

F. This policy applies only in excess of the total applicable limits of **Scheduled Underlying Insurance,** any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention whether or not such limits are collectible. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

**Archive Copy**

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G. If the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance,** any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention; and

2. in the event of exhaustion, continue in force as underlying insurance.

The **Specified Coverage** Self Insured Retention will apply per **Occurrence**.

M. We will not make any payment under this policy unless and until:

1. the total applicable limits of **Scheduled Underlying Insurance,** any applicable **Other Insurance** and the **Specified Coverage** Self Insured Retention have been exhausted by the payment of **Loss** to which this policy applies; or

2. the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgement, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

Section IV. LIMITS OF INSURANCE is amended to include the following additional provision:

The **Specified Coverage** Self Insured Retention will not be reduced by **Defense Expenses**.

Section VII. DEFINITIONS is amended to include the following additional definitions:

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgement interest awarded against the **Insured**; and

6. Interest that accrues after entry of judgement.

**Specified Coverage** means the coverage that is specified at the top of this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

---

**Authorized Representative**
or Countersignature (Where Applicable)

**ENDORSEMENT No.** 17

**This endorsement, effective 12:01 AM:**  July 1, 2004

**Forms a part of policy no:**  BE    2978146

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Foreign Liability Limitation Endorsement
### (With Total Terrorism Exclusion Applicable To Specified Countries)

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Foreign Liability**

This insurance does not apply to **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** is provided by a policy listed in the **Scheduled Underlying Insurance**:

1.  This exclusion shall not apply; and

2.  Coverage under this policy for such **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

Notwithstanding 1. and 2. above, this insurance does not apply to **Loss**, injury, damage, claim or **Suit**, arising directly or indirectly as a result of or in connection with **Terrorism** that occurs in the following countries:

Afghanistan, Bahrain, Bangladesh, Bosnia-Herzegovina, Burma, Burundi, Central African Republic, Colombia, Congo, Cote d'Ivoire, Cuba, Haiti, India, Indonesia, Iran, Iraq, Israel, Jordan, Kenya, North Korea, Lebanon, Liberia, Libya, Nepal, Niger, Nigeria, Pakistan, Palestinian Authority, Philippines, Saudi Arabia, Somalia, Sudan, Thailand, Uzbekistan, Venezuela, Yemen or Zimbabwe, and any other countries sanctioned by the Office of Foreign Asset Controls.

It is understood that to the extent any coverage may otherwise be provided for these above listed countries under this policy or any of its endorsements, the provisions of this exclusion will supercede.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Terrorism** means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

1. A government;

2. The civilian population of a country, state or community; or

3. To disrupt the economy of a country, state or community.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

*Archive Copy*

**ENDORSEMENT No.** 18

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no.:** BE     2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Employee Benefits Liability Limitation Claims Made Version Endorsement**

**NOTICE: Please read this endorsement carefully. This endorsement provides coverage on a claims made basis. Except to the extent as may otherwise be provided herein, the coverage of this insurance is generally limited to liability for only those claims that are first made during the Policy Period and reported in writing to us.**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employee Benefits Liability**

This insurance does not apply to any liability arising out of:

1. any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

2. any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

   a. giving counsel to employees with respect to a **Plan**;

   b. interpreting a **Plan**;

   c. handling of records in connection with a **Plan**;

   d. effecting enrollment, termination or cancellation of employees under a **Plan**; or

   e. any claim against an **Insured** solely by reason of his, her or its status as an administrator, the **Plan** or you as sponsor of the **Plan**.

However, this exclusion will not apply only if and to the extent that coverage for such liability is provided by **Scheduled Underlying Insurance**.

Solely as respects this endorsement, this policy will only provide coverage for a **Claim** made against the **Insured** during the **Policy Period**:

   a) If the insurance provided by **Scheduled Underlying Insurance** provides coverage for **Occurrences** occurring on or after a specified Retroactive Date for a claim for damages because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** first made in writing against any **Insured** in accordance with Paragraph b) below during the **Policy Period** or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

83073 (09/03)                          Page 1 of 2
AH1228                    ***Archive Copy***

b) A **Claim** by any person or organization seeking damages will be deemed to have been made at the earlier of the following times:

1. When notice of such **Claim** is received and recorded by any **Insured** in writing and reported to us during the Policy Period or any applicable extended reporting period; or

2. When we make settlement in accordance with Paragraph a) above.

Notwithstanding the above, this insurance shall not apply to:

1. any **Claim** alleging or arising out of an **Occurrence** committed on or after the Retroactive Date set forth in the **Schedule Underlying Insurance**, if the **Insured**, an officer, manager in your risk management, insurance or legal department or an employee who was authorized by you to give or receive notice of an **Occurrence**, knew as of the Continuity Date shown above that such **Occurrence** could result in a **Claim**.

2. any **Claim** alleging or arising out the same **Occurrence** or series of continuous, repeated or related **Occurrences** or alleging the same or similar facts, alleged or contained in any **Claim** which has been reported, or any **Occurrence** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

3. any **Claim** alleging or arising out of any **Claim** or **Suit** pending as of the Continuity Date; or alleging or arising out of or relating to any fact, circumstance, situation or **Occurrence** alleged in such **Claim** or **Suit**.

If **Scheduled Underlying Insurance** does not contain a Continuity Date, the Continuity Date will be the Retroactive Date.

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Claim** means a written demand upon the **Insured** for compensatory damages or services and shall include the service of **Suit** or institution of arbitration proceedings against the **Insured**.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **Plan** is subject.

**Plan** means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of **ERISA** or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1. a welfare plan, as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. a pension plan as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3. a combination of 1. and 2. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No.** 19

This endorsement, effective 12:01 AM: July 1, 2004

Forms a part of policy no: BE    2978146

Issued to: MCKESSON CORPORATION

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse[SM]**

**Notice of Occurrence**

This policy is amended as follows:

**Section VI. CONDITIONS**, Paragraph G. **Duties in the Event of an Occurrence, Claim or Suit** is amended to include the following provision:

5. Your failure to give first report of a claim to us will not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you will report any such **Occurrence** to us within a reasonable time once you become aware of such error.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

80454 (07/02)
AH0939

*Archive Copy*

**ENDORSEMENT No.** 20

**This endorsement, effective 12:01 AM:** July 1, 2004

**Forms a part of policy no:** BE     2978146

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Defense within the Limits of Insurance

This policy is amended as follows:

**Section IV. LIMITS OF INSURANCE**, Paragraph H. is deleted in its entirety and replaced by the following:

H.  Expenses incurred to defend any **Suit** or to investigate any claim will reduce the applicable Limits of Insurance of this policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

80413 (07/02)
AH0900

*Archive Copy*

**ENDORSEMENT No.** 21

**This endorsement, effective 12:01 AM:**  July 1, 2004

**Forms a part of policy no:**  BE     2978146

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Non-Concurrency Endorsement

This policy is amended as follows:

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

If any of the policy periods of **Scheduled Underlying Insurance**, (including any renewals and replacements thereof) apply nonconcurrently with the **Policy Period** of this policy, and in the event of reduction or exhaustion of the aggregate limit(s) of the underlying policy(ies) by payment of damages taking place during the policy period of such underlying policy(ies), **we** will:

1.   In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

2.   In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance;

subject to the definitions, conditions and exclusions of the applicable underlying policy(ies).

Coverage under this policy, however, applies only to **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** that takes place during the **Policy Period** of this policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

81581 (02/03)
AH1077                    ***Archive Copy***

ENDORSEMENT No. 22

This endorsement, effective 12:01 AM:  July 1, 2004

Forms a part of policy no:  BE    2978146

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Commercial Umbrella Liability Policy with CrisisResponse $^{SM}$

<u>Uninsured/Underinsured Motorists Coverage Endorsement</u>

**THIS ENDORSEMENT APPLIES TO A COVERED AUTO REGISTERED OR PRINCIPALLY GARAGED IN THE FOLLOWING STATE(S) (where indicated by an "X")**

The Declarations ITEM 3. LIMITS OF INSURANCE is amended to include the following additional provisions:

Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| x | VERMONT | $100,000 **Bodily Injury and Property Damage Combined Single Limit** |
|---|---------|---|

And, if Uninsured/Underinsured Motorist Coverage <u>has been selected</u> under this policy:

Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| FLORIDA | **Bodily Injury** |
|---------|---|
| WEST VIRGINIA | **Bodily Injury and Property Damage Combined Single Limit** |

And, if Uninsured/Underinsured Motorist Coverage <u>has not been rejected</u> under this policy:

Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| INDIANA | **Bodily Injury and Property Damage Combined Single Limit** |
|---------|---|
| LOUISIANA | **Bodily Injury Limit** |
| NEW HAMPSHIRE | **Bodily Injury Limit** |
| ALASKA | **Bodily Injury Limit** |

Uninsured/Underinsured Motorists Retained Limit   $5,000,000

INSURING AGREEMENT

Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY is amended to include the following additional provisions:

1.  We will pay all sums in excess of the **Uninsured/Underinsured Motorists Retained Limit** the **Insured** is legally entitled to recover as compensatory damages from the owner or operator of:

    a.  An **Uninsured Motor Vehicle** as defined in Definition 4.a., 4.b. and 4.c. of this endorsement because of **Bodily Injury** sustained by the **Insured**, or **Property Damage** and caused by an **Occurrence**, and

    b.  An **Uninsured Motor Vehicle** as defined in Definition 4.d. of this endorsement because of **Bodily Injury** sustained by any **Insured**, or **Property Damage**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **Uninsured Motor Vehicle.**

2.   We will pay under this coverage only if a. or b. below applies:

    a.   The limits of any applicable liability bonds or policies of the **Uninsured Motor Vehicle** have been exhausted by judgments or payments; or

    b.   A tentative settlement has been made between an **Insured** and the insurer of the vehicle described in paragraph b. of the definition of **Uninsured Motor Vehicle** of this endorsement and we:

        1)   Have been given prompt written notice of such settlement; and

        2)   Advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days after receipt of notification.

3.   Any judgment for damages arising out of a **Suit** brought without our written consent is not binding upon us.

### DEFENSE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section III. DEFENSE PROVISIONS** is hereby deleted in its entirety and replaced by the following:

1.   We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury** or **Property Damage** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the **Uninsured/Underinsured Motorists Retained Limit** has been exhausted by payment of **Loss** to which this policy applies.

    If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

2.   We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply.

3.   When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

    a.   Investigate, negotiate and settle the **Suit** as we deem expedient; and

    b.   Pay the following supplementary payments:

        1)   premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

        2)   premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

        3)   all court costs taxed against the **Insured** in the **Suit**;

        4)   pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000
Archive Copy

5) post-judgment interest that accrues after entry of judgment on that part of the judgement within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

6) the **Insured's** expenses incurred at our request or with our consent.

4. Except as provided in Paragraph 1. above, we will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

5. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph 3. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## LIMITS OF INSURANCE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section IV. LIMITS OF INSURANCE** is amended to include the following additional provisions:

1. Regardless of the number of covered **Autos**, **Insureds**, premiums paid, claims made or vehicles involved in the **Occurrence**, the most we will pay for all damages resulting from any one **Occurrence** are the Limits of Insurance shown in Item 3. of the Declarations (as amended in this endorsement).

2. With respect to coverage provided under Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**, the Limit of Insurance shall be reduced by all sums paid for **Bodily Injury** or **Property Damage** by or on behalf of anyone who is legally responsible.

3. **Uninsured/Underinsured Motorists Retained Limit**

   This policy applies only in excess of an **Uninsured/Underinsured Motorists Retained Limit** and then up to an amount not exceeding the Uninsured/Underinsured Motorists Each Occurrence Limit as stated in the Declarations (as amended in this endorsement), subject to the provisions stated in 1. and 2. above.

   This **Uninsured/Underinsured Motorists Retained Limit** shall not be reduced or exhausted by **Defense Expenses**.

   This **Uninsured/Underinsured Motorists Retained Limit** shall apply whether or not the **Insured** maintains applicable underlying insurance. If there is **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** applicable to a **Loss**, amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for payment of the **Loss** may be applied to reduce or exhaust the **Uninsured/Underinsured Motorists Retained Limit**. However, in no event will amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** reduce the **Uninsured/Underinsured Motorists Retained Limit**.

   Where the Uninsured/Underinsured laws of the state of West Virginia apply, this **Uninsured/Underinsured Motorists Retained Limit** applies excess of the statutory minimum amount of Uninsured Motorists Coverage provided by an underlying insurer.

## EXCLUSIONS

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS**, Exclusion O. is deleted in its entirety and replaced by the following:

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000
*Archive Copy*

O. **"No-Fault" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No Fault" law.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusions:

1. This insurance does not apply to any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle which is an **Uninsured Motor Vehicle**.

2. This insurance does not apply to the direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. This insurance does not apply to any **Insured** using a vehicle without a reasonable belief that the person is entitled to do so.

4. This insurance does not apply to **Bodily Injury** or **Property Damage** sustained by:

   a. An individual **Named Insured** while **Occupying** or when struck by any vehicle owned by that **Named Insured** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement;

   b. Any **Family Member** while **Occupying** or when struck by any vehicle owned by that **Family Member** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement; or

   c. Any **Family Member** while **Occupying** or when struck by any vehicle owned by the **Named Insured** that is insured for Uninsured Motorists Coverage under any other policy.

5. This insurance does not apply to punitive or exemplary damages.

6. This insurance does not apply to **Property Damage** to an **Auto** or to property contained in an **Auto** owned by the **Named Insured** which is not a covered **Auto**.

7. This insurance does not apply to **Property Damage** for which the **Insured** has been or is entitled to be compensated by other property or physical damage insurance.

**CONDITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition L. **Other Insurance** under **Section VI. CONDITIONS** is deleted in its entirety and replaced by the following:

L. **Other Insurance**

Any insurance we provide under this endorsement will be excess to the total limits of any **Other Insurance** paid or available for payment to an **Insured**, except other applicable Uninsured/Underinsured Motorist Coverage written to be excess of this policy.

If there is other applicable Uninsured/Underinsured Motorist Coverage under any other policy issued to the **Named Insured** by us, the maximum recovery for damages may equal but not exceed the highest applicable limit of insurance under any one policy.

If there is other applicable excess Uninsured/Underinsured Motorist Coverage available under more than one policy, then the following priorities of coverage apply:

1. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as a **Named Insured**.

*Archive Copy*
Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

2.  A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as an **Insured** other than as a **Named Insured**.

3.  A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as a **Named Insured**.

4.  A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as an **Insured** other than as a **Named Insured**.

We will pay only our share of the **Loss** that must be paid under insurance providing umbrella or excess coverage. Our share is the proportion that our limit of liability bears to the total of all applicable limits of all the policies applicable on the same level of priority.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition G. **Duties In the Event of an Occurrence, Claim Or Suit** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

G.  Specifically as respects to any **Occurrence** which may result in a Uninsured/Underinsured Motorist claim for coverage under this policy:

a.  You must promptly notify the police if a hit-and-run driver is involved, and

b.  You must promptly send us copies of the legal papers if a **Suit** is brought.

c.  A person seeking Uninsured/Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the **Insured** and the insurer of the vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle** and allow us 90 days to advance payment to that **Insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition P. **Transfer of Your Rights and Duties** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

P.  If we make any payment and the **Insured** recovers from another party, the **Insured** shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to Uninsured/Underinsured Motorists Coverage if we:

a.  Have been given prompt written notice of a tentative settlement between an **Insured** and the insurer of a vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**; and

b.  Fail to advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days after receipt of notification.

If we advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days after receipt of notification:

a.  That payment will be separate from any amount the **Insured** is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

b.  We also have a right to recover the advanced payment.

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VI. CONDITIONS** is amended to include the following additional conditions:

82610 (07/03)                                                                                               Page 5 of 8
AH1184

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

**Arbitration (Not applicable where the Uninsured/Underinsured laws of West Virginia or Louisiana apply)**

1.  If we and an **Insured** disagree whether the **Insured** is legally entitled to recover damages from the owner or driver of an **Uninsured Motor Vehicle** or do not agree as to the amount of damages that are recoverable by that **Insured**, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to the arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

2.  Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding. However, where the Uninsured/Underinsured laws of Indiana apply, a decision agreed to by two of the arbitrators will be binding as to:

    a.  Whether the **Insured** is legally entitled to recover damages, and

    b.  The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party demand the right to a trial. This demand must be made within 60 days of the arbitrator's decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**Conformance to "Uninsured Motorist" and/or "Underinsured Motorist" Law**

To the extent any term of this policy conflicts with any applicable Uninsured/Underinsured law, the term shall be deemed amended so as to conform to minimum requirements of that law. However, under no such circumstance shall any term be amended to be broader than the minimum requirements of that law.

**DEFINITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition M. **Insured** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

M. **Insured** means:

If the **Named Insured** is designated in the Declarations as:

a.  An individual, then only the following are **Insureds**:

    1)  The **Named Insured** and any **Family Members**.

    2)  Anyone else occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction.

    3)  Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

b.  A partnership, limited liability company, corporation or any other form of organization, then the following are **Insureds**:

    1)  Anyone occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction;

    2)  Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition Y. **Property Damage** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

Y.   **Property Damage** means:

   Physical Injury or destruction of:

   a.   A covered **Auto**; or

   b.   Property contained in the covered **Auto**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

1.   **Defense Expenses** means a payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

   a.   Attorneys' fees and all other investigation, **Loss** adjustment and litigation expenses;

   b.   Premiums on bonds to release attachments;

   c.   Premiums on appeal bonds required by law to appeal any claim or **Suit**;

   d.   Costs taxed against the **Insured** in any claim or **Suit**;

   e.   Pre-judgment interest awarded against the **Insured**; and

   f.   Interest that accrues after entry of judgment.

2.   **Family Member** means a person related to an individual **Named Insured** by blood, marriage or adoption who is a resident of such **Named Insured's** household, including a ward or foster child.

3.   **Occupying** and/or **Occupied** means in, upon, getting in, on, out or off.

4.   **Uninsured Motor Vehicle** means a land motor vehicle or trailer:

   a.   For which no liability bond or policy at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged;

   b.   Which is an **Underinsured Motor Vehicle**.  An **Underinsured Motor Vehicle** means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged but their limits are less than the Limit of Insurance of this coverage;

   c.   For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d.   That is a hit-and-run vehicle and neither the operator nor owner can be identified.  The vehicle must either:

      1)   Hit an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**; or

      2)   Cause **Bodily Injury** to an **Insured** without hitting an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**.

      The facts of the **Occurrence** or intentional act must be proved by independent corroborative evidence, other than the testimony of the **Insured** making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

However, **Uninsured Motor Vehicle** does not include any vehicle:

a.  Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b.  Designed for use mainly off public roads while not on public roads;

c.  Owned by or furnished or available for the **Named Insured's** regular use or that of any **Family Member**, if the **Named Insured** is an individual; or

d.  Owned by any governmental unit or agency, unless the owner or operator of the **Uninsured Motor Vehicle** has:

    1)  An immunity under applicable tort liability law; or

    2)  A diplomatic immunity.

5.  **Uninsured/Underinsured Motorists Retained Limit** means the uninsured/underinsured motorists retained limit specified in Declarations, as amended in this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

# POLICY COVER PAGE

**Date Printed:** 07/19/05
**Time Printed:** 000001

**Policy/Quote Number:** 4484776

| | |
|---|---|
| **Underwriter Name:** | NICOLAS BERG |
| **Issuing Office Division:** | 0030 |
| **Issuing Office Branch:** | 0034 |
| **Issuing Office Region:** | |
| **Operator Name:** | ZAPATA          ,MILDRED |
| **Operator Telephone:** | 212-458-5825 |
| **Policy Effective Date:** | July 1, 2005 |
| **Transaction Type:** | REN |
| **Set Copy Name:** | |
| **Set Copy Mailing Instructions:** | |

EPS TRACKING-ID:   0001013911000005200
JOB-ID:

*Archive Copy*

(Ed. 4-99)

**AMERICAN INTERNATIONAL COMPANIES**

Re: MCKESSON CORPORATION

@
MARSH USA, INC.
THREE EMBARCADERO, STE 1500
SAN FRANCISCO, CA 94111

AH1079

*Archive Copy*

**FORMS SCHEDULE**

**Named Insured:**     MCKESSON CORPORATION

**Policy Number:**     BE     4484776
**Effective 12:01 AM:**     July 1, 2005

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
|  | UMB PRIME DEC | 80518 | (10/04) |
|  | UMB PRIME JACKET | 80517 | (10/04) |
|  | PREM INCL TERRORISM NOTICE | 81249 | (03/03) |
| 1 | SCHEDULE OF UNDERLYING INSURANCE | MNSCPT | (07/05) |
| 2 | KNOWLEDGE OF OCCURRENCE ENDORSEMENT | MNSCPT | (07/05) |
| 3 | DUTIES IN THE EVENT OF AN OCCURRENCE CLAIM OR SUIT | MNSCPT | (07/05) |
| 4 | CLAIMS-MADE COVERAGE ENDORSEMENT | MNSCPT | (07/05) |
| 5 | RETAINED LIMIT AMENDATORY ENDORSEMENT | MNSCPT | (07/05) |
| 6 | AMENDATORY ENDORSEMENT | MNSCPT | (07/05) |
| 7 | MEDICAL PROFESSIONAL LIABILITY EXCLUSION END | MNSCPT | (07/05) |
| 8 | NPTE POLL. SIR END. (PROD. COMP.OPER.HZD V.II) | 84186 | (03/04) |
| 9 | AMDT. OF CONTRACTUAL LIAB. EXCL. ENDT. | 86454 | (08/04) |
| 10 | ARBITRATION COND END (EXCL Q, DOMICILE ST.) | 82425 | (06/03) |
| 11 | NAMED INSURED ENDORSEMENT | MNSCPT | (07/05) |
| 12 | ACQUIRED ENTITIES ENDORSEMENT | MNSCPT | (07/05) |
| 13 | PRIME MISCELLANEOUS CHANGES ENDORSEMENT | 83864 | (02/04) |
| 14 | SIR APPLIC TO SPEC COV AFTER DIMINUTION OF UNDERLY | 81584 | (02/03) |
| 15 | FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT | 80432 | (07/02) |
| 16 | EMPLOYEE BENEFITS LIAB LIMIT (CM) | 83073 | (09/03) |
| 17 | NOTICE OF OCCURRENCE | 80454 | (07/02) |
| 18 | DEFENSE WITHIN THE LIMITS OF INSURANCE | 80413 | (07/02) |
| 19 | NON-CONCURRENCY END'T | 81581 | (02/03) |
| 20 | MANUFACTURE OF DRUGS EXCLUSION ENDORSEMENT | MNSCPT | (07/05) |
| 21 | ECONOMIC OR TRADE SANCTIONS COND. ENDT | 87068 | (11/04) |
| 22 | VIOL. OF INFO. OR COMM. LAW EXCL. ENDT. | 87241 | (12/04) |
| 23 | PRIME SCHEDULE A - APPROVED CRISIS MGMT FIRMS | 83687 | (12/03) |
| 24 | ACT OF TERRORISM SIR ENDT | 83049 | (09/03) |
| 25 | CA. CANCEL AND NONRENEWAL AMEND. ENDT. | 81589 | (10/04) |
| 26 | UNINSURED UNDERINSURED MOTORIST COVERAGE END. | 82610 | (11/04) |

*Archive Copy*

**AIG** **AMERICAN INTERNATIONAL COMPANIES**®

## Umbrella Prime®
## Commercial Umbrella Liability Policy With CrisisResponse®

### DECLARATIONS

The company issuing this policy is indicated by an "X" in the box to the left of the company's name.

| | |
|---|---|
| ☐ AIU Insurance Company | ☐ Granite State Insurance Company |
| ☐ American Home Assurance Company | ☐ Illinois National Insurance Company |
| ☐ American International Pacific Insurance Company | ☐ National Union Fire Insurance Company of Louisiana |
| ☐ American International South Insurance Company | ☒ National Union Fire Insurance Company of Pittsburgh, Pa. |
| ☐ Birmingham Fire Insurance Company of Pennsylvania | ☐ New Hampshire Insurance Company |
| ☐ Commerce & Industry Insurance Company | ☐ The Insurance Company of the State of Pennsylvania |

(each of the above being a capital stock company)

**Executive Offices: 70 Pine Street, New York, NY  10270**
**Telephone No. 212-770-7000**

---

**POLICY NUMBER:**  BE    4484776                          **RENEWAL OF:**  2978146

**ITEM 1.  NAMED INSURED:**   MCKESSON CORPORATION

**MAILING ADDRESS:**   ONE POST STREET
SAN FRANCISCO, CA 94104-8300

**ITEM 2.  POLICY PERIOD:  FROM:**  July 1, 2005                **TO:**  July 1, 2006
(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)

**ITEM 3.  LIMITS OF INSURANCE**

The Limits of Insurance, subject to the terms of this policy, are:

A. $45,000,000     **Each Occurrence**
B. $45,000,000     **General Aggregate** (in accordance with Section IV. Limits of Insurance)
C. $45,000,000     **Products-Completed Operations Aggregate** (in accordance with Section IV. Limits of Insurance)
D. $250,000        **CrisisResponse Sublimit of Insurance**
E. $50,000         **Excess Casualty CrisisFund Limit of Insurance**

**ITEM 4.  SCHEDULED UNDERLYING INSURANCE - See Schedule of Underlying Insurance**

**ITEM 5.  SELF-INSURED RETENTION -**  $10,000               **Each Occurrence**

**ITEM 6.  PREMIUM AND PREMIUM COMPUTATION**

| | |
|---|---|
| ESTIMATED TOTAL ANNUAL EXPOSURE | N/A |
| RATES PER | FLAT |
| MINIMUM PREMIUM | $975,000.00 |
| ADVANCE PREMIUM | $975,000.00 |

**ITEM 7.  THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: SEE ATTACHED SCHEDULE**

**PRODUCER NAME:**  MARSH USA, INC.
**ADDRESS:**       THREE EMBARCADERO, STE 1500
SAN FRANCISCO, CA 94111

_____        _____
**Authorized Representative or**                   **Date**
**Countersignature (Where Applicable)**

80518 (10/04)
AH0876

*Archive Copy*

**Issue Date:**  07/19/05

# Umbrella Prime®
## Commercial Umbrella Liability Policy With CrisisResponse®

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII. Definitions.

Except for headings, words that appear in bold print have special meaning.  See Section VII. Definitions.

In consideration of the  payment of the premium and in reliance upon the statements in the Declarations, we agree  to provide coverage as follows:

| I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY |
|---|

A. We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

   The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B. This policy applies, only if:

   1. the **Bodily Injury** or **Property Damage** is caused by an  **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

   2. the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C. This policy applies to **Bodily Injury**, **Property Damage**, and **Personal Injury and Advertising Injury** only if prior to the **Policy Period**, no **Insured** shown in Paragraph M2 of Section VII, no officer, no manager in your risk management, insurance or legal department and no employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part, or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**.  If such an **Insured**, manager or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**, then any continuation, change or resumption of such **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

D. **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** will be deemed to have been known to have occurred at the earliest time when any **Insured** shown under Paragraph M2 of Section VII, any manager in your risk management, insurance or legal department or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

   1. reports all, or any part, of the **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to us or any other insurer;

   2. receives a written or verbal demand or claim for damages because of the **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**; or

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur or an **Occurrence** has been committed that has caused or may cause **Personal Injury and Advertising Injury**.

E. Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F. If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

---

## II.  INSURING AGREEMENT - CRISISRESPONSE ® AND EXCESS CASUALTY CRISISFUND ®

A. **CrisisResponse**

We will advance **CrisisResponse Costs** directly to third parties on behalf of the **Named Insured**, regardless of fault, arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **CrisisResponse Sublimit of Insurance**.

B. **Excess Casualty CrisisFund**

We will pay **Crisis Management Loss** on behalf of the **Named Insured** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Excess Casualty CrisisFund Limit of Insurance**.

C. A **Crisis Management Event** will first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and will end when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

D. There will be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**.

E. Any advancement of **CrisisResponse Costs** or payment of **Crisis Management Loss** that we make under the coverage provided by this Section II will not be a determination of our obligations under this policy, nor create any duty to defend any **Suit** under any other part of this policy.

---

## III.  DEFENSE PROVISIONS

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** have been exhausted by payment of **Loss** to which this policy applies; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. investigate, negotiate and settle the **Suit** as we deem expedient; and

2. pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

   a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds required by law to appeal a judgement in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   c. all court costs taxed against the **Insured** in the **Suit**;

   d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

   e. post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

   f. the **Insured's** expenses incurred at our request or with our consent.

D. Except as provided in Paragraph A above, we will have no duty to defend any **Suit** against the **Insured.**   We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

E. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

---

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

   1. **Insureds**;

   2. claims made or **Suits** brought;

   3. persons or organizations making claims or bringing **Suits**; or

   4. coverages provided under this policy.

B. The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under this policy, except for:

   1. damages included within the **Products-Completed Operations Hazard**; and

   2. damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

C. The Products-Completed Operations Aggregate Limit stated in Item 3C of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D. Subject to Paragraphs B and C above, the Each Occurrence Limit stated in Item 3A of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence**.

E. Subject to Paragraphs B and C above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3 of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

F. This policy applies only in excess of the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** whether or not such limits are collectible. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G. If the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

2. in the event of exhaustion, continue in force as underlying insurance.

H. Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance**, then such expenses will reduce the applicable Limits of Insurance of this policy.

I. The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **CrisisResponse Sublimit of Insurance** will be part of, not in addition to, the applicable Limit of Insurance.

J. The **Excess Casualty CrisisFund Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **Excess Casualty CrisisFund Limit of Insurance** will be in addition to the applicable Limit of Insurance.

K. We will have no obligation to advance **CrisisResponse Costs** when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

L. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M. We will not make any payment under this policy unless and until:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** have been exhausted by the payment of **Loss** to which this policy applies; or

2. the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

Page 4 of 23

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

---

## V.  EXCLUSIONS

### A.  Aircraft and Watercraft

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that is:

1. less than 26 feet long; and

2. not being used to carry persons or property for a charge.

### B.  Asbestos

This insurance does not apply to any liability arising out of:

1. the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2. any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3. any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

### C.  Contractual Liability

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. that the **Insured** would have in the absence of a contract or agreement; or

2. assumed in an **Insured Contract**, provided the **Bodily Injury** or **Property Damage** occurs subsequent to the execution and prior to the termination of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

   a. liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

   b. such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D. **Damage to Impaired Property or Property Not Physically Injured**

This insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

E. **Damage to Property**

This insurance does not apply to **Property Damage** to:

1. property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

3. property loaned to you;

4. personal property in the care, custody or control of the **Insured**;

5. that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6. that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2 of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

F. **Damage to Your Product**

This insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

G. **Damage to Your Work**

This insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. **Electronic Chatrooms or Bulletin Boards**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.

*Archive Copy*     © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

I. **Employees and Volunteers**

This insurance does not apply to liability of any employee or volunteer qualifying as an **Insured** under this policy arising out of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**:

1. to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2. to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1 above;

3. for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1 or 2 above; or

4. arising out of his or her providing or failing to provide professional health care services.

J. **Employment Practices**

This insurance does not apply to any liability arising out of:

1. failure to hire any prospective employee or any applicant for employment;

2. dismisal, discharge or termination of any employee;

3. failure to promote or advance any employee; or

4. employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

    a. coercion, harassment, humiliation or discrimination;
    b. demotion, evaluation, reassignment, discipline, or retaliation;
    c. libel, slander, humiliation, defamation, or invasion of privacy; or
    d. violation of civil rights.

This exclusion applies:

1. whether the **Insured** may be liable as an employer or in any other capacity; and

2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

K. **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

M. **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply only if:

1. you are not in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages; and

2. coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance.**

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

N. **Media and Internet Type Businesses**

This insurance does not apply to **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1. advertising, broadcasting, publishing or telecasting;

2. designing or determining content of web-sites for others; or

3. an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1, U2 and U3 of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

O. **"No-Fault," "Uninsured Motorist"** or **"Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P. **Nuclear Liability**

This insurance does not apply to:

1. any liability:

   a. with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

   b. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

c.   resulting from the hazardous properties of nuclear material if:

    i)   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

    ii)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

    iii)   the injury or damage arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility.

2.   As used in this exclusion:

a.   "hazardous properties" includes radioactive, toxic or explosive properties;

b.   "nuclear material" means source material, special nuclear material or by-product material;

c.   "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto;

d.   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e.   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by  any person or organization of a nuclear facility included within the definition of nuclear facility below;

f.   "nuclear facility" means:

    i)   any nuclear reactor;

    ii)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

    iii)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    iv)   any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

    includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g.   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.   **Property Damage** includes all forms of radioactive contamination of property.

Q.   **Pollution**

This insurance does not apply to:

1.   Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.   Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in

*Archive Copy*   © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1) **Products-Completed Operations Hazard**

   Paragraph 1 of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

   a) discarded, dumped, abandoned, thrown away; or

   b) transported, handled, stored, treated, disposed of or processed as waste;

   by anyone.

2) **Hostile Fire**

   Paragraph 1 of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3) **Equipment to Heat the Building and Contractor/Lessee Operations**

   Paragraph 1 of this exclusion does not apply to:

   a) **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat the building; or

   b) **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

   Paragraph 1 of this exclusion does not apply to:

   a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

   b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto**

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Paragraph 1 of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1 of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

R. **Recall of Your Product, Your Work or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product;**

2. **Your Work**; or

3. **Impaired Property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. **Securities**

This insurance does not apply to any liability arising out of:

1. any violation of any securities law or similar law or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

T. **Unauthorized Use of Another's Name or Product**

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

U. **Various Personal Injury and Advertising Injury**

This insurance does not apply to **Personal Injury and Advertising Injury**:

1.  caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2.  arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3.  arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the **Policy Period**;

4.  arising out of a criminal act committed by or at the direction of the **Insured**;

5.  for which the **Insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6.  arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7.  arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or

8.  arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

V. **Various Laws**

This insurance does not apply to any obligation of the **Insured** under any of the following:

1.  the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2.  any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

W. **War**

This insurance does not apply to any liability arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

---

## VI. CONDITIONS

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so.  If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B. **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The **Policy Period** will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6 of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first **Named Insured** in Item 1 of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E. **Change In Control**

If during the **Policy Period**:

1. the first **Named Insured** designated in Item 1 of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2. any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1 of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction. There will be no coverage afforded by this policy for **Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## F.   Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy.  This policy can be changed only by a written endorsement that we make to this policy.

## G.   Duties in the Event of an Occurrence, Claim or Suit

1.   You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy.  To the extent possible, notice should include:

   a.   how, when and where the **Occurrence** took place;

   b.   the names and addresses of any injured persons and any witnesses; and

   c.   the nature and location of any injury or damage arising out of the **Occurrence**.

2.   If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

   Written notice should be mailed or delivered to:

   AIG Technical Services, Inc.
   Excess Casualty Claims Department
   175 Water Street
   New York, NY  10038

3.   You and any other involved **Insured** must:

   a.   immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

   b.   authorize us to obtain records and other information;

   c.   cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

   d.   assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.   No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

## H.   Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

## I.   Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time.  Our inspections are not safety inspections.  They relate only to the insurability of your premises and operations and the premiums to be charged.  We may give you reports on the conditions that we find.  We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public.  We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

## J.   Legal Actions Against Us

No person or organization has a right under this policy:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2. to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

K. **Maintenance of Scheduled Underlying Insurance**

You agree that during the **Policy Period**:

1. you will keep **Scheduled Underlying Insurance** in full force and effect;

2. the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3. the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss** to which this policy applies; and

4. any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L. **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M. **Premium**

The first **Named Insured** designated in Item 1 of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6 of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 6 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we will retain the Minimum Premium as shown in Item 6 of the Declarations for each twelve months of the **Policy Period**.

N. **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1. as if each **Named Insured** were the only **Named Insured**; and

2. separately to each **Insured** against whom claim is made or **Suit** is brought.

O. **Transfer of Rights of Recovery**

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2. Any recoveries will be applied as follows:

   a. any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b. we then will be reimbursed up to the amount we have paid; and

   c. lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3. If, prior to the time of an **Occurrence**, you and the insurer of **Scheduled Underlying Insurance** waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization.

### P.  Transfer of Your Rights and Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative.  However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

### Q.  Unintentional Failure to Disclose

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

---

## VII.  DEFINITIONS

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

   1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

   2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death or mental anguish resulting from any of these at any time.

D. **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

   1. damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. significant adverse regional or national media coverage.

**Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E. **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event**.

F. **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

1. amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

2. amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

G. **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

H. **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1. medical expenses;

2. funeral expenses;

3. psychological counseling;

4. travel expenses;

5. temporary living expenses;

6. expenses to secure the scene of a **Crisis Management Event**; and

7. any other expenses pre-approved by the Company.

**CrisisResponse Costs** does not include defense costs or **Crisis Management Loss**.

I. **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 3D of the Declarations.

J. **Excess Casualty CrisisFund Limit of Insurance** means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K. **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L. **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

if such property can be restored to use by:

1.  the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2.  your fulfilling the terms of the contract or agreement.

M.  **Insured** means:

1.  the **Named Insured**;

2.  if you are designated in the declarations as:

    a.  an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

    b.  a partnership or joint venture, you are an insured.  Your members and your partners are also insureds, but only with respect to the conduct of your business;

    c.  a limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers;

    d.  an organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders;

    e.  a trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees;

3.  your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4.  your volunteer workers only while performing duties related to the conduct of your business;

5.  any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6.  your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this policy;

7.  any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.

Notwithstanding any of the above:

    a.  no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

    b.  no person or organization is an **Insured** under this policy who is not an **Insured** under **Scheduled Underlying Insurance**.

N.  **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

O. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

P. **Loss** means those sums actually paid as judgments or settlements.

Q. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in Paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in Paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

   a. equipment designed primarily for:

      i) snow removal;

      ii) road maintenance, but not construction or resurfacing; or

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

        iii)  street cleaning;

    b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

R.  **Named Insured** means:

    1.  any person or organization designated in Item 1 of the Declarations;

    2.  any organization in which you maintain an interest of more than fifty percent (50%) and which is included as a named insured under **Scheduled Underlying Insurance**, as of the effective date of this policy and to which more specific insurance does not apply, provided that this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    3.  any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

        a.  such organization is included as a named insured under **Scheduled Underlying Insurance**;

        b.  this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

        c.  you give us prompt notice after you acquire or form such organization.

    Subject to the provisions of Paragraphs 3a, 3b and 3c above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

    We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

S.  **Occurrence** means:

    1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

    2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**.  All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T.  **Other Insurance** means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

    However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

*Archive Copy*  © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U.  **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4. oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5. oral or written publication, in any manner, of material that violates a person's right of privacy;

6. the use of another's advertising idea in your **Advertisement**; or

7. infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

V.  **Policy Period** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of termination of this policy.

W.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

X.  **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1. products that are still in your physical possession; or

2. work that has not yet been completed or abandoned.  However, **Your Work** will be deemed completed at the earliest of the following times:

    a. when all of the work called for in your contract has been completed;

    b. when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

    c. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

Y.  **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

*Archive Copy*                © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2.  loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z.  **Retained Limit** means:

1.  the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2.  the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA. **Scheduled Underlying Insurance** means:

1.  the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2.  automatically any renewal or replacement of any policy in Paragraph 1 above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB. **Self-Insured Retention** means the amount that is shown in Item 5 of the Declarations.

CC. **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

1.  an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2.  any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD. **Your Product** means:

1.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a.  you;

    b.  others trading under your name; or

    c.  a person or organization whose business or assets you have acquired; and

2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**EE. Your Work** means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2. the providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives.

By signing below, the President and Secretary of the Company agree on our behalf to all the terms of this policy.

| Secretary | President |
| --- | --- |
| President | President |
| President | President |

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.

Authorized Representative

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurers direct earned premiums for the year preceeding the Act of Terrorism.

Coverage for Acts of Terrorism for losses is already included in your current policy. The portion of your annual premium that is attributable to coverage for Acts of Terrorism covered by the Act is $9,653.00.


MCKESSON CORPORATION
Insured Name

BE 4484776
Policy #

0030
Division #

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
Insurance Carrier


WITHOUT EXCLUSION BUT WITH CHARGE
81249 (3/03)
AH0992           *Archive Copy*

**ENDORSEMENT NO.** 1

**This endorsement, effective 12:01 AM:**   July 1, 2005

**Forms a part of policy no.:**   BE   4484776

**Issued to:**   MCKESSON CORPORATION

**By:**   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF POLICY OR COVERAGE | LIMITS |
|---|---|
| **EMPLOYERS LIABILITY**<br>**(All States Except NV and CT)**<br>Old Republic<br>7/1/05-06 | $5,000,000 Bodily Injury - Each Accident<br>$5,000,000 Bodily Injury by Disease - Each Employee<br>$5,000,000 Bodily Injury by Disease - Policy Aggregate<br>Defense Expenses are outside the above limits. |
| **EMPLOYERS LIABILITY**<br>**(NV and CT - Qualified Self-Insurer)**<br>Old Republic<br>7/1/05-06 | $1,900,000 Each Accident<br>Excess of a $100,000 Each Accident Self Insured Retention<br>Defense Expenses are outside the above limit and Self Insured Retention |
| **FOREIGN GENERAL LIABILITY**<br>**DIC/DIL over local underlying policies**<br>Insurance Co. of the State of PA - AIU<br>10/1/04-05 | $1,000,000 Each Occurrence<br>$2,000,000 General Aggregate<br>$2,000,000 Products Aggregate<br>Defense Expenses are outside the above limits |
| **FOREIGN AUTOMOBILE LIABILITY**<br>**DIC/DIL over local underlying policies**<br>Insurance Co. of the State of PA - AIU<br>10/1/04-05 | $1,000,000 Each Accident (CSL)<br>Defense Expenses are outside the above limit. |
| **FOREIGN EMPLOYERS LIABILITY**<br>**DIC/DIL over local underlying policies**<br>Insurance Co. of the State of PA - AIU<br>10/1/04-05 | $1,000,000 Each Accident<br>Coverage provided over local EL policy in U.K. with $10,000,000 limit.<br>Defense Expenses are outside the above limit and Self Insured Retention. |

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

**MCKESSON MEDICATION MANAGEMENT, LLC**
**EXCESS DRUGGIST LIABILITY AND GENERAL LIABILITY**
**Claims-Made Policy**
Arch Specialty Insurance Company
11/30/04-05

**MCKESSON MEDICATION MANAGEMENT, LLC**
**DRUGGIST LIABILITY AND GENERAL LIABILITY**
**Claims-Made Policy**
Lexington Insurance Company
11/30/04-05

$10,000,000 Each Medical Incident
$10,000,000 Aggregate Limit

Defense Expenses are inside the above limits and Self Insured Retention

**EXCESS OF**
$15,000,000 Each Medical Incident
$15,000,000 Aggregate Limit

The above limits are excess of a $1,000,000 Each Medical Incident Self-Insured Retention.

Defense Expenses are inside the above limits and Self Insured Retention.

After reduction or exhaustion of the Aggregate, coverage shall be subject to the $250,000 Indemnity Only Each Occurrence Specified Coverage Self Insured Retention, as per the terms of the Endorsement #14

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

**ENDORSEMENT NO.** 2

**This endorsement, effective 12:01 AM:**  July 1, 2005

**Forms a part of policy no.:**  BE    4484776

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**<u>KNOWLEDGE OF OCCURRENCE ENDORSEMENT</u>**

This policy is amended as follows:

Notwithstanding any provision(s) in this Policy to the contrary, and solely as respects any loss reporting requirements under this Policy, it is understood that knowledge of an accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless your Risk Manager or Senior Corporate Counsel has received notice from said agent, servant, employee or any other person.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.**3

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no.:** BE     4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Commercial Umbrella Liability Policy with CrisisResponse®

<u>Duties in the Event of an Occurrence, Claim or Suit</u>

Except with regard to Druggist Liability Coverage provided under this policy, this policy is amended as follows:

**Section VI. CONDITIONS, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit,** subparagraph 1,. Is deleted and replaced by the following:

    1.    You must see to it that we are notified as soon as practicable after you or your corporate officer receives notice from its agent, servant, employee or any other person, of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extend possible, notice should include:

        a.    how, when and where the **Occurrence** took place,

        b.    the names and addresses of any injured persons and any witnesses, and

        c.    the nature and location of any injury or damage arising out of the **Occurrence.**

However it is understood that the provisions of this endorsement will not supercede **Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** of the policy.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____

**Authorized Representative or countersignature (where required by law)**

**ENDORSEMENT NO.4**

**This endorsement, effective 12:01 AM:**  July 1, 2005

**Forms a part of policy no.:**  BE    4484776

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Claims-Made Coverage Endorsement**

This policy is amended as follows:

**NOTICE: THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE. COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US WHILE THE COVERAGE IS IN FORCE. PLEASE REVIEW THE ENDORSEMENT CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

_____

**IT IS UNDERSTOOD THAT TO THE EXTENT ANY COVERAGE MAY OTHERWISE BE PROVIDED UNDER THIS POLICY OR ANY OF ITS ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERCEDE.**

_____

Solely with respect to the **Insured's** liability included within the **Druggist Liability** and/or arising out of a Wrongful Act in your performance of **Druggist Liability,** this policy is amended as follows:

The **DECLARATIONS, ITEM 2.** is amended to include the following:

|  |  |  |
|---|---|---|
| Item 2a. | **RETROACTIVE DATE:** | <u>September 14, 1998</u> |
| Item 2b. | **CONTINUITY DATE:** | <u>July 1, 2004</u> |

**Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** is deleted in its entirety and replaced with the following:

**I.      INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY**

A.      We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract.**

*Archive Copy*

ENDORSEMENT NO. 4 (Continued)

The amount we will pay for damages is limited as described in **Section IV. Limits of Insurance**.

B.    This policy applies, only if:

1.    the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere in the world, and the **Bodily Injury** or **Property Damage** occurs on or after the Retroactive Date and prior to the end of the Policy Period,

2.    the **Personal Injury and Advertising Injury** is caused by an **Occurrence** arising out of your business that takes place anywhere on or after the Retroactive Date shown in the Declarations and prior the end of the Policy Period, and

3.    a **Claim** for damages because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** is first made in writing against any **Insured** in accordance with Paragraph C. below during the Policy Period or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

C.    A **Claim** by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

1.    When notice of such **Claim** is received and recorded by any **Insured** in writing and reported to us during the Policy Period or any applicable extended reporting period, or

2.    When we make settlement in accordance with Paragraph A. above.

All **Claims** for damages because of **Bodily Injury** to the same person, including damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**, will be deemed to have been made at the time the first of those **Claims** is made against any **Insured**.

All **Claims** for damages because of **Property Damage** causing **Loss** to the same person or organization will be deemed to have been made at the time the first of those **Claims** is made against the **Insured**.

All **Claims** for damages because of **Personal Injury and Advertising Injury** to the same person or organization as a result of an **Occurrence** will be deemed to have been made at the time the first of those **Claims** is made against any **Insured.**

D.    Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

E.    If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

Coverage under this endorsement applies only to the extent that such coverage is provided by a claims-made policy listed in the Schedule of Underlying Insurance. In no event shall coverage afforded under this endorsement be broader than the Schedule of Underlying Insurance.

This claims-made coverage shall follow the terms, definitions, conditions and exclusions of

*Archive Copy*

ENDORSEMENT NO. 4 (Continued)

such scheduled underlying policy, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of such scheduled underlying policy conflicts with any provisions of this policy, the provisions of this policy will prevail.

For the purpose of this endorsement only, the SELF INSURED RETENTION in ITEM 5. of the DECLARATIONS, is deleted and replaced by the following provision:

> $25,000,000 Each Occurrence or Wrongful Act (As respects all damages arising out of Druggist Liability.

**Section VII. Definitions** is amended to include the following additional definitions:

> **Compounding** means the preparation, mixing, assembling, packaging, or labeling of a drug, radiopharmaceutical, or device (I) as the result of a practitioner's prescription drug order or initiative based on the practitioner/patient/pharmacist relationship in the course of professional practice, or (ii) for the purpose of, or as an incident to, research, teaching or chemical analysis and not for sale or dispensing, the preparation of drugs or devices in anticipation of prescription drug orders based on routine, regularly observed prescribing patterns, other practices as are approved as a part of the practice of pharmacy by the Board of Pharmacy in the state in which the **Insured** practices.

> **Claim** means a demand for money or **Suit.**

> **Loss** means those sums actually paid as judgments or settlement

> **Druggist Liability** means:

> (1)     the interpretation, evaluation and dispensing of prescription orders,

> (2)     participation in drug and device selection (including, where permitted by state or federal law, prescribing by protocol, agreement or collaborative practice or the prescribing of legally recognized pharmacist-class of drugs or devices),

> (3)     drug administration including immunization, where permitted by state law by the **Insured** as a pharmacist,

> (4)     drug regiment reviews,

> (5)     medication consulting, and those acts or services necessary to provide pharmaceutical care,

> (6)     Compounding**,** selling, handling and distribution of drugs, radiopharmaceuticals, medicine, devices, other goods or products and their container from any pharmacy or drug store (except labeling by a manufacturer, repackager, or distributor of non-prescription drugs and commercially packaged legend drugs and devices),

> (7)     proper and safe storage of drugs and devices,

> (8)     maintenance of proper records for drugs and devices,

*Archive Copy*

**ENDORSEMENT NO.** 4 (Continued)

    (9)    all other services of a professional nature usually and customarily performed by a registered pharmacist or qualified pharmacy intern or pharmacy technician,

    (10)   services of a nuclear pharmacists and nuclear pharmacy technician.

**Wrongful Act** means any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by the Named Insured in the performance of professional services.

**Section V. Exclusions** is amended to include the following additional exclusions:

### Prior Knowledge

This insurance does not apply to any **Claim** alleging or arising out of an **Occurrence** committed on or after the Retroactive Date shown above, if any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence,** knew as of the Continuity Date shown above that such **Occurrence** could result in a **Claim**.

### Continuous or Related Acts

This insurance does not apply to any **Claim** alleging or arising out the same **Occurrence** or series of continuous, repeated or related **Occurrences** or alleging the same or similar facts, alleged or contained in any **Claim** which has been reported, or any **Occurrence** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

### Pending or Prior Litigation

This insurance does not apply to any **Claim** alleging or arising out of any **Claim** or **Suit** pending as of the Continuity Date shown above, or alleging or arising out of or relating to any fact, circumstance, situation or **Occurrence** alleged in such **Claim** or **Suit**.

### Professional Services

Any **Claim** arising out of the rendering of or failure to render professional services by the **Insured** or by any person or organization for whose acts or omissions the **Insured** is legally responsible.

However, this exclusion does not apply to Druggist Liability.

**Section VI. Conditions** is amended to include the following additional conditions:

### Automatic Extended Reporting Period

If we or the **Named Insured** cancel, refuse to renew or replace this policy (hereinafter "cancel or non-renew"), the **Named Insured** will have the right following the effective date of such cancellation or non-renewal to a period of thirty (30) days (herein referred to as the Automatic Extended Reporting Period) in which to give written notice to us of **Claims** first made against you during the Automatic Extended Reporting Period for any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** occurring prior to the end of the Policy Period and otherwise covered by this policy.

*Archive Copy*

ENDORSEMENT NO. 4 (Continued)

The Automatic Extended Reporting Period will not apply to **Claims** that are covered under any subsequent insurance you purchase or is purchased for your benefit, or that would be covered but for the exhaustion of the Limits of Insurance applicable to such **Claims** or is within any applicable Retained Amount.

The Automatic Extended Reporting Period does not reinstate or increase the Limits of Insurance or extend the Policy Period.

**Optional Extended Reporting Period**

If we or the **Named Insured** will cancel or non-renew this policy, the **Named Insured** will have the right, upon payment of an additional premium of up to two hundred percent (200%) of the full annual premium, to a period of one (1) year following the effective date of such cancellation or non-renewal (herein referred to as the Optional Extended Reporting Period) in which to give written notice to us of **Claims** first made against you during the Optional Extended Reporting Period for any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** occurring prior to the end of the Policy Period and otherwise covered by this policy.

As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

The rights contained in this clause will terminate unless the **Named Insured** provides written notice of such election together with the additional premium due to us within thirty (30) days of the effective date of cancellation or non-renewal. The additional premium for the Optional Extended Reporting Period will be deemed fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable This clause and the rights contained herein will not apply to any cancellation resulting from non-payment of premium. Our offer of renewal terms, conditions, limits of insurance or premiums different from those of the expiring policy will not constitute a non-renewal.

The aggregate limit of insurance for any Extended Reporting Period will be part of, and not in addition to, the Aggregate Limit of Insurance for the **Policy Period**.

An Optional Extended Reporting Period does not reinstate or increase the Limits of Insurance or extend the Policy Period.

If the **Named Insured** exercises its right purchase an Optional Extended Reporting Period, the Automatic Extended Reporting Period will not apply.

**Section VI. Conditions, G. Duties in the Event of an Occurrence, Claim or Suit**, is amended to include the following additional provisions:

1.    You must see to it that we are notified as soon as practicable of an **Occurrence** that is reasonably likely to result in a **Claim** or **Suit** under this policy. To the extent possible, notice should include:

        a.    how, when and where the **Occurrence** took place,

        b.    the names and addresses of any injured persons and any witnesses, and

        c.    the nature and location of any injury or damage arising out of the **Occurrence**.

*Archive Copy*

**ENDORSEMENT NO.** 4 (Continued)

Any **Claim** which is made in writing against any **Insured** as respects such **Occurrence** shall be deemed to have been first made during this policy period if notice of the **Occurrence** is reported to us within fifteen (15) days of the end of this policy period and the **Claim** or notice of claim for such **Occurrence** is reported to us within three (3) years after the end of this policy period.

2.    If a **Claim** is made or **Suit** is brought against any **Insured** during the **Policy Period,** you must notify us in writing prior to the end of the **Policy Period.**

       Written notice should be mailed or delivered to:

              AIG Domestic Claims, Inc.
              Excess Casualty Claims Department
              175 Water Street
              New York, NY 10038

3.    You and any other involved **Insured** must:

       a.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **Claim** or **Suit**,

       b.    authorize us to obtain records and other information,

       c.    cooperate with us in the investigation, settlement or defense of the **Claim** or **Suit**, and

       d.    assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.    No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

**ENDORSEMENT NO.** 5

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no.:** BE    4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy With CrisisResponse** ®

**Retained Limit Amendatory Endorsement**

This policy is amended as follows:

Solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

1.      The **Declarations**, **ITEM 5. SELF INSURED RETENTION** is deleted in its entirety.

2.      **Section IV. LIMITS OF INSURANCE**, Paragraphs B., G., H. and M. are deleted in their entireties and replaced by the following:

      B.      The General Aggregate Limit is the most we will pay for all damages covered under this policy except:

            1.      Damages included within the **Products-Completed Operations Hazard**, and

            2.      Damages because of **Bodily Injury** or **Property Damage** to which this insurance applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto**.

      G.      If the total applicable Retained Limit(s) listed in the Schedule of Retained Limits are reduced or exhausted by payment of Loss to which this policy applies, we will:

            1.      in the event of reduction, pay in excess of the remaining underlying **Retained Limits**, or

            2.      in the event of exhaustion of the underlying **Retained Limits**, continue in force as underlying insurance.

      H.      **Defense Expenses** will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if the amount of applicable **Retained Limit** over which this policy applies immediately in excess is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then such **Defense Expenses** will reduce the applicable Limits of Insurance of this policy.

*Archive Copy*

**ENDORSEMENT NO.** 5 (Continued)

M.    We will not make any payment under this policy unless and until the total applicable **Retained Limit(s)** and any applicable **Other Insurance** have been exhausted by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

3.    **Section III. DEFENSE PROVISIONS,** Paragraph A. is deleted in its entirety and replaced by the following:

**III.    DEFENSE PROVISIONS**

A.    We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of **Loss** to which this policy applies.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

4.    **Section V. EXCLUSIONS**, Paragraphs I. and M. are deleted in their entireties.

5.    **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** mean payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or **Suit,** including but not limited to:

1.    Attorney's fees and all other investigation, loss adjustment and litigation expenses,

2.    Premiums on bonds to release attachments,

3.    Premiums on appeal bonds required by law to appeal any claim or **Suit**,

4.    Costs taxed against the **Insured** in any claim or **Suit**,

5.    Pre-judgment interest awarded against the **Insured**, and

6.    Interest that accrues after entry of judgment.

6.    **Section VII. DEFINITIONS**, Paragraph M. is amended to include the following additional subparagraph:

8.    Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your

*Archive Copy*

operations, including **Your Work** and **Your Product**, or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

    a.        The coverages and Limits of Insurance of this policy, or

    b.        The coverage and Limits of Insurance required by said contract or agreement.

7.    **Section VII. DEFINITIONS**, the phrase "Notwithstanding any of the above:" and subparagraphs a. and b. thereunder appearing at the end of Paragraph M. are deleted in their entireties and replaced by the following:

        Notwithstanding any of the above provisions 1. through 8. of this Paragraph M. of Section VII., no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company of which the **Named Insured** is or was partner or member and that is not designated as a **Named Insured** in Item 1 of the Declarations.

8.    **Section VII. DEFINITIONS**, Paragraph P. is deleted in its entirety and replaced by the following:

    P.    **Loss** means those sums actually paid as judgments or settlements, provided, however, that if the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then **Loss** shall include such **Defense Expenses**.

9.    **Section VII. DEFINITIONS**, Paragraph R. is deleted in its entirety and replaced by the following:

    R.    **Named Insured** means:

        1.        any person or organization designated in Item 1 of the Declarations,

        2.        as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization, and

        3.        after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

            a.        coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization, and

            b.        you give us prompt notice after you acquire or form such organization.

*Archive Copy*

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

10. **Section VII. DEFINITIONS**, Paragraph Z. is deleted in its entirety and replaced by the following,

Z. **Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

The **Retained Limit(s)** listed in the Schedule of Retained Limits will apply whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

a. If the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit.**

b. If the applicable **Retained Limit** is not specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall not reduce the **Retained Limit.**

11. **Section VI. CONDITIONS,** Paragraphs A. and C. are deleted in their entireties and replaced by the following:

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable **Retained Limit(s)**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation within a **Retained Limit**.

*Archive Copy*

**ENDORSEMENT NO.** 5 (Continued)

If another endorsement attached to this policy states specifically that the provisions therein supercede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

**Schedule of Retained Limits**

| Coverage(s) | Retained Limit(s) |
|---|---|
| **GENERAL LIABILITY (Other than Products-Completed Operations and Druggists Liability) United States, its territories and possessions and Canada** | $5,000,000 Each Occurrence Defense Expenses are inside the above limit. $7,500,000 Aggregate Defense Expenses are outside the above limit. After reduction or exhaustion of the Aggregate, coverage shall be subject to the $250,000 Indemnity Only Each Occurrence Specified Coverage Self Insured Retention, as per the terms of the Endorsement #14. |
| **PRODUCTS/COMPLETED OPERATIONS (Other than General Liability and Druggists Liability) United States, its territories and possessions and Canada** | $5,000,000 Each Occurrence Defense Expenses are inside the above limit. No Aggregate |
| **AUTOMOBILE LIABILITY** | $5,000,000 Each Accident Defense Expenses are outside the above limit. |

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
**or countersignature (where required by law)**

**ENDORSEMENT NO.**6

**This endorsement, effective 12:01 AM:**  July 1, 2005

**Forms a part of policy no.:**  BE    4484776

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**AMENDATORY ENDORSEMENT**

Section V. Exclusions, U.2 is amended as follows:

Arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of the **Insured** with knowledge of its falsity:

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

**ENDORSEMENT NO.** 7

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no.:** BE   4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**MEDICAL PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Medical Professional Liability**

This insurance does not apply to **Bodily Injury, Property Damage** or **Personal Injury** and **Advertising Injury** arising out of the rendering of or failure to render the following professional services:

**(A)**   Medical, surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith,

**(B)**   Furnishing or dispensing of medical, dental or surgical supplies or appliances,

**(C)**   Handling of or performing postmortem examinations on human bodies, or

**(D)**   Service by any person as a member of a formal accreditation or similar professional board or committee of the **Named Insured,** or as person charged with the duty of executing directives of any such board or committee.

It is also agreed that any **Bodily Injury** sustained by any patient or other person while seeking or being administered professional services shall not be covered under this policy except when such **Bodily Injury** occurs as a direct result of one or more of the following perils and then only if said perils occur on the **Insured's** premises:

**1.**   Fire or lightning,
**2.**   Windstorm or hail,
**3.**   Explosion,
**4.**   Riot, strike or civil commotion,
**5.**   Hazards involving any aircraft or vehicle,
**6.**   Sonic shock waves,
**7.**   Smoke,
**8.**   Vandalism or malicious mischief,
**9.**   Sprinkler leakage,

*Archive Copy*

**ENDORSEMENT NO. 7** (Continued)

| | |
|---|---|
| **10.** | Elevator malfunction, |
| **11.** | Earthquake or flood, |
| **12.** | Structural collapse of building, or |
| **13.** | Ownership, maintenance or use of premises and all operations necessary or incidental thereto. |

However, the exclusions set forth in Paragraphs (A) and (B) do not apply if such coverage is provided by **Scheduled Underlying Insurance**.

The exclusion set forth in Paragraph (B) does not apply to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard.**

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

## ENDORSEMENT No. 8

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no:** BE    4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Named Peril and Time Element Pollution
### Self-Insured Retention Endorsement
### (Products-Completed Operations Hazard Version II)

This policy is amended as follows:

**Section V. EXCLUSIONS**, Paragraph Q. **Pollution** is deleted in its entirety and replaced by the following:

**Pollution**

This insurance does not apply to:

1. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply to **Bodily Injury** or **Property Damage** arising out of:

    i. Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot or civil commotion, flood, automatic sprinkler leakage, collision or upset of an **Auto** or **Mobile Equipment** or aircraft; or

    ii. Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** and included within the **Products-Completed Operations Hazard** provided that:

        (a) Such **Bodily Injury** or **Property Damage** commenced on a demonstrable, specific date during the **Policy Period**; and

        (b) **Your Product** or **Your Work**  has not at any time been:

            (1) discarded, dumped, abandoned, thrown away; or

            (2) transported, handled, stored, treated, disposed of or processed as waste;

by anyone; or

iii. Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** that meets all of the following conditions:

    (a) It was abrupt and neither expected nor intended by the **Insured**. This condition does not apply to a non-routine incident where such discharge, dispersal, seepage, migration, release or escape of **Pollutants** was a result of an attempt by the **Insured** to mitigate or avoid a discharge, dispersal, seepage, migration, release or escape of **Pollutants** that was itself abrupt and neither expected nor intended by the **Insured** and where substantial third party **Bodily Injury** or **Property Damage** could have occurred;

    (b) It commenced on a demonstrable, specific date during the **Policy Period**;

    (c) Its commencement became known to the **Insured** within (20) calendar days;

    (d) Its commencement was reported in writing to us within (80) calendar days of becoming known to the **Insured**; and

    (e) Reasonable effort was expended by the **Insured** to terminate the discharge, dispersal, seepage, migration, release or escape of **Pollutants** as soon as conditions permitted.

However, nothing contained in this endorsement will operate to provide any coverage with respect to:

i. Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

ii. Any fines or penalties;

iii. Any clean up loss, cost or expense arising out of any governmental request, demand, order or statutory or regulatory requirement. However, this provision iii will not apply to third party clean up loss, cost or expense otherwise covered by this endorsement that are also the subject of a governmental request, demand, order or statutory or regulatory requirement;

iv. Acid rain or acid runoff;

v. Clean-up, removal, containment, treatment, detoxification or neutralization of **Pollutants** situated on premises which the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said **Pollutants**; or

vi. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**, or any loss, cost or expense arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** in knowing violation of or non compliance with governmental permits.

For the purpose of this endorsement only, the SELF-INSURED RETENTION in ITEM 5. of the DECLARATIONS, is amended to include the following additional provision:

$5,000,000 Each Occurrence (As respects all damages arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** covered under this endorsement). This **Self-Insured Retention** will not be reduced by **Defense Expenses**.

The above **Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the above **Self-Insured Retention** if such policies were purchased by the **Named Insured** to specifically apply as underlying insurance to this policy. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the above **Self-Insured Retention**.

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS** Paragraphs A. and D. are deleted in their entirety and Paragraph A. is replaced by the following:

We will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this endorsement may apply. If we exercise this right, we will do so at our own expense.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** means a payment allocated to defend a specific **Suit**, including but not limited to:

1. Attorneys' fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Court costs taxed against the **Insured** in any **Suit**;

5. Pre-judgment interest awarded against the **Insured**; and

6. Interest that accrues after entry of judgment.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

84186 (3/04)
AH1340

*Archive Copy*

**ENDORSEMENT No.** 9

**This endorsement, effective 12:01 AM:**  July 1, 2005

**Forms a part of policy no:**  BE    4484776

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Amendment Of Contractual Liability Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS**, Paragraph C. is deleted in its entirety and replaced by the following:

**Contractual Liability**

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to liability for damages:

1.  that the **Insured** would have in the absence of a contract or agreement; or

2.  assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the **Insured Contract**.   Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

    a.  liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

    b.  such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

86454 (8/04)
AH1435                    *Archive Copy*

**ENDORSEMENT No.** 10

**This endorsement, effective 12:01 AM:**  July 1, 2005

**Forms a part of policy no:**  BE     4484776

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse<sup>SM</sup>**

**Arbitration Condition Endorsement**
**(Solely Applicable To Exclusion Q. And Any Endorsements Amending Exclusion Q.)**
**(Domicile State)**

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

**Arbitration**

In the event of a disagreement as to the interpretation of Exclusion Q. of this policy or a disagreement as to the interpretation any endorsements attached to this policy amending Exclusion Q., the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item 1 of the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

82425 (06/03)
AH1180                         *Archive Copy*

**ENDORSEMENT NO.** 11

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no.:** BE    4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>**NAMED INSURED ENDORSEMENT**</u>

It is hereby understood and agreed that **Item 1., NAMED INSURED** of the Declarations page is amended to read as follows:

<u>**DOMESTIC/FOREIGN CORPORATIONS AND THEIR SUBSIDIARIES**</u>

Beldere Corporation
      S.K.U., Inc. (50%)
California Golden State Finance Company
      CGSF Funding Corporation
City Properties, S.A. (20%)
Crocker Plaza Company
Foremost de Venezuela, S.A. (39.69%)
Foremost Iran Corporation
Foremost Shir, Inc.
Foremost Tehran, Inc.
Golden State Insurance Company Limited
Goodman Manufacturing Company
Health Mart Systems, Inc.
Intercal, Inc. (15%)
IntelliClaim, Inc.
KWS & P, Inc.
KWS & P/SFA, Inc.
MCK Acquisition Corp.
McKesson Asia-Pacific Pty Limited
      McKesson New Zealand Limited
McKesson Automation, Inc.
McKesson Automation Systems Inc.
      SI/Baker, Inc.
McKesson BioServices Corporation
McKesson Capital Funding Corporation
McKesson Capital LLC

*Archive Copy*

**ENDORSEMENT NO.** 11 (Continued)

McKesson Development Corp.
McKesson Information Solutions LLC
    HBO & Company (VI), Inc.
    HBOC Medical Ltd.
    McKesson Health Solutions Holdings LLC
        McKesson Health Solutions LLC
        Access Health UK Ltd.
        McKesson Health Solutions Texas Inc.
            McKesson Information Solutions Holdings France S.a.r.l.
            McKesson Information Solutions France SA
        McKesson Information Solutions Holdings Limited
            A.L.I. Holdings LLC
            Medical Imaging SRL
                A.L.I. Technologies (International) LLC
        McKesson International LLC
            McKesson Information Solutions Holdings I SRL
            McKesson Information Solutions SRL
        McKesson Information Solutions International S.a.r.l.
            McKesson Information Solutions Finance S.a.r.l.
            McKesson Information Solutions Capital S.a.r.l.
            McKesson Information Solutions Holdings S.a.r.l.
            McKesson Information Solutions Holdings II S.a.r.l.
                McKesson International Nova Scotia ULC
                    McKesson Medical Imaging Company
              McKesson Information Solutions Holdings III S.a.r.l.
                McKesson Health Solutions Canada Company
              McKesson Information Solutions Holdings IV S.a.r.l.
                McKesson Information Solutions Canada Company
            A.L.I. Technologies (Europe) B.V.
            A.L.I. Technologies (Deutschland) GmbH
            McKesson Information Solutions Ireland Limited
            McKesson Information Solutions Netherlands B.V.
                McKesson HBOC Nederland B.V.
            McKesson Information Solutions UK Limited
                HBO & Company (ST & SW), Ltd.
        McKesson Services LLC
            A.L.I. Imaging Systems Corp.
    McKesson International Holdings Limited
        McKesson Health Solutions Puerto Rico Inc.
        McKesson Financial Holdings Limited
        McKesson International Ireland Limited
        McKesson Financial Holdings II Limited
            McKesson (International) (Gibraltar) Limited
              McKesson International Holdings LLC
                McKesson International Holdings SRL
                McKesson International SRL

*Archive Copy*

**ENDORSEMENT NO.** 11 (Continued)

McKesson International Finance S.a.r.l.
  McKesson International Capital S.a.r.l.
  McKesson International Holdings S.a.r.l.
   McKesson International Holdings II S.a.r.l.
    McKesson Funding Company of Canada
   McKesson International Holdings III S.a.r.l.
    McKesson Finance Company of Canada
     McKesson Canada Corporation
      3071046 Nova Scotia Company
      3087601 Nova Scotia Company
      Clinique Sante Corporation
      McKesson Logistics Solutions LLC
       McKesson Logistics Solutions LP
  McKesson International Holdings IV S.a.r.l
   McKesson International Netherlands BV
    NADRO, S.A. de C.V. (22.67%)
  McKesson International Holdings V S.a.r.l
   McKesson Automation Canada Corporation
  McKesson International Holdings VI S.a.r.l
   Zee Medical Canada Corporation
  McKesson International Holdings VII S.a.r.l
   McKesson Specialty Prescription Services Corporation
 McKesson Medication Management Puerto Rico Inc.
McKesson Medical-Surgical Holdings Inc.
 McKesson Medical-Surgical Inc.
  McKesson Medical-Surgical FDT Inc.
  Moore Medical LLC
   Podiatry Online, Inc.
  Titus Home Health Care LLC
 McKesson Medical-Surgical Maine Inc.
 McKesson Medical-Surgical Minnesota Inc.
  McKesson Medical-Surgical MediMart Inc.
  McKesson Medical-Surgical MediNet Inc.
  McKesson Medical-Surgical Minnesota Supply Inc.
  MSA Products LLC
  TBC Products, Inc.
 McKesson Medication Management LLC
  Purchasing Alliance for Clinical Therapeutics, LLC
 McKesson Prescription Drug Plan LLC
 McKesson Property Company, Inc.
  DC Land Company
  DCAZ Land Company
  Foremost Homes Hawaii, Ltd.
  HF Land Company
 McKesson Purchasing Company LLC
 McKesson Specialty Arizona Inc.

*Archive Copy*

**ENDORSEMENT NO.** 11 (Continued)

McKesson Specialty Corporation
McKesson Specialty Distribution LLC
McKesson Specialty Pharmaceuticals LLC (99%)
McKesson Trading Company
McKesson Transportation Systems, Inc.
MHS Connecticut LLC
N.V. Medicopharma (10%)
Northstar Healthcare Holdings Limited
   Northstar Healthcare Limited
Strategic Health Alliance Management Corp.
   Strategic Health Alliance II, Inc.
Zee Medical, Inc.
   CPG Industries, Inc.


**<u>JOINT VENTURE</u>**

Verispan, L.L.C. (43.5%)




  Inactive
  In Bankruptcy
Part-owned by more than one McKesson Corporation Entity
1% owned by McKesson Specialty Corporation

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

**ENDORSEMENT NO.** 12

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no.:** BE    4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy With CrisisResponse®**

**Acquired Entities Endorsement**

This policy is amended as follows:

1.    It is agreed that newly acquired and actively managed entities are automatically covered as follows:

   a)    Newly acquired or formed entities with operations that are not materially different from those of the **Insured** prior to such acquisition, formation or merger and with annual sales not exceeding two hundred and fifty million dollars ($250,000,000) are automatically covered.

   b)    Newly acquired or formed entities, regardless of size, with operations prior to such acquisition, formation or merger materially different from those of the **Insured** will be automatically covered for a period of sixty (60) days from the date of acquisition, formation or merger, during which time the **Insured** shall provide sufficient underwriting data for us to evaluate the continuation of coverage.

2.    We may make an additional premium charge for any such additional entities you acquire, form or take control of during the **Policy Period**.

3.    Any newly acquired or formed entity shall only be afforded coverage under this policy if such organization is included as a named insured under **Scheduled Underlying Insurance**. Except, however, this provision 3. shall not apply to coverages listed in the Schedule of Retained Limits attached to this policy.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT No.** 13

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no:** BE    4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Miscellaneous Changes  Endorsement**

This policy is amended as follows:

**SECTION I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY,** Paragraphs C. and D. are deleted in their entireties and replaced by the following:

C.  1.   This policy applies to **Bodily Injury** or  **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M.. of Section VII, no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part.  If such an **Insured**, or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

2.   **Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D.      **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured**  listed  under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

1.   reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

2.   receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

3.   becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

**SECTION III. DEFENSE**, is amended as follows:

1

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Archive Copy

Paragraph A.1. is deleted and replaced by the following:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

Paragraph C. 2. d. is deleted and replaced by the following:

d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest accruing after we make such offer;

**SECTION IV. LIMITS OF INSURANCE** is amended as follows:

Paragraph F. is deleted and replaced by the following:

F. This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

Paragraph G. is deleted and replaced by the following:

G. If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

2. in the event of exhaustion, continue in force as underlying insurance.

Paragraph M.1. Is deleted and replaced by the following:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss;** or

**SECTION V. EXCLUSIONS**, is amended as follows:

Paragraph I. **Employees and Volunteers** is amended to include the following additional Paragraph:

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of **Bodily Injury or Personal Injury and Advertising Injury** if such coverage is provided by **Scheduled Underlying Insurance.** Coverage under this policy for **Bodily Injury** or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

2

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Paragraph K. **Expected or Intended Injury** is deleted and replaced by the following:

K. **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

Paragraph M. **Liquor Liability** is deleted and replaced by the following:

M. **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

Paragraph P. **Nuclear Liability** is amended as follows:

Subparagraph 1.c. is deleted and replaced by the following

c. **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

i) the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

ii) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

iii) the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Archive Copy

Paragraph **W. War** is deleted and replaced by the following:

**W. War.**

This insurance does not apply to **Loss**, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war; or

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SECTION VI. CONDITIONS** is amended as follows:

Paragraph D. Cancellation, subparagraph 2. is deleted and replaced by the following:

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

Paragraph E. **Change in Control**, the last sentence is deleted and replaced with the following:

Coverage will be afforded by this policy **for Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth 90th day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1 of the Declarations or the end of the **Policy Period**, whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

Paragraph O. **Transfer of Rights of Recovery**, subparagraph 3. is deleted and replaced by the following:

3. If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization

**SECTION VII. DEFINITIONS** is amended as follows:

Paragraph C. **Bodily Injury** is deleted and replaced by the following:

83864 (02/04)
AH1266
© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

*Archive Copy*

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

Paragraph M. **Insured**, is amended as follows:

Subparagraph 2b. is deleted and replaced by the following:

b.   a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

The last paragraph is deleted and replaced by the following:

Notwithstanding any of the above:

a.   no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

b.   no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

Paragraph P. **Loss** is deleted and replaced by the following:

P.   **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then Loss shall include such expenses.

Paragraph R. **Named Insured** is deleted and replaced by the following:

R.   **Named Insured** means:

1.   any person or organization designated in Item 1 of the Declarations;

2.   as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%), provided that coverage provided to such organization under this paragraph  does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.   after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

a.   coverage provided to such organization under this paragraph does not apply to any  **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

b.   you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

83864 (02/04)
AH1266
© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Archive Copy

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**. If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured,** under the highest applicable limit of **Scheduled Underlying Insurance**.

Paragraph T. **Other Insurance** is deleted and replaced by the following:

T. **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

6

83864 (02/04)
AH1266

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

*Archive Copy*

**ENDORSEMENT No.** 14

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no:** BE 4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Self Insured Retention Applicable To Specified Coverage After Underlying Limits Are Reduced or Exhausted Endorsement**

This policy is amended as follows:

This endorsement will apply to the below **Specified Coverage** only:

DRUGGIST LIABILITY AND GENERAL LIABILITY
(Not applicable to the Products-Completed Operations Hazard)

The **Declarations**, **ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional **Self Insured Retention**:

**Specified Coverage** Self Insured Retention - $250,000          Each Occurrence

**Section III. DEFENSE**, Paragraph A. is deleted and replaced by the following:

We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1.  the total applicable limits of **Scheduled Underlying Insurance**, any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention have been exhausted by payment of **Loss** to which this policy applies; or

2.  the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

**Section IV. LIMITS OF INSURANCE**, Paragraphs F., G. and M. are deleted in their entireties and replaced by the following:

F.  This policy applies only in excess of the total applicable limits of **Scheduled Underlying Insurance,** any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention whether or not such limits are collectible. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

**Archive Copy**

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G. If the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance,** any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention; and

2. in the event of exhaustion, continue in force as underlying insurance.

The **Specified Coverage** Self Insured Retention will apply per **Occurrence**.

M. We will not make any payment under this policy unless and until:

1. the total applicable limits of **Scheduled Underlying Insurance,** any applicable **Other Insurance** and the **Specified Coverage** Self Insured Retention have been exhausted by the payment of **Loss** to which this policy applies; or

2. the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgement, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

**Section IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The **Specified Coverage** Self Insured Retention will not be reduced by **Defense Expenses**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgement interest awarded against the **Insured**; and

6. Interest that accrues after entry of judgement.

**Specified Coverage** means the coverage that is specified at the top of this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

81584 (02/03)
AH1045

Page 2 of 2

*Archive Copy*

**ENDORSEMENT No.** 15

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no:** BE 4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**<sup>SM</sup>

**Foreign Liability Follow-Form Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following exclusion:

**Foreign Liability**

This insurance does not apply to any liability arising out of an **Occurrence** that takes place outside that United States of America, its territories and possessions, Puerto Rico and Canada.

However, this exclusion will not apply if coverage is provided by a policy listed in the **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of such **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

80432 (07/02)
AH0918

*Archive Copy*

**ENDORSEMENT No.** 16

**This endorsement, effective 12:01 AM:**  July 1, 2005

**Forms a part of policy no.:**  BE   4484776

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**[®]

**Employee Benefits Liability Limitation Claims Made Version Endorsement**

**NOTICE: Please read this endorsement carefully.  This endorsement provides coverage on a  claims made basis.  Except to the extent as may otherwise be provided herein, the coverage of this insurance is generally limited to liability for only those claims that are first made during the Policy Period and reported in writing to us.**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employee Benefits Liability**

This insurance does not apply to any liability arising out of:

1. any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

2. any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

   a. giving counsel to employees with respect to a **Plan**;

   b. interpreting a **Plan**;

   c. handling of records in connection with a **Plan**;

   d. effecting enrollment, termination or cancellation of employees under a **Plan**; or

   e. any claim against an **Insured** solely by reason of his, her or its status as an administrator, the **Plan** or you as sponsor of the **Plan**.

However, this exclusion will not apply only if and to the extent that coverage for such liability is provided by **Scheduled Underlying Insurance**.

Solely as respects this endorsement, this policy will only provide coverage for a **Claim** made against the **Insured** during the **Policy Period**:

   a) If the insurance provided by **Scheduled Underlying Insurance** provides coverage for **Occurrences** occurring on or after a specified Retroactive Date for a claim for damages because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** first made in writing against any **Insured** in accordance with Paragraph b) below during the **Policy Period** or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

83073 (09/03)                                  Page 1 of 2
AH1228                            **Archive Copy**

b) A **Claim** by any person or organization seeking damages will be deemed to have been made at the earlier of the following times:

1. When notice of such **Claim** is received and recorded by any **Insured** in writing and reported to us during the Policy Period or any applicable extended reporting period; or

2. When we make settlement in accordance with Paragraph a) above.

Notwithstanding the above, this insurance shall not apply to:

1. any **Claim** alleging or arising out of an **Occurrence** committed on or after the Retroactive Date set forth in the **Schedule Underlying Insurance**, if the **Insured**, an officer, manager in your risk management, insurance or legal department or an employee who was authorized by you to give or receive notice of an **Occurrence**, knew as of the Continuity Date shown above that such **Occurrence** could result in a **Claim**.

2. any **Claim** alleging or arising out the same **Occurrence** or series of continuous, repeated or related **Occurrences** or alleging the same or similar facts, alleged or contained in any **Claim** which has been reported, or any **Occurrence** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

3. any **Claim** alleging or arising out of any **Claim** or **Suit** pending as of the Continuity Date; or alleging or arising out of or relating to any fact, circumstance, situation or **Occurrence** alleged in such **Claim** or **Suit**.

If **Scheduled Underlying Insurance** does not contain a Continuity Date, the Continuity Date will be the Retroactive Date.

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Claim** means a written demand upon the **Insured** for compensatory damages or services and shall include the service of **Suit** or institution of arbitration proceedings against the **Insured**.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **Plan** is subject.

**Plan** means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of **ERISA** or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1. a welfare plan, as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. a pension plan as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3. a combination of 1. and 2. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

*Archive Copy*          Page 2 of 2

ENDORSEMENT No. 17

This endorsement, effective 12:01 AM: July 1, 2005

Forms a part of policy no: BE    4484776

Issued to: MCKESSON CORPORATION

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Notice of Occurrence

This policy is amended as follows:

**Section VI. CONDITIONS**, Paragraph G. **Duties in the Event of an Occurrence, Claim or Suit** is amended to include the following provision:

5.   Your failure to give first report of a claim to us will not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you will report any such **Occurrence** to us within a reasonable time once you become aware of such error.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

80454 (07/02)
AH0939

***Archive Copy***

**ENDORSEMENT No.** 18

**This endorsement, effective 12:01 AM:**   July 1, 2005

**Forms a part of policy no:**   BE       4484776

**Issued to:**   MCKESSON CORPORATION

**By:**   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**[SM]

**Defense within the Limits of Insurance**

This policy is amended as follows:

**Section IV. LIMITS OF INSURANCE**, Paragraph H. is deleted in its entirety and replaced by the following:

H.   Expenses incurred to defend any **Suit** or to investigate any claim will reduce the applicable Limits of Insurance of this policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

80413 (07/02)
AH0900

*Archive Copy*

ENDORSEMENT No. 19

This endorsement, effective 12:01 AM: July 1, 2005

Forms a part of policy no: BE    4484776

Issued to: MCKESSON CORPORATION

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Non-Concurrency Endorsement

This policy is amended as follows:

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

If any of the policy periods of **Scheduled Underlying Insurance**, (including any renewals and replacements thereof) apply nonconcurrently with the **Policy Period** of this policy, and in the event of reduction or exhaustion of the aggregate limit(s) of the underlying policy(ies) by payment of damages taking place during the policy period of such underlying policy(ies), **we** will:

1.  In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

2.  In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance;

subject to the definitions, conditions and exclusions of the applicable underlying policy(ies).

Coverage under this policy, however, applies only to **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** that takes place during the **Policy Period** of this policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

81581 (02/03)
AH1077                         *Archive Copy*

**ENDORSEMENT NO.** 20

**This endorsement, effective 12:01 AM:**  July 1, 2005

**Forms a part of policy no.:**  BE    4484776

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Manufacture of Drugs Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Manufacture of Drugs**

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the **Inusred**.

For the purpose of this exclusion, the term "manufacture" shall not include packaging and labeling of drugs.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
**or countersignature (where required by law)**

ENDORSEMENT No. 21

This endorsement, effective 12:01 AM:  July 1, 2005

Forms a part of policy no:  BE      4484776

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy With CrisisResponse®

### Economic or Trade Sanctions Condition Endorsement

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

**Economic or Trade Sanctions**

If coverage for a claim or **Suit**  under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

87068 (11/04)
AH1445                    *Archive Copy*

**ENDORSEMENT No.** 22

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no:** BE    4484776

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Violation of Communication or Information Law Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Violation of Communication or Information Law**

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

It is understood that to the extent any coverage may otherwise be available under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions and exclusions remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

87241 (12/04)
AH1509                    *Archive Copy*

**ENDORSEMENT No.** 23

**This endorsement, effective 12:01 AM:**  July 1, 2005

**Forms a part of policy no:**  BE     4484776

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Duties in the Event of an Occurrence, Claim or Suit and
Schedule A - Approved Crisis Management Firms**

Solely as respects coverage provided by **Section II INSURING AGREEMENT - CRISISRESPONSE^SM AND EXCESS CASUALTY CRISIS FUND®**, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** or as soon as practicable to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100.  If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1.  how, when and where the **Crisis Management Event** is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

AIG Technical Services, Inc.
Excess Casualty Claim Department
175 Water Street
New York, NY  10038

## SCHEDULE A

### APPROVED CRISIS MANAGEMENT FIRMS

The following firms are approved **Crisis Management Firms**:

**Crisis Communications Management Firms:**

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

**Abernathy MacGregor Group**

| | | |
|---|---|---|
| New York Office<br>501 Madison Avenue<br>New York, NY 10022<br><br>ww.abmac.com | James T. MacGregor<br>Tel. (212) 371-5999<br>Cell (212) 593-1845<br>jtm@abmac.com | **Emergency Only**<br><br>Tel. (212) 343-0818<br>Cell (917) 449-9964 |
| | Rhonda Barnat, Managing Director<br>Tel. (212) 371-5999<br>Cell (212) 593-1845<br>rb@abmac.com | **Emergency Only**<br><br>Cell (917) 912-6378 |
| Los Angeles Office<br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel. (213) 630-6550<br>Cell (213) 489-3443<br>idc@abmac.com | **Emergency Only**<br><br>Tel. (818) 957-5650<br>Cell (917) 940-3476 |

**Citigate Sard Verbinnen**

| | | |
|---|---|---|
| New York Office<br>630 Third Avenue<br>New York, NY 10017<br><br>www.sardverb.com | George Sard<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br>gsard@sardverb.com | **Emergency Only**<br><br>Contact switchboard @<br>(212) 687-8080 |
| | Paul Verbinnen<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br>pv@sardverb.com | |

**Hill and Knowlton**

| | | |
|---|---|---|
| New York Office<br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017<br>www.hillandknowlton.com | Richard C. Hyde<br>Tel. (212) 885-0372<br>Cell (917) 816-2208<br>Fax: (212) 885-0570<br>dhyde@hillandknowlton.com | **Emergency Only**<br><br>H&K Crisis Pager<br>(888) 264-5193<br>24 Hours/7 Days |

83687 (12/03)
AH1276

*Archive Copy*

Page 2 of 5

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

**Hill and Knowlton Continued**

Arthur Forster
Tel. (212) 885-0442
Pager: 888-614-8692
Fax: (212) 885-0570
aforster@hillandknowlton.com

**Lexicon Communications Corp.**

Los Angeles Office
9200 Sunset Blvd.
Suite 1203
Los Angeles, CA 90069
www.crisismanagement.com

Steven B. Fink
Tel. (213) 346-1212
Cell (626) 253-1519
sfink.lexiconcorp.com

Emergency Only

Contact switchboard at
(213) 346-1200,ext. 225

**PR21 (A Division of Edelman Worldwide)**

New York Office
79 Fifth Avenue, 17th Fl.
New York, NY 10003

www.pr21.com

Jon Goldberg
Tel. (212) 299-8952
Fax (212) 462-1026/7
jon.goldberg@pr21.com

Emergency Only

Cell (973) 699-7148
Pager (877) 386-8115

**Robinson Lerer & Montgomery**

New York Office
75 Rockefeller Plaza
6th Floor
New York, NY 10019

www.rlmnet.com

Michael J. Gross
Tel. (212) 484-7721
Cell (917) 853-0620
Fax (212) 484-7411
Mgross52@aol.com

Emergency Only

Contact switchboard@
(212) 484-6100

**Sitrick and Company Inc.**

Los Angeles Office
1840 Century Park East
Suite 800
Los Angeles, CA 90067

www.sitrick.com

Michael S. Sitrick
Tel. (310) 788-2850
Fax (310) 788-2855
mike.sitrick@sitrick.com

Emergency Only
(310) 358-1011

24 hours/7 days

New York Office
675 Third Ave
31st Floor
New York, NY 10017

Richard Wool
Tel. (212) 573-6100
Fax (212) 573-6165

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

**Investigative Firms:**

| Abernathy MacGregor Frank- contact numbers same as above |
|---|

New York Office
501 Madison Avenue
New York, NY 10022

Emergency
(212) 688-0926
(917) 593-1845

Los Angeles Office
611 West Sixth Street
Suite 1880
Los Angeles, CA 90017

Emergency
(818) 957-5650
(917) 940-3476

| Hill & Knowlton- Contact numbers same as above |
|---|

New York Office
466 Lexington Avenue
3rd Floor
New York, NY 10017

Emergency
Contact switchboard @
(212) 885-0300

Contact: Denise DeShane
Tel. (212) 885-0390
Fax. (212) 885-0570

Emergency
Contact switchboard @
(212) 885-0300

Contact: Alex Goldsmith
Tel. (212) 885-0467
Fax. (212) 885-0570

Emergency
1-800-GET-KROL
World Wide Crisis Division
24 hours/7days

| Kroll Associates |
|---|

New York Office
900 Third Avenue
New York, NY 10022

Contact: Mary Jo Phillips
Tel. (212) 833-3246
Fax. (212) 644-5794

| Lexicon Communications Corp. |
|---|

Los Angeles Office
333 South Grand Avenue
Suite 3560
Los Angeles, CA 90071

Contact: Steven B. Fink
Tel. (213) 346-1212
Fax. (213) 346-1210
sfink@lexiconcorp.com

Emergency
Contact Switchboard @
(213) 346-1200

| Robinson Lerer & Montgomery |
|---|

New York Office
75 Rockefeller Plaza
6th Floor
New York, NY 10019

Contact: Michael J. Gross
Tel. (212) 484-6100
Fax. (212) 484-7411

Emergency
Contact switchboard @
(212) 484-6100

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

**Sarb Verbinnen & Co. - contact numbers same as above for Citigate Sard Verbinnen**

<u>New York Office</u>
630 Third Avenue
New York, NY 10017

Contact: George Sard
Tel.(212) 687-8080
Fax (212) 687-8344

Emergency
Contact switchboard @
(212) 687-8080

**Sitrick and Company Inc. - contact numbers same as above**

<u>Los Angeles Office</u>
2029 Century Park East
Suite 1750
Los Angeles, CA 90067

Contact: Michael S. Sitrick
Tel. (310) 788-2850
Fax  (310) 788-2855

Emergency
(310) 319-2786
24 hours/7days

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (in States Where Applicable)

83687 (12/03)
AH1276
**Archive Copy**
Page 5 of 5

## ENDORSEMENT No. 24

This endorsement, effective 12:01 AM: July 1, 2005

Forms a part of policy no.: BE    4484776

Issued to: MCKESSON CORPORATION

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Policy with CrisisResponse®

### Act of Terrorism Self-Insured Retention Endorsement

Solely as respects **Act of Terrorism**, this policy is amended as follows:

1. The **Declarations**, **ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional Self-Insured Retention:

   **ACT OF TERRORISM SELF-INSURED RETENTION** - $5,000,000 **Each Occurrence**

2. **ITEM 6. OF THE DECLARATIONS, PREMIUM AND PREMIUM COMPUTATION** is amended to include the following:

   **ACT OF TERRORISM PREMIUM**                $9,653.00

3. **Section IV. LIMITS OF INSURANCE**, Paragraph G. is deleted in its entirety and replaced by the following:

   G. If the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** are reduced or exhausted by payment of **Loss** to which this policy applies, we will:

      1. in the event of reduction, pay in excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** or the **Act of Terrorism Self-Insured Retention**, whichever is greater; or

      2. in the event of exhaustion of the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** or the **Act of Terrorism Self-Insured Retention**, whichever is greater; pay all sums covered herein.

4. **Section IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

   The **ACT OF TERRORISM SELF-INSURED RETENTION** will not be reduced or exhausted by **Defense Expenses**.

5. **Section III. DEFENSE PROVISIONS**, Paragraphs A. 1. and A. 2., and D. are deleted in their entireties, and Paragraph A. is replaced by the following:

   A. We will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

83049 (09/03)
AH1206                           **Archive Copy**                                  Page 1 of 3

6. **Section VII. DEFINITIONS**, Paragraph Z. is deleted in its entirety and replaced by the following:

    **Z. Retained Limit** means, the greater of either:

      1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured** or the **Act of Terrorism Self-Insured Retention**; or

      2. the **Act of Terrorism Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

7. **Section VII. DEFINITIONS** is amended to include the following additional definition:

    **Act of Terrorism** is defined as either:

    1. A certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

    The following Section 102 definition of "act of terrorism" from the Terrorism Risk Insurance Act of 2002 applies:

    (1) Act of Terrorism -

      (A) Certification. - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States --

        (i) to be an act of terrorism;

        (ii) to be a violent act or an act that is dangerous to --

          (I) human life;

          (II) property; or

          (III) infrastructure;

        (iii) to have resulted in damage within the United States, or outside of the United States in the case of --

          (I) an air carrier or vessel described in paragraph (5)(B); (for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission);

          (II) the premises of a United States mission; and

        (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

      (B) Limitation. -- No act shall be certified by the Secretary as an act of terrorism if --

        (i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or

        (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

83049 (09/03)
AH1206
      **Archive Copy**
      Page 2 of 3

(C) Determinations Final. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

(D) Nondelegation. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred; or

2. the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Act of Terrorism** will also include any act which is verified or recognized by the United States Government as an act of terrorism.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

83049 (09/03)
AH1206                    *Archive Copy*                    Page 3 of 3

**ENDORSEMENT No.** 25

**This endorsement, effective 12:01 AM:** July 1, 2005

**Forms a part of policy no:** BE    4484776

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy With CrisisResponse**®

**California Cancellation and Nonrenewal Amendatory Endorsement**

This policy is amended as follows:

I.    **Section VI. CONDITIONS**, **D. Cancellation**, is deleted in its entirety and replaced by the following:

D.    **Cancellation**

1.    You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.    New Policies in Effect for Sixty (60) Days or Less:

We may cancel this policy.  If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice.  Such notice will include the reason or reasons for cancellation.

3.    New Policies in Effect for More Than Sixty (60) Days and Any Renewal Policy:

We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

a.    Nonpayment of premium, including payment due on a prior policy issued by us and due during the **Policy Period** covering the same risks;

b.    A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

c.    Discovery of fraud or material misrepresentation by either of the following:

i.    You or other **Insureds** or your representative in obtaining this policy; or
ii.    You or your representative in pursuing a claim under this policy.

d.    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or other **Insureds** or a representative of same, which materially increase any of the risks insured against;

e.    Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan if the failure materially increases any of the risks insured against;

*Archive Copy*

f.  A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

g.  A determination by the commissioner that a continuation of this policy's coverage could place us in violation at the laws at this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

h.  A change by you or other **Insureds** or a representative of same in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the added, increased or changed risk is included in this policy;

i.  A material change in limits, type or scope of coverage or exclusions in **Scheduled Underlying Insurance**;

j.  Cancellation or nonrenewal of any **Scheduled Underlying Insurance** where such insurance is not replaced without lapse; or

k.  A reduction in financial rating or grade of one or more insurers issuing any **Scheduled Underlying Insurance** based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less then ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.  Such notice will include the reason or reasons for cancellation.

4.  The **Policy Period** will end on the day and hour stated in the cancellation notice.

5.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 6 of the Declarations.

6.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 6 of the Declarations.

7.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you.  Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.  The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

II.  **Section VI. CONDITIONS** is amended to include the following additional provision:

**Nonrenewal**

If we decide not to renew this policy, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of nonrenewal at least sixty (60) days, but no more than one hundred twenty (120) days prior to the end of the **Policy Period**.  The notice shall contain the reason or reasons for nonrenewal of this policy.

III.   **Section VI. CONDITIONS** is amended to include the following additional provision:

**Increase in Premium, Reduction in Limits or Change in Conditions of Coverage**

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2.   Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3.   A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4.   A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in this policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in this policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

ENDORSEMENT No. 26

This endorsement, effective 12:01 AM:  July 1, 2005

Forms a part of policy no:  BE     4484776

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## Commercial Umbrella Liability Policy with CrisisResponse®

## Uninsured/Underinsured Motorists Coverage Endorsement

**THIS ENDORSEMENT APPLIES TO A COVERED AUTO REGISTERED OR PRINCIPALLY GARAGED IN THE FOLLOWING STATE(S) (where indicated by an "X")**

The Declarations ITEM 3. LIMITS OF INSURANCE is amended to include the following additional provisions:

**Applicable Uninsured/Underinsured Each Occurrence Limit(s)**

| X | **VERMONT** | $100,000 **Bodily Injury and Property Damage Combined Single Limit** |
|---|---|---|

And, if Uninsured/Underinsured Motorist Coverage <u>has been selected</u> under this policy:

**Applicable Uninsured/Underinsured Each Occurrence Limit(s)**

| **FLORIDA** | **Bodily Injury** |
|---|---|
| **WEST VIRGINIA** | **Bodily Injury and Property Damage Combined Single Limit** |

And, if Uninsured/Underinsured Motorist Coverage <u>has not been rejected</u> under this policy:

**Applicable Uninsured/Underinsured Each Occurrence Limit(s)**

| **INDIANA** | **Bodily Injury and Property Damage Combined Single Limit** |
|---|---|
| **LOUISIANA** | **Bodily Injury Limit** |
| **NEW HAMPSHIRE** | **Bodily Injury Limit** |

**Uninsured/Underinsured Motorists Retained Limit**   $ 5,000,000

**INSURING AGREEMENT**

**Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** is amended to include the following additional provisions:

1.  We will pay all sums in excess of the **Uninsured/Underinsured Motorists Retained Limit** the **Insured** is legally entitled to recover as compensatory damages from the owner or operator of:

    a.  An **Uninsured Motor Vehicle** as defined in Definition 4.a., 4.b. and 4.c. of this endorsement because of **Bodily Injury** sustained by the **Insured**, or **Property Damage** and caused by an **Occurrence**, and

    b.  An **Uninsured Motor Vehicle** as defined in Definition 4.d. of this endorsement because of **Bodily Injury** sustained by any **Insured**, or **Property Damage**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **Uninsured Motor Vehicle.**

2. We will pay under this coverage only if a. or b. below applies:

   a. The limits of any applicable liability bonds or policies of the **Uninsured Motor Vehicle** have been exhausted by judgments or payments; or

   b. A tentative settlement has been made between an **Insured** and the insurer of the vehicle described in paragraph b. of the definition of **Uninsured Motor Vehicle** of this endorsement and we:

      1) Have been given prompt written notice of such settlement; and

      2) Advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days after receipt of notification.

3. Any judgment for damages arising out of a **Suit** brought without our written consent is not binding upon us.

## DEFENSE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section III. DEFENSE PROVISIONS** is hereby deleted in its entirety and replaced by the following:

1. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury** or **Property Damage** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the **Uninsured/Underinsured Motorists Retained Limit** has been exhausted by payment of **Loss** to which this policy applies.

   If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

2. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply.

3. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

   a. Investigate, negotiate and settle the **Suit** as we deem expedient; and

   b. Pay the following supplementary payments:

      1) premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

      2) premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

      3) all court costs taxed against the **Insured** in the **Suit**;

      4) pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

*Archive Copy*

5) post-judgment interest that accrues after entry of judgment on that part of the judgement within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

6) the **Insured's** expenses incurred at our request or with our consent.

4. Except as provided in Paragraph 1. above, we will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

5. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph 3. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## LIMITS OF INSURANCE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section IV. LIMITS OF INSURANCE** is amended to include the following additional provisions:

1. Regardless of the number of covered **Autos**, **Insureds**, premiums paid, claims made or vehicles involved in the **Occurrence**, the most we will pay for all damages resulting from any one **Occurrence** are the Limits of Insurance shown in Item 3. of the Declarations (as amended in this endorsement).

2. With respect to coverage provided under Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**, the Limit of Insurance shall be reduced by all sums paid for **Bodily Injury** or **Property Damage** by or on behalf of anyone who is legally responsible.

3. **Uninsured/Underinsured Motorists Retained Limit**

   This policy applies only in excess of an **Uninsured/Underinsured Motorists Retained Limit** and then up to an amount not exceeding the Uninsured/Underinsured Motorists Each Occurrence Limit as stated in the Declarations (as amended in this endorsement), subject to the provisions stated in 1. and 2. above.

   This **Uninsured/Underinsured Motorists Retained Limit** shall not be reduced or exhausted by **Defense Expenses**.

   This **Uninsured/Underinsured Motorists Retained Limit** shall apply whether or not the **Insured** maintains applicable underlying insurance. If there is **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** applicable to a **Loss**, amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for payment of the **Loss** may be applied to reduce or exhaust the **Uninsured/Underinsured Motorists Retained Limit**. However, in no event will amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** reduce the **Uninsured/Underinsured Motorists Retained Limit**.

   Where the Uninsured/Underinsured laws of the state of West Virginia apply, this **Uninsured/Underinsured Motorists Retained Limit** applies excess of the statutory minimum amount of Uninsured Motorists Coverage provided by an underlying insurer.

## EXCLUSIONS

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS**, Exclusion O. is deleted in its entirety and replaced by the following:

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000
*Archive Copy*

O. **"No-Fault" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No Fault" law.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusions:

1. This insurance does not apply to any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle which is an **Uninsured Motor Vehicle**.

2. This insurance does not apply to the direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. This insurance does not apply to any **Insured** using a vehicle without a reasonable belief that the person is entitled to do so.

4. This insurance does not apply to **Bodily Injury** or **Property Damage** sustained by:

   a. An individual **Named Insured** while **Occupying** or when struck by any vehicle owned by that **Named Insured** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement;

   b. Any **Family Member** while **Occupying** or when struck by any vehicle owned by that **Family Member** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement; or

   c. Any **Family Member** while **Occupying** or when struck by any vehicle owned by the **Named Insured** that is insured for Uninsured Motorists Coverage under any other policy.

5. This insurance does not apply to punitive or exemplary damages.

6. This insurance does not apply to **Property Damage** to an **Auto** or to property contained in an **Auto** owned by the **Named Insured** which is not a covered **Auto**.

7. This insurance does not apply to **Property Damage** for which the **Insured** has been or is entitled to be compensated by other property or physical damage insurance.

**CONDITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition L. **Other Insurance** under **Section VI. CONDITIONS** is deleted in its entirety and replaced by the following:

L. **Other Insurance**

Any insurance we provide under this endorsement will be excess to the total limits of any **Other Insurance** paid or available for payment to an **Insured**, except other applicable Uninsured/Underinsured Motorist Coverage written to be excess of this policy.

If there is other applicable Uninsured/Underinsured Motorist Coverage under any other policy issued to the **Named Insured** by us, the maximum recovery for damages may equal but not exceed the highest applicable limit of insurance under any one policy.

If there is other applicable excess Uninsured/Underinsured Motorist Coverage available under more than one policy, then the following priorities of coverage apply:

1. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as a **Named Insured**.

2. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as an **Insured** other than as a **Named Insured**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

3. A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as a **Named Insured**.

4. A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as an **Insured** other than as a **Named Insured**.

We will pay only our share of the **Loss** that must be paid under insurance providing umbrella or excess coverage. Our share is the proportion that our limit of liability bears to the total of all applicable limits of all the policies applicable on the same level of priority.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition G. **Duties In the Event of an Occurrence, Claim Or Suit** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

G. Specifically as respects to any **Occurrence** which may result in a Uninsured/Underinsured Motorist claim for coverage under this policy:

   a. You must promptly notify the police if a hit-and-run driver is involved, and

   b. You must promptly send us copies of the legal papers if a **Suit** is brought.

   c. A person seeking Uninsured/Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the **Insured** and the insurer of the vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle** and allow us 90 days to advance payment to that **Insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition P. **Transfer of Your Rights and Duties** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

P. If we make any payment and the **Insured** recovers from another party, the **Insured** shall hold the proceeds in trust for us and pay us back the amount we have paid.

   However, where the Uninsured/Underinsured laws of the state of Louisiana apply, if we make any payment under this policy and the person to or for whom payment is made has a right to recover damages from another, we shall be subrogated to that right. However, our right to recover is subordinate to the right of the **Insured** to be fully compensated.

   Our rights do not apply under this provision with respect to Uninsured/Underinsured Motorists Coverage if we:

   a. Have been given prompt written notice of a tentative settlement between an **Insured** and the insurer of a vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**; and

   b. Fail to advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days after receipt of notification.

   If we advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days after receipt of notification:

   a. That payment will be separate from any amount the **Insured** is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

   b. We also have a right to recover the advanced payment.

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VI. CONDITIONS** is amended to include the following additional conditions:

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000
*Archive Copy*

**Arbitration (Not applicable where the Uninsured/Underinsured laws of West Virginia or Louisiana apply)**

1.  If we and an **Insured** disagree whether the **Insured** is legally entitled to recover damages from the owner or driver of an **Uninsured Motor Vehicle** or do not agree as to the amount of damages that are recoverable by that **Insured**, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to the arbitration.  If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

2.  Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding.  However, where the Uninsured/Underinsured laws of Indiana apply, a decision agreed to by two of the arbitrators will be binding as to:

    a.  Whether the **Insured** is legally entitled to recover damages, and

    b.  The amount of damages.  This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana.  If the amount exceeds that limit, either party demand the right to a trial.  This demand must be made within 60 days of the arbitrator's decision.  If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**Conformance to "Uninsured Motorist" and/or "Underinsured Motorist" Law**

To the extent any term of this policy conflicts with any applicable Uninsured/Underinsured law, the term shall be deemed amended so as to conform to minimum requirements of that law.  However, under no such circumstance shall any term be amended to be broader than the minimum requirements of that law.

**DEFINITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition M. **Insured** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

M.  **Insured** means:

    If the **Named Insured** is designated in the Declarations as:

    a.  An individual, then only the following are **Insureds**:

        1)  The **Named Insured** and any **Family Members**.

        2)  Anyone else occupying a covered **Auto** or a temporary substitute for a covered **Auto**.  The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction.

        3)  Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

    b.  A partnership, limited liability company, corporation or any other form of organization, then the following are **Insureds**:

        1)  Anyone occupying a covered **Auto** or a temporary substitute for a covered **Auto**.  The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction;

        2)  Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000
Archive Copy

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition Y. **Property Damage** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

Y.  **Property Damage** means:

Physical Injury or destruction of:

a.  A covered **Auto**; or

b.  Property contained in the covered **Auto**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

1.  **Defense Expenses** means a payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

    a.  Attorneys' fees and all other investigation, **Loss** adjustment and litigation expenses;

    b.  Premiums on bonds to release attachments;

    c.  Premiums on appeal bonds required by law to appeal any claim or **Suit**;

    d.  Costs taxed against the **Insured** in any claim or **Suit**;

    e.  Pre-judgment interest awarded against the **Insured**; and

    f.  Interest that accrues after entry of judgment.

2.  **Family Member** means a person related to an individual **Named Insured** by blood, marriage or adoption who is a resident of such **Named Insured's** household, including a ward or foster child.

3.  **Occupying** and/or **Occupied** means in, upon, getting in, on, out or off.

4.  **Uninsured Motor Vehicle** means a land motor vehicle or trailer:

    a.  For which no liability bond or policy at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged;

    b.  Which is an **Underinsured Motor Vehicle**.  An **Underinsured Motor Vehicle** means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged but their limits are less than the Limit of Insurance of this coverage;

    c.  For which an insuring or bonding company denies coverage or is or becomes insolvent; or

    d.  That is a hit-and-run vehicle and neither the operator nor owner can be identified.  The vehicle must either:

        1)  Hit an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**; or

        2)  Cause **Bodily Injury** to an **Insured** without hitting an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**.

        The facts of the **Occurrence** or intentional act must be proved by independent corroborative evidence, other than the testimony of the **Insured** making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000
*Archive Copy*

However, **Uninsured Motor Vehicle** does not include any vehicle:

a.   Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.  However, where the Uninsured/Underinsured laws of the state of Florida apply, Uninsured Motor Vehicle includes any vehicle owned or operated by a self-insurer under any applicable motor vehicle law;

b.   Designed for use mainly off public roads while not on public roads;

c.   Owned by or furnished or available for the **Named Insured's** regular use or that of any **Family Member**, if the **Named Insured** is an individual; or

d.   Owned by any governmental unit or agency, unless the owner or operator of the **Uninsured Motor Vehicle** has:

   1)   An immunity under applicable tort liability law; or

   2)   A diplomatic immunity.

5.  **Uninsured/Underinsured Motorists Retained Limit** means the uninsured/underinsured motorists retained limit specified in Declarations, as amended in this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

*Archive Copy*
Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

## <u>POLICYHOLDER NOTICE</u>

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

*Archive Copy*

**FORMS SCHEDULE**

**Named Insured:**   MCKESSON CORPORATION

**Policy Number:**        9835034
**Effective 12:01 AM:**   July 1, 2007

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | UMB PRIME DEC | 80518 | (10/04) |
| | UMB PRIME JACKET | 80517 | (10/04) |
| | PREM INCL TERRORISM NOTICE | 81249 | (03/03) |
| 1 | SCHEDULE OF UNDERLYING INSURANCE | MNSCPT | (07/07) |
| 2 | RETAINED LIMIT AMENDATORY ENDT. | 81583 | (12/04) |
| 3 | DRUGGIST PROFESSIONAL SERVICE LIABILITY ENDORSEMEN | MNSCPT | (07/07) |
| 4 | PRIME SCHEDULE A - APPROVED CRISIS MGMT FIRMS | 83687 | (12/03) |
| 5 | PRIME MISCELLANEOUS CHANGES ENDORSEMENT | 83864 | (02/04) |
| 6 | ECONOMIC OR TRADE SANCTIONS COND. ENDT | 87068 | (11/04) |
| 7 | VIOL. OF INFO. OR COMM. LAW EXCL. ENDT. | 87241 | (12/04) |
| 8 | CA. CANCEL AND NONRENEWAL AMEND. ENDT. | 81589 | (10/04) |
| 9 | DUTIES IN THE EVENT OF AN OCC. CLAIM OR SUIT | 86456 | (08/04) |
| 10 | ADDITIONAL NAMED INSUREDS | MNSCPT | (08/07) |
| 11 | ACT OF TERRORISM SIR ENDORSEMENT | 83049 | (03/06) |
| 12 | KNOWLEDGE OF OCCURRENCE | MNSCPT | (07/07) |
| 13 | NOTICE OF OCCURRENCE | 80454 | (07/02) |
| 14 | MANUFACTURE OF DRUGS EXCLUSION | MNSCPT | (07/07) |
| 15 | JOINT VENTURE LMT.END SCALED LMT.SCALED ATT.W FINA | 89467 | (06/05) |
| 16 | NEW AQUISITION ENDORSEMENT | MNSCPT | (07/07) |
| 17 | FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT | 80432 | (07/02) |
| 18 | NAMED PERIL AND TIME ELEMENT POLL. SIR END. PCOH V | 89470 | (06/05) |
| 19 | ARBITRATION COND END (EXCL Q, DOMICILE ST.) | 82425 | (06/03) |
| 20 | SPECIFIED PRODUCTS EXCL | 83097 | (09/03) |
| 21 | SIR APP TO SPEC.COV.AFTR. UNDER. LMT.ARE RED.OR EX | 87233 | (12/04) |
| 22 | EMPL. LIAB. STOP GAP COV. LIMIT. ENDT. | 82616 | (06/04) |
| 23 | UNINSURED UNDERINSURED MOTORIST COVERAGE END. | 82610 | (06/05) |
| 24 | NON-CONCURRENCY END'T | 81581 | (02/03) |
| 25 | AMDT. OF CONTRACTUAL LIAB. EXCL. ENDT. | 86454 | (08/04) |
| 26 | AMEND.OF VARIOUS PER.INJ.AND ADV.INJ.EXCL.END.AMEN | 89452 | (06/05) |

*Archive Copy*

**AIG** AMERICAN INTERNATIONAL COMPANIES®

## Umbrella Prime®
## Commercial Umbrella Liability Policy With CrisisResponse®

### DECLARATIONS

The company issuing this policy is indicated by an "X" in the box to the left of the company's name.

| | | | |
|---|---|---|---|
| ☐ | AIG Casualty Company | ☐ | Granite State Insurance Company |
| ☐ | AIU Insurance Company | ☐ | Illinois National Insurance Company |
| ☐ | American Home Assurance Company | ☐ | National Union Fire Insurance Company of Louisiana |
| ☐ | American International Pacific Insurance Company | ☒ | National Union Fire Insurance Company of Pittsburgh, Pa. |
| ☐ | American International South Insurance Company | ☐ | New Hampshire Insurance Company |
| ☐ | Commerce & Industry Insurance Company | ☐ | The Insurance Company of the State of Pennsylvania |

(each of the above being a capital stock company)

**Executive Offices: 70 Pine Street, New York, NY 10270**
**Telephone No. 212-770-7000**

---

**POLICY NUMBER:** 9835034       **RENEWAL OF:** 4485490

**ITEM 1. NAMED INSURED:** MCKESSON CORPORATION

**MAILING ADDRESS:** ONE POST STREET
SAN FRANCISCO, CA 94104

**ITEM 2. POLICY PERIOD: FROM:** July 1, 2007       **TO:** July 1, 2008
(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)

**ITEM 3. LIMITS OF INSURANCE**

The Limits of Insurance, subject to the terms of this policy, are:

A. $45,000,000 **Each Occurrence**
B. $45,000,000 **General Aggregate** (in accordance with Section IV. Limits of Insurance)
C. $45,000,000 **Products-Completed Operations Aggregate** (in accordance with Section IV. Limits of Insurance)
D. $250,000 **CrisisResponse Sublimit of Insurance**
E. $50,000 **Excess Casualty CrisisFund Limit of Insurance**

**ITEM 4. SCHEDULED UNDERLYING INSURANCE -**

**ITEM 5. SELF-INSURED RETENTION -** $25,000       Each Occurrence

**ITEM 6. PREMIUM AND PREMIUM COMPUTATION**

| | |
|---|---|
| ESTIMATED TOTAL ANNUAL EXPOSURE | N/A |
| RATES PER | FLAT |
| MINIMUM PREMIUM | $1,028,830.00 |
| ADVANCE PREMIUM | $1,028,830.00 |

**ITEM 7. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: SEE ATTACHED SCHEDULE**

**PRODUCER NAME:** MARSH USA, INC.
**ADDRESS:** ONE CALIFORNIA STREET, 5TH FLOOR
SAN FRANCISCO, CA 94111

_____   _____
**Authorized Representative or**       **Date**
**Countersignature (Where Applicable)**

80518 (10/04)       **Issue Date:** 08/07/07
AH0876

*Archive Copy*

## Umbrella Prime®
## Commercial Umbrella Liability Policy With CrisisResponse®

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII. Definitions.

Except for headings, words that appear in bold print have special meaning.  See Section VII. Definitions.

In consideration of the  payment of the premium and in reliance upon the statements in the Declarations, we agree  to provide coverage as follows:

---

| I. | INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY |
|---|---|

A. We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B. This policy applies, only if:

1. the **Bodily Injury** or **Property Damage** is caused by an  **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2. the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C. This policy applies to **Bodily Injury**, **Property Damage**, and **Personal Injury and Advertising Injury** only if prior to the **Policy Period**, no **Insured** shown in Paragraph M2 of Section VII, no officer, no manager in your risk management, insurance or legal department and no employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part, or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**.  If such an **Insured**, manager or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred or that an **Occurrence** had been committed that caused **Personal Injury and Advertising Injury**, then any continuation, change or resumption of such **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

D. **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** will be deemed to have been known to have occurred at the earliest time when any **Insured** shown under Paragraph M2 of Section VII, any manager in your risk management, insurance or legal department or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

1. reports all, or any part, of the **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to us or any other insurer;

2. receives a written or verbal demand or claim for damages because of the **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**; or

*Archive Copy*  © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur or an **Occurrence** has been committed that has caused or may cause **Personal Injury and Advertising Injury**.

E. Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F. If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

## II. INSURING AGREEMENT - CRISISRESPONSE ® AND EXCESS CASUALTY CRISISFUND ®

A. **CrisisResponse**

We will advance **CrisisResponse Costs** directly to third parties on behalf of the **Named Insured**, regardless of fault, arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **CrisisResponse Sublimit of Insurance**.

B. **Excess Casualty CrisisFund**

We will pay **Crisis Management Loss** on behalf of the **Named Insured** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Excess Casualty CrisisFund Limit of Insurance**.

C. A **Crisis Management Event** will first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and will end when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

D. There will be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**.

E. Any advancement of **CrisisResponse Costs** or payment of **Crisis Management Loss** that we make under the coverage provided by this Section II will not be a determination of our obligations under this policy, nor create any duty to defend any **Suit** under any other part of this policy.

## III. DEFENSE PROVISIONS

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** have been exhausted by payment of **Loss** to which this policy applies; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

80517 (10/04)
AH0877
Page 2 of 23
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
*Archive Copy*

1. investigate, negotiate and settle the **Suit** as we deem expedient; and

2. pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

   a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds required by law to appeal a judgement in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   c. all court costs taxed against the **Insured** in the **Suit**;

   d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

   e. post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

   f. the **Insured's** expenses incurred at our request or with our consent.

D. Except as provided in Paragraph A above, we will have no duty to defend any **Suit** against the **Insured.** We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

E. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

---

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

   1. **Insureds**;

   2. claims made or **Suits** brought;

   3. persons or organizations making claims or bringing **Suits**; or

   4. coverages provided under this policy.

B. The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under this policy, except for:

   1. damages included within the **Products-Completed Operations Hazard**; and

   2. damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

C. The Products-Completed Operations Aggregate Limit stated in Item 3C of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D. Subject to Paragraphs B and C above, the Each Occurrence Limit stated in Item 3A of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence**.

E. Subject to Paragraphs B and C above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3 of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

F. This policy applies only in excess of the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** whether or not such limits are collectible. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

   1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

   2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G. If the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

   1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

   2. in the event of exhaustion, continue in force as underlying insurance.

H. Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance**, then such expenses will reduce the applicable Limits of Insurance of this policy.

I. The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **CrisisResponse Sublimit of Insurance** will be part of, not in addition to, the applicable Limit of Insurance.

J. The **Excess Casualty CrisisFund Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **Excess Casualty CrisisFund Limit of Insurance** will be in addition to the applicable Limit of Insurance.

K. We will have no obligation to advance **CrisisResponse Costs** when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

L. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M. We will not make any payment under this policy unless and until:

   1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** have been exhausted by the payment of **Loss** to which this policy applies; or

   2. the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

## V.  EXCLUSIONS

### A.  Aircraft and Watercraft

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**.  Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that is:

1.  less than 26 feet long; and

2.  not being used to carry persons or property for a charge.

### B.  Asbestos

This insurance does not apply to any liability arising out of:

1.  the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2.  any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

### C.  Contractual Liability

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1.  that the **Insured** would have in the absence of a contract or agreement; or

2.  assumed in an **Insured Contract**, provided the **Bodily Injury** or **Property Damage** occurs subsequent to the execution and prior to the termination of the **Insured Contract**.  Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

    a.  liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

    b.  such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

### D.  Damage to Impaired Property or Property Not Physically Injured

This insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.  a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.  a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

### E.  Damage to Property

This insurance does not apply to **Property Damage** to:

1.  property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

3.  property loaned to you;

4.  personal property in the care, custody or control of the **Insured**;

5.  that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6.  that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2 of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

### F.  Damage to Your Product

This insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

### G.  Damage to Your Work

This insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### H.  Electronic Chatrooms or Bulletin Boards

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.

*Archive Copy*  © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

I.   **Employees and Volunteers**

This insurance does not apply to liability of any employee or volunteer qualifying as an **Insured** under this policy arising out of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**:

1.   to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2.   to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1 above;

3.   for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1 or 2 above; or

4.   arising out of his or her providing or failing to provide professional health care services.

J.   **Employment Practices**

This insurance does not apply to any liability arising out of:

1.   failure to hire any prospective employee or any applicant for employment;

2.   dismisal, discharge or termination of any employee;

3.   failure to promote or advance any employee; or

4.   employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

   a.   coercion, harassment, humiliation or discrimination;
   b.   demotion, evaluation, reassignment, discipline, or retaliation;
   c.   libel, slander, humiliation, defamation, or invasion of privacy; or
   d.   violation of civil rights.

This exclusion applies:

1.   whether the **Insured** may be liable as an employer or in any other capacity; and

2.   to any obligation to share damages with or repay someone else who must pay damages because of the injury.

K.   **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** expected or intended from the standpoint of the **Insured**.  However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

L.   **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

M.  **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply only if:

1. you are not in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages; and

2. coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance.**

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

N. **Media and Internet Type Businesses**

This insurance does not apply to **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1. advertising, broadcasting, publishing or telecasting;

2. designing or determining content of web-sites for others; or

3. an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1, U2 and U3 of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

O. **"No-Fault," "Uninsured Motorist"** or **"Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P. **Nuclear Liability**

This insurance does not apply to:

1. any liability:

    a. with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

    b. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

c.  resulting from the hazardous properties of nuclear material if:

    i)  the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

    ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

    iii)  the injury or damage arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility.

2.  As used in this exclusion:

a.  "hazardous properties" includes radioactive, toxic or explosive properties;

b.  "nuclear material" means source material, special nuclear material or by-product material;

c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto;

d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by  any person or organization of a nuclear facility included within the definition of nuclear facility below;

f.  "nuclear facility" means:

    i)  any nuclear reactor;

    ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

    iii)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

    includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g.  "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.  **Property Damage** includes all forms of radioactive contamination of property.

Q.  **Pollution**

This insurance does not apply to:

1.  Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1) **Products-Completed Operations Hazard**

Paragraph 1 of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

a) discarded, dumped, abandoned, thrown away; or

b) transported, handled, stored, treated, disposed of or processed as waste;

by anyone.

2) **Hostile Fire**

Paragraph 1 of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3) **Equipment to Heat the Building and Contractor/Lessee Operations**

Paragraph 1 of this exclusion does not apply to:

a) **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat the building; or

b) **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

Paragraph 1 of this exclusion does not apply to:

a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto**

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Paragraph 1 of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1 of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

R. **Recall of Your Product, Your Work or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product**;

2. **Your Work**; or

3. **Impaired Property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. **Securities**

This insurance does not apply to any liability arising out of:

1. any violation of any securities law or similar law or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

T. **Unauthorized Use of Another's Name or Product**

Archive Copy © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

U. **Various Personal Injury and Advertising Injury**

This insurance does not apply to **Personal Injury and Advertising Injury**:

1. caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2. arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3. arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the **Policy Period**;

4. arising out of a criminal act committed by or at the direction of the **Insured**;

5. for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6. arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7. arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or

8. arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

V. **Various Laws**

This insurance does not apply to any obligation of the **Insured** under any of the following:

1. the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2. any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

W. **War**

This insurance does not apply to any liability arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

---

## VI. CONDITIONS

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B. **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

C.  **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy.  But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D.  **Cancellation**

1.  You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy.  If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.  The **Policy Period** will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6 of the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium.  Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.  The first **Named Insured** in Item 1 of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E.  **Change In Control**

If during the **Policy Period**:

1.  the first **Named Insured** designated in Item 1 of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2.  any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1 of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction.  There will be no coverage afforded by this policy for **Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

### F.  Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy.  This policy can be changed only by a written endorsement that we make to this policy.

### G.  Duties in the Event of an Occurrence, Claim or Suit

1.  You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy.  To the extent possible, notice should include:

    a.  how, when and where the **Occurrence** took place;

    b.  the names and addresses of any injured persons and any witnesses; and

    c.  the nature and location of any injury or damage arising out of the **Occurrence**.

2.  If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

    Written notice should be mailed or delivered to:

    > AIG Technical Services, Inc.
    > Excess Casualty Claims Department
    > 175 Water Street
    > New York, NY  10038

3.  You and any other involved **Insured** must:

    a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

    b.  authorize us to obtain records and other information;

    c.  cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

    d.  assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.  No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

### H.  Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

### I.  Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time.  Our inspections are not safety inspections.  They relate only to the insurability of your premises and operations and the premiums to be charged.  We may give you reports on the conditions that we find.  We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public.  We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

### J.  Legal Actions Against Us

No person or organization has a right under this policy:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1.  to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2.  to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

K.  **Maintenance of Scheduled Underlying Insurance**

You agree that during the **Policy Period**:

1.  you will keep **Scheduled Underlying Insurance** in full force and effect;

2.  the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3.  the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss** to which this policy applies; and

4.  any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L.  **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**.  However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M.  **Premium**

The first **Named Insured** designated in Item 1 of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6 of the Declarations.  At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 6 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force.  If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium.  If the earned premium is greater than the Advance Premium, you will promptly pay us the difference.  If the earned premium is less than the Advance Premium, we will return the difference to you.  But in any event, we will retain the Minimum Premium as shown in Item 6 of the Declarations for each twelve months of the **Policy Period**.

N.  **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1.  as if each **Named Insured** were the only **Named Insured**; and

2.  separately to each **Insured** against whom claim is made or **Suit** is brought.

O.  **Transfer of Rights of Recovery**

*Archive Copy*  
© 2001 American International Group, Inc.  
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2. Any recoveries will be applied as follows:

   a. any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b. we then will be reimbursed up to the amount we have paid; and

   c. lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3. If, prior to the time of an **Occurrence**, you and the insurer of **Scheduled Underlying Insurance** waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization.

### P.  Transfer of Your Rights and Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative.  However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

### Q.  Unintentional Failure to Disclose

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

---

## VII.  DEFINITIONS

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

   1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

   2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death or mental anguish resulting from any of these at any time.

D. **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

   1. damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. significant adverse regional or national media coverage.

**Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E. **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event**.

F. **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

1. amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

2. amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

G. **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

H. **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1. medical expenses;

2. funeral expenses;

3. psychological counseling;

4. travel expenses;

5. temporary living expenses;

6. expenses to secure the scene of a **Crisis Management Event**; and

7. any other expenses pre-approved by the Company.

**CrisisResponse Costs** does not include defense costs or **Crisis Management Loss**.

I. **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 3D of the Declarations.

J. **Excess Casualty CrisisFund Limit of Insurance** means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K. **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L. **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

*Archive Copy*                           © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2. your fulfilling the terms of the contract or agreement.

M. **Insured** means:

1. the **Named Insured**;

2. if you are designated in the declarations as:

   a. an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

   b. a partnership or joint venture, you are an insured. Your members and your partners are also insureds, but only with respect to the conduct of your business;

   c. a limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers;

   d. an organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders;

   e. a trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees;

3. your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4. your volunteer workers only while performing duties related to the conduct of your business;

5. any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6. your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7. any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.

Notwithstanding any of the above:

   a. no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

   b. no person or organization is an **Insured** under this policy who is not an **Insured** under **Scheduled Underlying Insurance**.

N. **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2 above and supervisory, inspection, architectural or engineering activities.

O. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

P. **Loss** means those sums actually paid as judgments or settlements.

Q. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in Paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in Paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

   a. equipment designed primarily for:

      i) snow removal;

      ii) road maintenance, but not construction or resurfacing; or

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

        iii)  street cleaning;

    b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

R.  **Named Insured** means:

1.  any person or organization designated in Item 1 of the Declarations;

2.  any organization in which you maintain an interest of more than fifty percent (50%) and which is included as a named insured under **Scheduled Underlying Insurance**, as of the effective date of this policy and to which more specific insurance does not apply, provided that this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.  any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

    a.  such organization is included as a named insured under **Scheduled Underlying Insurance**;

    b.  this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    c.  you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a, 3b and 3c above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

S.  **Occurrence** means:

1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T.  **Other Insurance** means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U. **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4. oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5. oral or written publication, in any manner, of material that violates a person's right of privacy;

6. the use of another's advertising idea in your **Advertisement**; or

7. infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

V. **Policy Period** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of termination of this policy.

W. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

X. **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1. products that are still in your physical possession; or

2. work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

   a. when all of the work called for in your contract has been completed;

   b. when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

Y. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z. **Retained Limit** means:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2. the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA. **Scheduled Underlying Insurance** means:

1. the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1 above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB. **Self-Insured Retention** means the amount that is shown in Item 5 of the Declarations.

CC. **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged.  **Suit** includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD. **Your Product** means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**EE. Your Work** means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2. the providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives.

By signing below, the President and Secretary of the Company agree on our behalf to all the terms of this policy.

_____     _____
Secretary                                 President

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.

_____
Authorized Representative

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurers direct earned premiums for the year preceeding the Act of Terrorism.

Coverage for Acts of Terrorism for losses is already included in your current policy. The portion of your annual premium that is attributable to coverage for Acts of Terrorism covered by the Act is $10,186.00.

MCKESSON CORPORATION
Insured Name

9835034
Policy #

0030
Division #

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A.
Insurance Carrier

WITHOUT EXCLUSION BUT WITH CHARGE
81249 (3/03)
AH0992       *Archive Copy*

**ENDORSEMENT NO.** 1

**This endorsement, effective 12:01 AM:**   July 1, 2007

**Forms a part of policy no.:**        9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | INSURER POLICY TERM | LIMITS OF LIABILITY |
|---|---|---|
| Automobile Liability | Old Republic 7/1/07 - 08 | $1,000,000 Combined Single Limit Defense costs are in addition to the Limit |
| Automobile Liability (Canada) | Old Republic 7/1/07 - 08 | $1,000,000 Combined Single Limit Defense costs are in addition to the Limit |
| Employers Liability | Old Republic 7/1/07 - 08 | $5,000,000 Each Accident $5,000,000 Disease Each Employee $5,000,000 Policy Limit Defense costs are in addition to the Limit and will not erode the limit or Aggregate |
| Employers Liability Self Insured States | Old Republic 7/1/07 - 08 | $1,900,000 Each Accident EXCESS of $100,000 Self Insured Retention Defense costs are in addition to the S.I.R. & policy limit and will not erode The S.I.R. or the policy limit |

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

| Foreign General Liability & Products Completed Operations | Insurance Co. of the State of PA. 7/1/07 - 08 | $1,000,000 Each Occurrence $1,000,000 Personal & Advertising Injury $2,000,000 General Aggregate $2,000,000 Products/Completed Operations Aggregate $4,000,000 Policy Aggregate Defense costs are in addition to Policy limit and will not erode the Policy limit or aggregate |
|---|---|---|
| Foreign Employee Benefits Liability | Insurance Co. of the State of PA. 7/1/07 - 08 | $1,000,000 Each Claim $1,000,000 Aggregate Defense costs are in addition to the Policy limit and will not erode the Policy limit or aggregate |
| Foreign Automobile Liability | Insurance Co. of the State of PA 7/1/07 - 08 | $1,000,000 Combined Single Limit Defense costs are in addition to the Limit |
| Foreign Employers Liability | Insurance Co. of the State of PA 7/1/07 - 08 | $1,000,000 Each Accident $1,000,000 Disease Each Employee $1,000,000 Policy Limit Defense costs are in addition to the Limit and will not erode the limit or Aggregate |
| U.K. Employers Liability | Insurance Co. of the State of PA | 10,000,000 Pounds Each Occurrence Defense costs are in addition to the Limit |

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

**ENDORSEMENT No. 2**

**This endorsement, effective 12:01 AM:** July 1, 2007

**Forms a part of policy no:** 9835034

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Retained Limit Amendatory Endorsement**

This policy is amended as follows:

Solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

1. The **DECLARATIONS, ITEM 5. SELF INSURED RETENTION** is deleted in its entirety.

2. **Section IV. LIMITS OF INSURANCE**, Paragraphs B., G., H. and M. are deleted in their entireties and replaced by the following:

   B. The General Aggregate Limit is the most we will pay for all damages covered under this policy except:

      1. Damages included within the **Products-Completed Operations Hazard**; and

      2. Damages because of **Bodily Injury** or **Property Damage** to which this insurance applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto**.

   G. If the total applicable Retained Limit(s) listed in the Schedule of Retained Limits are reduced or exhausted by payment of Loss to which this policy applies, we will:

      1. in the event of reduction, pay in excess of the remaining underlying **Retained Limits**; or

      2. in the event of exhaustion of the underlying **Retained Limits**, continue in force as underlying insurance.

   H. **Defense Expenses** will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if the amount of applicable **Retained Limit** over which this policy applies immediately in excess is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then solely with respect to coverage afforded by this policy that is subject to such Retained Limit, such **Defense Expenses** will reduce the applicable Limits of Insurance of this policy.

   M. We will not make any payment under this policy unless and until the total applicable **Retained Limit(s)** and any applicable **Other Insurance** have been exhausted by the payment of **Loss** to which this policy applies.

      When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

3. **Section III. DEFENSE PROVISIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

   **III. DEFENSE PROVISIONS**

81583 (12/04)
AH1456

**Archive Copy**

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of **Loss** to which this policy applies.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

4. **Section V. EXCLUSIONS**, Paragraphs I. and M. are deleted in their entireties, unless amended by separate endorsement to provide otherwise.

5. **Section V. EXCLUSIONS**, Paragraph Q. is amended as follows:

The last two sentences of Paragraph Q. are deleted and the clause "However, Paragraph 1 of this exclusion will not apply if coverage for such Bodily Injury or Property Damage as is described in subparagraphs 1) through 6) below is provided by Scheduled Underlying Insurance:", is deleted in its entirety and replaced by the following:

However, this exclusion will not apply as described in subparagraphs 1) through 6) below:

provided, however, that the above amendments to **Section V. EXCLUSIONS,** Paragraph Q., do not apply if a separate endorsement attached to this policy deletes and replaces **Section V. EXCLUSIONS**, Paragraph Q.

6. **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** mean payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or **Suit,** including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**; and

6. Interest that accrues after entry of judgment.

7. **Section VII. DEFINITIONS**, Paragraph D., subparagraph 1. is deleted and replaced by the following:

1. damages covered by this policy that are in excess of the **Retained Limit**; and

8. **Section VII. DEFINITIONS**, Paragraph M. is amended to include the following additional subparagraph:

8. Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations, including **Your Work** and **Your Product**, or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

a. The coverages and Limits of Insurance of this policy, or

b. The coverage and Limits of Insurance required by said contract or agreement.

However, no such person or organization is an **Insured** by virtue of this provision 8. of this Paragraph M. of Section VII. if such person or organization is a partnership, joint venture or limited liability company of which the **Named Insured** is a partner or member, or is a partner or member of such partnership, joint venture or limited liability company.

**Archive Copy**

9.  **Section VII. DEFINITIONS**, the phrase "Notwithstanding any of the above:" and subparagraphs a. and b. thereunder appearing at the end of Paragraph M. are deleted in their entireties and replaced by the following:

Notwithstanding any of the above provisions 1. through 7. of this Paragraph M. of Section VII., no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations.

10. **Section VII. DEFINITIONS**, Paragraph P. is deleted in its entirety and replaced by the following:

P.  **Loss** means those sums actually paid as judgments or settlements, provided, however, that if the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then **Loss** shall include such **Defense Expenses**.

11. **Section VII. DEFINITIONS**, Paragraph R. is deleted in its entirety and replaced by the following:

R.  **Named Insured** means:

1.  any person or organization designated in Item 1 of the Declarations;

2.  as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.  after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

a.  coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

b.  you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

12. **Section VII. DEFINITIONS**, Paragraph Z. is deleted in its entirety and replaced by the following:

Z.  **Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

The **Retained Limit(s)** listed in the Schedule of Retained Limits will apply whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

a.  If the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit**.

**Archive Copy**

    b.  If the applicable **Retained Limit** is not specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall not reduce the **Retained Limit.**

13.  **Section VI. CONDITIONS,** Paragraphs A. and C. are deleted in their entireties and replaced by the following:

   A.  **Appeals**

     If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable **Retained Limit(s)**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

   C.  **Bankruptcy or Insolvency**

     Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy.  But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation within a **Retained Limit**.

14.  If another endorsement attached to this policy states specifically that the provisions therein supercede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

All other terms, definitions, conditions and exclusions remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

*Archive Copy*

## Schedule of Retained Limits

| Coverage(s) | Retained Limit(s) | |
|---|---|---|
| General Liability | $5,000,000<br>$5,000,000<br>$7,500,000 | Each Occurrence<br>Personal & Advertising Injury<br>General Aggregate<br>Defense costs are included in the retained limit and will erode the aggregate |
| General Liability<br>(West Seneca, NY Location) | $1,000,000<br>$1,000,000<br>$2,000,000 | Each Occurrence<br>Personal & Advertising Injury<br>General Aggregate<br>Defense costs are included in the retained limit |
| Products/Completed Operations | $5,000,000 | Each Occurrence<br>Defense costs are included in the retained limit |
| Excess Automobile Liability | $4,000,000<br>Excess of<br>$1,000,000 | Combined Single Limit<br><br>Combined Single Limit<br>Defense costs are in addition to the retained limit |
| Medical Professional  (Druggust) Liability | $25,000,000<br><br>$25,000,000<br>Excess of:<br>$1,000,000 | Each Occurrence or Wrongful Act<br>Aggregate<br><br>Self Insured Retention<br>No Aggregate<br><br>Defense costs are included in the Retained Limit Including the Self Insured Retention & will erode the S.I.R. Retention & the Aggregate |

**ENDORSEMENT NO.**3

**This endorsement, effective 12:01 AM:**  July 1, 2007

**Forms a part of policy no.:**          9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**®

**Druggist Professional Services Liability Endorsement
(Claims Made Coverage)**

**NOTICE: THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.  COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO  US WHILE THE COVERAGE IS IN FORCE.  PLEASE REVIEW THE ENDORSEMENT CAREFULLY AND DISCUSS  THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**TO THE EXTENT  ANY  PROVISION  OF  THE  POLICY  TO  WHICH  THIS  ENDORSEMENT  IS ATTACHED OR ANY  OF  THE  POLICY'S  OTHER  ENDORSEMENTS  CONFLICT  WITH  THE PROVISIONS  OF  THIS  ENDORSEMENT,  THE  PROVISIONS  OF  THIS  ENDORSEMENT  SHALL SUPERSEDE.**

Solely as respects any **Claim** seeking damages for **Bodily  Injury** or **Property Damage** arising out of a **Wrongful Act**  that  occurs in  the  **Insured's** performance  of  **Druggists Professional  Services**,  this policy is amended as follows:

The **DECLARATIONS, ITEM 2.** is amended to include the following:

   Item 2a.       **RETROACTIVE DATE:** <u>September 14, 1988</u>

   Item 2b.       **CONTINUITY DATE:**          <u>July 1, 2004</u>

**Section I.   INSURING AGREEMENT** - **COMMERCIAL  UMBRELLA LIABILITY** is  amended to  include the following additional provisions:

   A. We  will pay on  behalf of  the **Insured** those  sums in excess  of  the **Retained  Limit** that the **Insured** becomes legally obligated  to pay as damages  by reason of liability  imposed by law because of **Bodily Injury** or **Property Damage** to which this insurance applies.

   B. This policy applies, only if:

      1. the **Bodily Injury** or **Property Damage**  is caused  by an  **Wrongful Act**  that takes  place anywhere in the world, and the **Bodily  Injury** or **Property Damage** occurs on or  after the

*Archive Copy*

Retroactive Date and prior to the end of the **Policy Period,** and

    2.  a **Claim** for damages because of such **Bodily Injury** or **Property Damage** is first made in writing against any **Insured** in accordance with Paragraph C. below during the **Policy Period** or any Extended Reporting Period we provide and written notice is received by us during the **Policy Period** or Extended Reporting Period (if applicable).

C.    A **Claim** by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

    1.  When notice of such **Claim** is received and recorded by any **Insured** in writing and reported to us during the Policy Period or any applicable extended reporting period, or

    2.  When we make settlement in accordance with Paragraph A. above.

All **Claims** for damages because of **Bodily Injury** to the same person, including damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**, will be deemed to have been made at the time the first of those **Claims** is made against any **Insured**.

All **Claims** for damages because of **Property Damage** causing **Loss** to the same person or organization will be deemed to have been made at the time the first of those **Claims** is made against the **Insured**.

D.    Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

E.    If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

**Section V. EXCLUSIONS** is amended to include the following additional exclusions:

**Financial Loss**

This insurance will not apply to claims alleging or arising out of financial loss, loss of profits, inadequate value, diminution in value, or out-of-pocket expenses.

**Willful Violation of Statute or Ordinance**

This insurance will not apply to **Bodily Injury** or **Property Damage** caused by the willful violation of a penal statute or ordinance relating to the sale of pharmaceuticals by or with the knowledge or consent of any **Insured**.

**Prior Knowledge**

This insurance does not apply to any **Claim** alleging or arising out of a **Wrongful Act** committed on or after the Retroactive Date shown above, if any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or

*Archive Copy*

**ENDORSEMENT NO.** 3 (Continued)

director listed  under subparagraph  2d. of  Paragraph  M. of  Section VII.  or  any employee authorized by you to  give or receive  notice of a **Wrongful  Act ,** knew  as of the Continuity Date that such **Wrongful Act**  could result in a **Claim.**

### Continuous or Related Acts

This insurance does not apply to any **Claim** alleging or arising out the  same **Wrongful Act** or series of continuous, repeated or related **Wrongful Acts** or alleging the same or similar facts, alleged or contained in any  **Claim** which has been reported,  or any **Wrongful Act**  of which notice has been  given, under any  policy of which  this policy  is a renewal,  replacement or succeeds in time.

### Pending or Prior Litigation

This insurance does not apply  to any **Claim** that  is prior to or  pending as of the  Continuity Date, or any **Claim** arising out of or relating to any fact, circumstance, situation  or **Wrongful Act**  alleged in such prior or pending **Claim**.

**Section VI. Conditions** is amended to include the following additional conditions:

**Automatic Extended Reporting Period**

If we  or  the  **Named Insured**  cancel, refuse  to renew  or  replace  this policy  (hereinafter "cancel or non-renew"), the  **Named Insured** will  have the right following  the effective date of such cancellation or non-renewal to a period  of thirty (30) days (herein referred to as  the Automatic Extended Reporting Period)  in which to  give written notice to  us of **Claims**  first made against  you during  the  Automatic Extended  Reporting  Period for  any **Bodily  Injury** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The Automatic Extended  Reporting Period will  not apply  to **Claims** that  are covered under any subsequent insurance you  purchase or is purchased  for your benefit, or  that would be covered but for  the exhaustion  of the  Limits of  Insurance applicable  to  such **Claims**  or is within any applicable retained amount.

The Automatic  Extended  Reporting  Period does  not  reinstate or increase  the  Limits  of Insurance or extend the **Policy Period**.

**Optional Extended Reporting Period**

If we  or  the  **Named  Insured** will  cancel or  non-renew this  policy, the  **Named  Insured** will have the  right,  upon  payment of  an  additional  premium of  up  to  two hundred  percent (200%) of the full annual  premium, to a period  of one (1) year following  the effective date of such cancellation or  non-renewal (herein referred  to as the  Optional Extended Reporting Period) in which  to give  written notice  to us of  **Claims** first  made against  you during  the Optional Extended Reporting  Period for any  **Bodily Injury**  occurring prior to  the end of  the **Policy Period** and otherwise covered by this policy.

As used herein, "full  annual premium" means the  premium level in effect  immediately prior

*Archive Copy*

**ENDORSEMENT NO.** 3 (Continued)

to the end of the **Policy Period**.

The rights contained in this clause will terminate unless the **Named Insured** provides written notice of such election together with the additional premium due to us within thirty (30) days of the effective date of cancellation or non-renewal. The additional premium for the Optional Extended Reporting Period will be deemed fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable. This clause and the rights contained herein will not apply to any cancellation resulting from non-payment of premium. Our offer of renewal terms, conditions, limits of insurance or premiums different from those of the expiring policy will not constitute a non-renewal.

The aggregate limit of insurance for any Extended Reporting Period will be part of, and not in addition to, the Aggregate Limit of Insurance for the **Policy Period**. The Optional Extended Reporting Period shall not reinstate or increase the Limits of Insurance or extend the Policy Period.

If the **Named Insured** exercises its right purchase an Optional Extended Reporting Period, the Automatic Extended Reporting Period will not apply.

For purpose on this endorsement only, **Section VI. Conditions,** Paragraph G. **Duties in the Event of an Occurrence, Claim or Suit** is deleted in its entirety and replaced by the following::

**G.      Duties in the Event of a Wrongful Act, Claim or Suit**

1.      You must see to it that we are notified as soon as practicable of a **Wrongful Act** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

a. how, when and where the **Wrongful Act** took place,

b. the names and addresses of any injured persons and any witnesses, and

c.      the nature and location of any injury or damage arising out of the **Wrongful Act.**

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Claim** means a demand for money or **Suit.**

**Compounding** means the preparation, mixing, assembling, packaging, or labeling of a drug, radiopharmaceutical, or device (i) as the result of a practitioner's prescription drug order or initiative based on the practitioner/patient/pharmacist relationship in the course of professional practice, or (ii) for the purpose of, or as an incident to, research, teaching or chemical analysis and not for sale or dispensing, the preparation of drugs or devices in anticipation of prescription drug orders based on routine, regularly observed prescribing patterns, other practices as are approved as a part of the practice of pharmacy by the Board of Pharmacy in the state in which the **Insured** practices.

*Archive Copy*

**ENDORSEMENT NO. 3** (Continued)

**Druggist Professional Services** means:

(1)    the interpretation, evaluation and dispensing of prescription orders,

(2)    participation in drug and device selection (including, where permitted by state or federal law, prescribing by protocol, agreement or collaborative practice or the prescribing of legally recognized pharmacist-class of drugs or devices),

(3)    drug administration including immunization, where permitted by state law by the **Insured** as a pharmacist,

(4)    drug regimen reviews,

(5)    medication consulting, and those acts or services necessary to provide pharmaceutical care,

(6)    **Compounding**, selling, handling and distribution of drugs, radiopharmaceuticals, medicine, devices, other goods or products and their container from any pharmacy or drug store (except labeling by a manufacturer, re-packager, or distributor of non-prescription drugs and commercially packaged legend drugs and devices),

(7)    proper and safe storage of drugs and devices,

(8)    maintenance of proper records for drugs and devices,

(9)    all other services of a professional nature usually and customarily performed by a registered pharmacist or qualified pharmacy intern or pharmacy technician,

(10)    services of a nuclear pharmacist and nuclear pharmacy technician.

**Wrongful Act** means any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by the **Insured** in the performance of **Druggist Professional Services.**

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT No. 4

**This endorsement, effective 12:01 AM:**  July 1, 2007

**Forms a part of policy no:**  9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Duties in the Event of an Occurrence, Claim or Suit and**
**Schedule A - Approved Crisis Management Firms**

Solely as respects coverage provided by **Section II INSURING AGREEMENT - CRISISRESPONSE**[SM] **AND EXCESS CASUALTY CRISIS FUND®**, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** or as soon as practicable to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100.  If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1.  how, when and where the **Crisis Management Event** is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

AIG Technical Services, Inc.
Excess Casualty Claim Department
175 Water Street
New York, NY  10038

83687 (12/03)  
AH1276  
***Archive Copy***

## SCHEDULE A

### APPROVED CRISIS MANAGEMENT FIRMS

The following firms are approved **Crisis Management Firms**:

**Crisis Communications Management Firms:**

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

**Abernathy MacGregor Group**

| | | |
|---|---|---|
| New York Office<br>501 Madison Avenue<br>New York, NY 10022<br><br>ww.abmac.com | James T. MacGregor<br>Tel. (212) 371-5999<br>Cell (212) 593-1845<br>jtm@abmac.com | Emergency Only<br><br>Tel. (212) 343-0818<br>Cell (917) 449-9964 |
| | Rhonda Barnat, Managing Director<br>Tel. (212) 371-5999<br>Cell (212) 593-1845<br>rb@abmac.com | Emergency Only<br><br>Cell (917) 912-6378 |
| Los Angeles Office<br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel. (213) 630-6550<br>Cell (213) 489-3443<br>idc@abmac.com | Emergency Only<br><br>Tel. (818) 957-5650<br>Cell (917) 940-3476 |

**Citigate Sard Verbinnen**

| | | |
|---|---|---|
| New York Office<br>630 Third Avenue<br>New York, NY 10017<br><br>www.sardverb.com | George Sard<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br>gsard@sardverb.com | Emergency Only<br><br>Contact switchboard @<br>(212) 687-8080 |
| | Paul Verbinnen<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br>pv@sardverb.com | |

**Hill and Knowlton**

| | | |
|---|---|---|
| New York Office<br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017<br>www.hillandknowlton.com | Richard C. Hyde<br>Tel. (212) 885-0372<br>Cell (917) 816-2208<br>Fax: (212) 885-0570<br>dhyde@hillandknowlton.com | Emergency Only<br><br>H&K Crisis Pager<br>(888) 264-5193<br>24 Hours/7 Days |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

**Hill and Knowlton Continued**

Arthur Forster
Tel. (212) 885-0442
Pager: 888-614-8692
Fax: (212) 885-0570
aforster@hillandknowlton.com

**Lexicon Communications Corp.**

Los Angeles Office
9200 Sunset Blvd.
Suite 1203
Los Angeles, CA 90069
www.crisismanagement.com

Steven B. Fink
Tel. (213) 346-1212
Cell (626) 253-1519
sfink.lexiconcorp.com

Emergency Only

Contact switchboard at
(213) 346-1200,ext. 225

**PR21 (A Division of Edelman Worldwide)**

New York Office
79 Fifth Avenue, 17th Fl.
New York, NY 10003

www.pr21.com

Jon Goldberg
Tel. (212) 299-8952
Fax (212) 462-1026/7
jon.goldberg@pr21.com

Emergency Only

Cell (973) 699-7148
Pager (877) 386-8115

**Robinson Lerer & Montgomery**

New York Office
75 Rockefeller Plaza
6th Floor
New York, NY 10019

www.rlmnet.com

Michael J. Gross
Tel. (212) 484-7721
Cell (917) 853-0620
Fax (212) 484-7411
Mgross52@aol.com

Emergency Only

Contact switchboard@
(212) 484-6100

**Sitrick and Company Inc.**

Los Angeles Office
1840 Century Park East
Suite 800
Los Angeles, CA 90067

www.sitrick.com

Michael S. Sitrick
Tel. (310) 788-2850
Fax (310) 788-2855
mike.sitrick@sitrick.com

Emergency Only
(310) 358-1011

24 hours/7 days

New York Office
675 Third Ave
31st Floor
New York, NY 10017

Richard Wool
Tel. (212) 573-6100
Fax (212) 573-6165

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

**Investigative Firms:**

**Abernathy MacGregor Frank- contact numbers same as above**

<u>New York Office</u>
501 Madison Avenue
New York, NY 10022

Emergency
(212) 688-0926
(917) 593-1845

<u>Los Angeles Office</u>
611 West Sixth Street
Suite 1880
Los Angeles, CA 90017

Emergency
(818) 957-5650
(917) 940-3476

**Hill & Knowlton- Contact numbers same as above**

<u>New York Office</u>
466 Lexington Avenue
3rd Floor
New York, NY 10017

Emergency
Contact switchboard @
(212) 885-0300

Contact: Denise DeShane
Tel. (212) 885-0390
Fax. (212) 885-0570

Emergency
Contact switchboard @
(212) 885-0300

Contact: Alex Goldsmith
Tel. (212) 885-0467
Fax. (212) 885-0570

Emergency
1-800-GET-KROL
World Wide Crisis Division
24 hours/7days

**Kroll Associates**

<u>New York Office</u>
900 Third Avenue
New York, NY 10022

Contact: Mary Jo Phillips
Tel. (212) 833-3246
Fax. (212) 644-5794

**Lexicon Communications Corp.**

<u>Los Angeles Office</u>
333 South Grand Avenue
Suite 3560
Los Angeles, CA 90071

Contact: Steven B. Fink
Tel. (213) 346-1212
Fax. (213) 346-1210
sfink@lexiconcorp.com

Emergency
Contact Switchboard @
(213) 346-1200

**Robinson Lerer & Montgomery**

<u>New York Office</u>
75 Rockefeller Plaza
6th Floor
New York, NY 10019

Contact: Michael J. Gross
Tel. (212) 484-6100
Fax. (212) 484-7411

Emergency
Contact switchboard @
(212) 484-6100

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
| --- | --- | --- |

**Sarb Verbinnen & Co. - contact numbers same as above for Citigate Sard Verbinnen**

New York Office
630 Third Avenue
New York, NY 10017

Contact: George Sard
Tel.(212) 687-8080
Fax (212) 687-8344

Emergency
Contact switchboard @
(212) 687-8080

**Sitrick and Company Inc. - contact numbers same as above**

Los Angeles Office
2029 Century Park East
Suite 1750
Los Angeles, CA 90067

Contact: Michael S. Sitrick
Tel. (310) 788-2850
Fax  (310) 788-2855

Emergency
(310) 319-2786
24 hours/7days

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (in States Where Applicable)

83687 (12/03)
AH1276                    Page 5 of 5

*Archive Copy*

**ENDORSEMENT No. 5**

**This endorsement, effective 12:01 AM:**  July 1, 2007

**Forms a part of policy no:**        9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**®

**Miscellaneous Changes  Endorsement**

This policy is amended as follows:

**SECTION I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY,** Paragraphs C. and D. are
deleted in their entireties and replaced by the following:

C.  1.  This policy applies to **Bodily Injury** or  **Property Damage**, only if prior to the **Policy Period**, no
**Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M.. of Section VII, no executive
officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee
authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily
Injury** or **Property Damage** had occurred, in whole or in part.  If such an **Insured**, or authorized
employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred,
then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or
after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

   2.  **Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the
**Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e.
of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of
Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an
**Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or
**Property Damage** after the end of the **Policy Period**.

D.     **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the
earliest time when any **Insured**  listed  under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of
Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section
VII. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or
**Suit**:

   1.  reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

   2.  receives a written or verbal demand or claim for damages because of the **Bodily Injury** or
**Property Damage**; or

   3.  becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has
begun to occur.

**SECTION III. DEFENSE**, is amended as follows:

83864 (02/04)                            © 2004 American International Group, Inc.
AH1266                   Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Paragraph A.1. is deleted and replaced by the following:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

Paragraph C. 2. d. is deleted and replaced by the following:

d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest accruing after we make such offer;

**SECTION IV. LIMITS OF INSURANCE** is amended as follows:

Paragraph F. is deleted and replaced by the following:

F. This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

Paragraph G. is deleted and replaced by the following:

G. If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

2. in the event of exhaustion, continue in force as underlying insurance.

Paragraph M.1. Is deleted and replaced by the following:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss;** or

**SECTION V. EXCLUSIONS,** is amended as follows:

Paragraph I. **Employees and Volunteers** is amended to include the following additional Paragraph:

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of **Bodily Injury or Personal Injury and Advertising Injury** if such coverage is provided by **Scheduled Underlying Insurance.** Coverage under this policy for **Bodily Injury** or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

2

83864 (02/04)
AH1266
© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
*Archive Copy*

Paragraph K. **Expected or Intended Injury** is deleted and replaced by the following:

K.  **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and  **Property Damage** expected or intended from the standpoint of the **Insured**.  However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

Paragraph M. **Liquor Liability** is deleted and replaced by the following:

M.  **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1.  causing or contributing to the intoxication of any person;

2.  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

Paragraph P. **Nuclear Liability** is amended as follows:

Subparagraph 1.c. is deleted and replaced by the following

c.  **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

i)  the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

iii)  the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Archive Copy

Paragraph **W. War** is deleted and replaced by the following:

**W**. **War.**

This insurance does not apply to **Loss**, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war; or

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SECTION VI. CONDITIONS** is amended as follows:

Paragraph D. Cancellation, subparagraph 2. is deleted and replaced by the following:

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

Paragraph E. **Change in Control**, the last sentence is deleted and replaced with the following:

Coverage will be afforded by this policy **for Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth 90th day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1 of the Declarations or the end of the **Policy Period**, whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

Paragraph O. **Transfer of Rights of Recovery**, subparagraph 3. is deleted and replaced by the following:

3. If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization

**SECTION VII. DEFINITIONS** is amended as follows:

Paragraph C. **Bodily Injury** is deleted and replaced by the following:

4

© 2004 American International Group, Inc.<br>Includes copyrighted material of Insurance Services Office, Inc. with its permission.<br>_Archive Copy_

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

Paragraph M. **Insured**, is amended as follows:

Subparagraph 2b. is deleted and replaced by the following:

b.   a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

The last paragraph is deleted and replaced by the following:

Notwithstanding any of the above:

    a.   no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

    b.   no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

Paragraph P. **Loss** is deleted and replaced by the following:

P.   **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then Loss shall include such expenses.

Paragraph R. **Named Insured** is deleted and replaced by the following:

R.   **Named Insured** means:

1.   any person or organization designated in Item 1 of the Declarations;

2.   as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%), provided that coverage provided to such organization under this paragraph  does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.   after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

    a.   coverage provided to such organization under this paragraph does not apply to any  **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    b.   you give us prompt notice after you acquire or form such organization.

    Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

5

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Archive Copy

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**. If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured,** under the highest applicable limit of **Scheduled Underlying Insurance**.

Paragraph T. **Other Insurance** is deleted and replaced by the following:

T.   **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

6

83864 (02/04)
AH1266

© 2004 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

*Archive Copy*

ENDORSEMENT No. 6

**This endorsement, effective 12:01 AM:**  July 1, 2007

**Forms a part of policy no:**          9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy With CrisisResponse®**

**Economic or Trade Sanctions Condition Endorsement**

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

**Economic or Trade Sanctions**

If coverage for a claim or **Suit**  under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

ENDORSEMENT No. 7

**This endorsement, effective 12:01 AM:**  July 1, 2007

**Forms a part of policy no:**         9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Violation of Communication or Information Law Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Violation of Communication or Information Law**

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

It is understood that to the extent any coverage may otherwise be available under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions and exclusions remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

87241 (12/04)
AH1509                    *Archive Copy*

ENDORSEMENT No. 8

**This endorsement, effective 12:01 AM:**  July 1, 2007

**Forms a part of policy no:**          9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy With CrisisResponse®**

**California Cancellation and Nonrenewal Amendatory Endorsement**

This policy is amended as follows:

I.   **Section VI. CONDITIONS, D. Cancellation**, is deleted in its entirety and replaced by the following:

D.   **Cancellation**

1.   You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.   New Policies in Effect for Sixty (60) Days or Less:

We may cancel this policy.  If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice.  Such notice will include the reason or reasons for cancellation.

3.   New Policies in Effect for More Than Sixty (60) Days and Any Renewal Policy:

We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

a.   Nonpayment of premium, including payment due on a prior policy issued by us and due during the **Policy Period** covering the same risks;

b.   A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

c.   Discovery of fraud or material misrepresentation by either of the following:

i.   You or other **Insureds** or your representative in obtaining this policy; or
ii.  You or your representative in pursuing a claim under this policy.

d.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or other **Insureds** or a representative of same, which materially increase any of the risks insured against;

e.   Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan if the failure materially increases any of the risks insured against;

f. A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

g. A determination by the commissioner that a continuation of this policy's coverage could place us in violation at the laws at this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

h. A change by you or other **Insureds** or a representative of same in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the added, increased or changed risk is included in this policy;

i. A material change in limits, type or scope of coverage or exclusions in **Scheduled Underlying Insurance**;

j. Cancellation or nonrenewal of any **Scheduled Underlying Insurance** where such insurance is not replaced without lapse; or

k. A reduction in financial rating or grade of one or more insurers issuing any **Scheduled Underlying Insurance** based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less then ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

4. The **Policy Period** will end on the day and hour stated in the cancellation notice.

5. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 6 of the Declarations.

6. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 6 of the Declarations.

7. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8. The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

II. **Section VI. CONDITIONS** is amended to include the following additional provision:

**Nonrenewal**

If we decide not to renew this policy, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of nonrenewal at least sixty (60) days, but no more than one hundred twenty (120) days prior to the end of the **Policy Period**. The notice shall contain the reason or reasons for nonrenewal of this policy.

*Archive Copy*

III.  **Section VI. CONDITIONS** is amended to include the following additional provision:

**Increase in Premium, Reduction in Limits or Change in Conditions of Coverage**

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1.  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2.  Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3.  A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4.  A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in this policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in this policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No. 9**

**This endorsement, effective 12:01 AM:** July 1, 2007

**Forms a part of policy no:** 9835034

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Duties in the Event of an Occurrence, Claim or Suit**

This policy is amended as follows:

**Section VI. CONDITIONS, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit,** subparagraph 1. is deleted in its entirety and replaced by the following:

1. You must see to it that we are notified as soon as practicable after your corporate officer receives notice from its agent, servant, employee or any other person, of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

   a. how, when and where the **Occurrence** took place;

   b. the names and addresses of any injured persons and any witnesses; and

   c. the nature and location of any injury or damage arising out of the **Occurrence**.

However it is understood that the provisions of this endorsement will not supercede **Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** of the policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

86456 (8/04)
AH1437          *Archive Copy*

**ENDORSEMENT NO.** 10

**This endorsement, effective 12:01 AM:** July 1, 2007

**Forms a part of policy no.:** 9835034

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**

**Additional Named Insured(s)**

This policy is amended as follows:

**DECLARATIONS, Item 1** is amended by adding the following as **Named Insured(s)** under this policy:

**Beldere Corporation**
- S.K.U., Inc. (50%)

**California Golden State Finance Company**
- CGSF Funding Corporation

**City Properties, S.A. (20%)**
**Crocker Plaza Company**
**D & K Healthcare Resources LLC**
- D&K Pharmacy Solutions, Inc.
- Diversified Healthcare, LLC
- Jaron, Inc.
- Jewett Drug LLC
- Medical & Vaccine Products, Inc.
- VC Services, Inc.
- Walsh Healthcare Solutions LLC
  - myhca, inc.
  - Walsh Distribution, L.L.C.

**Foremost de Venezuela, S.A. (39.69%)**
**Foremost Iran Corporation**
**Foremost Shir, Inc.**
**Foremost Tehran, Inc.**
**Golden State Insurance Company Limited**
**Goodman Manufacturing Company**
**Health Mart Systems, Inc**
**Intercal, Inc. (15%)**
**KWS & P, Inc.**
**KWS & P/ SFA, Inc.**
**MCK Acquisition Corp.**
**McKesson Asia-Pacific Pty Limited**
- McKesson New Zealand Limited

*Archive Copy*

**ENDORSEMENT NO.** 10 (Continued)

**McKesson Automation Inc.**
**McKesson Automation Systems Inc,**
- SI/Baker, Inc.

**McKesson Capital Funding Corporation**
**McKesson Capital LLC**
**McKesson Development Corp.**
**McKesson Information Solutions LLC**
- HBO & Company (VI), Inc.
- HBOC Medical Ltd.
- McKesson Health Solutions Holdings LLC
  - McKesson Health Solutions LLC
    - Access Health UK Ltd.
    - McKesson Health Solutions Texas Inc.

- McKesson Services LLC
  - A.L.I Imaging Systems Corp.
- Physician Micro Systems, Inc.

**McKesson International Holdings Limited**
- McKesson International Holdings V S.à.r.l
  - McKesson Automation Canada Corporation
- McKesson International Holdings VI S.à.r.l
  - Zee Medical Canada Corporation
- McKesson Health Solutions Puerto Rico Inc.
- McKesson Financial Holdings Limited
  - McKesson Information Solutions Holdings Limited
  - McKesson Information Solutions Finance S.à.r.l
    - McKesson Information Solutions Holdings V S.à.r.l
      - McKesson Information Solutions Holdings France S.à.r.l
        - McKesson Information Solutions France SAS
    - A.L.I. Holdings LLC
    - Medical Imaging SRL
      - A.L.I. Technologies (International) LLC
    - McKesson International LLC
    - McKesson Information Solutions Holdings I SRL
      - McKesson Information Solutions SRL
    - McKesson Information Solutions Capital S.à.r.l
    - McKesson Information Solutions Holdings S.à.r.l
      - McKesson Information Solutions Holdings II S.à.r.l
        - McKesson International Nova Scotia ULC
          - McKesson Medical Imaging Company
      - McKesson Information Solutions Holdings III S.à.r.l
        - McKesson Health Solutions Canada Company
      - McKesson Information Solutions Holdings IV S.à.r.l
        - McKesson Information Solutions Canada Company
    - A.L.I Technologies (Deutschland) GmbH
    - McKesson Information Solutions Ireland Limited
    - McKesson Information Solutions Netherlands B.V.
      - McKesson Nederland B.V.
    - McKesson Information Solutions UK. Limited
    - McKesson Information Solutions Sweden AB
      - Medcon Ltd.

*Archive Copy*

**ENDORSEMENT NO.** 10 (Continued)

- Medcon UK Limited
- McKesson International Ireland Limited
- McKesson Financial Holdings II Limited
    - McKesson (International) (Gibraltar) Limited
    - McKesson International Holdings LLC
        - McKesson International Holdings SRL
        - McKesson International SRL

- McKesson International Finance S.à.r.l
    - McKesson International Capital S.à.r.l
    - McKesson International Holdings S.à.r.l
        - McKesson International Holdings II S.à.r.l
            - McKesson Funding Company of Canada
        - McKesson International Holdings III S.à.r.l
            - McKesson Finance Company of Canada
                - McKesson Canada Corporation
                    - 3071046 Nova Scotia Company
                    - 3087601 Nova Scotia Company
                    - Clinique Santé Corporation
                    - McKesson Canada Support Services Corporation
                    - McKesson Logistics Solutions LLC
                        - McKesson Logistics Solutions LP
- McKesson International Holdings IV S.à.r.l
    - A.L.I. Technologies (Europe) B.V.
    - McKesson International Netherlands II BV
    - McKesson International Netherlands BV
        - NADRO, S.A. de C.V. (44.52%)
        - NADRO Services, S. de R.L. de C.V.
- McKesson International Holdings VII S.à.r.l
    - McKesson Specialty Prescription Services Corporation
    - McKesson Specialty Prescription Services (B.C.) Corporation
- McKesson Medication Management Puerto Rico Inc
- McKesson Medication Management Virgin Islands Inc
**McKesson Medical-Surgical Holdings Inc.**
- McKesson Medical-Surgical Inc.
    - Cypress Medical Products LLC
    - McKesson Medical-Surgical FDT Inc.
    - Moore Medical LLC
        - Podiatry Online, Inc.
    - Sterling Medical Services, LLC
    - Titus Home Health Care LLC
**McKesson Medical-Surgical Maine Inc.**
**McKesson Medical-Surgical Minnesota Inc.**
- McKesson Medical-Surgical MediMart Inc.
- McKesson Medical-Surgical MediNet Inc.
- McKesson Medical-Surgical Minnesota Supply Inc.
- MSA Products LLC
**McKesson Medication Management LLC**
- Purchasing Alliance for Clinical Therapeutics, LLC
**McKesson Property Company, Inc.**
- DC Land Company

*Archive Copy*

**ENDORSEMENT NO.** 10 (Continued)

- DCAZ Land Company
- Foremost Homes Hawaii, Ltd.
- HF Land Company

**McKesson Purchasing Company LLC**
**McKesson Specialty Arizona Inc.**
**McKesson Specialty Corporation**
**McKesson Specialty Distribution LLC**
**McKesson Specialty Holdings LLC**
- National Oncology Alliance Inc.

**McKesson Specialty Pharmaceuticals LLC (99%)**
**McKesson Trading Company**
**McKesson Transportation Systems, Inc.**
**N.V. Medicopharma (10%)**
**Northstar Healthcare Holdings Limited**
- Northstar Healthcare Limited
- McKesson Medical-Surgical International Limited

**Northstar Rx LLC**
**Per-Se Technologies, Inc.**
- Per-Se Transaction Services, Inc.
- Patient Account Management Services, Inc.
- PST Services, Inc.
- PST Products, LLC
    - Knowledgeable Healthcare Solutions, Inc.
    - Per-Se Technologies Canada, Inc.
    - Per-Se Technologies (UK) Limited
- NDCHealth Corporation
    - NDCHealth Pharmacy Systems and Services, Inc.
        - NDCHealth Pharmacy Systems and Services ULC
    - NDC of Canada, Inc.
    - NDC Health Holdings UK
    - Physerv Solutions, Inc.

**Strategic Health Alliance Management Corp.**
- Strategic Health Alliance II, Inc.

**Zee Medical, Inc.**
- CPG Industries, Inc.

Verispan, LLC (43%)

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

**ENDORSEMENT No.** 11

This endorsement, effective 12:01 AM:  July 1, 2007

Forms a part of policy no:          9835034

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy with CrisisResponse®**

**Act of Terrorism Self-Insured Retention Endorsement**

Solely with respect to any **Act of Terrorism**, this policy is amended as follows:

The **DECLARATIONS, ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional Self-Insured Retention:

> **ACT OF TERRORISM SELF-INSURED RETENTION** - $10,186.00 Each **Occurrence** (As respects all liability covered under this policy arising out of any **Act of Terrorism**.)  The **Act of Terrorism Self-Insured Retention** will not be reduced or exhausted by **Defense Expenses**.

**ITEM 6. OF THE DECLARATIONS, PREMIUM AND PREMIUM COMPUTATION** is amended to include the following:

> **ACT OF TERRORISM PREMIUM**          $5,000,000

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

> The **Act of Terrorism Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**.  If there is **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Act of Terrorism Self-Insured Retention**. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the **Act of Terrorism Self-Insured Retention**.

**Section III. DEFENSE PROVISIONS**, Paragraphs A. 1. and A. 2., and D. are deleted in their entireties, and Paragraph A. is replaced by the following:

> A.  We will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

> **Act of Terrorism** means:
>
> 1.  any act which is verified or recognized by the United States Government as an act of terrorism, including a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions, amendments, or extensions thereto; or

2. the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**;

6. Interest that accrues after entry of judgment.

It is understood and agreed that if any other endorsement to this policy excludes terrorism liability arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT NO.** 12

**This endorsement, effective 12:01 AM:** July 1, 2007

**Forms a part of policy no.:** 9835034

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Knowledge of Occurrence Endorsement**

This policy is amended as follows:

Notwithstanding any provision(s) in this Policy to the contrary, and solely as respects any loss reporting requirements under this Policy, it is understood that knowledge of an accident or incident by an agent, servant or employee of your or any other person shall not in itself constitute knowledge by you, unless your Risk Manager or Senior Corporate Counsel has received notice from said agent, servant, employee or any other person.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_(signature)_

**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT No.** 13

**This endorsement, effective 12:01 AM:** July 1, 2007

**Forms a part of policy no:** 9835034

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**<sup>SM</sup>

**Notice of Occurrence**

This policy is amended as follows:

**Section VI. CONDITIONS**, Paragraph G. **Duties in the Event of an Occurrence, Claim or Suit** is amended to include the following provision:

5. Your failure to give first report of a claim to us will not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you will report any such **Occurrence** to us within a reasonable time once you become aware of such error.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

80454 (07/02)
AH0939

*Archive Copy*

**ENDORSEMENT NO.** 14

**This endorsement, effective 12:01 AM:**   July 1, 2007

**Forms a part of policy no.:**        9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**®

**Manufacturing of Drugs Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Manufacture of Drug**

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by or on behalf of the **Insured.**

For the purpose of this exclusion, the term "manufacture" shall not include packaging or labeling of drugs.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT No.** 15

**This endorsement, effective 12:01 AM:**  July 1, 2007

**Forms a part of policy no:**       9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Joint Venture Limitation Endorsement**
**(Scaled Limits/Scaled Attachment with Final Adjudication Adjustment)**

**TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERCEDE.**

Solely as respects any joint venture, partnership, or limited liability company in which the **Named Insured** has an interest, and which is not otherwise covered by this policy as an **Insured**, this policy is amended as follows:

**Section IV. LIMITS OF INSURANCE,** Paragraphs F. and G. are deleted in their entireties and replaced by the following and new paragraphs N., O., P., and Q. are added:

F.  This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.  If the **Retained Limit** is reduced or exhausted by the payment of **Loss** to which this policy applies, we will

1.  in the event of reduction, pay excess of: the remaining applicable **Retained Limit**; or

2.  In the event of exhaustion of the **Retained Limit** continue in force as underlying insurance.

N.  In the event of any **Occurrence** caused by or arising out of any joint venture, partnership, or limited liability company in which the **Named Insured** has an interest, our Limits of Insurance under this policy shall be limited to the **Named Insured's** percentage interest in the joint venture, partnership, or limited liability company multiplied by the total applicable Limits of Insurance afforded the **Named Insured** by this policy.

O.  Where the percentage interest of the **Named Insured** in the joint venture, partnership, or limited liability company is not set forth in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the joint venture, partnership, or limited liability company. Such percentage shall not be increased by the insolvency of others' interests in the joint venture, partnership, or limited liability company.

However, upon final settlement or adjudication of the claim or **Suit**, Paragraphs F. and N. above shall no longer apply to the settled or adjudicated claim and our Limits of Insurance under this policy shall be limited to the amount of the **Named Insured's Loss** divided by the amount of the final settlement or adjudication of the claim and then multiplied by the total Limits of Insurance shown in Item 3. of the Declarations.

**Archive Copy**

P.  It is further agreed that our Limits of Insurance as limited by Paragraph O. above shall be excess of the greater of:

1.  Any Self Insured Retention applicable under the terms and conditions of this policy and its endorsements; or

2.  Any valid and collectible insurance issued in the name of the joint venture, partnership, or limited liability company; or

3.  The amount of the **Named Insured's Loss** divided by the amount of the final settlement or adjudication of the claim or **Suit** and then multiplied by the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and any applicable **Other Insurance.**

Q.  If we indemnified the **Named Insured** for any amount based upon the terms set forth in Paragraphs F. and N. above, then:

1.  If the amount payable under Paragraphs O. and P. on behalf of the **Named Insured's Loss** arising out of such joint venture, partnership, or limited liability company is more than the amount already paid under the requirements of Paragraphs F. and N., we will indemnify the **Named Insured** for the difference up to the amount payable under Paragraphs O. and P.

2.  If the amount payable under Paragraphs O. and P. on behalf of the **Named Insured's Loss** arising out of such joint venture, partnership, or limited liability company is less than the amount already paid under the requirements of Paragraphs F. and N., the **Named Insured** shall reimburse us for the difference up to the amount payable under Paragraphs O. and P.

Solely for the purpose of this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Joint Venture, Partnership, or Limited Liability Companies**

This insurance does not apply to any liability arising out of a joint venture, partnership, or limited liability company for any **Occurrence** that took place before the **Named Insured** acquired, joined or formed the joint venture, partnership, or limited liability company.

Solely for the purpose of this endorsement, **Section VII. DEFINITIONS,** Paragraph T. **Other Insurance**, is amended to include the following additional provision:

**Other Insurance** does not include insurance issued in the name of the joint venture, partnership, or limited liability company.

Solely for the purpose of this endorsement, **Section VII. DEFINITIONS,** Paragraph Z. **Retained Limit**, is deleted and replaced by the following:

**Z.  Retained Limit** means:

The greater of:

1.  Any Self Insured Retention applicable under the terms and conditions of this policy and its endorsements; or

2.  Any valid and collectible insurance issued in the name of the joint venture, partnership, or limited liability company; or

3.  The **Named Insured's** percentage interest in the joint venture, partnership, or limited liability company multiplied by the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and any applicable **Other Insurance.**

The insurance afforded under this endorsement shall not be subject to any requirement of **Section VII.** Paragraph M. that a joint venture, partnership, or limited liability company be shown as a **Named Insured** in the Declarations.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

89467 (6/05)
AH1687

*Archive Copy*

3 of 3

**ENDORSEMENT NO.** 16

**This endorsement, effective 12:01 AM:** July 1, 2007

**Forms a part of policy no.:** 9835034

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Acquired Entity Endorsement
(Amendment of Definition of Named Insured)**

This policy is amended as follows:

**Section VII. Definitions**, Paragraph R. is amended to include the following additional subparagraphs:

R.     **Named Insured** means:

    a.     newly acquired or formed entities with operations that are not materially different from those of the **Insured** prior to such acquisition, formation or merger and with annual sales not exceeding THREE HUNDRED AND FIFTY MILLION dollars ($350,000,000.).

    b.     newly acquired or formed entities greater than THREE HUNDRED AND FIFTY MILLION dollars ($350,000,000.) or with operations prior to such acquisition, formation or merger materially different from those of the **Insured**, such entities will be automatically covered for a period of ninety (90) days from the date of acquisition, formation or merger, during which time the **Insured** shall provide sufficient underwriting data for us to evaluate the continuation of coverage.

With respect to paragraphs a. and b. above, we may make an additional premium charge for any additional organizations you acquire, form or take control of during the **Policy Period**.

It is further agreed that any newly acquired or formed entity shall only be afforded coverage under this policy if such organization is included as a named insured under **Scheduled Underlying Insurance**.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT No. 17

**This endorsement, effective 12:01 AM:** July 1, 2007

**Forms a part of policy no:** 9835034

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Foreign Liability Follow-Form Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following exclusion:

**Foreign Liability**

This insurance does not apply to any liability arising out of an **Occurrence** that takes place outside that United States of America, its territories and possessions, Puerto Rico and Canada.

However, this exclusion will not apply if coverage is provided by a policy listed in the **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of such **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

80432 (07/02)
AH0918

*Archive Copy*

ENDORSEMENT No. 18

This endorsement, effective 12:01 AM:  July 1, 2007

Forms a part of policy no:        9835034

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Named Peril and Time Element Pollution
### Self-Insured Retention Endorsement
### (Products-Completed Operations Hazard Version)

This policy is amended as follows:

**Section V. EXCLUSIONS**, Paragraph Q. **Pollution** is deleted in its entirety and replaced by the following:

**Pollution**

This insurance does not apply to:

1.  Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.  Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply to **Bodily Injury** or **Property Damage** arising out of:

i.   Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot or civil commotion, flood, earthquake, automatic sprinkler leakage, collision or upset of an **Auto** or **Mobile Equipment** or aircraft; or

ii.  Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** and included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

   (a)  discarded, dumped, abandoned, thrown away; or

   (b)  transported, handled, stored, treated, disposed of or processed as waste;

   by anyone; or

iii. Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** that meets all of the following conditions:

(a) It was accidental and neither expected nor intended by the **Insured**. This condition would not serve to deny coverage for a non-routine incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury** or **Property Damage** could occur;

(b) It was demonstrable as having commenced on a specific date during the **Policy Period**;

(c) Its commencement became known to the **Insured** within (20) calendar days;

(d) Its commencement was reported in writing to us within (80) calendar days of becoming known to any officer of the **Insured;** any manager in your risk management, insurance or legal department; any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or Suit; or any **Insured** authorized or responsible to report the commencement; and

(e) Reasonable effort was expended by the **Insured** to terminate the discharge, dispersal, seepage, migration, release or escape of **Pollutants** as soon as conditions permitted.

However, nothing contained in this endorsement will operate to provide any coverage with respect to:

i. Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

ii. Any fines or penalties;

iii. Any clean up loss, cost or expense arising out of any governmental request, demand, order or statutory or regulatory requirement. However, this provision iii will not apply to third party clean up loss, cost or expense otherwise covered by this endorsement that are also the subject of a governmental request, demand, order or statutory or regulatory requirement;

iv. Acid rain or acid runoff;

v. Clean-up, removal, containment, treatment, detoxification or neutralization of **Pollutants** situated on premises which the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said **Pollutants**; or

vi. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**, or any loss, cost or expense arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** in knowing violation of or non compliance with governmental permits.

For the purpose of this endorsement only, the SELF-INSURED RETENTION in ITEM 5. of the DECLARATIONS, is amended to include the following additional provision:

$5,000,000 Each Occurrence (As respects all damages arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** covered under this endorsement). This Self-Insured Retention will not be reduced by **Defense Expenses**.

The above Self-Insured Retention applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the above Self-Insured Retention if such policies were purchased by the **Named Insured** to specifically apply as underlying insurance to this policy. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the above Self-Insured Retention.

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS** Paragraphs A. and D. are deleted in their entirety and  Paragraph A. is replaced by the following:

We will have no duty to defend any **Suit** against the **Insured** until the above **Self-Insured Retention** is exhausted by payment of **Loss.**  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this endorsement may apply.  If we exercise this right, we will do so at our own expense.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** means a payment allocated to defend a specific **Suit**, including but not limited to:

1.  Attorneys' fees and all other investigation, loss adjustment and litigation expenses;

2.  Premiums on bonds to release attachments;

3.  Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4.  Court costs taxed against the **Insured** in any **Suit**;

5.  Pre-judgment interest awarded against the **Insured**; and

6.  Interest that accrues after entry of judgment.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**Archive Copy**

**ENDORSEMENT No.** 19

**This endorsement, effective 12:01 AM:** July 1, 2007

**Forms a part of policy no:**        9835034

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse[SM]**

**Arbitration Condition Endorsement**
**(Solely Applicable To Exclusion Q. And Any Endorsements Amending Exclusion Q.)**
**(Domicile State)**

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

**Arbitration**

In the event of a disagreement as to the interpretation of Exclusion Q. of this policy or a disagreement as to the interpretation any endorsements attached to this policy amending Exclusion Q., the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item 1 of the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (Where Applicable)

82425 (06/03)
AH1180                      *Archive Copy*

ENDORSEMENT No. 20

This endorsement, effective 12:01 AM: July 1, 2007

Forms a part of policy no.:          9835034

Issued to: MCKESSON CORPORATION

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## Commercial Umbrella Liability Policy with CrisisResponse®

### Specified Products Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Specified Products**

This insurance does not apply to any liability arising out of the following products listed below:

ANY PRODUCT MANUFACTURED BY ORCHID PHARMACEUTICALS LTD OR
NICHOLAS PIRAMAL INDIA LTD (NPIL)

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

*Archive Copy*

**ENDORSEMENT No.** 21

**This endorsement, effective 12:01 AM:** July 1, 2007

**Forms a part of policy no:** 9835034

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Self Insured Retention Applicable To Specified Coverage After Underlying Limits Are Reduced or Exhausted Endorsement**

This policy is amended as follows:

This endorsement will apply to the below **Specified Coverage** only:

General & Druggist Liability, Not Applicable to the Prod/Comp Ops Hazard

The **Declarations, ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional **Self Insured Retention**:

**Specified Coverage** Self Insured Retention - $250,000          Each Occurrence

**Section III. DEFENSE**, Paragraph A. is deleted and replaced by the following:

     We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the greater of:

     1.   the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance,** or

     2.   the **Specified Coverage** Self Insured Retention

have been exhausted by payment of **Loss** to which this policy applies;

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

**Section IV. LIMITS OF INSURANCE**, Paragraphs F., G. and M. are deleted in their entireties and replaced by the following:

F.   This policy applies only in excess of the total applicable limits of **Scheduled Underlying Insurance,** any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention whether or not such limits are collectible. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

     1.   greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

     2.   less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.   If the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

     1.   in the event of reduction, pay excess of a.) the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance;** or b.) the **Specified Coverage** Self Insured Retention, whichever is greater; and

87233 (12/04)                     Page 1 of 2

AH1501              ***Archive Copy***

2. in the event of exhaustion, pay in excess of the **Specified Coverage** Self Insured Retention.

The **Specified Coverage** Self Insured Retention will apply per **Occurrence**.

M. We will not make any payment under this policy unless and until the greater of:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** have been exhausted by the payment of **Loss** to which this policy applies; or

2. the total applicable **Specified Coverage** Self-Insured Retention has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgement, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

**Section IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The **Specified Coverage** Self Insured Retention will not be reduced by **Defense Expenses**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**; and

6. Interest that accrues after entry of judgment.

**Specified Coverage** means the coverage that is specified at the top of this endorsement.

All other terms, definitions, conditions and exclusions remain unchanged.

_[signature]_

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

ENDORSEMENT No. 22

This endorsement, effective 12:01 AM:  July 1, 2007

Forms a part of policy no:  9835034

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Commercial Umbrella Liability Policy With CrisisResponse®

Employers' Liability / "Stop-Gap" Coverage Limitation Endorsement
(Designated States: North Dakota, Ohio, Washington, West Virginia, and Wyoming)

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Employers' Liability

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured** in the designated states North Dakota, Ohio, Washington, West Virginia and Wyoming.

However, if insurance for such Bodily Injury is provided by a policy listed in the Schedule of Underlying Insurance:

1.  The above exclusion shall not apply; and

2.  Coverage under this endorsement for such **Bodily Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this endorsement will not be broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

82616 (6/04)
AH1402                    *Archive Copy*

ENDORSEMENT No. 23

This endorsement, effective 12:01 AM:  July 1, 2007

Forms a part of policy no:  9835034

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Uninsured/Underinsured Motorists Coverage Endorsement

**THIS ENDORSEMENT APPLIES TO A COVERED AUTO REGISTERED OR PRINCIPALLY GARAGED IN THE FOLLOWING STATE(S) (where indicated by an "X")**

The Declarations ITEM 3. LIMITS OF INSURANCE is amended to include the following additional provisions:

**Applicable Uninsured/Underinsured Each Occurrence Limit(s)**

| X | VERMONT | $100,000 **Bodily Injury and Property Damage Combined Single Limit** |
|---|---------|---------------------------------------------------------------------|

And, if Uninsured/Underinsured Motorist Coverage <u>has been selected</u> under this policy:

**Applicable Uninsured/Underinsured Each Occurrence Limit(s)**

| | FLORIDA | **Bodily Injury** |
|---|---------|-------------------|
| | WEST VIRGINIA | **Bodily Injury and Property Damage Combined Single Limit** |

And, if Uninsured/Underinsured Motorist Coverage <u>has not been rejected</u> under this policy:

**Applicable Uninsured/Underinsured Each Occurrence Limit(s)**

| | LOUISIANA | **Bodily Injury Limit** |
|---|-----------|-------------------------|
| | NEW HAMPSHIRE | **Bodily Injury Limit** |

**Uninsured/Underinsured Motorists Retained Limit**  $1,000,000

**INSURING AGREEMENT**

**Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** is amended to include the following additional provisions:

1.  We will pay all sums in excess of the **Uninsured/Underinsured Motorists Retained Limit** the **Insured** is legally entitled to recover as compensatory damages from the owner or operator of:

    a.  An **Uninsured Motor Vehicle** as defined in Definition 4.a., 4.b. and 4.c. of this endorsement because of **Bodily Injury** sustained by the **Insured**, or **Property Damage** and caused by an **Occurrence**, and

    b.  An **Uninsured Motor Vehicle** as defined in Definition 4.d. of this endorsement because of **Bodily Injury** sustained by any **Insured**, or **Property Damage**.

    The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **Uninsured Motor Vehicle.**

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

2. We will pay under this coverage only if a. or b. below applies:

    a. The limits of any applicable liability bonds or policies of the **Uninsured Motor Vehicle** have been exhausted by judgments or payments; or

    b. A tentative settlement has been made between an **Insured** and the insurer of the vehicle described in paragraph b. of the definition of **Uninsured Motor Vehicle** of this endorsement and we:

        1) Have been given prompt written notice of such settlement; and

        2) Advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days after receipt of notification.

3. Any judgment for damages arising out of a **Suit** brought without our written consent is not binding upon us.

## DEFENSE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section III. DEFENSE PROVISIONS** is hereby deleted in its entirety and replaced by the following:

1. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury** or **Property Damage** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the **Uninsured/Underinsured Motorists Retained Limit** has been exhausted by payment of **Loss** to which this policy applies.

    If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

2. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply.

3. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

    a. Investigate, negotiate and settle the **Suit** as we deem expedient; and

    b. Pay the following supplementary payments:

        1) premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

        2) premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

        3) all court costs taxed against the **Insured** in the **Suit**;

        4) pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

        5) post-judgment interest that accrues after entry of judgment on that part of the judgement within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

AH1625          Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

*Archive Copy*

6) the **Insured's** expenses incurred at our request or with our consent.

4. Except as provided in Paragraph 1. above, we will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

5. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph 3. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## LIMITS OF INSURANCE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section IV. LIMITS OF INSURANCE** is amended to include the following additional provisions:

1. Regardless of the number of covered **Autos**, **Insureds**, premiums paid, claims made or vehicles involved in the **Occurrence**, the most we will pay for all damages resulting from any one **Occurrence** are the Limits of Insurance shown in Item 3. of the Declarations (as amended in this endorsement).

2. With respect to coverage provided under Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**, the Limit of Insurance shall be reduced by all sums paid for **Bodily Injury** or **Property Damage** by or on behalf of anyone who is legally responsible.

3. **Uninsured/Underinsured Motorists Retained Limit**

   This policy applies only in excess of an **Uninsured/Underinsured Motorists Retained Limit** and then up to an amount not exceeding the Uninsured/Underinsured Motorists Each Occurrence Limit as stated in the Declarations (as amended in this endorsement), subject to the provisions stated in 1. and 2. above.

   This **Uninsured/Underinsured Motorists Retained Limit** shall not be reduced or exhausted by **Defense Expenses**.

   This **Uninsured/Underinsured Motorists Retained Limit** shall apply whether or not the **Insured** maintains applicable underlying insurance. If there is **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**  applicable to a **Loss**, amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for payment of the **Loss** may be applied to reduce or exhaust the **Uninsured/Underinsured Motorists Retained Limit**. However, in no event will amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** reduce the **Uninsured/Underinsured Motorists Retained Limit**.

   Where the Uninsured/Underinsured laws of the state of West Virginia apply, this **Uninsured/Underinsured Motorists Retained Limit** applies excess of the statutory minimum amount of Uninsured Motorists Coverage provided by an underlying insurer.

## EXCLUSIONS

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS**, Exclusion O. is deleted in its entirety and replaced by the following:

O. **"No-Fault" Laws**

   This insurance does not apply to any obligation of the **Insured** under any "No Fault" law.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusions:

1. This insurance does not apply to any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle which is an **Uninsured Motor Vehicle**.

2. This insurance does not apply to the direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. This insurance does not apply to any **Insured** using a vehicle without a reasonable belief that the person is entitled to do so.

4. This insurance does not apply to **Bodily Injury** or **Property Damage** sustained by:

    a. An individual **Named Insured** while **Occupying** or when struck by any vehicle owned by that **Named Insured** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement;

    b. Any **Family Member** while **Occupying** or when struck by any vehicle owned by that **Family Member** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement; or

    c. Any **Family Member** while **Occupying** or when struck by any vehicle owned by the **Named Insured** that is insured for Uninsured Motorists Coverage under any other policy.

5. This insurance does not apply to punitive or exemplary damages.

6. This insurance does not apply to **Property Damage** to an **Auto** or to property contained in an **Auto** owned by the **Named Insured** which is not a covered **Auto**.

7. This insurance does not apply to **Property Damage** for which the **Insured** has been or is entitled to be compensated by other property or physical damage insurance.

**CONDITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition L. **Other Insurance** under **Section VI. CONDITIONS** is deleted in its entirety and replaced by the following:

L. **Other Insurance**

Any insurance we provide under this endorsement will be excess to the total limits of any **Other Insurance** paid or available for payment to an **Insured**, except other applicable Uninsured/Underinsured Motorist Coverage written to be excess of this policy.

If there is other applicable Uninsured/Underinsured Motorist Coverage under any other policy issued to the **Named Insured** by us, the maximum recovery for damages may equal but not exceed the highest applicable limit of insurance under any one policy.

If there is other applicable excess Uninsured/Underinsured Motorist Coverage available under more than one policy, then the following priorities of coverage apply:

1. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as a **Named Insured**.

2. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as an **Insured** other than as a **Named Insured**.

3. A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as a **Named Insured**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

*Archive Copy*

4.  A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as an **Insured** other than as a **Named Insured**.

We will pay only our share of the **Loss** that must be paid under insurance providing umbrella or excess coverage.  Our share is the proportion that our limit of liability bears to the total of all applicable limits of all the policies applicable on the same level of priority.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition G. **Duties In the Event of an Occurrence, Claim Or Suit** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

G.  Specifically as respects to any **Occurrence** which may result in a Uninsured/Underinsured Motorist claim for coverage under this policy:

a.  You must promptly notify the police if a hit-and-run driver is involved, and

b.  You must promptly send us copies of the legal papers if a **Suit** is brought.

c.  A person seeking Uninsured/Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the **Insured** and the insurer of the vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle** and allow us 90 days to advance payment to that **Insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition P. **Transfer of Your Rights and Duties** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

P.  If we make any payment and the **Insured** recovers from another party, the **Insured** shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, where the Uninsured/Underinsured laws of the state of Louisiana apply, if we make any payment under this policy and the person to or for whom payment is made has a right to recover damages from another, we shall be subrogated to that right.  However, our right to recover is subordinate to the right of the **Insured** to be fully compensated.

Our rights do not apply under this provision with respect to Uninsured/Underinsured Motorists Coverage if we:

a.  Have been given prompt written notice of a tentative settlement between an **Insured** and the insurer of a vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**; and

b.  Fail to advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days after receipt of notification.

If we advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days after receipt of notification:

a.  That payment will be separate from any amount the **Insured** is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

b.  We also have a right to recover the advanced payment.

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VI. CONDITIONS** is amended to include the following additional conditions:

**Arbitration (Not applicable where the Uninsured/Underinsured laws of West Virginia or Louisiana apply)**

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000
*Archive Copy*

1. If we and an **Insured** disagree whether the **Insured** is legally entitled to recover damages from the owner or driver of an **Uninsured Motor Vehicle** or do not agree as to the amount of damages that are recoverable by that **Insured**, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to the arbitration.  If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

2. Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**Conformance to "Uninsured Motorist" and/or "Underinsured Motorist" Law**

To the extent any term of this policy conflicts with any applicable Uninsured/Underinsured law, the term shall be deemed amended so as to conform to minimum requirements of that law.   However, under no such circumstance shall any term be amended to be broader than the minimum requirements of that law.

**DEFINITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition M. **Insured** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

M. **Insured** means:

If the **Named Insured** is designated in the Declarations as:

a. An individual, then only the following are **Insureds**:

1) The **Named Insured** and any **Family Members**.

2) Anyone else occupying a covered **Auto** or a temporary substitute for a covered **Auto**.  The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction.

3) Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

b. A partnership, limited liability company, corporation or any other form of organization, then the following are **Insureds**:

1) Anyone occupying a covered **Auto** or a temporary substitute for a covered **Auto**.   The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction;

2) Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition Y. **Property Damage** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

Y. **Property Damage** means:

Physical Injury or destruction of:

a. A covered **Auto**; or

b. Property contained in the covered **Auto**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000
*Archive Copy*

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

1. **Defense Expenses** means a payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

   a. Attorneys' fees and all other investigation, **Loss** adjustment and litigation expenses;

   b. Premiums on bonds to release attachments;

   c. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

   d. Costs taxed against the **Insured** in any claim or **Suit**;

   e. Pre-judgment interest awarded against the **Insured**; and

   f. Interest that accrues after entry of judgment.

2. **Family Member** means a person related to an individual **Named Insured** by blood, marriage or adoption who is a resident of such **Named Insured's** household, including a ward or foster child.

3. **Occupying** and/or **Occupied** means in, upon, getting in, on, out or off.

4. **Uninsured Motor Vehicle** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged;

   b. Which is an **Underinsured Motor Vehicle**. An **Underinsured Motor Vehicle** means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged but their limits are less than the Limit of Insurance of this coverage;

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d. That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

      1) Hit an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**; or

      2) Cause **Bodily Injury** to an **Insured** without hitting an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**.

      The facts of the **Occurrence** or intentional act must be proved by independent corroborative evidence, other than the testimony of the **Insured** making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

   However, **Uninsured Motor Vehicle** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law. However, where the Uninsured/Underinsured laws of the state of Florida apply, Uninsured Motor Vehicle includes any vehicle owned or operated by a self-insurer under any applicable motor vehicle law;

   b. Designed for use mainly off public roads while not on public roads;

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

*Archive Copy*

c.  Owned by or furnished or available for the **Named Insured's** regular use or that of any **Family Member**, if the **Named Insured** is an individual; or

d.  Owned by any governmental unit or agency, unless the owner or operator of the **Uninsured Motor Vehicle** has:

    1)  An immunity under applicable tort liability law; or

    2)  A diplomatic immunity.

5.  **Uninsured/Underinsured Motorists Retained Limit** means the uninsured/underinsured motorists retained limit specified in Declarations, as amended in this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
**Archive Copy**
Copyright, Insurance Services Office, Inc., 2000

ENDORSEMENT No. 24

This endorsement, effective 12:01 AM:  July 1, 2007

Forms a part of policy no:          9835034

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Non-Concurrency Endorsement

This policy is amended as follows:

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

If any of the policy periods of **Scheduled Underlying Insurance**, (including any renewals and replacements thereof) apply nonconcurrently with the **Policy Period** of this policy, and in the event of reduction or exhaustion of the aggregate limit(s) of the underlying policy(ies) by payment of damages taking place during the policy period of such underlying policy(ies), **we** will:

1. In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

2. In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance;

subject to the definitions, conditions and exclusions of the applicable underlying policy(ies).

Coverage under this policy, however, applies only to **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** that takes place during the **Policy Period** of this policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

81581 (02/03)
AH1077                    *Archive Copy*

**ENDORSEMENT No.** 25

**This endorsement, effective 12:01 AM:**  July 1, 2007

**Forms a part of policy no:**        9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Amendment Of Contractual Liability Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS**, Paragraph C. is deleted in its entirety and replaced by the following:

**Contractual Liability**

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to liability for damages:

1.  that the **Insured** would have in the absence of a contract or agreement; or

2.  assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the **Insured Contract**.   Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

    a.  liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

    b.  such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

86454 (8/04)
AH1435                  *Archive Copy*

**ENDORSEMENT No.** 26

**This endorsement, effective 12:01 AM:**  July 1, 2007

**Forms a part of policy no:**          9835034

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Amendment of Various Personal Injury and Advertising Injury
Exclusion Endorsement
(Amendment of Exclusion U.)**

This policy is amended as follows:

**Section V. EXCLUSIONS, U. Various Personal Injury and Advertising Injury**, Paragraph 2. is deleted in its entirety and replaced by the following:

2.   arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of the **Insured** with knowledge of its falsity;

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

89452 (6/05)
AH1672                    *Archive Copy*

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

*Archive Copy*

# FORMS SCHEDULE

**Named Insured:**   MCKESSON CORPORATION

**Policy Number:**          5443284
**Effective 12:01 AM:**   July 1, 2008

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | UMB PRIME DEC | 80518 | (10/04) |
| | UMB PRIME JACKET | 80517 | (05/06) |
| | SCHEDULE OF UNDERLYING | UNDSCH | (05/99) |
| | POLICYHOLDER DISC - NOTICE OF TERRORISM INS COVG | 96556 | (01/08) |
| 1 | RETAINED LIMIT AMENDATORY ENDORSEMENT | MNSCPT | (06/08) |
| 2 | EMPLOYEE BENEFITS LIAB LIMIT (CM) | 83073 | (09/03) |
| 3 | NON-CONCURRENCY END'T | 81581 | (02/03) |
| 4 | SIR APP TO SPEC.COV.AFTR. UNDER. LMT.ARE RED.OR EX | 87233 | (12/04) |
| 5 | AMEND.OF VARIOUS PER.INJ.AND ADV.INJ.EXCL.END.AMEN | 89452 | (06/05) |
| 6 | NAMED PERIL AND TIME ELEMENT POLL. SIR END. PCOH V | 89470 | (06/05) |
| 7 | ACT OF TERRORISM SIR ENDORSEMENT | 83049 | (03/06) |
| 8 | INDUSTRIAL AID AIRCRAFT LIMITATION ENDORSEMENT | 81912 | (05/06) |
| 9 | EMP.LIAB.STOP-GAPLMT.ENDT | 82616 | (05/06) |
| 10 | CRISISRESPONSE COVERAGE ENHANCEMENT ENDORSEMENT | 94621 | (05/07) |
| 11 | SPECIFIED PRODUCTS EXCL | 83097 | (09/03) |
| 12 | CA. CANCEL AND NONRENEWAL AMEND. ENDT. | 81589 | (10/04) |
| 13 | DUTIES IN THE EVENT OF AN OCC. CLAIM OR SUIT | 86456 | (08/04) |
| 14 | LIMITS. OF INS. AMEND. ENDT. DEL. OF PARA. E. | 86460 | (08/04) |
| 15 | NOTICE OF OCCURRENCE | 80454 | (07/02) |
| 16 | FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT | 80432 | (07/02) |
| 17 | DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM OR SUI | 83687 | (09/07) |
| 18 | THIRD PARTY DISCRIMINATION COVERAGE ENDORSEMENT | 80494 | (07/02) |
| 19 | ARBITRATION COND END (EXCL Q, DOMICILE ST.) | 82425 | (06/03) |
| 20 | ADDITIONAL NAMED INSURED | MNSCPT | (07/08) |
| 21 | NEW ACQUISITIONS ENDORSEMENT | MNSCPT | (06/08) |
| 22 | AMENDMENT OF CONDITION D, CANCELLLATION CLAUSE | MNSCPT | (06/08) |
| 23 | INCIDENTAL MEDICAL MALPRACTIVE ENDORSEMENT | MNSCPT | (06/08) |
| 24 | JOINT VENTURE - SCALE / SCALE WITH FINAL ADJ | MNSCPT | (06/08) |
| 25 | MANUFACTURE OF DRUGS EXCLUSION | MNSCPT | (06/08) |
| 26 | KNOWLEDGE OF OCCURRENCE | MNSCPT | (06/08) |
| 27 | UNINSURED/UNDERINSURED MOTORIST COVERAGE END | 82610 | (02/07) |

*Archive Copy*

**AIG** AMERICAN INTERNATIONAL COMPANIES®

## Umbrella Prime®
## Commercial Umbrella Liability Policy With CrisisResponse®

### DECLARATIONS

The company issuing this policy is indicated by an "X" in the box to the left of the company's name.

| | | | |
|---|---|---|---|
| ☐ | AIG Casualty Company | ☐ | Granite State Insurance Company |
| ☐ | AIU Insurance Company | ☐ | Illinois National Insurance Company |
| ☐ | American Home Assurance Company | ☐ | National Union Fire Insurance Company of Louisiana |
| ☐ | American International Pacific Insurance Company | ☒ | National Union Fire Insurance Company of Pittsburgh, Pa. |
| ☐ | American International South Insurance Company | ☐ | New Hampshire Insurance Company |
| ☐ | Commerce & Industry Insurance Company | ☐ | The Insurance Company of the State of Pennsylvania |

(each of the above being a capital stock company)

**Executive Offices: 70 Pine Street, New York, NY 10270**
**Telephone No. 212-770-7000**

---

**POLICY NUMBER:** 5443284 **RENEWAL OF:** 9835034

**ITEM 1. NAMED INSURED:** MCKESSON CORPORATION

      **MAILING ADDRESS:** 1 POST ST STE 3275
                           SAN FRANCISCO, CA 94104

**ITEM 2. POLICY PERIOD: FROM:** July 1, 2008        **TO:** July 1, 2009
                  **(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)**

**ITEM 3. LIMITS OF INSURANCE**

    The Limits of Insurance, subject to the terms of this policy, are:

    A. $45,000,000     **Each Occurrence**
    B. $45,000,000     **General Aggregate** (in accordance with Section IV. Limits of Insurance)
    C. $45,000,000     **Products-Completed Operations Aggregate** (in accordance with Section IV. Limits of Insurance)
    D. $250,000         **CrisisResponse Sublimit of Insurance**
    E. $50,000           **Excess Casualty CrisisFund Limit of Insurance**

**ITEM 4. SCHEDULED UNDERLYING INSURANCE -**

**ITEM 5. SELF-INSURED RETENTION -** $25,000       **Each Occurrence**

**ITEM 6. PREMIUM AND PREMIUM COMPUTATION**

      ESTIMATED TOTAL ANNUAL EXPOSURE      N/A
      RATES PER                               FLAT
      MINIMUM PREMIUM                  $992,000.00
      ADVANCE PREMIUM                  $992,000.00

**ITEM 7. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: SEE ATTACHED SCHEDULE**

**PRODUCER NAME:** MARSH USA, INC.
**ADDRESS:**          ONE CALIFORNIA STREET
                      SAN FRANCISCO, CA 94111

_(signature)_

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾    ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**Authorized Representative or**               **Date**
**Countersignature (Where Applicable)**

80518 (10/04)
AH0876

*Archive Copy*

**Issue Date:** 07/10/08

**Umbrella Prime**®
**Commercial Umbrella Liability Policy With CrisisResponse**®

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII. Definitions.

Except for headings, words that appear in bold print have special meaning. See Section VII. Definitions.

---

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

## I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY

A. We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B. This policy applies, only if:

1. the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2. the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C. 1. This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

2. **Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D. **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

2. receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

3. becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

E. Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F. If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

## II. INSURING AGREEMENT-CRISISRESPONSE® AND EXCESS CASUALTY CRISISFUND®

A. **CrisisResponse**

We will advance **CrisisResponse Costs** directly to third parties on behalf of the **Named Insured**, regardless of fault, arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **CrisisResponse Sublimit of Insurance**.

B. **Excess Casualty CrisisFund**

We will pay **Crisis Management Loss** on behalf of the **Named Insured** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Excess Casualty CrisisFund Limit of Insurance**.

C. A **Crisis Management Event** will first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and will end when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

D. There will be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**.

E. Any advancement of **CrisisResponse Costs** or payment of **Crisis Management Loss** that we make under the coverage provided by this Section II. will not be a determination of our obligations under this policy, nor create any duty to defend any **Suit** under any other part of this policy.

## III. DEFENSE PROVISIONS

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

*Archive Copy*

B.  We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C.  When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

1.  investigate, negotiate and settle the **Suit** as we deem expedient; and

2.  pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

    a.  premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    b.  premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    c.  all court costs taxed against the **Insured** in the **Suit**;

    d.  pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

    e.  post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

    f.  the **Insured's** expenses incurred at our request or with our consent.

D.  Except as provided in Paragraph A. above, we will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

E.  We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

---

## IV.  LIMITS OF INSURANCE

A.  The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

1.  **Insureds**;

2.  claims made or **Suits** brought;

3.  persons or organizations making claims or bringing **Suits**; or

4.  coverages provided under this policy.

B.  The General Aggregate Limit stated in Item 3. of the Declarations is the most we will pay for all damages under this policy, except for:

1.  damages included within the **Products-Completed Operations Hazard**; and

2.  damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

C. The Products-Completed Operations Aggregate Limit stated in Item 3C. of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

D. Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3A. of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence**.

E. Subject to Paragraphs B. and C. above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

F. This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

   1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

   2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G. If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

   1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

   2. in the event of exhaustion, continue in force as underlying insurance.

H. Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance**, then such expenses will reduce the applicable Limits of Insurance of this policy.

I. The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **CrisisResponse Sublimit of Insurance** will be part of, not in addition to, the applicable Limit of Insurance.

J. The **Excess Casualty CrisisFund Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **Excess Casualty CrisisFund Limit of Insurance** will be in addition to the applicable Limit of Insurance.

K. We will have no obligation to advance **CrisisResponse Costs** when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

L. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M. We will not make any payment under this policy unless and until:

   1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss**; or

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

---

## V.  EXCLUSIONS

### A.  Aircraft and Watercraft

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft  that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that  is:

1. less than 26 feet long; and

2. not being used to carry persons or property for a charge.

### B.  Asbestos

This insurance does not apply to any liability arising out of:

1. the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2. any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3. any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

### C.  Contractual Liability

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1. that the **Insured** would have in the absence of a contract or agreement; or

2. assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

   a. liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

b. such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

**D. Damage to Impaired Property or Property Not Physically Injured**

This insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**E. Damage to Property**

This insurance does not apply to **Property Damage** to:

1. property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

3. property loaned to you;

4. personal property in the care, custody or control of the **Insured**;

5. that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6. that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

**F. Damage to Your Product**

This insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

**G. Damage to Your Work**

This insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**H. Electronic Chatrooms or Bulletin Boards and Electronic Data**

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.  Additionally, this insurance does not apply to damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

I.  **Employees and Volunteers**

This insurance does not apply to liability of any employee or volunteer qualifying as an **Insured** under this policy arising out of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**:

1.  to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2.  to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1. above;

3.  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1. or 2. above; or

4.  arising out of his or her providing or failing to provide professional health care services.

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of **Bodily Injury** or **Personal Injury and Advertising Injury** if such coverage is provided by **Scheduled Underlying Insurance**. Coverage under this policy for **Bodily Injury** or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

J.  **Employment Practices**

This insurance does not apply to any liability arising out of:

1.  failure to hire any prospective employee or any applicant for employment;

2.  dismissal, discharge or termination of any employee;

3.  failure to promote or advance any employee; or

4.  employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

    a.  coercion, harassment, humiliation or discrimination;
    b.  demotion, evaluation, reassignment, discipline, or retaliation;
    c.  libel, slander, humiliation, defamation, or invasion of privacy; or
    d.  violation of civil rights.

This exclusion applies:

1.  whether the **Insured** may be liable as an employer or in any other capacity; and

2.  to any obligation to share damages with or repay someone else who must pay damages because of the injury.

*Archive Copy* ©2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

K. **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

M. **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

N. **Media and Internet Type Businesses**

This insurance does not apply to **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1. advertising, broadcasting, publishing or telecasting;

2. designing or determining content of web-sites for others; or

3. an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1., U2. and U3. of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

O. **"No-Fault, " "Uninsured Motorist" or "Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P. **Nuclear Liability**

This insurance does not apply to:

1. any liability:

**Archive Copy**
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

a.  with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

b.  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

c.  for **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

    i)   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

    ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

    iii) the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

2.  As used in this exclusion:

a.  "hazardous properties" includes radioactive, toxic or explosive properties;

b.  "nuclear material" means source material, special nuclear material or by-product material;

c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto ;

d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

f.  "nuclear facility" means:

    i)   any nuclear reactor;

    ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

    iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

g. "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h. **Property Damage** includes all forms of radioactive contamination of property.

Q. **Pollution**

This insurance does not apply to:

1. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1) **Products-Completed Operations Hazard**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

a) discarded, dumped, abandoned, thrown away; or

b) transported, handled, stored, treated, disposed of or processed as waste;

by anyone.

2) **Hostile Fire**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3) **Equipment to Cool, Dehumidify, or Heat the Building and Contractor/Lessee Operations**

Paragraph 1. of this exclusion does not apply to:

a) **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment used to heat water for personal use, by the building's occupants or their guests;

b) **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

Paragraph 1. of this exclusion does not apply to:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto**

Paragraph 1. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1. of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

R. **Recall of Your Product, Your Work or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product**;

2. **Your Work**; or

3. **Impaired Property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. **Securities**

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This insurance does not apply to any liability arising out of:

1. any violation of any securities law or similar law or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

**T. Unauthorized Use of Another's Name or Product**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**U. Various Personal Injury and Advertising Injury**

This insurance does not apply to **Personal Injury and Advertising Injury**:

1. caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2. arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3. arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the **Policy Period**;

4. arising out of a criminal act committed by or at the direction of the **Insured**;

5. for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6. arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7. arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or

8. arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

**V. Various Laws**

This insurance does not apply to any obligation of the **Insured** under any of the following:

1. the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2. any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

**W. Violation of Communication or Information Law**

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

## X. War

This insurance does not apply to **Loss**, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war; or

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

---

## VI. CONDITIONS

### A. Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

### B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

### C. Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

### D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The **Policy Period** will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6. of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check

---

80517 (5/06)

AH2007

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.  The first **Named Insured** in Item 1. of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E.  **Change In Control**

If during the **Policy Period**:

1.  the first **Named Insured** designated in Item 1. of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2.  any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1. of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction.

Coverage will be afforded by this policy for **Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth (90th) day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1. of the Declarations or the end of the **Policy Period**, whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

F.  **Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

G.  **Duties in the Event of an Occurrence, Claim or Suit**

1.  You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

    a.  how, when and where the **Occurrence** took place;

    b.  the names and addresses of any injured persons and any witnesses; and

    c.  the nature and location of any injury or damage arising out of the **Occurrence**.

2.  If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

    Written notice should be mailed, delivered, faxed or emailed to:

80517 (5/06)
AH2007
Page 14 of 24
© 2001 American International Group, Inc.
*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

AIG Domestic Claims, Inc.
Excess Casualty Claims Department
Segmentation Unit
175 Water Street, 22nd Floor
New York, NY 10038
Fax: (866) 743-4376
Email: excessfnol@aig.com

3.  You and any other involved **Insured** must:

    a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

    b.  authorize us to obtain records and other information;

    c.  cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

    d.  assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.  No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

## H.  Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

## I.  Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

## J.  Legal Actions Against Us

No person or organization has a right under this policy:

1.  to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2.  to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

## K.  Maintenance of Scheduled Underlying Insurance

You agree that during the **Policy Period**:

1.  you will keep **Scheduled Underlying Insurance** in full force and effect;

2.  the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss** to which this policy applies; and

4. any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L. **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M. **Premium**

The first **Named Insured** designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6. of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 6. of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we will retain the Minimum Premium as shown in Item 6. of the Declarations for each twelve months of the **Policy Period**.

N. **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1. of the Declarations, this insurance applies:

1. as if each **Named Insured** were the only **Named Insured**; and

2. separately to each **Insured** against whom claim is made or **Suit** is brought.

O. **Transfer of Rights of Recovery**

1. If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2. Any recoveries will be applied as follows:

   a. any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b. we then will be reimbursed up to the amount we have paid; and

   c. lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

*Archive Copy*
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization

P. **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q. **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R. **Violation of Economic or Trade Sanctions**

If coverage for a claim or **Suit** under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

## VII. DEFINITIONS

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. **Auto** means:

1. a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2. any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

However, **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

D. **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

1. damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

2. significant adverse regional or national media coverage.

**Archive Copy** © 2001 American International Group, Inc.  
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E.  **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event**.

F.  **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

　　1.  amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

　　2.  amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

G.  **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

H.  **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

　　1.  medical expenses;

　　2.  funeral expenses;

　　3.  psychological counseling;

　　4.  travel expenses;

　　5.  temporary living expenses;

　　6.  expenses to secure the scene of a **Crisis Management Event**; and

　　7.  any other expenses pre-approved by the Company.

　　**CrisisResponse Costs** does not include defense costs or **Crisis Management Loss**.

I.  **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 3D. of the Declarations.

J.  **Excess Casualty CrisisFund Limit of Insurance** means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K.  **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L.  **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

　　1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

　　2.  you have failed to fulfill the terms of a contract or agreement;

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2. your fulfilling the terms of the contract or agreement.

M. **Insured** means:

1. the **Named Insured**;

2. if you are designated in the declarations as:

   a. an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

   b. a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. a limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers;

   d. an organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders;

   e. a trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees;

3. your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4. your volunteer workers only while performing duties related to the conduct of your business;

5. any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6. your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7. any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.

   Notwithstanding any of the above:

   a. no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

   b. no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

N. **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

O. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship).  A **Key Executive** also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

P. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

Q. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

   a. equipment designed primarily for:

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

       i)   snow removal;

       ii)  road maintenance, but not construction or resurfacing; or

       iii) street cleaning;

   b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **Mobile Equipment** does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law are considered **Autos.**

R.  **Named Insured** means:

   1.  any person or organization designated in Item 1. of the Declarations;

   2.  as of the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

   3.  after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

      a.  coverage provided to such organization under this paragraph  does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

      b.  you give us prompt notice after you acquire or form such organization.

      Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

      We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**. If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured,** under the highest applicable limit of **Scheduled Underlying Insurance**.

S.  **Occurrence** means:

   1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

   2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**.  All damages that arise from the same, related or repeated injurious

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T.   **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

U.   **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.   false arrest, detention or imprisonment;

2.   malicious prosecution;

3.   the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4.   oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.   oral or written publication, in any manner, of material that violates a person's right of privacy;

6.   the use of another's advertising idea in your **Advertisement**; or

7.   infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

V.   **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of termination of this policy.

W.   **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

X.   **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1.   products that are still in your physical possession; or

2.   work that has not yet been completed or abandoned.  However, **Your Work** will be deemed completed at the earliest of the following times:

a.   when all of the work called for in your contract has been completed;

b.   when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

c.   when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1.   the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

Y. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z. **Retained Limit** means:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2. the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA. **Scheduled Underlying Insurance** means:

1. the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB. **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

CC. **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD. **Your Product** means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or

*Archive Copy*

products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

EE. **Your Work** means:

1 work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2. the providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

By signing below, our President and Secretary agree on our behalf to all the terms of this policy.

_____                    _____
Secretary                                                    President

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.

_____
Authorized Representative

*Archive Copy* © 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Commercial Umbrella Liability Policy with CrisisResponse**

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: MCKESSON CORPORATION                    Policy Number:        5443284

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | Old Republic<br>07/01/08<br>07/01/08 | $5,000,000<br>EACH OCCURRENCE<br>$5,000,000<br>GENERAL AGGREGATE<br>$5,000,000<br>PRODUCTS/C. OPS. AGGREGATE<br><br>Defense Expenses are in addition to the limit |
| FOREIGN GL LIABILITY | INSURANCE CO STATE OF PA<br>10/01/07<br>10/01/08 | $1,000,000<br>EACH OCCURRENCE<br>$2,000,000<br>GENERAL AGGREGATE<br>$2,000,000<br>PRODUCTS / COMP/ OPS AGG.<br>$4,000,000<br>POLICY AGGREGATE<br><br>Defense Expenses are in addition to the limit |
| AUTO LIABILITY | Old Republic<br>07/01/08<br>07/01/09 | $1,000,000<br>COMBINED SINGLE LIMIT<br><br>Defense Expenses are in addition to the limit |
| AUTO LIABILITY (CANADA) | Old Republic<br>07/01/08<br>07/01/09 | $1,000,000<br>COMBINED SINGLE LIMIT<br><br>Defense Expenses are in addition to the limit |

UNDSCH (5/99)
AH0006

*Archive Copy*

**Commercial Umbrella Liability Policy with CrisisResponse**

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: MCKESSON CORPORATION          Policy Number:          5443284

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| FOREIGN AL LIABILITY | INSURANCE CO STATE OF PA 10/01/07 10/01/08 | $1,000,000 COMBINED SINGLE LIMIT |
| | | Defense Expenses are in addition to the limit |
| EMPLOYERS LIABILITY | Old Republic 07/01/08 07/01/09 | $5,000,000 EACH ACCIDENT $5,000,000 DISEASE EACH EMPLOYEE $5,000,000 DISEASE POLICY LIMIT |
| | | Defense Expenses are in addition to the limit |
| EMPLOYERS LIABILITY (SELF INSURED STATES) | Old Republic 07/01/08 07/01/09 | $4,900,000 EACH ACCIDENT $4,900,000 DISEASE EACH EMPLOYEE $4,900,000 DISEASE POLICY LIMIT EXCESS OF $100,000 SELF INSURED RETENTION |
| | | Defense Expenses are in addition to the SIR Defense Expenses are in addition to the limit |
| FOREIGN EMPLOYERS LIABILITY | INSURANCE CO STATE OF PA 10/01/07 10/01/08 | $1,000,000 EACH ACCIDENT $1,000,000 DISEASE EACH EMPLOYEE $1,000,000 DISEASE POLICY LIMIT |
| | | Defense Expenses are in addition to the limit |

UNDSCH (5/99)
AH0006

*Archive Copy*

Commercial Umbrella Liability Policy with CrisisResponse

**SCHEDULE OF UNDERLYING INSURANCE**

Issued to: MCKESSON CORPORATION                    Policy Number:        5443284

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| UK EMPLOYERS LIABILITY | INSURANCE CO STATE OF PA 10/01/07 10/01/08 | 10,000,000 Pounds EACH ACCIDENT |
| | | Defense Expenses are in addition to the limit |
| FOREIGN EMPLOYEE BENEFITS LIABILITY | INSURANCE CO STATE OF PA 10/01/07 10/01/08 | $1,000,000 EACH CLAIM $1,000,000 AGGREGATE |
| | | Defense Expenses are in addition to the limit |

_signature_

AUTHORIZED REPRESENTATIVE

UNDSCH (5/99)
AH0006

*Archive Copy*

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury--in concurrence with the Secretary of State, and the Attorney General of the United States--to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $9,821.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

96556 (1/08)
© 2007 National Association of Insurance Commissioners

**Archive Copy**

**ENDORSEMENT NO.** 1

**This endorsement, effective 12:01 AM:**   July 1, 2008

**Forms a part of policy no.:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy With CrisisResponse** ®

**Retained Limit Amendatory Endorsement**

This policy is amended as follows:

Solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

1.      The **DECLARATIONS, ITEM 5. SELF INSURED RETENTION** is deleted in its entirety.

2.      **Section IV. LIMITS OF INSURANCE,** Paragraphs B., G., H. and M. are deleted in their entireties and replaced by the following:

     B.      The General Aggregate Limit is the most we will pay for all damages covered under this policy except:

          1.      damages included within the **Products-Completed Operations Hazard,** and

          2.      damages because of **Bodily Injury** or **Property Damage** to which this insurance applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto.**

     G.      If the total applicable Retained Limit(s) listed in the Schedule of Retained Limits are reduced or exhausted by payment of **Loss** to which this policy applies, we will:

          1.      in the event of reduction, pay in excess of the remaining underlying **Retained Limits,** or

          2.      in the event of exhaustion of the underlying **Retained Limits,** continue in force as underlying insurance.

     H.      **Defense Expenses** will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if the amount of applicable **Retained Limit** over which this policy applies immediately in excess is specifically designated in the Schedule of Retained Limits as including **Defense Expenses,** then solely with respect to coverage afforded by this policy that is subject to such Retained Limit, such **Defense Expenses** will reduce the applicable Limits of Insurance of this policy.

*Archive Copy*

ENDORSEMENT NO. 1 (Continued)

    M.    We will not make any payment under this policy unless and  until the total applicable **Retained Limit(s)** have been exhausted  by the payment of **Loss** to which this  policy applies and any applicable **Other Insurance** have been exhausted.

    When the amount  of **Loss** has  been determined by  an agreed settlement  or a  final judgment, we will promptly  pay on behalf of  the **Insured**  the amount of  such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us,  the **Insured** and the claimant  or the claimant's legal representative.

3.    **Section  III. DEFENSE PROVISIONS,**  Paragraph A. is  deleted in its  entirety and replaced  by the following:

    **III.  DEFENSE PROVISIONS**

    A.    We will  have  the right  and  duty  to defend  any  **Suit** against  the  **Insured**  that seeks damages for  **Bodily Injury**, **Property Damage**  or **Personal  Injury and  Advertising Injury** covered by  this  policy, even  if  the **Suit**  is  groundless, false  or  fraudulent when  the applicable limits  listed  in  the  Schedule  of  Retained  Limits  have  been  exhausted  by payment of **Loss** to which this policy applies.

    If we are prevented by law or statute from assuming the obligations specified  under this provision, we will pay any expenses incurred with our consent.

4.    **Section V. EXCLUSIONS**, Paragraphs I.1., I.2., I.3.,  and M. are deleted in their entireties.

5.    **Section V. EXCLUSIONS**, Paragraph Q. is amended as follows:

    The last two sentences of  Paragraph Q. are deleted and  the clause "However, Paragraph  1 of this exclusion will not  apply if coverage for  such Bodily Injury or  Property Damage as is described in  subparagraphs 1)  through 6) below  is provided by Scheduled Underlying Insurance:", is deleted in its entirety and replaced by the following:

    However, this  exclusion  will not  apply  as  described  in  subparagraphs 1)  through  6) below:

    provided, however, that the above amendments  to **Section V. EXCLUSIONS,** Paragraph  Q., do not apply if a separate  endorsement attached to this policy deletes  and replaces **Section V. EXCLUSIONS**, Paragraph Q.

6.    **Section VII. DEFINITIONS** is amended to include the following additional definition:

    **Defense Expenses** mean payment(s) allocated to  the investigation, settlement or defense  of a specific loss, claim or **Suit,** including but not limited to:

    1.    Attorney's fees and all other investigation, loss adjustment and litigation expenses,

    2.    Premiums on bonds to release attachments,

    3.    Premiums on appeal bonds required by law to appeal any claim or **Suit**,

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

    4.       Costs taxed against the **Insured** in any claim or **Suit**,

    5.       Pre-judgment interest awarded against the **Insured**, and

    6.       Interest that accrues after entry of judgment.

7.     **Section VII. DEFINITIONS**, Paragraph D., subparagraph 1. is deleted and replaced by the following:

    1. damages covered by this policy that are in excess of the **Retained Limit**, and

8 .    **Section VII. DEFINITIONS**, Paragraph M. is amended to include the following additional subparagraph:

    8. Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations, including **Your Work** and **Your Product**, or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

        a. The coverages and Limits of Insurance of this policy, or

        b. The coverage and Limits of Insurance required by said contract or agreement.

However, no such person or organization is an **Insured** by virtue of this provision 8. of this Paragraph M. of Section VII. if such person or organization is a partnership, joint venture or limited liability company of which the **Named Insured** is a partner or member, or is a partner or member of such partnership, joint venture or limited liability company.

9.     **Section VII. DEFINITIONS**, the phrase "Notwithstanding any of the above:" and subparagraphs a. and b. thereunder appearing at the end of Paragraph M. are deleted in their entireties and replaced by the following:

    Notwithstanding any of the above provisions 1. through 7. of this Paragraph M. of Section VII., no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations.

10.    **Section VII. DEFINITIONS**, Paragraph P. is deleted in its entirety and replaced by the following:

    P.    **Loss** means those sums actually paid as judgments or settlements, provided, however, that if the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then **Loss** shall include such **Defense Expenses**.

11.    **Section VII. DEFINITIONS**, Paragraph R. is deleted in its entirety and replaced by the following:

*Archive Copy*

ENDORSEMENT NO. 1 (Continued)

**R.  Named Insured** means:

1.  any person or organization designated in Item 1 of the Declarations,

2.  as of  the inception  date of  this policy, any  organization in  which you  maintain an interest of more  than fifty  percent (50%)  as  of the effective date  of this  policy, provided that coverage provided to such organization under this paragraph  does not apply to any **Bodily  Injury** or **Property Damage**  that occurred or  any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization, and

3.  after  the inception  date of  this policy,  any organization,  except for  a partnership, joint venture or limited liability  company, that you acquire or  form during the **Policy Period** in which you maintain an interest  of more than fifty percent (50%),  provided that:

    a.  coverage  provided to such organization under  this paragraph  does not  apply to any **Bodily Injury**  or **Property Damage**  that occurred or  any **Personal  Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired  or formed  such organization  or after  you ceased  to  maintain an interest of more than fifty percent (50%) in such organization, and

    b.  you give us prompt notice after you acquire or form such organization.

    Subject to the provisions of  Paragraphs 3a. and 3b.  above, a partnership, joint  venture or limited liability  company that  you acquire  or form  during the  **Policy Period**  may be added as an **Insured** only by a written endorsement that we make a part of this policy.

    We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

12.   **Section VII. DEFINITIONS**, Paragraph Z.  is deleted  in its  entirety and  replaced by the following:

**Z.  Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

The **Retained Limit(s)** listed in the Schedule  of Retained Limits will apply whether or  not there is any  available **Scheduled Underlying Insurance**  or **Other  Insurance**.  If there is **Scheduled  Underlying  Insurance**  or **Other  Insurance**  applicable to a **Loss**,  amounts received through such **Scheduled  Underlying Insurance** or  **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

a.  If  the  applicable **Retained Limit** is  specifically designated  in the Schedule  of Retained Limits as including  **Defense Expenses**, then  amounts received through **Scheduled Underlying  Insurance** or  **Other Insurance**  providing coverage to  the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit.**

b.  If the  applicable **Retained Limit** is not specifically designated  in the Schedule  of Retained Limits as including  **Defense Expenses**, then  amounts received through

*Archive Copy*

ENDORSEMENT NO. 1 (Continued)

Scheduled Underlying Insurance or Other Insurance providing coverage to the Insured for the payment of Defense Expenses shall not reduce the Retained Limit.

13.  Section VI. CONDITIONS, Paragraphs A. and C. are deleted in their entireties and replaced by the following:

A.  Appeals

If the Insured or the Insured's underlying insurers do not appeal a judgment in excess of the total applicable Retained Limit(s), we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

C.  Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of Loss covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation within a Retained Limit.

14. If another endorsement attached to this policy states specifically that the provisions therein supercede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

*Archive Copy*

**ENDORSEMENT NO.** 1 (Continued)

### Schedule of Retained Limits

| Coverage(s) | Retained Limit(s) | |
|---|---|---|
| **GENERAL LIABILITY** | $5,000,000 | **EACH OCCURRENCE** |
| | $5,000,000 | **PERSONAL& ADVERTISING INJURY** |
| | $7,500,000 | **GENERAL AGGREGATE** |
| | **DEFENSE COSTS ARE INCLUDED THE RETAINED LIMIT** | |
| **PRODUCTS / COMPLETED OPERATIONS** | $5,000,000 | **EACH OCCURRENCE** |
| | **DEFENSE COSTS ARE INCLUDED THE RETAINED LIMIT** | |
| **EXCESS AUTO LIABILITY** | $4,000,000 **EXCESS OF** | **COMBINED SINGLE LIMIT** |
| | $1,000,000 | **COMBINED SINGLE LIMIT** |
| | **DEFENSE COSTS ARE IN ADDITION TO THE RETAINED LIMIT** | |

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT No. 2**

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**®

**Employee Benefits Liability Limitation Claims Made Version Endorsement**

**NOTICE:  Please read this endorsement carefully.  This endorsement provides coverage on a  claims made basis.  Except to the extent as may otherwise be provided herein, the coverage of this insurance is generally limited to liability for only those claims that are first made during the Policy Period and reported in writing to us.**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employee Benefits Liability**

This insurance does not apply to any liability arising out of:

1.  any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

2.  any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

    a.  giving counsel to employees with respect to a **Plan**;

    b.  interpreting a **Plan**;

    c.  handling of records in connection with a **Plan**;

    d.  effecting enrollment, termination or cancellation of employees under a **Plan**; or

    e.  any claim against an **Insured** solely by reason of his, her or its status as an administrator, the **Plan** or you as sponsor of the **Plan**.

However, this exclusion will not apply only if and to the extent that coverage for such liability is provided by **Scheduled Underlying Insurance**.

Solely as respects this endorsement, this policy will only provide coverage for a **Claim** made against the **Insured** during the **Policy Period**:

    a)  If the insurance provided by **Scheduled Underlying Insurance** provides coverage for **Occurrences** occurring on or after a specified Retroactive Date for a claim for damages because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** first made in writing against any **Insured** in accordance with Paragraph b) below during the **Policy Period** or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

b) A **Claim** by any person or organization seeking damages will be deemed to have been made at the earlier of the following times:

1. When notice of such **Claim** is received and recorded by any **Insured** in writing and reported to us during the Policy Period or any applicable extended reporting period; or

2. When we make settlement in accordance with Paragraph a) above.

Notwithstanding the above, this insurance shall not apply to:

1. any **Claim** alleging or arising out of an **Occurrence** committed on or after the Retroactive Date set forth in the **Schedule Underlying Insurance**, if the **Insured**, an officer, manager in your risk management, insurance or legal department or an employee who was authorized by you to give or receive notice of an **Occurrence**, knew as of the Continuity Date shown above that such **Occurrence** could result in a **Claim**.

2. any **Claim** alleging or arising out the same **Occurrence** or series of continuous, repeated or related **Occurrences** or alleging the same or similar facts, alleged or contained in any **Claim** which has been reported, or any **Occurrence** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

3. any **Claim** alleging or arising out of any **Claim** or **Suit** pending as of the Continuity Date; or alleging or arising out of or relating to any fact, circumstance, situation or **Occurrence** alleged in such **Claim** or **Suit**.

If **Scheduled Underlying Insurance** does not contain a Continuity Date, the Continuity Date will be the Retroactive Date.

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Claim** means a written demand upon the **Insured** for compensatory damages or services and shall include the service of **Suit** or institution of arbitration proceedings against the **Insured**.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **Plan** is subject.

**Plan** means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of **ERISA** or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1. a welfare plan, as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. a pension plan as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3. a combination of 1. and 2. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

*Archive Copy*

**ENDORSEMENT No.** 3

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no:** 5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Non-Concurrency Endorsement**

This policy is amended as follows:

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

If any of the policy periods of **Scheduled Underlying Insurance**, (including any renewals and replacements thereof) apply nonconcurrently with the **Policy Period** of this policy, and in the event of reduction or exhaustion of the aggregate limit(s) of the underlying policy(ies) by payment of damages taking place during the policy period of such underlying policy(ies), **we** will:

1.  In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

2.  In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance;

subject to the definitions, conditions and exclusions of the applicable underlying policy(ies).

Coverage under this policy, however, applies only to **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** that takes place during the **Policy Period** of this policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

81581 (02/03)
AH1077            *Archive Copy*

## ENDORSEMENT No. 4

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Self Insured Retention Applicable To Specified Coverage After Underlying Limits Are Reduced or Exhausted Endorsement

This policy is amended as follows:

This endorsement will apply to the below **Specified Coverage** only:

GENERAL LIABILITY

The **Declarations**, **ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional **Self Insured Retention**:

**Specified Coverage** Self Insured Retention -  $250,000            Each Occurrence

**Section III. DEFENSE**, Paragraph A. is deleted and replaced by the following:

>   We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the greater of:
>
>   1.  the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance,** or
>
>   2.  the **Specified Coverage** Self Insured Retention

have been exhausted by payment of **Loss** to which this policy applies;

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

**Section IV. LIMITS OF INSURANCE**, Paragraphs F., G. and M. are deleted in their entireties and replaced by the following:

F.  This policy applies only in excess of the total applicable limits of **Scheduled Underlying Insurance,** any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention whether or not such limits are collectible. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

>   1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or
>
>   2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.  If the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

>   1.  in the event of reduction, pay excess of a.) the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance;** or b.) the **Specified Coverage** Self Insured Retention, whichever is greater; and

**Archive Copy**

2. in the event of exhaustion, pay in excess of the **Specified Coverage** Self Insured Retention.

The **Specified Coverage** Self Insured Retention will apply per **Occurrence**.

M. We will not make any payment under this policy unless and until the greater of:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** have been exhausted by the payment of **Loss** to which this policy applies; or

2. the total applicable **Specified Coverage** Self-Insured Retention has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgement, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

**Section IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The **Specified Coverage** Self Insured Retention will not be reduced by **Defense Expenses**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**; and

6. Interest that accrues after entry of judgment.

**Specified Coverage** means the coverage that is specified at the top of this endorsement.

All other terms, definitions, conditions and exclusions remain unchanged.

_(signature)_

**Authorized Representative**
or Countersignature (in States Where Applicable)

ENDORSEMENT No. 5

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no:** 5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Commercial Umbrella Liability Policy with CrisisResponse®

Amendment of Various Personal Injury and Advertising Injury
Exclusion Endorsement
(Amendment of Exclusion U.)

This policy is amended as follows:

**Section V. EXCLUSIONS, U. Various Personal Injury and Advertising Injury**, Paragraph 2. is deleted in its entirety and replaced by the following:

2.  arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of the **Insured** with knowledge of its falsity;

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

89452 (6/05)
AH1672            *Archive Copy*

ENDORSEMENT No. 6

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Named Peril and Time Element Pollution
### Self-Insured Retention Endorsement
### (Products-Completed Operations Hazard Version)

This policy is amended as follows:

**Section V. EXCLUSIONS**, Paragraph Q. **Pollution** is deleted in its entirety and replaced by the following:

**Pollution**

This insurance does not apply to:

1.  Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.  Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply to **Bodily Injury** or **Property Damage** arising out of:

i.   Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot or civil commotion, flood, earthquake, automatic sprinkler leakage, collision or upset of an **Auto** or **Mobile Equipment** or aircraft; or

ii.  Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** and included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

(a)  discarded, dumped, abandoned, thrown away; or

(b)  transported, handled, stored, treated, disposed of or processed as waste;

by anyone; or

iii. Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** that meets all of the following conditions:

(a) It was accidental and neither expected nor intended by the **Insured**. This condition would not serve to deny coverage for a non-routine incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury** or **Property Damage** could occur;

(b) It was demonstrable as having commenced on a specific date during the **Policy Period**;

(c) Its commencement became known to the **Insured** within (30) calendar days;

(d) Its commencement was reported in writing to us within (80) calendar days of becoming known to any officer of the **Insured;** any manager in your risk management, insurance or legal department; any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or Suit; or any **Insured** authorized or responsible to report the commencement; and

(e) Reasonable effort was expended by the **Insured** to terminate the discharge, dispersal, seepage, migration, release or escape of **Pollutants** as soon as conditions permitted.

However, nothing contained in this endorsement will operate to provide any coverage with respect to:

i. Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

ii. Any fines or penalties;

iii. Any clean up loss, cost or expense arising out of any governmental request, demand, order or statutory or regulatory requirement. However, this provision iii will not apply to third party clean up loss, cost or expense otherwise covered by this endorsement that are also the subject of a governmental request, demand, order or statutory or regulatory requirement;

iv. Acid rain or acid runoff;

v. Clean-up, removal, containment, treatment, detoxification or neutralization of **Pollutants** situated on premises which the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said **Pollutants**; or

vi. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**, or any loss, cost or expense arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** in knowing violation of or non compliance with governmental permits.

For the purpose of this endorsement only, the SELF-INSURED RETENTION in ITEM 5. of the DECLARATIONS, is amended to include the following additional provision:

$5,000,000 Each Occurrence (As respects all damages arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** covered under this endorsement). This Self-Insured Retention will not be reduced by **Defense Expenses**.

The above Self-Insured Retention applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the above Self-Insured Retention if such policies were purchased by the **Named Insured** to specifically apply as underlying insurance to this policy. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the above Self-Insured Retention.

*Archive Copy*

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS** Paragraphs A. and D. are deleted in their entirety and  Paragraph A. is replaced by the following:

We will have no duty to defend any **Suit** against the **Insured** until the above **Self-Insured Retention** is exhausted by payment of **Loss.**  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this endorsement may apply.  If we exercise this right, we will do so at our own expense.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definition:

**Defense Expenses** means a payment allocated to defend a specific **Suit**, including but not limited to:

1.  Attorneys' fees and all other investigation, loss adjustment and litigation expenses;

2.  Premiums on bonds to release attachments;

3.  Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4.  Court costs taxed against the **Insured** in any **Suit**;

5.  Pre-judgment interest awarded against the **Insured**; and

6.  Interest that accrues after entry of judgment.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

89470 (6/05)
AH1690                     Page 3 of 3          ***Archive Copy***

## ENDORSEMENT No. 7

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**  5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Policy with CrisisResponse®

### Act of Terrorism Self-Insured Retention Endorsement

Solely with respect to any **Act of Terrorism**, this policy is amended as follows:

The **DECLARATIONS, ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional Self-Insured Retention:

> **ACT OF TERRORISM SELF-INSURED RETENTION** - $5,000,000 Each **Occurrence** (As respects all liability covered under this policy arising out of any **Act of Terrorism**.)  The **Act of Terrorism Self-Insured Retention** will not be reduced or exhausted by **Defense Expenses**.

**ITEM 6. OF THE DECLARATIONS, PREMIUM AND PREMIUM COMPUTATION** is amended to include the following:

> **ACT OF TERRORISM PREMIUM**        $9,821

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

> The **Act of Terrorism Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**.  If there is **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Act of Terrorism Self-Insured Retention**. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the **Act of Terrorism Self-Insured Retention**.

**Section III. DEFENSE PROVISIONS**, Paragraphs A. 1. and A. 2., and D. are deleted in their entireties, and Paragraph A. is replaced by the following:

> A.  We will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

> **Act of Terrorism** means:
>
> 1.  any act which is verified or recognized by the United States Government as an act of terrorism, including a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions, amendments, or extensions thereto; or

2. the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**;

6. Interest that accrues after entry of judgment.

It is understood and agreed that if any other endorsement to this policy excludes terrorism liability arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No.** 8

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Industrial Aid Aircraft Limitation Endorsement**

This policy is amended as follows:

**ITEM 3. LIMITS OF INSURANCE** of the **DECLARATIONS** is amended to include the following additional **Self-Insured Retention**:

$500,000,000 **Industrial Aid Aircraft Self-Insured Retention**/Each Occurrence.  (As respects claims and **Suits** seeking damages for **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance use, or entrustment to others of any **Industrial Aid Aircraft** owned or operated by or rented or loaned to any **Insured.**  Use includes operation and loading and unloading.)

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS**, Paragraphs A. 1. and A. 2., and D. are deleted in their entirety, and paragraph A. is replaced by the following:

We will have no duty to defend any **Suit** against the **Insured.**  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

The **Industrial Aid Aircraft Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**.  If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to the **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Industrial Aid Aircraft Self-Insured Retention**. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the **Industrial Aid Aircraft Self-Insured Retention**.

The **Industrial Aid Aircraft Self-Insured Retention** will not be reduced by **Defense Expenses.**

For the purpose of this endorsement only and solely with respect to any and all references to aircraft, **Section V. EXCLUSIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

A.  **Aircraft**

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, or entrustment to others of any aircraft owned or operated by or rented or loaned to any **Insured.**  Use includes operation and loading and unloading.

81912 (5/06)
AH1886

**Archive Copy**

Page 1 of 2

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance use, or entrustment to others of any **Industrial Aid Aircraft** owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

It is understood that any and all references to watercraft in **Section V. EXCLUSIONS,** Paragraph A. remains unchanged, unless amended by separate endorsement.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Defense Expenses** means any payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1.  attorney's fees and all other investigation, loss adjustment and litigation expenses;

2.  premiums on bonds to release attachments;

3.  premiums on appeal bonds required by law to appeal any claim or **Suit**;

4.  costs taxed against the **Insured** in any claim or **Suit**;

5.  pre-judgment interest awarded against the **Insured**; and

6.  interest that accrues after entry of judgment.

**Industrial Aid Aircraft** means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used solely for business travel of employees and their non fee paying passenger guests.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

ENDORSEMENT No. 9

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**       5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Employers' Liability / Stop Gap Limitation Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employers' Liability**

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured**.

However, if insurance for such **Bodily Injury** is provided by a policy listed in the **Scheduled Underlying Insurance**:

1.  The above exclusion shall not apply; and

2.  Coverage under this policy for such **Bodily Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

82616 (5/06)
AH1887                    *Archive Copy*

**ENDORSEMENT No.** 10

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**  5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**CrisisResponse Coverage Enhancement Endorsement**

This policy is amended as follows:

It is understood and agreed that in every instance in which the phrase "CrisisResponse Sublimit of Insurance" is referenced in this policy and/or its endorsements, the phrase "CrisisResponse Limit of Insurance" shall be substituted.

**Section IV. LIMITS OF INSURANCE,** Paragraph I. is deleted in its entirety and replaced by the following:

I.   The **CrisisResponse Limit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **CrisisResponse Limit of Insurance** will be in addition to the applicable Limit of Insurance.

All other terms, conditions, definitions and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

94621 (5/07)
AH2035                    *Archive Copy*

**ENDORSEMENT No.** 11

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**      5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Specified Products Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Specified Products**

This insurance does not apply to any liability arising out of the following products listed below:

ANY PRODUCT MANUFACTURED BY ORCHARD PHARMACEUTICAL LTD OR
NICHOLAS PIRAMAL INDIA LTD (NPIL)

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

**Archive Copy**

ENDORSEMENT No. 12

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**        5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy With CrisisResponse®

### California Cancellation and Nonrenewal Amendatory Endorsement

This policy is amended as follows:

I.   **Section VI. CONDITIONS**, **D. Cancellation**, is deleted in its entirety and replaced by the following:

D.   **Cancellation**

1.   You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.   New Policies in Effect for Sixty (60) Days or Less:

We may cancel this policy.  If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason, we must mail to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice.  Such notice will include the reason or reasons for cancellation.

3.   New Policies in Effect for More Than Sixty (60) Days and Any Renewal Policy:

We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

a.   Nonpayment of premium, including payment due on a prior policy issued by us and due during the **Policy Period** covering the same risks;

b.   A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

c.   Discovery of fraud or material misrepresentation by either of the following:

i.   You or other **Insureds** or your representative in obtaining this policy; or
ii.   You or your representative in pursuing a claim under this policy.

d.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or other **Insureds** or a representative of same, which materially increase any of the risks insured against;

e.   Failure by you or other **Insureds** or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan if the failure materially increases any of the risks insured against;

**Archive Copy**

f.   A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

g.   A determination by the commissioner that a continuation of this policy's coverage could place us in violation at the laws at this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

h.   A change by you or other **Insureds** or a representative of same in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the added, increased or changed risk is included in this policy;

i.   A material change in limits, type or scope of coverage or exclusions in **Scheduled Underlying Insurance**;

j.   Cancellation or nonrenewal of any **Scheduled Underlying Insurance** where such insurance is not replaced without lapse; or

k.   A reduction in financial rating or grade of one or more insurers issuing any **Scheduled Underlying Insurance** based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less then ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.  Such notice will include the reason or reasons for cancellation.

4.   The **Policy Period** will end on the day and hour stated in the cancellation notice.

5.   If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 6 of the Declarations.

6.   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 6 of the Declarations.

7.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you.  Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.   The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

II.   **Section VI. CONDITIONS** is amended to include the following additional provision:

**Nonrenewal**

If we decide not to renew this policy, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of nonrenewal at least sixty (60) days, but no more than one hundred twenty (120) days prior to the end of the **Policy Period**.  The notice shall contain the reason or reasons for nonrenewal of this policy.

III. **Section VI. CONDITIONS** is amended to include the following additional provision:

**Increase in Premium, Reduction in Limits or Change in Conditions of Coverage**

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1. Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2. Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3. A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4. A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in this policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in this policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (in States Where Applicable)

**ENDORSEMENT No.** 13

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no:** 5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Duties in the Event of an Occurrence, Claim or Suit**

This policy is amended as follows:

**Section VI. CONDITIONS, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit,** subparagraph 1. is deleted in its entirety and replaced by the following:

1. You must see to it that we are notified as soon as practicable after your corporate officer receives notice from its agent, servant, employee or any other person, of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

   a. how, when and where the **Occurrence** took place;

   b. the names and addresses of any injured persons and any witnesses; and

   c. the nature and location of any injury or damage arising out of the **Occurrence**.

However it is understood that the provisions of this endorsement will not supercede **Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** of the policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

86456 (8/04)
AH1437          *Archive Copy*

ENDORSEMENT No. 14

This endorsement, effective 12:01 AM:   July 1, 2008

Forms a part of policy no:          5443284

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Limits of Insurance Amendatory Endorsement
### (Deletion of Paragraph E.)

This policy is amended as follows:

**Section IV. LIMITS OF INSURANCE,** Paragraph E. is deleted in its entirety.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

86460 (8/04)
AH1441              *Archive Copy*

**ENDORSEMENT No.** 15

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no:** 5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Notice of Occurrence

This policy is amended as follows:

**Section VI. CONDITIONS**, Paragraph G. **Duties in the Event of an Occurrence, Claim or Suit** is amended to include the following provision:

5.   Your failure to give first report of a claim to us will not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you will report any such **Occurrence** to us within a reasonable time once you become aware of such error.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

---

**Authorized Representative**
or Countersignature (in States Where Applicable)

80454 (07/02)
AH0939

***Archive Copy***

ENDORSEMENT No. 16

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**  5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse**[SM]

**Foreign Liability Follow-Form Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following exclusion:

**Foreign Liability**

This insurance does not apply to any liability arising out of an **Occurrence** that takes place outside that United States of America, its territories and possessions, Puerto Rico and Canada.

However, this exclusion will not apply if coverage is provided by a policy listed in the **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of such **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

80432 (07/02)
AH0918

*Archive Copy*

ENDORSEMENT No. 17

This endorsement, effective 12:01 AM:  July 1, 2008

Forms a part of policy no:       5443284

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse®

### Duties in the Event of an Occurrence, Claim or Suit and
### Schedule A - Approved Crisis Management Firms

Solely as respects coverage provided by **Section II INSURING AGREEMENT - CRISISRESPONSE**[SM] **AND EXCESS CASUALTY CRISIS FUND®**, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** or as soon as practicable to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100.  If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1. how, when and where the **Crisis Management Event** is taking or took place;

2. the names and addresses of any injured persons and any witnesses; and

3. the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

>     AIG Domestic Claims, Inc.
>     Excess Casualty Claims Department
>     Segmentation Unit
>     175 Water Street, 22nd Floor
>     New York, NY  10038
>     Fax: (866) 743-4376
>     E-mail:  excessfnol@aig.com

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**Schedule A**

**Approved Crisis Management Firms**

The following firms are approved **Crisis Response Firms:**

**Crisis Communications Management Firms:**

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

| Abernathy MacGregor Group | | |
|---|---|---|

<u>New York Office</u>
501 Madison Avenue
New York, N.Y. 10022
www.abmac.com

James T. MacGregor
Tel: (212) 371-5999
Cell: (646) 236-3271
Fax: (212) 752-0723
jtm@abmac.com

**Emergency**

Tel: (212) 343-0818
Cell: (917) 449-9964

Rhonda Barnat
Tel: (212) 371-5999
Cell: (917) 912-6378
Fax: (212) 752-0723
rb@abmac.com

<u>Los Angeles Office</u>
611 West Sixth Street
Suite 1880
Los Angeles, CA 90017

Ian D. Campbell
Tel: (213) 630-6550
Cell: (213) 489-3443
Fax: (213) 489-3443
idc@abmac.com

**Emergency**

Tel: (818) 957-5650
Cell: (917) 940-3476

| Citigate Sard Verbinnen | | |
|---|---|---|

<u>New York City</u>
630 Third Avenue
New York, N.Y. 10017
www.sardverb.com

George Sard
Tel: (212) 687-8080
Fax: (212) 687-8344
gsard@sardverb.com

**Emergency**

(917) 750-4392
24 Hours/7 Day

Paul Verbinnen
Tel: (212) 687-8080
Fax: (212) 687-8344
pv@sardverb.com

<u>Chicago</u>
343 West Erie Street
Suite 600
Chicago, IL 60610

Ron Culp
Tel: (312) 944-7398
Fax: (312) 944-7785

83687 (9/07)
AH2128

*Archive Copy*

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

San Francisco
101 Second Street
Suite 2250
San Francisco, CA 94106

Paul Kranhold
Tel: (415) 618-8750
Fax: (415) 618-8702

### Hill and Knowlton

New York City
466 Lexington Avenue
3rd Floor
New York, N.Y.
www.hillandknowlton.com

Richard C. Hyde
Direct Tel: (212) 885-0372
Main: (212)885-0300
Cell: (917) 816-2208
Fax: (212) 885-0570
dhyde@hillandknowlton.com

Emergency

H&K Crisis Pager
(818) 264-5193
24 Hours/7 Days

Christopher R. Gidez
Direct Tel: (212) 885-0480
Main Tel: (212) 885-0300
Cell: (914) 319-6582
Fax: (212) 885-0570
cgidez@hillandknowlton.com

Ottawa, Canada
55 Metcalfe Street
Suite 1100
Ottawa, Canada
K1P 6L5

Jo-Anne Polak
Direct Tel: (613) 786-9954
Main Tel: (613) 238-4371
Cell: (613) 761-2684
Fax: (613) 238-8642
jpolak@hillandknowlton.ca

### Lexicon Communications Corp.

Pasadena
(Suburb of Los Angeles)
520 Bellmore Way
Pasadena CA 91103
information@lexiconcorp.com

Steven Fink
Direct Tel: (626) 683-9333
Main Tel: (626) 683-9200
Cell: (626) 253-1519
Fax: (626) 449-7659
sfink@lexiconcorp.com

Emergency

(626) 683-9333
24 Hours/7 Days

### Zeno Group

Washington, D.C.
The Foundry Building
1055 Thomas Jefferson St., NW
Washington, D.C. 20007
www.zenogroup.com

Phillip Armstrong
Direct Tel: (202) 965-7801
Cell: (202) 669-9926
phil.armstrong@zenogroup.com

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
| --- | --- | --- |

### Robinson, Lerer & Montgomery

New York City
1345 Avenue of the Americas
4th Floor
New York, N.Y. 10105
www.rimnet.com

Michael Gross
Direct Tel: (646) 805-2003
Main Tel: (646) 805-2000
Cell: (917) 853-0620
Fax: (646) 805-2828
mgross@rimnet.com

### Sitrick and Company, Inc.

Los Angeles
1840 Century Park East
Suite 800
Los Angeles, CA 90067
www.sitrick.com

Michael S. Sitrick
Direct Tel: (310) 788-2850
Fax: (310) 788-2855
mike_sitrick@sitrick.com

**Emergency**

(310) 358-1011
24 Hours/7 Days

New York City
655 Third Avenue
New York, N.Y. 10017

Jeffrey Lloyd
Direct Tel: (212) 573-6393
Main Tel: (212) 573-6100
Cell: (310) 963-2850
Fax: (212) 573-6165

### Investigative Firms:

### Kroll Associates

New York City
900 Third Avenue
New York, N.Y. 10022

Mary Jo Phillips
Direct Tel: (212) 833-3246
Fax: (212) 644-5794
mphillips@krollworldwide.com

**Emergency**

(800) GET-KROL
(800) 438-5765
World Wide Crisis
Division
24 Hours/7 Days

### GAB Robins North America, Inc.

Parsippany
9 Campus Drive
Suite 7
Parsippany, N.J. 07504
www.gabrobinsna.com

Kim Mertens
Direct Tel: (973) 993-3438
Cell: (201) 404-6026
Fax: (973) 993-1624
mertens@gabrobins.com

**Emergency**

800-422-4436

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
| --- | --- | --- |

Montreal
CGI (Division of GAB Robins)
1611 Cremazie Blvd. East
3rd Floor
Montreal, Quebec H2M 2P2
Canada
www.cgi.com-insurance.htm

Andre Mancini
Direct Tel: (800) 263-5361
Cell: (450) 566-5073
Fax: (514) 735-8439
andre.mancini@cgi.com

**Emergency**

800-263-5361

*Archive Copy*

**ENDORSEMENT No.** 18

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Third Party Discrimination Coverage Endorsement

This policy is amended as follows:

**Section VII. DEFINITIONS**, Paragraph U. is deleted in it's entirety and replaced by the following:

**U.** **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

    1.  false arrest, detention or imprisonment;

    2.  malicious prosecution;

    3.  the wrongful eviction from, wrongful entry into, or invasion of the right of  private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    4.  oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

    5.  oral or written publication, in any manner, of material that violates a person's right of privacy;

    6.  discrimination or humiliation on account of religion, age, sex, handicap, appearance, health, mental disorder, marital status, race, color, creed or national origin but only if such discrimination or humiliation is:

        a.  not committed by, at the direction of, or with the knowledge of you and or any of your executive officers or directors; and

        b.  not directly or indirectly related to the employment of any person or persons by you;

    7.  the use of another's advertising idea in your **Advertisement**; or

    8.  infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_(signature)_

—————————————————————
**Authorized Representative**
or Countersignature (in States Where Applicable)

80494 (07/02)
AH0971

*Archive Copy*

ENDORSEMENT No. 19

This endorsement, effective 12:01 AM: July 1, 2008

Forms a part of policy no: 5443284

Issued to: MCKESSON CORPORATION

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Arbitration Condition Endorsement
### (Solely Applicable To Exclusion Q. And Any Endorsements Amending Exclusion Q.)
### (Domicile State)

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

**Arbitration**

In the event of a disagreement as to the interpretation of Exclusion Q. of this policy or a disagreement as to the interpretation any endorsements attached to this policy amending Exclusion Q., the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item 1 of the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative
or Countersignature (Where Applicable)**

*Archive Copy*

**ENDORSEMENT NO.** 20

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no.:** 5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## ADDITIONAL NAMED INSURED

This policy is amended as follows:

**DECLARATIONS ITEM 1** is amended by adding the following as **Named Insured(s)** under this policy:

**McKesson Corporation**
    *Beldere Corporation*
        S.K.U., Inc. (50%)
    *California Golden State Finance Company*
        CGSF Funding Corporation
    *City Properties, S.A. (20%)*
    *Crocker Plaza Company*
    *D&K Healthcare Resources LLC*
        D&K Pharmacy Solutions, Inc.
        Diversified Healthcare, LLC
        Jaron, Inc.
        Jewett Drug LLC
        Medical & Vaccine Products, Inc.
        VC Services, Inc.
        Walsh Healthcare Solutions LLC
            *Walsh Distribution, LLC*
            *myhca, inc.*
    *Foremost de Venezuela, S.A. (Forvensa) (40% owned by McKesson Corp., 60% by City Property)*
    *Foremost Iran Corporation*
    *Foremost Shir, Inc.*
    *Foremost Tehran, Inc.*
    *Golden State Insurance Company Limited*
    *Goodman Manufacturing Company*
    *Health Mart Systems, Inc.*
    *Intercal, Inc. (15% owned by McKesson Corp.)*
    *KWS & P, Inc.*
    *KWS & P/SFA, Inc.*
    *McKesson Asia-Pacific Pty Limited*
        McKesson New Zealand Limited
    *McKesson Automation Inc.*
    *McKesson Automation Systems Inc.*
        Parata Systems, LLC

*Archive Copy*

**ENDORSEMENT NO.** 20 (Continued)

SI/Baker, Inc.
**McKesson Capital Funding Corporation**
**McKesson Capital LLC**
**McKesson Information Solutions LLC**
    HBO & Company (VI), Inc.
    HBOC Medical Limited
    HTP, Inc.
    McKesson Health Solutions Holdings LLC
        *McKesson Health Solutions LLC*
            Access Health UK Ltd.
            McKesson Health Solutions Texas Inc.
        *McKessonHBOC (Gibraltar) Limited*
    McKesson Services LLC
        *A.L.I. Imaging Systems Corp.*
    Physician Micro Systems, Inc.
**McKesson International Holdings Limited**
    McKesson Financial Holdings Limited
        *McKesson Financial Holdings II Limited*
            McKesson (International) (Gibraltar) Limited
            McKesson International Holdings LLC
                McKesson International Holdings SRL
                McKesson International SRL
            McKesson International S.à.r.l.
                McKesson International Finance S.a.r.l.
                    McKesson International Capital S.a.r.l.
                    McKesson International Holdings S.a.r.l.
                      McKesson International Holdings II S.a.r.l.
                        McKesson Funding Company of Canada
                      McKesson International Holdings III S.a.r.l.
                        McKesson Finance Company of Canada
                      McKesson Canada Corporation
                        Clinique Sante Corporation
                        3071406 Nova Scotia Company
                        3087601 Nova Scotia Company
                        McKesson Logistics Solutions LLC
                          McKesson Logistics Solutions
                      McKesson Canada Support Services Corporation
                    McKesson International Holdings V S.a.r.l.
                      McKesson Automation Canada Corporation
                    McKesson International Holdings VI S.a.r.l.
                      Zee Medical Canada Corporation
        McKesson International Topholdings S.a.r.l.
        *McKesson Information Solutions Finance S.a.r.l.*
            McKesson Information Solutions Capital S.a.rl.
            McKesson Information Solutions Holdings S.a.r.l.
                 A.L.I. Technologies (Deutschland) GmbH
                 McKesson Information Solutions Ireland Limited
                 McKesson Information Solutions Netherlands B.V.
                    McKesson Nederland B.V.
                 McKesson Information Solutions Sweden AB
                    Medcon Ltd.

*Archive Copy*

Medcon UK Limited
McKesson Information Solutions UK Limited
McKesson Information Solutions Holdings II S.a.r.l.
McKesson International Nova Scotia ULC
McKesson Medical Imaging Company
McKesson Information Solutions Holdings III S.a.r.l.
McKesson Health Solutions Canada Company
McKesson Information Solutions Holdings V S.a.r.l.
McKesson Information Solutions Holdings France S.a.r.l.
McKesson Information Solutions Holdings France SAS
*McKesson Information Solutions Holdings Limited*
*A.L.I. Holdings LLC*
Medical Imaging SRL
A.L.I. Technologies (International) LLC
*McKesson Information Solutions Holdings SRL*
*McKesson International LLC*
McKesson Information Solutions  SRL
*McKesson International Ireland Limited*
McKesson Health Solutions Puerto Rico Inc.
McKesson International Holdings IV S.à.r.l.
*A.L.I. Technologies (Europe) B.V.*
*McKesson International Netherlands B.V.*
*McKesson International Netherlands II B.V.*
Nadro S.A. de C.V.
Nadro Services, S. de R.L. de C.N.
McKesson International Holdings VII S.à.r.l.
*McKesson Specialty Prescription Services Corporation*
*McKesson Specialty Prescription Services (B.C.) Corporation*
**McKesson Medical-Surgical Holdings Inc.**
McKesson Medical-Surgical Inc.
*Cypress Medical Products LLC*
*McKesson Medical-Surgical FDT Inc.*
*Moore Medical LLC*
Podiatry Online, Inc.
*Sterling Medical Services, LLC*
*Titus Home Health Care LLC*
**McKesson Medical-Surgical Minnesota Inc.**
McKesson Medical-Surgical Medimart Inc.
McKesson Medical-Surgical Minnesota Supply Inc.
MSA Products LLC
**McKesson Pharmacy Optimization LLC**
**McKesson Property Company, Inc.**
DC Land Company
DCAZ Land Company
HF Land Company
**McKesson Specialty Arizona Inc.**
**McKesson Specialty Corporation**
**McKesson Specialty Distribution LLC**
**McKesson Specialty Holdings LLC**
National Oncology Alliance, Inc.
**McKesson Specialty Pharmaceuticals LLC (99% owned by McKesson Corporation, 1% owned by**

**Archive Copy**

**ENDORSEMENT NO.** 20 (Continued)

*McKesson Specialty Corporation)*
    *McKesson Transportation Systems, Inc.*
    *McQueary Bros. Drug Company*
    *Northstar Healthcare Holdings Limited*
        McKesson Medical-Surgical International Limited
        Northstar Healthcare Limited
*Northstar Rx LLC*
*N.V. Medicopharma (10% ownership)*
*Oncology Holdings, Inc.*
        Oncology Holdings II, Inc.
            Cancer Clinics of Excellence LLC (McKesson ownership is 27.5%)
        OTN Participant, Inc.
        OTN Parent Corp.
            OTN Generics, Inc.
            OnMark, Inc.
            Oncology Therapeutics Network Corporation
                Oncology Therapeutics Network JV, L.P.
            Ivpcare, Inc.
                Ivpcare Northeast, Inc.
                Pharmatech Business Services, Inc.
*Parata Systems, LLC (39.06% owned by McKesson and subs)*
*Per-Se Technologies, Inc.*
        NDCHealth Corporation
            *NDC of Canada, Inc.*
            *NDCHealth Pharmacy Systems and Services, Inc.*
                NDCHealth Pharmacy Systems and Services ULC
            *PhyServe Solutions, Inc.*
        Patient Account Management Services, Inc.
        Per-Se Transaction Services, Inc.
        PST Products, LLC
            *Knowledgeable Healthcare Solutions, Inc.*
            *Per-Se Technologies Canada, Inc.*
            *Per-Se Technologies (UK) Limited*
        PST Services, Inc.
*Proventy*   (owned 18% by McKesson Corp)
*Purchasing Alliance for Clinical Therapeutics, LLC*
*Strategic Health Alliance Management Corp.*
        Strategic Health Alliance II, Inc.
*Verispan L.L.C. (42.18% ownership by McKesson Corporation)*
*Zee Medical, Inc.*
        CPG Industries, Inc.
        Fastpro International, Inc.
**McKesson Foundation Inc.**
**Wilmington Trust Company**

All other terms, conditions and exclusions of the policy remain unchanged.

***Archive Copy***

**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO.** 21

**This endorsement, effective 12:01 AM:**   July 1, 2008

**Forms a part of policy no.:**      5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Acquired Entity Endorsement**
**(Amendment of Definition of Named Insured)**

This policy is amended as follows:

**Section VII. Definitions**, Paragraph R. is amended to include the following additional subparagraphs:

R.     **Named Insured** means:

    a.      newly acquired or  formed entities  with operations  that are  not materially  different from those of  the **Insured**  prior to  such acquisition, formation  or merger  and with annual sales not exceeding FIVE HUNDRED MILLION dollars ($500,000,000.).

    b.      newly acquired  or  formed  entities  greater than  FIVE  HUNDRED  MILLION  dollars ($500,000,000.) or with  operations prior  to such acquisition,  formation or  merger materially different  from those  of  the **Insured**,  such entities will  be  automatically covered  for a period  of ninety (90)  days from the  date of acquisition,  formation or merger, during which time the  **Insured** shall provide sufficient  underwriting data for us to evaluate the continuation of coverage.

    With respect to paragraphs a. and b. above, we may make an additional premium charge for any additional organizations you acquire, form or take control of during the **Policy Period**.

    It is further agreed that any newly acquired or formed entity shall only  be afforded coverage under this policy  if such organization  is  included  as a named  insured  under **Scheduled Underlying Insurance**.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO.** 22

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no.:** 5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Amendment of Cancellation Notice Endorsement**
**(Amendment of Condition D)**

This policy is amended as follows:

**Section VI. Conditions,** Paragraph D.2., is hereby deleted in its entirety and replaced by the following:

   2.   We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason we must mail to you, not less than one hundred twenty (120) days, advance written notice stating when the cancellation is to take effect. Mailing that notice to your mailing address, shown in Item 1 of the Declarations, will be sufficient to prove notice.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO.** 23

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**          5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Medical Professional Services Exclusion Endorsement
(With Good Samaritan Acts Exception)**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

   **Medical Professional Services**

   This insurance does not apply to any liability arising out of the rendering of,  or the failure to
   render, **Medical Professional Services**.

   This exclusion does not apply to **Good Samaritan Acts**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

   **Good Samaritan Acts** means those **Medical Professional  Services** performed by or on behalf
   of the **Insured**, without remuneration,  in rendering emergency treatment  at the scene of  an
   accident or medical crisis.

   **Medical Professional Services** means:

   1. Furnishing  of professional  health care  services  including , but  not  limited to,  medical,
      surgical, dental or nursing services,

   2. Furnishing of food,  beverages, drugs, medications, supplies  or appliances in connection
      with professional health care services,

   3. Postmortem handling of human bodies, or

   4. Services by  any person  as a  member of  a formal  accreditation or  similar professional
      board or committee of  the **Insured**, or  as a person  charged with the duty  of executing
      directives of any such board or committee.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative
or countersignature (where required by law)**

**ENDORSEMENT NO.** 24

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no.:** 5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Commercial Umbrella Liability Policy with CrisisResponse®

Joint Venture Retained Limit Endorsement
(Scaled Limits/Scaled Attachment with Final Adjudication Adjustment)

**TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERCEDE.**

Solely as respects any joint venture, partnership, or limited liability company in which the **Named Insured** has an interest, and which is not otherwise covered by this policy as an **Insured**, this policy is amended as follows:

**Section IV. LIMITS OF INSURANCE,** Paragraphs F. and G. are deleted in their entireties and replaced by the following and new paragraphs N., O., P., and Q. are added:

F.        This policy applies only in excess of the **Retained Limit.**

G.        If the **Retained Limit** is reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

    1.        in the event of reduction, pay excess of: the remaining **Retained Limit**, or

    2.        In the event of exhaustion of the **Retained Limit,** continue in force as underlying insurance.

N.        In the event of any **Occurrence** caused by or arising out of any joint venture, partnership, or limited liability company in which the **Named Insured** has an interest, our Limits of Insurance under this policy shall be limited to the **Named Insured's** percentage interest in the joint venture, partnership, or limited liability company multiplied by the total applicable Limits of Insurance afforded the **Named Insured** by this policy.

Where the percentage interest of the **Named Insured** in the joint venture, partnership, or limited liability company is not set forth in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the joint venture, partnership, or limited liability company. Such percentage shall not be increased by the insolvency of others' interests in the joint venture, partnership, or limited liability company.

*Archive Copy*

**ENDORSEMENT NO.** 24 (Continued)

O.    However, upon final settlement or adjudication of the claim or **Suit**, Paragraphs F. and N. above shall no longer apply to the settled or adjudicated claim and our Limits of Insurance under this policy shall be limited to the amount of the **Named Insured's Loss** divided by the amount of the final settlement or adjudication of the claim and then multiplied by the total Limits of Insurance shown in Item 3. of the Declarations.

P.    It is further agreed that our Limits of Insurance as limited by Paragraph O. above shall be excess of the greater of:

    1.    Any Self Insured Retention applicable under the terms and conditions of this policy and its endorsements, or

    2.    Any valid and collectible insurance issued in the name of the joint venture, partnership, or limited liability company, or

    3.    The amount of the **Named Insured's Loss** divided by the amount of the final settlement or adjudication of the claim or **Suit** and then multiplied by the applicable retained limit listed in the Schedule of Retained Limits providing coverage to the **Named Insured.**

Q.    If we indemnified the **Named Insured** for any amount based upon the terms set forth in Paragraphs F. and N. above, then:

    1. If the amount payable under Paragraphs O. and P. on behalf of the **Named Insured's Loss** arising out of such joint venture, partnership, or limited liability company is more than the amount already paid under the requirements of Paragraphs F. and N., we will indemnify the **Named Insured** for the difference up to the amount payable under Paragraphs O. and P.

    2. If the amount payable under Paragraphs O. and P. on behalf of the **Named Insured's Loss** arising out of such joint venture, partnership, or limited liability company is less than the amount already paid under the requirements of Paragraphs F. and N., the **Named Insured** shall reimburse us for the difference up to the amount payable under Paragraphs O. and P.

Solely for the purpose of this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusion:

    **Joint Ventures, Partnerships, or Limited Liability Companies**

    This insurance does not apply to any liability arising out of a joint venture, partnership, or limited liability company for any **Occurrence** that took place before the **Named Insured** acquired, joined or formed the joint venture, partnership, or limited liability company.

Solely for the purpose of this endorsement, **Section VII. DEFINITIONS,** Paragraph Z. **Retained Limit**, is deleted and replaced by the following:

**Z. Retained Limit** means:

*Archive Copy*

**ENDORSEMENT NO.** 24 (Continued)

The greater of:

1.      Any Self Insured Retention  applicable under the terms  and conditions of this  policy and its endorsements, or

2.      Any  valid  and  collectible  insurance  issued  in  the  name  of  the  joint  venture, partnership, or limited liability company, or

3.      The **Named Insured's** percentage interest in the  joint venture, partnership, or limited liability company multiplied by  the applicable retained limit  listed in the Schedule  of Retained Limits providing coverage to the **Named Insured.**

The insurance afforded under  this endorsement shall not  be subject to  any requirement of **Section VII.** Paragraph  M.  that a  joint  venture, partnership,  or  limited liability  company  be shown  as  a **Named Insured** in the Declarations.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO.** 25

**This endorsement, effective 12:01 AM:** July 1, 2008

**Forms a part of policy no.:** 5443284

**Issued to:** MCKESSON CORPORATION

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Manufacturing of Drugs Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Manufacture of Drug**

This insurance does not apply to any liability arising out of the manufacture of drugs, including prescription and over the counter drugs, by pr on behalf of the **Insured.**

For the purpose of this exclusion, the term "manufacture" shall not include packaging or labeling of drugs.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative or countersignature (where required by law)**

ENDORSEMENT NO. 26

**This endorsement, effective 12:01 AM:**  July 1, 2008

**Forms a part of policy no.:**  5443284

**Issued to:**  MCKESSON CORPORATION

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Knowledge of Occurrence Endorsement**

This policy is amended as follows:

> Notwithstanding any provision(s) in this Policy to the contrary, and solely as respects any loss reporting requirements under this Policy, it is understood that knowledge of an accident or incident by an agent, servant or employee of your or any other person shall not in itself constitute knowledge by you, unless your Risk Manager or Senior Corporate Counsel has received notice from said agent, servant, employee or any other person.

All other terms, conditions and exclusions of the policy remain unchanged.

*Archive Copy*

_____
**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT No. 27

This endorsement, effective 12:01 AM:  July 1, 2008

Forms a part of policy no:          5443284

Issued to:  MCKESSON CORPORATION

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## Commercial Umbrella Liability Policy with CrisisResponse®

## Uninsured/Underinsured Motorists Coverage Endorsement

## THIS ENDORSEMENT APPLIES TO A COVERED AUTO REGISTERED OR PRINCIPALLY GARAGED IN THE FOLLOWING STATE(S) (where indicated by an "X")

The Declarations ITEM 3. LIMITS OF INSURANCE is amended to include the following additional provisions:

### Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| x | VERMONT | $100,000 Bodily Injury and Property Damage Combined Single Limit |
|---|---------|------------------------------------------------------------------|

And, if Uninsured/Underinsured Motorist Coverage has been selected under this policy:

### Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| | FLORIDA | Bodily Injury |
|---|---------|---------------|
| | WEST VIRGINIA | Bodily Injury and Property Damage Combined Single Limit |

And, if Uninsured/Underinsured Motorist Coverage has not been rejected under this policy:

### Applicable Uninsured/Underinsured Each Occurrence Limit(s)

| | GEORGIA | Bodily Injury and Property Damage Combined Single Limit |
|---|---------|---------------------------------------------------------|
| | LOUISIANA | Bodily Injury Limit |
| | NEW HAMPSHIRE | Bodily Injury Limit |

Uninsured/Underinsured Motorists Retained Limit   $5,000,000

INSURING AGREEMENT

Section I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY is amended to include the following additional provisions:

1.  We will pay all sums in excess of the **Uninsured/Underinsured Motorists Retained Limit** the **Insured** is legally entitled to recover as compensatory damages from the owner or operator of:

    a.  An **Uninsured Motor Vehicle** as defined in Definition 4.a., 4.b. and 4.c. of this endorsement because of **Bodily Injury** sustained by the **Insured**, or **Property Damage** and caused by an **Occurrence**, and

    b.  An **Uninsured Motor Vehicle** as defined in Definition 4.d. of this endorsement because of **Bodily Injury** sustained by any **Insured**, or **Property Damage**.

82610 (2/07)                                                                                    Page 1 of 8
AH2083

*Archive Copy*

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **Uninsured Motor Vehicle.**

2. We will pay under this coverage only if a., b., or c. below applies:

    a.  The limits of any applicable liability bonds or policies of the **Uninsured Motor Vehicle** have been exhausted by judgments or payments **(Not applicable where the Uninsured/Underinsured Motorist laws of Louisiana apply);**

    b.  The submission of claims exceeds the limits of liability under any applicable **Bodily Injury** bonds or policies **(Applicable only where the Uninsured/Underinsured Motorists laws of Louisiana apply);** or

    c.  A tentative settlement has been made between an **Insured** and the insurer of the vehicle described in paragraph b. of the definition of **Uninsured Motor Vehicle** of this endorsement and we:

        1)  Have been given prompt written notice of such settlement; and

        2)  Advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days **(30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply)** after receipt of notification.

3.  Any judgment for damages arising out of a **Suit** brought without our written consent is not binding upon us **(Not applicable where the Uninsured/Underinsured Motorist laws of Louisiana apply).**

**DEFENSE**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section III. DEFENSE PROVISIONS** is hereby deleted in its entirety and replaced by the following:

1.  We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury** or **Property Damage** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the **Uninsured/Underinsured Motorists Retained Limit** has been exhausted by payment of **Loss** to which this policy applies.

    If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

2.  We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply.

3.  When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

    a.  Investigate, negotiate and settle the **Suit** as we deem expedient; and

    b.  Pay the following supplementary payments:

        1)  premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

        2)  premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

        3)  all court costs taxed against the **Insured** in the **Suit**;

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

4) pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

5) post-judgment interest that accrues after entry of judgment on that part of the judgement within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

6) the **Insured's** expenses incurred at our request or with our consent.

4.   Except as provided in Paragraph 1. above, we will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

5.   We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph 3. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## LIMITS OF INSURANCE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section IV. LIMITS OF INSURANCE** is amended to include the following additional provisions:

1.   Regardless of the number of covered **Autos**, **Insureds**, premiums paid, claims made or vehicles involved in the **Occurrence**, the most we will pay for all damages resulting from any one **Occurrence** are the Limits of Insurance shown in Item 3. of the Declarations (as amended in this endorsement).

2.   With respect to coverage provided under Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**, the Limit of Insurance shall be reduced by all sums paid for **Bodily Injury** or **Property Damage** by or on behalf of anyone who is legally responsible.

3.   **Uninsured/Underinsured Motorists Retained Limit**

This policy applies only in excess of an **Uninsured/Underinsured Motorists Retained Limit** and then up to an amount not exceeding the Uninsured/Underinsured Motorists Each Occurrence Limit as stated in the Declarations (as amended in this endorsement), subject to the provisions stated in 1. and 2. above.

The **Uninsured/Underinsured Motorists Retained Limit** shall not be reduced or exhausted by **Defense Expenses**.

Where the Uninsured/Underinsured laws of the state of West Virginia apply, this **Uninsured/Underinsured Motorists Retained Limit** applies excess of the statutory minimum amount of Uninsured Motorists Coverage provided by an underlying insurer.

## EXCLUSIONS

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS**, Exclusion O. is deleted in its entirety and replaced by the following:

O.   **"No-Fault" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No Fault" law.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS** is amended to include the following additional exclusions:

1. This insurance does not apply to any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle which is an **Uninsured Motor Vehicle**.

2. This insurance does not apply to the direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. This insurance does not apply to any **Insured** using a vehicle without the expressed or implied permission of the owner or lessee.

4. This insurance does not apply to **Bodily Injury** or **Property Damage** sustained by:

   a. An individual **Named Insured** while **Occupying** or when struck by any vehicle owned by that **Named Insured** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement;

   b. Any **Family Member** while **Occupying** or when struck by any vehicle owned by that **Family Member** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement; or

   c. Any **Family Member** while **Occupying** or when struck by any vehicle owned by the **Named Insured** that is insured for Uninsured Motorists Coverage under any other policy.

5. This insurance does not apply to punitive or exemplary damages.

6. This insurance does not apply to **Property Damage** to an **Auto** or to property contained in an **Auto** owned by the **Named Insured** which is not a covered **Auto**.

7. This insurance does not apply to **Property Damage** for which the **Insured** has been or is entitled to be compensated by other property or physical damage insurance.

**CONDITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition L. **Other Insurance** under **Section VI. CONDITIONS** is deleted in its entirety and replaced by the following:

L. **Other Insurance**

   Any insurance we provide under this endorsement will be excess to the total limits of any **Other Insurance** paid or available for payment to an **Insured**, except other applicable Uninsured/Underinsured Motorist Coverage written to be excess of this policy.

   If there is other applicable Uninsured/Underinsured Motorist Coverage under any other policy issued to the **Named Insured** by us, the maximum recovery for damages may equal but not exceed the highest applicable limit of insurance under any one policy.

   If there is other applicable excess Uninsured/Underinsured Motorist Coverage available under more than one policy, then the following priorities of coverage apply:

   1. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as a **Named Insured**.

   2. A policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as an **Insured** other than as a **Named Insured**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

3. A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as a **Named Insured**.

4. A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as an **Insured** other than as a **Named Insured**.

We will pay only our share of the **Loss** that must be paid under insurance providing umbrella or excess coverage. Our share is the proportion that our limit of liability bears to the total of all applicable limits of all the policies applicable on the same level of priority.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition G. **Duties In the Event of an Occurrence, Claim Or Suit** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

G. Specifically as respects to any **Occurrence** which may result in a Uninsured/Underinsured Motorist claim for coverage under this policy:

a. You must promptly notify the police if a hit-and-run driver is involved, and

b. You must promptly send us copies of the legal papers if a **Suit** is brought.

c. A person seeking Uninsured/Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the **Insured** and the insurer of the vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle** and allow us 90 days (**30 days where the Uninsured/ Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply**) to advance payment to that **Insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Condition P. **Transfer of Your Rights and Duties** under **Section VI. CONDITIONS** is amended to include the following additional provisions:

P. If we make any payment and the **Insured** recovers from another party, the **Insured** shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, where the Uninsured/Underinsured laws of the state of Louisiana apply, if we make any payment under this policy and the person to or for whom payment is made has a right to recover damages from another, we shall be subrogated to that right. However, our right to recover is subordinate to the right of the **Insured** to be fully compensated.

Our rights do not apply under this provision with respect to Uninsured/Underinsured Motorists Coverage if we:

a. Have been given prompt written notice of a tentative settlement between an **Insured** and the insurer of a vehicle described in Paragraph 4.b. of the definition of **Uninsured Motor Vehicle**; and

b. Fail to advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days (**30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply**) after receipt of notification.

If we advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days (**30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply**) after receipt of notification:

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000
Archive Copy

a. That payment will be separate from any amount the **Insured** is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

b. We also have a right to recover the advanced payment.

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VI. CONDITIONS** is amended to include the following additional conditions:

**Arbitration (Not applicable where the Uninsured/Underinsured laws of West Virginia or Louisiana apply)**

1. If we and an **Insured** disagree whether the **Insured** is legally entitled to recover damages from the owner or driver of an **Uninsured Motor Vehicle** or do not agree as to the amount of damages that are recoverable by that **Insured**, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to the arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

2. Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**Conformance to "Uninsured Motorist" and/or "Underinsured Motorist" Law**

To the extent any term of this policy conflicts with any applicable Uninsured/Underinsured law, the term shall be deemed amended so as to conform to minimum requirements of that law. However, under no such circumstance shall any term be amended to be broader than the minimum requirements of that law.

**DEFINITIONS**

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition **M. Insured** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

M. **Insured** means:

If the **Named Insured** is designated in the Declarations as:

a. An individual, then only the following are **Insureds**:

1) The **Named Insured** and any **Family Members**.

2) Anyone else occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction.

3) Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

b. A partnership, limited liability company, corporation or any other form of organization, then the following are **Insureds**:

1) Anyone occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction;

2) Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
*Archive Copy*
Copyright, Insurance Services Office, Inc., 2000

For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Definition Y. **Property Damage** under **Section VII. DEFINITIONS** is deleted in its entirety and replaced by the following:

Y. **Property Damage** means:

Physical Injury or destruction of:

a. A covered **Auto**; or

b. Property contained in the covered **Auto**.

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

1. **Defense Expenses** means a payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

   a. Attorneys' fees and all other investigation, **Loss** adjustment and litigation expenses;

   b. Premiums on bonds to release attachments;

   c. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

   d. Costs taxed against the **Insured** in any claim or **Suit**;

   e. Pre-judgment interest awarded against the **Insured**; and

   f. Interest that accrues after entry of judgment.

2. **Family Member** means a person related to an individual **Named Insured** by blood, marriage or adoption who is a resident of such **Named Insured's** household, including a ward or foster child.

3. **Occupying** and/or **Occupied** means in, upon, getting in, on, out or off.

4. **Uninsured Motor Vehicle** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged;

   b. Which is an **Underinsured Motor Vehicle**. An **Underinsured Motor Vehicle** means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged but their limits are less than the Limit of Insurance of this coverage **(Not Applicable where the Uninsured/Underinsured laws of West Virginia apply)**;

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d. That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

      1) Hit an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**; or

      2) Cause **Bodily Injury** to an **Insured** without hitting an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**.

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

*Archive Copy*

The facts of the **Occurrence** or intentional act must be proved by independent corroborative evidence, other than the testimony of the **Insured** making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

However, **Uninsured Motor Vehicle** does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law. However, where the Uninsured/Underinsured laws of the state of Florida apply, Uninsured Motor Vehicle includes any vehicle owned or operated by a self-insurer under any applicable motor vehicle law;

b. Designed for use mainly off public roads while not on public roads;

c. Owned by or furnished or available for the **Named Insured's** regular use or that of any **Family Member**, if the **Named Insured** is an individual; or

d. Owned by any governmental unit or agency, unless the owner or operator of the **Uninsured Motor Vehicle** has:

1) An immunity under applicable tort liability law; or

2) A diplomatic immunity.

5. **Underinsured Motor Vehicle** means a land motor vehicle or trailer to which a liability bond or policy applies at the time of the **Occurrence** but the amount paid for **Bodily Injury** or **Property Damage** to an **Insured** under that bond or policy is not enough to pay the full amount the **Insured** is legally entitled to recover as damages.

However **Underinsured Motor Vehicle** does not include any vehicle or trailer:

a. Owned or operated by a self-insurer under any applicable motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

**(Definition 5. above only applicable where the Uninsured/Underinsured Motorist laws of West Virginia apply)**

6. **Uninsured/Underinsured Motorists Retained Limit**, as specified in the Declarations above, means either:

a. the **Auto** liability limit as provided by a policy listed in Scheduled Underlying Insurance; or

b. the **Auto** liability Retained Limit as listed in the Schedule of Retained Limits.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

*Archive Copy*

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

AIU Insurance Co., National Union Fire Insurance Co. of Pittsburgh, PA

**(b)** County of Residence of First Listed Plaintiff     New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Gibson, Dunn & Crutcher LLP, 333 South Grand Ave Los Angeles, CA 90071
(213) 229-7000

## DEFENDANTS

McKesson Corp. f/k/a McKesson HBOC, Inc.

County of Residence of First Listed Defendant     San Francisco
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Covington & Burling LLP, One CityCenter 850 Tenth Street, NW Washington, DC 20001
(202) 662-5221

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC § 881 | ☐ 422 Appeal 28 USC § 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury – Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC § 157 | ☐ 376 Qui Tam (31 USC § 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 710 Fair Labor Standards Act | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment Of Veteran's Benefits | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 720 Labor/Management Relations | ☐ 830 Patent | ☐ 430 Banks and Banking |
| | ☐ 340 Marine | | ☐ 740 Railway Labor Act | ☐ 835 Patent—Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 751 Family and Medical Leave Act | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 790 Other Labor Litigation | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 791 Employee Retirement Income Security Act | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury -Medical Malpractice | ☐ 385 Property Damage Product Liability | **IMMIGRATION** | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | | ☐ 462 Naturalization Application | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 465 Other Immigration Actions | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 440 Other Civil Rights | **HABEAS CORPUS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 445 Amer. w/Disabilities– Employment | ☐ 535 Death Penalty | | ☐ 871 IRS–Third Party 26 USC § 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 446 Amer. w/Disabilities–Other | **OTHER** | | | |
| ☐ 245 Tort Product Liability | ☐ 448 Education | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee– Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer | ☐ 8 Multidistrict Litigation–Direct File |

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 2201

Brief description of cause:
Declaratory judgment re insurance coverage

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**     ☒ Yes     ☐ No

## VIII.  RELATED CASE(S), IF ANY *(See instructions):*

JUDGE

DOCKET NUMBER

## IX.  DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)*     ☒ **SAN FRANCISCO/OAKLAND**     ☐ **SAN JOSE**     ☐ **EUREKA-MCKINLEYVILLE**

DATE     10/23/2020          **SIGNATURE OF ATTORNEY OF RECORD**     /s/ Richard J. Doren

JS-CAND 44 (rev. 10/2020)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

   (1) <u>United States plaintiff</u>. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

   (2) <u>United States defendant</u>. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

   (3) <u>Federal question</u>. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

   (4) <u>Diversity of citizenship</u>. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.

   (1) <u>Original Proceedings</u>. Cases originating in the United States district courts.

   (2) <u>Removed from State Court</u>. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

   (3) <u>Remanded from Appellate Court</u>. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

   (4) <u>Reinstated or Reopened</u>. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

   (5) <u>Transferred from Another District</u>. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

   (6) <u>Multidistrict Litigation Transfer</u>. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

   (8) <u>Multidistrict Litigation Direct File</u>. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

   <u>Please note that there is no Origin Code 7</u>. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** <u>Class Action</u>. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

   <u>Demand</u>. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

   <u>Jury Demand</u>. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**IX.** **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.