GRETCHEN A. HOFF VARNER (Bar No. 284980)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
ghoffvarner@cov.com

[Additional counsel listed on third page]

*Attorneys for Defendant, Counterclaim Plaintiff,*
*and Cross-claim Plaintiff McKesson Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA

| | |
|---|---|
| ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>        Plaintiffs,<br><br>    v.<br><br>MCKESSON CORPORATION; AIU INSURANCE COMPANY; ARCH REINSURANCE LIMITED; ARGO RE LIMITED; ASPEN INSURANCE UK LIMITED; CANOPIUS UNDERWRITING BERMUDA LIMITED; ENDURANCE SPECIALTY INSURANCE LIMITED; GOLDEN STATE INSURANCE COMPANY LIMITED; GREAT LAKES INSURANCE COMPANY SE; IRONSHORE SPECIALTY INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; LIBERTY SPECIAL | Case No. 8:20-cv-02268-DOC-DFM<br><br>**MCKESSON CORPORATION'S ANSWER, COUNTERCLAIMS AND CROSS-CLAIMS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**JUDGE DAVID O. CARTER** |

MARKETS AGENCY; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509B0WCN1500017; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509BOWCN1600451; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509BOWCN1700408; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. 509/DL554610; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509BOWCN1600450; CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. B0509BOWCN1700419; MARKEL AMERICAN INSURANCE COMPANY; MUNICH REINSURANCE AMERICA, INC.; NATIONAL FIRE & MARINE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY; NORTH AMERICAN CAPACITY INSURANCE COMPANY; SWISS RE INTERNATIONAL SE; XL INSURANCE AMERICA, INC.; AND DOES 1-50,

Defendants.

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS, AND CROSS-CLAIMS

ANNA ENGH (*pro hac vice pending*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
aengh@cov.com

DAVID LUTTINGER (*pro hac vice forthcoming*)
CLÉA P.M. LIQUARD (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
dluttinger@cov.com; cliquard@cov.com

*Attorneys for Defendant, Counterclaim Plaintiff,
and Cross-claim Plaintiff McKesson Corporation*

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

Defendant, Counterclaim Plaintiff, and Cross-claim Plaintiff McKesson Corporation ("McKesson"), by and through its undersigned attorneys, hereby responds as follows to the allegations in the Complaint, filed against it in this action by ACE Property and Casualty Insurance Company ("ACE").

1. McKesson denies the allegations in Paragraph 1, except to admit that McKesson is one of the largest wholesale distributors of medical supplies and pharmaceuticals, including prescription opioid medications, in the United States, and that McKesson has been named as a defendant in thousands of lawsuits alleging injury resulting from prescription opioids. McKesson denies ACE's characterization of those lawsuits, avers that the pleadings in those lawsuits speak for themselves, respectfully refers the Court to the pleadings in those lawsuits for their true and correct contents. McKesson further avers that the alleged "reports" referred to in Paragraph 1 speak for themselves and respectfully refers the Court to any such "reports" for their true and correct contents. The last sentence of Paragraph 1 characterizes ACE's claims and contains a request by ACE for relief from the Court to which no response is required. To the extent a response is required, McKesson denies that ACE is entitled to the relief requested or to any other relief.

2. McKesson admits that, until recently, it was headquartered in San Francisco, California and that it continues to maintain operations in the state of California, but denies that it has "significant operations" in Orange County, California. McKesson admits that ACE issued insurance policies to McKesson, including without limitation, umbrella liability policies for periods between July 1, 2009 and July 1, 2017 ("ACE Policies"). McKesson avers that the ACE Policies speak for themselves and respectfully refers the Court to the ACE Policies for their true and correct contents. McKesson otherwise denies the remaining allegations in Paragraph 2.

3.     The allegations in Paragraph 3 are denied, except to refer to the language in the ACE Policies for their full contents and effect.

4.     McKesson admits that beginning in or around 2016, it has been named as a defendant in thousands of lawsuits alleging injury resulting from prescription opioids (the "Opioid Lawsuits"), the majority of which have been consolidated in a multi-district litigation pending in the United States District Court for the Northern District of Ohio and captioned, *In re National Prescription Opiate Litigation,* No. 1:17-md-2804 (N.D. Ohio) (the "MDL").  McKesson denies ACE's characterization of the Opioid Lawsuits, avers that the pleadings in the Opioid Lawsuits speak for themselves, respectfully refers the Court to the pleadings in the Opioid Lawsuits for their true and correct contents, and otherwise denies the remaining allegations of Paragraph 4.

5.     McKesson denies ACE's characterization of the Opioid Lawsuits, avers that the pleadings in the Opioid Lawsuits speak for themselves, respectfully refers the Court to the pleadings in the Opioid Lawsuits for their true and correct contents, and otherwise denies the remaining allegations of Paragraph 5.

6.     McKesson denies ACE's characterization of the Opioid Lawsuits, avers that the pleadings in the Opioid Lawsuits speak for themselves, and respectfully refers the Court to the pleadings in the Opioid Lawsuits for their true and correct contents. McKesson admits that it entered into settlement agreements with the Department of Justice in 2008 and 2017 wherein McKesson agreed to pay $13.25 million and $150 million, respectively, to resolve certain claims.  McKesson denies ACE's characterizations of those settlements, avers that the documents referred to speak for themselves, respectfully refers the Court to the cited documents for their true and correct contents, and otherwise denies the remaining allegations of Paragraph 6.

7.     The allegations in Paragraph 7 are denied, except to admit that Opioid Lawsuits have been brought by governmental entities, other entities, and individuals, and

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

to aver that the pleadings in the Opioid Lawsuits speak for themselves, and to respectfully refer the Court to the pleadings in the Opioid Lawsuits for their true and correct contents.

8. The allegations in Paragraph 8 are denied, except to admit that McKesson has demanded and seeks coverage from ACE and various of McKesson's other insurers for defense and indemnity coverage for the Opioid Lawsuits.

9. The allegations in Paragraph 9 are denied, except to admit that ACE has denied coverage and/or has reserved its rights to deny coverage for the Opioid Lawsuits in correspondence to McKesson, which correspondence speaks for itself. McKesson respectfully refers the Court to such correspondence for their true and correct contents.

10. The allegations in Paragraph 10 contain a request by ACE for relief from the Court and state legal conclusions to which no response is required. To the extent a response is required, McKesson admits that there is a justiciable controversy concerning ACE's obligations to defend and indemnify McKesson in connection with the Opioid Lawsuits. McKesson otherwise denies the remaining allegations of Paragraph 10 including the allegations that ACE is entitled to the requested relief or to any other relief.

## THE PARTIES

11. McKesson admits, on information and belief, that ACE is organized under the laws of Pennsylvania with its principal place of business in Philadelphia, PA, and that ACE is licensed to do business in California. McKesson further admits that ACE issued insurance policies to McKesson in California that cover risks in the United States, including California, and elsewhere.

12. McKesson admits that it is a Delaware corporation and that, until recently, it was headquartered in San Francisco, California. McKesson admits that the ACE Policies were issued to McKesson at its then-headquarters in San Francisco, California. McKesson further admits that it continues to do business in California, but denies that it

maintains "significant operations" in Orange County, California.  McKesson avers that the alleged "report" referred to in Paragraph 12 speaks for itself and respectfully refers the Court to any such "report" for its true and correct contents.

13.     The allegations in Paragraph 13 are denied, except to admit that, as to the first two sentences of Paragraph 13, to the extent ACE is referring to information in McKesson's public disclosures, such disclosures speak for themselves, and to further admit that McKesson distributes medical supplies and pharmaceuticals, including prescription opioid medications, through U.S. Pharmaceutical and Specialty Solutions, and to aver that McKesson lacks knowledge or information sufficient to form a belief as to the truth of the last sentence of Paragraph 13.

14.     The allegations in Paragraph 14 are denied, except to admit that ACE named in its Complaint certain insurance companies that issued insurance policies to McKesson under which McKesson seeks coverage for the Opioid Lawsuits, and further to aver that ACE named in its Complaint certain other insurance companies that, as ACE was aware, did not issue insurance policies to McKesson under which McKesson seeks coverage for the Opioid Lawsuits.

15.     The allegations in Paragraph 15 are allegations directed at the insurance company defendants and not McKesson, to which no response is required.  To the extent that a response is required, McKesson states that it lacks knowledge or information sufficient to form a belief as to ACE's "information and belief" regarding the allegations in Paragraph 15.

16.     The allegations in Paragraph 16 and the allegations in Footnote 1 to Paragraph 16 are denied, except to admit that ACE is licensed to and in fact does conduct business in California, to aver that McKesson lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the first sentence of Paragraph 16, and further to aver that Footnote 1 to Paragraph 16 purports to state

MCKESSON CORPORATION'S ANSWER, COUNTERCLAIMS,
AND CROSS-CLAIMS

ACE's intention to voluntarily dismiss "Insurer Defendants" from this action upon their request, to which no response is required.

17.     The allegations in Paragraph 17 purport to state ACE's state of mind and legal conclusions to which no response is required.  To the extent that a response is required, McKesson denies the allegations in Paragraph 17.

## JURISDICTION AND VENUE

18.     The allegations in Paragraph 18 state purported legal conclusions to which no response is required.  To the extent that a response is required, the allegations in Paragraph 18 are denied as moot because this action has been removed to federal court.

19.     The allegations in the first sentence of Paragraph 19 state purported legal conclusions to which no response is required.  To the extent that a response is required, McKesson admits that it maintains a presence in California and is registered to and does conduct business in California; the remaining allegations in the first sentence of Paragraph 19 concerning jurisdiction are denied as moot because this action has been removed to federal court.  As to the second sentence of Paragraph 19, McKesson admits that the ACE Policies were delivered and/or issued to McKesson at its then-principal place of business in San Francisco, California.

20.     The allegations in Paragraph 20 state purported legal conclusions, to which no response is required.  To the extent that a response is required, McKesson admits that certain of the insurers named as parties to this action issued insurance policies to McKesson in San Francisco, California and/or issued policies covering risks in California, denies as moot the allegations concerning jurisdiction because this action has been removed to federal court, and avers that it otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and therefore denies such allegations.

21.    The allegations in Paragraph 21 state purported legal conclusions to which no response is required.  To the extent that a response is required, the allegations in Paragraph 21 are denied.

## FACTUAL ALLEGATIONS

22.    The allegations in Paragraph 22 are denied.

23.    The allegations in Paragraph 23 are denied.  McKesson further avers that the ACE Policies speak for themselves and respectfully refers the Court to the ACE Policies for their true and correct contents.

24.    The allegations in Paragraph 24 are denied.  McKesson further avers that the ACE Policies speak for themselves and respectfully refers the Court to the ACE Policies for their true and correct contents.

25.    The allegations in Paragraph 25 are denied.  McKesson further avers that the ACE Policies speak for themselves and respectfully refers the Court to the ACE Policies for their true and correct contents.

26.    The allegations in Paragraph 26 are denied.  McKesson further avers that the ACE Policies speak for themselves and respectfully refers the Court to the ACE Policies for their true and correct contents.

27.    The allegations in Paragraph 27 are denied.  McKesson further avers that the ACE Policies speak for themselves and respectfully refers the Court to the ACE Policies for their true and correct contents.

28.    The allegations in Paragraph 28 are denied.  McKesson further avers that the ACE Policies speak for themselves and respectfully refers the Court to the ACE Policies for their true and correct contents.

29.    The allegations in Paragraph 29 are denied.

30.    McKesson admits that it had various communications with the Drug Enforcement Administration ("DEA") regarding the Controlled Substances Act,

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

including a briefing from DEA regarding the Controlled Substances Act.  McKesson further admits DEA began increasingly communicating with McKesson regarding internet pharmacies.  McKesson admits that DEA sent letters to DEA registrants dated September 27, 2006, February 7, 2007, and December 27, 2007.  McKesson denies ACE's characterization of those communications and correspondence, avers that the communications and correspondence referred to in Paragraph 30 speak for themselves, respectfully refers the Court to the cited communications and correspondence for their true and correct contents, and otherwise denies the remaining allegations of Paragraph 30.

31.     McKesson admits that it entered into a settlement agreement with the Department of Justice in 2008 wherein McKesson agreed to pay $13.25 million to resolve certain claims.  McKesson denies ACE's characterizations of that settlement, avers that the documents referred to in Paragraph 31 speak for themselves, respectfully refers the Court to the cited documents for their true and correct contents, and otherwise denies the remaining allegations of Paragraph 31.

32.     The allegations in Paragraph 32 are denied.

33.     McKesson admits that it entered into a settlement agreement with the Department of Justice in 2017 wherein McKesson agreed to pay $150 million to resolve certain claims.  McKesson denies ACE's characterizations of that settlement, avers that the documents referred to in Paragraph 33 speak for themselves, respectfully refers the Court to the cited documents for their true and correct contents, and otherwise denies the remaining allegations of Paragraph 33.

34.     The allegations in Paragraph 34 are admitted.

35.     McKesson denies ACE's characterization of the allegations referred to in Paragraph 35, avers that the cited allegations speak for themselves, respectfully refers the Court to the cited documents for their true and correct contents, and otherwise denies the remaining allegations of Paragraph 35.

MCKESSON CORPORATION'S ANSWER, COUNTERCLAIMS,
AND CROSS-CLAIMS

36.     McKesson denies ACE's characterization of the action referred to in Paragraph 36, avers that the pleadings filed in the cited action speak for themselves, respectfully refers the Court to the pleadings in the cited action for their true and correct contents, and otherwise denies the remaining allegations of Paragraph 36.

37.     McKesson denies the allegations of Paragraph 37, except to aver that McKesson notified ACE of the cited action no later than February 8, 2016, to admit that ACE sent correspondence to McKesson dated on or around May 22, 2017, and to aver that such correspondence speaks for itself and McKesson respectfully refers the Court to the correspondence for its true and correct contents.

38.     McKesson denies the allegations of Paragraph 38, except to admit that communications between McKesson and ACE regarding the cited action speak for themselves and McKesson respectfully refers the Court to such communications for their true and correct contents.

39.     McKesson denies the allegations of Paragraph 39, except to admit that, on or around May 1, 2019, it entered into a settlement agreement with the State of West Virginia to resolve a lawsuit brought by the State of West Virginia wherein McKesson agreed to pay $37 million.

40.     McKesson denies the allegations of Paragraph 40, except to admit that communications between McKesson and ACE concerning the cited action speak for themselves and McKesson respectfully refers the Court to such communications for their true and correct contents.

41.     The allegations of Paragraph 41 are admitted.

42.     McKesson denies the allegations in Paragraph 42, except to admit that the two lawsuits referred to in the first sentence of Paragraph 42 have been designated as "Track One" lawsuits by the U.S. District Judge overseeing the MDL and to aver that the

pleadings in the cited lawsuits speak for themselves and to respectfully refer the Court to the cited documents for their true and correct contents.

43.    McKesson denies the allegations in Paragraph 43, except to admit that plaintiffs in the lawsuits referred to in Paragraph 43 sought certain forms of relief including damages from McKesson as stated in the relevant pleadings, which speak for themselves.  McKesson respectfully refers the Court to the cited documents for their true and correct contents.

44.    McKesson denies the allegations in Paragraph 44, except to admit that certain lawsuits that were originally filed in California have been transferred to the MDL and that such lawsuits may be transferred and/or remanded to their courts of origination for trial.  McKesson avers that the pleadings in the cited lawsuits speak for themselves and respectfully refers the Court to the cited documents for their true and correct contents.

45.    McKesson admits that it provided ACE with notice under the ACE Policies of the Track One lawsuits and the many other Opioid Lawsuits.

46.    McKesson admits that on or around October 21, 2020, it and two other defendants agreed in principle to a settlement of the Track One lawsuits for a total combined payment by the three companies of $215 million.

## COUNT I

47.    McKesson repeats and incorporates by reference its responses to the allegations contained in Paragraphs 1 through 46 as if fully set forth herein.

48.    The allegations in the first sentence of Paragraph 48 are admitted.  The allegations in the second sentence of Paragraph 48 purport to state ACE's legal position to which no response is required.  To the extent a response is required, McKesson denies that ACE is entitled to the relief requested or to any other relief.

49.     The allegations in Paragraph 49 state purported legal conclusions to which no response is required.  To the extent a response is required, McKesson admits that there is a justiciable controversy as to ACE's obligations to provide coverage to McKesson for defense costs for the Opioid Lawsuits, but denies that ACE is entitled to the relief requested or to any other relief.

## COUNT II

50.     McKesson repeats and incorporates by reference its responses to the allegations contained in Paragraphs 1 through 49 as if fully set forth herein.

51.     The allegations in the first sentence of Paragraph 51 are admitted.  The allegations in the second sentence of Paragraph 51 purport to state ACE's legal position to which no response is required.  To the extent a response is required, McKesson denies that ACE is entitled to the relief requested or to any other relief.

52.     The allegations in Paragraph 52 state purported legal conclusions to which no response is required.  To the extent a response is required, McKesson admits that there is a justiciable controversy as to ACE's obligations to provide coverage to McKesson for indemnity costs for the Opioid Lawsuits, but denies that ACE is entitled to the relief requested or to any other relief.

## COUNT III

53.     McKesson repeats and incorporates by reference its responses to the allegations contained in Paragraphs 1 through 52 as if fully set forth herein.

54.     The allegations in Paragraph 54 are not directed to McKesson and thus no response is required.  To the extent a response is required, McKesson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 and therefore denies such allegations.

55.     The allegations in Paragraph 55 are not directed to McKesson and thus no response is required.  To the extent a response is required, McKesson lacks knowledge or

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

information sufficient to form a belief as to the truth of the allegations in Paragraph 55 and therefore denies such allegations.

## PRAYER FOR RELIEF

The paragraphs enumerated (1) to (4) on page 14 of the Complaint constitute ACE's prayer for relief to which no response is required. To the extent a response is required, McKesson denies that ACE is entitled to the relief requested or to any other relief.

## AFFIRMATIVE DEFENSES

By alleging the matters set forth below, McKesson does not allege or admit that McKesson has the burden of proof with respect to any of said matters, or that ACE has properly asserted any cause of action against McKesson. Without admitting any of the allegations of ACE's Complaint, McKesson alleges separate and affirmative defenses as follows:

### First Affirmative Defense

ACE's Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

ACE's claims are barred, in whole or in part, by the doctrine of waiver.

### Third Affirmative Defense

ACE's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Affirmative Defense

ACE's claims are barred, in whole or in part, by the doctrine of unclean hands.

### Fifth Affirmative Defense

ACE's claims are barred, in whole or in part, due to its material breaches of the ACE Policies and its failure to perform its obligations under the ACE Policies.

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

### Sixth Affirmative Defense

ACE's claims are barred, in whole or in part, because the allegations in the Opioid Lawsuits, are within the terms of the coverage provided by the ACE Policies, and not excluded therefrom.

### Seventh Affirmative Defense

ACE's claims are barred, in whole or in part, by ACE's breach of the implied covenant of good faith and fair dealing.

### Eighth Affirmative Defense

ACE's claims are barred, in whole or in part, to the extent that it is inconsistent with the reasonable expectations of McKesson as to the coverage provided under its policies.

### Ninth Affirmative Defense

ACE's claims are barred, in whole or in part, by ACE's failure to undertake a reasonable investigation regarding McKesson's claims, provide reasonable documentation supporting its denial of coverage, and/or its failure to respond to reasonable requests for information.

### Tenth Affirmative Defense

McKesson reserves its right to assert any other defenses that may be or become available during these proceedings, at trial, or otherwise in this case.

MCKESSON CORPORATION'S ANSWER, COUNTERCLAIMS,
AND CROSS-CLAIMS

## MCKESSON'S COUNTERCLAIMS AND CROSS-CLAIMS

Without admitting any of the allegations of ACE's Complaint other than those expressly admitted in its respective responses thereto, and without prejudice to any of the affirmative defenses stated above, Defendant, Counterclaim Plaintiff, and Cross-claim Plaintiff McKesson, through its undersigned attorneys, hereby alleges, upon knowledge as to its own acts and upon information and belief as to all other matters, the following counterclaims against Counterclaim Defendant ACE and cross-claims against Cross-claim Defendants AIU Insurance Company ("AIU") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union") (AIU and National Union together, "AIG"):

## NATURE OF ACTION

1.      This is a civil action for declaratory relief and breach of contract arising out of AIG and ACE's refusal to satisfy their contractual obligations to defend and indemnify McKesson against liability for underlying opioid-related bodily injury claims covered under the liability insurance policies issued by AIG and ACE to McKesson between 1999 and 2017.

## THE PARTIES

2.      Defendant, Counterclaim Plaintiff, and Cross-claim Plaintiff McKesson is incorporated under the laws of Delaware with its principal place of business in Irving, Texas.  At the times that the insurance policies at issue were issued, McKesson's principal place of business was in San Francisco, California.

3.      On information and belief, Defendant and Cross-claim Defendant AIU is incorporated under the laws of New York, with its principal place of business in New York, New York.  On information and belief, at all times relevant, AIU was/is licensed to do business in the State of California, has written insurance policies covering risks for California citizens, and is otherwise transacting business in the State of California.

4.      On information and belief, Defendant and Cross-claim Defendant National Union is incorporated under the laws of Pennsylvania, with its principal place of business in New York, New York.  On information and belief, at all times relevant, National Union was/is licensed to do business in the State of California, has written insurance policies covering risks for California citizens, and is otherwise transacting business in the State of California.

5.      On information and belief, Plaintiff and Counterclaim Defendant ACE is incorporated under the laws of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.  On information and belief, at all times relevant, ACE was/is licensed to do business in the State of California, has written insurance policies covering risks for California citizens, and is otherwise transacting business in the State of California.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332, which establishes diversity jurisdiction in cases where, as here, there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      The Court also has supplemental jurisdiction over these counterclaims and cross-claims.  28 U.S.C. § 1367.

8.      McKesson is informed and believes and thereon alleges that at all times relevant, AIG and ACE are licensed to do business in the State of California, have written insurance policies covering risks for California citizens, and are otherwise transacting business in the State of California.  Between those and other contacts with the State of California, AIG and ACE are subject to the personal jurisdiction of this Court and other courts in California.

9.      As detailed in McKesson's Notice of Motion and Motion to Transfer Venue, Dkt. 2, venue is proper in the United States District Court for the Northern District of California because the policies at issue were negotiated, brokered, sold and issued to McKesson when it was a resident of San Francisco, California, within the Northern District of California.  Additionally, there is a previously-filed lawsuit pending in the Northern District of California, which involves the same insurance contracts, same claims, and same parties.  Venue in the United States District Court for the Northern District of California is proper under 28 U.S.C. § 1391(b).

## THE SUBJECT POLICIES

10.     AIU issued commercial liability insurance to McKesson including commercial umbrella liability insurance policies for consecutive periods from July 1, 1999 to July 1, 2001.

11.     National Union issued commercial liability insurance to McKesson including commercial umbrella liability insurance policies for consecutive periods from July 1, 2001 to July 1, 2009.

12.     ACE issued commercial liability insurance to McKesson including commercial umbrella liability insurance policies for consecutive periods from July 1, 2009 to July 1, 2017.

13.     The umbrella liability insurance policies issued to McKesson and described in Paragraphs 10-12 above are further identified on Exhibit A and referred to collectively as the "Policies."

14.     Each of the Policies imposes on the issuing insurer a duty to defend any suit against McKesson on account of or for bodily injury or property damage covered or potentially covered by the policy, even if the allegations of the suit are groundless, false, or fraudulent (the "duty to defend"), subject to any applicable retentions (if any) and limits in the Policies.

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

15.     Each of the Policies imposes on the issuing insurer a duty to pay on behalf of McKesson all sums that McKesson becomes legally obligated to pay as damages because of, *inter alia*, bodily injury and/or property damage caused by an occurrence (the "duty to indemnify"), subject to any applicable retentions (if any) and limits in the Policies.  AIG and ACE's duties to indemnify are triggered by bodily injury and/or property damage that takes place or occurs during the respective policy periods caused by an occurrence.

16.     Any and all conditions to coverage under the Policies have been performed, have occurred, or have been excused, satisfied, forfeited, or waived.

## FACTUAL BACKGROUND
## THE UNDERLYING OPIOID LAWSUITS

17.     McKesson is a wholesale distributor of medical supplies and pharmaceuticals, including prescription opioid medications.  As a wholesale distributor, McKesson purchases medical supplies and pharmaceuticals, including prescription opioid medications, from manufacturers and fulfills orders for the same from retail pharmacies and other dispensers that are its customers.

18.     Beginning in or around 2016, McKesson has been named as a defendant in many lawsuits brought by governmental entities, other entities, and individuals (the "Opioid Lawsuits").

19.     Plaintiffs in the Opioid Lawsuits seek damages for alleged injuries allegedly arising out of McKesson's distribution and sale of prescription opioid pharmaceuticals, including, *inter alia*, damages related to medical care, response costs, and treatment costs for injuries from opioid use, opioid addiction, and deaths suffered by individuals.  The Opioid Lawsuits allege that bodily injury and/or property damage occurred during one or more of the policy periods covered by the Policies.

20.     Since 2016, McKesson has incurred and paid hundreds of millions of dollars in defense costs, well in excess of any applicable retentions, in defending against the

MCKESSON CORPORATION'S ANSWER, COUNTERCLAIMS,
AND CROSS-CLAIMS

Opioid Lawsuits.  McKesson reasonably anticipates that it will continue to incur substantial defense costs in connection with the Opioid Lawsuits, including additional lawsuits making similar allegations to the Opioid Lawsuits that may be filed in the future.

21.     The majority of the Opioid Lawsuits have been transferred to and centralized in a multi-district litigation proceeding in the United States District Court for the Northern District of Ohio (the "MDL").  More than 2,700 of the Opioid Lawsuits have been transferred to the MDL.

22.     Several Opioid Lawsuits proceeding in the MDL have been designated bellwether cases, including *County of Cuyahoga, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 17-OP-45004 (N.D. Ohio) and *County of Summit, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-OP-45090 (N.D. Ohio).  The *Summit County* and *Cuyahoga County* lawsuits were designated "Track One" bellwether cases in the MDL.

23.     Several hundred Opioid Lawsuits have not been transferred to the federal MDL.  Those lawsuits are proceeding in more than 35 state and territory courts across the United States and Canada.  Among the Opioid Lawsuits brought in state court is a lawsuit brought by the State of West Virginia, captioned *State of West Virginia ex rel. Patrick Morrisey, et al. v. McKesson Corp.*, Case No. 16-C-1 (Cir. Ct. W. Va.) (the "West Virginia AG Action").

24.     In May 2019, McKesson agreed to a settlement of the West Virginia AG Action.

25.     In October 2019, McKesson agreed to a settlement of the Track One lawsuits.

### INSURERS' BREACH OF THEIR COVERAGE OBLIGATIONS

26.     McKesson notified AIG and ACE of the Opioid Lawsuits beginning no later than February 8, 2016.

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

27.     Beginning in or around 2016, and on numerous occasions since then, McKesson has requested that ACE and AIG honor their respective contractual obligations to provide McKesson with a defense in connection with the Opioid Lawsuits that are covered or potentially covered by the Policies.

28.     McKesson has complied with the terms and conditions of the Policies.  Any applicable retention(s) (if any) have been satisfied and/or exhausted, and all conditions to coverage under such Policies have been performed, have occurred, or have been excused, satisfied, forfeited, or waived.

29.     McKesson has provided ACE and AIG with regular reporting and with extensive information about the Opioid Lawsuits.

30.     ACE and AIG have denied any obligations to defend McKesson in and against the Opioid Lawsuits.

31.     ACE and AIG's refusal to defend McKesson in and against the Opioid Lawsuits violates their obligations under the Policies.

32.     As a result of the Track One and West Virginia AG Action settlements, McKesson became legally obligated to pay damages because of bodily injury and/or property damage occurring during the policy periods of ACE and AIG's respective Policies.

33.     McKesson has requested that ACE and AIG indemnify McKesson for the Track One and West Virginia AG Action settlements.

34.     ACE and AIG have refused and failed to indemnify McKesson for the Track One and West Virginia AG Action settlements.

35.     ACE and AIG's refusal and failure to indemnify McKesson for the Track One and West Virginia AG Action settlements violates their obligations under the Policies.

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

36.     McKesson may be obligated to incur costs and pay damages under other settlements and/or judgments in the Opioid Lawsuits.

37.     ACE and AIG have denied any obligations to indemnify McKesson for other settlements and/or judgments that McKesson may become legally obligated to pay in the Opioid Lawsuits.

### First Claim for Relief

### (BREACH OF CONTRACT - DUTY TO DEFEND AGAINST COUNTERCLAIM DEFENDANT ACE AND CROSS-CLAIM DEFENDANTS AIU AND NATIONAL UNION)

38.     McKesson restates and re-alleges all of the foregoing paragraphs of these Counterclaims and Cross-claims as though fully set forth herein.

39.     Each of the Opioid Lawsuits, as alleged, could or potentially could lead to liability covered by the Policies.

40.     McKesson notified ACE and AIG of the Opioid Lawsuits and has demanded that ACE and AIG acknowledge their respective duties under the Policies to defend McKesson in and against the Opioid Lawsuits.  Any applicable retention(s) (if any) have been satisfied and/or exhausted, and all conditions to coverage under such Policies have been performed, have occurred, or have been excused, satisfied, forfeited, or waived.

41.     By failing and refusing to defend McKesson in and against the Opioid Lawsuits, ACE and AIG have breached their respective contractual duties to defend McKesson.

42.     As a direct and proximate result of ACE and AIG's breaches of their respective contractual duties to defend McKesson, McKesson has suffered and will continue to suffer hundreds of millions of dollars in damages in an amount to be proven at trial.  McKesson's damages due to ACE and AIG's ongoing breaches of their duties to defend McKesson in and against the Opioid Lawsuits are continuing and are expected to increase.

**Second Claim for Relief**

**(BREACH OF CONTRACT - DUTY TO INDEMNIFY
AGAINST COUNTERCLAIM DEFENDANT ACE AND CROSS-CLAIM
DEFENDANTS AIU AND NATIONAL UNION)**

43.     McKesson restates and re-alleges all of the foregoing paragraphs of these Counterclaims and Cross-claims as though fully set forth herein.

44.     McKesson has incurred costs and paid damages in connection with the Track One and West Virginia AG Action settlements for bodily injury and/or property damage covered by the Policies and is entitled to indemnification for the full amount of the Track One and West Virginia AG Action settlements from ACE and AIG.

45.     McKesson notified ACE and AIG of the Track One and West Virginia AG Action settlements and demanded that ACE and AIG indemnify McKesson for the same. Any applicable retention(s) (if any) have been satisfied and/or exhausted, and all conditions to coverage under such Policies have been performed, have occurred, or have been excused, satisfied, forfeited, or waived.

46.     In failing and refusing to indemnify McKesson for the Track One and West Virginia AG Action settlements, ACE and AIG have breached their respective contractual duties under the Policies to indemnify McKesson.

47.     As a direct and proximate result of ACE and AIG's breaches of their respective contractual duties to indemnify McKesson, McKesson has suffered tens of millions of dollars in damages in an amount to be proven at trial.

**Third Claim for Relief**

**(DECLARATORY JUDGMENT - DUTY TO DEFEND
AGAINST COUNTERCLAIM DEFENDANT ACE AND CROSS-CLAIM
DEFENDANTS AIU AND NATIONAL UNION)**

48.     McKesson restates and re-alleges all of the foregoing paragraphs of these Counterclaims and Cross-claims as though fully set forth herein.

23

49.     Any applicable retention(s) (if any) have been satisfied and/or exhausted, and McKesson has fully complied with all of the terms and conditions of the Policies with regard to the Opioid Lawsuits.

50.     McKesson contends that ACE and AIG are obligated under the Policies to defend McKesson in and against the Opioid Lawsuits.  ACE and AIG, on the other hand, have contended, and will continue to contend, that they do not owe a duty to defend McKesson in and against the Opioid Lawsuits.

51.     An actual and justiciable controversy therefore exists between McKesson, on the one hand, and ACE and AIG, on the other, concerning their respective obligations under the Policies to defend McKesson in and against the Opioid Lawsuits.

52.     McKesson seeks a judicial declaration from the Court that ACE and AIG are obligated to defend McKesson in and against the Opioid Lawsuits.

53.     The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment and the issuance of a declaratory judgment by the Court will terminate some or all of the existing controversy between the parties.

### **Fourth Claim for Relief**

### **(DECLARATORY JUDGMENT - DUTY TO INDEMNIFY AGAINST COUNTERCLAIM DEFENDANT ACE AND CROSS-CLAIM DEFENDANTS AIU AND NATIONAL UNION)**

54.     McKesson restates and re-alleges all of the foregoing paragraphs of these Counterclaims and Cross-claims as though fully set forth herein.

55.     Any applicable retention(s) (if any) have been satisfied and/or exhausted, and McKesson has fully complied with all of the terms and conditions of the Policies with regard to the Opioid Lawsuits.

56.     McKesson contends that ACE and AIG are obligated to indemnify McKesson for costs incurred and damages it is or may be obligated to pay as a result of

MCKESSON CORPORATION'S ANSWER, COUNTERCLAIMS,
AND CROSS-CLAIMS

the settlements entered into in the West Virginia AG Action and the Track One lawsuits, and any other settlements or judgments that may be concluded in the Opioid Lawsuits. ACE and AIG, on the other hand, have contended, and will continue to contend, that they do not owe a duty to indemnify McKesson for the West Virginia AG Action and the Track One settlements and any other settlements and/or judgments McKesson has paid or may be obligated to pay in the Opioid Lawsuits.

57.     An actual and justiciable controversy therefore exists between McKesson, on the one hand, and ACE and AIG, on the other, concerning their respective obligations under the Policies to indemnify McKesson for settlements and/or judgments in the Opioid Lawsuits.

58.     McKesson seeks a judicial declaration from the Court that ACE and AIG are obligated to indemnify McKesson for settlements and/or judgments in the Opioid Lawsuits.

59.     The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment and the issuance of a declaratory judgment by the Court will terminate some or all of the existing controversy between the parties.

### **Prayer for Relief**

**WHEREFORE**, McKesson prays for judgment as follows:

a.     On its First Claim for Relief, damages in an amount to be proven at trial, and interest thereon;

b.     On its Second Claim for Relief, damages in an amount to be proven at trial, and interest thereon;

c.     On its Third Claim for Relief, a declaration that ACE, AIU, and National Union each owe a duty to defend McKesson in and against the Opioid Lawsuits and are obligated to pay McKesson's defense costs incurred for the Opioid Lawsuits, plus interest thereon;

MCKESSON CORPORATION'S ANSWER, COUNTERCLAIMS,
AND CROSS-CLAIMS

d.      On its Fourth Claim for Relief, a declaration that ACE, AIU, and National Union each owe a duty to indemnify McKesson for amounts it has paid or may be obligated to pay to settle and/or satisfy judgments in the Opioid Lawsuits, plus interest thereon;

e       For McKesson's attorneys' fees and costs of this suit; and

f.      For such other and further relief the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, McKesson hereby demands a trial by jury on all claims so triable.


DATED: December 9, 2020            Respectfully submitted,

COVINGTON & BURLING LLP


By: /s/ Gretchen A. Hoff Varner
Gretchen A. Hoff Varner (Bar No. 284980)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
ghoffvarner@cov.com

Anna Engh (*pro hac vice pending*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
aengh@cov.com

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

David Luttinger (*pro hac vice forthcoming*)
Cléa P.M. Liquard (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
dluttinger@cov.com; cliquard@cov.com

*Attorneys for Defendant, Counterclaim Plaintiff,
and Cross-claim Plaintiff McKesson Corporation*

MCKESSON CORPORATION'S ANSWER,COUNTERCLAIMS,
AND CROSS-CLAIMS

## EXHIBIT A

| Insurer | Policy Number | Policy Period |
|---|---|---|
| AIU Insurance Company | BE 3463988 | July 1, 1999 – July 1, 2000 |
| AIU Insurance Company | BE 7401021 | July 1, 2000 – July 1, 2001 |
| National Union Fire Insurance Company of Pittsburgh, Pa | BE 8713546 | July 1, 2001 – July 1, 2002 |
| National Union Fire Insurance Company of Pittsburgh, Pa | BE 2131289 | July 1, 2002 – July 1, 2003 |
| National Union Fire Insurance Company of Pittsburgh, Pa | BE 2860255 | July 1, 2003 – July 1, 2004 |
| National Union Fire Insurance Company of Pittsburgh, Pa | BE 2978146 | July 1, 2004 – July 1, 2005 |
| National Union Fire Insurance Company of Pittsburgh, Pa | BE 4484776 | July 1, 2005 – July 1, 2006 |
| National Union Fire Insurance Company of Pittsburgh, Pa | 4485490 | July 1, 2006 – July 1, 2007 |
| National Union Fire Insurance Company of Pittsburgh, Pa | 9835034 | July 1, 2007 – July 1, 2008 |
| National Union Fire Insurance Company of Pittsburgh, Pa | 5443284 | July 1, 2008 – July 1, 2009 |

| ACE Property and Casualty Insurance Company | XOO G24900228 | July 1, 2009 – July 1, 2010 |
|---|---|---|
| ACE Property and Casualty Insurance Company | XOO G24910179 | July 1, 2010 – July 1, 2011 |
| ACE Property and Casualty Insurance Company | XOO G24903126 | July 1, 2011 – July 1, 2012 |
| ACE Property and Casualty Insurance Company | XOO G24903229 | July 1, 2012 – July 1, 2013 |
| ACE Property and Casualty Insurance Company | XOO G2704766A | July 1, 2013 – July 1, 2014 |
| ACE Property and Casualty Insurance Company | XOO G27420618 | July 1, 2014 – July 1, 2015 |
| ACE Property and Casualty Insurance Company | XOO G27610390 001 | July 1, 2015 – July 1, 2016 |
| ACE Property and Casualty Insurance Company | XOO G27610390 002 | July 1, 2016 – July 1, 2017 |

1

## PROOF OF SERVICE

2        I am a citizen of the United States.  I am employed with the law firm of Covington

3  & Burling LLP, whose address is 1999 Avenue of the Stars, 35th Floor, Los Angeles,

4  California  90067-4243.  I am over the age of 18 years, and not a party to this action.  On

5  December 9, 2020, I caused to be served the foregoing documents:

6

7  MCKESSON CORPORATION'S ANSWER, COUNTERCLAIMS
AND CROSS-CLAIMS

8

9  on the following parties:

10

| | |
|---|---|
| Richard S. Endres<br>London Fischer LLP<br>2505 McCabe Way, Suite 100<br>Irvine, CA 92614<br>Email: rendres@londonfischer.com | Attorney for Plaintiff ACE Property and Casualty Insurance Company |
| Michael S. Shuster<br>James M. McGuire<br>Blair E. Kaminsky<br>Daniel M. Sullivan, Esq.<br>Daniel M. Horowitz, Esq.<br>Holwell Shuster & Goldberg LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Email: mshuster@hsgllp.com<br>    jmcguire@hsgllp.com<br>    bkaminsky@hsgllp.com<br>    dsullivan@hsgllp.com<br>    dhorowitz@hsgllp.com | Attorney for Plaintiff ACE Property and Casualty Insurance Company |
| Spiro K. Bantis<br>London Fischer<br>59 Maiden Lane<br>New York, NY 10038<br>Email: sbantis@ londonfischer.com | Attorney for Plaintiff ACE Property and Casualty Insurance Company |

[ ]      (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier (Federal Express) with delivery fees provided for, addressed to the person(s) on whom it is to be served.

[X]  (BY ELECTRONIC MAILING)  I emailed a true and correct copy through the Covington Burling LLP's email system to the email addresses set forth above.

[ ]      (BY U.S. MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

Executed on December 9, 2020, at Los Angeles, California.


/S/ Janet Glick
JANET GLICK